# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

FILED - USDC -NH
2025 MAR 5 PM3:07

| | |
|---|---|
| DANA ALBRECHT, )<br><br>Plaintiff )<br>v. )<br> )<br>JUDGE JOHN PENDLETON, solely in his )<br>official capacity as a Judge of the New )<br>Hampshire Circuit Court; )<br> )<br>REFEREE SCOTT MURRAY, solely in his )<br>official capacity as a referee pursuant to )<br>N.H. Rev. Stat. § 490-F:15 for the State of )<br>New Hampshire; )<br> )<br>JUDGE ELLEN CHRISTO, solely in her )<br>official capacity as the Administrative )<br>Judge of the New Hampshire Circuit Court, )<br>and her successor(s) in office; )<br> )<br>CHIEF JUSTICE GORDON MACDONALD, )<br>JUSTICE JAMES P. BASSETT, JUSTICE )<br>ANNA BARBARA HANZ MARCONI, )<br>JUSTICE PATRICK E. DONOVAN, )<br>JUSTICE MELISSA COUNTWAY, solely )<br>in their official capacities as justices of the )<br>New Hampshire Supreme Court, and their )<br>successor(s) in office; )<br> )<br>ERIN CREEGAN, solely in her official )<br>capacity as General Counsel of the New )<br>Hampshire Judicial Branch, and her )<br>successor(s) in office, )<br> )<br>*(continued on page 2)* )<br> ) | Civil No. _____ |

*(continued on page 2)*

- 1 -

TRACY MEYER, solely in her official                  )
capacity as the Clerk of the 10th Circuit            )
District Court, Hampton, New Hampshire,              )
and her successor(s) in office;                      )
                                                     )
THE 24 MEMBERS OF THE                               )
NEW HAMPSHIRE JUDICIAL COUNCIL,                     )
solely in their official capacities as               )
members of the council, and their                    )
successor(s) in office;                              )
                                                     )
CHARLES M. ARLINGHAUS, solely in his                )
official capacity as Commissioner at the             )
New Hampshire Department of                           )
Administrative Services, and his                      )
successors(s) in office;                              )
                                                     )
THE NEW HAMPSHIRE PUBLIC                            )
DEFENDER; a 501(c)(3) corporation;                   )
                                                     )
JOHN FORMELLA, solely in his official               )
capacity as Attorney General of the State            )
of New Hampshire, and his successor(s) in            )
office;                                              )
                                                     )
JOHN VENTURA, solely in his official                )
capacity as Police Prosecutor for the Town           )
of Seabrook, New Hampshire, and his                  )
successor(s) in office;                              )
                                                     )
DANIEL LAWRENCE, solely in his official             )
capacity as Sergeant for the Seabrook                )
Police Department, and his successor(s)              )
in office;                                           )
                                                     )
                                                     )
*(continued on page 3)*                                  )
                                                     )
                                                     )
                                                     )
                                                     )

KASSANDRA STORMS a/k/a                    )
KASSANDRA KAMINSKI, solely in her         )
official capacity as a patrol officer for the )
Seabrook Police Department, and her        )
successor(s) in office;                    )
                                           )
THE TOWN OF SEABROOK, a municipal         )
corporation in New Hampshire;              )
                                           )
THOMAS W. FOWLER, solely in his official  )
capacity as Chief of Police for the Town of )
Salisbury, Massachusetts, and his          )
successor(s) in office;                    )
                                           )
ANTHONY KING, solely in his official       )
capacity as former Lieutenant of the       )
Police Department for the Town of          )
Salisbury, Massachusetts, and his          )
successor(s) in office;                    )
                                           )
PATRICK SZYMKOWSKI, solely in his         )
official capacity as a patrol officer of the )
Police Department for the Town of          )
Salisbury, Massachusetts, and his          )
successor(s) in office;                    )
                                           )
THE TOWN OF SALISBURY, a municipal        )
corporation in Massachusetts,              )
                                           )
            Defendants.                    )

---

## COMPLAINT FOR CIVIL RIGHTS VIOLATIONS AND
## DECLARATORY, INJUNCTIVE AND EQUITABLE RELIEF

---

**TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................4

INTRODUCTION....................................................................................6

PARTIES...........................................................................................7

    Plaintiff.........................................................................................7

    Judicial Defendants............................................................................7

    Indigent Defense and Funding Defendants....................................................7

    Prosecutorial Defendants......................................................................8

    Massachusetts Law Enforcement Defendants................................................8

PLAINTIFF APPEARS PRO SE.....................................................................9

JURISDICTION AND VENUE......................................................................9

FACTS PLEAD....................................................................................10

    I. Allegations Against the Massachusetts Law Enforcement Defendants..........10

        A. Abuse of the Legal System by Officer Patrick Szymkowski.....................10

        B. Collusion with Salisbury Police Department Leadership.........................11

        C. Perjury and Fabricated Evidence in New Hampshire Courts....................11

        D. Continued Legal Harassment of Berard.........................................12

    II. Allegations Against the Prosecutorial Defendants....................................12

        A. Selective and Retaliatory Prosecution of Berard...............................12

        B. Prosecution for Alleged Church Attendance.....................................13

        C. "Smoking Gun" Email Evidence of Malicious Prosecution......................13

        D. Unlawful and Selective Prosecution.............................................14

        E. Unlawful Incarceration.........................................................15

    III. Allegations Against the Judicial Defendants and Indigent Defense & Funding Defendants..................................................................................15

        A. Systemic Denial of Counsel in Violation of Constitutional Rights............15

        B. Unlawful Interference with the Defendant's Right to Choose Representation................................................................................17

        D. The Role of the Indigent Defense & Funding Defendants.......................18

        E. Systemic Scheduling Bias in Favor of the Prosecution...........................19

        F. The Unconstitutional Consequences of This Systemic Breakdown............21

IV. Additional Facts Supporting As-Applied Challenge to N.H. Rev. Stat. § 173:B-9......................................................................................22

V. Conclusion: Systemic Constitutional Breakdown Requires Judicial Intervention..................................................................................23

MATTERS OF LAW PLEAD COMMON TO ALL COUNTS................................23

STANDING..............................................................................................26

A. Plaintiff's Standing Under Article III of the U.S. Constitution.................26

B. Plaintiff's Standing Under the First Amendment Petition Clause..............27

C. Third-Party Standing............................................................................28

D. Comparison to New Hampshire's Expanded Standing Doctrine (Cf. N.H. Const. Pt. I, Art. 8 (as amended 2018))..................................................28

E. Conclusion..........................................................................................29

CAUSES OF ACTION................................................................................29

COUNT I – Violation of the Sixth and Fourteenth Amendments....................29

COUNT II – Violation of the Fifth Amendment...........................................30

COUNT III – Violation of the Fourteenth Amendment..................................31

COUNT IV – Violation of Due Process and Equal Protection.........................32

COUNT V – Violation of Procedural Due Process........................................33

COUNT VI – Monell Claim Against Massachusetts Law Enforcement Defendants ............................................................................................................34

COUNT VII – Illegal Incarceration............................................................35

COUNT VIII – Monell Claim Against Town of Seabrook...............................36

COUNT IX – First Amendment Violation – Plaintiff's Right to Petition..........36

COUNT X – Fourteenth Amendment Violation – Risk of Judicial Bias............37

COUNT XI – Fourteenth Amendment Violation – N.H. Rev. Stat. § 173:B-9 is Unconstitutional As-Applied..................................................................39

JURY TRIAL DEMAND..............................................................................40

PRAYER FOR RELIEF...............................................................................41

Declaratory Relief...................................................................................41

Injunctive Relief......................................................................................42

Equitable Relief.......................................................................................43

Further Relief..........................................................................................43

**INTRODUCTION**

1. This civil rights action under 42 U.S.C. § 1983 arises from the systematic denial of effective counsel to an indigent criminal defendant in a New Hampshire prosecution, resulting in unconstitutional proceedings, selective prosecution, and illegal incarceration. Despite repeatedly invoking her right to state-appointed legal representation, the indigent defendant has been forced into criminal proceedings without an attorney, in clear violation of *Gideon v. Wainwright*, 372 U.S. 335 (1963). Meanwhile, Plaintiff, a private citizen, was coerced into providing legal assistance under threat of an unfair trial, despite lacking a law license or the desire to serve as trial counsel.

