THE STATE OF NEW HAMPSHIRE
SUPREME COURT

No. 2025-0129

**State of New Hampshire**
v.
**Destinie L. Berard**

## Motion to Recuse Chief Justice Gordon MacDonald

NOW COMES Destinie L. Berard, by and through her non-attorney representative Dana Albrecht, and respectfully moves for the recusal of Chief Justice Gordon MacDonald in the above-captioned matter. In support thereof, Ms. Berard states the following:

### I. FACTUAL BASIS FOR RECUSAL

### A. Introduction

1. This motion is supported by two primary exhibits, both of which are incorporated by reference:
   - **Exhibit A:** Transcript of an interview with Chief Justice Gordon MacDonald conducted by the New Hampshire Attorney General's Office on August 2, 2024 (hereto, the *"Interview Transcript"*). This interview was not released publicly until January 13, 2025.
   - **Exhibit B:** Verified *Motion to Recuse Chief Justice Gordon MacDonald* filed on October 23, 2024, in *In re Hantz Marconi, No. LD-2024-0014* (hereto, the "Verified Motion to Recuse").

– 1 –

## B. Position and Authority – Justice MacDonald

2. Chief Justice Gordon MacDonald has served as Chief Justice of the New Hampshire Supreme Court since approximately March 2021. *(Interview Transcript, p. 3, lines 21 – 23)*

3. Prior to his appointment, he served as Attorney General of New Hampshire from 2017 until March 2021. *(Id., p. 4, lines 20 – 22)*

4. As Chief Justice, MacDonald serves both as a voting member of the five-member court and as administrative head of the New Hampshire Judicial Branch. *(Id., p. 5, lines 8 – 15)*

## C. Early Awareness and Pre-June Events – Justice MacDonald

5. In or about May 2024, Justice Hantz Marconi informed Chief Justice MacDonald that grand jury subpoenas were being issued, indicating her knowledge of a criminal investigation involving her husband, Geno Marconi. *(Id., p. 16, lines 3 – 5)*

6. A second such conversation occurred in or about July 2024, again confirming issuance of subpoenas. *(Id., p. 16, lines 8 – 14)*

7. On or about May 9, 2024, this Court issued a public statement explaining Justice Marconi's recusal from certain matters due to the Attorney General's Office advising the Pease Development Authority (PDA), where her husband was employed. Justice MacDonald confirmed that Justice Marconi did not request this statement. *(Id., pp. 18 – 21, esp. p. 21, lines 1 – 3)*

8. Justice MacDonald acknowledged the rationale given in the public statement may have been ambiguous, noting that the Civil Bureau – not the Criminal Bureau – ordinarily advises the PDA. *(Id., p. 21, lines 10 – 21)*

## D. The June 6, 2024 Meeting — Justice Marconi and Governor Sununu

9. In early June 2024, Governor Sununu called Chief Justice MacDonald and informed him that Justice Marconi had requested a meeting. Justice MacDonald responded, **"That's news to me."** *(Id., p. 7, line 22 through p. 8, line 16)*

10. Justice MacDonald confirmed that he had no prior knowledge of the meeting and was not consulted beforehand. *(Id., p. 8, lines 18 – 20)*

11. On June 6, 2024, Justice Marconi met with Governor Sununu. *(Verified Motion to Recuse, ¶11)*

12. In mid-June, the Governor called Justice MacDonald again and provided a "read-out" of the meeting. *(Interview Transcript, p. 9, lines 1 – 9)*

13. According to Justice MacDonald, the Governor stated that Justice Marconi:
    a. Described the Attorney General as "weak" and "very political";
    b. Claimed to "know everything her husband knew"; and
    c. Expressed that her extensive recusals were a burden on her colleagues.
    *(Id., p. 12, lines 1 – 13; see also p. 24, lines 7 – 14)*

14. Justice MacDonald strongly disagreed with the third point and responded: "We will get the work done. We will serve the people of New Hampshire. It is no burden on us to do our job." *(Id., p. 13, lines 5 – 11; see also p. 30, lines 2 – 6)*

## E. Contradictory Sworn Statements — Justice MacDonald and Justice Marconi

15. In his August 2 Interview, MacDonald stated under oath that he had no communication with Justice Marconi about the June 6 meeting – either before or after. *(Id., p. 25, lines 15 – 22)*

16. In her *Verified Motion to Recuse*, Justice Marconi stated that she told MacDonald beforehand she was considering the meeting. *(Verified Motion to Recuse, ¶11)*

17. According to Justice Marconi, Justice MacDonald replied, **"I think you can do that – You are a constituent and have concerns."** *(Id.)*

18. Justice Marconi verified this statement under oath by attached affidavit. (*Id.*)

### F. Post-Meeting Judicial Conduct – Justice MacDonald and Justice Marconi

19. On July 8, 2024, in *K.A. v. D.A.*, No. 2023-0181, this Court issued an order authored by Justice MacDonald denying a motion to clarify Justice Marconi's participation:

    > "Justice Hantz Marconi has reviewed this matter and has determined that she is not disqualified."
    > *(Order dated July 8, 2024)*

20. This indicates that Justice Marconi remained involved in adjudicatory work one month after her meeting with Governor Sununu – despite knowing of the investigation and, per Justice MacDonald's testimony, without informing him.

