# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

|  |  |  |
|---|---|---|
| **DANA ALBRECHT;** | ) | |
| *[DESTINIE L. BERARD]*[1] | ) | |
| | ) | |
| **Plaintiff(s)** | ) | |
| **v.** | ) | Civil No. 1:25-cv-00093-SM-AJ |
| | ) | |
| **JUDGE JOHN PENDLETON, solely in his** | ) | |
| **official capacity as a Judge of the New** | ) | |
| **Hampshire Circuit Court;** | ) | |
| | ) | |
| **REFEREE SCOTT MURRAY, solely in his** | ) | |
| **official capacity as a referee pursuant to** | ) | |
| **N.H. Rev. Stat. § 490-F:15 for the State of** | ) | |
| **New Hampshire;** | ) | |
| | ) | |
| **JUDGE ELLEN CHRISTO, solely in her** | ) | |
| **official capacity as the Administrative** | ) | |
| **Judge of the New Hampshire Circuit Court,** | ) | |
| **and her successor(s) in office;** | ) | |
| | ) | |
| **CHIEF JUSTICE GORDON MACDONALD,** | ) | |
| **JUSTICE JAMES P. BASSETT, JUSTICE** | ) | |
| **ANNA BARBARA HANZ MARCONI,** | ) | |
| **JUSTICE PATRICK E. DONOVAN,** | ) | |
| **JUSTICE MELISSA COUNTWAY, solely** | ) | |
| **in their official capacities as justices of the** | ) | |
| **New Hampshire Supreme Court, and their** | ) | |
| **successor(s) in office;** | ) | |
| | ) | |
| **ERIN CREEGAN, solely in her official** | ) | |
| **capacity as General Counsel of the New** | ) | |
| **Hampshire Judicial Branch, and her** | ) | |
| **successor(s) in office,** | ) | |
| | ) | |
| *(continued on page 2)* | ) | |

---

1  Ms. Berard has filed a Motion for Joinder (ECF No. 24) that is presently pending.

)
)
**TRACY MEYER, solely in her official**    )
**capacity as the Clerk of the 10th Circuit**    )
**District Court, Hampton, New Hampshire,**    )
**and her successor(s) in office;**    )
)
**THE 24 MEMBERS OF THE**    )
**NEW HAMPSHIRE JUDICIAL COUNCIL,**    )
**solely in their official capacities as**    )
**members of the council, and their**    )
**successor(s) in office;**    )
)
**CHARLES M. ARLINGHAUS, solely in his**    )
**official capacity as Commissioner at the**    )
**New Hampshire Department of**    )
**Administrative Services, and his**    )
**successors(s) in office;**    )
)
**THE NEW HAMPSHIRE PUBLIC**    )
**DEFENDER; a 501(c)(3) corporation;**    )
)
**JOHN FORMELLA, solely in his official**    )
**capacity as Attorney General of the State**    )
**of New Hampshire, and his successor(s) in**    )
**office;**    )
)
**JOHN VENTURA, solely in his official**    )
**capacity as Police Prosecutor for the Town**    )
**of Seabrook, New Hampshire, and his**    )
**successor(s) in office;**    )
)
**DANIEL LAWRENCE, solely in his official**    )
**capacity as Sergeant for the Seabrook**    )
**Police Department, and his successor(s)**    )
**in office;**    )
)
)
*(continued on page 3)*    )
)
)

|                                                                                                                                      |     |
| ------------------------------------------------------------------------------------------------------------------------------------ | --- |
|                                                                                                                                      | )   |
|                                                                                                                                      | )   |
| **KASSANDRA STORMS a/k/a KASSANDRA KAMINSKI, solely in her official capacity as a patrol officer for the Seabrook Police Department, and her successor(s) in office;** | )   |
|                                                                                                                                      | )   |
| **THE TOWN OF SEABROOK, a municipal corporation in New Hampshire;**                                                                   | )   |
|                                                                                                                                      | )   |
| **THOMAS W. FOWLER, solely in his official capacity as Chief of Police for the Town of Salisbury, Massachusetts, and his successor(s) in office;** | )   |
|                                                                                                                                      | )   |
| **ANTHONY KING, solely in his official capacity as former Lieutenant of the Police Department for the Town of Salisbury, Massachusetts, and his successor(s) in office;** | )   |
|                                                                                                                                      | )   |
| **PATRICK SZYMKOWSKI, solely in his official capacity as a patrol officer of the Police Department for the Town of Salisbury, Massachusetts, and his successor(s) in office;** | )   |
|                                                                                                                                      | )   |
| **THE TOWN OF SALISBURY, a municipal corporation in Massachusetts,**                                                                  | )   |
|                                                                                                                                      | )   |
| **Defendants.**                                                                                                                      | )   |

---

**AMENDED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS AND
DECLARATORY, INJUNCTIVE AND EQUITABLE RELIEF**

---

**TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................4

INTRODUCTION...................................................................7

PARTIES........................................................................8

    Plaintiff(s)...................................................................8

    Judicial Defendants.............................................................8

    Indigent Defense and Funding Defendants........................................9

    Prosecutorial Defendants........................................................9

    Massachusetts Law Enforcement Defendants.....................................10

PLAINTIFF(S) APPEAR PRO SE.....................................................10

JURISDICTION AND VENUE.........................................................10

FACTS PLEAD....................................................................11

    I. Other relevant individuals and court cases...................................11

    II. Plaintiff Dana Albrecht's family law case – judicial misconduct.................12

    III. New Hampshire Supreme Court scandal....................................13

    IV. Katherine Albrecht v. Dana Albrecht, No. 659-2019-DV-00341.................15

    V. Patrick Szymkowski v. Destinie Berard, No. 618-2018-DV-00078, 618-2018-DV-00084...................................................................17

        B. Collusion with Salisbury Police Department Leadership.....................18

        C. Perjury and Fabricated Evidence in New Hampshire Courts..................18

        D. Continued Legal Harassment of Berard...................................19

        E. Judge Polly Hall's protection of Ofc. Syzmkowsi's career....................19

    VI. ITMO Lindsay Smith v. Richard Lorman, No. 641-2021-DV-00070............21

    VII. State of New Hampshire v. Anthony Kinney, No. 2023-0169..................24

    VIII. State of New Hampshire v. Destinie L. Berard, No. 441-2024-CR-00353. .26

        A. Selective and Retaliatory Prosecution of Berard..............................26

        B. Prosecution for Alleged Church Attendance..................................26

        C. "Smoking Gun" Email Evidence of Malicious Prosecution....................27

        D. Unlawful and Selective Prosecution.......................................28

        E. Unlawful Incarceration..................................................28

    IX. Allegations Against the Judicial Defendants and Indigent Defense & Funding Defendants...................................................................29

A. Systemic Denial of Counsel in Violation of Constitutional Rights............29

B. Unlawful Interference with the Ms. Berards's Right to Choose Representation.................................................................................32

D. The Role of the Indigent Defense & Funding Defendants.......................33

E. Systemic Scheduling Bias in Favor of the Prosecution...........................34

F. The Unconstitutional Consequences of This Systemic Breakdown............35

X. Additional Facts Supporting As-Applied Challenge to N.H. Rev. Stat. § 173-B:9.................................................................................................36

XI. Conclusion: Systemic Constitutional Breakdown Requires Judicial Intervention..........................................................................................37

MATTERS OF LAW PLEAD COMMON TO ALL COUNTS................................38

STANDING................................................................................................42

A. Plaintiff(s)' Standing Under Article III of the U.S. Constitution...............42

B. Plaintiff(s) Standing Under the First Amendment Petition Clause.............43

C. Mr. Albrecht Has Alleged Direct, Personal Injuries in Fact.......................44

D. These Injuries Are Fairly Traceable to Defendants' Conduct.....................45

E. These Injuries Are Redressable by Court Order......................................45

F. Mr. Albrecht's claim do not depend on third-party standing......................46

G. Ms. Berard has sought to join this action as an independent Plaintiff..........46

H. Conclusion................................................................................46

CAUSES OF ACTION....................................................................................47

COUNT I – Fourteenth Amendment Violation – Risk of Judicial Bias..............47

COUNT II – First Amendment Violation – Plaintiff's Right to Petition...........50

COUNT III – Fourteenth Amendment Violation – RSA 173-B:3 is unconstitutional as-applied................................................................51

COUNT IV – Fourteenth Amendment Violation – RSA 173-B:4 is unconstitutional as-applied................................................................52

COUNT V – Fourteenth Amendment Violation – RSA 173-B:5 is unconstitutional both on its face and as-applied................................................................53

COUNT VI – Fourteenth Amendment Violation – Denial of requested status of Counsel hearing and refusal to docket motion for withdrawal.......................54

COUNT VII – False advertising by the NH Public Defender (N.H. Rev Stat § 358-A:1).................................................................................................55

COUNT VIII – Violation of the Sixth and Fourteenth Amendments.................55

COUNT IX – Violation of the Fifth Amendment..........................................57

COUNT X – Violation of the Fourteenth Amendment.................................58

COUNT XI – Violation of Due Process and Equal Protection........................59

COUNT XII – Violation of Procedural Due Process....................................60

COUNT XIII – First Amendment Claims against Salisbury Police Defendants...61

COUNT XIV – Monell Claim Against Massachusetts Law Enforcement Defendants..........................................................................................61

COUNT XV – Illegal Incarceration.........................................................62

COUNT XVI – Monell Claim Against Town of Seabrook..............................63

COUNT XVII – Fourteenth Amendment Violation – N.H. Rev. Stat. § 173-B:9 is Unconstitutional As-Applied................................................................64

JURY TRIAL DEMAND.........................................................................65

PRAYER FOR RELIEF...........................................................................66

Declaratory Relief................................................................................66

Injunctive Relief.................................................................................67

Equitable Relief..................................................................................67

Further Relief.....................................................................................68

CERTIFICATE OF SERVICE...................................................................69

**INTRODUCTION**

1.  This civil rights action under 42 U.S.C. § 1983 arises from systematic abuse in New Hampshire by unscrupulous litigants, including domestic abusers and child kidnappers, to manipulate New Hampshire's statutory framework under N.H. Rev. Stat. § 173-B in order to obtain fraudulent civil "domestic violence" orders of protection for malicious purposes.

2.  The Fifth Circuit Court of Appeals has recognized this danger, observing:

    > **"Anyone who is willing to commit perjury can spend months or even years … planning to file a domestic violence complaint at an opportune moment in order to gain the upper hand in a [family law] proceeding. So a plaintiff willing to exaggerate past incidents or even commit perjury can have access to a responsive support group, a sympathetic court, and a litany of immediate relief."**

    *See United States v. Rahimi*, 61 F.4th 443, 465 (5th Cir. 2023) (cleaned up) (abrogated on unrelated grounds by *United States v. Rahimi*, 144 S. Ct. 1889 (2024)).

3.  Nevertheless, New Hampshire law enforcement and its state judicial officers systematically disregard *Rahimi's* warning, in favor of instead conducting such "star chamber" trials as are described by David N. Heleniak in the Liberty University Law Review.[2]

4.  Through this action, Plaintiff(s) seek declaratory and injunctive relief to remedy ongoing constitutional violations arising from these "star chamber" trials, as set forth in more detail below.

---

[2] Heleniak, David N. (2022) "Shuttering the New Star Chamber: Toward a Populist Strategy Against Criminal Equity in the Family Court," Liberty University Law Review: Vol. 17: Iss. 2, Article 2. Available at: https://digitalcommons.liberty.edu/lu_law_review/vol17/iss2/2. *See also* Exhibit 1.

## PARTIES

### Plaintiff(s)

5.  Plaintiff Dana Albrecht is a resident of Nashua, NH. He has testified frequently before the New Hampshire legislature advocating for reform of state parenting and domestic violence statutes.

6.  Mr. Albrecht is not a licensed attorney. However, he is a citizen of good character who entered an emergency appearance under N.H. Rev. Stat. § 311:1 solely to assist Ms. Destinie L. Berard in obtaining court-appointed counsel and to prevent an unfair trial in a New Hampshire state court proceeding under N.H. Rev. Stat. § 173-B.

7.  Ms. Destinie L. Berard is a resident of Georgetown, Massachusetts. She was previously represented by Mr. Albrecht pursuant to N.H. Rev. Stat. § 311:1 in *State of New Hampshire v. Destinie L. Berard*, No. 441-2024-CR-00353, presently pending in the 10th Circuit Court, District Division, Hampton, NH.

### Judicial Defendants

8.  Judge John Pendleton is a judge of the State of New Hampshire who presides over the relevant criminal case and is sued solely in his official capacity.

9.  Referee Scott Murray is a judicial referee pursuant to N.H. Rev. Stat. § 490-F:15 and is sued solely in his official capacity.

10. Judge Ellen Christo is the Administrative Judge of the New Hampshire Circuit Court and is sued solely in her official capacity, including her successor(s) in office.

11. Chief Justice Gordon MacDonald, Justice James P. Bassett, Justice Anna Barbara Hantz Marconi, Justice Patrick E. Donovan, and Justice Melissa Countway are justices of the New Hampshire Supreme Court and are sued solely in their official capacities, including their successor(s) in office.

12. Erin Creegan is the General Counsel of the New Hampshire Judicial Branch and is sued solely in her official capacity, including her successor(s) in office.

13. Tracy Meyer is the Clerk of the 10th Circuit Court – District Division – Hampton, NH, and is sued solely in her official capacity, including her successor(s) in office.

**Indigent Defense and Funding Defendants**

14. The 24 Members of the New Hampshire Judicial Council are sued solely in their official capacities as members of the council established under N.H. Rev. Stat. § 494:1, including their successor(s) in office.

15. Charles M. Arlinghaus is the Commissioner of the New Hampshire Department of Administrative Services established under N.H. Rev. Stat. § 21:I and is sued solely in his official capacity, including his successor(s) in office.

16. The New Hampshire Public Defender's Office is a private 501(c)(3) nonprofit corporation that handles indigent criminal defense pursuant to N.H. Rev. Stat. § 604-A and § 604-B.

**Prosecutorial Defendants**

17. John Formella is the Attorney General of the State of New Hampshire and is sued solely in his official capacity, including his successor(s) in office.

18. John Ventura is the Police Prosecutor for the Town of Seabrook, New Hampshire, and is sued solely in his official capacity, including his successor(s) in office.

19. Daniel Lawrence is a Sergeant employed by the Seabrook Police Department, and is sued solely in his official capacity, including his successor(s) in office.

20. Kassandra Storms (a/ka Kassandra Kaminksi) is a patrol officer employed by the Seabrook Police Department, and is sued solely in her official capacity, including her successor(s) in office.

21. The Town of Seabrook, New Hampshire, is a municipal corporation sued as a governmental entity responsible for policies and actions of its employees, including its police prosecutor.

