```
 1

 2

 3

 4

 5

 6     DOMESTIC VIOLENCE TASK FORCE VIRTUAL MEETING

 7                  January 12, 2022

 8                  Held via Webex

 9

10

11     PRESENT:

12          Hon. Anna Barbara Hantz Marconi,

13     Associate Justice, New Hampshire Supreme Court

14          Hon. Susan Carbon, Circuit Court Judge

15          Hon. Diane Nicolosi, Superior Court Judge

16          Hon. John Yazinski, Circuit Court Judge

17          Mary Barton, Clerk, Circuit Court

18          Merrill Beauchamp, Director, Victim &

19     Witness Program

20          Kathy Beebe, Executive Director, Haven NH

21          Kristyn Bernier, Investigator, Belknap

22     County Attorney's Office

23          Steven Endres, Assistant County Attorney,

24     Merrimack County

25          Martha Ann Hornick, Grafton County
```



1    Attorney

2        Mary Krueger, Attorney, NHLA

3        Lynda Ruel, Director, Office of

4    Victim/Witness Assistance, NH DOJ

5        Scott Hampton, Director, Ending the

6    Violence

7        David Hobbs, Hampton, NH Association of

8    Chiefs of Police

9        Lyn Schollett, Executive Director, New

10   Hampshire Coalition

11       Amanda Grady Sexton, Director of Public

12   Affairs, New Hampshire Coalition

13       Jon Strasburger, New Hampshire

14   Association of Criminal Defense Attorneys

15       David Vicinanzo, Attorney, DOVE Program

16       Patricia LaFrance, Attorney, The Black

17   Law Group

18       Betsy Paine, Attorney, CASA NH

19       Pam Dodge, NHBA DOVE Program & 603 Legal

20       Sarah Freeman, Circuit Court

21   Administrator

22       Jean Kilham, Manager, NHJB Domestic

23   Violence Program

24       Erin Jasina, Director, NHLA DV Program

25       Anne Zinkin, Supervisory Law Clerk, NHSC



Domestic Violence Task Force - 1/12/22

1          JUSTICE HANTZ MARCONI:   Okay.

2     Welcome to our second task force meeting

3     on the review of domestic violence cases

4     in the judicial system.  Today's meeting

5     focuses on charge 2, which is a review of

6     the current status of New Hampshire law

7     regarding domestic abuse.

8          And included in this are tangential

9     statutes and remedies that are within our

10    purview to consider.  Yes, are within our

11    purview to consider.

12         So we have posted the documents that

13    have been shared with the task force,

14    various domestic violence law relevant

15    cases, civil stalking law relevant cases,

16    nonprecedential substantive domestic

17    violence orders, nonprecedential

18    substantive civil stalking orders -- what

19    was circulated did not include some

20    procedural cases -- federal statutes, the

21    ATF criteria, and some comments that have

22    been submitted.

23         And as we did yesterday, we will

24    walk through the various areas, get input

25    from our various members, stakeholders,

Domestic Violence Task Force - 1/12/22

1          and then figure out what we are going to

2          be uploading for public comment.

3               As you know, some of the -- we have

4          some constraints in terms of orders, and

5          we'll get to that in another charge,

6          given what can be posted and what can't

7          be.  So we'll have to be intentional

8          about what we share at this stage of the

9          process.

10              And we have -- just so you know,

11         from yesterday's meeting, we are in the

12         process of developing kind of minutes, if

13         you will, not really minutes as much as a

14         summary of the discussion points so that

15         we've captured them so that we can refer

16         back as we move forward in the task force

17         recommendation-drafting process.

18              So I will open the floor for

19         comments on the primary domestic violence

20         statute, 173-B.  And I have just included

21         four talking points.  And Jean Kilham has

22         been very helpful adding some context

23         that it might be helpful if those who

24         have been involved in past or current

25         legislative initiatives would speak up.

Domestic Violence Task Force - 1/12/22

1          A focus or a discussion about the

2     definition, as it exists today, of what

3     constitutes domestic violence, other

4     types of -- other types of behavior --

5     let me call it concerning behavior that

6     perhaps should be, could be addressed,

7     and factors in the -- under the current

8     rubric, factors that the court should be

9     aware of, considering, assessing in cases

10    as they're brought today.

11          Understanding that when we talk

12    about the statute and its interpretation,

13    some of that belongs in a -- well,

14    changes to the statute would belong in a

15    different branch of government, with the

16    ability to investigate, review, weigh

17    policy considerations that we have three

18    branches of government, and ours is to

19    interpret, not to make the law, so -- but

20    this task force obviously bleeds over

21    into other areas.

22          And I think it is well within our

23    charge to be thinking of recommendations

24    that may not be within the branch's

25    purview but may be a ball that can be

Domestic Violence Task Force - 1/12/22

1        picked up and carried by a different

2        branch of government.

3              So with that, I open the floor to

4        our domestic violence statute.  And

5        frankly, I don't care if we go in order.

6        If we want to talk about civil stalking

7        statute at the same time, divorce orders,

8        these things all tend to interrelate.

9              And we also do have a representative

10       of the Superior Court, though not to

11       cabin (ph.) the discussion, but the

12       Superior Court representative is part of

13       the task force because we know there is

14       interaction between the Circuit Court and

15       Superior Court cases.

16             So jump in as you will.

17             MS. LAFRANCE:  So this is Patty

18       (ph.) LaFrance.  I just want to expand a

19       little bit on what Jean had put in her

20       outline regarding financial abuse because

21       that obviously comes up a lot in the

22       cases I have, in terms of either

23       parenting cases or even divorce cases.

24             Obviously, when a divorce petition

25       is filed, there is some restraint because



Domestic Violence Task Force - 1/12/22

1       of the anti-hypothecation order that the

2       courts send out as routine when

3       something's first filed.  But I see it a

4       lot, where people come to me; their

5       finances are controlled.

6           I can't tell you how many people

7       call my office, and we ask them how much

8       their partner makes or the father of

9       their child or the mother of their child

10      or their husband, and they say, I don't

11      know; they control the finances.

12          I guess the problem is would it rise

13      to the level of needing some type of

14      protection?  I welcome input on this

15      because would it raise issues of due

16      process of depriving somebody?  I mean,

17      what if it's a person who it's -- they

18      came into a marriage with X amount of

19      money?  I don't know.  I welcome thought

20      on that.  But definitely, we do see

21      financial abuse.

22          And the other area that I wanted to

23      bring up, especially in light of what's

24      happened in the past two years with

25      COVID, is exposure to disease, illness.

Domestic Violence Task Force - 1/12/22

1        In the old days, it was STDs, right?  But

2        now it's -- I have clients that have been

3        exposed by their partners because of

4        their -- whatever -- beliefs.  Obviously,

5        relate to any other type of behavior that

6        would expose somebody to a potentially

7        deadly disease.  Those are the two areas

8        that I see.

9              JUSTICE HANTZ MARCONI:  Interesting.

10       You're right.  There is a health

11       component as well.  Always has been, but

12       now it's a little different.

13             MS. JASINA:  This is Erin Jasina

14       with New Hampshire Legal Assistance.  I

15       would say one of the most difficult

16       things that we see when we're working

17       with victims and survivors is that they

18       come to us wanting a protective order.

19       We review the statute with them.

20             And what we're seeing is abuse.

21       It's emotional, psychological abuse, but

22       it doesn't fit within the parameters of

23       173-B.  And that's really challenging to

24       acknowledge that the abuse has occurred,

25       but under our law, you can't be



Domestic Violence Task Force - 1/12/22

1        protected.  So I'm open to expanding or

2        thinking about expanding the definition

3        of abuse in New Hampshire.

4                 DR. HAMPTON:  I would just like --

5        this is Scott Hampton.

6                 JUSTICE HANTZ MARCONI:  Okay.

7                 DR. HAMPTON:  I would like to

8        piggyback on what Erin was saying, just

9        from the flip side.  When I work with

10       offenders in the batterers' intervention

11       programs, one of the frequent

12       conversations we get involved in this is

13       we'll have people tell us, well, the one

14       form of abuse that I'm likely to give up

15       or to forgo is the physical abuse.

16                 And I'm always curious about that

17       because it seems to be fairly effective

18       in what they're trying to accomplish.

19       And they said, well, the physical abuse

20       is what actually gets me caught.  And

21       there'll be a discussion in the group

22       amongst the men about the various forms

23       of abuse that actually cross a legal

24       line.

25                 And what they're looking for is a

Domestic Violence Task Force - 1/12/22

1     way to control their partners in a way

2     that navigates the legal system

3     effectively.  So I think looking more

4     broadly, in terms of what Evan Stark

5     refers to as coercive control, might

6     indeed expand, probably substantially,

7     what we have covered under 173-B, in

8     terms of forms of abuse.

9         The other piece I would throw out

10    with that too is when we're thinking

11    about credible threat and we're looking

12    about the level of dangerousness, some of

13    the forms of dangerousness that are

14    presented by abusers have nothing to do

15    with abuse.  So it's either abusive

16    actions that are not illegal, or they're

17    factors that load on dangerousness that

18    are not abuse in and of themselves.

19        And so if there's a way for us to be

20    able to think about credible threat in a

21    somewhat more expansive way, say, no,

22    this situation poses a danger, even

23    though it's these factors, whether it's

24    looking at unemployment, or does the --

25    one of the factors is does the person

Domestic Violence Task Force - 1/12/22

1       know that you have children that are not

2       his.  Well, that's not abusive, but it is

3       one of the factors.

4            So if we could tie things into

5       various dangerousness assessment tools,

6       such as the ones that Jackie Campbell

7       has, whether it's the lethality

8       assessment protocol, or more broadly, the

9       dangerous assessment tool -- and there

10      are many others out there as well -- I'd

11      like us to do that.

12           JUSTICE HANTZ MARCONI:  So following

13      up on that, because this is -- there is

14      an assessment, and then there is the

15      result, if you will, of a finding of

16      domestic abuse.  So how, along the

17      continuum, if you've thought about it,

18      which I assume this group has or many

19      have, how do you proceed along that

20      continuum where you have an assessment

21      factor, one, the partner has children

22      that are not of -- that are not the same

23      as the other partner, not of theirs, so

24      children with a different parent?

25           That may be a dangerousness factor,



Domestic Violence Task Force - 1/12/22

1       but does that -- how would the court, if

2       you will, analyze that in the context of

3       the resulting impact of a DV order in the

4       system with certain, again, impacts and

5       due process considerations for the person

6       restrained?

7             DR. HAMPTON:  Right.

8             JUSTICE HANTZ MARCONI:  And so the

9       same thing, financial control again, we

10      have a financial exploitation statute

11      which requires certain levels of proof.

12      And that is what I find complicating,

13      when you try to put these factors into

14      the DV procedure the way it is now, or

15      are we talking about different types of

16      statutory remedies?

17            DR. HAMPTON:  Um-hum.

18            JUDGE YAZINSKI:  There's

19      intersection between RSA 173-B, domestic

20      violence, and parenting cases that we see

21      and divorce cases that we see.  The

22      difficulty with -- that I have as a judge

23      and I think all Circuit Court judges have

24      when hearing domestic violence petitions,

25      domestic violence cases, are the issues

Domestic Violence Task Force - 1/12/22

1        that you've already identified.

2              We recognize that financial control

3        is a form of abuse.  I hear the most

4        heart-wrenching testimony about verbal

5        abuse that you could imagine.  It's

6        painful to hear what petitioners undergo

7        on a regular basis.  But absent -- and

8        you've -- everyone has pointed this out.

9        Absent being able to check one of those

10       boxes under 173-B:1, we can't -- we

11       really can't consider it.

12             And that is -- in my mind, the first

13       step is to get a broader understanding of

14       what domestic partner abuse looks like;

15       have those who make the laws understand

16       that it is part and parcel of lethality,

17       going down the road.  It's part and

18       parcel of damage to children.  But it

19       isn't part of 173-B.

20             But when we're hearing a divorce

21       case or a parenting case and we are

22       cognizant of the forms of domestic abuse

23       that don't exist in the statute, we do

24       formulate orders that incorporate

25       restrictions on abusers and requirements



Domestic Violence Task Force - 1/12/22

1      on abusers that are part of a parenting

2      decree, part of a divorce decree.  But

3      it's hard to do it under 173-B without

4      the definitional changes.

5          JUSTICE HANTZ MARCONI:  And those

6      orders, in parenting and family cases --

7      correct me if I'm wrong -- don't go into

8      the registry and don't have the same

9      ramifications.  And so that informs, I

10     think, some of the limitations, if you

11     will.

12         JUDGE YAZINSKI:  Exactly.

13         JUSTICE HANTZ MARCONI:  And so

14     there, you have options, in parenting and

15     divorce cases, to control some of this

16     behavior.  That leaves out the childless,

17     nonmarried, or nondivorcing, if you will,

18     couple.

19         So that's where, I think, it's

20     interesting and some interesting ideas.

21     That's where your civil stalking --

22     financial exploitation now gets geared to

23     elderly financial exploitation.  Don't

24     know that -- I don't know of any -- maybe

25     some of -- again, some of you in the

Domestic Violence Task Force - 1/12/22

1        field, so to speak, know of other states

2        that might have tried sort of emotional

3        abuse, criminalizing that kind of

4        conduct.  So I would like to hear about

5        that if we've got some input.

6                MR. ENDRES:  Steven Endres.  I don't

7        have input on that.  But I do think it's

8        important to recognize that a lot of the

9        language in 173-B and 631:2-b seems to be

10       based on federal law regarding possession

11       of firearms in 18 U.S.C. 922.

12               And a lot of those definitions may

13       be somewhat locked in to what the federal

14       statutes are currently using.  So

15       although you can have a crime of

16       emotional abuse or financial abuse in New

17       Hampshire, that wouldn't have the same

18       ramifications with a conviction

19       preventing someone from possessing

20       firearms or purchasing firearms in the

21       future.

22               MR. VICINANZO:  This is Dave (ph.)

23       Vicinanzo.  Steve, just to follow up on

24       that, I think that's an excellent point.

25       I have had a similar thought.  That



Domestic Violence Task Force - 1/12/22

1        language from the federal criminal code,

2        which I have particular familiarity

3        with -- I was in the U.S. Attorney's

4        Office for many years -- is at least

5        thirty years old.

6             And in reading the definition of

7        abuse and the standards for obtaining

8        temporary relief or even permanent

9        relief, I am struck by the sense that the

10       statute fails to -- it's about fifteen

11       years behind what our understanding or

12       the medical community's understanding of

13       trauma and the effects of trauma are on a

14       victim.

15            And I really feel like it's overdue

16       for an overhaul.  It really reflects

17       1980s, 1990s approach to these things.

18       And the idea, for instance, in the Tosta

19       decision that a woman who was abused nine

20       months earlier, and it took nine months

21       for her after the abuse, after the

22       qualifying predicates to have occurred,

23       before she actually sought an order, was

24       told that it's -- you're too late.  The

25       fact that you were assaulted by your

Domestic Violence Task Force - 1/12/22

1     husband nine months ago, sorry, you're

2     out of luck.

3          I mean, it just flies in the face,

4     with our modern understanding of how,

5     neurologically, trauma works on a brain

6     and how domestic violence works on a

7     victim.  I really feel like the

8     legislature needs to take a serious look

9     and really overhaul the definition of

10    abuse and the requirements for the state

11    to recognize it and to interpose legal

12    protection.

13          MS. SEXTON:  This is Amanda Grady

14    Sexton.  I just wanted to note that the

15    U.S. Senate is likely going to introduce

16    their version of the Violence Against

17    Women Act sometime by the end of this

18    month, which we expect to see some

19    amendments to that law, including at

20    least a partial closure of the boyfriend

21    loophole, et cetera.  So there will be

22    some changes relative to those laws soon.

23          JUSTICE HANTZ MARCONI:  Amanda, is

24    the --

25          MS. FREEMAN:  This is Sarah Freeman.



Domestic Violence Task Force - 1/12/22

1        To add to one additional point, the

2        orders of protection, the 173-B and

3        stalking orders of protection are entered

4        into the law enforcement database as

5        Brady-qualifying, based upon 18 U.S.C.

6        922(g), which talks about protective

7        orders and not qualifying crimes of

8        misdemeanor domestic violence.

9            So they're very similar statutes,

10       but our protective orders go into the

11       system based upon that other part of the

12       statute.