2. Through this action, Plaintiff seeks declaratory and injunctive relief to remedy ongoing constitutional violations, including (1) a declaration that the indigent defendant's prosecution is unconstitutional as applied, (2) an injunction preventing further prosecution unless and until her constitutional right to counsel is restored, and (3) equitable relief to cover the costs of securing competent legal representation. Plaintiff also challenges the unconstitutional practices of the New Hampshire judicial system, including scheduling bias, improper judicial conflicts, and procedural due process violations that have systematically disadvantaged the defense.

3. This case presents a fundamental question of justice: whether the State of New Hampshire can deny an indigent defendant the right to counsel while selectively prosecuting her under a legally dubious restraining order, all while judicial officers manipulate the process to benefit the prosecution. Plaintiff asks this Court to intervene to safeguard constitutional rights, prevent further violations, and ensure that indigent defendants receive the fair trial protections guaranteed by the Sixth and Fourteenth Amendments.

## PARTIES

### Plaintiff

4. Plaintiff Dana Albrecht a private citizen of good character who entered an emergency appearance under N.H. Rev. Stat. § 311:1 solely to assist an indigent criminal defendant in obtaining court-appointed counsel and to prevent an unfair trial in a New Hampshire state court proceeding.

### Judicial Defendants

5. Judge John Pendleton is a judge of the State of New Hampshire who presides over the relevant criminal case and is sued solely in his official capacity.

6. Referee Scott Murray is a judicial referee pursuant to N.H. Rev. Stat. § 490-F:15 and is sued solely in his official capacity.

7. Judge Ellen Christo is the Administrative Judge of the New Hampshire Circuit Court and is sued solely in her official capacity, including her successor(s) in office.

8. Chief Justice Gordon MacDonald, Justice James P. Bassett, Justice Anna Barbara Hantz Marconi, Justice Patrick E. Donovan, and Justice Melissa Countway are justices of the New Hampshire Supreme Court and are sued solely in their official capacities, including their successor(s) in office.

9. Erin Creegan is the General Counsel of the New Hampshire Judicial Branch and is sued solely in her official capacity, including her successor(s) in office.

10. Tracy Meyer is the Clerk of the 10th Circuit Court – District Division – Hampton, NH, and is sued solely in her official capacity, including her successor(s) in office.

### Indigent Defense and Funding Defendants

11. The 24 Members of the New Hampshire Judicial Council are sued solely in their official capacities as members of the council established under N.H. Rev. Stat. § 494:1, including their successor(s) in office.

12. Charles M. Arlinghaus is the Commissioner of the New Hampshire Department of Administrative Services established under N.H. Rev. Stat. § 21:I and is sued solely in his official capacity, including his successor(s) in office.

13. The New Hampshire Public Defender's Office is a private 501(c)(3) nonprofit corporation that handles indigent criminal defense pursuant to N.H. Rev. Stat. § 604-A.

**Prosecutorial Defendants**

14. John Formella is the Attorney General of the State of New Hampshire and is sued solely in his official capacity, including his successor(s) in office.

15. John Ventura is the Police Prosecutor for the Town of Seabrook, New Hampshire, and is sued solely in his official capacity, including his successor(s) in office.

16. Daniel Lawrence is a Sergeant employed by the Seabrook Police Department, and is sued solely in his official capacity, including his successor(s) in office.

17. Kassandra Storms (a/ka Kassandra Kaminksi) is a patrol officer employed by the Seabrook Police Department, and is sued solely in her official capacity, including her successor(s) in office.

18. The Town of Seabrook, New Hampshire, is a municipal corporation sued as a governmental entity responsible for policies and actions of its employees, including its police prosecutor.

**Massachusetts Law Enforcement Defendants**

19. Thomas W. Fowler is the Chief of Police for the Town of Salisbury, Massachusetts, and is sued solely in his official capacity, including his successor(s) in office.

20. Anthony King is a former Lieutenant of the Police Department for the Town of Salisbury, Massachusetts, and is sued solely in his official capacity, including his successor(s) in office.

21. Patrick Szymkowski is a patrol officer for the Police Department in the Town of Salisbury, Massachusetts, and is sued solely in his official capacity, including his successor(s) in office.

22. The Town of Salisbury, Massachusetts, is a municipal corporation sued as a governmental entity responsible for policies and actions of its police department and employees.

## PLAINTIFF APPEARS PRO SE

23. Plaintiff appears *pro se*, has no formal training in the law, and has prepared his pleadings without the assistance of any professional counsel.

24. Consequently, Plaintiff's pleadings should be construed "so as to do substantial justice." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## JURISDICTION AND VENUE

25. This action arises under the First, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343, as this case presents federal questions involving constitutional violations and the deprivation of civil rights under color of state law.

26. This Court has personal jurisdiction over the New Hampshire-based Defendants because they are located in New Hampshire and/or perform official duties within the state. Additionally, this Court has personal jurisdiction over the Massachusetts-based Defendants under New Hampshire's long-arm statute (N.H. Rev. Stat. § 510:4) and the Fourteenth Amendment's Due Process Clause, as their conduct has caused harm to Plaintiff and directly impacted legal proceedings in New Hampshire.

27. Declaratory relief is authorized by 28 U.S.C. § 2201 and 28 U.S.C. § 2202.

28. Venue is proper in this Court under 28 U.S.C. § 1391(b) because:

(a) A substantial part of the events giving rise to this claim occurred in New Hampshire, including the judicial proceedings at issue and the actions of the New Hampshire state and municipal officials.

(b) Defendants performing official duties in New Hampshire reside in this district for venue purposes.

(c) Defendants from Massachusetts directed their conduct toward New Hampshire, causing harm in this district, making venue proper under § 1391(b)(2) and (b)(3).

## FACTS PLEAD

### I. Allegations Against the Massachusetts Law Enforcement Defendants

#### A. Abuse of the Legal System by Officer Patrick Szymkowski

29. Officer Patrick Szymkowski, a patrol officer with the Salisbury, Massachusetts Police Department, has a well-documented history of misconduct, excessive force, policy violations, and unethical conduct, as confirmed by multiple internal affairs investigations and Massachusetts POST Commission disciplinary records.

30. Szymkowski and Destinie Berard were formerly in an intimate relationship, during which Szymkowski was the abuser and Berard was the victim.

31. In 2018, Szymkowski was formally disciplined for domestic violence and harassment of Berard, following an internal affairs investigation into his conduct.

32. Immediately after being disciplined in Massachusetts, Szymkowski engaged in "jurisdiction shopping" by filing for a civil domestic violence protective order under N.H. Rev. Stat. § 173-B on May 30, 2018, in the New Hampshire Circuit Court.

33. Berard is a Massachusetts resident with no significant ties to New Hampshire.

34. Szymkowski claimed New Hampshire residency in his petition, but this assertion is questionable and may be disputed.

35. Prior to filing in New Hampshire, Massachusetts authorities denied Szymkowski relief, demonstrating that he sought a different jurisdiction to manipulate the legal system.

36. Szymkowski's petition for the New Hampshire restraining order was based on perjury. In his sworn affidavit, he falsely claimed financial harm due to Berard's actions, when in fact his suspension resulted from his own sustained policy violations in Massachusetts.

37. Fearing Szymkowski and his connections in law enforcement, Berard did not appear at the first New Hampshire hearing in the civil N.H. Rev. Stat. § 173-B case on July 11, 2018. As a result, Szymkowski wrongfully obtained a protective order against her – despite his well-documented history of misconduct, harassment, and disciplinary violations.

**B. Collusion with Salisbury Police Department Leadership**

38. Szymkowski later admitted under oath that he pursued the fraudulent New Hampshire protective order at the direction of Salisbury Police Chief Thomas Fowler and then-Lieutenant Anthony King, directly implicating them in an intentional abuse of the legal system.

39. After obtaining the New Hampshire restraining order, Szymkowski, Fowler, and King engaged in a pattern of malicious prosecution against Berard, falsely portraying her as the abuser to protect Szymkowski and cover up his misconduct.

**C. Perjury and Fabricated Evidence in New Hampshire Courts**

40. On July 11, 2018, during a hearing in the New Hampshire Circuit Court, Szymkowski knowingly provided false testimony under oath, falsely stating that he had been:

   • "Cleared of his internal affairs investigation within eight hours."

   • "Back to work without issue."

41. In reality:

- Szymkowski had actually been suspended without pay for two days (June 18–19, 2018) due to misconduct.

- He had signed a disciplinary agreement acknowledging that any future violations could result in termination.