21. The July 8, 2024 order in *K.A. v. D.A.* was issued with concurrence from all five justices, including Justice Marconi and Justice MacDonald.

22. On August 8, 2024, D.A. filed a motion to vacate the July 8 order based on recusal and conflict concerns.

23. On August 16, 2024, Justice MacDonald denied that motion.

24. **As of that date, the *Interview Transcript* had not yet been made public.**

25. On January 8, 2025, MacDonald issued another order in *K.A. v. D.A.* denying recusal, affirming he had no bias or disqualifying knowledge.

26. **The *Interview Transcript* of Justice MacDonald was not released publicly until January 13, 2025 – five days after Justice MacDonald's January 8 order in *K.A. v. D.A.***

### G. Conflict Involving Attorney Erin Creegan

27. Attorney Erin Creegan actively participated in the trial court proceedings in *State v. Berard*, No. 441-2024-CR-00353, including appearing at a motion(s) hearing on December 18, 2024, where she raised the issue of *K.A. v. D.A.* and argued that the

undersigned's alleged prior interactions with Chief Justice MacDonald were cause for a finding <u>against Ms. Berard.</u>

28. Attorney Creegan also represents Chief Justice MacDonald in matters related to the criminal proceedings involving Justice Marconi, <u>State of New Hampshire v. Anna Barbara Hanz Marconi, No. 217-2024-CR-01167</u>.

29. On February 4, 2025, in the *Berard* trial court proceedings, the defense moved to recuse all judges with a potential conflict involving Attorney Creegan.

30. The trial court denied the motion solely on the basis that Judge Dorothy Walch stated she had no such conflict.

31. Question 5 raised in this appeal asks whether the trial court erred in failing to consider whether other assigned judges may have had such a conflict.

32. Given that Attorney Creegan is Chief Justice MacDonald's personal attorney, it would be fundamentally improper for him to adjudicate this issue. A reasonable person could not have confidence in such an arrangement.

## II. ARGUMENT

33. There are situations that require a judge to abstain from a case proactively, without waiting for objections from the parties involved. *See, e.g.*, <u>Edwards v. Russell, 1839 WL 3312 (N.Y. Sup. Ct. 1839)</u> which this Court cited as persuasive authority in deciding <u>Moses v. Julian, 45 N.H. 52 (1863)</u> (finding a judge should recuse himself if he is interested in the case).

34. The New Hampshire Constitution provides, in part, that:

**"It is essential to the preservation of the rights of every individual, his life, liberty, property, and character, that there be an impartial interpretation of the laws, and administration of justice."**

and therefore that:

**"It is the right of every citizen to be tried by judges as impartial as the lot of humanity will admit."**
N.H. Const. Pt. I, Art. 35.

35. "The Code of Judicial Conduct reflects this guarantee." *State v. Ayer*, 150 N.H. 14, 35 (2003).

36. The New Hampshire Code of Judicial Conduct requires disqualification of a judge in a proceeding in which the judge's impartiality might reasonably be questioned and to avoid even the appearance of impropriety. *State v. Whittey*, 149 N.H. 463, 465 (2003) (quoting *State v. Bader*, 148 N.H. 265, 268 (2002)). *See* Sup. Ct. R. 38, Canon 2.11.

37. Beyond the specific situations described in Canon 2.11, appearances of impropriety also require a judge's disqualification. *Whittey*, 149 N.H. at 465. *See also Bader*, 148 N.H. at 268. An appearance of impropriety "is determined under an objective standard, *i.e.*, would a reasonable person, not the judge herself, question the impartiality of the court." *Blevens v. Town of Bow*, 146 N.H. 67, 69 (2001) (quoting *Taylor-Boren v. Isaac*, 143 N.H. 261, 268 (1998)). "The test for an appearance of partiality is an objective one, that is, whether an objective, disinterested observer, fully informed of the facts, would entertain significant doubt that justice would be done in the case." *Id* (quoting *Taylor-Boren*, 143 N.H. at 268). *See also, e.g.*, *Tapply v. Zukatis*, 162 N.H. 285, 297 (2011).

38. By way of contrast, the objective standards required by the Fourteenth Amendment of the United States Constitution for recusal **do not require any showing of actual bias.** "Rather, the question is whether, 'under a realistic appraisal of psychological tendencies and human weakness,' [an] interest 'poses such a risk [emphasis added] of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.'" *Caperton v. AT Massey Coal Co., Inc.*, 556 U.S. 868, 883-84 (2009). *See also*

*Rippo v. Baker*, 580 U.S. 285 (2017), articulating that the Nevada Supreme Court erred by not considering "whether, considering all the circumstances alleged, the **risk of bias** [emphasis added] was too high to be constitutionally tolerable." *Rippo* at 287.