**Massachusetts Law Enforcement Defendants**

22. Thomas W. Fowler is the Chief of Police for the Town of Salisbury, Massachusetts, and is sued solely in his official capacity, including his successor(s) in office.

23. Anthony King is a former Lieutenant of the Police Department for the Town of Salisbury, Massachusetts, and is sued solely in his official capacity, including his successor(s) in office.

24. Patrick Szymkowski is a patrol officer for the Police Department in the Town of Salisbury, Massachusetts, and is sued solely in his official capacity, including his successor(s) in office.

25. The Town of Salisbury, Massachusetts, is a municipal corporation sued as a governmental entity responsible for policies and actions of its police department and employees.

## PLAINTIFF(S) APPEAR PRO SE

26. Plaintiff(s) appear *pro se*, have no formal training in the law, and all pleadings in this matter have been prepared without the assistance of any professional counsel.

27. Consequently, Plaintiff(s)' pleadings should be construed "so as to do substantial justice." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## JURISDICTION AND VENUE

28. This action arises under the First, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343, as this case presents federal questions involving constitutional violations and the deprivation of civil rights under color of state law.

29. This Court has personal jurisdiction over the New Hampshire-based Defendants because they are located in New Hampshire and/or perform official duties within the state. Additionally, this Court has personal

jurisdiction over the Massachusetts-based Defendants under New Hampshire's long-arm statute (N.H. Rev. Stat. § 510:4) and the Fourteenth Amendment's Due Process Clause, as their conduct has caused harm to Plaintiff(s) and directly impacted legal proceedings in New Hampshire.

30. Declaratory relief is authorized by 28 U.S.C. § 2201 and 28 U.S.C. § 2202.

31. Venue is proper in this Court under 28 U.S.C. § 1391(b) because:

(a) A substantial part of the events giving rise to this claim occurred in New Hampshire, including the judicial proceedings at issue and the actions of the New Hampshire state and municipal officials.

(b) Defendants performing official duties in New Hampshire reside in this district for venue purposes.

(c) Defendants from Massachusetts directed their conduct toward New Hampshire, causing harm in this district, making venue proper under § 1391(b)(2) and (b)(3).

## FACTS PLEAD

### I. Other relevant individuals and court cases

32. Ms. Katherine Albrecht is Mr. Albrecht's ex-wife. She is the plaintiff in *Katherine Albrecht v. Dana Albrecht*, No. 659-2019-DV-00341, and was the plaintiff in *Albrecht v. Metro. Pier & Exposition Auth.*, No. 03 C 6472 (N.D. Ill. filed Sept. 12, 2003).[3]

33. Prior to their divorce, Ms. Katherine Albrecht and Mr. Dana Albrecht had four children, D.A., C.A., S.A., and G.A.

34. Ms. Lindsay Smith is a domestic violence victim, and was plaintiff in *Lindsay Smith v. Richard Lorman*, No. 641-2021-DV-00070.

35. Mr. Richard Lorman was Ms. Smith's former partner, who shot Ms. Smith outside her workplace in Salem, MA in 2021.[4]

---

3   *See* Exhibit 2 – Transcript of September 15, 2003 hearing. The full docket is available online at: https://www.courtlistener.com/docket/5352246/albrecht-v-metro-pier/

36. Ms. Christine E. Berlind was the defendant in *State of New Hampshire v. Christine Berlind*, No. 464-2017-CR-00430 (N.H. 3rd Cir. Ct. Dist. Div. Ossipee). She was also plaintiff in *Christine Berlind v. Anthony Kinney*, No. 630-2022-DV-00021 (N.H. 3d Cir. Ct. Fam. Div. Conway).

37. Mr. Anthony Kinney was the victim in *State v. Berlind*, No. 464-2017-CR-00430,[56] and the defendant in *State of New Hampshire v. Anthony Kinney*, No. 2023-0169 (N.H. Sup. Ct. Sept. 6, 2024).

38. Mr. Nicholas Ranaldi was the defendant in *State of New Hampshire v. Nicholas John Ranaldi*, No. 430-2023-CR-00661 (N.H. 3d Cir. Ct. Dist. Div. Conway).

## II. Plaintiff Dana Albrecht's family law case — judicial misconduct

39. Mr. Albrecht's family law case was initiated by Ms. Katherine Albrecht on April 8, 2016, when she filed a civil domestic violence petition (N.H. Rev. Stat. § 173-B) against Mr. Albrecht, that was granted *ex parte* by former Judge Paul S. Moore. *See Katherine Albrecht v. Dana Albrecht*, No. 659-2016-DV-00120.

40. Judge Moore was subsequently criminally convicted of violating N.H. Rev Stat § 100-C:16. *See State of New Hampshire v. Paul S. Moore*, No. 217-2018-CR-00360. *See* Order LD-2018-0005, *In the Matter of Paul S. Moore*, Esquire (N.H. Sup. Ct. July 5, 2018).[7]

41. Mr. Albrecht's family law case was then heard by former Marital Master Bruce F. DalPra, with orders by former judge Julie Introcaso.

42. Master DalPra was subsequently removed from the bench as a direct consequence and *because of* his behavior in Mr. Albrecht's family law case.[8]

---

4  Arielle Mitropoulos, *Domestic Violence Survivor Testifies in Hopes of Changing Way Court System Works*, WMUR (Sept. 12, 2023, 11:19 PM), https://www.wmur.com/article/domestic-violence-court-system-hearing-91223/45107516. *See* Exhibit 3.

5  *See* Exhibit 4 – Wakefield Police Arrest Report re: *Berlind* (Apr. 11, 2017)

6  *See* Exhibit 5 – Sentencing Transcript in *State v. Berlind*, No. 464-2017-CR-00430 (Aug. 24, 2017)

7  *See* Exhibit 6 –Disbarment Order: *In re Paul S. Moore*, No. LD-2018-0005 (July 5, 2018)

8  *See* Exhibit 7 –Supreme Court Order: *In re Bruce F. DalPra*, No. JD-2022-0001 (Nov. 10, 2022)

43. Former NH Circuit Court Administrative Judge David King was deposed on August 26, 2022[9] about emails he wrote about trial court transcripts in Mr. Albrecht's family law case.[10]

44. On February 8, 2021, Ms. Introcaso was deposed about nine family law cases, including Mr. Albrecht's.[11]

45. On February 15, 2022, former judge Introcaso, who had issued most of the orders in Mr. Albrecht's family law case, wrote Mr. Albrecht an email stating she had no knowledge of Mr. Albrecht's family law case.[12]

46. On February 25, 2022, Ms. Introcaso was disbarred.[13]

### III. New Hampshire Supreme Court scandal

47. New Hampshire Supreme Court Justice Anna Barbara Hantz Marconi is the wife of Mr. Geno Marconi.

48. Mr. Geno Marconi is (or was) the Director of Ports and Harbors for the State of New Hampshire, via the PEASE Development Authority.

49. The State of New Hampshire alleges that on or about April 4, 2024, Mr. Geno Marconi committed the crimes of tampering with witnesses and informants (N.H. Rev. Stat. § 641:5, II), obstructing government administration (N.H. Rev. Stat. § 642:1, I), and two counts of driver privacy act violation (N.H. Rev. Stat. § 260:14, IX(a)).[14]

50. The State of New Hampshire alleges that on or about April 19, 2024, Justice Anna Barbara Hanz Marconi committed the crimes of obstructing government administration (N.H. Rev. Stat. § 642:1, I), and criminal solicitation (N.H. Rev. Stat. § 629:2, I; N.H. Rev. Stat. § 21-G:23, II).[15]

---

9   *See* Exhibit 8 – Deposition Excerpts of Judge David King (Aug. 26, 2022).

10  *See* Exhibit 9 and Exhibit 10 –Emails re: inappropriate judicial remarks during telephonic hearing and follow-up ethics concerns (Nov. 12–13, 2020).

11  *See* Exhibit 11 – Deposition of Judge Julie Introcaso (Feb. 8, 2021)

12  *See* Exhibit 12 – Email from Judge Introcaso to Dana Albrecht (Feb. 15, 2022)

13  *See* Exhibit 13 – Final Disciplinary Order: *In re Introcaso*, No. LD-2021-0001 (Feb. 25, 2022)

14  *See* Exhibit 14 – Indictments of Geno Marconi (Apr. 4, 2024)

15  *See* Exhibit 15 – Indictments of Justice Anna Barbara Hantz Marconi (Apr. 19, 2024)

51. The State of New Hampshire alleges that on or about April 22, 2024, Mr. Geno Marconi committed the crimes of falsifying physical evidence (N.H. Rev. Stat. § 641:6, I) and obstructing government administration (N.H. Rev. Stat. § 642:1, I).[16]

52. The State of New Hampshire alleges that on or about June 6, 2024, Justice Anna Barbara Hanz Marconi committed the crimes of attempt to commit improper influence (N.H. Rev. Stat. § 629:1, I; N.H. Rev. Stat. § 640:3, I(b)), criminal solicitation (N.H. Rev. Stat. § 629:2, I; N.H. Rev. Stat. § 640:3, I(b)), official oppression(N.H. Rev. Stat. § 643:1); criminal solicitation (official oppression) ((N.H. Rev. Stat. § 629:2, I; N.H. Rev. Stat. § 643:1), and criminal solicitation (misuse of position) (N.H. Rev. Stat. § 629:2, I; N.H. Rev. Stat. § 21-G:23, II).[17]

53. On June 12, 2024, Justice Marconi issued an order directing the NH Supreme Court Clerk not to docket various trial court orders Mr. Albrecht had provided to the NH Supreme Court.[18]

54. On June 22, 2024, Mr. Albrecht filed a motion in the NH Supreme Court appeal of his civil domestic violence case, *Katherine Albrecht v. Dana Albrecht*, No. 2023-0181, seeking clarification about Justice Marconi's recusal decisions.[19]

55. On June 27, 2024, Mr. Albrecht received correspondence from the NH Department of Justice denying his public records request for "All records directly relating to the April 18, 2024 PEASE Development Authority Meeting."[20]

56. On July 8, 2024, all five justices of the NH Supreme Court ordered[21] that:

> **D.A.'s motion for "clarification re; Justice Marconi" is denied. Justice Hantz Marconi has reviewed this matter and has determined that she is not disqualified.**

---

16  *See* Exhibit 16 – Additional Indictments of Geno Marconi (Apr. 22, 2024)
17  *See* Exhibit 17 – Additional Indictments of Justice Marconi (June 6, 2024)
18  *See* Exhibit 18 – Order by Justice Marconi in *K.A. v. D.A.*, No. 2023-0181 (June 12, 2024)
19  *See* Exhibit 19 – Motion for Clarification re: Recusal in *K.A. v. D.A.* (June 22, 2024)
20  *See* Exhibit 20 – DOJ Denial of 91-A Records Request (June 27, 2024)
21  *See* Exhibit 21 – Order Denying Motion to Clarify Recusal (July 8, 2024)

57. On August 2, 2024, the New Hampshire Attorney General's office conducted an interview with Chief Justice Gordon Macdonald.[22]

58. On August 6, 2024, the New Hampshire Attorney General's office conducted an interview with former New Hampshire Governor Sununu about cell phone conversations between Governor Sununu at **(603) 969-1488** and Chief Justice Gordon MacDonald at **(603) 321-0711**.[23]

59. With regard to the allegations against Justice Marconi, the August 2, 2024 and August 6, 2024 interviews concerned what Chief Justice MacDonald knew, when he knew it, and what Chief Justice MacDonald did about it.

### IV. Katherine Albrecht v. Dana Albrecht, No. 659-2019-DV-00341

60. On or about the weekend of July 28, 2019 and July 29, 2019, Ms. Albrecht transported S.A. and G.A. from California to Massachusetts to attend Collinsville Bible Church located in Dracut, Massachusetts.

61. Ms. Albrecht subsequently arranged to have S.A. and G.A. transported across state lines into New Hampshire to attend camp at the Wilds of New England in Deering, NH.

62. Ms. Albrecht subsequently arranged to have S.A. and G.A. transported back across state lines out of New Hampshire and back to California, with "the intent to detain or conceal such child" from Mr. Albrecht, in violation of N.H. Rev Stat § 633:4.

63. Ms. Albrecht even admitted to California police that "father does not know daughters are in New Hampshire."[24]

64. On or about October 31, 2019, Ms. Albrecht lied to California police wherein "she advised she has full custody of the children."[25]

65. Ms. Albrecht then proceeded to transport their children from California to Hudson, New Hampshire, staying overnight at a friend's house in Hudson, before transporting their children out of New Hampshire and across state

---

22  *See* Exhibit 22 – Interview Transcript: Chief Justice MacDonald (Aug. 2, 2024)
23  *See* Exhibit 23 – Interview Transcript: Governor Sununu (Aug. 6, 2024)
24  *See* Exhibit 24 – Sierra Madre, CA Police Reports (July 30-31, 2019)
25  *See* Exhibit 25 – Sierra Madre, CA Police Report (Oct. 31, 2019)

lines into Massachusetts to attend Collinsville Bible Church on Sunday, November 3, 2019.

66. Ms. Albrecht transported S.A. and G.A. all over the country, into and out of New Hampshire, with "the intent to detain or conceal such child" from Mr. Albrecht, in violation of N.H. Rev Stat § 633:4.

67. When Mr. Albrecht attempted to peacefully attend a public church service on Sunday November 3, 2019, at Collinsville Bible Church, in Dracut, MA, in an attempt to locate his children, Ms. Albrecht retaliated by filing for a civil domestic violence protective order under N.H. Rev. Stat. § 173-B.

68. Despite that there was **no contact of any kind** between Mr. and Ms. Albrecht on Sunday November 3, 2019, judge Mark S. Derby held a three day civil DV trial, all while the New Hampshire Judicial branch refused to schedule any hearing – **for years** – on a pending parenting contempt motion filed by Mr. Albrecht on November 1, 2019 wherein it **claimed** that a hearing would be scheduled "in the ordinary course."

69. Because Mr. Albrecht wished to exercise his First Amendment rights to "protest" by peacefully communicating with other church parishioners (many of whom were friends of Mr. Albrecht), **on public property** in an adjacent parking lot, the New Hampshire Judicial Branch went further, and ordered that Mr. Albrecht be restrained and enjoined from coming within 2,000 feet of Collinsville Bible Church **at all times**, agreeing with Ms. Albrecht that Mr. Albrecht's First Amendment argument was "a wholly manufactured controversy" and that "there is no less restrictive means available to protect the plaintiff [Ms. Albrecht] when **she visits** the east coast [from California] and wants to exercise her constitutional free exercise and associational rights."[26]

70. Ms. Albrecht, who is a public figure, has successfully litigated a federal First Amendment lawsuit to protect her right to leaflet on public property in Chicago. She has also successfully litigated a fraudulent civil DV action against Mr. Albrecht in order to take advantage of New Hampshire's "star chamber" civil DV trials, wherein the NH order she obtained specifically

---

26  *See* Exhibit 26 – Order by Judge Derby re: Collinsville Bible Church Ban

prevented Mr. Albrecht from leafleting on public property in Massachusetts, all while Ms. Albrecht was thousands of miles away in a different state.