13            JUSTICE HANTZ MARCONI:  And the

14       impact of that going into the system

15       versus -- I know this is something Jean

16       brought up -- those that don't, they have

17       a national scope, if you will.  They are

18       more restrictive of future conduct on the

19       abuser than, perhaps, a civil restraining

20       order in a divorce or parenting case,

21       which is enforced, what, by the courts.

22            MR. ENDRES:  Well, if it gets put

23       into the system, if you do go to purchase

24       a firearm, they do what's called a NICS

25       check, and it would come up on a NICS



Domestic Violence Task Force - 1/12/22

1        check that you're disqualified.  And

2        presumably, you would be denied the sale

3        of that firearm --

4            JUSTICE HANTZ MARCONI:  Right.  But

5        it's meant --

6            MR. ENDRES:  -- whereas in --

7            JUSTICE HANTZ MARCONI:  -- to

8        protect -- I guess I'm moving off the

9        firearms.  But in terms of -- that's one

10       aspect of protection of victims.  In

11       terms of the restraint on other behavior,

12       filing it in the registry creates a more

13       immediate enforcement tool?

14           MR. ENDRES:  It would create a

15       notification to law enforcement.

16           JUSTICE HANTZ MARCONI:  Okay.

17           MS. FREEMAN:  It means that orders

18       of protection are immediately visible to

19       law enforcement across the country, upon

20       running someone's name and date of birth.

21       It also would show up in a NICS

22       background check.  But for law

23       enforcement purposes, anyone, rather --

24       if they're Massachusetts or New Hampshire

25       or California know that these orders



Domestic Violence Task Force - 1/12/22

1          exist and are active, whereas a parenting

2          or marital restraining order, those are

3          not instantly available across the

4          country and may not be enforceable and

5          entitled to full faith and credit between

6          the states.

7                    JUSTICE HANTZ MARCONI:  Right.

8          Right.  And then in terms of background

9          check, that then impacts anything that

10         the abuser would do, apply for, whatever,

11         that requires background check, right?

12                   MS. FREEMAN:  Yes.

13                   JUSTICE HANTZ MARCONI:  Yeah.  And

14         Amanda, I'm curious.  Are the amendments

15         to the Violence Against Women Act

16         addressing any definitional-type issues

17         that we've been talking about?

18                   MS. SEXTON:  It may, yes.  So the

19         House version, the U.S. -- from U.S.

20         Congress had some definitional changes,

21         so the Senate version is expected to have

22         some as well.

23                   JUSTICE HANTZ MARCONI:  And this is

24         strictly --

25                   MS. SEXTON:  The one thing -- yes.



Domestic Violence Task Force - 1/12/22

1          JUSTICE HANTZ MARCONI:  Go ahead.

2          MS. SEXTON:  I'm so sorry.  Yes.  So

3     that's federal law.

4          JUSTICE HANTZ MARCONI:  Right.

5          MS. SEXTON:  And I think one thing

6     that I did want to note that seems to be

7     a bit of a difference between New

8     Hampshire statutes and some of our --

9     some of the other states are ensuring or

10    moving towards some sort of mechanism for

11    enforcement when firearms have been

12    relinquished.

13         So right now, that's sort of a --

14    not something that we're doing in New

15    Hampshire.  That's not something that our

16    statute directs us to do is to ensure

17    that there has been relinquishment of

18    those firearms.

19         JUSTICE HANTZ MARCONI:  Sort of a

20    second check, if you will?

21         MS. SEXTON:  Right.  So it's sort of

22    an honor system right now, which is not

23    always honored, as you might imagine.

24         JUSTICE HANTZ MARCONI:  Is that

25    other people's experience?



Domestic Violence Task Force - 1/12/22

1            MR. STRASBURGER:  And this is Jon

2       Strasburger.  That's been something I see

3       routinely in my divorce cases that also

4       have a domestic violence petition

5       component is there's often a question as

6       to whether or not -- despite the

7       existence of the temporary order of

8       protection requiring the relinquishment

9       of firearms, whether or not all the

10      firearms have really been relinquished.

11          It routinely seems to get raised,

12      after the orders get issued, as to

13      whether or not there may be other

14      firearms in existence.

15          And that tends to be a little bit of

16      a he said, she said battle about whether

17      the petitioner has a recollection of how

18      many firearms were in the home versus

19      what the police found at the time they

20      served the temporary orders of

21      protection.  So that's something that

22      comes up and is, I would say, a frequent

23      area of dispute.

24          I just wanted to follow up quickly

25      on sort of the difference between an RSA

Domestic Violence Task Force - 1/12/22

1        458:16 restraining order and a 173-B

2        domestic violence petition.

3              I think it's a -- I think it's a

4        common misunderstanding.  I think a lot

5        of family law practitioners have the

6        mistaken belief that it's just really a

7        contempt issue for violation of a 458:16

8        restraining order or a 461-A restraining

9        order in the context of a parenting case.

10             And that's not really true.  I think

11       it's not used very often, but the

12       statute, 458:16 specifically, in

13       paragraph 3, authorizes an immediate

14       referral to law enforcement and a twelve-

15       hour hold for arrest of a party that

16       violates even a 458:16 restraining order.

17             So although, yes, it's true that

18       those orders aren't entered into the

19       national database, which is a significant

20       difference and I think most of us would

21       agree on that, I just wanted to make sure

22       that people are aware that the statute

23       does authorize law enforcement

24       enforcement of even a 458:16 restraining

25       order and a twelve-hour hold with arrest



Domestic Violence Task Force - 1/12/22

1       without a warrant, and a referral for

2       prosecution.

3               I do note that it's interesting that

4       the language of the statute says that if

5       the order is broken by committing an

6       assault, a criminal trespass, criminal

7       mischief, stalking, or other criminal

8       act, then the party's guilty of a

9       misdemeanor, and peace officers shall

10      arrest the party.

11              So it's a little bit odd that it --

12      the statute doesn't refer to just a

13      general violation of that protective

14      order.  So if the court were to issue a

15      458:16 order that says neither party

16      shall contact the other, sounds like that

17      is not a violation that would be subject

18      to immediate arrest, whereas if they

19      violate the restraining order by

20      committing an assault, a criminal

21      trespass, criminal mischief, stalking, or

22      other criminal act, there would be that

23      immediate law enforcement remedy

24      available.

25              So I just thought that was



Domestic Violence Task Force - 1/12/22

1    interesting to note.

2        JUSTICE HANTZ MARCONI:  It is.  It's

3    almost like dual remedies.  One's

4    misdemeanor level, and the other would be

5    enforced by contempt, which may be --

6        MR. STRASBURGER:  Right.  And

7    obviously, there's --

8        JUSTICE HANTZ MARCONI:  Right.  Go

9    ahead.

10       MR. STRASBURGER:  And those remedies

11   are obviously -- I think this is pointed

12   out already -- only available to parties

13   in the context of a parenting petition or

14   a divorce case.

15       But we see those routinely with

16   domestic violence issues and often

17   divorces, as the -- as those members of

18   the committee who are either in private

19   practice or are judicial officers, you

20   routinely see cases that have a domestic

21   violence petition running at the same

22   time as a parenting case or a divorce

23   case.

24       JUSTICE HANTZ MARCONI:  Well, and

25   it's also interesting in the big picture.





Domestic Violence Task Force - 1/12/22

1       (Audio interference) awful thing to talk

2       about, but different levels of abuse,

3       perhaps needing different levels of

4       remedy.

5            When we talk about expanding the

6       definition, there are different types of

7       restraining orders.  The civil stalking

8       is a narrow category of behavior.  And as

9       it is now, the domestic violence statute

10      is a narrow category of behavior.  It may

11      be the remedy -- just like the behaviors

12      aren't one size fits all, the remedy may

13      need to be considered on a sliding scale,

14      if you will.

15           MR. ENDRES:  Under the stalking

16      statute as well, the violation of a

17      458:16 order can be charged as stalking.

18           JUSTICE HANTZ MARCONI:  Depending on

19      the type of behavior, right?

20           MR. STRASBURGER:  That's right.  And

21      often, the underlying abuse that may not

22      constitute 173 abuse would certainly

23      serve as either a basis for a 458:16

24      restraining order or a fault grounds

25      finding in the ultimate divorce, right?



Domestic Violence Task Force - 1/12/22

1          We have --

2              JUSTICE HANTZ MARCONI:  Right.

3              MR. STRASBURGER:  -- conduct as to

4          endanger health or reason.  We have

5          extreme cruelty.  We have a whole bunch

6          of conduct that can fall under those

7          categories that the court can consider in

8          the context of a divorce.  But that

9          doesn't necessarily -- certainly, that

10         doesn't provide the same level of

11         protection as a 173-B order.

12             JUSTICE HANTZ MARCONI:  Right.  And

13         it doesn't address the nondivorcing,

14         childless couple.  So again, you've got a

15         category of people.  Whether they're

16         still married, not divorcing, whether

17         they're in a relationship without kids,

18         you have a whole category of people who

19         may be suffering from some type of abuse,

20         exploitation, and there may be a gap in

21         the remedy.

22             MS. FREEMAN:  Interestingly, the

23         stalking statute references the divorce

24         restraining order.  It doesn't contain a

25         similar cite to the parenting restraining

Domestic Violence Task Force - 1/12/22

1       order.  So that is also a minor

2       difference between the parenting and the

3       divorce restraining order.

4            JUSTICE HANTZ MARCONI:  That may be

5       a result of timing, right?

6            MS. SEXTON:  That's what it was,

7       yep.

8            JUSTICE HANTZ MARCONI:  Yep.  Do we

9       know?  Are there efforts to modernize the

10      stalking statute to incorporate?

11           MS. SEXTON:  No.  There is a effort

12      to limit the scope of 173-B.  There's a

13      hearing, actually, next Friday at 10:30

14      a.m.  I think the bill is House Bill

15      1340, if I'm correct.  But I can send

16      that along to the group to look at.

17           JUSTICE HANTZ MARCONI:  And that

18      just gets to, I know, particularly

19      Amanda.  Maybe some others have followed

20      sort of legislative efforts over the

21      years.  Has there been an ebb and flow?

22      Have there been initiatives that have

23      been considered and rejected?  I mean,

24      just a thumbnail.  Probably, you could --

25           MS. SEXTON:  Yeah.



Domestic Violence Task Force - 1/12/22

1            JUSTICE HANTZ MARCONI:  -- stay on

2       this for three hours, but --

3            MS. SEXTON:  Sure.  I think that the

4       thumbnail is that there has not been a

5       recent attempt to overhaul either 633:3-a

6       or 173-B.

7            JUSTICE HANTZ MARCONI:  Okay.

8            JUDGE YAZINSKI:  Amanda, as a

9       coalition, as a group, do you have any

10      working documents on how you would like

11      to see the definition changed?

12           MS. SEXTON:  I'll be honest.  We

13      have a wish list that's about --

14           JUDGE YAZINSKI:  Please be honest.

15      That's --

16           MS. SEXTON:  Yeah.  Like, it's about

17      twenty years old.  But I will say we do

18      not have an in-depth draft for a

19      definitional change because there has not

20      been a legislative environment that would

21      sort of put us in a position where we

22      feel that we could advance any sort of

23      that goal.

24           I think it's always a challenge when

25      you open up these statutes, in terms of



Domestic Violence Task Force - 1/12/22

1      the outcome that you might end up with is

2      not one that you might intend.  There

3      could be some significant losses in terms

4      of protection.  So there has not been an

5      attempt by the Coalition to make any

6      changes since the passage, in 2014, of

7      Joshua's Law, which was largely driven by

8      the need to align our statute with

9      federal law, largely for the purposes of

10     firearms, firearm reasons, so --

11          MS. BEEBE:  This is Kathy Beebe.  I

12     will add to that, though, I think that

13     there's a lot of base support for the

14     expansion of the definition, based on

15     what we're seeing on a (indiscernible)

16     basis.

17          JUSTICE HANTZ MARCONI:  You're a

18     little better but not a lot.

19          MS. BEEBE:  Tested it earlier, and

20     they said they could hear me.  Is it

21     better now?

22          JUSTICE HANTZ MARCONI:  Slightly.

23          MS. BEEBE:  I'll talk really loud.

24          JUSTICE HANTZ MARCONI:  Yes.

25          MS. BEEBE:  I was saying that we're



Domestic Violence Task Force - 1/12/22

1          seeing a lot of big cases where -- that

2          would support the expansion of the

3          definition.

4                 As Scott was saying earlier, we are

5          hearing from the abusers that are

6          recognizing their lack of physical

7          behavior that's existed in the past and

8          know that they abused long enough ago

9          that it's not -- that it is going to have

10         an impact in showing that current

11         physical danger for the victim, and then

12         using that afterwards, with all of the

13         other controlling behavior, to say, can't

14         even get this; not -- no one, not even

15         the courts are believing you in terms of

16         what's happened, and that continued cycle

17         of abuse because what we know and what we

18         see is, most of the times, it does not

19         rise to the level of the physical.

20                It might initially, and so then the

21         victim knows, every single time there is

22         that look or that threat given, what that

23         means, without there having to be the

24         physical, and then not having the

25         protections in place for all of the other

Domestic Violence Task Force - 1/12/22

1        psychological and emotional abuse that's

2        happening, particularly with the

3        financial abuse that's keeping them tied

4        to the abuser.

5            So there does have to be something

6        around expansion of the definitions.

7        Otherwise, so many of the victims that

8        are experiencing that nonphysical, that

9        they know the threat is still there that

10       they just can't prove, are not getting

11       the protection that they need.

12           JUSTICE HANTZ MARCONI:  That sounds

13       to me like a variant, in a way, of

14       criminal threatening.  There's a basis in

15       the past so that the victim knows what

16       the abuser's capable of.  And so the

17       threat carries almost more weight, if you

18       will, even though the prior behavior was

19       sometime in the past.  So maybe baby

20       steps, small changes just to include that

21       scenario.

22           MS. JASINA:  We're also seeing --

23       along the lines of what Kathy is saying,

24       we're also seeing an increase of abusers

25       using the threat or attempted threat of

Domestic Violence Task Force - 1/12/22

1      suicide to control and coerce their

2      victims.  And we're seeing various

3      varying orders handling the threat or

4      attempted suicide.

5          Some are recognizing it as a form of

6      abuse.  Other courts are not and are not

7      including it in the determination for a

8      finding of abuse.  So I think that's

9      something that we need to explore as a

10     group and how we can -- when we're

11     talking about possibly expanding the

12     definition of abuse or domestic violence

13     in New Hampshire, that's something that

14     we should consider, as we're definitely

15     seeing that as a recent trend.

16         DR. HAMPTON:  One of the advantages,

17     I think, that we have in being able to

18     expand this is that there's a significant

19     scientific base where people who have

20     developed these dangerous assessment

21     tools can give us statistics and say,

22     okay, a woman who's been forced to have

23     sex against her will, whose partner has

24     abused her, is 7.6 times more likely to

25     die than someone else, which I think is



Domestic Violence Task Force - 1/12/22

1    useful for a couple reasons.

2        One is we can use that to help to --

3    as a solid rationale for including these

4    as risk factors, whether it's either in

5    terms of abuse or in terms of credible

6    threat.

7        The other advantage, I think, is

8    that this can also be -- which I'd love

9    to see be part of a conversation that the

10   bench is having with survivors coming in:

11   one of the reasons that I'm granting this

12   protective order is that we know that

13   people in your situation are more likely

14   to die, and can even cite the statistics

15   to back it up.  I think that would be a

16   very powerful message for survivors.

17       But just to go back to the suicide

18   piece, some of these are

19   counterintuitive.  One of the things that

20   we know is that if an -- this is going to

21   sound strange, but if an abuser threatens

22   to kill his partner, she's obviously at

23   greater risk of dying.  If he does not

24   threaten to kill his partner but

25   threatens to kill himself instead, she's

Domestic Violence Task Force - 1/12/22

1      actually a greater risk of dying than if

2      he had threatened homicide.  Seems to

3      make no sense whatsoever.

4          You would think shortest distance

5      from point A to B, a direct threat.  But

6      what happens is the psychology is that if

7      the abuser is willing to give up

8      everything and to cash in his chips and

9      commit suicide, there is very little

10     deterrent out there that's going to stop

11     him from killing his partner.  And if

12     he's going to kill himself because he's

13     losing her, he's not about to leave her

14     for someone else.