- His sworn statement was material to the New Hampshire court's proceedings, constituting perjury under N.H. Rev. Stat. § 641:1.

### D. Continued Legal Harassment of Berard

42. This misuse of legal proceedings has allowed Szymkowski to continue terrorizing Berard through the legal system, using court orders and criminal prosecutions as weapons to further his abuse.

43. The actions of the Massachusetts Law Enforcement Defendants exemplify how unscrupulous litigants, including domestic abusers, can manipulate the legal system.

44. The Fifth Circuit Court of Appeals has recognized this danger, observing:

> **"Anyone who is willing to commit perjury can spend months or even years ... planning to file a domestic violence complaint at an opportune moment in order to gain the upper hand in a [family law] proceeding. So a plaintiff willing to exaggerate past incidents or even commit perjury can have access to a responsive support group, a sympathetic court, and a litany of immediate relief."**

*See United States v. Rahimi*, 61 F.4th 443, 465 (5th Cir. 2023) (cleaned up) (abrogated on unrelated grounds by *United States v. Rahimi*, 144 S. Ct. 1889 (2024)).

## II. Allegations Against the Prosecutorial Defendants

### A. Selective and Retaliatory Prosecution of Berard

45. Defendants John Formella (New Hampshire Attorney General), John Ventura (Seabrook Police Prosecutor), and Daniel Lawrence (Seabrook Police Sergeant) engaged in a pattern of prosecutorial abuse and selective enforcement, wrongfully criminalizing Berard based on a fraudulent protective order obtained through perjury by Officer Patrick Szymkowski.

46. The criminal prosecution of Berard in New Hampshire is predicated on morally reprehensible and retaliatory allegations that have no legitimate basis in law or fact.

**B. Prosecution for Alleged Church Attendance**

47. In 2022, Szymkowski accused Berard of violating the fraudulent restraining order simply for *allegedly* attending a church service.

   - This alleged "violation" was nonviolent and posed no legitimate threat to Szymkowski.

   - Massachusetts authorities refused to prosecute Berard under Mass. Gen. Laws ch. 209A, § 7 (violation of a restraining order), leading to a dismissal of the case in 2022 due to lack of merit.

48. After the Massachusetts prosecution failed, Szymkowski turned to New Hampshire authorities, who enabled his campaign of legal harassment against Berard:

   - Prosecutor John Ventura and Sergeant Daniel Lawrence actively worked to maintain an in-state arrest warrant against Berard, despite knowing the case was baseless.

**C. "Smoking Gun" Email Evidence of Malicious Prosecution**

49. The collusion between Szymkowski and Seabrook Police Sergeant Daniel Lawrence is evidenced in an email exchange from November 14, 2022, in which:

   - Szymkowski informed Lawrence that the Massachusetts charge had been dismissed.

   - Lawrence responded that, although Berard's extradition was unlikely, "At least we know she will always be looking over her shoulder and staying out of NH because she knows she has a warrant waiting for her!"

50. This email exchange reveals that Berard's arrest warrant was not maintained for legitimate law enforcement purposes but rather as a tool of coercion and intimidation. The stated goal was to:

- Deter Berard from entering New Hampshire out of fear of arrest.
- Keep her in a perpetual state of legal uncertainty and distress.
- Preserve Szymkowski's ability to manipulate the legal system to exert control over his former victim.

51. Sergeant Daniel Lawrence's statement – suggesting satisfaction that Berard "will always be looking over her shoulder" – constitutes a blatant abuse of prosecutorial discretion and a willful violation of her constitutional rights.

### D. Unlawful and Selective Prosecution

52. Prosecutors have an ethical duty to pursue justice, not to serve as enforcers of retaliatory claims.

- Despite overwhelming evidence that Szymkowski was the actual abuser and that his restraining order was obtained through perjury, Defendants Ventura and Lawrence actively sustained a wrongful prosecution against Berard.
- Defendant Formella, as New Hampshire Attorney General, failed to intervene despite his authority and responsibility to prevent wrongful prosecutions within the state.

53. The fact that Massachusetts dismissed the case in 2022 demonstrates that no legitimate basis for prosecution existed – yet the New Hampshire Prosecutorial Defendants have persisted in their efforts to criminalize Berard.

54. This is a textbook case of selective and retaliatory prosecution, in violation of the Equal Protection Clause of the Fourteenth Amendment. *See, e.g.*, *Wayte v. United States*, 470 U.S. 598, 608 (1985) (holding that selective prosecution violates equal protection when it is based on an arbitrary classification, such as retaliation or personal bias).

55. By maintaining an unjustified arrest warrant against Berard, Defendants have engaged in conduct that shocks the conscience and violates well-established constitutional protections.

### E. Unlawful Incarceration.

56. On Friday, March 15, 2024, Seabrook Police Department patrol officer Kassandra (Storms) Kaminski arrested Berard during a routine traffic stop in New Hampshire.

   - Berard was held in preventative detention for three days without access to counsel.

   - She was not brought before a judge until Monday, March 18, 2024, when a bail hearing was held before Judge Ellen Christo.

57. This prolonged detention without timely judicial review violated Berard's constitutional right to due process under the Fourteenth Amendment.

   - Her detention was based on a warrant that should have never been issued.

   - The alleged violation stemmed from a fraudulently obtained restraining order.

   - The email exchange between Lawrence and Szymkowski shows a deliberate intent to keep Berard in fear of being arrested, further underscoring the retaliatory nature of the prosecution.

58. The New Hampshire Judicial Branch has a documented history of detaining indigent defendants without timely bail hearings, creating a systemic due process violation.

59. These facts raise serious concerns regarding whether Officer Kaminski's actions were independently motivated by law enforcement priorities or whether she was acting at the direction of the Prosecutorial Defendants.

## III. Allegations Against the Judicial Defendants and Indigent Defense & Funding Defendants

### A. Systemic Denial of Counsel in Violation of Constitutional Rights

60. This is a civil rights action under 42 U.S.C. § 1983 seeking declaratory and injunctive relief against the Judicial Defendants and Indigent Defense & Funding Defendants for violating the Sixth and Fourteenth Amendments to the United States Constitution.

61. The indigent criminal defendant in the underlying state case properly filed a *pro se* motion for appointed counsel at state expense, requesting a qualified criminal defense attorney.

62. Despite this, the state court has refused to schedule or rule on the motion, forcing the defendant to proceed unrepresented in criminal proceedings.

63. Recognizing the fundamental unfairness of being forced to trial without effective representation, the defendant filed the first of three *pro se* motions to continue her multiple trials:

   • The first motion was not objected to by the State, but denied by Judge Pendleton, resulting in a hearing (noticed as a *trial*) held on July 10, 2024, where the indigent criminal defendant was forced to appear *pro se*.

64. On July 10, 2024, Ms. Berard was forced to appear *pro se* before Referee Scott Murray, despite:

   • Having timely requested a continuance more than 10 days in advance of what was *noticed as a trial*.

   • Being entitled to a jury trial, which a referee may not preside over absent consent of all parties, pursuant to N.H. Rev. Stat. § 490-F:15.

65. Referee Murray acted in the complete absence of all subject matter jurisdiction and improperly assumed the role of both judge and prosecutor, by:

   • Failing to properly inform Ms. Berard of her rights.

   • Conducting a *de facto* deposition of the unrepresented defendant in open court.

   • Proceeding with trial-like proceedings despite lacking jurisdiction.

66. Again recognizing the fundamental unfairness of being forced to trial without effective representation, the defendant filed the second two of her three *pro se* motions to continue her multiple trials:

   • The second motion was assented-to by the State, and denied by Judge Pendleton, resulting in a *trial* being held on November 13, 2024.

- The third motion was filed on an *ex parte* <u>emergency</u> basis on November 8, 2024, with no objection from the State, and no ruling by the Judicial Defendants until *five days later* and *during* the trial held on November 13, 2024, when it was deemed moot.

67. As a last resort, Plaintiff Dana Albrecht – acting under N.H. Rev. Stat. § 311:1 essentially as a "good Samaritan" – entered an emergency appearance to prevent a fundamentally unfair proceeding that the indigent criminal defendant was forced to attend on November 13, 2024 – ***no matter what***.

68. Plaintiff intended to limit his role to assisting an indigent criminal defendant to obtain effective assistance of counsel by means of a qualified professional criminal defense attorney.