39. Indeed, "justice must satisfy the appearance of justice." *Offutt v. United States*, 348 U.S. 11, 14 (1954). *See also* *Blaisdell v. City of Rochester*, 135 N.H. 589, 593 (1992).

40. For the foregoing reasons; and, <u>in particular</u>, that this appeal involves lower court proceedings where Attorney Erin Creegan appeared, and Attorney Creegan is *also* representing Justice MacDonald in *State v. Anna Barbara Hanz Marconi*, No. 217-2024-CR-01167, Justice MacDonald should recuse himself in this matter.

### III. Further Application to the Present Case

41. At the present time, there is an undisputed contradiction between the sworn testimony of Chief Justice MacDonald and the sworn affidavit of Justice Marconi.

42. **One of them is not telling the truth!**

43. Justice Marconi is currently under indictment for multiple criminal offenses, including two Class B felonies –but not for perjury. As of this filing, no evidence exists that her sworn affidavit was knowingly false. Likewise, there is no prosecutorial finding that her account was perjured or fabricated.

44. This leaves the public, and the litigants before this Court, in an impossible position. The conflict between the two sworn statements is not merely academic. It presents a live and unresolved question about the credibility of New Hampshire's Chief Justice in a matter involving potential judicial misconduct and criminal exposure. This is not a footnote. It is the fulcrum on which public confidence in this Court turns.

45. Under Canon 2.11(A)(5)(c) of the [Code of Judicial Conduct](), a judge must recuse if he has been – or is likely to be – a material witness in any related matter. That condition is satisfied here.

46. But even if not, the standard for recusal does not require any proof of impropriety, **or even any proof of actual bias.**

47. Rather, the legal standard under the Fourteenth Amendment is whether the <u>risk</u> of bias is too high to be constitutionally tolerable. That standard is clearly met.

48. This case is not a referendum on who is ultimately telling the truth. But where two senior judicial officers of this state's highest court have given mutually exclusive sworn accounts of the same facts, and no definitive legal or prosecutorial finding resolves the conflict, the only path to preserving public confidence in the judiciary is for the judge whose impartiality is now in doubt to step aside.

### IV. Supplemental Statement of Direct Interest by Dana Albrecht

49. I, Dana Albrecht, am both the undersigned representative in this matter and the party "D.A." in <u>K.A. v. D.A.</u>, No. 2023-0181. This is not a case of indirect association or speculative appearance. Chief Justice MacDonald has personally ruled against me and my client, Destinie L. Berard, in multiple cases involving overlapping issues of recusal and judicial conduct.

50. The problem is compounded by a troubling asymmetry:

    - In <u>K.A. v. D.A.</u>, the New Hampshire Supreme Court declined to disqualify Chief Justice MacDonald, despite his central involvement in the Marconi-related events and his direct receipt of a factual "read-out" from Governor Sununu about Justice Marconi's conduct – conduct that later became the basis of multiple felony and misdemeanor indictments. Chief Justice MacDonald himself **authored** the July 8, 2024 order in <u>K.A. v. D.A.</u>, quoting Justice

    Marconi's own statement that she was "not disqualified," even though **he knew** she had discussed the pending investigation with the Governor and had made statements that, on their face, implicated both her impartiality and her fitness to rule.

- What followed was even more concerning. In *State v. Berard*, Attorney Erin Creegan – who represents Chief Justice MacDonald in connection with the criminal and disciplinary matters arising from those same events – appeared at a December 18, 2024 motion hearing as counsel for the Judicial Branch. She argued that my own involvement in <u>K.A. v. D.A.</u> – as the party "D.A." – was grounds for an adverse ruling against my client, Destinie L. Berard.

51. If it was allegedly *not* a conflict for Chief Justice MacDonald to judge a case involving me, how could it *possibly* be appropriate for his own personal attorney to cite my identity and the Court's prior rulings against me **as grounds to prejudice Ms. Berard at the trial level?**

52. The logic is backwards. The conflict is deeper. The appearance of impropriety is inescapable.

53. This is not a routine recusal request. It concerns a sitting Chief Justice, his personal attorney's litigation posture against a party in this appeal, and a sworn factual conflict that remains unresolved at the highest level of state government. The public cannot be asked to accept the legitimacy of rulings rendered under such a cloud.

WHEREFORE, Ms. Berard respectfully requests that:

A) Chief Justice Gordon MacDonald recuse himself from this and all related matters; and,

B) For any other such relief as is just and equitable.

Respectfully submitted,

DESTINIE L. BERARD

By her non-attorney representative,

_____
DANA ALBRECHT
  *Per RSA 311:1*
131 Daniel Webster Hwy #235
Nashua, NH 03060
dana.albrecht@hushmail.com
(603) 809-1097

April 7, 2025

## CERTIFICATE OF SERVICE

I, Dana Albrecht, certify that a copy of this *Motion* will be sent to all parties of record who are registered through the Court's electronic filing system.

_____
DANA ALBRECHT

April 7, 2025