## V. Patrick Szymkowski v. Destinie Berard, No. 618-2018-DV-00078, 618-2018-DV-00084

71. Like Ms. Albrecht, Ofc. Patrick Szymkowski and the Salisbury Police Department are also sophisticated litigants. They are all well aware that, after being unable to obtain any *other* "relief" for their domestic disputes arising **from events in Massachusetts,** that they should try, try again – but instead in New Hampshire, so as to take advantage of New Hampshire's "star chamber" civil DV policies.

72. Officer Patrick Szymkowski, a patrol officer with the Salisbury, Massachusetts Police Department, has a well-documented history of misconduct, excessive force, policy violations, and unethical conduct, as confirmed by multiple internal affairs investigations and Massachusetts POST Commission disciplinary records.

73. Patrick Szymkowski and Destinie Berard were formerly in an intimate relationship, during which Szymkowski was the abuser and Berard was the victim.

74. In 2018, Szymkowski was formally disciplined for domestic violence and harassment of Berard, following an internal affairs investigation into his conduct.

75. Immediately after being disciplined in Massachusetts, Szymkowski engaged in "jurisdiction shopping" by filing for a civil domestic violence protective order under N.H. Rev. Stat. § 173-B on May 30, 2018, in the New Hampshire Circuit Court. *See Szymkowski v. Berard*, No. 618-2018-DV-00078.[27]

76. Berard is a Massachusetts resident with no significant ties to New Hampshire.

77. Prior to filing in New Hampshire, Massachusetts authorities denied Szymkowski relief, demonstrating that he sought a different jurisdiction to manipulate the legal system.

---

27  *See* Exhibit 27 – Case Summary: *Szymkowski v. Berard*, No. 618-2018-DV-00078

78. Even in New Hampshire, Ofc. Szymkowski did not succeed on his first try (No. 618-2018-DV-00078), nevertheless stating on *that* petition that "I seek this petition under the guidance and awareness of my Chief of Police Thomas Fowler and Executive Officer Anthony King."

79. More importantly, because of New Hampshire's "Star chamber" civil DV mechanisms, Ms. Berard **was never even notified** of Ofc. Szymkowski's first New Hampshire attempt (No. 618-2018-DV-00078) and had no way of using it to defend against Ofc. Szymkowski's second New Hampshire attempt (No. 618-2018-DV-00084), filed on June 13, 2018.

80. Szymkowski's second petition for the New Hampshire restraining order was based on perjury. In his sworn affidavit, he falsely claimed financial harm due to Berard's actions, when in fact his suspension resulted from his own sustained policy violations in Massachusetts.

81. Fearing Szymkowski and his connections in law enforcement, Berard did not appear at the first New Hampshire hearing in the civil N.H. Rev. Stat. § 173-B case on July 11, 2018. As a result, Szymkowski wrongfully obtained a protective order against her – despite his well-documented history of misconduct, harassment, and disciplinary violations.

### B. Collusion with Salisbury Police Department Leadership

82. Szymkowski later admitted under oath that he pursued the fraudulent New Hampshire protective order at the direction of Salisbury Police Chief Thomas Fowler and then-Lieutenant Anthony King, directly implicating them in an intentional abuse of the legal system.

83. After obtaining the New Hampshire restraining order, Szymkowski, Fowler, and King engaged in a pattern of malicious prosecution against Berard, falsely portraying her as the abuser to protect Szymkowski and cover up his misconduct.

### C. Perjury and Fabricated Evidence in New Hampshire Courts

84. On July 11, 2018, during a hearing in the New Hampshire Circuit Court, Szymkowski knowingly provided false testimony under oath, falsely stating that he had been:

- "Cleared of his internal affairs investigation within eight hours."

- "Back to work without issue."

85. In reality:

- Szymkowski had actually been suspended without pay for two days (June 18–19, 2018) due to misconduct.

- He had signed a disciplinary agreement acknowledging that any future violations could result in termination.

- His sworn statement was material to the New Hampshire court's proceedings, constituting perjury under N.H. Rev. Stat. § 641:1.

**D. Continued Legal Harassment of Berard**

86. This misuse of legal proceedings has allowed Szymkowski to continue terrorizing Berard through the legal system, using court orders and criminal prosecutions as weapons to further his abuse.

87. The actions of the Massachusetts Law Enforcement Defendants exemplify how unscrupulous litigants, including domestic abusers, can manipulate the legal system.

88. The Fifth Circuit Court of Appeals has recognized this danger, observing:

> **"Anyone who is willing to commit perjury can spend months or even years ... planning to file a domestic violence complaint at an opportune moment in order to gain the upper hand in a [family law] proceeding. So a plaintiff willing to exaggerate past incidents or even commit perjury can have access to a responsive support group, a sympathetic court, and a litany of immediate relief."**

*See United States v. Rahimi*, 61 F.4th 443, 465 (5th Cir. 2023) (cleaned up) (abrogated on unrelated grounds by *United States v. Rahimi*, 144 S. Ct. 1889 (2024)).

**E. Judge Polly Hall's protection of Ofc. Syzmkowsi's career**

89. Ms. Albrecht's civil DV order specifically restrained and enjoined Mr. Albrecht from exercising First Amendment rights on public property in

Massachusetts to leaflet – all while Ms. Albrecht was thousands of miles away in another state.

90. Similarly, the DV order of protection granted by Judge Polly Hall specifically restrains and enjoins Ms. Berard from distributing various specific information about Ofc. Syzmkowsi's official misconduct, preventing her from exercising her First Amendment rights.

91. Ofc. Syzmkowsi filed his civil DV to retaliate against Ms. Berard's **substantiated** claim concerning Ofc. Syzmkowsi's official misconduct in the criminal case of <u>*Commonwealth v. Anna Chikosi*, No. 1422CR002032 (Dist. Ct. Newburyport Div. 2014)</u>.

92. Judge Polly Hall ordered (8/14/2020) specifically that Ms. Berard:

**"shall not use or publish any of the images the Plaintiff** [Ofc. Syzmkowski] **has documented for his employer, and shall destroy all such images that appear in her possession, whether the Plaintiff** [Ofc. Syzmkowski] **has allowed her access, or whether she appropriated them from him. This Order is not intended to prohibit any legal or equitable requests for release that the Plaintiff of his employer may have against the Defendant** [Ms. Berard] **in another forum."**

93. The images in question are photos relating to the booking of Ms. Anna Chikowski. Mr. Albrecht was also able to obtain such photos, which are public court records, from the Newburyport District Court.[28]

94. Consequently, should Ms. Berard (herself) dare even to possess, let alone distribute, photographs from a public Massachusetts court record, that are directly related to substantiated official misconduct by Ofc. Syzmkowski, it is the position of the New Hampshire Judicial Defendants and Prosecutorial Defendants, that Ms. Berard could be held criminally liable and be incarcerated for up to a year.

95. Allowing Massachusetts police officers to obtain New Hampshire "domestic violence" orders to protect their careers, and to implement "gag orders" on whistle-blowers, violates almost every norm of traditional constitutional jurisprudence.

---

28  *See* <u>Exhibit 28</u> – Salisbury PD Images re: Case No. 14-741-AR (2014)

96. Nevertheless, it comports exactly with New Hampshire's "Star Chamber" system – a system built by design to provide "relief" to any unscrupulous litigant with the skills to manipulate it, all while denying access to effective assistance of counsel for the system's victims.

## VI. ITMO Lindsay Smith v. Richard Lorman, No. 641-2021-DV-00070.

97. After Judge Polly Hall's "gag order" (8/14/2020) to prevent Ms. Berard from publicly disclosing official misconduct, Ms. Berard's friend, Ms. Lindsay Smith, filed (on 9/21/2021) for a civil order of protection under N.H. Rev. Stat. § 173-B .

98. _Smith v. Lorman_, _Syzmkowski v. Berard_, and _Albrecht v. Albrecht_ are all civil "domestic violence" actions under N.H. Rev. Stat. § 173-B brought under the same statutory framework.

99. However, the _Smith v. Lorman_ case involved graphic testimony of physical and sexual abuse, whereas _Syzmkowski v. Berard_, focused on protecting Ofc. Syzmkowsi's job, and _Albrecht v. Albrecht_ focused on a parenting dispute and Ms. Albrecht's desire to prevent Mr. Albrecht from exercising any First Amendment rights near Collinsville Bible Church in Dracut, MA, while she was residing in California and/or Michigan.

100. While Judge Polly Hall was very interested in protecting Ofc. Syzmkowski's job, she was not interested in protecting Lindsay Smith.

101. On October 20, 2021, Judge Polly Hall determined that Lindsay Smith had "NOT been abused as defined in RSA 173-B"

102. On November 15, 2021, Richard Lorman went to Lindsay Smith's place of employment in Massachusetts. He waited for her to leave the building and shot her in the head.

103. As the Fifth Circuit Court observed in _Rahimi_:

**Family court judges may face enormous pressure to grant civil protective orders—and no incentive to deny them. For example, family court judges may receive mandatory training in which they're warned about "the unfavorable publicity" that could result if they deny requests for civil protective orders. As one judge has noted, "[a] newspaper**

**headline can be death to a municipal court judge's career." So "the prospect of an unfavorable newspaper headline is a frightening one." To quote another judge: "Your job is not to become concerned about all the constitutional rights of the [defendant] you're violating as you grant a restraining order. Throw him out on the street, give him the clothes on his back and tell him, 'See ya' around.'" Yet another judge said: "If there is any doubt in your mind about what to do, you should issue the restraining order."**

104. Consistent with the now all-too-real "prospect of an unfavorable newspaper headline" (*Id.*) Chief Justice MacDonald ordered an internal review of the <u>*Smith v. Lorman*</u> case.

105. Consistent with an intent to shield the New Hampshire Judicial Branch from any potential liability, on November 23, 2021, the NHJB issued its report created by an internal review committee, exonerating Judge Polly Hall of any wrongdoing.[29]

106. The New Hampshire Judicial Branch subsequently formed a "Domestic Violence Task Force" chaired by Justice Anna Barbara Hantz Marconi, that held multiple hearings on 12/15/2021; 1/11/2022; 1/12/2022; 1/18/2022; 1/19/2022; 1/21/2022; 1/25/2022; 1/27/2022; 1/31/2022; and 2/22/2022.[30]

107. On March 8, 2022, Justice Marconi held a public briefing,[31] and presented a powerpoint,[32] where she gushed about the subsequent report[33] that "It's a beautiful 40-some pages plus an addendum" and noting that "We were brought here because last November, a man [Richard Lorman] shot and seriously injured his female partner [Lindsay Smith] and then died by suicide."

108. Justice Marconi further noted that "In response to that tragedy and **its portrayal in the media** [emphasis added] Chf. Justice Gordon MacDonald created an internal committee to review the woman's particular case ... That committee determined that all procedures and the law were followed, and a

---

29  *See* <u>Exhibit 29</u> – Judicial Branch Internal Review Report in *Smith v. Lorman* (Nov. 23, 2021)
30  *See* Exhibits <u>30</u>; <u>31</u>; <u>32</u>; <u>33</u>; <u>34</u>; <u>35</u>; <u>36</u>; <u>37</u>; <u>38</u>; <u>39</u> – Transcripts of NHJB Task Force Meetings
31  *See* <u>Exhibit 40</u> – Transcript: NHJB DV Task Force Public Briefing (Mar. 8, 2022)
32  *See* <u>Exhibit 41</u> – NHJB DV Task Force PowerPoint Presentation (Mar. 1, 2022)
33  *See* <u>Exhibit 42</u> – NHJB DV Task Force Final Report (Mar. 1, 2022)

reasonable decision was issued by a dedicated and thoughtful judge [Polly Hall] on the information provided."

109. Ms. Lindsay Smith, her mother Ms. Cindy Smith, and Ms. Destinie Berard <u>all</u> subsequently sought some form of *real* relief by testifying <u>jointly</u> before the New Hampshire House Special Committee on the Family Division of the Circuit Court on September 12, 2023:[34]





*[Destinie Berard and Cindy Smith at the Sept. 12, 2023 hearing (YouTube capture)]*

110. Meanwhile, while the New Hampshire Judicial Defendants have taken great pains to exonerate Judge Polly Hall's decision in Ms. Lindsay Smith's case, they continue to prosecute (and persecute) Ms. Smith's friend, Ms. Destinie Berard, who appeared before the very same judge (Polly Hall) for hearings under the very same statute (N.H. Rev. Stat. § 173-B).

111. While Justice Marconi opined that "a reasonable decision was issued by a dedicated and thoughtful judge" [Polly Hall] concerning Lindsay Smith, the New Hampshire Supreme Court refuses to perform *any* review of the *ongoing*

---

34  Video available at: https://www.youtube.com/watch?v=s0uV8vCq5-Y&t=504s

criminal prosecution of Ms. Lindsay Smith's friend (Ms. Berard) for allegedly committing **criminal** "domestic violence" by attending a public church service against the wishes of Ms. Berard's abuser, Ofc. Patrick Syzmkowski.

## VII. State of New Hampshire v. Anthony Kinney, No. 2023-0169

112. Mr. Anthony Kinney was the victim in _State v. Berlind_, No. 464-2017-CR-00430, where his (then) partner Christine Berlind was criminally charged with physically assaulting him in 2017.

113. After the breakdown of their relationship, Ms. Berlind subsequently filed for a civil order of protection (N.H. Rev. Stat. § 173-B) in _Berlind v. Kinney_, No. 630-2022-DV-00021, and granted a temporary order by Judge Charles Greenhalgh on May 10, 2022.

114. In _Berlind v. Kinney_, Ms. Berlind lied about the 2017 incident and claimed that Mr. Kinney assaulted her.

115. Under Judge Greenhalgh's May 10, 2022 _temporary order_ was no longer in effect, the Conway Police criminally charged Mr. Kinney with violating it on December 15, 2022.[35]

116. Mr. Kinney complained that he was receiving ineffective assistance of counsel in his criminal bench trial before Judge Greenhalgh held on January 24, 2023.

117. Mr. Kinney was represented by Attorney Megan De Vorsey (NH Bar #15130) from the NH Public Defender's Office, in the 3rd Circuit District Court.

118. **Judge Greenhalgh** found Mr. Kinney guilty of violating a temporary restraining order issued **on May 10, 2022 by Judge Greenhalgh**, that was **no longer in effect**, at the time Mr. Kinney was alleged to have violated it.