15         The point is that there's a lot of

16     these risk factors that you really have

17     to do a deep dive in to understand what

18     the psychology is and why they're -- that

19     they pose such a risk.  And I hope we

20     have a -- sort of an expanded

21     conversation, as we think about expanding

22     either the abuse in 173-B or expanding

23     the criteria we use in courts for

24     establishing credible threat.

25         MS. LAFRANCE:  As we talk about



Domestic Violence Task Force - 1/12/22

1              expanding the definition, I'm going to

2              throw on my defense attorney hat for a

3              second because I think it's important to

4              get that perspective too, because I have

5              represented individuals who have been --

6              had restraining orders taken out against

7              them by a vindictive -- it was absolutely

8              wrong for them to have a restraining

9              order taken out.

10                  What concerns me is that when we

11             expand the definition, as Scott was just

12             saying about threats of suicide, then it

13             becomes, okay, how -- and I guess my

14             point is that we need to make it clear.

15             Is this a threat of suicide to control

16             the other individual, or is it really a

17             threat of suicide, just looking for help?

18             And I'm an attorney, not a psychiatrist

19             or a psychologist.  So maybe Scott can

20             have some insight into that.

21                  But I'm just -- I'm concerned if we

22             expand the definition into interpreting

23             people's thoughts.  It's one thing to

24             say, listen, we have an individual who

25             shot somebody with no provocation, and

Domestic Violence Task Force - 1/12/22

1      it's pretty clear that the victim was

2      injured and that that's -- she needs a

3      protective order, but another thing to

4      say, we have this individual who

5      threatened suicide, and the victim's

6      saying, well, that made me feel -- I feel

7      like my life is in danger.

8           You know what I'm saying?  I just --

9      I want to make sure that everybody on

10     this task force is aware that we need to

11     be really careful when we expand these

12     definitions because we need to prepare

13     for the fact that there are people -- and

14     it's a small, small percentage, but there

15     are people who misuse these statutes.

16     And when you start getting into people's

17     thoughts is when you open up all -- you

18     can open up a can of worms.

19          JUSTICE HANTZ MARCONI:  Well, and I

20     would also say -- and Judge Yazinski

21     might jump in, but the other thing is

22     implementing the statute to the point

23     where there is a lot of data, right, but

24     it has to sort of fall into some kind of

25     objective, fair analysis process.



Domestic Violence Task Force - 1/12/22

1           DR. HAMPTON:  Um-hum.

2           JUSTICE HANTZ MARCONI:  Otherwise,

3      it's unworkable, right?  So that is, I

4      think, the -- that will be the

5      difficulty, not that it can't be done.

6      That's what we're here to do is what

7      makes sense.  And again, that's where you

8      get to we aren't the policymakers.

9           But that's where you have to weigh

10     the behavior, how to control the

11     behavior, how not to overcontrol the

12     behavior, and then how does it get

13     managed in a court process with two sides

14     presenting evidence and a neutral fact-

15     finder.

16          DR. HAMPTON:  I think one of the

17     things that we have a precedent for this

18     in law enforcement, in terms of this idea

19     of looking at the context, what does the

20     behavior mean, and the precedent is the

21     predominant aggressor analysis.

22          So it used to be the officer would

23     show up, and whoever had scratches on

24     their face therefore was the victim, and

25     the other person was the perpetrator.



Domestic Violence Task Force - 1/12/22

1      And what we said is, no, we -- you need

2      to look at the context; what is the

3      meaning of what's going on.  Is the

4      person using an act of violence in self-

5      defense, to resist someone else's abuse,

6      or as an instrumental act to control the

7      other person?

8           So I think we do that.  We look at

9      the larger picture.  What does suicide

10     mean?  Is this person threatening suicide

11     at the moment the other person filed for

12     divorce, said, if you leave me, I will

13     kill myself?  Now we start to get a sense

14     of what the meaning of that is, rather

15     than, no, I've been depressed for years,

16     and I'm having a mental health crisis.

17     Very different story.

18          So I think we can do that, and I

19     think we've started to look at that in

20     some other areas as well.

21          JUDGE YAZINSKI:  And as a practical

22     point --

23          MS. SCHOLLETT:  I think what the --

24     this is --

25          JUDGE YAZINSKI:  We -- I'm sorry.



Domestic Violence Task Force - 1/12/22

1       Go ahead, Lyn.

2               MS. SCHOLLETT:  Sorry.  Hi.  Lyn

3       Schollett from the Coalition.  I think

4       just thinking about the context of this

5       conversation, and there seems to be a

6       shared understanding that the nature of

7       the abuse that we're all seeing is much

8       broader than maybe the black-letter law.

9               We do have some practical

10      limitations in terms of our legislature

11      right now, but I think we also need to

12      see what happens on the other end of this

13      process, which is what happens when the

14      court orders come out, because what we're

15      actually seeing is a narrowing in terms

16      of the relief that's being require -- or

17      the relief that's being awarded or what

18      the victim has to prove.

19              So for example, we've had several

20      conversations today about victims proving

21      a credible threat.  But when we're seeing

22      opinions, where judges are looking for

23      very recent threats, very specific

24      threats, physical threats, that is

25      actually narrowing the definition there.

Domestic Violence Task Force - 1/12/22

```
 1              So I think we need to look at both
 2         ends, both the statutory component up
 3         front, but we really need to have some
 4         practical conversations about where that
 5         expansion's happening and really making
 6         it harder and harder for victims to prove
 7         what they need to prove to get the relief
 8         they need.
 9              MR. VICINANZO:  Just --
10              MR. ENDRES:  Well, then when we talk
11         about expand --
12              MR. VICINANZO:  Go ahead, Steve.
13              MR. ENDRES:  I'm sorry.  When we
14         talk about expanding definitions, the
15         definitions are essentially included in
16         two places.  There's a definition in the
17         statute, and then there's a definition as
18         interpreted by the New Hampshire Supreme
19         Court.
20              And the definition in the statute is
21         made somewhat near a federal definition.
22         But it's the New Hampshire Supreme
23         Court's interpretation that's -- that I
24         think Circuit Court judges are seeing as
25         limiting that scope.
```



Domestic Violence Task Force - 1/12/22

1           And the difficulty is that the New

2      Hampshire Supreme Court isn't going to do

3      independent fact-finding and say, we --

4      this is happening; this is happening;

5      this is happening.  That information

6      needs to be presented to them by one of

7      the parties of the appeal.  And it seems

8      like that, perhaps, is what's missing.

9           JUDGE YAZINSKI:  I'm curious, Lyn.

10     Do you have any actual statistics, other

11     than anecdotes, that support your last

12     statement that judges are narrowing it?

13     Where?  When?  How often?  Who?  To

14     simply throw out what I see as an

15     anecdotal bomb that judges are narrowing

16     the law is somewhat offensive.

17          So if they're implied, if it's

18     backed by some level of statistical

19     information, as opposed to anecdotal

20     information, sharing that would be

21     inordinately helpful to me and this

22     group.

23          MS. SCHOLLETT:  Well, I appreciate

24     your question, Judge Yazinski, and I

25     certainly didn't mean to be offensive to

Domestic Violence Task Force - 1/12/22

1       any members of the bar who are here.

2               I don't know that we have, like,

3       numbers of cases, but we certainly see

4       opinions where the courts find that there

5       was no physical threat or there was no

6       ongoing threat or that the threat wasn't

7       recent enough.  So we certainly have

8       orders that reflect that language.

9               And we have compiled a lot of orders

10      from victims who have come to us and been

11      dissatisfied with what has come out of

12      the courts.  So it's very much based in

13      facts.  Off the top of my head, I can't

14      tell you how many.  But we do see that

15      language appearing many places.

16              And I'm just using the example of

17      the relief language in B:5 as one

18      example, where what we see the judges

19      laying over the statutory language is

20      something more narrowing.  And we can

21      certainly provide those to the task

22      force.

23              JUSTICE HANTZ MARCONI:  And

24      certainly, in your Dropbox, we have --

25      what we have collected are the reported

Domestic Violence Task Force - 1/12/22

1     and the nonprecedential orders.  My

2     review of them -- and I don't have all

3     the Circuit Court orders that you may be

4     looking at.  My review of those,

5     initially at least, to me it's been

6     fairly consistent for about twenty years.

7     So those are -- that's at our level

8     because I was looking at this, whether

9     anything's changed.

10          And my initial review is not much

11    has changed for twenty years, and no one

12    has -- I've only been here for four, but

13    it has not been raised in the appeals

14    that I've seen since I've been here, or

15    again, my review of those orders, that

16    anything's changed.

17          So I don't know -- again, I haven't

18    done a thorough review of Circuit Court

19    orders.  But I don't know whether -- I

20    don't know whether it's taking sort of

21    something from something the Supreme

22    Court said or, like, whether it's a

23    thing, a very articulate way to conclude.

24          JUDGE YAZINSKI:  If I could add one

25    more thing while we're talking --



Domestic Violence Task Force - 1/12/22

1          JUSTICE HANTZ MARCONI:

2      (Indiscernible) the whole -- the recency

3      issue and the physical abuse issue has

4      been out there, like I said, for about

5      twenty years.  So if that is a -- if that

6      is a hot-button issue, then I don't see

7      that there's been any change.  Maybe the

8      sentence has changed, and maybe our lens

9      has changed, but the law hasn't changed.

10         JUDGE YAZINSKI:  I think you're

11     right, Justice Marconi.  The one thought

12     that I have had about this portion of

13     decision-making and order-making -- and

14     Sarah, maybe you can chime in and provide

15     some insight or guidance -- we have

16     burden-shifting statutes in a number of

17     areas.

18         And whether it's a parental fitness

19     hearing, a guardianship hearing,

20     relocation hearing, I often wondered if

21     we were to make the initial finding that

22     there was abuse, are there any states,

23     Sarah, that you know of that then shift

24     the burden to the defendant to show that

25     they are not a threat?



Domestic Violence Task Force - 1/12/22

1            MS. FREEMAN:  I'm not aware of any,

2       but I don't -- I'm not saying that there

3       are not.  That is a really interesting

4       idea.

5            One additional point I will make, it

6       appears, in our review of some of the

7       appellate decisions that have come out,

8       that a number or if not most of those

9       appeals have come from defendants

10      appealing orders against them.  They have

11      not come from petitioners who have been

12      denied orders of protection.

13           So I wonder if there is a lack of

14      resource for attorneys providing

15      appellate work.  That's something, if

16      we're talking about resources,

17      advocate -- more advocate, more

18      resources, more lawyer resources, but

19      that may be another gap in the system,

20      that there are not appellate attorneys

21      who are taking cases on behalf of victims

22      or petitioners who haven't received

23      orders of protection

24           JUSTICE HANTZ MARCONI:  Right.  And

25      it may skew the review of those appellate

Domestic Violence Task Force - 1/12/22

1    decisions in that they're being raised in

2    a limited group of circumstances.

3        MR. VICINANZO:  Can I just reiterate

4    how Judge Yazinski's suggestion for a

5    rebuttable presumption really, really

6    appeals to me.  And I'm going to -- I'd

7    like to tell a quick anecdote, a case I

8    have right now.

9        I have a young woman who's twenty-

10   one.  She was molested by a neighbor at

11   age nine.  And he was -- she disclosed at

12   thirteen, testified against him at

13   fourteen, and he was convicted of

14   multiple counts of aggravated felonious

15   sexual assault.

16       He went to the state prison for a

17   few years.  He's now out on -- he's now

18   out.  For one reason or another, the

19   court, at sentencing, did not impose any

20   kind of a restriction, no-contact order

21   or anything like that.

22       She's now twenty-one.  He's out of

23   prison.  He shows up at her church last

24   weekend and claims he's just worshiping.

25   And maybe he is.  I don't know.  But the

Domestic Violence Task Force - 1/12/22

1      fact is it has really freaked her out

2      that her abuser, who is -- who the state

3      recognizes assaulted her as a child, is a

4      few hundred feet away from her or a

5      hundred feet away from her in church.

6          And she's come to me.  And now I'm

7      telling her, well, it was -- you're

8      twenty-one.  This occurred when you're

9      nine years old, twelve years ago.  And

10     I'm reading the case law.  I'm not sure

11     you qualify for a restraining order or

12     any kind of no-contact order.

13         But it seems to me somebody who

14     is -- has multiple convictions of

15     assaulting a child should be -- should

16     have the burden placed on them as to why

17     they are no longer a threat to their

18     victim.  I love that idea, and I'd

19     really -- I really want to highlight it,

20     underscore it.

21         It seems to me we have it in other

22     areas of the law, like with -- where a

23     child is conceived because of a sexual

24     assault.  The law now creates a rebuttal

25     presumption that those parental rights

Domestic Violence Task Force - 1/12/22

1       will be terminated.  There be rare

2       circumstances where somebody could meet

3       that burden, maybe a Romeo and Juliet

4       type situation.

5            But it works in other parts of the

6       law.  It seems to me this might be a

7       really good area and a good fit for that

8       suggestion.

9            JUSTICE HANTZ MARCONI:  Well, and

10      the other thing -- maybe Steve or

11      Marcie -- where'd Steve go?  Someone

12      could -- and maybe you know, David, but

13      someone does their time like that.  Is

14      there any jurisdiction to continue any

15      kind of restraint?  (Indiscernible)

16      assume too.

17           MS. LAFRANCE:  Yeah.  I mean, well,

18      they have to register as a sex offender,

19      right?  So --

20           JUSTICE HANTZ MARCONI:  Right.

21           MS. LAFRANCE:  -- I mean, there's --

22           JUSTICE HANTZ MARCONI:  But is

23      there -- can there be a -- I mean, like a

24      bail condition, which we know aren't

25      always -- I mean, I've been in that



Domestic Violence Task Force - 1/12/22

1        situation where it's like, you don't need

2        a restraining order; there's a bail

3        condition.  But the bail condition can go

4        away.  So you still need --

5              MR. ENDRES:  Yeah.

6              JUSTICE HANTZ MARCONI:  -- to get

7        the restraining order.  But after someone

8        convicted does their time, is there the

9        ability to continue that restraint?

10             MS. HORNICK:  I think, currently --

11       and I think, Steve, you might have been

12       about to say this, but I think State v.

13       Towle, right, T-O-W-L-E --

14             JUSTICE HANTZ MARCONI:  Yeah.

15             MS. HORNICK:  -- addressed that

16       issue.  And so I think the short answer

17       is no.

18             JUSTICE HANTZ MARCONI:  That's what

19       I thought.

20             MR. ENDRES:  Yeah.

21             JUSTICE HANTZ MARCONI:  Yep.

22             INV. BERNIER:  Kristyn Bernier,

23       Belknap County Attorney's Office

24       investigator.

25             With regard to no-contact orders, on



Domestic Violence Task Force - 1/12/22

1      sentencing decisions, one of the things

2      that I found extremely frustrating, as

3      have a number of prosecutors and other

4      colleagues of mine, it's wonderful when

5      there is a no-contact order on a sentence

6      order.  However, those are not

7      enforceable immediately by law

8      enforcement, not covered under twelve-

9      hour rule.

10      We can't arrest on that.  It has to

11      be a contempt of court.  Or if the

12      person's on probation or parole, it might

13      go as a violation, but there's no

14      immediate relief for a victim unless that

15      contact fits into some crime, burglary or

16      a course of conduct stalking.

17      And one of the things that a number

18      of us have talked about -- I've talked

19      about it with Amanda on a number of

20      occasions -- is whether or not that no-

21      contact order for a domestic violence

22      victim, a sexual assault victim, a child

23      victim, could be made into an order that

24      is covered under 173-B so that it is

25      immediately -- it can be immediately



Domestic Violence Task Force - 1/12/22

1        addressed by law enforcement and not be

2        in the hands of somebody to get a hold of

3        a prosecutor to file a contempt for a

4        contempt hearing.

5              JUSTICE HANTZ MARCONI:   Interesting.

6              MS. BEAUCHAMP:   This is Merrill from

7        the Victim Witness Program at the

8        Hillsborough County Attorney's Office.

9              Just to kind of piggyback on that,

10       it's often occurred to me too,

11       particularly in cases where we have a

12       criminal bail protective order that's

13       issued and (audio interference) during

14       the pendency of the case, if at upon

15       resolution of the case, if there were a

16       way to have sentencing judge perhaps have

17       some ability to convert that criminal

18       bail protective order, rather than have

19       it completely disappear, that it turned

20       into an actual protective order that

21       mirrors what's in the sentence.