69. Nevertheless, during the ***trial*** that was held on November 13, 2024, Plaintiff successfully excluded all prosecution evidence, demonstrating the necessity of competent legal representation for the indigent defendant.

70. Following this, Judge Dorothy Walch *sua sponte* continued the trial to benefit the prosecution, despite Judge Pendleton having previously denied *any* continuance that would have benefited the defendant.

71. The state court continues to refuse to hold a proper status of counsel hearing or to rule on the defendant's motion for appointed counsel, effectively forcing the indigent defendant into trial proceedings without licensed legal representation.

72. This ongoing failure constitutes a systemic violation of the defendant's right to counsel under *Gideon v. Wainwright*, 372 U.S. 335 (1963), and the right to effective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984).

**B. Unlawful Interference with the Defendant's Right to Choose Representation**

73. The Judicial Defendants' failure to appoint counsel has left the defendant without any lawful, constitutionally sufficient representation in her criminal case.

74. Under *Faretta v. California*, 422 U.S. 806 (1975), a criminal defendant has the right to represent herself if that is her informed choice.

75. Under New Hampshire law (N.H. Rev. Stat. § 311:1), an indigent criminal defendant also has the right to be represented by any unlicensed citizen of good character, but only if both the defendant and the unlicensed citizen voluntarily consent to the arrangement.

76. In this case:

- The indigent defendant does not wish to represent herself.

- The indigent defendant does not wish to be represented by Plaintiff under N.H. Rev. Stat. § 311:1 at any trial on the merits or at any pre-trial hearing on double jeopardy; or, in the alternative, Plaintiff represents that any such effort by Plaintiff to provide such representation would *automatically be deficient* per *Strickland* in light of Plaintiff's qualifications.

- Plaintiff does not seek to act as trial counsel and has no intention of representing the indigent defendant at trial *again*, after having already represented the indigent defendant through one of her *multiple trials*.

77. Instead, the indigent defendant is entitled to a licensed attorney, at state expense, pursuant to *Gideon v. Wainwright*, who will provide effective assistance of counsel, pursuant to *Strickland*.

78. Despite these well-established legal principles, the Judicial Defendants have refused to provide the indigent defendant with any of these options, violating her constitutional and statutory rights.

### D. The Role of the Indigent Defense & Funding Defendants

79. The New Hampshire Public Defender's Office (NHPD), the Judicial Council, and Commissioner Arlinghaus have failed in their statutory duties to ensure that indigent defendants receive competent legal representation.

80. These Defendants bear direct responsibility for:

- The failure to appoint a public defender for an indigent defendant facing criminal prosecution.

- The refusal to provide funding for a court-appointed attorney.

- Knowingly allowing an unrepresented defendant to be forced into trial proceedings without taking corrective action.

81. The failure of these Defendants to act has created a constitutional crisis, where:

- An indigent defendant is being forced into trial without representation.

- A qualified, licensed attorney is being unlawfully withheld despite the defendant's eligibility.

- The New Hampshire judicial system is actively facilitating violations of fundamental constitutional rights.

82. Defendants' failure to act constitutes a violation of 42 U.S.C. § 1983, as they have created an ongoing, systemic denial of counsel for indigent defendants.

83. The NHPD, as a 501(c)(3) nonprofit corporation, administers a state contract for the provision of public defense services, yet has failed to fulfill its obligation in this case.

84. Commissioner Arlinghaus, in his role as the state official responsible for disbursing indigent defense funds, has also failed to take necessary action to ensure that funding is available for court-appointed counsel.

85. These failures to act have resulted in a denial of constitutional rights, necessitating equitable and injunctive relief to ensure compliance with constitutional obligations.

**E. Systemic Scheduling Bias in Favor of the Prosecution**

86. The Judicial Defendants have engaged in a pattern of scheduling bias that has systematically disadvantaged the indigent defendant, violating her due process and equal protection rights under the Fourteenth Amendment.

87. The scheduling bias includes:

- Denying every single motion for a continuance filed by the indigent defendant.

- Scheduling critical hearings without sufficient notice, making it impossible for the defendant to secure legal representation or adequately prepare.

- Deliberately delaying any ruling on the defendant's motion for appointed counsel while simultaneously refusing to acknowledge her indigency status.

- Granting *sua sponte* continuances that benefited the prosecution while denying the defendant's continuance requests.

88. This pattern of judicial scheduling bias is evident from the following key events:

- On July 10, 2024, the defendant was forced to appear *pro se* before Referee Scott Murray, despite timely filing a continuance request.

- On November 13, 2024, the defendant was again forced into a hearing that was noticed as a trial without counsel, while the prosecution was afforded full opportunity to proceed.

- On February 13, 2025, Judge Pendleton issued an unconstitutionally vague scheduling order, failing to provide clear notice regarding the status of the case.

- The court refused to rule on the defendant's motion for appointed counsel at every stage, ensuring that she remained unrepresented while trial proceedings advanced.

89. The effect of these actions is a systematic effort to deny the indigent defendant meaningful legal representation.

90. This pattern constitutes an equal protection violation under the Fourteenth Amendment, as it treats indigent defendants differently than similarly situated criminal defendants with means to hire private counsel.

91. This conduct also violates procedural due process, as fundamental fairness requires that indigent defendants receive adequate notice and a meaningful opportunity to secure representation before being forced into legal proceedings.

92. The cumulative effect of these scheduling irregularities requires judicial intervention, including declaratory relief and an injunction against further biased scheduling practices.

**F. The Unconstitutional Consequences of This Systemic Breakdown**

93. The Judicial Defendants, Indigent Defense & Funding Defendants, and the New Hampshire Supreme Court have created an unlawful system where:

   • An indigent defendant is denied her constitutional right to counsel.

   • The state is coercing a private citizen (Plaintiff) into legal proceedings despite both parties consenting to representation only *under duress*, because the Judicial Defendants refuse to schedule any status of counsel hearing or otherwise rule on the indigent defendant's request for court-appointed professional counsel.

   • The state's highest court refuses to intervene to rectify clear constitutional violations.

94. Judge Pendleton has issued an unconstitutionally vague scheduling notice for a hearing on March 13, 2025, despite:

   • A long track record of the New Hampshire Judicial Branch failing to provide adequate notice to parties, including sending notices to incorrect addresses, failing to affix proper postage, and issuing untimely hearing notices.

   • This pattern of administrative failure violating procedural due process rights and hindering effective participation in legal proceedings.

95. The New Hampshire Judicial Branch has a well-documented history of failing to ensure that indigent defendants receive timely and fair consideration of their constitutional rights, raising broader concerns about the state's ability to administer justice fairly and impartially.

96. The pattern of judicial bias and scheduling manipulation in this case constitutes a fundamental breakdown in the administration of justice, necessitating extraordinary judicial relief.

97. Given these ongoing constitutional violations, Plaintiff seeks an injunction preventing Judge Pendleton from holding the scheduled hearing on March 13, 2025, as well as equitable relief requiring the New Hampshire Public Defender's Office and the Indigent Defense & Funding Defendants to fully fund and secure legal counsel for the indigent defendant.

## IV. Additional Facts Supporting As-Applied Challenge to N.H. Rev. Stat. § 173:B-9

98. N.H. Rev. Stat. § 173:B-9, as applied in this case, is unconstitutional because it has been weaponized to deprive the indigent defendant of due process and her First and Sixth Amendment rights.

99. The specific constitutional violations resulting from the application of this statute include:

   • Punishing the defendant allegedly for engaging in a constitutionally protected religious activity (attending a church service), in violation of the First Amendment's Free Exercise Clause.

   • Using the statute as a tool for selective and retaliatory prosecution, where similarly situated individuals have not faced criminal charges for comparable conduct.

   • Creating an unconstitutional presumption of guilt, where the defendant has been forced to contest criminal charges without counsel, violating fundamental due process protections.

   • Enabling unlawful incarceration, where the defendant was jailed without access to counsel, without a meaningful opportunity to contest the validity of the restraining order, and without a fair hearing on her status of counsel.

100. The New Hampshire Supreme Court's refusal to provide pre-trial appellate review further compounds the harm, as it ensures that the unconstitutional application of N.H. Rev. Stat. § 173:B-9 remains unchallenged.

101. Plaintiff seeks injunctive relief preventing further prosecution under N.H. Rev. Stat. § 173:B-9 unless and until the indigent defendant's constitutional rights are fully restored and meaningfully protected.