119. After Mr. Kinney served his full 60-day sentence imposed by Judge Greenhalgh, Justice Melissa Countway (then a trial court judge) determined that Mr. Kinney would need to be re-incarcerated in preventative detention if Mr. Kinney wished to exercise any supposed (but illusory!) "right" to a jury

---

35  _See_ Exhibit 43 – Criminal Charge: Kinney Violation of Lapsed Restraining Order (Dec. 15, 2022)

trial – but if Mr. Kinney was willing to withdraw a request for a jury trial, he could be released immediately.

120. Such behavior by the New Hampshire Judicial Branch amounts to nothing less than holding victims of domestic violence hostage, incarcerated in preventative detention, for extended periods of time, if they wish to exercise any constitutional rights traditionally afforded criminal defendants.

121. On appeal, the New Hampshire Supreme Court ruled that, in criminal cases brought under N.H. Rev. Stat. § 173-B, defendants may not raise ineffective assistance of counsel in the trial court as a defense on appeal. *State v. Kinney*, No. 2023-0169.

122. In Mr. Kinney's related family law case, Mr. Kinney subsequently filed a "Motion for Judicial Notice" received August 25, 2023 by the Conway Family Court, wherein Judge Greenhalgh ruled on 9/7/23 that "Motion to be addressed at hearing on 9/11/23.[36]

123. When Mr. Kinney lawfully subpoenaed Mr. Ranaldi to testify about his Motion for Judicial Notice at his 9/11/23 hearing, Judge Greenhalgh had Mr. Ranaldi arrested and criminally charged. See *State of New Hampshire v. Nicholas John Ranaldi*, No. 430-2023-CR-00661 (N.H. 3d Cir. Ct. Dist. Div. Conway).

124. Mr. Ranaldi could not afford his own attorney, made substantial modifications to the New Hampshire Judicial Branch's "Request for Attorney Form," and was provided private criminal defense counsel at state expense.

125. Mr. Ranaldi's private defense counsel succeeded in getting all three charges against Mr. Ranaldi placed on file without a finding, and his criminal case marked closed.

126. On July 14, 2024, the New Hampshire Judicial Conduct Committee issued a Caution (JC-23-081-C) to Judge Greenhalgh arising directly out of a report of alleged judicial misconduct concerning Judge Greenhalgh filed by Anthony Kinney on or about October 10, 2023.[37]

---

36  *See* Exhibit 44 – Kinney Motion for Judicial Notice - Sept. 11, 2023 Hearing
37  *See* Exhibit 45 – JCC Caution to Judge Greenhalgh, No. JC-23-081-C (July 14, 2024)

## VIII. State of New Hampshire v. Destinie L. Berard, No. 441-2024-CR-00353

### A. Selective and Retaliatory Prosecution of Berard

127. At the present time, Ms. Berard is being actively criminally prosecuted by the Prosecutorial defendants for allegedly violating a restraining order issued by Judge Polly Hall. *See State of New Hampshire v. Destinie L. Berard*, No. 441-2024-CR-00353, 10th Circuit, District Division, Hampton, NH.

128. Defendants John Formella (New Hampshire Attorney General), John Ventura (Seabrook Police Prosecutor), and Daniel Lawrence (Seabrook Police Sergeant) engaged in a pattern of prosecutorial abuse and selective enforcement, wrongfully criminalizing Berard based on a fraudulent protective order obtained through perjury by Officer Patrick Szymkowski.

129. The criminal prosecution of Berard in New Hampshire is predicated on morally reprehensible and retaliatory allegations that have no legitimate basis in law or fact.

### B. Prosecution for Alleged Church Attendance

130. While New Hampshire's "star chamber" civil DV system (as described by David Heleniak and the Fifth Circuit in *Rahimi*) doesn't really respect *any* traditional "due process" constitutional rights, it has taken *special car*e to *single out* attempts *to peacefully attend public church services*, as somehow constituting a form of "domestic violence" – all because sophisticated litigants such as Ms. Albrecht and Ofc. Szymkowski know how to manipulate the system and "play the victim."

131. In 2022, Szymkowski accused Berard of violating the fraudulent restraining order simply for *allegedly* attending **a church service**.

   • This alleged "violation" was nonviolent and posed no legitimate threat to Szymkowski, just like Mr. Albrecht's attempts peacefully to attend a public Massachusetts church service posed no legitimate threat to Ms. Albrecht.

   • Massachusetts authorities refused to prosecute Berard under Mass. Gen. Laws ch. 209A, § 7 (violation of a restraining order), leading to a

dismissal of a similar Massachusetts case in 2022, where Syzmkowski also sought to have Berard criminally prosecuted.

132. After the Massachusetts prosecution failed, Szymkowski turned to New Hampshire authorities, who enabled his campaign of legal harassment against Berard:

- Prosecutor John Ventura and Sergeant Daniel Lawrence actively worked to maintain an in-state arrest warrant against Berard, despite knowing the case was baseless.

### C. "Smoking Gun" Email Evidence of Malicious Prosecution

133. The collusion between Szymkowski and Seabrook Police Sergeant Daniel Lawrence is evidenced in an email exchange from November 14, 2022, in which:

- Szymkowski informed Lawrence that the Massachusetts charge had been dismissed.

- Lawrence responded that, although Berard's extradition was unlikely, "At least we know she will always be looking over her shoulder and staying out of NH because she knows she has a warrant waiting for her!"

134. This email exchange reveals that Berard's arrest warrant was not maintained for legitimate law enforcement purposes but rather as a tool of coercion and intimidation. The stated goal was to:

- Deter Berard from entering New Hampshire out of fear of arrest.

- Keep her in a perpetual state of legal uncertainty and distress.

- Preserve Szymkowski's ability to manipulate the legal system to exert control over his former victim.

135. Sergeant Daniel Lawrence's statement – suggesting satisfaction that Berard "will always be looking over her shoulder" – constitutes a blatant abuse of prosecutorial discretion and a willful violation of her constitutional rights.

**D. Unlawful and Selective Prosecution**

136. Prosecutors have an ethical duty to pursue justice, not to serve as enforcers of retaliatory claims.

- Despite overwhelming evidence that Szymkowski was the actual abuser and that his restraining order was obtained through perjury, Defendants Ventura and Lawrence actively sustained a wrongful prosecution against Berard.

- Defendant Formella, as New Hampshire Attorney General, failed to intervene despite his authority and responsibility to prevent wrongful prosecutions within the state.

137. The fact that Massachusetts dismissed a similar case in 2022 demonstrates that no legitimate basis for prosecution existed – yet the New Hampshire Prosecutorial Defendants and New Hampshire Judicial Defendants have persisted in their efforts to criminalize Berard.

138. This is a textbook case of selective and retaliatory prosecution, in violation of the Equal Protection Clause of the Fourteenth Amendment. *See, e.g.*, *Wayte v. United States*, 470 U.S. 598, 608 (1985) (holding that selective prosecution violates equal protection when it is based on an arbitrary classification, such as retaliation or personal bias).

139. By maintaining an unjustified arrest warrant against Berard, Defendants have engaged in conduct that shocks the conscience and violates well-established constitutional protections.

**E. Unlawful Incarceration.**

140. On Friday, March 15, 2024, Seabrook Police Department patrol officer Kassandra (Storms) Kaminski arrested Berard during a routine traffic stop in New Hampshire.

- Berard was held in preventative detention for three days without access to counsel.

- She was not brought before a judge until Monday, March 18, 2024, when a bail hearing was held before Judge Ellen Christo.

141. This prolonged detention without timely judicial review violated Berard's constitutional right to due process under the Fourteenth Amendment.

- Her detention was based on a warrant that should have never been issued.

- The alleged violation stemmed from a fraudulently obtained restraining order.

- The email exchange between Lawrence and Szymkowski shows a deliberate intent to keep Berard in fear of being arrested, further underscoring the retaliatory nature of the prosecution.

142. The New Hampshire Judicial Branch has a documented history of detaining indigent defendants without timely bail hearings, creating a systemic due process violation.

143. These facts raise serious concerns regarding whether Officer Kaminski's actions were independently motivated by law enforcement priorities or whether she was acting at the direction of the Prosecutorial Defendants.

## IX. Allegations Against the Judicial Defendants and Indigent Defense & Funding Defendants

### A. Systemic Denial of Counsel in Violation of Constitutional Rights

144. This is a civil rights action under 42 U.S.C. § 1983 seeking declaratory and injunctive relief against the Judicial Defendants and Indigent Defense & Funding Defendants for violating the Sixth and Fourteenth Amendments to the United States Constitution.

145. Ms. Berard filed a *pro se* motion for appointed counsel at state expense, requesting a qualified criminal defense attorney.

146. Despite this, the state court has refused to schedule or rule on the motion, forcing the defendant to proceed unrepresented in criminal proceedings.

147. Recognizing the fundamental unfairness of being forced to trial without effective representation, the defendant filed the first of three *pro se* motions to continue her multiple trials:

- The first motion was not objected to by the State, but denied by Judge Pendleton, resulting in a hearing (noticed as a *trial*) held on July 10, 2024, where Ms. Berard was forced to appear *pro se*.

148. On July 10, 2024, Ms. Berard was forced to appear *pro se* before Referee Scott Murray, despite:

- Having timely requested a continuance more than 10 days in advance of what was *noticed as a trial*.

- Being entitled to a jury trial, which a referee may not preside over absent consent of all parties, pursuant to N.H. Rev. Stat. § 490-F:15.

149. Referee Murray acted in the complete absence of all subject matter jurisdiction and improperly assumed the role of both judge and prosecutor, by:

- Failing to properly inform Ms. Berard of her rights.

- Conducting a *de facto* deposition of the unrepresented defendant in open court.

- Proceeding with trial-like proceedings despite lacking jurisdiction.

150. Again recognizing the fundamental unfairness of being forced to trial without effective representation, the defendant filed the second two of her three *pro se* motions to continue her multiple trials:

- The second motion was assented-to by the State, and denied by Judge Pendleton, resulting in a *trial* being held on November 13, 2024.

- The third motion was filed on an *ex parte* <u>emergency</u> basis on November 8, 2024, with no objection from the State, and no ruling by the Judicial Defendants until *five days later* and *during* the trial held on November 13, 2024, when it was deemed moot.

151. As a last resort, Plaintiff Dana Albrecht – acting under N.H. Rev. Stat. § 311:1 essentially as a "good Samaritan" – entered an emergency appearance to prevent a fundamentally unfair proceeding that Ms. Berard was forced to attend on November 13, 2024 – *no matter what*.

152. Mr. Albrecht initially intended to limit his role to assisting Ms. Berard to obtain effective assistance of counsel by means of a qualified professional criminal defense attorney.

153. Nevertheless, during the **_trial_** that was held on November 13, 2024, Mr. Albrecht successfully excluded all prosecution evidence, demonstrating the necessity of competent legal representation for Ms. Berard.

154. Following this, Judge Dorothy Walch _sua sponte_ continued the trial to benefit the prosecution, despite Judge Pendleton having previously denied _any_ continuance that would have benefited the defendant.

155. By and through Mr. Albrecht, Ms. Berard also sought pre-trial appellate review in the NH Supreme Court. See _State v. Berard_, No. 2025-0129.

156. On April 30, 2025, Ms. Berard (via Mr. Albrecht) submitted a Motion to the NH Supreme Court requesting clarification as to what, if any, objective criteria it uses when deciding whether to accept interlocutory review in criminal cases.[38]

157. On May 1, 2025, Ms. Berard (via Mr. Albrecht) submitted an amended Notice of Appeal to the NH Supreme Court, along with a Motion to Reconsider[39] a prior "single justice" order by Justice Countway denying Ms. Berard's request for interlocutory review of various trial court orders.[40]

158. On April 24, 2025, Mr. Albrecht filed a "Motion for Withdrawal" with the 10th Circuit Hampton Court, which Clerk Meyer returned to Mr. Albrecht without docketing.[41]

159. On May 27, 2025, the 10th Circuit Hampton Court **finally** docketed the **first** appearance on behalf of Ms. Berard by a professional private criminal defense attorney, paid for at state expense, thereby finally relieving Mr. Albrecht of any obligation (whether moral, or under Rule 1.16(d) of the NH Rules of Professional Conduct) to represent Ms. Berard in her ongoing **multiple** trials – already held on 7/10/2024; 11/13/2024 (per [ECF No. 31-1](ECF No. 31-1)) – with the

---

38  _See_ [Exhibit 46](Exhibit 46) – Berard Motion re: Interlocutory Review Standards (Apr. 30, 2025)
39  See [Exhibit 47](Exhibit 47) – Berard Amended Notice of Appeal (May 1, 2025)
40  _See_ [Exhibit 48](Exhibit 48) – Selected Trial Court Orders in _State v. Berard_, No. 441-2024-CR-00353
41  _See_ [Exhibit 49](Exhibit 49) – Returned Motion for Withdrawal in Hampton District Court (Apr. 24, 2025)

ongoing intent at the time of this filing to continue to schedule at least one more **additional bench trial** as of the time of the filing of this pleading.

160. The failure to provide Ms. Berard with professional counsel, starting with her three days of incarceration (March 15-18, 2024) in preventative detention up through the appearance filed by professional private counsel on May 27, 2025 constitutes a systemic violation of Ms. Berard's right to counsel under *Gideon v. Wainwright*, 372 U.S. 335 (1963), and the right to effective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984).

### B. Unlawful Interference with the Ms. Berards's Right to Choose Representation

161. The Judicial Defendants' failure to appoint counsel left Ms. Berard without any lawful, constitutionally sufficient representation in her criminal case, until the Hampton Court finally received an appearance filed by a private defense attorney on

162. Under *Faretta v. California*, 422 U.S. 806 (1975), a criminal defendant has the right to represent herself if that is her informed choice.

163. Under New Hampshire law (N.H. Rev. Stat. § 311:1), an indigent criminal defendant also has the right to be represented by any unlicensed citizen of good character, but only if both the defendant and the unlicensed citizen voluntarily consent to the arrangement.

164. In this case:

- Ms. Berard did not wish to represent herself.

- Ms. Berard did not wish to be represented by Mr. Albrecht under N.H. Rev. Stat. § 311:1 at any trial on the merits or at any pre-trial hearing on double jeopardy; or, in the alternative, Mr. Albrecht represents that any such effort by Mr. Albrecht to provide such representation was *automatically deficient* per *Strickland* in light of Mr. Albrecht's qualifications.

- Mr. Albrecht did not seek to act as trial counsel and had no intention of representing Ms. Berard through one of her *multiple trials*.

- Further, the actions of the Judicial Defendants placed Mr. Albrecht in the uncomfortable position of having to comply with Rule 1.16(d) of the NH Rules of Professional Conduct for an extended period of time.

165. Instead, Ms. Berard was entitled to a licensed attorney, at state expense, pursuant to *Gideon v. Wainwright*, who will provide effective assistance of counsel, pursuant to *Strickland*.

166. Despite these well-established legal principles, the Judicial Defendants refused to provide Ms. Berard with any of these options for over a year, violating her constitutional and statutory rights.