22             It would be great if there were a

23       suspended sentence for ten years.   I

24       think it would be fantastic if there were

25       a protective order in place for that

Domestic Violence Task Force - 1/12/22

1          length of time.

2                As Kristyn said, it's not just

3          contempt of a court order that is not

4          actionable the moment the contact

5          happened.  Just a thought.

6                MS. LAFRANCE:  Just to jump on that

7          for a second, I think you might have a

8          equal protection argument because you're

9          treating them differently than other

10         people who have committed crimes, and you

11         have protective orders issued against

12         them.

13               I mean, if you take a domestic

14         violence case of assault, then they get a

15         protective order.  They get it extended a

16         year and then maybe subsequently after

17         that.  But if you put a blanket

18         protective order in place for ten years

19         or twenty years, however long the

20         sentence is suspended, I think you might

21         have an equal protection argument.

22               And I don't know if the attorneys

23         want to jump in on what their thoughts on

24         that, but --

25               JUSTICE HANTZ MARCONI:  Interesting



(973) 406-2250 | operations@escribers.net | www.escribers.net

Domestic Violence Task Force - 1/12/22

1       point.  It is (audio interference).

2       That's why it is a bit of a balancing

3       act.

4           MS. BEAUCHAMP:  Even if it were put

5       in place, the CBPO were turned into a

6       one-year order, and there was then the

7       victim would have to seek a renewal of

8       that order afterwards.  I just think it

9       would be a lot easier on victims.  I

10      think it's very, very difficult.

11          I mean, we try to do the LAP

12      screens, the police do, as the -- right

13      after the incident has occurred.  That

14      can be a difficult thing for a victim to

15      even answer those questions.  If an

16      emergency telephonic order is offered to

17      someone, again, right at the scene of a

18      crime, perhaps, just happened, that might

19      not be something that they can follow

20      through on the next day, when they have

21      to go and get the order.

22          But when they have -- when they're

23      given a criminal bail protective order by

24      the court and an advocate gets that into

25      their hands right away, we're explaining

Domestic Violence Task Force - 1/12/22

1        to them that that is really a protective

2        order for them and that if defendant

3        violates it while it's in place, it's

4        actionable; it's immediately actionable,

5        arrestable new charges.

6            And victims feel a lot of relief,

7        and they don't have to go through a

8        second process to go by themselves to

9        court, with or without an advocate to

10       help them, and be subject to cross-

11       examination by an offender's attorney,

12       then that hearing and if probation and

13       what they've written in a petition -- we

14       all know.  We've seen it in (audio

15       interference), but that's also something

16       that (audio interference) to a criminal

17       case and cause issues.

18           And so I think it would be great if

19       victims didn't have to go through a

20       process twice.  If there's a criminal

21       bail protective order and there's a way

22       to keep that in place for them after the

23       case is resolved, after maybe they've

24       gone through testifying and all of that,

25       and not put them in a place where they've

Domestic Violence Task Force - 1/12/22

1     got to go back to court and face the

2     offender again, I think that would be

3     helpful.

4          JUSTICE HANTZ MARCONI:   I think

5     that's a good suggestion in that I think

6     part of what this task force is looking

7     at is trying to coordinate the various

8     moving parts in a particular case.   And

9     we've identified a gap where if there is

10    a way to streamline, coordinate, share,

11    consolidate, that might make sense.

12         MS. LAFRANCE:   Can I just throw this

13    out there?   What Merrill just said is

14    you're presuming that this person is

15    found guilty.

16         JUSTICE HANTZ MARCONI:   Right.

17         MS. LAFRANCE:   So what happens --

18    and it happens -- a person goes to trial;

19    they're found not guilty?

20         JUSTICE HANTZ MARCONI:   Right.

21         MS. LAFRANCE:    There's no more

22    CBPO.   There's no sentence.

23         JUSTICE HANTZ MARCONI:   Yet they may

24    still -- they may still be subject to a

25    restraining order in a separate



Domestic Violence Task Force - 1/12/22

1      proceeding.

2              MS. LAFRANCE:  Right.

3              JUSTICE HANTZ MARCONI:  Yeah.

4              MS. LAFRANCE:  That might be the

5      victim's only recourse.

6              JUSTICE HANTZ MARCONI:  Right.

7              INV. BERNIER:  With regard to the

8      criminal bail order of protection, this

9      has come up a lot over the last couple of

10     years.  All of our understanding was that

11     the CBPO was put into place so that the

12     victim did not have to go through the

13     civil process, testify, go through

14     hearings in a separate venue when a

15     criminal case is ongoing.

16             However, what we are finding is that

17     with the more egregious offenders who are

18     being placed on preventative detention

19     for child exploitation, sexual assault,

20     domestic violence-related felony-level

21     crimes, we have defense attorneys who are

22     arguing that because the individual is

23     not out on bail, that the CBPO is not

24     enforceable by law enforcement.

25             I always charge it.  I don't care.



Domestic Violence Task Force - 1/12/22

1       We'll take it to trial.  But there is a

2       school of thought where there are some

3       defense attorneys that are going in and

4       arguing that in courts.  Some of the

5       newer judges are buying that.  Some

6       prosecutors are leery about enforcing it.

7              And the behavior that we're seeing

8       from inside jails, phone calls, third-

9       party contacts, witness tampering,

10      particularly when there are children

11      involved, letters -- I just arrested on a

12      case involving 300 pages of letters sent

13      on a marital rape case from the defendant

14      in the jail.

15             Part of that had to do with he felt

16      that he could reach out to his one-year-

17      old child via letter, because apparently,

18      she can read.  And he thought that was a

19      loophole.

20             But we're seeing a lot of -- I have

21      a number of these cases right now.  And

22      everybody that I've spoken to has had a

23      real frustration with the lack of

24      clarification that we're getting on that.

25             Again, our understanding is it's not



Domestic Violence Task Force - 1/12/22

1         a condition of bail.  It is a -- it is a

2         no-contact order, whether you're in

3         Timbuktu, at home, or in the House of

4         Corrections.

5              We're also seeing that in some

6         places, they're having -- they're able to

7         get into social media incarcerated, so

8         that's another issue.  That's just as

9         problematic, plus it opens the door.  I

10        think I called it the Petri dish of

11        witness tampering.  It causes a lot of

12        problems.

13             And that clarification, I think,

14        would be really helpful for those of us

15        charging and trying to enforce those

16        orders.

17             JUSTICE HANTZ MARCONI:  Excellent

18        input.

19             MS. JASINA:  And we're always trying

20        to encourage people -- I completely

21        understand not wanting a victim to have

22        to testify or give their story multiple

23        times.  We're always encouraging, when

24        there is a CBPO in place, that they also

25        go through the civil process, if that's

Domestic Violence Task Force - 1/12/22

```
 1          something that they want, because it goes
 2          beyond the no-contact order.
 3              There is the no-contact provision
 4          under 173-B, but it's that other relief
 5          that can financially stabilize a victim,
 6          so ordering child support payments,
 7          ordering payment of rent or utilities,
 8          mortgage payments, visitation in some
 9          cases.
10              So I understand trying to limit the
11          process as a whole.  But there are some
12          things that can happen in the -- on the
13          civil side of things that are not able to
14          happen on the criminal side of things
15          that I think are really important for a
16          victim to be able to access.  It's
17          important for them to have both.
18              INV. BERNIER:  Which is fine.
19          However, we have to remember that these
20          things were designed so that a victim
21          could go in without having to bring in
22          counsel.  And we can't guarantee that
23          there is advocacy.
24              What ends up happening with a
25          criminal proceeding is that the defense
```



Domestic Violence Task Force - 1/12/22

```
 1        attorney will show up at the restraining
 2        order hearing with their client.  So now
 3        you have your victim being cross-
 4        examined, and it becomes, potentially, a
 5        trial, all of it being exculpatory.
 6             So if there is any type of problem
 7        with that victim's testimony, you've now
 8        potentially tanked a criminal case
 9        because they shouldn't be conjoined.
10             Years ago, if we had a criminal case
11        ongoing and a victim went in and filed
12        for a civil restraining order, judges
13        would authorize that temporary order,
14        which is good for up to a year, but they
15        would not hold a final hearing.  They
16        would basically not make an order, so as
17        not to bias one side or the other, not
18        have the hearing.  That temporary order
19        would go into place pending the outcome
20        of the criminal case.
21             When that started changing, I don't
22        know.  But it was one of the things that
23        we always used to go in.  Advocacy would
24        also do the same thing.  And judges would
25        just basically place it on file and keep
```

Domestic Violence Task Force - 1/12/22

1        it open as a temporary order so that you

2        didn't end up with a victim going in and

3        having a free-for-all with a defense

4        attorney asking a lot of questions and

5        causing potential problems for the

6        criminal case.

7            MS. JASINA:  Yeah, and what we're

8        seeing as a tactic in -- if that system

9        were still in place, and sometimes it's

10        something similar to that is happening

11        with defense attorneys requesting

12        multiple continuances while there is a

13        criminal case ongoing, so it extends out

14        the civil case, which then creates an

15        issue with the credible present threat

16        argument.

17            So six months have gone by.  A year

18        has gone by.  The temporary order has

19        still been in effect.  Nothing has

20        happened.  So then the -- is there a

21        credible present threat anymore?  And

22        we've seen cases tossed out because of

23        that very reason that the temporary order

24        has been extended due to the criminal

25        case, and then when it come -- when the

Domestic Violence Task Force - 1/12/22

1        criminal case is resolved, then it comes

2        back to the 173-B protective order case.

3               And then there's this argument that

4        there's no more credible present threat.

5        And --

6               JUSTICE HANTZ MARCONI:  I'd be

7        curious -- I'd be curious on that point.

8        And we'll wrap up shortly, but I'd be

9        curious on that point because I am not

10       familiar with if a protective order is in

11       place and nothing's happened.  That means

12       a protective order is in place, and

13       nothing's happened.

14              So I'd be curious if the duration of

15       a protective order somehow equates to

16       there not being a present credible

17       threat.  You know what I'm saying?

18              So I'd be curious in some more data

19       on that point, if you will, because I

20       (audio interference) this recent

21       discussion, I take that one area of

22       inquiry, perhaps, is looking at the --

23       again, the interrelation of these

24       criminal restraining orders, the time

25       frame, the scope and process, but also



Domestic Violence Task Force - 1/12/22

1        how that relates to the civil process,

2        because I agree the civil process is

3        broader, provides (audio interference)

4        relief, although limited in time.

5              So that, I think, is a takeaway from

6        this discussion, so --

7              MS. HORNICK:  I just want to lump

8        on --

9              JUDGE YAZINSKI:  And if I could

10       (indiscernible) --

11             MS. HORNICK:  -- or add on, sort of

12       pile on one last thing, if I may, and I

13       apologize.  This is, again, from the

14       criminal realm perspective, and I'll keep

15       it very brief.

16             But as we're talking about it,

17       another tool or tactic that we've been

18       seeing lately by the criminal defense bar

19       is to claim that the victim has Richards

20       issues so therefore needs an attorney to

21       perhaps not allow her to actually speak

22       as to what happened in her abuse or with

23       her abuse and has somewhat successfully

24       prevented criminal cases from going

25       forward.



Domestic Violence Task Force - 1/12/22

1          So I just -- I add that at the end,

2      since we got talking about that

3      intersection of criminal cases and civil

4      cases.  Thank you.

5          JUDGE YAZINSKI:  If we could add one

6      last thing in regard to this, I get those

7      motions asking for the extension of a

8      temporary hearing.  And I have ruled and

9      will continue to rule that the thirty-day

10      requirement in RSA 173-B can't be changed

11      by agreement of the parties, and I won't

12      extend the temporary order.  So we have

13      the final hearing.

14          It becomes difficult for all the

15      reasons, Erin, that you have outlined.

16      You keep continuing a temporary hearing

17      or allow that to go for a year, not only

18      does the argument get raised that there's

19      no longer a present threat, but

20      oftentimes, the people who were around

21      and involved at the time and involved

22      with the parties are gone, so witnesses

23      are gone.

24          But I think the thirty-day, if --

25      and maybe the Supreme Court ultimately



Domestic Violence Task Force - 1/12/22

1    will decide this, because I know other

2    judges disagree with my position -- I

3    think thirty days means thirty days; the

4    statute's clear that the final hearing

5    shall occur within thirty days -- to

6    bring finality to these issues.

7         MR. STRASBURGER:  And can I just add

8    one last thing to what Judge Yazinski

9    just said, because I have seen judges go

10   both ways.  I've seen judges who have

11   granted a continuance because there's a

12   pending criminal matter.  They want to

13   give the defendant a meaningful

14   opportunity to participate in the crim --

15   excuse me, in both the civil and criminal

16   case, understanding that there is a right

17   against self-incrimination.

18        So the lack of uniformity there is

19   tough to navigate because it's very tough

20   to figure out whether or not you're going

21   to have to be prepared to go forward or

22   not.

23        But I just wanted to comment, more

24   specifically, on -- I think it was Ms.

25   Bernier's comment about having the CBPO

Domestic Violence Task Force - 1/12/22

1        sort of turned into a protective order

2        without an opportunity to have defense

3        counsel question.

4            I think that we're forgetting that

5        if you're a defendant who is subject to

6        criminal charges and you're also the

7        respondent in a DVP, right, in the civil

8        case, the domestic violence petition,

9        although the defendant doesn't have to

10       testify and can certainly rely on their

11       right to remain silent and choose to not

12       participate, in the DVP context, the

13       court can draw an inference from that,

14       right?

15           The court can say, they didn't

16       defend.  They didn't put on a defense.

17       They didn't participate.  This is a civil

18       remedy, and I can draw an inference from

19       that.  And I think that -- so defendants

20       are in a particularly precarious spot.

21           And I do -- I represent both victims

22       in these cases and defendants, doing a

23       lot of family law work, because DVPs get

24       brought frequently.  And I also have

25       clients who have accompanying criminal

Domestic Violence Task Force - 1/12/22

1        charges.

2              And it's a real serious discussion

3        when you have to go in for a domestic

4        violence petition hearing, which needs to

5        be held within thirty days, there have

6        been no temporary orders regarding

7        parenting in the divorce case or

8        parenting case heard, and oftentimes, as

9        we see, I think probably 99.9 percent of

10       the time, when a judge issues a temporary

11       order of protection, parenting time is

12       denied pending further hearing, pending a

13       final hearing on the DVP.

14             So it's important to understand that

15       there's a due process obligation, I

16       think, that we have here.  And a

17       defendant may really be risking a lot by

18       choosing to participate in their civil

19       case, in their DVP, and taking that stand

20       and testifying in their own defense, even

21       though they're in the infancy stages of a

22       criminal prosecution.

23             So I think while, sure, it may be

24       easy to argue that just convert a

25       criminal bail order of protection to a



Domestic Violence Task Force - 1/12/22

1          final protective order and that may make

2          it easier for victims, I think we're

3          forgetting about how difficult it may be

4          for a criminal defendant to participate

5          in this process at all, right, if they

6          are subject to criminal prosecution at

7          the same time, which I think is

8          significant.

9              And they may be faced with a choice

10         of you're in Judge Yazinski's court.  I

11         would have to have a very serious

12         conversation with my client about, look,

13         we're going to have every opportunity to

14         cross-examine the petitioner and any of

15         the petitioner's witnesses, but you're

16         going to have to choose as to whether or

17         not you want to testify, because your

18         criminal case is just starting.

19             But I think to preclude the process

20         of allowing a defendant or a respondent

21         in a DVP to confront the allegations

22         against them would be pretty inconsistent

23         with our system.

24             JUSTICE HANTZ MARCONI:  Right.  And

25         there's a timing issue, and I will only



Domestic Violence Task Force - 1/12/22

1    raise because I think it came through in

2    some of the information that I've been

3    amassing.  You also end up with that

4    order from the domestic violence case is

5    now out there, whatever the findings are,

6    that then if there is a analog (ph.)

7    criminal case, both sides have to deal

8    with whatever the findings are in the

9    domestic violence order.