## V. Conclusion: Systemic Constitutional Breakdown Requires Judicial Intervention

102. The Judicial Defendants, Indigent Defense & Funding Defendants, and Prosecutorial Defendants have together created a legal system in which:

- Indigent defendants are denied legal representation in criminal proceedings.

- State actors manipulate procedural rules to systematically benefit the prosecution.

- Judicial officers refuse to address clear constitutional violations, effectively enabling the continued deprivation of fundamental rights.

103. These systemic failures constitute ongoing violations of the U.S. Constitution, requiring immediate judicial intervention.

104. Plaintiff respectfully requests declaratory and injunctive relief to correct these violations, ensure due process for indigent defendants, and prevent further unconstitutional prosecution under N.H. Rev. Stat. § 173:B-9.

## MATTERS OF LAW PLEAD COMMON TO ALL COUNTS

105. Plaintiff repeats and re-alleges ¶¶1-104 above.

106. Generally speaking, to prevail on a First Amendment retaliation claim, a plaintiff must prove: "(1) he or she engaged in constitutionally protected conduct, (2) he or she was subjected to an adverse action by the defendant, and (3) the protected conduct was a substantial or motivating factor in the adverse action." *D.B. ex rel. Elizabeth B. v. Esposito*, 675 F.3d 26, 43 (1st Cir. 2012).

107. Even in cases where there is a retaliatory arrest claim involving an actual arrest, the existence of probable cause is not fatal when a plaintiff is arrested in "circumstances where officers have probable cause to make arrests but typically exercise their discretion not to do so." *Nieves v. Bartlett*, 587 U.S. 391, 406 (2019). A plaintiff may even succeed on a retaliatory arrest claim despite probable cause if he or she "presents objective evidence that he [or she] was arrested when otherwise similarly situated individuals not engaged

in the same sort of protected speech had not been." *Id.* at 407. The rationale is that "an unyielding requirement to show the absence of probable cause could pose 'a risk that some [decision makers] may exploit the arrest power as a means of suppressing speech.'" *Id.* at 406.

108. More recently, our United States Supreme Court has explained that a plaintiff is not required to present evidence of "virtually identical and identifiable comparators" who "mishandled a government petition in the same way ... but were not arrested." *Gonzalez v. Trevino*, 602 U.S. 653, 658 (2024).

109. "It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must cause the injury. Specifically, it must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Nieves* at 398-99.

110. To succeed on a retaliation claim, a plaintiff need not prove that the alleged retaliation subjectively chilled him from engaging in conduct protected by the First Amendment. *Grossman v. Martin*, 566 F. Supp. 3d 136, 145 (D.R.I. 2021). Rather, he need only show (1) that he engaged in protected conduct, (2) the defendant took an adverse action against him, (3) his protected conduct was a substantial or motivating factor for the adverse action, and, (4) if the claim is for retaliatory arrest, that his arrest was not supported by probable cause (unless the Nieves exception applies). *Elizabeth B.*, 675 F.3d at 43; *Nieves*, 587 U.S. at 401, 406-07. "Regarding the second element, an adverse action in a First Amendment case is one that 'viewed objectively would have a chilling effect on the plaintiff's exercise of First Amendment rights,' or that 'would deter a reasonably hardy person from exercising his or her constitutional rights.'" *Pollack v. Reg. Sch. Unit 75*, 12 F. Supp. 3d 173, 188 (D. Me. 2014) (emphasis added; citation, brackets and ellipsis omitted) (quoting *Barton v. Clancy*, 632 F.3d 9, 29 & n.19 (1st Cir. 2011), and *Elizabeth B.*, 675 F.3d at 43 n.11). "Actual deterrence need not be shown." *Grossman*, 566 F. Supp. 3d at 145 (emphasis omitted) (quoting *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010)).

111. Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), a municipality may be held liable under § 1983 if the constitutional violation was caused by:

(a) an **official policy**,

(b) a **widespread custom or practice**, or

(c) an act of a **final policymaker**.

112. "Judicial immunity does not protect judges so much as it protects the judicial acts they undertake as part of their public service; it is 'defined by the *functions* it protects and serves, not by the person to whom it attaches.' (emphasis in original). As such, judges are not protected if they act in the 'clear absence of all jurisdiction over the subject-matter' or when they engage in nonjudicial acts." *Gibson v. Goldston*, 85 F. 4th 218, 223 (4th Circ. 2023).

113. The United States Supreme Court has "has distinguished judges' judicial functions, which are protected by judicial immunity, from their 'administrative, executive, or legislative functions,' which are not." *Gibson* at 225, citing *Forrester v. White*, 484 U.S. 219 (1988).

114. The First Circuit has also explained that judges may be defendants under § 1983 when they are not acting purely in their adjudicative capacity. *In re Justices of Supreme Court of Puerto Rico*, 695 F. 2d 17 (1st Cir. 1982). Indeed, any "argument that they are simply immune from suit for injunctive or declaratory relief is wrong; the district court correctly held that there is no such absolute immunity and that injunctions can be issued against judges in an appropriate case." *Id.* at 25-26.

115. "Congress plainly intended declaratory relief to act as an alternative to the strong medicine of the injunction." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 33 (2008), citing *Steffel v. Thompson*, 415 U.S. 452 (1974).

116. The New Hampshire state courts do <u>not</u> provide adequate opportunity to raise the constitutional challenges brought here, and any abstention by this Court will cause irreparable harm. *Sirva Relocation, LLC v. Richie*, 794 F. 3d 185 (1st Cir. 2015), citing *Younger v. Harris*, 401 U.S. 37 (1971).

117. "Four requirements must be met in order for Rooker-Feldman to bar suit: '(1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments.'" *Allen v. DeBello*, 861 F.3d 433, 438 (3d Cir. 2017). Indeed, "the doctrine has narrow applicability. Rooker-Feldman does not bar suits that challenge actions or injuries underlying state court decisions – and especially those that predate entry of a state court decision – rather than the decisions themselves." *Id*.

## STANDING

### A. Plaintiff's Standing Under Article III of the U.S. Constitution

118. Plaintiff repeats and re-alleges paragraphs 1 through 117 above.

119. Plaintiff has standing to bring this action under Article III of the U.S. Constitution, which requires (1) an injury-in-fact, (2) causation, and (3) redressability. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

120. Plaintiff's injury-in-fact arises from multiple, ongoing constitutional violations:

- Plaintiff has been forced to provide legal representation in a criminal proceeding despite not being a licensed attorney, exposing him to potential legal liability, ethical conflicts, and professional harm. This constitutes a direct, concrete injury under *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378–79 (1982).

- Plaintiff's First Amendment right to petition the government for redress of grievances has been unlawfully burdened. The United States Supreme Court has held that petitioning the courts for relief is a core constitutional right protected under the Petition Clause of the First Amendment. *See Borough of Duryea v. Guarnieri*, 564 U.S. 379, 388–97 (2011).

- Plaintiff has suffered an injury to his procedural due process rights, as Defendants have denied meaningful notice, provided vague judicial orders, and systematically manipulated court procedures to the detriment of Plaintiff and the indigent defendant. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

121. Causation is satisfied because the constitutional violations at issue—denial of counsel, judicial bias, scheduling manipulation, and compelled legal representation—are directly traceable to Defendants' actions.

122. Redressability is satisfied because this Court can issue declaratory relief, injunctive relief, and equitable relief that will remedy the ongoing constitutional violations and prevent further harm to both Plaintiff and the indigent defendant. *See Franklin v. Massachusetts*, 505 U.S. 788, 803 (1992).

## B. Plaintiff's Standing Under the First Amendment Petition Clause

123. Plaintiff's standing is further reinforced by the First Amendment's Petition Clause, which protects the right to seek redress through the courts and other governmental processes. *See Guarnieri*, 564 U.S. at 388–97 (explaining that the Petition Clause safeguards both individual grievances and broader public concerns).

124. Plaintiff engaged in protected petitioning activity when he sought judicial relief regarding the indigent defendant's unconstitutional lack of counsel and challenged unconstitutional state actions.

125. Defendants retaliated against Plaintiff's petitioning activity by:

- Issuing unconstitutionally vague and misleading judicial orders that obstructed Plaintiff's ability to advocate effectively.

- Unlawfully compelling Plaintiff to act as legal counsel to deter him from further advocacy.

- Weaponizing procedural rules and scheduling practices to impose burdensome, unpredictable litigation costs and time constraints.