### D. The Role of the Indigent Defense & Funding Defendants

167. The New Hampshire Public Defender publicly advertises on its website that "If you have a question about any criminal matter, you can contact the New Hampshire Public Defender and request to speak to an attorney for legal advice, even before the court determines if you qualify for an attorney and before a charge is filed."[42]

168. The New Hampshire Public Defender's Office (NHPD), the Judicial Council, and Commissioner Arlinghaus have failed in their statutory duties to ensure that indigent defendants receive competent legal representation.

169. These Defendants bear direct responsibility for:

- The failure to appoint a licensed attorney for an indigent defendant facing criminal prosecution for over a year.

- The refusal for over a year to provide funding for a court-appointed attorney.

- Knowingly allowing an unrepresented defendant to be forced into trial proceedings without taking corrective action.

170. The failure of these Defendants to act has created a constitutional crisis, where:

- An indigent defendant was already forced into trial without representation by any licensed attorney.

---

42  https://www.nhpd.org/about-us/

- A qualified, licensed attorney was unlawfully withheld despite the defendant's eligibility.

- The New Hampshire judicial system is actively facilitating violations of fundamental constitutional rights.

171. Defendants' failure to act constitutes a violation of 42 U.S.C. § 1983, as they have created an ongoing, systemic denial of counsel for indigent defendants.

172. The NHPD, as a 501(c)(3) nonprofit corporation, administers a state contract for the provision of public defense services, yet has failed to fulfill its obligation in this case.[43]

173. Commissioner Arlinghaus, in his role as the state official responsible for disbursing indigent defense funds, has also failed to take necessary action to ensure that funding is available for court-appointed counsel.

174. These failures to act have resulted in a denial of constitutional rights, necessitating equitable and injunctive relief to ensure compliance with constitutional obligations.

**E. Systemic Scheduling Bias in Favor of the Prosecution**

175. The Judicial Defendants have engaged in a pattern of scheduling bias that has systematically disadvantaged Ms. Berard, violating her due process and equal protection rights under the Fourteenth Amendment.

176. The scheduling bias includes:

- Denying every single motion for a continuance filed by Ms. Berard.

- Scheduling critical hearings without sufficient notice, making it impossible for Ms. Berard to secure professional legal representation or adequately prepare.

- Deliberately delaying any ruling on the Plaintiff(s) motion(s) for appointed professional counsel while simultaneously refusing to acknowledge Ms. Berard's indigency status.

- Granting *sua sponte* continuances that benefited the prosecution while denying the Ms. Berard's continuance requests.

---

43 *See* Exhibit 50 – NHPD 501(c)(3) Status and State Contract for Indigent Defense

177. This pattern of judicial scheduling bias is evident from the following key events:

- On July 10, 2024, Ms. Berard was forced to appear *pro se* before Referee Scott Murray, despite timely filing a continuance request.

- On November 13, 2024, Ms. Berard was again forced into a hearing that was **noticed as a trial** without counsel, while the prosecution was afforded full opportunity to proceed.

- On February 13, 2025, Judge Pendleton issued an unconstitutionally vague scheduling order, failing to provide clear notice regarding the status of the case.

- The court refused to rule on Plaintiff(s) motion(s) for appointed licensed counsel at nearly every stage, ensuring that Ms. Berard remained either unrepresented or underrrpresented while trial proceedings advanced.

178. The effect of these actions is a systematic effort to deny indigent defendants meaningful legal representation.

179. This pattern constitutes an equal protection violation under the Fourteenth Amendment, as it treats indigent defendants differently than similarly situated criminal defendants with means to hire private counsel.

180. This conduct also violates procedural due process, as fundamental fairness requires that indigent defendants receive adequate notice and a meaningful opportunity to secure representation before being forced into legal proceedings.

181. The cumulative effect of these scheduling irregularities requires judicial intervention, including declaratory relief and an injunction against further biased scheduling practices.

### F. The Unconstitutional Consequences of This Systemic Breakdown

182. The Judicial Defendants, Indigent Defense & Funding Defendants, and the New Hampshire Supreme Court have created an unlawful system where:

- An indigent defendant was denied her constitutional right to professional counsel.

- The state coerced a private citizen, Mr. Albrecht, into legal proceedings despite Ms. Berard consenting to representation by Mr. Albrecht only *under duress*, because the Judicial Defendants refused to schedule any status of counsel hearing or otherwise rule on Ms. Berard's request for court-appointed professional counsel.

- The state's highest court has refused to intervene to rectify clear constitutional violations.

183. Judge Pendleton issued an unconstitutionally vague scheduling notice for a hearing on March 13, 2025, despite:

- A long track record of the New Hampshire Judicial Branch failing to provide adequate notice to parties, including sending notices to incorrect addresses, failing to affix proper postage, and issuing untimely hearing notices.

- This pattern of administrative failure violating procedural due process rights and hindering effective participation in legal proceedings.

184. The New Hampshire Judicial Branch has a well-documented history of failing to ensure that indigent defendants receive timely and fair consideration of their constitutional rights, raising broader concerns about the state's ability to administer justice fairly and impartially.

185. The pattern of judicial bias and scheduling manipulation in Ms. Berard's case constitutes a fundamental breakdown in the administration of justice, necessitating extraordinary judicial relief.

186. Given these ongoing constitutional violations, Plaintiff(s) seek an injunction preventing Judge Pendleton from holding any trial on the merits in Ms. Berard's underlying criminal case, and injunctions preventing any of the Prosecutorial defendants from prosecuting Ms. Berard.

## X. Additional Facts Supporting As-Applied Challenge to N.H. Rev. Stat. § 173-B:9

187. N.H. Rev. Stat. § 173-B:9, as applied in this case, is unconstitutional because it has been weaonized to deprive Ms. Berard of due process and her First and Sixth Amendment rights.

188. The specific constitutional violations resulting from the application of this statute include:

- Punishing defendants for allegedly engaging in constitutionally protected religious activity (attending a church service), in violation of the First Amendment's Free Exercise Clause.

- Using the statute as a tool for selective and retaliatory prosecution, where similarly situated individuals have not faced criminal charges for comparable conduct.

- Creating an unconstitutional presumption of guilt, where defendants have been forced to contest criminal charges without licensed counsel, violating fundamental due process protections.

- Enabling unlawful incarceration, where defendants have been jailed in preventative detention without access to effective counsel, without a meaningful opportunity to contest the validity of any civil restraining order issued under , and without a fair hearing on any status of counsel claims.

189. The New Hampshire Supreme Court's refusal to provide pre-trial appellate review further compounds the harm, as it ensures that the unconstitutional application of N.H. Rev. Stat. § 173-B:9 remains unchallenged.

190. Plaintiff(s) seek injunctive relief preventing further prosecution under N.H. Rev. Stat. § 173-B:9 unless and until their constitutional due process rights are fully restored and meaningfully protected.

## XI. Conclusion: Systemic Constitutional Breakdown Requires Judicial Intervention

191. The Judicial Defendants, Indigent Defense & Funding Defendants, and Prosecutorial Defendants have together created a legal system in which:

- Indigent defendants are denied legal representation in criminal proceedings.

- State actors manipulate procedural rules to systematically benefit the prosecution.

- Judicial officers refuse to address clear constitutional violations, effectively enabling the continued deprivation of fundamental rights.

192. These systemic failures constitute ongoing violations of the U.S. Constitution, requiring immediate judicial intervention.

193. Plaintiff(s) respectfully request declaratory and injunctive relief to correct these violations, ensure due process for indigent defendants, and prevent further unconstitutional prosecution under N.H. Rev. Stat. § 173-B:9.

### MATTERS OF LAW PLEAD COMMON TO ALL COUNTS

194. Plaintiff(s) repeat and re-allege ¶¶1-193 above.

195. Generally speaking, to prevail on a First Amendment retaliation claim, a plaintiff must prove: "(1) he or she engaged in constitutionally protected conduct, (2) he or she was subjected to an adverse action by the defendant, and (3) the protected conduct was a substantial or motivating factor in the adverse action." *D.B. ex rel. Elizabeth B. v. Esposito*, 675 F.3d 26, 43 (1st Cir. 2012).

196. Even in cases where there is a retaliatory arrest claim involving an actual arrest, the existence of probable cause is not fatal when a plaintiff is arrested in "circumstances where officers have probable cause to make arrests but typically exercise their discretion not to do so." *Nieves v. Bartlett*, 587 U.S. 391, 406 (2019). A plaintiff may even succeed on a retaliatory arrest claim despite probable cause if he or she "presents objective evidence that he [or she] was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id.* at 407. The rationale is that "an unyielding requirement to show the absence of probable cause could pose 'a risk that some [decision makers] may exploit the arrest power as a means of suppressing speech.'" *Id.* at 406.

197. More recently, our United States Supreme Court has explained that a plaintiff is not required to present evidence of "virtually identical and identifiable comparators" who "mishandled a government petition in the

same way … but were not arrested." *Gonzalez v. Trevino*, 602 U.S. 653, 658 (2024).

198. "It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must cause the injury. Specifically, it must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Nieves* at 398-99.

199. To succeed on a retaliation claim, a plaintiff need not prove that the alleged retaliation subjectively chilled him from engaging in conduct protected by the First Amendment. *Grossman v. Martin*, 566 F. Supp. 3d 136, 145 (D.R.I. 2021). Rather, he need only show (1) that he engaged in protected conduct, (2) the defendant took an adverse action against him, (3) his protected conduct was a substantial or motivating factor for the adverse action, and, (4) if the claim is for retaliatory arrest, that his arrest was not supported by probable cause (unless the <u>Nieves</u> exception applies). *Elizabeth B.*, 675 F.3d at 43; *Nieves*, 587 U.S. at 401, 406-07. "Regarding the second element, an adverse action in a First Amendment case is one that 'viewed <u>objectively</u> would have a chilling effect on the plaintiff's exercise of First Amendment rights,' or that 'would deter a reasonably hardy person from exercising his or her constitutional rights.'" *Pollack v. Reg. Sch. Unit 75*, 12 F. Supp. 3d 173, 188 (D. Me. 2014) (emphasis added; citation, brackets and ellipsis omitted) (quoting *Barton v. Clancy*, 632 F.3d 9, 29 & n.19 (1st Cir. 2011), and *Elizabeth B.*, 675 F.3d at 43 n.11). "Actual deterrence need not be shown." *Grossman*, 566 F. Supp. 3d at 145 (emphasis omitted) (quoting *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010)).

200. Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), a municipality may be held liable under § 1983 if the constitutional violation was caused by:

(a) an **official policy**,

(b) a **widespread custom or practice**, or

(c) an act of a **final policymaker**.

201. "Judicial immunity does not protect judges so much as it protects the judicial acts they undertake as part of their public service; it is 'defined by the *functions* it protects and serves, not by the person to whom it attaches.' (emphasis in original). As such, judges are not protected if they act in the 'clear absence of all jurisdiction over the subject-matter' or when they engage in nonjudicial acts." *Gibson v. Goldston*, 85 F. 4th 218, 223 (4th Circ. 2023).

202. The United States Supreme Court has "has distinguished judges' judicial functions, which are protected by judicial immunity, from their 'administrative, executive, or legislative functions,' which are not." *Gibson at 225*, citing *Forrester v. White*, 484 U.S. 219 (1988).

203. The First Circuit has also explained that judges may be defendants under § 1983 when they are not acting purely in their adjudicative capacity. *In re Justices of Supreme Court of Puerto Rico*, 695 F. 2d 17 (1st Cir. 1982). Indeed, any "argument that they are simply immune from suit for injunctive or declaratory relief is wrong; the district court correctly held that there is no such absolute immunity and that injunctions can be issued against judges in an appropriate case." *Id. at 25-26*.

204. "Congress plainly intended declaratory relief to act as an alternative to the strong medicine of the injunction." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 33 (2008), citing *Steffel v. Thompson*, 415 U.S. 452 (1974).

205. The New Hampshire state courts do <u>not</u> provide adequate opportunity to raise the constitutional challenges brought here, and any abstention by this Court will cause irreparable harm. *Sirva Relocation, LLC v. Richie*, 794 F. 3d 185 (1st Cir. 2015), citing *Younger v. Harris*, 401 U.S. 37 (1971).

206. "The Younger doctrine welds principles of federalism and comity into a fulcrum that can then be used to achieve a proper balance between sensitive federal and state interests." *Brooks v. New Hampshire Supreme Court*, 80 F.3d 633, 635 (1st Cir. 1996). Younger abstention applies when the following are met: (1) there is an ongoing state judicial proceeding that falls within its taxonomy, (2) the proceeding regards an important state interest satisfying, and (3) the proceeding provides an adequate opportunity for the plaintiff to raise federal constitutional issues. Here, the third prong is not met, as the

ongoing state proceedings,including denial of *any* pre-trial appellate review by the New Hampshire Supreme Court, do **not** provide an adequate opportunity for Plaintiff(s) to raise federal constitutional issues.

207. "Four requirements must be met in order for Rooker-Feldman to bar suit: '(1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments.'" *Allen v. DeBello*, 861 F.3d 433, 438 (3d Cir. 2017). Indeed, "the doctrine has narrow applicability. Rooker-Feldman does not bar suits that challenge actions or injuries underlying state court decisions – and especially those that predate entry of a state court decision – rather than the decisions themselves." *Id*.

208. A motion to dismiss under Rule 12(b)(6) must be denied if the complaint states a claim upon which relief can be granted. The Court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

209. The United States Supreme Court's holding in *West v. Atkins*, 487 U.S. 42 (1988), makes clear that a private entity under contract to perform an essential public function—such as the defense of indigent persons in criminal prosecutions—is a state actor when carrying out that function.

210. Under the Due Process Clause of the Fourteenth Amendment, judicial recusal is required where there is a significant risk of actual bias or prejudgment, even without proof of actual bias. *Caperton v.A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 129 S.Ct. 2252, 2255 (2009). The United States Supreme Court has emphasized that "the question is whether, 'under a realistic appraisal of psychological tendencies and human weakness,' the interest 'poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.'" *Id*. *See also Rippo v. Baker*, 580 U.S. 285 (2017) ("overturning a judgment of the Supreme Court of Nevada when it applied the wrong legal standard where a Nevada judge was the target of a federal bribery probe").

211. In any action involving N.H. Rev. Stat. § 173-B , the New Hampshire Supreme Court has held that "'The court may consider evidence of such acts, regardless of their proximity in time to the filing of the petition, which, in combination with recent conduct, reflects an ongoing pattern of behavior which reasonably causes or has caused the petitioner to fear for his or her safety or well-being.' RSA 173-B:1, I." *See Christine Berlind v. Anthony Kinney, No. 2022-0463 (February 24, 2023 order)*.