10        MR. STRASBURGER:  Right, which has a

11   long-lasting effect in the family law

12   arena.  I can tell you that for sure --

13        JUSTICE HANTZ MARCONI:  Correct.

14        MR. STRASBURGER:  -- irrespective of

15   what happens in the separate criminal

16   case.

17        JUSTICE HANTZ MARCONI:  Right.  So

18   that's the intersection of all those

19   factors.

20        So we are at our break point, unless

21   there is any further discussion.  And

22   frankly, if this has triggered more

23   ideas -- I think we've gotten some good

24   ones, actually, which we are in the

25   process -- and not to overload you with



Domestic Violence Task Force - 1/12/22

1       paper, but we're summarizing yesterday's.

2       We're going to be summarizing today's.

3              We're going to circulate those

4       summaries so that you can pick up

5       whatever we have lost track of, because I

6       want to keep a record of all of these

7       ideas.  And feel free, if something has

8       triggered after we close today, to send

9       an email to -- a message, a something to

10      Lisa or Anne, and we can upload it to the

11      Dropbox, circulate it to everyone.

12             Circulate it yourself.  We all have

13      the group email.  So feel free to

14      continue to think and contribute on

15      today's charge topics.

16             And that closes us out for today.

17      And we will be regrouping and meeting

18      again next week.  And you have your

19      homework to do.  And next week, I think,

20      is Judge Yazinski's form review

21      assignment, plus what we're dealing with

22      in the next two charges.

23             So enjoy.  I really -- again, I

24      can't say enough -- appreciate the time,

25      attention, and dedication and sincerity



Domestic Violence Task Force - 1/12/22

1          of this group.  I am quite impressed.

2          Thank you.

3                  (End of audio)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATION

I, Cheryl Odom, certify that the
foregoing transcript is a true and
accurate record of the proceedings.



_____

Cheryl Odom (CDLT-186)

TTA-Certified Digital Legal Transcriber


eScribers

352 Seventh Avenue, Suite #604

New York, NY 10001


Date:  March 1, 2022

**A**

**a.m** 28:14
**ability** 5:16 50:9
    52:17
**able** 10:20 13:9
    33:17 59:6
    60:13,16
**absent** 13:7,9
**absolutely** 36:7
**abuse** 3:7 6:20
    7:21 8:20,21
    8:24 9:3,14,15
    9:19,23 10:8
    10:15,18 11:16
    13:3,5,14,22
    15:3,16,16
    16:7,21 17:10
    26:2,21,22
    27:19 31:17
    32:1,3 33:6,8
    33:12 34:5
    35:22 39:5
    40:7 45:3,22
    64:22,23
**abused** 16:19
    31:8 33:24
**abuser** 18:19
    20:10 32:4
    34:21 35:7
    48:2
**abuser's** 32:16
**abusers** 10:14
    13:25 14:1
    31:5 32:24
**abusive** 10:15
    11:2
**access** 60:16
**accompanying**
    67:25
**accomplish** 9:18
**accurate** 73:5
**acknowledge**
    8:24
**act** 17:17 20:15
    24:8,22 39:4,6
    54:3
**actionable** 53:4
    55:4,4
**actions** 10:16

**active** 20:1
**actual** 42:10
    52:20
**add** 18:1 30:12
    44:24 64:11
    65:1,5 66:7
**adding** 4:22
**additional** 18:1
    46:5
**address** 27:13
**addressed** 5:6
    50:15 52:1
**addressing**
    20:16
**Administrator**
    2:21
**advance** 29:22
**advantage** 34:7
**advantages**
    33:16
**advocacy** 60:23
    61:23
**advocate** 46:17
    46:17 54:24
    55:9
**Affairs** 2:12
**age** 47:11
**aggravated**
    47:14
**aggressor** 38:21
**ago** 17:1 31:8
    48:9 61:10
**agree** 23:21 64:2
**agreement**
    65:11
**ahead** 21:1 25:9
    40:1 41:12
**align** 30:8
**allegations**
    69:21
**allow** 64:21
    65:17
**allowing** 69:20
**Amanda** 2:11
    17:13,23 20:14
    28:19 29:8
    51:19
**amassing** 70:3
**amendments**

17:19 20:14
**amount** 7:18
**analog** 70:6
**analysis** 37:25
    38:21
**analyze** 12:2
**anecdotal** 42:15
    42:19
**anecdote** 47:7
**anecdotes** 42:11
**Ann** 1:25
**Anna** 1:12
**Anne** 2:25 71:10
**answer** 50:16
    54:15
**anti-hypothec...**
    7:1
**anymore** 62:21
**anything's** 44:9
    44:16
**apologize** 64:13
**apparently**
    58:17
**appeal** 42:7
**appealing** 46:10
**appeals** 44:13
    46:9 47:6
**appearing** 43:15
**appears** 46:6
**appellate** 46:7
    46:15,20,25
**apply** 20:10
**appreciate**
    42:23 71:24
**approach** 16:17
**area** 7:22 22:23
    49:7 63:21
**areas** 3:24 5:21
    8:7 39:20
    45:17 48:22
**arena** 70:12
**argue** 68:24
**arguing** 57:22
    58:4
**argument** 53:8
    53:21 62:16
    63:3 65:18
**arrest** 23:15,25
    24:10,18 51:10

**arrestable** 55:5
**arrested** 58:11
**articulate** 44:23
**asking** 62:4 65:7
**aspect** 19:10
**assault** 24:6,20
    47:15 48:24
    51:22 53:14
    57:19
**assaulted** 16:25
    48:3
**assaulting** 48:15
**assessing** 5:9
**assessment** 11:5
    11:8,9,14,20
    33:20
**assignment**
    71:21
**Assistance** 2:4
    8:14
**Assistant** 1:23
**Associate** 1:13
**Association** 2:7
    2:14
**assume** 11:18
    49:16
**ATF** 3:21
**attempt** 29:5
    30:5
**attempted** 32:25
    33:4
**attention** 71:25
**attorney** 1:23
    2:1,2,15,16,18
    36:2,18 55:11
    61:1 62:4
    64:20
**Attorney's** 1:22
    16:3 50:23
    52:8
**attorneys** 2:14
    46:14,20 53:22
    57:21 58:3
    62:11
**audio** 26:1 52:13
    54:1 55:14,16
    63:20 64:3
    72:3
**authorize** 23:23

61:13
**authorizes** 23:13
**available** 20:3
    24:24 25:12
**Avenue** 73:19
**awarded** 40:17
**aware** 5:9 23:22
    37:10 46:1
**awful** 26:1

**B**

**B** 35:5
**B:5** 43:17
**baby** 32:19
**back** 4:16 34:15
    34:17 56:1
    63:2
**backed** 42:18
**background**
    19:22 20:8,11
**bail** 49:24 50:2,3
    52:12,18 54:23
    55:21 57:8,23
    59:1 68:25
**balancing** 54:2
**ball** 5:25
**bar** 43:1 64:18
**Barbara** 1:12
**Barton** 1:17
**base** 30:13 33:19
**based** 15:10
    18:5,11 30:14
    43:12
**basically** 61:16
    61:25
**basis** 13:7 26:23
    30:16 32:14
**batterers'** 9:10
**battle** 22:16
**Beauchamp**
    1:18 52:6 54:4
**Beebe** 1:20
    30:11,11,19,23
    30:25
**behalf** 46:21
**behavior** 5:4,5
    8:5 14:16
    19:11 26:8,10
    26:19 31:7,13

32:18 38:10,11
38:12,20 58:7
**behaviors** 26:11
**belief** 23:6
**beliefs** 8:4
**believing** 31:15
**Belknap** 1:21
50:23
**belong** 5:14
**belongs** 5:13
**bench** 34:10
**Bernier** 1:21
50:22,22 57:7
60:18
**Bernier's** 66:25
**Betsy** 2:18
**better** 30:18,21
**beyond** 60:2
**bias** 61:17
**big** 25:25 31:1
**bill** 28:14,14
**birth** 19:20
**bit** 6:19 21:7
22:15 24:11
54:2
**Black** 2:16
**black-letter** 40:8
**blanket** 53:17
**bleeds** 5:20
**bomb** 42:15
**boxes** 13:10
**boyfriend** 17:20
**Brady-qualify...**
18:5
**brain** 17:5
**branch** 5:15 6:2
**branch's** 5:24
**branches** 5:18
**break** 70:20
**brief** 64:15
**bring** 7:23 60:21
66:6
**broader** 13:13
40:8 64:3
**broadly** 10:4
11:8
**broken** 24:5
**brought** 5:10
18:16 67:24

**bunch** 27:5
**burden** 45:24
48:16 49:3
**burden-shifting**
45:16
**burglary** 51:15
**buying** 58:5

**C**

**C** 73:1,1
**cabin** 6:11
**California** 19:25
**call** 5:5 7:7
**called** 18:24
59:10
**calls** 58:8
**Campbell** 11:6
**capable** 32:16
**captured** 4:15
**Carbon** 1:14
**care** 6:5 57:25
**careful** 37:11
**carried** 6:1
**carries** 32:17
**CASA** 2:18
**case** 13:21,21
18:20 23:9
25:14,22,23
47:7 48:10
52:14,15 53:14
55:17,23 56:8
57:15 58:12,13
61:8,10,20
62:6,13,14,25
63:1,2 66:16
67:8 68:7,8,19
69:18 70:4,7
70:16
**cases** 3:3,15,15
3:20 5:9 6:15
6:22,23,23
12:20,21,25
14:6,15 22:3
25:20 31:1
43:3 46:21
52:11 58:21
60:9 62:22
64:24 65:3,4
67:22

**cash** 35:8
**categories** 27:7
**category** 26:8,10
27:15,18
**caught** 9:20
**cause** 55:17
**causes** 59:11
**causing** 62:5
**CBPO** 54:5
56:22 57:11,23
59:24 66:25
**CDLT-186**
73:11
**certain** 12:4,11
**certainly** 26:22
27:9 42:25
43:3,7,21,24
67:10
**certify** 73:3
**cetera** 17:21
**challenge** 29:24
**challenging** 8:23
**change** 29:19
45:7
**changed** 29:11
44:9,11,16
45:8,9,9 65:10
**changes** 5:14
14:4 17:22
20:20 30:6
32:20
**changing** 61:21
**charge** 3:5 4:5
5:23 57:25
71:15
**charged** 26:17
**charges** 55:5
67:6 68:1
71:22
**charging** 59:15
**check** 13:9
18:25 19:1,22
20:9,11 21:20
**Cheryl** 73:3,11
**Chiefs** 2:8
**child** 7:9,9 48:3
48:15,23 51:22
57:19 58:17
60:6

**childless** 14:16
27:14
**children** 11:1,21
11:24 13:18
58:10
**chime** 45:14
**chips** 35:8
**choice** 69:9
**choose** 67:11
69:16
**choosing** 68:18
**church** 47:23
48:5
**Circuit** 1:14,16
1:17 2:20 6:14
12:23 41:24
44:3,18
**circulate** 71:3
71:11,12
**circulated** 3:19
**circumstances**
47:2 49:2
**cite** 27:25 34:14
**civil** 3:15,18 6:6
14:21 18:19
26:7 57:13
59:25 60:13
61:12 62:14
64:1,2 65:3
66:15 67:7,17
68:18
**claim** 64:19
**claims** 47:24
**clarification**
58:24 59:13
**clear** 36:14 37:1
66:4
**Clerk** 1:17 2:25
**client** 61:2 69:12
**clients** 8:2 67:25
**close** 71:8
**closes** 71:16
**closure** 17:20
**coalition** 2:10,12
29:9 30:5 40:3
**code** 16:1
**coerce** 33:1
**coercive** 10:5
**cognizant** 13:22

**colleagues** 51:4
**collected** 43:25
**come** 7:4 8:18
18:25 40:14
43:10,11 46:7
46:9,11 48:6
57:9 62:25
**comes** 6:21
22:22 63:1
**coming** 34:10
**comment** 4:2
66:23,25
**comments** 3:21
4:19
**commit** 35:9
**committed**
53:10
**committee** 25:18
**committing** 24:5
24:20
**common** 23:4
**community's**
16:12
**compiled** 43:9
**completely**
52:19 59:20
**complicating**
12:12
**component** 8:11
22:5 41:2
**conceived** 48:23
**concerned** 36:21
**concerning** 5:5
**concerns** 36:10
**conclude** 44:23
**condition** 49:24
50:3,3 59:1
**conduct** 15:4
18:18 27:3,6
51:16
**confront** 69:21
**Congress** 20:20
**conjoined** 61:9
**consider** 3:10,11
13:11 27:7
33:14
**considerations**
5:17 12:5
**considered**

26:13 28:23
**considering** 5:9
**consistent** 44:6
**consolidate**
    56:11
**constitute** 26:22
**constitutes** 5:3
**constraints** 4:4
**contact** 24:16
    51:15,21 53:4
**contacts** 58:9
**contain** 27:24
**contempt** 23:7
    25:5 51:11
    52:3,4 53:3
**context** 4:22
    12:2 23:9
    25:13 27:8
    38:19 39:2
    40:4 67:12
**continuance**
    66:11
**continuances**
    62:12
**continue** 49:14
    50:9 65:9
    71:14
**continued** 31:16
**continuing**
    65:16
**continuum**
    11:17,20
**contribute** 71:14
**control** 7:11
    10:1,5 12:9
    13:2 14:15
    33:1 36:15
    38:10 39:6
**controlled** 7:5
**controlling**
    31:13
**conversation**
    34:9 35:21
    40:5 69:12
**conversations**
    9:12 40:20
    41:4
**convert** 52:17
    68:24

**convicted** 47:13
    50:8
**conviction** 15:18
**convictions**
    48:14
**coordinate** 56:7
    56:10
**correct** 14:7
    28:15 70:13
**Corrections**
    59:4
**counsel** 60:22
    67:3
**counterintuitive**
    34:19
**country** 19:19
    20:4
**counts** 47:14
**County** 1:22,23
    1:24,25 50:23
    52:8
**couple** 14:18
    27:14 34:1
    57:9
**course** 51:16
**court** 1:13,14,15
    1:16,17 2:20
    5:8 6:10,12,14
    6:15 12:1,23
    24:14 27:7
    38:13 40:14
    41:19,24 42:2
    44:3,18,22
    47:19 51:11
    53:3 54:24
    55:9 56:1
    65:25 67:13,15
    69:10
**Court's** 41:23
**courts** 7:2 18:21
    31:15 33:6
    35:23 43:4,12
    58:4
**covered** 10:7
    51:8,24
**COVID** 7:25
**create** 19:14
**creates** 19:12
    48:24 62:14

**credible** 10:11
    10:20 34:5
    35:24 40:21
    62:15,21 63:4
    63:16
**credit** 20:5
**crim** 66:14
**crime** 15:15
    51:15 54:18
**crimes** 18:7
    53:10 57:21
**criminal** 2:14
    16:1 24:6,6,7
    24:20,21,22
    32:14 52:12,17
    54:23 55:16,20
    57:8,15 60:14
    60:25 61:8,10
    61:20 62:6,13
    62:24 63:1,24
    64:14,18,24
    65:3 66:12,15
    67:6,25 68:22
    68:25 69:4,6
    69:18 70:7,15
**criminalizing**
    15:3
**crisis** 39:16
**criteria** 3:21
    35:23
**cross** 9:23
**cross-** 55:10
    61:3
**cross-examine**
    69:14
**cruelty** 27:5
**curious** 9:16
    20:14 42:9
    63:7,7,9,14,18
**current** 3:6 4:24
    5:7 31:10
**currently** 15:14
    50:10
**cycle** 31:16

_____

**D**

**damage** 13:18
**danger** 10:22
    31:11 37:7

**dangerous** 11:9
    33:20
**dangerousness**
    10:12,13,17
    11:5,25
**data** 37:23 63:18
**database** 18:4
    23:19
**date** 19:20 73:25
**Dave** 15:22
**David** 2:7,15
    49:12
**day** 54:20
**days** 8:1 66:3,3
    66:5 68:5
**deadly** 8:7
**deal** 70:7
**dealing** 71:21
**decide** 66:1
**decision** 16:19
**decision-maki...**
    45:13
**decisions** 46:7
    47:1 51:1
**decree** 14:2,2
**dedication** 71:25
**deep** 35:17
**defend** 67:16
**defendant** 45:24
    55:2 58:13
    66:13 67:5,9
    68:17 69:4,20
**defendants** 46:9
    67:19,22
**defense** 2:14
    36:2 39:5
    57:21 58:3
    60:25 62:3,11
    64:18 67:2,16
    68:20
**definitely** 7:20
    33:14
**definition** 5:2
    9:2 16:6 17:9
    26:6 29:11
    30:14 31:3
    33:12 36:1,11
    36:22 40:25
    41:16,17,20,21