126. The United States Supreme Court has repeatedly affirmed that the right to petition extends to all branches of government, including the judiciary. *See BE & K Constr. Co. v. NLRB*, 536 U.S. 516, 525 (2002); *McDonald v. Smith*, 472 U.S. 479, 484 (1985).

## C. Third-Party Standing

127. Plaintiff also has third-party standing to assert the constitutional rights of the indigent defendant, who faces imminent and irreparable harm due to the continued denial of legal representation. The indigent defendant is actively being prosecuted in violation of *Gideon v. Wainwright*, 372 U.S. 335 (1963) and *Strickland v. Washington*, 466 U.S. 668 (1984), yet lacks the ability to adequately protect her rights within the existing state court system. Plaintiff has a close relationship with the indigent defendant in these proceedings, as he was forced to act in a limited capacity under N.H. Rev. Stat. § 311:1, and there are significant obstacles preventing the indigent defendant from asserting her own rights – most notably, her ongoing lack of professional legal counsel. *See Kowalski v. Tesmer*, 543 U.S. 125 (2004) (finding that third-party standing exists where there is a close relationship and a substantial barrier to direct assertion of rights).

## D. Comparison to New Hampshire's Expanded Standing Doctrine (Cf. N.H. Const. Pt. I, Art. 8 (as amended 2018)).

128. New Hampshire's standing doctrine, as amended in 2018, provides an even broader basis for standing than Article III, reinforcing the significance of Plaintiff's claims. The New Hampshire Supreme Court has recognized that standing is not limited to the traditional "injury-in-fact" test but instead includes the ability of individuals to challenge government action based on a strong public interest in legal compliance. *See Carrigan v. N.H. Dep't of Health & Human Servs.*, 174 N.H. 362, 370 (2021).

129. Cf. *Carrigan*, 174 N.H. at 370 (noting that New Hampshire's standing doctrine is broader than its federal counterpart, allowing citizens to petition for redress of constitutional violations even where traditional standing might be questioned in federal court).

130. While federal law ultimately governs standing in this case, New Hampshire's broader approach underscores the importance of judicial review in cases involving systemic constitutional violations.

## E. Conclusion

131. Plaintiff satisfies all elements of Article III standing and has an additional basis for standing under the First Amendment's Petition Clause. Plaintiff also enjoys third-party standing. While New Hampshire's broader standing doctrine does not control in this Court, it highlights the strong public interest in adjudicating Plaintiff's claims.

132. Because Plaintiff seeks declaratory, injunctive, and equitable relief to prevent ongoing constitutional violations, this Court has both the jurisdiction and the authority to hear the case and grant appropriate relief. *See Ex parte Young*, 209 U.S. 123 (1908).

## CAUSES OF ACTION

### COUNT I – Violation of the Sixth and Fourteenth Amendments

*(Denial of professional counsel to indigent criminal defendant)*

133. Plaintiff repeats and re-alleges paragraphs 1 through 132 above.

134. The Sixth Amendment, as incorporated against the states through the Fourteenth Amendment, guarantees the right to the assistance of counsel in criminal proceedings. *See Gideon v. Wainwright*, 372 U.S. 335 (1963).

135. The Judicial Defendants refused to schedule any hearing on the indigent defendant's motion for appointed counsel, thereby depriving the defendant of effective assistance of professional counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984).

136. The New Hampshire Supreme Court declined to provide any pre-trial appellate review, even on the indigent defendant's request for appellate review of her status of counsel. The question of whether an appeal in the state system is one of right or discretion is also a federal question, as recognized in

*State v. Cooper*, 127 N.H. 119, 124 (1985), citing *Evitts v. Lucey*, 469 U.S. 387 (1985).

137. The denial of counsel at critical stages of a criminal proceeding is structural error, requiring automatic reversal under *Penson v. Ohio*, 488 U.S. 75 (1988).

138. Structural error is presumed when a defendant is denied counsel entirely, regardless of whether prejudice is shown, under *United States v. Cronic*, 466 U.S. 648 (1983).

139. Judge Pendleton also violated this right by forcing Plaintiff, a non-lawyer, to provide legal representation to an indigent defendant despite Plaintiff's lack of a law license. This compelled representation exposes Plaintiff to potential legal liability, ethical conflicts, and professional harm.

140. The actions of Judge Pendleton constitute an ongoing constitutional violation, undermining the fairness of the criminal process and directly harming both the indigent defendant and Plaintiff.

141. Because the Judicial Defendants' actions are ongoing, Plaintiff lacks an adequate remedy at law and seeks declaratory and injunctive relief to vindicate constitutional rights.

142. Plaintiff also seeks equitable relief from the Indigent Defense and Funding Defendants to compel them to pay for effective assistance of professional counsel for the indigent defendant.

**COUNT II – Violation of the Fifth Amendment**

*(Compelled Self-Incrimination )*

143. Plaintiff repeats and re-alleges paragraphs 1 through 142 above.

144. The Fifth Amendment, as incorporated against the states through the Fourteenth Amendment, guarantees that no person "shall be compelled in any criminal case to be a witness against himself." *See Malloy v. Hogan*, 378 U.S. 1 (1964).

145. On July 10, 2024, Referee Scott Murray forced the indigent defendant to answer questions in what was effectively a deposition, despite:

- The defendant appearing *pro se* after having requested a continuance more than 10 days in advance.

- The proceeding being noticed *as a trial*, not a pre-trial hearing or status conference.

- Murray acting in the complete absence of all jurisdiction to preside over a jury-eligible criminal case without the defendant's consent. *See* N.H. Rev. Stat. § 490-F:15. *See also Gibson v. Goldston*, 85 F. 4th 218, (4th Cir. 2023) (explaining that judicial officers are not immune from suit if they act in the complete absence of all jurisdiction over the subject matter).

146. Referee Murray never advised the indigent defendant of her Fifth Amendment rights, nor did he provide any notice that her statements could be used against her.

147. The compelled questioning violated the indigent defendant's constitutional right to remain silent and was done in the absence of counsel, further exacerbating the violation.

148. By compelling potentially self-incriminating testimony from a *pro se* defendant without warning her of her constitutional rights, Referee Murray's actions constitute a clear violation of the Fifth Amendment.

149. Plaintiff seeks declaratory relief recognizing this violation.

**COUNT III – Violation of the Fourteenth Amendment**

*(Void for Vagueness Doctrine)*

150. Plaintiff repeats and re-alleges paragraphs 1 through 149 above.

151. Judge Pendleton's scheduling order dated February 13, 2025, is so vague as to be unconstitutional under the Due Process Clause of the Fourteenth Amendment.

152. Judge Pendleton's order dated February 13, 2025 on Plaintiff's *Motion to Address Status of Counsel*, is so vague as to be unconstitutional under the Due Process Clause of the Fourteenth Amendment.

153. The United States Supreme Court has recognized that vague judicial orders violate due process because they fail to provide fair notice of what is required or prohibited. *See Longshoremen v. Philadelphia Marine Trade Ass'n.*, 389 U.S. 64, 76 (1967).

154. Judge Pendleton's scheduling order dated February 13, 2025 is a self-styled "Order on Motion to Continue" – despite no party requesting a continuance.

155. Judge Pendleton claims "The Defendant and her non-lawyer representative Mr. Albrecht had requested the matter be rescheduled" when in fact some Judicial Defendants *sua sponte* continued the February 13, 2024 *trial* – that was noticed *as a trial*.

156. Plaintiff acknowledges the indigent defendant did not ever waive her right to a speedy trial in Massachusetts in 2022, and explicitly asserted her right to a speedy adjudication in New Hampshire of her motion for court appointed counsel.

157. However, Judge Pendleton also *invented, sua sponte*, "they [the defendant and her non-lawyer representative] have also asserted a right to a speedy trial], despite that *the defendant explicitly waived her right to a speedy trial in New Hampshire on the merits*.

158. Judge Pendleton further denied Plaintiff's *Motion to Address Status of Counsel* on the grounds that the indigent defendant "had not complied with Judge Walch's 11/14/24 Order" – when there does not appear to be *any order at all* issued by Judge Walch on 11/14/24.

159. Here, the order is so unintelligible that it does not provide adequate notice to Plaintiff or any party of its meaning, rendering it constitutionally deficient.

160. By issuing vague and confusing orders, Judge Pendleton deprived Plaintiff of the ability to understand the court's expectations, comply with procedural rules, or challenge any improper rulings.