212. Consequently, any time limit set forth in N.H. Rev. Stat § 508:4 is inapplicable to this matter, which provides limits "except as otherwise provided by law" wherein N.H. Rev. Stat. § 173-B explicitly provides other provisions. Given any conflict between N.H. Rev. Stat. § 173-B and N.H. Rev. Stat § 508:4, it is clear that the New Hampshire Supreme Court has affirmed that N.H. Rev. Stat. § 173-B controls.

## STANDING

### A. Plaintiff(s)' Standing Under Article III of the U.S. Constitution

213. Plaintiff(s) repeat and re-allege paragraphs 1 through 212 above.

214. Plaintiff(s) have standing to bring this action under Article III of the U.S. Constitution, which requires (1) an injury-in-fact, (2) causation, and (3) redressability. *See Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992)*.

215. Mr. Albrecht's injury-in-fact arises from multiple, ongoing constitutional violations:

- Mr. Albrecht has been faced with either *continuing* to provide legal representation in a criminal proceeding despite not being a licensed attorney, or risk violating Rule 1.16(d) of the New Hampshire Rules of Professional Conduct exposing him to potential legal liability, ethical conflicts, and professional harm. This constitutes a direct, concrete injury under *Havens Realty Corp. v. Coleman, 455 U.S. 363, 378–79 (1982)*.

- Mr. Albrecht's First Amendment right to petition the government for redress of grievances has been unlawfully burdened. The United States

Supreme Court has held that petitioning the courts for relief is a core constitutional right protected under the Petition Clause of the First Amendment. *See Borough of Duryea v. Guarnieri*, 564 U.S. 379, 388–97 (2011).

- Mr. Albrecht has suffered an injury arising from violations of Ms. Berard's procedural due process rights, as Defendants have denied meaningful notice, provided vague judicial orders, and systematically manipulated court procedures to the detriment of Plaintiff(s). *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

216. Causation is satisfied because the constitutional violations at issue—denial of counsel, judicial bias, scheduling manipulation, and compelled legal representation—are directly traceable to Defendants' actions.

217. Redressability is satisfied because this Court can issue declaratory relief, injunctive relief, and equitable relief that will remedy the ongoing constitutional violations and prevent further harm to both Ms. Albrecht and Ms. Berard. *See Franklin v. Massachusetts*, 505 U.S. 788, 803 (1992).

**B. Plaintiff(s) Standing Under the First Amendment Petition Clause**

218. Plaintiff(s) standing is further reinforced by the First Amendment's Petition Clause, which protects the right to seek redress through the courts and other governmental processes. *See Guarnieri*, 564 U.S. at 388–97 (explaining that the Petition Clause safeguards both individual grievances and broader public concerns).

219. Mr. Albrecht engaged in protected petitioning activity when he sought judicial relief regarding Ms. Berard's unconstitutional lack of professional licensed counsel and challenged unconstitutional state actions.

220. Defendants retaliated against Mr. Albrecht's petitioning activity by:

- Issuing unconstitutionally vague and misleading judicial orders that obstructed Mr. Albrecht's ability to advocate effectively.

- Unlawfully compelling Mr. Albrecht to act as legal counsel to deter him from further advocacy, above and beyond Mr. Albrecht's intended role simply to assist Ms. Berard to secure professional, licensed counsel.

- Weaponizing procedural rules and scheduling practices to impose burdensome, unpredictable litigation costs and time constraints.

221. The United States Supreme Court has repeatedly affirmed that the right to petition extends to all branches of government, including the judiciary. *See BE & K Constr. Co. v. NLRB*, 536 U.S. 516, 525 (2002); *McDonald v. Smith*, 472 U.S. 479, 484 (1985).

**C. Mr. Albrecht Has Alleged Direct, Personal Injuries in Fact**

222. Mr. Albrecht has suffered **direct, personal, and economic injuries** stemming from defendants' unlawful acts. These include:

- **Substantial financial expenditures**, including hundreds of dollars in gasoline and tolls to physically access rural courthouses and government offices due to dysfunctional or inaccessible processes;

- **Real monetary costs** associated with purchasing court transcripts, paying rush/express postage, and obtaining physical service of subpoenas in environments where electronic access is denied or delayed;

- **Lost productivity and opportunity cost**, given the necessity to spend hours or full days driving to multiple courthouses, filing paper pleadings, or rectifying errors caused by court or state actor dysfunction;

- **Mental and physical stress**, including fatigue and disruption of professional obligations, caused by the need to go "above and beyond" to preserve Ms. Berard's rights under an adversarial system actively impaired by the defendants' conduct.

227. These harms are not "conjectural or hypothetical," but instead are real, measurable, and traceable to specific governmental acts and omissions. They are not dependent upon the outcome of Ms. Berard's case or any theory of third-party harm.

**D. These Injuries Are Fairly Traceable to Defendants' Conduct**

228. Mr. Albrecht's alleged injuries flow directly from the defendants' unconstitutional or unlawful conduct, including:

• The initiation and continuation of retaliatory, unsupported, or procedurally abusive criminal or quasi-criminal proceedings against Ms. Berard;

• The manipulation or breakdown of procedural access (e.g., failure to send proper notice, failure to provide electronic access to files, imposition of avoidable in-person burdens);

• Systemic court failures and bureaucratic obstruction that impose burdens **uniquely on those who actively try to litigate in defense of targeted individuals.**

232. Had these proceedings not been initiated—or had they followed lawful process—Mr. Albrecht would not have been forced to expend his own time, energy, and resources. *Cf. Sierra Club v. Morton*, 405 U.S. 727, 734–35 (1972) (injury includes use and enjoyment harm). The **traceability** requirement is satisfied.

**E. These Injuries Are Redressable by Court Order**

233. A favorable ruling from this Court could:

• Declare that the challenged conduct was unlawful or unconstitutional;

• Enjoin further retaliatory or procedurally defective conduct;

• Award damages or costs where available;

• Compel defendants to make reasonable accommodation for access (e.g., electronic transmission, scheduling fairness, procedural safeguards).

238. Such relief would **redress** the injuries Mr. Albrecht has already suffered and help prevent recurrence. This satisfies the third element of standing.

**F. Mr. Albrecht's claim do not depend on third-party standing.**

239. While the complaint references Ms. Berard's injuries, Mr. Albrecht's standing arises from **his own injuries** in attempting to represent her within an adversarial system that has been **deliberately or negligently obstructive**, resulting in **independent harm** to him as a participant in that system.

240. While prudential standing doctrine disfavors cases involving "questions of broad social import where no individual rights would be vindicated," _Conservation Law Foundation v. Reilly_, 950 F. 2d 38, 41 (1st Cir. 1991), that concern is absent here. Mr. Albrecht is not asserting abstract or generalized grievances. He has pled a **particularized, fact-specific pattern of economic and procedural harm** flowing from state conduct.

**G. Ms. Berard has sought to join this action as an independent Plaintiff.**

241. Ms. Berard has sought to join this action as an independent Plaintiff. Her own motion, bearing her own signature as a distinct _pro se_ litigant, is presently pending before this Court. _See_ ECF No. 24.

**H. Conclusion**

242. Plaintiff(s) satisfy all elements of Article III standing and have an additional basis for standing under the First Amendment's Petition Clause.

243. Because Plaintiff(s) seek declaratory, injunctive, and equitable relief to prevent ongoing constitutional violations, this Court has both the jurisdiction and the authority to hear the case and grant appropriate relief. _See Ex parte Young_, 209 U.S. 123 (1908).

## CAUSES OF ACTION

## COUNT I – Fourteenth Amendment Violation – Risk of Judicial Bias

*(Fourteenth Amendment – Due Process)*

244. Plaintiff(s) repeat and re-allege paragraphs 1 through 198 above.

245. Defendant Anna Barbara Hanz Marconi is presently being criminally prosecuted by the State of New Hampshire and has been indicted for two Class B felonies: one count of *Attempt to Commit Improper Influence*[44] and one count of *Criminal Solicitation of Improper Influence*.[45] She also faces five Class A misdemeanors: two counts of *Criminal Solicitation of Misuse of Position*,[46] one count of *Criminal Solicitation of Official Oppression*,[47] one count of *Official Oppression*,[48] and one count of *Obstructing Government Administration*.[49] She is accused of attempting to influence the investigation into her husband by soliciting New Hampshire Governor Chris Sununu to expedite its conclusion.

246. Defendant Marconi has stated under oath that Defendant Gordon MacDonald instructed her, in advance of the actions she is being criminally charged for, that "I think you can do that – You are a constituent and have concerns."

247. On August 2, 2024, Investigator Tom Desfosses from the New Hampshire Attorney General's office interviewed Defendant Gordon MacDonald.

248. Defendant Gordon MacDonald was represented by Defendant Creegan during this interview.

249. Defendant MacDonald's statements do not agree with Defendant Marconi's claim (at ¶246).

---

44  N.H. Rev. Stat. § 629:1, I; N.H. Rev. Stat. § 640:3, I(b)
45  N.H. Rev. Stat. § 629:2, I; N.H. Rev. Stat. § 640:3, I(b)
46  N.H. Rev. Stat. § 629:2, I; N.H. Rev. Stat. § 21-G:23, II
47  N.H. Rev. Stat. § 629:2, I; N.H. Rev. Stat. § 643:1
48  N.H. Rev. Stat. § 643:1
49  N.H. Rev. Stat. § 21-G:23, II

250. The reasonable inference is that either Defendant Marconi lied in her sworn accord, or Defendant MacDonald lied in his August 2, 2024 interview, or both.

251. Defendant Creegan has unilaterally attempted in Ms. Berard's criminal proceedings to introduce evidence of Mr. Albrecht's alleged prior actions with Defendant MacDonald into her state court criminal proceedings to influence New Hampshire state court judicial officers to find against Ms. Berard on the basis of <u>unrelated</u> alleged prior interactions between Mr. Albrecht and Defendant MacDonald.

252. Indeed, Defendant Creegan has even asserted, in the state-level trial court criminal proceedings against Ms. Berard, that New Hampshire trial court judges should **find against Ms. Berard**, *because* of actions that Mr. Albrecht took in Mr. Albrecht's own domestic violence case.

253. During the December 18, 2024 Motion(s) hearing in *State v. Berard*, Mr. Albrecht timely objected on grounds of relevance that his personal family law case was not relevant to Ms. Berard's criminal case. Nevertheless, Judge Dorothy Walch overruled Mr. Albrecht's objection. Further, Ms. Creegan also argued that the outcome of the November 15, 2023 motion(s) hearing in *Albrecht v. Albrecht*, wherein the New Hampshire Department of Justice appeared as a party, should cause the 10th Circuit Court **to find against Ms. Berard**, in Ms. Berard's case.

254. Mr. Albrecht requested that the 10th Circuit Court strike such argument from the record, but the 10th Circuit Court declined.

255. Consequently, it now appears to be the official position of the New Hampshire Judicial Branch, by and through Chief Justice Gordon Macdonald's personal attorney Erin Creegan, that the New Hampshire Judicial Branch should find against Ms. Berard in *State v. Berard*, *because* it has already found against Mr. Albrecht in *Albrecht v. Albrecht*.

256. Under the Due Process Clause of the Fourteenth Amendment, judicial recusal is required where there is a significant risk of actual bias or prejudgment, even without proof of actual bias. *Caperton v.A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 129 S.Ct. 2252, 2255 (2009). The United States Supreme Court has

emphasized that "the question is whether, 'under a realistic appraisal of psychological tendencies and human weakness,' the interest 'poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.'" *Id.*

257. Consequently, if a judicial officer in the New Hampshire Judicial Branch has a conflict with Defendant Creegan, it would be a conflict of interest and violation of the Fourteenth Amendment for that judicial officer to issue rulings on motions filed by Defendant Creegan, or to preside over hearings where Defendant Creegan appears.

258. The Judicial Defendants have failed to recuse themselves in matters where Attorney Creegan has appeared.

259. Consequently, Plaintiff(s) seek declaratory relief that the conflicts between Attorney Creegan and the other Judicial Defendants have resulted in orders that violate the Fourteenth Amendment guarantee against any risk of bias. *See Caperton*. *See also Rippo v. Baker*, 580 U.S. 285 (2017) ("overturning a judgment of the Supreme Court of Nevada when it applied the wrong legal standard where a Nevada judge was the target of a federal bribery probe").

260. On June 16, 2024, Justice Marconi issued an order directing the NH Supreme Court Clerk not to docket various trial court orders Mr. Albrecht had provided to the NH Supreme Court.

261. On June 22, 2024, Mr. Albrecht filed a motion in the NH Supreme Court appeal of his civil domestic violence case, *Katherine Albrecht v. Dana Albrecht*, No. 2023-0181, seeking clarification about Justice Marocni's recusal decisions.

262. On June 27, 2024, Mr. Albrecht received correspondence from the NH Department of Justice denying his public records request for "All records directly relating to the April 18, 2024 PEASE Development Authority Meeting."

263. On July 8, 2024, all five justices of the NH Supreme Court ordered that:

**D.A.'s motion for "clarification re; Justice Marconi" is denied. Justice Hantz Marconi has reviewed this matter and has determined that she is not disqualified.**

264. On August 2, 2024, the New Hampshire Attorney General's office conducted an interview with Chief Justice Gordon Macdonald.

265. Because the New Hampshire Attorney General's office had specifically intervened in _Albrecht v. Albrecht_ during the November 15, 2023 motions hearing, Justice Marconi should have recused herself, rather than issue her June 16, 2024 Order.

266. Because Justice MacDonald was fully aware on July 8, 2024 of the full circumstances surrounding Justice Marconi, Justice MacDonald should not have approved that Justice Marconi was not disqualified in Mr. Albrecht's case.

267. Because, in _State v. Berard_, Mr. Albrecht and Ms. Creegan are (or were), in effect, opposing counsel, Justice MacDonald should be recused in all matters involving Ms. Creegan, who is representing Justice MacDonald in the Attorney General's investigation of Justice Marconi.

## COUNT II – First Amendment Violation – Plaintiff's Right to Petition

_(First Amendment – Petition Clause)_

268. Plaintiff(s) repeat and re-alleges paragraphs 1 through 267 above.

269. Mr. Albrecht sought assistance from Defendant Creegan, including requesting discovery, in furtherance of a legitimate legal effort to ensure constitutional compliance.

270. This should be construed as a petition under the First Amendment's Petition Clause.

271. Creegan's emailed response on February 10, 2025, which implied that Mr. Albrecht should personally retain an attorney despite acting solely as a good Samaritan, constitutes retaliation against Mr. Albrecht for engaging in protected petitioning activity.[50]

272. Creegan's emailed response on February 10, 2025, which implied that Plaintiff's unrelated family law matter had any bearing on Ms. Berard's case, constitutes retaliation against Ms. Berard arising out of the Judicial

---

50  _See_ Exhibit 51 – Email from NHJB GC Erin Creegan re: Discovery (Feb. 10, 2025)

Defendants' bias against Mr. Albrecht in prior unrelated litigation where Mr. Albrecht was a party.