**definitional** 14:4
    20:20 29:19
**definitional-ty...**
    20:16
**definitions**
    15:12 32:6
    37:12 41:14,15
**denied** 19:2
    46:12 68:12
**Depending**
    26:18
**depressed** 39:15
**depriving** 7:16
**designed** 60:20
**despite** 22:6
**detention** 57:18
**determination**
    33:7
**deterrent** 35:10
**developed** 33:20
**developing** 4:12
**Diane** 1:15
**die** 33:25 34:14
**difference** 21:7
    22:25 23:20
    28:2
**different** 5:15
    6:1 8:12 11:24
    12:15 26:2,3,6
    39:17
**differently** 53:9
**difficult** 8:15
    54:10,14 65:14
    69:3
**difficulty** 12:22
    38:5 42:1
**Digital** 73:13
**direct** 35:5
**Director** 1:18,20
    2:3,5,9,11,24
**directs** 21:16
**disagree** 66:2
**disappear** 52:19
**disclosed** 47:11
**discussion** 4:14
    5:1 6:11 9:21
    63:21 64:6
    68:2 70:21
**disease** 7:25 8:7

**dish** 59:10
**dispute** 22:23
**disqualified**
19:1
**dissatisfied**
43:11
**distance** 35:4
**dive** 35:17
**divorce** 6:7,23
6:24 12:21
13:20 14:2,15
18:20 22:3
25:14,22 26:25
27:8,23 28:3
39:12 68:7
**divorces** 25:17
**divorcing** 27:16
**documents** 3:12
29:10
**Dodge** 2:19
**doing** 21:14
67:22
**DOJ** 2:4
**domestic** 1:6
2:22 3:3,7,14
3:16 4:19 5:3
6:4 11:16
12:19,24,25
13:14,22 17:6
18:8 22:4 23:2
25:16,20 26:9
33:12 51:21
53:13 57:20
67:8 68:3 70:4
70:9
**door** 59:9
**DOVE** 2:15,19
**DR** 9:4,7 12:7
12:17 33:16
38:1,16
**draft** 29:18
**draw** 67:13,18
**driven** 30:7
**Dropbox** 43:24
71:11
**dual** 25:3
**due** 7:15 12:5
62:24 68:15
**duration** 63:14

**DV** 2:24 12:3,14
**DVP** 67:7,12
68:13,19 69:21
**DVPs** 67:23
**dying** 34:23 35:1
_____
**E**
**E** 73:1
**earlier** 16:20
30:19 31:4
**easier** 54:9 69:2
**easy** 68:24
**ebb** 28:21
**effect** 62:19
70:11
**effective** 9:17
**effectively** 10:3
**effects** 16:13
**effort** 28:11
**efforts** 28:9,20
**egregious** 57:17
**either** 6:22
10:15 25:18
26:23 29:5
34:4 35:22
**elderly** 14:23
**else's** 39:5
**email** 71:9,13
**emergency**
54:16
**emotional** 8:21
15:2,16 32:1
**encourage** 59:20
**encouraging**
59:23
**endanger** 27:4
**Endres** 1:23
15:6,6 18:22
19:6,14 26:15
41:10,13 50:5
50:20
**ends** 41:2 60:24
**enforce** 59:15
**enforceable** 20:4
51:7 57:24
**enforced** 18:21
25:5
**enforcement**
18:4 19:13,15

19:19,23 21:11
23:14,23,24
24:23 38:18
51:8 52:1
57:24
**enforcing** 58:6
**enjoy** 71:23
**ensure** 21:16
**ensuring** 21:9
**entered** 18:3
23:18
**entitled** 20:5
**environment**
29:20
**equal** 53:8,21
**equates** 63:15
**Erin** 2:24 8:13
9:8 65:15
**eScribers** 73:17
**especially** 7:23
**essentially** 41:15
**establishing**
35:24
**et** 17:21
**Evan** 10:4
**everybody** 37:9
58:22
**evidence** 38:14
**Exactly** 14:12
**examination**
55:11
**examined** 61:4
**example** 40:19
43:16,18
**excellent** 15:24
59:17
**exculpatory**
61:5
**excuse** 66:15
**Executive** 1:20
2:9
**exist** 13:23 20:1
**existed** 31:7
**existence** 22:7
22:14
**exists** 5:2
**expand** 6:18
10:6 33:18
36:11,22 37:11

41:11
**expanded** 35:20
**expanding** 9:1,2
26:5 33:11
35:21,22 36:1
41:14
**expansion** 30:14
31:2 32:6
**expansion's**
41:5
**expansive** 10:21
**expect** 17:18
**expected** 20:21
**experience**
21:25
**experiencing**
32:8
**explaining**
54:25
**exploitation**
12:10 14:22,23
27:20 57:19
**explore** 33:9
**expose** 8:6
**exposed** 8:3
**exposure** 7:25
**extend** 65:12
**extended** 53:15
62:24
**extends** 62:13
**extension** 65:7
**extreme** 27:5
**extremely** 51:2
_____
**F**
**F** 73:1
**face** 17:3 38:24
56:1
**faced** 69:9
**fact** 16:25 37:13
48:1
**fact-** 38:14
**fact-finding**
42:3
**factor** 11:21,25
**factors** 5:7,8
10:17,23,25
11:3 12:13
34:4 35:16

70:19
**facts** 43:13
**fails** 16:10
**fair** 37:25
**fairly** 9:17 44:6
**faith** 20:5
**fall** 27:6 37:24
**familiar** 63:10
**familiarity** 16:2
**family** 14:6 23:5
67:23 70:11
**fantastic** 52:24
**father** 7:8
**fault** 26:24
**federal** 3:20
15:10,13 16:1
21:3 30:9
41:21
**feel** 16:15 17:7
29:22 37:6,6
55:6 71:7,13
**feet** 48:4,5
**felonious** 47:14
**felony-level**
57:20
**felt** 58:15
**field** 15:1
**fifteen** 16:10
**figure** 4:1 66:20
**file** 52:3 61:25
**filed** 6:25 7:3
39:11 61:11
**filing** 19:12
**final** 61:15
65:13 66:4
68:13 69:1
**finality** 66:6
**finances** 7:5,11
**financial** 6:20
7:21 12:9,10
13:2 14:22,23
15:16 32:3
**financially** 60:5
**find** 12:12 43:4
**finder** 38:15
**finding** 11:15
26:25 33:8
45:21 57:16
**findings** 70:5,8

**fine** 60:18
**firearm** 18:24
  19:3 30:10
**firearms** 15:11
  15:20,20 19:9
  21:11,18 22:9
  22:10,14,18
  30:10
**first** 7:3 13:12
**fit** 8:22 49:7
**fitness** 45:18
**fits** 26:12 51:15
**flies** 17:3
**flip** 9:9
**floor** 4:18 6:3
**flow** 28:21
**focus** 5:1
**focuses** 3:5
**follow** 15:23
  22:24 54:19
**followed** 28:19
**following** 11:12
**force** 1:6 3:2,13
  4:16 5:20 6:13
  37:10 43:22
  56:6
**forced** 33:22
**foregoing** 73:4
**forgetting** 67:4
  69:3
**forgo** 9:15
**form** 9:14 13:3
  33:5 71:20
**forms** 9:22 10:8
  10:13 13:22
**formulate** 13:24
**forward** 4:16
  64:25 66:21
**found** 22:19
  51:2 56:15,19
**four** 4:21 44:12
**fourteen** 47:13
**frame** 63:25
**frankly** 6:5
  70:22
**freaked** 48:1
**free** 71:7,13
**free-for-all** 62:3
**Freeman** 2:20

17:25,25 19:17
  20:12 27:22
  46:1
**frequent** 9:11
  22:22
**frequently** 67:24
**Friday** 28:13
**front** 41:3
**frustrating** 51:2
**frustration**
  58:23
**full** 20:5
**further** 68:12
  70:21
**future** 15:21
  18:18

_____
**G**
**gap** 27:20 46:19
  56:9
**geared** 14:22
**general** 24:13
**getting** 32:10
  37:16 58:24
**give** 9:14 33:21
  35:7 59:22
  66:13
**given** 4:6 31:22
  54:23
**go** 6:5 14:7
  18:10,23 21:1
  25:8 34:17
  40:1 41:12
  49:11 50:3
  51:13 54:21
  55:7,8,19 56:1
  57:12,13 59:25
  60:21 61:19,23
  65:17 66:9,21
  68:3
**goal** 29:23
**goes** 56:18 60:1
**going** 4:1 13:17
  17:15 18:14
  31:9 34:20
  35:10,12 36:1
  39:3 42:2 47:6
  58:3 62:2
  64:24 66:20

69:13,16 71:2
  71:3
**good** 49:7,7 56:5
  61:14 70:23
**gotten** 70:23
**government**
  5:15,18 6:2
**Grady** 2:11
  17:13
**Grafton** 1:25
**granted** 66:11
**granting** 34:11
**great** 52:22
  55:18
**greater** 34:23
  35:1
**grounds** 26:24
**group** 2:17 9:21
  11:18 28:16
  29:9 33:10
  42:22 47:2
  71:13 72:1
**guarantee** 60:22
**guardianship**
  45:19
**guess** 7:12 19:8
  36:13
**guidance** 45:15
**guilty** 24:8
  56:15,19

_____
**H**
**Hampshire** 1:13
  2:10,12,13 3:6
  8:14 9:3 15:17
  19:24 21:8,15
  33:13 41:18,22
  42:2
**Hampton** 2:5,7
  9:4,5,7 12:7,17
  33:16 38:1,16
**handling** 33:3
**hands** 52:2
  54:25
**Hantz** 1:12 3:1
  8:9 9:6 11:12
  12:8 14:5,13
  17:23 18:13
  19:4,7,16 20:7

20:13,23 21:1
  21:4,19,24
  25:2,8,24
  26:18 27:2,12
  28:4,8,17 29:1
  29:7 30:17,22
  30:24 32:12
  37:19 38:2
  43:23 45:1
  46:24 49:9,20
  49:22 50:6,14
  50:18,21 52:5
  53:25 56:4,16
  56:20,23 57:3
  57:6 59:17
  63:6 69:24
  70:13,17
**happen** 60:12,14
**happened** 7:24
  31:16 53:5
  54:18 62:20
  63:11,13 64:22
**happening** 32:2
  41:5 42:4,4,5
  60:24 62:10
**happens** 35:6
  40:12,13 56:17
  56:18 70:15
**hard** 14:3
**harder** 41:6,6
**hat** 36:2
**Haven** 1:20
**head** 43:13
**health** 8:10 27:4
  39:16
**hear** 13:3,6 15:4
  30:20
**heard** 68:8
**hearing** 12:24
  13:20 28:13
  31:5 45:19,19
  45:20 52:4
  55:12 61:2,15
  61:18 65:8,13
  65:16 66:4
  68:4,12,13
**hearings** 57:14
**heart-wrenchi...**
  13:4

**held** 1:8 68:5
**help** 34:2 36:17
  55:10
**helpful** 4:22,23
  42:21 56:3
  59:14
**Hi** 40:2
**highlight** 48:19
**Hillsborough**
  52:8
**Hobbs** 2:7
**hold** 23:15,25
  52:2 61:15
**home** 22:18 59:3
**homework**
  71:19
**homicide** 35:2
**Hon** 1:12,14,15
  1:16
**honest** 29:12,14
**honor** 21:22
**honored** 21:23
**hope** 35:19
**Hornick** 1:25
  50:10,15 64:7
  64:11
**hot-button** 45:6
**hour** 23:15 51:9
**hours** 29:2
**House** 20:19
  28:14 59:3
**hundred** 48:4,5
**husband** 7:10
  17:1

_____
**I**
**idea** 16:18 38:18
  46:4 48:18
**ideas** 14:20
  70:23 71:7
**identified** 13:1
  56:9
**illegal** 10:16
**illness** 7:25
**imagine** 13:5
  21:23
**immediate**
  19:13 23:13
  24:18,23 51:14

**immediately**
19:18 51:7,25
51:25 55:4
**impact** 12:3
18:14 31:10
**impacts** 12:4
20:9
**implementing**
37:22
**implied** 42:17
**important** 15:8
36:3 60:15,17
68:14
**impose** 47:19
**impressed** 72:1
**in-depth** 29:18
**incarcerated**
59:7
**incident** 54:13
**include** 3:19
32:20
**included** 3:8
4:20 41:15
**including** 17:19
33:7 34:3
**inconsistent**
69:22
**incorporate**
13:24 28:10
**increase** 32:24
**independent**
42:3
**indiscernible**
30:15 45:2
49:15 64:10
**individual** 36:16
36:24 37:4
57:22
**individuals** 36:5
**infancy** 68:21
**inference** 67:13
67:18
**information**
42:5,19,20
70:2
**informs** 14:9
**initial** 44:10
45:21
**initially** 31:20

44:5
**initiatives** 4:25
28:22
**injured** 37:2
**inordinately**
42:21
**input** 3:24 7:14
15:5,7 59:18
**inquiry** 63:22
**inside** 58:8
**insight** 36:20
45:15
**instance** 16:18
**instantly** 20:3
**instrumental**
39:6
**intend** 30:2
**intentional** 4:7
**interaction** 6:14
**interesting** 8:9
14:20,20 24:3
25:1,25 46:3
52:5 53:25
**Interestingly**
27:22
**interference**
26:1 52:13
54:1 55:15,16
63:20 64:3
**interpose** 17:11
**interpret** 5:19
**interpretation**
5:12 41:23
**interpreted**
41:18
**interpreting**
36:22
**interrelate** 6:8
**interrelation**
63:23
**intersection**
12:19 65:3
70:18
**intervention**
9:10
**introduce** 17:15
**INV** 50:22 57:7
60:18
**investigate** 5:16

**investigator**
1:21 50:24
**involved** 4:24
9:12 58:11
65:21,21
**involving** 58:12
**irrespective**
70:14
**issue** 23:7 24:14
45:3,3,6 50:16
59:8 62:15
69:25
**issued** 22:12
52:13 53:11
**issues** 7:15
12:25 20:16
25:16 55:17
64:20 66:6
68:10

**J**

**Jackie** 11:6
**jail** 58:14
**jails** 58:8
**January** 1:7
**Jasina** 2:24 8:13
8:13 32:22
59:19 62:7
**Jean** 2:22 4:21
6:19 18:15
**John** 1:16
**Jon** 2:13 22:1
**Joshua's** 30:7
**judge** 1:14,15,16
12:18,22 14:12
29:8,14 37:20
39:21,25 42:9
42:24 44:24
45:10 47:4
52:16 64:9
65:5 66:8
68:10 69:10
71:20
**judges** 12:23
40:22 41:24
42:12,15 43:18
58:5 61:12,24
66:2,9,10
**judicial** 3:4

25:19
**Juliet** 49:3
**jump** 6:16 37:21
53:6,23
**jurisdiction**
49:14
**Justice** 1:13 3:1
8:9 9:6 11:12
12:8 14:5,13
17:23 18:13
19:4,7,16 20:7
20:13,23 21:1
21:4,19,24
25:2,8,24
26:18 27:2,12
28:4,8,17 29:1
29:7 30:17,22
30:24 32:12
37:19 38:2
43:23 45:1,11
46:24 49:9,20
49:22 50:6,14
50:18,21 52:5
53:25 56:4,16
56:20,23 57:3
57:6 59:17
63:6 69:24
70:13,17

**K**

**Kathy** 1:20
30:11 32:23
**keep** 55:22
61:25 64:14
65:16 71:6
**keeping** 32:3
**kids** 27:17
**Kilham** 2:22
4:21
**kill** 34:22,24,25
35:12 39:13
**killing** 35:11
**kind** 4:12 15:3
37:24 47:20
48:12 49:15
52:9
**know** 4:3,10
6:13 7:11,19
11:1 14:24,24