## COUNT IV – Violation of Due Process and Equal Protection

*(Systemic Bias in Scheduling)*

161. Plaintiff repeats and re-alleges paragraphs 1 through 160 above.

162. The history of scheduling in the underlying state case demonstrates clear bias against the defense, favoring the prosecution at nearly every procedural stage.

163. Various Judicial Defendants denied <u>all</u> of the indigent defendant's motions to continue (filed *pro se*) – first forcing her into an unrepresented hearing on July 10, 2024 where *she was noticed she was on trial* – and then forcing her into a second hearing on November 13, 2024 where *she was also noticed she was on trial*.

164. Had the Judicial Defendants continued these hearings and provided professional counsel to the indigent defendant, Plaintiff would never have filed any appearance under N.H. Rev. Stat. § 311:1 at the "eleventh hour" to represent the indigent defendant.

165. Subsequently, after Plaintiff successfully excluded all evidence proffered by the State at the November 13, 2024 *trial*, Judge Walch *sua sponte* continued the November 13, 2024 trial to benefit the State, despite that the Judicial Defendants denied *all* requests for *any* continuance made by the indigent defendant.

166. This procedural disparity demonstrates an unconstitutional favoritism toward the prosecution.

167. The Equal Protection Clause of the Fourteenth Amendment prohibits state actors from systematically disadvantaging one side in judicial proceedings.

168. The cumulative effect of Judge Pendleton's procedural rulings demonstrates an unconstitutional pattern of bias that violates both procedural due process and equal protection.

## COUNT V – Violation of Procedural Due Process

*(Improper Notice & Right to a Fair Hearing)*

169. Plaintiff repeats and re-alleges paragraphs 1 through 168 above.

170. The Fourteenth Amendment guarantees procedural due process before the government deprives an individual of a protected liberty or property interest.

171. Various Judicial Defendants violated this right by refusing to schedule a hearing on the indigent defendant's motion for appointed counsel, effectively preventing the defendant from receiving a fair determination of her right to representation.

172. The Judicial Defendants further violated due process by:

- Denying *all* of the defendant's motions to continue, forcing her into an unrepresented hearing, and trials where she was not afforded the assistance of any professional attorney, despite explicitly requesting such assistance.

- Later continuing her trial *sua sponte* when it benefited the prosecution.

173. Due process requires that notice be reasonably calculated to apprise interested parties of proceedings affecting their rights. *See Jones v. Flowers, 547 U.S. 220 (2006).*

174. Judge Pendleton's scheduling order, dated February 13, 2025, was not properly served on Plaintiff and contained deadlines that had already expired by the time it was received by mail.

175. This failure to provide timely and effective notice deprived Plaintiff of an opportunity to comply with or challenge the order, further violating procedural due process.

## COUNT VI – Monell Claim Against Massachusetts Law Enforcement Defendants

*(Monell Claim – First and Fourteenth Amendments – Free Speech; Free Exercise; Petition Clause; Due Process)*

176. Plaintiff repeats and re-alleges paragraphs 1 through 175 above.

177. The Fourteenth Amendment guarantees that individuals shall not be deprived of their rights without due process of law, including protection from arbitrary government threats.

178. Massachusetts Law Enforcement Defendants, acting under color of state law, have an unconstitutional policy, custom, or practice of weaponizing protective orders and criminal prosecutions to harass and intimidate individuals.

179. This includes the wrongful prosecution of Ms. Berard, despite the fraudulent nature of the underlying restraining order.

180. The actions of the Massachusetts Law Enforcement Defendants are further intended to chill Ms. Berard's First Amendment Rights to Free Speech, her First Amendment Rights to the Free Exercise of her religious beliefs, her First Amendment Rights to Petition for Redress of Grievances; and her Fourteenth Amendment Rights not to be subject to malicious and baseless harassment by means of malicious prosecution and retaliatory arrest.

181. This practice reflects deliberate indifference to constitutional rights, violating *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658 (1978).

**COUNT VII – Illegal Incarceration**

*(Fourteenth Amendment)*

182. Plaintiff repeats and re-alleges paragraphs 1 through 181 above.

183. On March 15, 2024, Seabrook Police Officer Kassandra Kaminski arrested Ms. Berard during a routine traffic stop in New Hampshire.

184. The Prosecutorial Defendants subsequently had Ms. Berard held in preventative detention for three days with no access to counsel.

185. The Prosecutorial Defendants incarcerated Ms. Berard, despite:

- Knowing that the underlying charges were unconstitutional.

- Knowing that Massachusetts had already dismissed an identical case.

186. This practice reflects deliberate indifference to constitutional rights, and is intended to be purely punitive in nature, rather than related to any legitimate government objective. "Punitive measures many not constitutionally be imposed prior to a determination of guilt." *Bell v. Wolfish*, 441 U.S. 520, 537 (1979).

**COUNT VIII – Monell Claim Against Town of Seabrook**

*(Monell Claim – First and Fourteenth Amendments – Free Speech; Free Exercise; Petition Clause; Due Process)*

187. Plaintiff repeats and re-alleges paragraphs 1 through 186 above.

188. The Fourteenth Amendment guarantees that individuals shall not be deprived of their rights without due process of law, including protection from arbitrary government threats.

189. Prosecutorial Defendants, acting under color of state law, have an unconstitutional policy, custom, or practice of weaponizing protective orders and criminal prosecutions to harass and intimidate individuals.

190. This includes the wrongful prosecution of Ms. Berard, despite the fraudulent nature of the underlying restraining order.

191. The actions of the Prosecutorial Defendants are further intended to chill Ms. Berard's First Amendment Rights to Free Speech, her First Amendment Rights to the Free Exercise of her religious beliefs, her First Amendment Rights to Petition for Redress of Grievances; and her Fourteenth Amendment Rights not to be subject to malicious and baseless harassment by means of malicious prosecution, retaliatory arrest, and wrongful incarceration.

192. This practice reflects deliberate indifference to constitutional rights, and is intended to be purely punitive in nature, rather than related to any legitimate government objective. "Punitive measures many not constitutionally be imposed prior to a determination of guilt." *Bell v. Wolfish*, 441 U.S. 520, 537 (1979).

193. This deliberate indifference to constitutional rights violates *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658 (1978).

**COUNT IX – First Amendment Violation – Plaintiff's Right to Petition**

*(First Amendment – Petition Clause)*

194. Plaintiff repeats and re-alleges paragraphs 1 through 193 above.

195. Plaintiff sought assistance from Defendant Creegan, including requesting discovery, in furtherance of a legitimate legal effort to ensure constitutional compliance.

196. This should be construed as a petition under the First Amendment's Petition Clause.

197. Creegan's emailed response on February 10, 2024, which implied that Plaintiff should personally retain an attorney despite acting solely as a good Samaritan, constitutes retaliation against Plaintiff for engaging in protected petitioning activity.

198. Creegan's emailed response on February 10, 2024, which implied that Plaintiff's unrelated family law matter had any bearing on the indigent criminal defendant, constitutes retaliation against the indigent defendant arising out of the Judicial Defendants' bias against Plaintiff in prior unrelated litigation where Plaintiff was a party.

## COUNT X – Fourteenth Amendment Violation – Risk of Judicial Bias

*(Fourteenth Amendment – Due Process)*

199. Plaintiff repeats and re-alleges paragraphs 1 through 198 above.

200. Defendant Anna Barbara Hanz Marconi is presently being criminally prosecuted by the State of New Hampshire and has been indicted for two Class B felonies: one count of *Attempt to Commit Improper Influence*[1] and one count of *Criminal Solicitation of Improper Influence*.[2] She also faces five Class A misdemeanors: two counts of *Criminal Solicitation of Misuse of Position*,[3] one count of *Criminal Solicitation of Official Oppression*,[4] one count of *Official Oppression*,[5] and one count of *Obstructing Government Administration*.[6] She is accused of attempting to influence the investigation into her husband by soliciting New Hampshire Governor Chris Sununu to expedite its conclusion.

---

[1]  N.H. Rev. Stat. § 629:1, I; N.H. Rev. Stat. § 640:3, I(b)
[2]  N.H. Rev. Stat. § 629:2, I; N.H. Rev. Stat. § 640:3, I(b)
[3]  N.H. Rev. Stat. § 629:2, I; N.H. Rev. Stat. § 21-G:23, II
[4]  N.H. Rev. Stat. § 629:2, I; N.H. Rev. Stat. § 643:1
[5]  N.H. Rev. Stat. § 643:1
[6]  N.H. Rev. Stat. § 21-G:23, II

201. Defendant Marconi has stated under oath that Defendant Gordon MacDonald instructed her, in advance of the actions she is being criminally charged for, that "I think you can do that – You are a constituent and have concerns."