273. The Fifth Circuit Court of Appeals has specifically singled out "mandatory judicial training materials" wherein it observes that "family court judges often face immense pressure to grant civil protective orders – with little incentive to deny them. Some judges receive **mandatory training** [emphasis added] that warns of the unfavorable publicity that could result from denying such orders." *See United States v. Rahimi, 61 F.4th 443, 465 (5th Cir. 2023)* (cleaned up).

274. Plaintiff(s) seek that copies of the judicial training materials used by the New Hampshire Judicial Branch related to N.H. Rev. Stat. § 173-B be produced to them, in light of *Rahimi*.

275. Otherwise, Plaintiff(s) cannot accurately ascertain whether New Hampshire Judges have improper bias out of fear of unfavorable media publicity that could result from denying a civil order of protection, as happened in the Lindsay Smith case.

276. Plaintiff(s) also seek the production of the unredacted August 26, 2022 deposition of former Administrative Judge David King, wherein Judge King discusses that official New Hampshire trial court transcripts in Mr. Albrecht's family law case were deliberately altered to omit all evidence of proven judicial misconduct.

## COUNT III – Fourteenth Amendment Violation – RSA 173-B:3 is unconstitutional as-applied

277. Plaintiff(s) repeat and re-allege paragraphs 1 through 276 above.

278. The provision that "Any person filing a petition containing false allegations of abuse shall be subject to criminal penalties" in RSA 173-B:3, I is, for all practical purposes, a "dead letter."

279. New Hampshire rarely, if ever, prosecutes plaintiffs in civil domestic violence petitions brought under RSA 173-B:3, I for making false allegations.

280. Instead, under RSA 173-B:3, anyone (even if they are the abuser) is automatically presumed to be a "victim" if they file first in a <u>civil</u> action as the Plaintiff.

281. The Defendant/Respondent is automatically presumed to be the "perpetrator" or "abuser" if they are the Respondent in such allegedly "civil" proceedings, *prior to* any adjudication on the merits.

282. A temporary order of protection is almost universally granted, on an *ex parte* basis, without the court hearing from both sides.

283. Such temporary orders of protection can be absolutely devastating, and are often used (in practice) to "launch" high-conflict family law cases, wherein "civil protective orders are deployed as 'an affirmative element of divorce strategy.'" *Rahimi* at 465.

284. In short, whichever party gets to court **first** via RSA 173-B:3 to commence a "civil" proceeding – nearly almost automatically wins, and the burden (in practice) then shifts to the other party to prove they did *not* commit any form of abuse pursuant to RSA 173-B:1.

285. This is a complete reversal of traditional American jurisprudence when the burden of proof on a party bringing a civil action is normally on the plaintiff.

286. But, in New Hampshire's "star chamber" trials, this burden is shifted (in practice) to the defendant.

287. As set forth in Mr. Albrecht's case, Ms. Berard's case, and Mr. Anthony Kinney's case, this is precisely what happened, and neither Mr. Albrecht, Ms. Berard, nor Mr. Kinney were afforded due process under the Fourteenth Amendment for *precisely* those reasons articulated by the Fifth Circuit in *Rahimi*.

**<u>COUNT IV – Fourteenth Amendment Violation – RSA 173-B:4 is unconstitutional as-applied.</u>**

288. Plaintiff(s) repeat and re-allege paragraphs 1 through 287 above.

289. In practice, temporary orders are *not* issued "upon a showing of an immediate and present danger of abuse." Rather, *in practice*, they are issued as described by *Rahimi*, wherein:

**Family court judges may face enormous pressure to grant civil protective orders—and no incentive to deny them. For example, family court judges may receive mandatory training in which they're warned about "the unfavorable publicity" that could result if they deny requests for civil protective orders. As one judge has noted, "[a] newspaper headline can be death to a municipal court judge's career." So "the prospect of an unfavorable newspaper headline is a frightening one." To quote another judge: "Your job is not to become concerned about all the constitutional rights of the [defendant] you're violating as you grant a restraining order. Throw him out on the street, give him the clothes on his back and tell him, 'See ya' around.'" Yet another judge said: "If there is any doubt in your mind about what to do, you should issue the restraining order."**

290. Notice is rarely, if ever, provided, before the court simply automatically grants such temporary orders. "So there's a 'tremendous' risk that courts will enter protective orders automatically—despite the absence of any real threat of danger." *Rahimi* at 466.

291. Consequently, N.H. Rev. Stat. § 173-B:4 is unconstitutional as-applied..

## COUNT V – Fourteenth Amendment Violation – RSA 173-B:5 is unconstitutional both on its face and as-applied.

292. Plaintiff(s) repeat and re-allege paragraphs 1 through 291 above.

293. The draconian outcomes described in RSA 173-B:5 are at the heart of the "star chamber" system described by both Heleniak and *Rahimi*.

294. In Mr. Albrecht's case, his order has been indefinitely extended for nearly seven years, wherein the New Hampshire Supreme Court has completely ignored the plain meaning of RSA 173-B:5,VI in favor of issuing arbitrary extensions without any trial court hearing within the 30 day time frame allegedly required by the statute.

295. The New Hampshire Supreme Court has repeatedly justified that Mr. Albrecht's order should be indefinitely extended without the required hearing, tolerating at most a single 30-minute "offers of proof" hearing where Mr. Albrecht was not allowed to conduct discovery or call witnesses in his defense – and all long **after** the 30 day time frame for a hearing had already expired.

296. Indeed, [RSA 173-B:5](#) is unconstitutionally vague, both *prima facie* and as-applied in *Albrecht v. Albrecht*, *Syzmkowski v. Berard*, *Berlind v. Kinney*, and *Smith v. Lorman*. It should be struck down as unconstitutional, with a declaratory judgment it is void for vagueness.

## COUNT VI – Fourteenth Amendment Violation – Denial of requested status of Counsel hearing and refusal to docket motion for withdrawal

297. Plaintiff(s) repeat and re-allege paragraphs 1 through 296 above.

298. On December 20, 2024, the 10th Circuit Court docketed Mr. Albrecht's Motion to Address Status of Counsel. Mr. Albrecht filed this Motion, seeking for the court to appoint a professional attorney for Ms. Berard.

299. On February 13, 2025, Judge Pendleton denied Mr. Albrecht's Motion.

300. Further, to "punish" Plaintiff(s) for asking for a professional attorney, Judge Pendleton then *sua sponte* accelerated a hearing devoted to a complex constitutional question on double-jeopardy spanning multiple jurisdictions from May 15, 2025 to March 13, 2025.

301. On April 24, 2024, Mr. Albrecht filed a "Motion for Withdrawal" with the 10th Circuit Hampton Court, which Clerk Meyer returned to Mr. Albrecht without docketing.

302. The denial of Mr. Albrecht's Motion to Address Status of Counsel (at ¶297) and refusal by Clerk Meyer to docket Mr. Albrecht's Motion for Withdrawl (at ¶300) are violations of Plaintiff(s)' procedural and substantive due process rights.

## COUNT VII – False advertising by the NH Public Defender (N.H. Rev Stat § 358-A:1)

303. Plaintiff(s) repeat and re-allege paragraphs 1 through 302 above.

304. This claim arises from the same nucleus of operative fact as Plaintiff's federal claims under 42 U.S.C. § 1983 and forms part of the same case or controversy under Article III of the U.S. Constitution. This Court therefore has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

305. N.H. Rev Stat § 358-A:1 prohibits unfair or deceptive trade practices.

306. In particular, N.H. Rev Stat § 358-A:1, IX prohibits advertising goods or services with intent not to sell them as advertised.

307. The New Hampshire Public Defender publicly advertises on its website that "If you have a question about any criminal matter, you can contact the New Hampshire Public Defender and request to speak to an attorney for legal advice, even before the court determines if you qualify for an attorney and before a charge is filed."

308. Plaintiff(s) – both Mr. Albrecht and Ms. Berard, independently sent multiple requests to the New Hampshire Public Defender for assistance.

309. The New Hampshire Public Defender did not respond to these requests; in particular, the New Hampshire Public Defender did not respond to written correspondence from Mr. Albrecht dated January 31, 2025 requesting assistance with discovery in Ms. Berard's case.[51]

310. The actual behavior of the New Hampshire Public Defender is completely at odds with its advertisement (at ¶306); therefore, this advertisement is a violation of N.H. Rev Stat § 358-A:1.

## COUNT VIII – Violation of the Sixth and Fourteenth Amendments

*(Denial of professional counsel to Ms. Berard)*

311. Plaintiff(s) repeat and re-allege paragraphs 1 through 310 above.

---

51  *See* Exhibit 52 – Letter to Public Defender Deanna Campbell + USPS Proof of Delivery (Jan. 31-Feb. 3, 2025)

312. The Sixth Amendment, as incorporated against the states through the Fourteenth Amendment, guarantees the right to the assistance of counsel in criminal proceedings. *See Gideon v. Wainwright*, 372 U.S. 335 (1963).

313. The Judicial Defendants refused to schedule any hearing on Ms. Berard's motion for appointed counsel, thereby depriving the defendant of effective assistance of professional counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984).

314. The New Hampshire Supreme Court declined to provide any pre-trial appellate review, even on Ms. Berard's request for appellate review of her status of counsel. The question of whether an appeal in the state system is one of right or discretion is also a federal question, as recognized in *State v. Cooper*, 127 N.H. 119, 124 (1985), citing *Evitts v. Lucey*, 469 U.S. 387 (1985).

315. The denial of counsel at critical stages of a criminal proceeding is structural error, requiring automatic reversal under *Penson v. Ohio*, 488 U.S. 75 (1988).

316. Structural error is presumed when a defendant is denied counsel entirely, regardless of whether prejudice is shown, under *United States v. Cronic*, 466 U.S. 648 (1983).

317. Judge Pendleton also violated this right by forcing Mr. Albrecht, a non-lawyer, to provide legal representation to Ms. Berard, despite Mr. Albrecht's lack of a law license. This compelled representation exposed Mr. Albrecht to potential legal liability, ethical conflicts, and professional harm.

318. Judge Pendleton did so, despite Mr. Albrecht's filing of multiple, appropriate pleadings to extricate himself from Ms. Berard's case predicated only on the precondition that the court would appoint professional counsel for Ms. Berard.

319. The actions of Judge Pendleton constitute a fundamental structural constitutional violation, undermining the fairness of the criminal process and directly harming Plaintiff(s)

320. Mr. Albrecht also seeks equitable relief to compel the Indigent Defense and Funding Defendants to re-imburse Mr. Albrecht for all *actual* costs that Mr. Albrecht has *personally* incurred to defend Ms. Berard, that Mr. Albrecht has paid for **from Mr. Albrecht's own personal funds.**

## COUNT IX – Violation of the Fifth Amendment

*(Compelled Self-Incrimination )*

321. Plaintiff(s) repeat and re-allege paragraphs 1 through 320 above.

322. The Fifth Amendment, as incorporated against the states through the Fourteenth Amendment, guarantees that no person "shall be compelled in any criminal case to be a witness against himself." *See Malloy v. Hogan*, 378 U.S. 1 (1964).

323. On July 10, 2024, Referee Scott Murray forced Ms. Berard to answer questions in what was effectively a deposition, despite:

- The defendant appearing *pro se* after having requested a continuance more than 10 days in advance.

- The proceeding being noticed *as a trial*, not a pre-trial hearing or status conference.

- Murray acting in the complete absence of all jurisdiction to preside over a jury-eligible criminal case without the defendant's consent. *See* N.H. Rev. Stat. § 490-F:15. *See also Gibson v. Goldston*, 85 F. 4th 218, (4th Cir. 2023) (explaining that judicial officers are not immune from suit if they act in the complete absence of all jurisdiction over the subject matter).

324. Referee Murray never advised Ms. Berard of her Fifth Amendment rights, nor did he provide any notice that her statements could be used against her.

325. The compelled questioning violated Ms. Berard's constitutional right to remain silent and was done in the absence of counsel, further exacerbating the violation.

326. By compelling potentially self-incriminating testimony from a *pro se* defendant without warning her of her constitutional rights, Referee Murray's actions constitute a clear violation of the Fifth Amendment.

327. Plaintiff(s) seek declaratory relief recognizing this violation.

## COUNT X – Violation of the Fourteenth Amendment

*(Void for Vagueness Doctrine)*

328. Plaintiff(s) repeat and re-allege paragraphs 1 through 327 above.

329. Judge Pendleton's scheduling order dated February 13, 2025, is so vague as to be unconstitutional under the Due Process Clause of the Fourteenth Amendment.

330. Judge Pendleton's order dated February 13, 2025 on Mr. Albrecht's *Motion to Address Status of Counsel*, is so vague as to be unconstitutional under the Due Process Clause of the Fourteenth Amendment.

331. The United States Supreme Court has recognized that vague judicial orders violate due process because they fail to provide fair notice of what is required or prohibited. *See Longshoremen v. Philadelphia Marine Trade Ass'n.*, 389 U.S. 64, 76 (1967).

332. Judge Pendleton's scheduling order dated February 13, 2025 is a self-styled "Order on Motion to Continue" – despite no party requesting a continuance.

333. Judge Pendleton claims "The Defendant and her non-lawyer representative Mr. Albrecht had requested the matter be rescheduled" when in fact some Judicial Defendants *sua sponte* continued the February 13, 2024 *trial* – that was noticed *as a trial*.

334. Plaintiff(s) acknowledge Ms. Berard did not ever waive her right to a speedy trial in Massachusetts in 2022, and explicitly asserted her right to a speedy adjudication in New Hampshire of her motion for court appointed counsel.

335. However, Judge Pendleton also *invented*, *sua sponte*, "they [the defendant and her non-lawyer representative] have also asserted a right to a speedy trial], despite that *the defendant explicitly waived her right to a speedy trial in New Hampshire on the merits*.

336. Judge Pendleton further denied Mr. Albrecht's *Motion to Address Status of Counsel* on the grounds that Ms. Berard "had not complied with Judge Walch's 11/14/24 Order" – when Clerk Meyer **never issued any Notice of Decision** on Judge Walch's 11/14/24 Order, and n**ever provided a copy to Plaintiff(s).**

337. Here, the order is so unintelligible that it does not provide adequate notice to Plaintiff(s) of its meaning, rendering it constitutionally deficient.

338. By issuing vague and confusing orders, Judge Pendleton deprived Plaintiff(s) of the ability to understand the court's expectations, comply with procedural rules, or challenge any improper rulings.

## COUNT XI – Violation of Due Process and Equal Protection

*(Systemic Bias in Scheduling)*

339. Plaintiff(s) repeat and re-allege paragraphs 1 through 338 above.

340. The history of scheduling in the underlying state criminal case against Ms. Berard demonstrates clear bias against the defense, favoring the prosecution at nearly every procedural stage.