15:1 18:15
19:25 28:9,18
31:8,17 32:9
34:12,20 37:8
43:2 44:17,19
44:20 45:23
47:25 49:12,24
53:22 55:14
61:22 63:17
66:1
**knows** 31:21
32:15
**Kristyn** 1:21
50:22 53:2
**Krueger** 2:2

**L**

**lack** 31:6 46:13
58:23 66:18
**LaFrance** 2:16
6:17,18 35:25
49:17,21 53:6
56:12,17,21
57:2,4
**language** 15:9
16:1 24:4 43:8
43:15,17,19
**LAP** 54:11
**largely** 30:7,9
**larger** 39:9
**late** 16:24
**lately** 64:18
**law** 2:17,25 3:6
3:14,15 5:19
8:25 15:10
17:19 18:4
19:15,19,22
21:3 23:5,14
23:23 24:23
30:7,9 38:18
40:8 42:16
45:9 48:10,22
48:24 49:6
51:7 52:1
57:24 67:23
70:11
**laws** 13:15 17:22
**lawyer** 46:18
**laying** 43:19

**leave** 35:13
  39:12
**leaves** 14:16
**leery** 58:6
**legal** 2:19 8:14
  9:23 10:2
  17:11 73:13
**legislative** 4:25
  28:20 29:20
**legislature** 17:8
  40:10
**length** 53:1
**lens** 45:8
**lethality** 11:7
  13:16
**letter** 58:17
**letters** 58:11,12
**level** 7:13 10:12
  25:4 27:10
  31:19 42:18
  44:7
**levels** 12:11 26:2
  26:3
**life** 37:7
**light** 7:23
**limit** 28:12
  60:10
**limitations**
  14:10 40:10
**limited** 47:2
  64:4
**limiting** 41:25
**line** 9:24
**lines** 32:23
**Lisa** 71:10
**list** 29:13
**listen** 36:24
**little** 6:19 8:12
  22:15 24:11
  30:18 35:9
**load** 10:17
**locked** 15:13
**long** 31:8 53:19
**long-lasting**
  70:11
**longer** 48:17
  65:19
**look** 17:8 28:16
  31:22 39:2,8

39:19 41:1
  69:12
**looking** 9:25
  10:3,11,24
  36:17 38:19
  40:22 44:4,8
  56:6 63:22
**looks** 13:14
**loophole** 17:21
  58:19
**losing** 35:13
**losses** 30:3
**lost** 71:5
**lot** 6:21 7:4 15:8
  15:12 23:4
  30:13,18 31:1
  35:15 37:23
  43:9 54:9 55:6
  57:9 58:20
  59:11 62:4
  67:23 68:17
**loud** 30:23
**love** 34:8 48:18
**luck** 17:2
**lump** 64:7
**Lyn** 2:9 40:1,2
  42:9
**Lynda** 2:3

_____
**M**
**making** 41:5
**managed** 38:13
**Manager** 2:22
**March** 73:25
**Marcie** 49:11
**Marconi** 1:12
  3:1 8:9 9:6
  11:12 12:8
  14:5,13 17:23
  18:13 19:4,7
  19:16 20:7,13
  20:23 21:1,4
  21:19,24 25:2
  25:8,24 26:18
  27:2,12 28:4,8
  28:17 29:1,7
  30:17,22,24
  32:12 37:19
  38:2 43:23

45:1,11 46:24
  49:9,20,22
  50:6,14,18,21
  52:5 53:25
  56:4,16,20,23
  57:3,6 59:17
  63:6 69:24
  70:13,17
**marital** 20:2
  58:13
**marriage** 7:18
**married** 27:16
**Martha** 1:25
**Mary** 1:17 2:2
**Massachusetts**
  19:24
**matter** 66:12
**mean** 7:16 17:3
  28:23 38:20
  39:10 42:25
  49:17,21,23,25
  53:13 54:11
**meaning** 39:3,14
**meaningful**
  66:13
**means** 19:17
  31:23 63:11
  66:3
**meant** 19:5
**mechanism**
  21:10
**media** 59:7
**medical** 16:12
**meet** 49:2
**meeting** 1:6 3:2
  3:4 4:11 71:17
**members** 3:25
  25:17 43:1
**men** 9:22
**mental** 39:16
**Merrill** 1:18
  52:6 56:13
**Merrimack** 1:24
**message** 34:16
  71:9
**mind** 13:12
**mine** 51:4
**minor** 28:1
**minutes** 4:12,13

**mirrors** 52:21
**mischief** 24:7,21
**misdemeanor**
  18:8 24:9 25:4
**missing** 42:8
**mistaken** 23:6
**misunderstan...**
  23:4
**misuse** 37:15
**modern** 17:4
**modernize** 28:9
**molested** 47:10
**moment** 39:11
  53:4
**money** 7:19
**month** 17:18
**months** 16:20,20
  17:1 62:17
**mortgage** 60:8
**mother** 7:9
**motions** 65:7
**move** 4:16
**moving** 19:8
  21:10 56:8
**multiple** 47:14
  48:14 59:22
  62:12

_____
**N**
**N** 73:1
**name** 19:20
**narrow** 26:8,10
**narrowing**
  40:15,25 42:12
  42:15 43:20
**national** 18:17
  23:19
**nature** 40:6
**navigate** 66:19
**navigates** 10:2
**near** 41:21
**necessarily** 27:9
**need** 26:13 30:8
  32:11 33:9
  36:14 37:10,12
  39:1 40:11
  41:1,3,7,8 50:1
  50:4
**needing** 7:13

26:3
**needs** 17:8 37:2
  42:6 64:20
  68:4
**neighbor** 47:10
**neither** 24:15
**neurologically**
  17:5
**neutral** 38:14
**new** 1:13 2:9,12
  2:13 3:6 8:14
  9:3 15:16
  19:24 21:7,14
  33:13 41:18,22
  42:1 55:5
  73:21
**newer** 58:5
**NH** 1:20 2:4,7
  2:18
**NHBA** 2:19
**NHJB** 2:22
**NHLA** 2:2,24
**NHSC** 2:25
**Nicolosi** 1:15
**NICS** 18:24,25
  19:21
**nine** 16:19,20
  17:1 47:11
  48:9
**no-** 51:20
**no-contact**
  47:20 48:12
  50:25 51:5
  59:2 60:2,3
**nondivorcing**
  14:17 27:13
**nonmarried**
  14:17
**nonphysical**
  32:8
**nonprecedential**
  3:16,17 44:1
**note** 17:14 21:6
  24:3 25:1
**nothing's** 63:11
  63:13
**notification**
  19:15
**number** 45:16

46:8 51:3,17
51:19 58:21
**numbers** 43:3
**NY** 73:21

**O**

**O** 73:1
**objective** 37:25
**obligation** 68:15
**obtaining** 16:7
**obviously** 5:20
6:21,24 8:4
25:7,11 34:22
**occasions** 51:20
**occur** 66:5
**occurred** 8:24
16:22 48:8
52:10 54:13
**odd** 24:11
**Odom** 73:3,11
**offender** 49:18
56:2
**offender's** 55:11
**offenders** 9:10
57:17
**offensive** 42:16
42:25
**offered** 54:16
**office** 1:22 2:3
7:7 16:4 50:23
52:8
**officer** 38:22
**officers** 24:9
25:19
**oftentimes** 65:20
68:8
**okay** 3:1 9:6
19:16 29:7
33:22 36:13
**old** 8:1 16:5
29:17 48:9
58:17
**One's** 25:3
**one-year** 54:6
**one-year-** 58:16
**ones** 11:6 70:24
**ongoing** 43:6
57:15 61:11
62:13

**open** 4:18 6:3
9:1 29:25
37:17,18 62:1
**opens** 59:9
**opinions** 40:22
43:4
**opportunity**
66:14 67:2
69:13
**opposed** 42:19
**options** 14:14
**order** 6:5 7:1
8:18 12:3
16:23 18:20
20:2 22:7 23:1
23:8,9,16,25
24:5,14,15,19
26:17,24 27:11
27:24 28:1,3
34:12 36:9
37:3 47:20
48:11,12 50:2
50:7 51:5,6,21
51:23 52:12,18
52:20,25 53:3
53:15,18 54:6
54:8,16,21,23
55:2,21 56:25
57:8 59:2 60:2
61:2,12,13,16
61:18 62:1,18
62:23 63:2,10
63:12,15 65:12
67:1 68:11,25
69:1 70:4,9
**order-making**
45:13
**ordering** 60:6,7
**orders** 3:17,18
4:4 6:7 13:24
14:6 18:2,3,7
18:10 19:17,25
22:12,20 23:18
26:7 33:3 36:6
40:14 43:8,9
44:1,3,15,19
46:10,12,23
50:25 53:11
59:16 63:24

68:6
**outcome** 30:1
61:19
**outline** 6:20
**outlined** 65:15
**overcontrol**
38:11
**overdue** 16:15
**overhaul** 16:16
17:9 29:5
**overload** 70:25

**P**

**pages** 58:12
**Paine** 2:18
**painful** 13:6
**Pam** 2:19
**paper** 71:1
**paragraph**
23:13
**parameters** 8:22
**parcel** 13:16,18
**parent** 11:24
**parental** 45:18
48:25
**parenting** 6:23
12:20 13:21
14:1,6,14
18:20 20:1
23:9 25:13,22
27:25 28:2
68:7,8,11
**parole** 51:12
**part** 6:12 13:16
13:17,19 14:1
14:2 18:11
34:9 56:6
58:15
**partial** 17:20
**participate**
66:14 67:12,17
68:18 69:4
**particular** 16:2
56:8
**particularly**
28:18 32:2
52:11 58:10
67:20
**parties** 25:12

42:7 65:11,22
**partner** 7:8
11:21,23 13:14
33:23 34:22,24
35:11
**partners** 8:3
10:1
**parts** 49:5 56:8
**party** 23:15
24:10,15 58:9
**party's** 24:8
**passage** 30:6
**Patricia** 2:16
**Patty** 6:17
**payment** 60:7
**payments** 60:6,8
**peace** 24:9
**pendency** 52:14
**pending** 61:19
66:12 68:12,12
**people** 7:4,6
9:13 23:22
27:15,18 33:19
34:13 37:13,15
53:10 59:20
65:20
**people's** 21:25
36:23 37:16
**percent** 68:9
**percentage**
37:14
**permanent** 16:8
**perpetrator**
38:25
**person** 7:17
10:25 12:5
38:25 39:4,7
39:10,11 56:14
56:18
**person's** 51:12
**perspective** 36:4
64:14
**petition** 6:24
22:4 23:2
25:13,21 55:13
67:8 68:4
**petitioner** 22:17
69:14
**petitioner's**

69:15
**petitioners** 13:6
46:11,22
**petitions** 12:24
**Petri** 59:10
**ph** 6:11,18 15:22
70:6
**phone** 58:8
**physical** 9:15,19
31:6,11,19,24
40:24 43:5
45:3
**pick** 71:4
**picked** 6:1
**picture** 25:25
39:9
**piece** 10:9 34:18
**piggyback** 9:8
52:9
**pile** 64:12
**place** 31:25
52:25 53:18
54:5 55:3,22
55:25 57:11
59:24 61:19,25
62:9 63:11,12
**placed** 48:16
57:18
**places** 41:16
43:15 59:6
**Please** 29:14
**plus** 59:9 71:21
**point** 15:24 18:1
35:5,15 36:14
37:22 39:22
46:5 54:1 63:7
63:9,19 70:20
**pointed** 13:8
25:11
**points** 4:14,21
**police** 2:8 22:19
54:12
**policy** 5:17
**policymakers**
38:8
**portion** 45:12
**pose** 35:19
**poses** 10:22
**position** 29:21

66:2
**possessing** 15:19
**possession** 15:10
**possibly** 33:11
**posted** 3:12 4:6
**potential** 62:5
**potentially** 8:6
61:4,8
**powerful** 34:16
**practical** 39:21
40:9 41:4
**practice** 25:19
**practitioners**
23:5
**precarious**
67:20
**precedent** 38:17
38:20
**preclude** 69:19
**predicates** 16:22
**predominant**
38:21
**prepare** 37:12
**prepared** 66:21
**present** 1:11
62:15,21 63:4
63:16 65:19
**presented** 10:14
42:6
**presenting**
38:14
**presumably**
19:2
**presuming**
56:14
**presumption**
47:5 48:25
**pretty** 37:1
69:22
**preventative**
57:18
**prevented** 64:24
**preventing**
15:19
**primary** 4:19
**prior** 32:18
**prison** 47:16,23
**private** 25:18
**probably** 10:6

28:24 68:9
**probation** 51:12
55:12
**problem** 7:12
61:6
**problematic**
59:9
**problems** 59:12
62:5
**procedural** 3:20
**procedure** 12:14
**proceed** 11:19
**proceeding** 57:1
60:25
**proceedings**
73:5
**process** 4:9,12
4:17 7:16 12:5
37:25 38:13
40:13 55:8,20
57:13 59:25
60:11 63:25
64:1,2 68:15
69:5,19 70:25
**Program** 1:19
2:15,19,23,24
52:7
**programs** 9:11
**proof** 12:11
**prosecution**
24:2 68:22
69:6
**prosecutor** 52:3
**prosecutors**
51:3 58:6
**protect** 19:8
**protected** 9:1
**protection** 7:14
17:12 18:2,3
19:10,18 22:8
22:21 27:11
30:4 32:11
46:12,23 53:8
53:21 57:8
68:11,25
**protections**
31:25
**protective** 8:18
18:6,10 24:13

34:12 37:3
52:12,18,20,25
53:11,15,18
54:23 55:1,21
63:2,10,12,15
67:1 69:1
**protocol** 11:8
**prove** 32:10
40:18 41:6,7
**provide** 27:10
43:21 45:14
**provides** 64:3
**providing** 46:14
**proving** 40:20
**provision** 60:3
**provocation**
36:25
**psychiatrist**
36:18
**psychological**
8:21 32:1
**psychologist**
36:19
**psychology** 35:6
35:18
**public** 2:11 4:2
**purchase** 18:23
**purchasing**
15:20
**purposes** 19:23
30:9
**purview** 3:10,11
5:25
**put** 6:19 12:13
18:22 29:21
53:17 54:4
55:25 57:11
67:16

————————
**Q**
————————
**qualify** 48:11
**qualifying** 16:22
18:7
**question** 22:5
42:24 67:3
**questions** 54:15
62:4
**quick** 47:7
**quickly** 22:24

**quite** 72:1

————————
**R**
————————
**R** 73:1
**raise** 7:15 70:1
**raised** 22:11
44:13 47:1
65:18
**ramifications**
14:9 15:18
**rape** 58:13
**rare** 49:1
**rationale** 34:3
**reach** 58:16
**read** 58:18
**reading** 16:6
48:10
**real** 58:23 68:2
**really** 4:13 8:23
13:11 16:15,16
17:7,9 22:10
23:6,10 30:23
35:16 36:16
37:11 41:3,5
46:3 47:5,5
48:1,19,19
49:7 55:1
59:14 60:15
68:17 71:23
**realm** 64:14
**reason** 27:4
47:18 62:23
**reasons** 30:10
34:1,11 65:15
**rebuttable** 47:5
**rebuttal** 48:24
**received** 46:22
**recency** 45:2
**recognize** 13:2
15:8 17:11
**recognizes** 48:3
**recognizing** 31:6
33:5
**recollection**
22:17
**recommendati...**
4:17
**recommendati...**
5:23

**record** 71:6 73:5
**recourse** 57:5
**refer** 4:15 24:12
**references** 27:23
**referral** 23:14
24:1
**refers** 10:5
**reflect** 43:8
**reflects** 16:16
**regard** 50:25
57:7 65:6
**regarding** 3:7
6:20 15:10
68:6
**register** 49:18
**registry** 14:8
19:12
**regrouping**
71:17
**regular** 13:7
**reiterate** 47:3
**rejected** 28:23
**relate** 8:5
**relates** 64:1
**relationship**
27:17
**relative** 17:22
**relevant** 3:14,15
**relief** 16:8,9
40:16,17 41:7
43:17 51:14
55:6 60:4 64:4
**relinquished**
21:12 22:10
**relinquishment**
21:17 22:8
**relocation** 45:20
**rely** 67:10
**remain** 67:11
**remedies** 3:9
12:16 25:3,10
**remedy** 24:23
26:4,11,12
27:21 67:18
**remember** 60:19
**renewal** 54:7
**rent** 60:7
**reported** 43:25
**represent** 67:21