202. On August 2, 2024, Investigator Tom Desfosses from the New Hampshire Attorney General's office interviewed Defendant Gordon MacDonald.

203. Defendant Gordon MacDonald was represented by Defendant Creegan during this interview.

204. Defendant MacDonald's statements do not agree with Defendant Marconi's claim (at ¶131).

205. The reasonable inference is that either Defendant Marconi lied in her sworn accord, or Defendant MacDonald lied in his August 2, 2024 interview, or both.

206. Defendant Creegan has unilaterally attempted in the indigent criminal proceedings to introduce evidence of Plaintiff's alleged prior actions with Defendant MacDonald into the state court criminal proceedings to influence New Hampshire state court judicial officers to find against the indigent criminal defendant on the basis of <u>unrelated</u> alleged prior interactions between Plaintiff and Defendant MacDonald.

207. Under the Due Process Clause of the Fourteenth Amendment, judicial recusal is required where there is a significant risk of actual bias or prejudgment, even without proof of actual bias. *Caperton v.A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 129 S.Ct. 2252, 2255 (2009). The United States Supreme Court has emphasized that "the question is whether, 'under a realistic appraisal of psychological tendencies and human weakness,' the interest 'poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.'" *Id.*

208. Consequently, if a judicial officer in the New Hampshire Judicial Branch has a conflict with Defendant Creegan, it would be a conflict of interest and violation of the Fourteenth Amendment for that judicial officer to issue rulings on motions filed by Defendant Creegan, or to preside over hearings where Defendant Creegan appears.

209. The Judicial Defendants have failed to recuse themselves in matters where Attorney Creegan has appeared.

210. Consequently, Plaintiff seeks declaratory relief that the conflicts between Attorney Creegan and the other Judicial Defendants have resulted in orders that violate the Fourteenth Amendment guarantee against any risk of bias. *See Caperton. See also Rippo v. Baker, 580 U.S. 285 (2017)* ("overturning a judgment of the Supreme Court of Nevada when it applied the wrong legal standard where a Nevada judge was the target of a federal bribery probe").

## COUNT XI – Fourteenth Amendment Violation – N.H. Rev. Stat. § 173:B-9 is Unconstitutional As-Applied

*(As-applied challenge to constitutionality of state statute)*

211. Plaintiff repeats and re-alleges paragraphs 1 through 210 above.

212. The statute under which the defendant is charged, N.H. Rev. Stat. § 173:B-9, is unconstitutional as applied because it is being used to deprive the defendant of the right to counsel, violates due process, and contributes to a fundamentally unfair trial process.

213. The application of N.H. Rev. Stat. § 173:B-9 against the indigent defendant has:

   • Deprived her of professional legal counsel in a criminal prosecution, violating *Gideon v. Wainwright, 372 U.S. 335 (1963)*.

   • Resulted in retaliatory and selective prosecution, where similarly situated individuals are not prosecuted for allegedly attending church services.

   • Been used as a pretext for unconstitutional incarceration, where the indigent defendant was jailed without counsel and without a meaningful opportunity to contest the order's validity.

214. The statute's as-applied enforcement in this case has created an unconstitutional presumption of guilt, forcing the indigent defendant to navigate complex legal proceedings alone, in violation of due process guarantees under the Fourteenth Amendment.

215. The New Hampshire Supreme Court's refusal to provide pre-trial appellate review of the defendant's status of counsel compounds this violation by denying her meaningful judicial recourse, ensuring that the unconstitutional application of N.H. Rev. Stat. § 173:B-9 remains unchallenged.

216. The application of N.H. Rev. Stat. § 173:B-9 in this case has also violated the indigent defendant's First Amendment rights by punishing her for allegedly attending a religious service, a constitutionally protected activity under *Employment Division v. Smith*, 494 U.S. 872 (1990). *See also* *State v. Mack*, 173 N.H. 793 (2020).

217. The selective and retaliatory enforcement of N.H. Rev. Stat. § 173:B-9 against the indigent defendant, while simultaneously denying her effective legal representation, renders the statute unconstitutional as applied in this instance.

218. Plaintiff seeks declaratory relief that N.H. Rev. Stat. § 173:B-9, as applied in this case, is unconstitutional, and injunctive relief preventing further prosecution of the indigent defendant under this statute unless and until her constitutional right to counsel is fully restored and meaningfully protected.

## JURY TRIAL DEMAND

219. Plaintiff demands a trial by jury on all disputed issues of fact so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

### **Declaratory Relief**

A) A declaration that the Judicial Defendants violated the indigent defendant's Sixth and Fourteenth Amendment rights by failing to provide a hearing or ruling on her motion for appointed counsel and by forcing her into trial proceedings without legal representation; and,

B) A declaration that the indigent defendant's prosecution under N.H. Rev. Stat. § 173:B-9 is unconstitutional as-applied in this case because:

- It is being used to deprive the indigent defendant of her right to professional legal counsel in a criminal prosecution;

- It has resulted in selective and retaliatory prosecution for alleged conduct that does not meet the statute's intended purpose;

- It has led to unconstitutional incarceration without counsel or a meaningful opportunity to contest the charges; and,

C) A declaration that Referee Scott Murray violated the indigent defendant's Fifth Amendment rights by compelling self-incriminating testimony without warning her of her constitutional rights; and,

D) A declaration that the Judicial Defendants' pattern of scheduling bias – denying the indigent defendant's continuance requests while *sua sponte* granting continuances that benefited the prosecution – violated her right to due process and equal protection under the Fourteenth Amendment; and,

E) A declaration that the New Hampshire Supreme Court's refusal to exercise discretionary appellate review of the indigent defendant's status of counsel constitutes an unconstitutional denial of meaningful judicial review; and,

F) A declaration that Judge Pendleton's scheduling orders, including the February 13, 2025 order, are unconstitutionally vague, depriving Plaintiff

and the indigent defendant of fair notice in violation of the Due Process Clause of the Fourteenth Amendment; and,

**Injunctive Relief**

G) A preliminary and permanent injunction preventing further prosecution of the indigent defendant under N.H. Rev. Stat. § 173:B-9 unless and until her constitutional right to counsel is restored and meaningfully protected; and,

H) A preliminary and permanent injunction preventing any Judicial Defendant from holding the hearing scheduled for March 13, 2025, or any future hearings that fail to properly address the indigent defendant's status of counsel; and,

I) A preliminary and permanent injunction preventing any Judicial Defendant from presiding over any hearing or ruling on any motion where there is a conflict of interest with a party or attorney; and,

J) A mandatory injunction compelling the New Hampshire Public Defender's Office and the Indigent Defense & Funding Defendants to provide the indigent defendant with effective assistance of professional counsel at state expense; and,

K) A mandatory injunction requiring the New Hampshire Judicial Branch to implement procedural safeguards to ensure that:

- Indigent defendants are not forced into trial proceedings without a timely and fair determination of their right to appointed counsel;

- Indigent defendants are not forced into trial proceedings without the effective assistance of counsel;

- State trial court defendants receive adequate notice of scheduling orders that are clear, unambiguous, and properly served;

- Judicial officers do not improperly interfere with a defendant's right against self-incrimination; and,

**Equitable Relief**

L)  An order directing the New Hampshire Public Defender's Office to cover all costs associated with securing professional legal representation for the indigent defendant in this case who will provide effective assistance of counsel; and,

M)  An order directing the Indigent Defense & Funding Defendants to reimburse Plaintiff for all litigation costs and expenses incurred due to the state's failure to provide adequate legal representation to the indigent defendant; and.

N)  Award Plaintiff's costs of suit and reasonable attorneys' fees and other expenses under 42 U.S.C. § 1988; and,

**Further Relief**

O)  Such other and further relief as the Court deems just, proper, and necessary to prevent future constitutional violations and ensure meaningful access to justice for indigent defendants; and,

P)  Any other such other relief as the Court deems just and equitable.

Respectfully submitted,

DANA ALBRECHT
*Pro Se*
131 Daniel Webster Hwy #235
Nashua, NH 03060
(603) 809-1097
dana.albrecht@hushmail.com

March 5, 2025.

- 43 -