341. Various Judicial Defendants denied <u>all</u> of the Ms. Berards's motions to continue (filed *pro se*) – first forcing her into an unrepresented hearing on July 10, 2024 where *she was noticed she was on trial* – and then forcing her into a second hearing on November 13, 2024 where *she was also noticed she was on trial*.

342. Had the Judicial Defendants continued these hearings or the Indigent Funding Defendants provided professional counsel to Ms. Berard, Mr. Albrecht would never have filed any appearance under N.H. Rev. Stat. § 311:1 at the "eleventh hour" to represent Ms. Berard.

343. Subsequently, after Mr. Albrecht successfully excluded all evidence proffered by the State at the November 13, 2024 *trial*, Judge Walch *sua sponte* continued the November 13, 2024 trial to benefit the State, despite that the Judicial Defendants denied *all* requests for *any* continuance made by Ms. Berard.

344. This procedural disparity demonstrates an unconstitutional favoritism toward the prosecution.

345. The Equal Protection Clause of the Fourteenth Amendment prohibits state actors from systematically disadvantaging one side in judicial proceedings.

346. The cumulative effect of Judge Pendleton's procedural rulings demonstrates an unconstitutional pattern of bias that violates both procedural due process and equal protection.

**COUNT XII − Violation of Procedural Due Process**

*(Improper Notice & Right to a Fair Hearing)*

347. Plaintiff(s) repeat and re-allege paragraphs 1 through 346 above.

348. The Fourteenth Amendment guarantees procedural due process before the government deprives an individual of a protected liberty or property interest.

349. Various Judicial Defendants violated this right by refusing to schedule a hearing on Ms. Berards's motion for appointed counsel, effectively preventing the defendant from receiving a fair determination of her right to representation.

350. The Judicial Defendants further violated due process by:

- Denying *all* of the defendant's motions to continue, forcing her into an unrepresented hearing, and trials where she was not afforded the assistance of any professional attorney, despite explicitly requesting such assistance.

- Later continuing her trial *sua sponte* when it benefited the prosecution.

351. Due process requires that notice be reasonably calculated to apprise interested parties of proceedings affecting their rights. *See Jones v. Flowers*, 547 U.S. 220 (2006).

352. Judge Walch's scheduling order, dated February 17, 2025, was not properly served on Plaintiff(s) and contained deadlines that had already expired by the time it was received. The court did not affix enough postage, and the order was returned to sender (the court) due to lack of sufficient postage.

353. This failure to provide timely and effective notice deprived Plaintiff(s) of an opportunity to comply with or challenge the relevant order(s), further violating procedural due process.

## COUNT XIII – First Amendment Claims against Salisbury Police Defendants

354. Plaintiff(s) repeat and re-allege paragraphs 1 through 353 above.

355. Ofc. Patrick Symkowski, acting as an employee of the Salisbury Police Department, sought the original civil N.H. Rev. Stat. § 173-B order of protection against Ms. Berard to create a "gag order" preventing Ms. Berard from *even possessing* – let alone publicly disclosing or posting on the Internet evidence of official police misconduct by Ofc. Symkowski,

356. Szymkowski later admitted under oath that he pursued the fraudulent New Hampshire protective order at the direction of Salisbury Police Chief Thomas Fowler and then-Lieutenant Anthony King, directly implicating them in an intentional abuse of the legal system.

357. Judge Polly Hall has extended this "gag order" against Ms. Berard, so that it remains in effect **at this time**, for nearly seven years.

## COUNT XIV – Monell Claim Against Massachusetts Law Enforcement Defendants

*(Monell Claim – First and Fourteenth Amendments – Free Speech; Free Exercise; Petition Clause; Due Process)*

358. Plaintiff(s) repeat and re-alleges paragraphs 1 through 357 above.

359. The Fourteenth Amendment guarantees that individuals shall not be deprived of their rights without due process of law, including protection from arbitrary government threats.

360. Massachusetts Law Enforcement Defendants, acting under color of state law, have an unconstitutional policy, custom, or practice of weaponizing protective orders and criminal prosecutions to harass and intimidate individuals.

361. This includes the wrongful prosecution of Ms. Berard, despite the fraudulent nature of the underlying restraining order.

362. The actions of the Massachusetts Law Enforcement Defendants are further intended to chill Ms. Berard's First Amendment Rights to Free Speech, her First Amendment Rights to the Free Exercise of her religious beliefs, her First Amendment Rights to Petition for Redress of Grievances; and her Fourteenth Amendment Rights not to be subject to malicious and baseless harassment by means of malicious prosecution and retaliatory arrest.

363. This practice reflects deliberate indifference to constitutional rights, violating *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658 (1978).

364. Salisbury Police Chief Thomas Fowler was the "final policymaker" for these actions, pursuant to *Monell*.

## COUNT XV – Illegal Incarceration

365. Plaintiff(s) repeat and re-allege paragraphs 1 through 364 above.

366. On March 15, 2024, Seabrook Police Officer Kassandra Kaminski arrested Ms. Berard during a routine traffic stop in New Hampshire.

367. The Prosecutorial Defendants subsequently had Ms. Berard held in preventative detention for three days with no access to counsel.

368. The Prosecutorial Defendants incarcerated Ms. Berard, despite:

- Knowing that the underlying charges were unconstitutional.

- Knowing that Massachusetts had already dismissed an identical case.

369. This practice reflects deliberate indifference to constitutional rights, and is intended to be purely punitive in nature, rather than related to any legitimate government objective. "Punitive measures many not constitutionally be imposed prior to a determination of guilt." *Bell v. Wolfish*, 441 U.S. 520, 537 (1979).

370. Mr. Albrecht, Ms. Linday Smith, and Ms. Cindy Smith all spent most of the afternoon on Monday, March 18, 2024 waiting **hours** outside the Rockingham County House of Corrections for Ms. Berard to be released after her **three day incarceration** in **preventative detention**.



371. Ms. Lindsay Smith spent substantial time and effort that day to support Ms. Berard, not to mention investing her own money on her incidental expenses such as gas and travel expenses.

## COUNT XVI – Monell Claim Against Town of Seabrook

*(Monell Claim – First and Fourteenth Amendments – Free Speech; Free Exercise; Petition Clause; Due Process)*

372. Plaintiff(s) repeat and re-allege paragraphs 1 through 371 above.

373. The Fourteenth Amendment guarantees that individuals shall not be deprived of their rights without due process of law, including protection from arbitrary government threats.

374. Prosecutorial Defendants, acting under color of state law, have an unconstitutional policy, custom, or practice of weaponizing protective orders and criminal prosecutions to harass and intimidate individuals.

375. This includes the wrongful prosecution of Ms. Berard, despite the fraudulent nature of the underlying restraining order.

376. The actions of the Prosecutorial Defendants are further intended to chill Ms. Berard's First Amendment Rights to Free Speech, her First Amendment Rights to the Free Exercise of her religious beliefs, her First Amendment Rights to Petition for Redress of Grievances; and her Fourteenth Amendment Rights not to be subject to malicious and baseless harassment by means of malicious prosecution, retaliatory arrest, and wrongful incarceration.

377. This practice reflects deliberate indifference to constitutional rights, and is intended to be purely punitive in nature, rather than related to any legitimate government objective. "Punitive measures many not constitutionally be imposed prior to a determination of guilt." *Bell v. Wolfish*, 441 U.S. 520, 537 (1979).

378. This deliberate indifference to constitutional rights violates *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658 (1978).

379. Seabrook Police Prosecutor John Ventura, Esq. (NH Bar #20569) is the "final policymaker" for these actions, pursuant to *Monell*.

## COUNT XVII – Fourteenth Amendment Violation – N.H. Rev. Stat. § 173-B:9 is Unconstitutional As-Applied

*(As-applied challenge to constitutionality of state statute)*

380. Plaintiff(s) repeats and re-allege paragraphs 1 through 379 above.

381. The statute under which Ms. Berard is charged, N.H. Rev. Stat. § 173-B:9, is unconstitutional as applied because it is being used to deprive the defendant of the right to counsel, violates due process, and contributes to a fundamentally unfair trial process.

382. The application of N.H. Rev. Stat. § 173-B:9 against Ms. Berard has:

- Deprived her of professional legal counsel in a criminal prosecution, violating *Gideon v. Wainwright*, 372 U.S. 335 (1963).

- Resulted in retaliatory and selective prosecution, where similarly situated individuals are not prosecuted for allegedly attending church services.

- Been used as a pretext for unconstitutional incarceration, where Ms. Berard was jailed without access to counsel for three days and without a meaningful opportunity to contest the order's validity.

- Been used to prosecute her for exercising fundamental First Amendment rights (church attendance) under the Free Exercise Clause **without any showing that Ms. Berard's prosecution is necessary to achieve a compelling state interest.**

383. The statute's as-applied enforcement in this case has created an unconstitutional presumption of guilt, forcing Ms. Berard to navigate complex legal proceedings alone, in violation of due process guarantees under the Fourteenth Amendment.

384. The New Hampshire Supreme Court's refusal to provide pre-trial appellate review of Ms. Berard's status of counsel compounds this violation by denying her meaningful judicial recourse, ensuring that the unconstitutional application of N.H. Rev. Stat. § 173-B:9 remains unchallenged.

385. The application of N.H. Rev. Stat. § 173-B:9 in this case has also violated Ms. Beard's First Amendment rights by punishing her for allegedly attending a religious service, a constitutionally protected activity under *Employment Division v. Smith*, 494 U.S. 872 (1990). *See also State v. Mack*, 173 N.H. 793 (2020).

386. The selective and retaliatory enforcement of N.H. Rev. Stat. § 173-B:9 against Ms. Berard, while simultaneously denying her effective legal representation, renders the statute unconstitutional as applied in this instance.

387. Plaintiff(s) seek declaratory relief that N.H. Rev. Stat. § 173-B:9, as applied in this case, is unconstitutional, and injunctive relief preventing further prosecution of Ms. Berard under this statute unless and until her constitutional rights are fully restored and meaningfully protected.

## **JURY TRIAL DEMAND**

388. Plaintiff(s) demand a trial by jury on all disputed issues of fact so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff(s) respectfully request that this Court grant the following relief:

**Declaratory Relief**

A) A declaration that various New Hampshire judicial officers ought to have been disqualified in Plaintiff(s)' cases; and,

B) A declaration that the Judicial Defendants violated Ms. Berards's Sixth and Fourteenth Amendment rights by failing to provide a hearing or ruling on her motion for appointed counsel and by forcing her into trial proceedings without professional, licensed, legal representation; and,

C) A declaration that N.H. Rev. Stat. § 173-B:3, N.H. Rev. Stat. § 173-B:4, and N.H. Rev. Stat. § 173-B:5 are unconstitutional as-applied; and,

D) A declaration that N.H. Rev. Stat. § 173-B:5 is *prima facie* unconstitutional; and,

E) A declaration that the Ms. Berard's's prosecution under N.H. Rev. Stat. § 173-B:9 is unconstitutional as-applied in this case for the reasons set forth in this amended complaint; and,

F) A declaration that Referee Scott Murray violated Ms. Berard's Fifth Amendment rights by compelling self-incriminating testimony without warning her of her constitutional rights; and,

G) A declaration that the Judicial Defendants' pattern of scheduling bias – denying Plaintiff(s)' continuance requests while *sua sponte* granting continuances that benefited the prosecution – violated Ms. Berard's right to due process and equal protection under the Fourteenth Amendment; and,

H) A declaration that the New Hampshire Supreme Court's refusal to exercise discretionary appellate review of Ms. Berard's status of counsel prior to trial constitutes an unconstitutional denial of meaningful judicial review; and,

I) A declaration that Judge Pendleton's scheduling orders, including the February 13, 2025 order, are unconstitutionally vague, depriving Plaintiff(s)

of fair notice in violation of the Due Process Clause of the Fourteenth Amendment; and,

## Injunctive Relief

J)  A preliminary and permanent injunction preventing further prosecution of Ms. Berard under N.H. Rev. Stat. § 173-B:9 unless and until her constitutional rights as previously set forth are restored and meaningfully protected; and,

K)  A preliminary and permanent injunction preventing any Judicial Defendant from holding any hearing on the merits, or any future hearings that fail to properly respect Plaintiff(s)' constitutional rights; and,

L)  A preliminary and permanent injunction preventing any Judicial Defendant from presiding over any hearing or ruling on any motion where there is a conflict of interest with a party or attorney; and,

## Equitable Relief

M)  A mandatory injunction requiring the New Hampshire Judicial Branch to implement procedural safeguards to ensure that:

   •  Indigent defendants are not forced into trial proceedings without a timely and fair determination of their right to appointed counsel;

   •  Indigent defendants are not forced into trial proceedings without the effective assistance of counsel;

   •  State trial court defendants receive adequate notice of scheduling orders that are clear, unambiguous, and properly served;

   •  Judicial officers do not improperly interfere with a defendant's right against self-incrimination; and,

N)  An order directing the relevant Defendants to produce such documents that have been requested by Plaintiff(s), including judicial training materials on N.H. Rev. Stat. § 173-B and Judge David King's unredacted August 26, 2022 deposition; and,

O)  An order directing the New Hampshire Public Defender's Office to cover all costs associated with securing professional legal representation, capable of providing effective assistance of counsel, for all indigent defendants in criminal proceedings under N.H. Rev. Stat. § 173-B; and,

P)  An order directing the New Hampshire Public Defender's Office to cover all costs associated with securing professional legal representation, capable of providing effective assistance of counsel, for all indigent defendants in civil proceedings under N.H. Rev. Stat. § 173-B; and,

Q)  An order directing the Indigent Defense & Funding Defendants to reimburse Mr. Albrecht for all direct costs and expenses that he personally incurred in his efforts to defend Ms. Berard; and,

R)  Award Plaintiff(s)' costs of suit and reasonable attorneys' fees and other expenses under 42 U.S.C. § 1988; and,

**Further Relief**

S)  Such other and further relief as the Court deems just, proper, and necessary to prevent future constitutional violations and ensure meaningful access to justice for indigent defendants; and,

T)  Any other such other relief as the Court deems just and equitable.

Respectfully submitted,

_____
DANA ALBRECHT
*Pro Se*
131 Daniel Webster Hwy #235
Nashua, NH 03060
(603) 809-1097
dana.albrecht@hushmail.com

June 20, 2025.

**<u>CERTIFICATE OF SERVICE</u>**

I, Dana Albrecht, hereby certify that a copy of this Amended Complaint shall be served on all parties and/or counsel of record registered through the ECF system.

I also certify that a copy of this Amended Complaint will be mailed conventionally via USPS to:

    Ms. Destinie L. Berard
    46 Pond St.
    Georgetown, MA 01833

                        _____
                        DANA ALBRECHT

June 20, 2025