**representative** 6:9,12
**represented** 36:5
**requesting** 62:11
**require** 40:16
**requirement** 65:10
**requirements** 13:25 17:10
**requires** 12:11 20:11
**requiring** 22:8
**resist** 39:5
**resolution** 52:15
**resolved** 55:23 63:1
**resource** 46:14
**resources** 46:16 46:18,18
**respondent** 67:7 69:20
**restrained** 12:6
**restraining** 18:19 20:2 23:1,8,8,16,24 24:19 26:7,24 27:24,25 28:3 36:6,8 48:11 50:2,7 56:25 61:1,12 63:24
**restraint** 6:25 19:11 49:15 50:9
**restriction** 47:20
**restrictions** 13:25
**restrictive** 18:18
**result** 11:15 28:5
**resulting** 12:3
**review** 3:3,5 5:16 8:19 44:2 44:4,10,15,18 46:6,25 71:20
**Richards** 64:19
**right** 8:1,10 12:7 19:4 20:7,8,11

21:4,13,21,22 25:6,8 26:19 26:20,25 27:2 27:12 28:5 37:23 38:3 40:11 45:11 46:24 47:8 49:19,20 50:13 54:12,17,25 56:16,20 57:2 57:6 58:21 66:16 67:7,11 67:14 69:5,24 70:10,17
**rights** 48:25
**rise** 7:12 31:19
**risk** 34:4,23 35:1 35:16,19
**risking** 68:17
**road** 13:17
**Romeo** 49:3
**routine** 7:2
**routinely** 22:3 22:11 25:15,20
**RSA** 12:19 22:25 65:10
**rubric** 5:8
**Ruel** 2:3
**rule** 51:9 65:9
**ruled** 65:8
**running** 19:20 25:21

—— **S** ——
**sale** 19:2
**Sarah** 2:20 17:25 45:14,23
**saying** 9:8 30:25 31:4 32:23 36:12 37:6,8 46:2 63:17
**says** 24:4,15
**scale** 26:13
**scenario** 32:21
**scene** 54:17
**Schollett** 2:9 39:23 40:2,3 42:23
**school** 58:2

**scientific** 33:19
**scope** 18:17 28:12 41:25 63:25
**Scott** 2:5 9:5 31:4 36:11,19
**scratches** 38:23
**screens** 54:12
**second** 3:2 21:20 36:3 53:7 55:8
**see** 7:3,20 8:8,16 12:20,21 17:18 22:2 25:15,20 29:11 31:18 34:9 40:12 42:14 43:3,14 43:18 45:6 68:9
**seeing** 8:20 30:15 31:1 32:22,24 33:2 33:15 40:7,15 40:21 41:24 58:7,20 59:5 62:8 64:18
**seek** 54:7
**seen** 44:14 55:14 62:22 66:9,10
**self-** 39:4
**self-incrimina...** 66:17
**Senate** 17:15 20:21
**send** 7:2 28:15 71:8
**sense** 16:9 35:3 38:7 39:13 56:11
**sent** 58:12
**sentence** 45:8 51:5 52:21,23 53:20 56:22
**sentencing** 47:19 51:1 52:16
**separate** 56:25 57:14 70:15
**serious** 17:8 68:2 69:11

**serve** 26:23
**served** 22:20
**Seventh** 73:19
**sex** 33:23 49:18
**Sexton** 2:11 17:13,14 20:18 20:25 21:2,5 21:21 28:6,11 28:25 29:3,12 29:16
**sexual** 47:15 48:23 51:22 57:19
**share** 4:8 56:10
**shared** 3:13 40:6
**sharing** 42:20
**shift** 45:23
**short** 50:16
**shortest** 35:4
**shortly** 63:8
**shot** 36:25
**show** 19:21 38:23 45:24 61:1
**showing** 31:10
**shows** 47:23
**side** 9:9 60:13,14 61:17
**sides** 38:13 70:7
**significant** 23:19 30:3 33:18 69:8
**silent** 67:11
**similar** 15:25 18:9 27:25 62:10
**simply** 42:14
**sincerity** 71:25
**single** 31:21
**situation** 10:22 34:13 49:4 50:1
**six** 62:17
**size** 26:12
**skew** 46:25
**sliding** 26:13
**Slightly** 30:22
**small** 32:20 37:14,14

**social** 59:7
**solid** 34:3
**somebody** 7:16 8:6 36:25 48:13 49:2 52:2
**someone's** 19:20
**something's** 7:3
**somewhat** 10:21 15:13 41:21 42:16 64:23
**soon** 17:22
**sorry** 17:1 21:2 39:25 40:2 41:13
**sort** 15:2 21:10 21:13,19,21 22:25 28:20 29:21,22 35:20 37:24 44:20 64:11 67:1
**sought** 16:23
**sound** 34:21
**sounds** 24:16 32:12
**speak** 4:25 15:1 64:21
**specific** 40:23
**specifically** 23:12 66:24
**spoken** 58:22
**spot** 67:20
**stabilize** 60:5
**stage** 4:8
**stages** 68:21
**stakeholders** 3:25
**stalking** 3:15,18 6:6 14:21 18:3 24:7,21 26:7 26:15,17 27:23 28:10 51:16
**stand** 68:19
**standards** 16:7
**Stark** 10:4
**start** 37:16 39:13
**started** 39:19 61:21

starting 69:18
state 17:10
    47:16 48:2
    50:12
statement 42:12
states 15:1 20:6
    21:9 45:22
statistical 42:18
statistics 33:21
    34:14 42:10
status 3:6
statute 4:20 5:12
    5:14 6:4,7 8:19
    12:10 13:23
    16:10 18:12
    21:16 23:12,22
    24:4,12 26:9
    26:16 27:23
    28:10 30:8
    37:22 41:17,20
statute's 66:4
statutes 3:9,20
    15:14 18:9
    21:8 29:25
    37:15 45:16
statutory 12:16
    41:2 43:19
stay 29:1
STDs 8:1
step 13:13
steps 32:20
Steve 15:23
    41:12 49:10,11
    50:11
Steven 1:23 15:6
stop 35:10
story 39:17
    59:22
strange 34:21
Strasburger
    2:13 22:1,2
    25:6,10 26:20
    27:3 66:7
    70:10,14
streamline
    56:10
strictly 20:24
struck 16:9
subject 24:17

55:10 56:24
    67:5 69:6
submitted 3:22
subsequently
    53:16
substantially
    10:6
substantive 3:16
    3:18
successfully
    64:23
suffering 27:19
suggestion 47:4
    49:8 56:5
suicide 33:1,4
    34:17 35:9
    36:12,15,17
    37:5 39:9,10
Suite 73:19
summaries 71:4
summarizing
    71:1,2
summary 4:14
Superior 1:15
    6:10,12,15
Supervisory
    2:25
support 30:13
    31:2 42:11
    60:6
Supreme 1:13
    41:18,22 42:2
    44:21 65:25
sure 23:21 29:3
    37:9 48:10
    68:23 70:12
survivors 8:17
    34:10,16
Susan 1:14
suspended
    52:23 53:20
system 3:4 10:2
    12:4 18:11,14
    18:23 21:22
    46:19 62:8
    69:23
    ————————
            T
T 73:1,1

T-O-W-L-E
    50:13
tactic 62:8 64:17
take 17:8 53:13
    58:1 63:21
takeaway 64:5
taken 36:6,9
talk 5:11 6:6
    26:1,5 30:23
    35:25 41:10,14
talked 51:18,18
talking 4:21
    12:15 20:17
    33:11 44:25
    46:16 64:16
    65:2
talks 18:6
tampering 58:9
    59:11
tangential 3:8
tanked 61:8
task 1:6 3:2,13
    4:16 5:20 6:13
    37:10 43:21
    56:6
telephonic 54:16
tell 7:6 9:13
    43:14 47:7
    70:12
telling 48:7
temporary 16:8
    22:7,20 61:13
    61:18 62:1,16
    62:23 65:8,12
    65:16 68:6,10
ten 52:23 53:18
tend 6:8
tends 22:15
terminated 49:1
terms 4:4 6:22
    10:4,8 19:9,11
    20:8 29:25
    30:3 31:15
    34:5,5 38:18
    40:10,15
Tested 30:19
testified 47:12
testify 57:13
    59:22 67:10

69:17
testifying 55:24
    68:20
testimony 13:4
    61:7
Thank 65:4 72:2
theirs 11:23
thing 12:9 20:25
    21:5 26:1
    36:23 37:3,21
    44:23,25 49:10
    54:14 61:24
    64:12 65:6
    66:8
things 6:8 8:16
    11:4 16:17
    34:19 38:17
    51:1,17 60:12
    60:13,14,20
    61:22
think 5:22 10:3
    10:20 12:23
    14:10,19 15:7
    15:24 21:5
    23:3,3,4,10,20
    25:11 28:14
    29:3,24 30:12
    33:8,17,25
    34:7,15 35:4
    35:21 36:3
    38:4,16 39:8
    39:18,19,23
    40:3,11 41:1
    41:24 45:10
    50:10,11,12,16
    52:24 53:7,20
    54:8,10 55:18
    56:2,4,5 59:10
    59:13 60:15
    64:5 65:24
    66:3,24 67:4
    67:19 68:9,16
    68:23 69:2,7
    69:19 70:1,23
    71:14,19
thinking 5:23
    9:2 10:10 40:4
third- 58:8
thirteen 47:12

thirty 16:5 66:3
    66:3,5 68:5
thirty-day 65:9
    65:24
thorough 44:18
thought 7:19
    11:17 15:25
    24:25 45:11
    50:19 53:5
    58:2,18
thoughts 36:23
    37:17 53:23
threat 10:11,20
    31:22 32:9,17
    32:25,25 33:3
    34:6 35:5,24
    36:15,17 40:21
    43:5,6,6 45:25
    48:17 62:15,21
    63:4,17 65:19
threaten 34:24
threatened 35:2
    37:5
threatening
    32:14 39:10
threatens 34:21
    34:25
threats 36:12
    40:23,24,24
three 5:17 29:2
throw 10:9 36:2
    42:14 56:12
thumbnail 28:24
    29:4
tie 11:4
tied 32:3
Timbuktu 59:3
time 6:7 22:19
    25:22 31:21
    49:13 50:8
    53:1 63:24
    64:4 65:21
    68:10,11 69:7
    71:24
times 31:18
    33:24 59:23
timing 28:5
    69:25
today 5:2,10

40:20 71:8,16
today's 3:4 71:2
71:15
told 16:24
tool 11:9 19:13
64:17
tools 11:5 33:21
top 43:13
topics 71:15
tossed 62:22
Tosta 16:18
tough 66:19,19
Towle 50:13
track 71:5
Transcriber
73:13
transcript 73:4
trauma 16:13,13
17:5
treating 53:9
trend 33:15
trespass 24:6,21
trial 56:18 58:1
61:5
tried 15:2
triggered 70:22
71:8
true 23:10,17
73:4
try 12:13 54:11
trying 9:18 56:7
59:15,19 60:10
TTA-Certified
73:13
turned 52:19
54:5 67:1
twelve 48:9
twelve- 23:14
51:8
twelve-hour
23:25
twenty 29:17
44:6,11 45:5
53:19
twenty- 47:9
twenty-one
47:22 48:8
twice 55:20
two 7:24 8:7

38:13 41:16
71:22
type 7:13 8:5
26:19 27:19
49:4 61:6
types 5:4,4
12:15 26:6

___

**U**
U.S 16:3 17:15
20:19,19
U.S.C 15:11
18:5
ultimate 26:25
ultimately 65:25
Um-hum 12:17
38:1
undergo 13:6
underlying
26:21
underscore
48:20
understand
13:15 35:17
59:21 60:10
68:14
understanding
5:11 13:13
16:11,12 17:4
40:6 57:10
58:25 66:16
unemployment
10:24
uniformity
66:18
unworkable
38:3
upload 71:10
uploading 4:2
use 34:2 35:23
useful 34:1
utilities 60:7

___

**V**
v 50:12
variant 32:13
various 3:14,24
3:25 9:22 11:5
33:2 56:7
varying 33:3

venue 57:14
verbal 13:4
version 17:16
20:19,21
versus 18:15
22:18
Vicinanzo 2:15
15:22,23 41:9
41:12 47:3
victim 1:18
16:14 17:7
31:11,21 32:15
37:1 38:24
40:18 48:18
51:14,22,22,23
52:7 54:7,14
57:12 59:21
60:5,16,20
61:3,11 62:2
64:19
victim's 37:5
57:5 61:7
Victim/Witness
2:4
victims 8:17
19:10 32:7
33:2 40:20
41:6 43:10
46:21 54:9
55:6,19 67:21
69:2
vindictive 36:7
violate 24:19
violates 23:16
55:3
violation 23:7
24:13,17 26:16
51:13
violence 1:6 2:6
2:23 3:3,14,17
4:19 5:3 6:4
12:20,24,25
17:6,16 18:8
20:15 22:4
23:2 25:16,21
26:9 33:12
39:4 51:21
53:14 67:8
68:4 70:4,9

violence-related
57:20
VIRTUAL 1:6
visible 19:18
visitation 60:8

___

**W**
walk 3:24
want 6:6,18 21:6
37:9 48:19
53:23 60:1
64:7 66:12
69:17 71:6
wanted 7:22
17:14 22:24
23:21 66:23
wanting 8:18
59:21
warrant 24:1
wasn't 43:6
way 10:1,1,19
10:21 12:14
32:13 44:23
52:16 55:21
56:10
ways 66:10
we'll 4:5,7 9:13
58:1 63:8
we're 8:16,20
10:10,11 13:20
21:14 30:15,25
32:22,24 33:2
33:10,14 38:6
40:7,14,21
44:25 46:16
54:25 58:7,20
58:24 59:5,19
59:23 62:7
64:16 67:4
69:2,13 71:1,2
71:3,21
we've 4:15 15:5
20:17 39:19
40:19 55:14
56:9 62:22
64:17 70:23
Webex 1:8
week 71:18,19
weekend 47:24

weigh 5:16 38:9
weight 32:17
welcome 3:2
7:14,19
went 47:16
61:11
whatsoever 35:3
where'd 49:11
willing 35:7
wish 29:13
witness 1:19
52:7 58:9
59:11
witnesses 65:22
69:15
woman 16:19
33:22 47:9
Women 17:17
20:15
wonder 46:13
wondered 45:20
wonderful 51:4
work 9:9 46:15
67:23
working 8:16
29:10
works 17:5,6
49:5
worms 37:18
worshiping
47:24
wouldn't 15:17
wrap 63:8
written 55:13
wrong 14:7 36:8

___

**X**
X 7:18

___

**Y**
Yazinski 1:16
12:18 14:12
29:8,14 37:20
39:21,25 42:9
42:24 44:24
45:10 64:9
65:5 66:8
Yazinski's 47:4
69:10 71:20
Yeah 20:13

28:25 29:16
49:17 50:5,14
50:20 57:3
62:7
**year** 53:16 61:14
62:17 65:17
**years** 7:24 16:4
16:5,11 28:21
29:17 39:15
44:6,11 45:5
47:17 48:9,9
52:23 53:18,19
57:10 61:10
**yep** 28:7,8 50:21
**yesterday** 3:23
**yesterday's** 4:11
71:1
**York** 73:21
**young** 47:9

**Z**

**Zinkin** 2:25

**0**

**1**

**1** 73:25
**10:30** 28:13
**10001** 73:21
**12** 1:7
**1340** 28:15
**173** 26:22
**173-B** 4:20 8:23
10:7 12:19
13:19 14:3
15:9 18:2 23:1
27:11 28:12
29:6 35:22
51:24 60:4
63:2 65:10
**173-B:1** 13:10
**18** 15:11 18:5
**1980s** 16:17
**1990s** 16:17

**2**

**2** 3:5
**2014** 30:6
**2022** 1:7 73:25

**3**

**3** 23:13
**300** 58:12
**352** 73:19

**4**

**458:16** 23:1,7,12
23:16,24 24:15
26:17,23
**461-A** 23:8

**5**

**6**

**603** 2:19
**604** 73:19
**631:2-b** 15:9
**633:3-a** 29:5

**7**

**7.6** 33:24

**8**

**9**

**922** 15:11
**922(g)** 18:6
**99.9** 68:9