1

2

3

4

5

6      DOMESTIC VIOLENCE TASK FORCE VIRTUAL MEETING

7                      January 18, 2022

8                      Held via Webex

9

10

11    PRESENT:

12          Hon. Anna Barbara Hantz Marconi,

13    Associate Justice, New Hampshire Supreme Court

14          Hon. Susan Carbon, Circuit Court Judge

15          Hon. Diane Nicolosi, Superior Court Judge

16          Hon. John Yazinski, Circuit Court Judge

17          Mary Barton, Clerk, Circuit Court

18          Merrill Beauchamp, Director, Victim &

19    Witness Program

20          Kathy Beebe, Executive Director, Haven NH

21          Kristyn Bernier, Investigator, Belknap

22    County Attorney's Office

23          Steven Endres, Assistant County Attorney,

24    Merrimack County

25          Martha Ann Hornick, Grafton County



```
1    Attorney
2        Mary Krueger, Attorney, NHLA
3        Lynda Ruel, Director, Office of
4    Victim/Witness Assistance, NH DOJ
5        Scott Hampton, Director, Ending the
6    Violence
7        David Hobbs, Hampton, NH Association of
8    Chiefs of Police
9        Lyn Schollett, Executive Director, New
10   Hampshire Coalition
11       Amanda Grady Sexton, Director of Public
12   Affairs, New Hampshire Coalition
13       Jon Strasburger, New Hampshire
14   Association of Criminal Defense Attorneys
15       David Vicinanzo, Attorney, DOVE Program
16       Patricia LaFrance, Attorney, The Black
17   Law Group
18       Betsy Paine, Attorney, CASA NH
19       Pam Dodge, NHBA DOVE Program & 603 Legal
20       Sarah Freeman, Circuit Court
21   Administrator
22       Jean Kilham, Manager, NHJB Domestic
23   Violence Program
24       Erin Jasina, Director, NHLA DV Program
25       Anne Zinkin, Supervisory Law Clerk, NHSC
```



Domestic Violence Task Force - 1/18/22

1          JUSTICE HANTZ MARCONI:   Thank you.

2     Our third meeting -- technically, our

3     fourth -- of the task force is beginning,

4     this one to focus on the issue of

5     publication of domestic violence

6     appellate decisions.  And frankly, I

7     think we can think about trial court

8     decisions, as well, as we think about

9     this.

10          Before we get started, though, I

11     want to circle back to last week and

12     mention that during our second meeting,

13     there was an exchange which may have and

14     probably did indicate to many

15     participants that the court wasn't

16     interested in hearing all the criticism

17     or anecdotal information or reports of

18     issues.

19          And I just -- I sent an email around

20     earlier today.  I think there is a role

21     in what we're doing for both anecdotal

22     (audio interference) and also some good

23     statistical information to inform our

24     discussions.

25          So both -- and I thank Kristyn for



Domestic Violence Task Force - 1/18/22

1    sort of bringing this -- not bringing it

2    to my attention but having a more

3    elongated conversation.  I know that some

4    others called Anne.  I appreciate that.

5    And I want to assure the task force and

6    that all issues related to what we're

7    trying to do should be heard, will be

8    heard.  And I don't want anyone to think

9    that we're not here with open ears.

10    As I said from the very beginning,

11    there are limits to what we can do, but

12    the goal of -- we the court can do,

13    specifically.  But the goal of this task

14    force is to identify what I'll call gaps,

15    if you will, in the system, some within

16    the court, for sure, some that may take

17    other entities to look at.

18    But I think my hope, and I would

19    assume it's shared by the task force, is

20    we can identify where more work needs to

21    be done.  So if there are any comments on

22    that point, I'd love to hear them now, or

23    we can move into the next topic.

24    And again, this is not a one-off,

25    this task force.  (Audio interference)



Domestic Violence Task Force - 1/18/22

1        regimented it pretty strictly so we can

2        get through what it is we are tasked to

3        do.  But this is a beginning; it is not

4        the end of addressing these issues.

5              And I know that many of you have

6        been, so-called, around the table on

7        these issues for many years, prior to my

8        involvement.  And I anticipate that a lot

9        of you will be around the table going

10       forward.  So I look at this as an

11       opportunity to guide and direct that

12       future effort.  There you go.  Comments,

13       input, feedback?

14             All right.  I assume you've all done

15       your homework on publication of domestic

16       violence appellate and, let's say, trial

17       court decisions.  Any thoughts on this

18       one?

19             And I will just sort of lay my

20       perspective of how this became an issue.

21       From the internal review of the case that

22       prompted the task force, it became

23       apparent that trial judges were relying

24       on appellate decisions that, while

25       public, were not published.



Domestic Violence Task Force - 1/18/22

 1          And so as I outlined in my little

 2      outline about this charge, as with

 3      everything in the electronic age, things

 4      have been evolving.  So prior to 2011,

 5      nothing was posted.  Then prior to e-

 6      Filing but with sort of a web presence,

 7      we were posting all orders, we the

 8      Supreme Court.

 9          Then given someone waking up to the

10      prohibitions of the Violence Against

11      Women Act, we started to not publish

12      nonprecedential orders.  And we would

13      scrub the precedential opinions to take

14      away identifying information.

15          I think the low-hanging fruit in

16      this topic is maybe we start scrubbing

17      all the nonprecedential orders so that

18      they can be posted.  So again, while

19      these orders were public and anyone could

20      go and get them, we just -- we as a

21      government agency are not allowed to post

22      them with identifying information.

23          So one obvious solution is to scrub

24      all these decisions, orders, and let them

25      all be posted on the internet.  I am

Domestic Violence Task Force - 1/18/22

1    happy to hear other thoughts on the

2    issue.

3          MS. KRUEGER:  This is Mary Krueger

4    from New Hampshire Legal Assistance.

5    This has come up prior to this task

6    force.  Last year -- we've been hearing

7    about these orders coming out.  And the

8    S.K. v. J.M. case, which came up in the

9    review of the L.S. v. R.L. situation, was

10   a case that we had heard about, but then

11   we couldn't find it.

12         And then we figured out, oh, it's

13   not on the website and then did some

14   further digging and learned that -- my

15   understanding, at least, was because of

16   the Violence Against Women Act

17   prohibition to disseminate identifying

18   information about victims on the

19   internet, which is a good policy,

20   prevented the court from putting up some

21   of these nonprecedential orders.

22         However, at the same time,

23   naturally, these orders were being

24   circulated within the court system.  And

25   if there was counsel involved, they would



Domestic Violence Task Force - 1/18/22

1       get a copy, certainly, because it was up

2       on appeal.

3              But what was hard for us was that we

4       didn't have any reason to know that these

5       orders were being issued.  And but for,

6       like, sending somebody over to the

7       Supreme Court to check on a regular

8       basis, there's no way that we would know

9       that the court had issued an order.

10             And as we know, that S.K. case that

11      came out last -- I don't know if it was

12      July or when it was -- was relied upon as

13      a case to help make a decision.  And if

14      we don't, as attorneys, know about these

15      cases, how can we expect pro se litigants

16      or self-represented parties know about

17      these cases?

18             So it seems to us that the solution

19      is to make -- put them with the initials,

20      as was done in the L.C. case, which was

21      an opinion, and have the order itself

22      written in a way so as not to provide

23      identifying information and/or redact it

24      so that it is equally available to the

25      public so that we can all understand what

Domestic Violence Task Force - 1/18/22

1        the court has decided and why, in order

2        to best articulate and craft our cases.

3             JUSTICE HANTZ MARCONI:  I think that

4        makes sense.  Noting the distinction

5        between precedential orders that

6        establish, in a way, a new element or

7        legal concept and nonprecedential orders

8        that -- I mean, at least this was the

9        thinking for many, many years --

10       nonprecedential orders that are not cited

11       as precedent but do provide guidance in

12       terms of applying the law to a specific

13       set of acts.

14            And so that, I think, is the

15       distinction that has always existed in

16       many case types.  When things go by 3JX

17       or nonprecedential order, it seems to be

18       more fact-driven and only applicable to

19       those parties.

20            Here, we have a glaring example,

21       where counsel and litigants can learn

22       from a nonprecedential order the

23       application of the law to facts.  So I

24       think that makes a lot of sense.  It was

25       a period of time, as we indicated in the

Domestic Violence Task Force - 1/18/22

1        notes that I sent around, nonprecedential

2        orders were published, if you will, on

3        the court's website from 2014 to 2017,

4        like I said, until someone woke up.

5             So we've had this issue, if you

6        will, from 2018 to the present.  So we're

7        looking at a three-year period where

8        those orders were not available unless

9        someone came to the court, looked up DV

10       cases -- and again, this is the Supreme

11       Court -- and got copies of those orders.

12       So I think that's a very valid

13       observation.

14            Anyone else?  I mean, and again, the

15       prohibition is the court posting on the

16       internet, as we circulated with -- and

17       did a little bit of research to figure

18       out the exact wording.  And that's what

19       we are looking at.  It is not a

20       prohibition against private agencies.

21       It's a prohibition against states and

22       government agencies, which is another

23       interesting conundrum.  But certainly --

24            MS. KRUEGER:  Justice Hantz --

25            JUSTICE HANTZ MARCONI:  Yeah.



Domestic Violence Task Force - 1/18/22

1       Certainly, scrubbing the orders, if you

2       will, of identifying information is a

3       logical response.

4            MS. KRUEGER:  Justice Hantz Marconi,

5       I'm glad that you pointed out that these

6       are nonprecedential orders.  And I think

7       that that -- we just have to really think

8       about how a nonprecedential order became

9       so influential in a case.

10           And I don't know if that's under

11      this charge 3 or not, but I just think

12      it's worth thinking about how a

13      nonprecedential case can influence the

14      decision making versus an opinion that

15      the court has issued and really sticking

16      within the opinions of the court to

17      really be able to guide us to

18      understanding how a statute ought to

19      apply.

20           JUSTICE HANTZ MARCONI:  Well, and I

21      think, frankly, this is a conversation

22      that not just in this topic area is

23      becoming -- and again, I look at the long

24      ball, so -- or the long viewpoint.

25           Back in the day, when I started



Domestic Violence Task Force - 1/18/22

1          practicing, nothing was on the internet.

2          And so you really only had a body of

3          caselaw that was the "published opinions"

4          that you could find.  And we, as lawyers,

5          would do a lot of digging in a particular

6          case type to find trial court orders or

7          other things.

8              So I think this is an evolution with

9          more information being available.  That

10         old distinction between precedential

11         orders, i.e., new statements of the law,

12         and nonprecedential orders may be

13         something that we in the court need to

14         look at because even a so-called

15         nonprecedential order applying old tort

16         concepts or non-not-new contract

17         interpretation can still provide guidance

18         to a litigant.

19             And particularly in this space, I

20         think those nonprecedential orders, while

21         they aren't new statements of the law, we

22         aren't overruling anything or making a

23         new statement on an interpretation of

24         statute, but certainly, it still provides

25         guidance to litigants.



Domestic Violence Task Force - 1/18/22

1          So I think this issue has -- I can

2     see a recommendation emanating from this

3     task force to look at this space but not

4     just -- looking at nonprecedential orders

5     in this space but not just in this space,

6     because the reality is they do provide

7     guidance.

8          MS. SCHOLLETT:   Justice Hantz

9     Marconi, this is Lyn Schollett.   I

10    appreciate you saying that.  And I was --

11    I also appreciated that in the notes

12    you've circulated -- and I'm doing my

13    best to keep up.  It's a lot of

14    information, but Anne and Lisa have done

15    a great job starting to pull out some

16    proposed recommendations.

17         And this issue is complicated

18    because we have, of course, so many

19    victims who come to court completely

20    unrepresented or may come with an

21    advocate who's not an attorney.

22         So in addition to kind of this

23    philosophical conversation about the

24    impact of precedential and

25    nonprecedential orders from the courts,

Domestic Violence Task Force - 1/18/22

1    I'd love us to think about training tools

2    or guidance and how do we make that

3    information from those orders as

4    accessible as possible to people who

5    aren't represented or are working with an

6    advocate.

7        And advocates are very knowledgeable

8    about the system, but we too felt that

9    tremendous gap in information.  While

10   advocates can certainly be trained to

11   learn the fundamentals of what needs to

12   be in a petition, since it wasn't very

13   accessible, that became challenging.

14       So I think -- I don't know if

15   there's collaborative training or there

16   would be guidebooks or there might be a

17   handout.  I don't know.  Maybe it'll

18   impact the forms discussion.  But I'd

19   like to think about, also, not just who

20   can access it, but then what do we do

21   with what we learn from those orders as

22   they're changing over time.

23       JUSTICE HANTZ MARCONI:  Well, that's

24   an interesting topic.  And one thing that

25   has been percolating in the back of my



Domestic Violence Task Force - 1/18/22

1        mind, when former Chief Justice Broderick

2        goes around and has his mental health

3        initiative, he has a five -- and this --

4        he has sort of the five warning points,

5        red flags, folks with mental health

6        issues, for people interacting with folks

7        who may have mental health issues.

8            And it occurred to me -- and again,

9        I -- it may be something that will

10       emanate from this task force, but

11       developing -- so I look at two things.

12       The guided interview process but more

13       sort of on paper, and also, perhaps, a

14       card that highlights these trigger

15       warnings, if you will, that could then --

16       could be drawn from some of these case

17       fact patterns.  Just a thought, but yes,

18       as a training tool to alert.

19           And we aren't just talking about

20       advocates in the space or lawyers in the

21       space but members of the public and court

22       staff, again, in trying to guide the

23       process where it needs to go.

24           And I see Pam nodding.  I know she's

25       dealt, over time, with lots of tools to

Domestic Violence Task Force - 1/18/22

1    try to help training DOVE attorneys sort

2    of what to look for.  So I think there is

3    some improvement that we, perhaps, can

4    facilitate.

5         MR. ENDRES:  Steven Endres here.  I

6    guess, interestingly, I didn't even

7    realize until recently that there were

8    nonpublished 3JX opinions and

9    nonpublished opinions that weren't on the

10   internet.

11        And I guess if that's based on the

12   Violence Against Women Act, that's

13   something that'll be national in nature.

14   And I'm just wondering what other states

15   are doing.  As I read the language from

16   the Violence Against Women Act, I don't

17   know that this prevents publication of

18   Supreme Court cases.  But that's not

19   really up for my -- for me to interpret.

20        But presumably, other -- all fifty

21   states are faced with this exact same

22   issue.  And I obviously -- I fall on the

23   side of I would love to see these

24   decisions published because I think more

25   information is better.



Domestic Violence Task Force - 1/18/22

1          And I certainly agree with redacting

2      names or putting in initials or even

3      potentially retitling cases as Domestic

4      Violence 1 or Domestic Violence 2 and

5      just referring to the people as the

6      defendant and the petitioner.  And that

7      way, it makes it even harder to figuring

8      of who's who.

9          JUSTICE HANTZ MARCONI:  Right.  And

10     another question that's come up is, do

11     you identify -- and this is a bit

12     esoteric, but in a way the statute is

13     written, identifying information,

14     location, so do you identify the circuit

15     that the case is out of?  You'll identify

16     the trial judge, which would then

17     identify the circuit, in fact, the

18     district, the division that the case

19     emanated from.

20         So I'd be curious to see what people

21     think about the location issue, because

22     certainly, a scrubbed opinion from a

23     certain location could -- and again, this

24     wouldn't be an exact violation, I don't

25     think, of the Violence Against Women Act,

Domestic Violence Task Force - 1/18/22

1     until someone sues us, but would

2     identifying the home town, for example,

3     in small communities up north, would that

4     be a link to identifying the location and

5     perhaps putting a victim at risk?  Has

6     anyone thought about that?

7          MS. LAFRANCE:  Yeah.  Patricia

8     LaFrance here.  If we're going to scrub

9     the information and put initials in there

10    for the parties, I guess why wouldn't we

11    also scrub the information about the

12    judge and the location?  What purpose

13    does it serve keeping it in there?

14         I mean, I know for, I guess -- I

15    don't know -- statistical purposes or if

16    you're really looking for something from

17    a particular judge, it's important.  But

18    in terms of just putting it in there,

19    what is the purpose, if we're talking

20    about keeping the parties' identities

21    secret?

22         MR. ENDRES:  The only thing that I

23    can say that I like knowing who the judge

24    is is because if I'm bringing that case

25    in front of that same judge and saying, I

Domestic Violence Task Force - 1/18/22

1       have a 3JX opinion that's

2       nonprecedential, but this person got

3       flipped, if that's the judge I'm going in

4       front of, it's always nice to know that

5       they're the one whose decision may have

6       been questioned.

7              JUDGE NICOLOSI:  There are

8       certain --

9              MS. KRUEGER:  Yeah, I think --

10             JUDGE NICOLOSI:  -- some rights

11      openness in the process and some

12      accountability on judges and all of that

13      so that the -- if you scrub the name of a

14      judge, you wouldn't even know whether or

15      not the judge was following protocols

16      or -- the public wouldn't.  And there is

17      a public's right to accountability for

18      justice.  So I would worry, if we got too

19      much off, that we would offend that.

20             MS. KRUEGER:  Yeah, I would agree.

21      I think you can have the judge.  You

22      could scrub the Circuit Court and still

23      have the judge.  Judges move all over the

24      place.  But it does remove that

25      accountability piece, which is part of



1        the reason why we're here, right?

2              We're trying to talk about how we

3        track these things, and not just -- when

4        we have anecdotal information, how do we

5        aggregate that so that it becomes more

6        qualitative information that we can

7        track.  And doing that without judge

8        names would just complicate that a little

9        bit.

10             But I do think that as lawyers, when

11       we, like, at New Hampshire Legal

12       Assistance, when we share stories out to

13       our funders, we change all kinds of

14       information so that they can't identify

15       the person who we served with a

16       particular issue, the town, the

17       occupation, things like that that could

18       possibly allow someone to read it and

19       figure out who it is.

20             And I think that's what the Violence

21       Against Women Act is designed to do, so

22       that you can't identify the location of

23       that victim or who that victim is.  So I

24       think you would have to -- it's going to

25       take more time and effort, but it's not

Domestic Violence Task Force - 1/18/22

1    like these orders are coming out on a

2    weekly basis, so -- but it does require

3    some work.

4        JUDGE NICOLOSI:  And I don't see why

5    something couldn't be preliminarily

6    sealed, as much information as necessary,

7    case by case.  And once a petition is

8    served and a hearing is scheduled, the

9    information is out.  And I wouldn't think

10   there would be any reason to continue to

11   keep that secret.

12       But at the initial filing of a

13   petition, particularly when temporary

14   orders are being considered, maybe that's

15   a time that it can be filed with a motion

16   to seal, so if they're not issued,

17   somebody has the opportunity to withdraw

18   it.  But --

19       JUSTICE HANTZ MARCONI:  So you're

20   talking more about trial court orders?

21       JUDGE NICOLOSI:  Yeah, any order

22   that ultimately is issued by a judge has

23   to be issued with some sort of notice and

24   opportunity for a hearing.  And at that

25   point, the cat's out of the bag.



Domestic Violence Task Force - 1/18/22

1            But at the early stages of the case,

2       we've talked about circumstances where a

3       petition is filed and temporary orders

4       may not be granted being the most lethal

5       time, when no orders have issued but

6       something's pending.  During that period

7       of time, I would think maybe that would

8       be a more sensitive time for that

9       information not to be divulged.

10           MS. KRUEGER:  Well, I don't think

11      that's being shared on the internet.  I

12      think the problem --

13           JUSTICE HANTZ MARCONI:  Right.

14           MS. KRUEGER:  -- is the internet,

15      right, so and then public access to the

16      information that the judges have.

17           JUDGE NICOLOSI:  Yeah.

18           JUSTICE HANTZ MARCONI:  Right.  And

19      that's why -- I mean, the intranet, we

20      can circulate.

21           JUDGE NICOLOSI:  Yeah.

22           JUSTICE HANTZ MARCONI:  And so

23      certainly, on our -- for example, you

24      come to a kiosk, now that we have kiosks,

25      which is only something we've had for the

Domestic Violence Task Force - 1/18/22

1      past year.  But you go to a kiosk.  You

2      can search for case types and get orders

3      from the Supreme Court.  That's not the

4      internet.

5              JUDGE NICOLOSI:  Um-hum.

6              JUSTICE HANTZ MARCONI:  That's

7      different, according to my tech people,

8      from posting on our website.  So

9      certainly, scrubbing, as we've talked

10     about, is one option.  And it really

11     doesn't -- I don't think it works for the

12     public.  Might work for some of the

13     advocates, but it really doesn't work for

14     the public to go on the court kiosk and

15     pull up all these old orders.

16             JUDGE NICOLOSI:  Yeah.

17             JUSTICE HANTZ MARCONI:  I mean, it

18     could.  It could be something you do once

19     a month and see what we've been doing.

20     But that alternative to scrubbing doesn't

21     seem to really provide the public

22     exposure that I think we're looking for.

23             MS. LAFRANCE:  So another thought I

24     had, as we're talking about what

25     information to scrub and we're talking



Domestic Violence Task Force - 1/18/22

1          about occupations or what a person does

2          for work or any other kind of identifying

3          information, what happens if that

4          information -- and I've been racking my

5          brain trying to think of an example.

6               But what if it's key to some type of

7          legal issue that the order addresses, but

8          it doesn't necessarily specifically

9          identify one person?

10              JUSTICE HANTZ MARCONI:  For example,

11         if they're a law enforcement officer?

12              MS. LAFRANCE:  Right.

13              JUSTICE HANTZ MARCONI:  Right?

14              MS. LAFRANCE:  Yeah.

15              JUSTICE HANTZ MARCONI:  It's a good

16         question.

17              MS. LAFRANCE:  As long as it's -- I

18         was thinking uniquely identifying career

19         or occupation would be a United States

20         senator who used to be a governor.  Okay,

21         well --

22              JUSTICE HANTZ MARCONI:  Right.

23         Yeah.

24              MS. LAFRANCE:  We only have two of

25         those, so --



Domestic Violence Task Force - 1/18/22

1          JUSTICE HANTZ MARCONI:  Yep.  That's

2      an interesting question.  The statute

3      says, yeah, "shall not make available

4      publicly on the internet if such

5      publication would be likely to reveal the

6      identity or location of the party

7      protected."

8          So it's really a question of those

9      in the local community who could -- and

10     this is what, I think, the court would

11     have to spend its time thinking about --

12     those in a small, local community, how

13     much detail does it take to identify

14     people?

15         MS. HORNICK:  I was just going to

16     say that I was looking at some of those

17     statistics before the meeting started.

18     And you look at the case numbers from

19     some of those smaller circuits, and gee

20     whiz, it would be, I think, pretty easy

21     to figure out who's who in some of those

22     locations.  Yeah, that's a real

23     challenge.  Gee whiz.  But --

24         JUSTICE HANTZ MARCONI:  Doesn't mean

25     we can't figure something out.  And we do

Domestic Violence Task Force - 1/18/22

1       have, watching silently on the -- at this

2       meeting, our head clerk, Tim Gudas, who's

3       very interested in this discussion.  So

4       it will continue.  And certainly, any

5       thoughts, but that is one thing.

6             And someone mentioned this to me.

7       In a small community up north, it

8       wouldn't take much to identify.  And so

9       then I think the question is -- and maybe

10      I don't even -- Tim will roll his eyes.

11      I don't even want to go there, but we can

12      look at what's posted on the internet and

13      then what's available publicly.

14            But we can't have two official

15      orders out of the Supreme Court.  So it

16      may be a balancing act.  And it may be

17      few cases that raise this challenge.

18            MS. KRUEGER:  Yeah.  And one thing

19      you could do is, potentially, to say

20      there is an order, and it's available --

21            JUSTICE HANTZ MARCONI:  Right.

22            MS. KRUEGER:  -- because that was

23      really the thing is, like, we didn't even

24      know that there was an order and

25      potentially more --



Domestic Violence Task Force - 1/18/22

1          JUSTICE HANTZ MARCONI:  Right.

2          MS. KRUEGER:  -- that judges were

3     looking at and --

4          JUSTICE HANTZ MARCONI:  Right.

5          MS. KRUEGER:  -- and utilizing.

6     So --

7          JUSTICE HANTZ MARCONI:  And maybe it

8     is just here's a case number; the order's

9     not posted because of the Violence

10    Against Women Act, period, because

11    certain states -- we've started to look

12    at other states.  They will put -- they

13    have some standard blather they'll put at

14    the bottom of the case, saying this has

15    been scrubbed because, or -- and maybe we

16    just adopt a provision that lets you

17    know, lets people know there is an order,

18    but we're not posting it.

19         MS. FREEMAN:  One issue to be aware

20    of is that these are not confidential

21    case types.  So --

22         JUSTICE HANTZ MARCONI:  Right.

23         MS. FREEMAN:  -- any member of the

24    public could walk into any court location

25    and request copies of the underlying DV



Domestic Violence Task Force - 1/18/22

1          order.  So if you go into a small --

2                    JUSTICE HANTZ MARCONI:  Right.

3                    MS. FREEMAN:  -- location, where

4          there may be ten orders from a particular

5          month or year, with particular initials,

6          it's very easy to identify which is a

7          Supreme Court opinion from that court.

8                    But on the flip side, anybody can

9          walk into those circuit courts now and

10         request that information, and in fact,

11         can request that information before it

12         has been served on a defendant in the

13         case of a temporary order.

14                   So I think this idea of not posting

15         the Supreme Court opinions comes from a

16         really good protective place because

17         there may be reasons why you cannot scrub

18         meaningfully identifying information from

19         a Supreme Court opinion because of what

20         has been said, the occupation, the

21         immigration status, a lot of different

22         characteristics that might be rare in a

23         small, rural community in New Hampshire.

24                   JUSTICE HANTZ MARCONI:  And so then

25         just noting that a case has been issued

Domestic Violence Task Force - 1/18/22

1       might not be a bad fix.  It wouldn't

2       change the dynamic all that much, because

3       again, anyone could come into Supreme

4       Court, look up DV case types on the

5       kiosk, and get those nonprecedential

6       orders because you're right.  They are

7       not confidential case types.

8           We have those that are confidential

9       by statute; everything's confidential.

10      These are not that, and the orders are

11      available.

12          MS. DODGE:  Do you think --

13          MS. SCHOLLETT:  This is Lyn

14      Schollet.

15          MS. DODGE:  Oh, sorry.

16          MS. SCHOLLETT:  Go ahead, Pam.

17          MS. DODGE:  No, go ahead, Lyn.  I

18      can wait.

19          MS. SCHOLLETT:  I just had a follow-

20      up question.  And maybe this is my not

21      knowing the system well enough.  I guess

22      I wonder, if that were the case, how is

23      that practically different than where we

24      are now?  Wouldn't, if we -- wouldn't

25      judges still be having access to those

Domestic Violence Task Force - 1/18/22

1       nonprecedential opinions and possibly

2       relying on them, but they still would be

3       less accessible to unrepresented

4       litigants?

5           JUSTICE HANTZ MARCONI:  They'd still

6       be -- they'd be -- people who went to the

7       website would know they existed, but

8       they'd still have to go make an effort to

9       obtain them, yeah.  They couldn't just

10      read them on the internet.

11          MS. SCHOLLETT:  Which just seems

12      like a very high bar for people who don't

13      have a lawyer and advocate.  I think

14      that's not -- I don't think that's

15      practical for a lot of those, so --

16          JUSTICE HANTZ MARCONI:  I think, as

17      Steve mentioned, it's probably a high bar

18      for people who are a lawyer, right, that

19      not everybody -- even though we try to

20      make our website very transparent and

21      user-friendly, it isn't always, so --

22          MS. SCHOLLETT:  Well, maybe this

23      is -- maybe this is an issue, then, for a

24      recommendation to be about having a

25      working group that would look at this,



Domestic Violence Task Force - 1/18/22

1       because it seems like we need a lot of --

2       we need a lot of the same stakeholders

3       who are here to have input on,

4       practically, how that would pan out --

5               JUSTICE HANTZ MARCONI:  Yeah.

6               MS. SCHOLLETT:  -- maybe including

7       adding a few front-line advocates.

8               JUSTICE HANTZ MARCONI:  Yeah.

9               MS. DODGE:  One thing I was thinking

10      we could add to it is if we did just a

11      list of the case numbers, if we could put

12      relative to what the precedential case is

13      so that people who see that there are

14      cases out know what it is about, and then

15      they can go find the case.

16              JUDGE NICOLOSI:  Yeah.  Yeah, there

17      could be a little --

18              MS. DODGE:  So if they have --

19              JUDGE NICOLOSI:  -- summary, like,

20      just what the subject matter, what the

21      legal issue is --

22              MS. DODGE:  Exactly.

23              JUDGE NICOLOSI:  -- in the case,

24      so --

25              MS. DODGE:  And that way --



Domestic Violence Task Force - 1/18/22

1           JUDGE NICOLOSI:  -- like, with the

2       docket number.  And then we could know,

3       at least, what the courts addressed,

4       sufficiency of --

5           MS. DODGE:  Right.

6           JUDGE NICOLOSI:  -- evidence or

7       interpretation of the statute or some

8       little blurb.

9           MS. DODGE:  Yeah.  And it's not just

10       this long list of cases.

11           JUDGE NICOLOSI:  Yeah.

12           JUSTICE HANTZ MARCONI:  Right.

13           MS. PAINE:  I think, though, one of

14       the underlying pieces here is the gap

15       between the sort of public understanding

16       of IPV and what it takes to get a

17       protective order.  And we would do this

18       to try to close the gap and to provide

19       the language that the court is using when

20       it upholds the issuance of a order of

21       protection.

22           And the problem that if there's

23       going to be a working group would need to

24       think about is that's a constant.  And to

25       keep training materials updated for

Domestic Violence Task Force - 1/18/22

1        practitioners, for advocates, for -- and

2        how to keep any sort of public

3        information for those petitioners who

4        aren't going to seek counsel or an

5        advocate, how do we -- how do we even

6        give them the tools that they need and

7        keep whatever it is as up to date as

8        judges are?

9            And I think one of the gaps that

10       opened up in the case that started this

11       was the gap between what was understood

12       on one side of the counter and the

13       driving factors of all of the opinions

14       that were being considered.

15           JUSTICE HANTZ MARCONI:  Again, I

16       almost get, too, in the handout materials

17       that are routinely disseminated -- you're

18       right, keeping up to date on what can,

19       what does, and what doesn't constitute a

20       basis for relief under 173-B may be an

21       opportunity to do some of that educating,

22       drawn from these cases.

23           I don't see members of the public

24       doing that sort of analysis.  I do see

25       that coming from an entity that is in the



Domestic Violence Task Force - 1/18/22

1     business of preparing those materials.

2     Some of that comes from the court.  A lot

3     of it comes from other -- where's Pam --

4     from other agencies that are tasked with

5     preparing those materials.

6          JUDGE NICOLOSI:  And we talked last

7     time about doing some sort of guided

8     interviews, elicit information, which I

9     think is a fabulous idea because it

10    allows structure for people to fill in

11    information that might be informed a

12    little by people -- by the Supreme Court

13    cases.

14         What I find with -- in a lot of the

15    cases -- and I don't do many, at this

16    point, in the Superior Court, but we talk

17    about either getting too much or too

18    little.  And there's really truth to that

19    because you have to kind of get

20    (indiscernible) enough in a thirty-minute

21    hearing to be able to focus people.

22         And it's hard to do that with making

23    people not -- trying to get -- allow

24    people to feel heard but to try and guide

25    them.  And if there was some sort of



Domestic Violence Task Force - 1/18/22

1      questionnaire or something that would

2      help people do that, I think that

3      would -- maybe we could respond in --

4      with those questions to the legal issues

5      that have come up from the people who do

6      know, do follow it.

7          We talked -- I was listening to us

8      talking about the -- that the belief that

9      there has to be an injury that happens or

10     an event that happens that's recent.

11     It's just not consistent with the

12     language of the statute.  That may

13     satisfy one part of the proof.  But a

14     judge should really be looking at the

15     whole history of the relationship for

16     deciding whether or not there's some sort

17     of real risk of harm.

18         And but those you could break down

19     into questions, I think, which would help

20     the judges, too, make a good decision.

21         JUSTICE HANTZ MARCONI:  Yeah.

22         MR. STRASBURGER:  This is Jon

23     Strasburger.  I would support if there is

24     a way to publish even the nonprecedential

25     opinions.  As somebody who litigates both



Domestic Violence Task Force - 1/18/22

1        sides of these cases on a regular basis,

2        I think if there's a way to scrub the

3        opinions so that they are compliant with

4        the Violence Against Women Act, it would

5        make sense to make them available.

6            I mean, based upon my review of the

7        report from the internal review that was

8        done, it looks like there are memos that

9        are regularly circulated amongst the

10       bench.  And I would think it would make

11       sense for both the public and for

12       advocates and attorneys to have that

13       information.

14           I hear everybody's concerns about

15       making sure that identities of litigants

16       are not at risk.  I think that's a

17       significant concern.  But just to mirror

18       what Lyn was saying, I think if members

19       of the public and even counsel are

20       limited to looking at opinions on a

21       kiosk, that's going to make the access to

22       the information pretty difficult to get.

23           So I would just say if it's

24       something that's going to be circulated,

25       if these are opinions that are going to

Domestic Violence Task Force - 1/18/22

1      be circulated amongst the bench, I would

2      think it would be helpful for attorneys

3      and advocates and members of the public

4      who have to participate in this process

5      to have access to that information.

6           JUSTICE HANTZ MARCONI:  Well, and

7      the other thing I don't know -- and I'll

8      put Judge Carbon on the spot.  I don't

9      know how long -- again, I think of my --

10     I started practice with no internet at

11     all.

12          And my former partner, Morgan

13     Hollis, would say, remember the good old

14     days when you would dictate a letter, get

15     typed up, mail to the other side, and

16     you'd have a few days to, like, relax

17     before the response came back with the

18     amending contract, and then you picked it

19     up again, and things happened at a much

20     slower pace.

21          I don't know, in the olden days, how

22     many of those orders got circulated among

23     the bench.  But now, in this world that

24     we live in, they are.  And so it has

25     created this sort of -- a different level

Domestic Violence Task Force - 1/18/22

1          of information sharing that only went so

2          far.

3               So I don't know if Judge Carbon can

4          speak to that at all, but I surmise

5          there's a bit of a difference.

6               JUDGE CARBON:  Well, certainly, now,

7          with having internet capability and being

8          able to email, judges have listservs like

9          the lawyers do, and we share information.

10         We also have some staff attorneys who

11         routinely do summaries of the most

12         significant cases.  So that's another way

13         that they're brought to our attention

14         quickly.

15              But we always read decisions that

16         come out, of course, to be updated on

17         them.  But these are pieces of

18         information that are more readily

19         accessible to us than they were in the

20         past.  And that's just very helpful for

21         us, keeping current, but it means that

22         you've got the bench that may be more

23         current with what's going on than the bar

24         and the public.  I think there's the rub

25         that is the concern dealing with here.



Domestic Violence Task Force - 1/18/22

```
 1              JUSTICE HANTZ MARCONI:  Yeah.  I

 2         find this.  You look at big trends.  And

 3         this is me, and you'll probably get sick

 4         of this.  But I look at things sort of

 5         over time.  And I won't go too far

 6         afield, but I think it was Steve Forbes

 7         did a really wonderful speech, once,

 8         about the Industrial Revolution bringing

 9         people together in close proximity and

10         the internet spreading people out but

11         also providing almost more intimate

12         interaction with information.

13              So I see this point where we are

14         right now as a confluence of many

15         factors.  So that's my Philosophy 101, if

16         you're (audio interference).

17              MR. ENDRES:  Another thing I'm

18         thinking about with information on the

19         internet is the Supreme Court livestreams

20         a lot of their oral arguments now.  And

21         I'm wondering are domestic violence cases

22         that are having oral arguments in front

23         of the Supreme Court being livestreamed,

24         and if so, if that violates the Violence

25         Against Women Act.
```



Domestic Violence Task Force - 1/18/22

1            JUDGE NICOLOSI:  A great question.

2            JUSTICE HANTZ MARCONI:  And this is

3       interesting.  They're public, so my --

4       and I'll be corrected by everybody else

5       who works here.  But if a domestic

6       violence case is argued, it would be

7       argued without reference to any

8       identifying information.  So it's person

9       A, person B, and no other.  And lawyers

10      are instructed, and we are instructed,

11      and no one asks any identifying

12      questions.

13           Often or alternatively, if they're

14      done on a submit basis, then, of course,

15      there is no argument.  But the argument

16      itself would be livestreamed because it's

17      not a confidential case.  So we only so-

18      called clear the courtroom and limit the

19      livestream if it's a statutorily

20      confidential case.

21           MS. LAFRANCE:  So I have a quick

22      question/comment.  As we're talking about

23      what information to put, how much

24      information to put out there, as I read

25      VAWA, that particular section about

Domestic Violence Task Force - 1/18/22

 1          publicly identifying individuals, what's

 2          the remedy?  And what if the disclosure

 3          is inadvertent?  There's no mens rea, if

 4          you will, in that statute.

 5               Is it only a state can't knowingly

 6          put the information out there?  What if

 7          we come up with this brilliant way to

 8          scrub everything that would identify a

 9          victim, put all the opinions, whether

10          they're precedential or not, out there,

11          and then whoever's doing the redacting or

12          whatever needs to be done misses

13          something?  What is the remedy?  Do we

14          remove it?  Do we correct it?  Is there

15          some type of slap on the wrist?  What do

16          we do?

17               JUSTICE HANTZ MARCONI:  It's a good

18          question.

19               MS. LAFRANCE:  I don't see that in

20          the VAWA, right?  It doesn't say what the

21          remedy is.  It just says, don't do it.

22               JUSTICE HANTZ MARCONI:  Right.

23          Maybe Merrick Garland comes and -- I

24          don't know -- shuts us down.  It's a very

25          good question.  Then we could have a big



Domestic Violence Task Force - 1/18/22

1      federalism and have a big court case.

2      But I think it's -- I mean, it says

3      "shall".  But you're right.  If someone

4      misses it, who knows?

5          If it's a -- and again, for a couple

6      of years, we were posting until we

7      realized we shouldn't be posting.  And

8      maybe we should have thought longer and

9      harder about alternatives to not posting.

10     But that's a very good question for which

11     I have no answer.

12         Amanda, do you have any idea of what

13     the thought was?  Weren't you involved

14     with this, or at least amendments

15     thereto?  No?

16         MS. SEXTON:  I'm not sure I read

17     that provision the same way.  I think I

18     might be in the same boat as Steve.  But

19     I think that there's clearly a way to

20     work through this.  I think it's going

21     to -- we could continue to have this

22     discussion for many hours.

23         So I do think it makes sense to have

24     a recommendation that a group of diverse

25     stakeholders take a look at how we can



Domestic Violence Task Force - 1/18/22

1     make sure that people have the critical

2     information that they need without

3     putting survivors in future danger.

4          But I think that that will take some

5     time, and I think that it is a good

6     recommendation that should move forward

7     from this committee.  That's how I

8     personally feel.

9          JUSTICE HANTZ MARCONI:  Great.

10          MS. FREEMAN:  What about publication

11     in the "Bar News" in a way that's not

12     necessarily published on the website but

13     goes out in the printed document that is

14     accessible to the -- all the lawyers out

15     there, and especially the lawyers who are

16     creating material that are used by

17     survivors and advocates to inform the

18     process?

19          I don't know of the logistics of

20     that, but there are other ways to get the

21     information to lawyers that don't involve

22     the internet that are not as part of a

23     summons going to the Supreme Court.

24          MS. LAFRANCE:  I would say I'm not

25     sure if the New Hampshire Bar has the

Domestic Violence Task Force - 1/18/22

1      bandwidth to handle that.  I mean,

2      that's -- that would increase their --

3      the "Bar News" significantly, right, if

4      you're putting all these opinions in

5      there.

6           JUSTICE HANTZ MARCONI:  Well, and we

7      may not -- and I should have done my

8      homework in terms of annual numbers of

9      our cases, which I don't think I did.

10     But whether they could do it from time to

11     time, I don't know.  It's an interesting

12     concept.

13          MS. DODGE:  Well, and that was one

14     of the other things that I was wondering

15     is if the -- if it's not the court's

16     website that's going to be the

17     clearinghouse for this information, what

18     would be the appropriate resource?  Where

19     is somebody going to go to get this

20     information?

21          And I don't -- I think about

22     survivors and where they would typically

23     go.  And it's probably their local crisis

24     center or to the New Hampshire

25     Coalition's website, so I -- and I'm not



Domestic Violence Task Force - 1/18/22

1          trying to say that's what should happen,

2          but I'm just trying to think, down the

3          road, if this information isn't on the

4          court's website, where is it going to be?

5                  JUSTICE HANTZ MARCONI:  Interesting

6          concept for a workaround, maybe.

7                  MS. DODGE:  Well, yeah.  I mean, and

8          perhaps the court's website could publish

9          the case numbers in a quick blurb and

10         then direction about you can seek support

11         from your local crisis center or visit

12         the Coalition's website for more

13         information on how to access information

14         on Supreme Court decisions.

15                 MS. KRUEGER:  I like the idea of

16         having the recommendation -- I second

17         what Amanda said about having a group

18         work on this.

19                 When we discuss this within NHLA and

20         our advocates, it inevitably leads to the

21         question that Sarah Freeman also brought

22         up of once you know that there is an

23         order, then you can do some digging to

24         pretty quickly figure out who people are.

25         I mean, you just look at the briefs,

Domestic Violence Task Force - 1/18/22

1       right?  Like, we're not, as attorneys,

2       told to scrub our briefs

3            JUSTICE HANTZ MARCONI:  Right.

4            MS. KRUEGER:  And so you can easily,

5       if you wanted to, go to the Supreme Court

6       and figure out who people are.  So how

7       far -- and that gets a little afield of

8       the VAWA provision, which is what it is.

9       And if you're going to follow it, that's

10      what you need to do.

11           But there's these other issues that

12      inevitably come up about the ability to

13      identify a victim and find a victim,

14      based on the public court record.  And so

15      I don't know how we can have this

16      conversation without having that one.

17           JUSTICE HANTZ MARCONI:  Well, that's

18      the other point.  Is there a missing link

19      here?  Should these be confidential

20      cases?  That, again, is a -- that could

21      be something for the legislature, but

22      they aren't right now.

23           So I agree there might be a larger

24      discussion to be had, which brings me to

25      something I've been remiss of announcing



Domestic Violence Task Force - 1/18/22

1       or requesting of this group.  But as we

2       move through these topics, we and the

3       working group are collecting all these

4       thoughts -- they aren't just evaporating

5       into thin air -- and will be working on

6       fleshing out some recommendations.

7              And not today, but what I'm going to

8       want is some volunteers for each of these

9       topics to work with the working group to

10      flesh out our recommendations that'll

11      then be circulated to everyone.

12             But I want folks who are invested or

13      have ideas or have thought this through,

14      like NHLA, on various topics to sort of

15      be the touchstone for the worker bees who

16      are going to be doing some of the writing

17      so that we don't have twenty people

18      trying to write a report, which would be

19      like trying to create -- like, a horse by

20      committee ends up being a camel or

21      something like that.

22             So with this particular issue, if

23      NHLA has been thinking about it, maybe

24      you volunteer to spend some time on it

25      with my working group.  And with others,

Domestic Violence Task Force - 1/18/22

1        as to any other topics that we have

2        covered or will cover, I'm going to be

3        looking for one or two or three folks to

4        volunteer.

5              MS. KRUEGER:  Absolutely.

6              JUSTICE HANTZ MARCONI:  Good.

7              MS. KRUEGER:  We're here.

8              JUSTICE HANTZ MARCONI:  Good.

9        Anything else on this?  Any other

10       thoughts on this particular topic?

11             And I'll just throw out, although

12       wasn't exactly in our purview, but there

13       is no central posting of trial court

14       orders, although they're, in this

15       instance, form orders in a way, although

16       some have narrative aspects to them.  So

17       that may be something that as the future

18       unfolds, and maybe as we get to e-Filing,

19       is something that needs to be kept on our

20       radar screen.

21             Okay.  Anything else from anyone

22       else?  You're all ready to call it a day.

23       All right.  Thanks so much.  I've been

24       getting, as you know, not to overwhelm

25       you, but in some quiet moment, go to the

Domestic Violence Task Force - 1/18/22

 1       Dropbox.  We've been getting lots of

 2       information, which I'm kind of amazed at

 3       the extent of information that's out

 4       there but not all in one repository.

 5            So that may give us another

 6       recommendation at some point.  But we are

 7       uploading stuff as we get it, and keep it

 8       coming.

 9            JUDGE NICOLOSI:  And one of the

10       (audio interference) we discussed at the

11       last meeting -- and it didn't make its

12       way to the notes -- was the continuation

13       of a CBPO after somebody's convicted of a

14       crime so that there's some immediate

15       response from law enforcement.  And I

16       wasn't sure whether that would butt up

17       against any sort of federal law that

18       people knew, or if that's a statute that

19       would require a statutory change.

20            We've been batting around a little

21       bit the idea of continuing a case without

22       a finding so there's a CBPO that

23       continues.  But that's not really a good,

24       functional way of doing it.  But it's

25       really a very good point that we issue



Domestic Violence Task Force - 1/18/22

1        these no-contact orders.  They're only

2        effective with a suspended sentence, and

3        there's really no emergency response or

4        generation nationally of the orders.  So

5        we could put that on --

6             MS. PAINE:  Judge Nicolosi, when we

7        created the CBPOs, we did it through the

8        bail statute.  So there's -- that's the

9        statutory authority for the CBPO.  And --

10            JUDGE NICOLOSI:  Um-hum.

11            MS. PAINE:  -- in -- when we did it,

12       we did discuss the hope, probability,

13       possibility that there could be a

14       sentencing protective order that would

15       then have a life after the bail statute's

16       jurisdiction sort of ran out.

17            JUDGE NICOLOSI:  Yeah.

18            MS. PAINE:  But I think it would

19       require a statutory change.

20            JUDGE NICOLOSI:  Yeah.  That might

21       be a good thing to keep on the list.

22            JUSTICE HANTZ MARCONI:  Right.  I

23       think it could be a good thing to put on

24       our radar, a recommendation and perhaps a

25       suggestion as to who might be involved in

Domestic Violence Task Force - 1/18/22

1       that, going forward.  If it is sort of

2       from the bail perspective or corrections,

3       whatever, there may be folks outside of

4       our task force that are going to need to

5       be involved.

6               JUDGE NICOLOSI:  Um-hum.  Okay.

7               JUSTICE HANTZ MARCONI:  All right.

8       Good chat.  Thank you, all, again.  I

9       sound like a broken record, but I think

10      we are casting a wide net.  So lots of

11      projects that I've been involved in --

12      this is one of them -- things get really,

13      really, really wide, and then it's like,

14      oh my God, this is never going to get to

15      a place where it's going to produce

16      anything effective.

17          But I see this going wide and then

18      getting focused.  And I think we're going

19      to have some good outcome, just me.  So

20      thanks again for your patience.  Thanks

21      for putting up with me and the structure.

22      And I appreciate your attention.  And we

23      will meet again shortly, like tomorrow.

24      Goodbye.

25              MR. VICINANZO:  Yeah.  Thank you,



Domestic Violence Task Force - 1/18/22

1       Justice.

2              INV. BERNIER:   Good night,

3       everybody.

4              (End of audio)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



1                 C E R T I F I C A T I O N

2

3          I, Cheryl Odom, certify that the

4          foregoing transcript is a true and

5          accurate record of the proceedings.

6

7

8

9          _____

10         Cheryl Odom (CDLT-186)

11         TTA-Certified Digital Legal Transcriber

12

13         eScribers

14         352 Seventh Avenue, Suite #604

15         New York, NY 10001

16

17         Date:  March 2, 2022

18

19

20

21

22

23

24

25



### A

**ability** 46:12
**able** 11:17 34:21
  38:8
**Absolutely** 48:5
**access** 14:20
  22:15 29:25
  36:21 37:5
  45:13
**accessible** 14:4
  14:13 30:3
  38:19 43:14
**accountability**
  19:12,17,25
**accurate** 53:5
**act** 6:11 7:16
  16:12,16 17:25
  20:21 26:16
  27:10 36:4
  39:25
**acts** 9:13
**add** 31:10
**adding** 31:7
**addition** 13:22
**addressed** 32:3
**addresses** 24:7
**addressing** 5:4
**Administrator**
  2:21
**adopt** 27:16
**advocate** 13:21
  14:6 30:13
  33:5
**advocates** 14:7
  14:10 15:20
  23:13 31:7
  33:1 36:12
  37:3 43:17
  45:20
**Affairs** 2:12
**afield** 39:6 46:7
**age** 6:3
**agencies** 10:20
  10:22 34:4
**agency** 6:21
**aggregate** 20:5
**agree** 17:1 19:20
  46:23
**ahead** 29:16,17

**air** 47:5
**alert** 15:18
**allow** 20:18
  34:23
**allowed** 6:21
**allows** 34:10
**alternative**
  23:20
**alternatively**
  40:13
**alternatives**
  42:9
**Amanda** 2:11
  42:12 45:17
**amazed** 49:2
**amending** 37:18
**amendments**
  42:14
**analysis** 33:24
**and/or** 8:23
**anecdotal** 3:17
  3:21 20:4
**Ann** 1:25
**Anna** 1:12
**Anne** 2:25 4:4
  13:14
**announcing**
  46:25
**annual** 44:8
**answer** 42:11
**anticipate** 5:8
**anybody** 28:8
**apparent** 5:23
**appeal** 8:2
**appellate** 3:6
  5:16,24
**applicable** 9:18
**application** 9:23
**apply** 11:19
**applying** 9:12
  12:15
**appreciate** 4:4
  13:10 51:22
**appreciated**
  13:11
**appropriate**
  44:18
**area** 11:22
**argued** 40:6,7

**argument** 40:15
  40:15
**arguments**
  39:20,22
**articulate** 9:2
**asks** 40:11
**aspects** 48:16
**Assistance** 2:4
  7:4 20:12
**Assistant** 1:23
**Associate** 1:13
**Association** 2:7
  2:14
**assume** 4:19
  5:14
**assure** 4:5
**attention** 4:2
  38:13 51:22
**attorney** 1:23
  2:1,2,15,16,18
  13:21
**Attorney's** 1:22
**attorneys** 2:14
  8:14 16:1
  36:12 37:2
  38:10 46:1
**audio** 3:22 4:25
  39:16 49:10
  52:4
**authority** 50:9
**available** 8:24
  10:8 12:9 25:3
  26:13,20 29:11
  36:5
**Avenue** 53:14
**aware** 27:19

### B

**B** 40:9
**back** 3:11 11:25
  14:25 37:17
**bad** 29:1
**bag** 21:25
**bail** 50:8,15 51:2
**balancing** 26:16
**ball** 11:24
**bandwidth** 44:1
**bar** 30:12,17
  38:23 43:11,25

**44**:3
**Barbara** 1:12
**Barton** 1:17
**based** 16:11
  36:6 46:14
**basis** 8:8 21:2
  33:20 36:1
  40:14
**batting** 49:20
**Beauchamp**
  1:18
**becoming** 11:23
**Beebe** 1:20
**bees** 47:15
**beginning** 3:3
  4:10 5:3
**belief** 35:8
**Belknap** 1:21
**bench** 36:10
  37:1,23 38:22
**Bernier** 1:21
  52:2
**best** 9:2 13:13
**Betsy** 2:18
**better** 16:25
**big** 39:2 41:25
  42:1
**bit** 10:17 17:11
  20:9 38:5
  49:21
**Black** 2:16
**blather** 27:13
**blurb** 32:8 45:9
**boat** 42:18
**body** 12:2
**bottom** 27:14
**brain** 24:5
**break** 35:18
**briefs** 45:25
  46:2
**brilliant** 41:7
**bringing** 4:1,1
  18:24 39:8
**brings** 46:24
**Broderick** 15:1
**broken** 51:9
**brought** 38:13
  45:21
**business** 34:1

**butt** 49:16

### C

**C** 53:1,1
**call** 4:14 48:22
**called** 4:4 40:18
**camel** 47:20
**capability** 38:7
**Carbon** 1:14
  37:8 38:3,6
**card** 15:14
**career** 24:18
**CASA** 2:18
**case** 5:21 7:8,10
  8:10,13,20
  9:16 11:9,13
  12:6 15:16
  17:15,18 18:24
  21:7,7 22:1
  23:2 25:18
  27:8,14,21
  28:13,25 29:4
  29:7,22 31:11
  31:12,15,23
  33:10 40:6,17
  40:20 42:1
  45:9 49:21
**caselaw** 12:3
**cases** 8:15,17 9:2
  10:10 16:18
  17:3 26:17
  31:14 32:10
  33:22 34:13,15
  36:1 38:12
  39:21 44:9
  46:20
**casting** 51:10
**cat's** 21:25
**CBPO** 49:13,22
  50:9
**CBPOs** 50:7
**CDLT-186**
  53:10
**center** 44:24
  45:11
**central** 48:13
**certain** 17:23
  19:8 27:11
**certainly** 8:1

10:23 11:1
12:24 14:10
17:1,22 22:23
23:9 26:4 38:6
**certify** 53:3
**challenge** 25:23
26:17
**challenging**
14:13
**change** 20:13
29:2 49:19
50:19
**changing** 14:22
**characteristics**
28:22
**charge** 6:2 11:11
**chat** 51:8
**check** 8:7
**Cheryl** 53:3,10
**Chief** 15:1
**Chiefs** 2:8
**circle** 3:11
**circuit** 1:14,16
1:17 2:20
17:14,17 19:22
28:9
**circuits** 25:19
**circulate** 22:20
**circulated** 7:24
10:16 13:12
36:9,24 37:1
37:22 47:11
**circumstances**
22:2
**cited** 9:10
**clear** 40:18
**clearinghouse**
44:17
**clearly** 42:19
**clerk** 1:17 2:25
26:2
**close** 32:18 39:9
**Coalition** 2:10
2:12
**Coalition's**
44:25 45:12
**collaborative**
14:15
**collecting** 47:3

**come** 7:5 13:19
13:20 17:10
22:24 29:3
35:5 38:16
41:7 46:12
**comes** 28:15
34:2,3 41:23
**coming** 7:7 21:1
33:25 49:8
**comments** 4:21
5:12
**committee** 43:7
47:20
**communities**
18:3
**community** 25:9
25:12 26:7
28:23
**completely**
13:19
**compliant** 36:3
**complicate** 20:8
**complicated**
13:17
**concept** 9:7
44:12 45:6
**concepts** 12:16
**concern** 36:17
38:25
**concerns** 36:14
**confidential**
27:20 29:7,8,9
40:17,20 46:19
**confluence**
39:14
**considered**
21:14 33:14
**consistent** 35:11
**constant** 32:24
**constitute** 33:19
**continuation**
49:12
**continue** 21:10
26:4 42:21
**continues** 49:23
**continuing**
49:21
**contract** 12:16
37:18

**conundrum**
10:23
**conversation** 4:3
11:21 13:23
46:16
**convicted** 49:13
**copies** 10:11
27:25
**copy** 8:1
**correct** 41:14
**corrected** 40:4
**corrections** 51:2
**counsel** 7:25
9:21 33:4
36:19
**counter** 33:12
**County** 1:22,23
1:24,25
**couple** 42:5
**course** 13:18
38:16 40:14
**court** 1:13,14,15
1:16,17 2:20
3:7,15 4:12,16
5:17 6:8 7:20
7:24 8:7,9 9:1
10:9,11,15
11:15,16 12:6
12:13 13:19
15:21 16:18
19:22 21:20
23:3,14 25:10
26:15 27:24
28:7,7,15,19
29:4 32:19
34:2,12,16
39:19,23 42:1
43:23 45:14
46:5,14 48:13
**court's** 10:3
44:15 45:4,8
**courtroom**
40:18
**courts** 13:25
28:9 32:3
**cover** 48:2
**covered** 48:2
**craft** 9:2
**create** 47:19

**created** 37:25
50:7
**creating** 43:16
**crime** 49:14
**Criminal** 2:14
**crisis** 44:23
45:11
**critical** 43:1
**criticism** 3:16
**curious** 17:20
**current** 38:21
38:23

_____
**D**
**danger** 43:3
**date** 33:7,18
53:17
**David** 2:7,15
**day** 11:25 48:22
**days** 37:14,16,21
**dealing** 38:25
**dealt** 15:25
**decided** 9:1
**deciding** 35:16
**decision** 8:13
11:14 19:5
35:20
**decisions** 3:6,8
5:17,24 6:24
16:24 38:15
45:14
**defendant** 17:6
28:12
**Defense** 2:14
**designed** 20:21
**detail** 25:13
**developing**
15:11
**Diane** 1:15
**dictate** 37:14
**difference** 38:5
**different** 23:7
28:21 29:23
37:25
**difficult** 36:22
**digging** 7:14
12:5 45:23
**Digital** 53:11
**direct** 5:11

**direction** 45:10
**Director** 1:18,20
2:3,5,9,11,24
**disclosure** 41:2
**discuss** 45:19
50:12
**discussed** 49:10
**discussion** 14:18
26:3 42:22
46:24
**discussions** 3:24
**disseminate**
7:17
**disseminated**
33:17
**distinction** 9:4
9:15 12:10
**district** 17:18
**diverse** 42:24
**division** 17:18
**divulged** 22:9
**docket** 32:2
**document** 43:13
**Dodge** 2:19
29:12,15,17
31:9,18,22,25
32:5,9 44:13
45:7
**doing** 3:21 13:12
16:15 20:7
23:19 33:24
34:7 41:11
47:16 49:24
**DOJ** 2:4
**domestic** 1:6
2:22 3:5 5:15
17:3,4 39:21
40:5
**DOVE** 2:15,19
16:1
**drawn** 15:16
33:22
**driving** 33:13
**Dropbox** 49:1
**DV** 2:24 10:9
27:25 29:4
**dynamic** 29:2

_____
**E**

e- 6:5
E 53:1
e-Filing 48:18
earlier 3:20
early 22:1
ears 4:9
easily 46:4
easy 25:20 28:6
educating 33:21
effective 50:2
    51:16
effort 5:12 20:25
    30:8
either 34:17
electronic 6:3
element 9:6
elicit 34:8
elongated 4:3
email 3:19 38:8
emanate 15:10
emanated 17:19
emanating 13:2
emergency 50:3
Endres 1:23
    16:5,5 18:22
    39:17
ends 47:20
enforcement
    24:11 49:15
entities 4:17
entity 33:25
equally 8:24
Erin 2:24
eScribers 53:13
esoteric 17:12
especially 43:15
establish 9:6
evaporating
    47:4
event 35:10
everybody 30:19
    40:4 52:3
everybody's
    36:14
everything's
    29:9
evidence 32:6
evolution 12:8
evolving 6:4

exact 10:18
    16:21 17:24
exactly 31:22
    48:12
example 9:20
    18:2 22:23
    24:5,10
exchange 3:13
Executive 1:20
    2:9
existed 9:15
    30:7
expect 8:15
exposure 23:22
extent 49:3
eyes 26:10

F

F 53:1
fabulous 34:9
faced 16:21
facilitate 16:4
fact 15:17 17:17
    28:10
fact-driven 9:18
factors 33:13
    39:15
facts 9:23
fall 16:22
far 38:2 39:5
    46:7
federal 49:17
federalism 42:1
feedback 5:13
feel 34:24 43:8
felt 14:8
fifty 16:20
figure 10:17
    20:19 25:21,25
    45:24 46:6
figured 7:12
figuring 17:7
filed 21:15 22:3
filing 6:6 21:12
fill 34:10
find 7:11 12:4,6
    31:15 34:14
    39:2 46:13
finding 49:22

five 15:3,4
fix 29:1
flags 15:5
flesh 47:10
fleshing 47:6
flip 28:8
flipped 19:3
focus 3:4 34:21
focused 51:18
folks 15:5,6
    47:12 48:3
    51:3
follow 35:6 46:9
follow- 29:19
following 19:15
Forbes 39:6
force 1:6 3:3 4:5
    4:14,19,25
    5:22 7:6 13:3
    15:10 51:4
foregoing 53:4
form 48:15
former 15:1
    37:12
forms 14:18
forward 5:10
    43:6 51:1
fourth 3:3
frankly 3:6
    11:21
Freeman 2:20
    27:19,23 28:3
    43:10 45:21
front 18:25 19:4
    39:22
front-line 31:7
fruit 6:15
functional 49:24
fundamentals
    14:11
funders 20:13
further 7:14
future 5:12 43:3
    48:17

G

gap 14:9 32:14
    32:18 33:11
gaps 4:14 33:9

Garland 41:23
gee 25:19,23
generation 50:4
getting 34:17
    48:24 49:1
    51:18
give 33:6 49:5
given 6:9
glad 11:5
glaring 9:20
go 5:12 6:20
    9:16 15:23
    23:1,14 26:11
    28:1 29:16,17
    30:8 31:15
    39:5 44:19,23
    46:5 48:25
goal 4:12,13
God 51:14
goes 15:2 43:13
going 5:9 18:8
    19:3 20:24
    25:15 32:23
    33:4 36:21,24
    36:25 38:23
    42:20 43:23
    44:16,19 45:4
    46:9 47:7,16
    48:2 51:1,4,14
    51:15,17,18
good 3:22 7:19
    24:15 28:16
    35:20 37:13
    41:17,25 42:10
    43:5 48:6,8
    49:23,25 50:21
    50:23 51:8,19
    52:2
Goodbye 51:24
government
    6:21 10:22
governor 24:20
Grady 2:11
Grafton 1:25
granted 22:4
great 13:15 40:1
    43:9
group 2:17
    30:25 32:23

42:24 45:17
    47:1,3,9,25
Gudas 26:2
guess 16:6,11
    18:10,14 29:21
guidance 9:11
    12:17,25 13:7
    14:2
guide 5:11 11:17
    15:22 34:24
guidebooks
    14:16
guided 15:12
    34:7

H

Hampshire 1:13
    2:10,12,13 7:4
    20:11 28:23
    43:25 44:24
Hampton 2:5,7
handle 44:1
handout 14:17
    33:16
Hantz 1:12 3:1
    9:3 10:24,25
    11:4,20 13:8
    14:23 17:9
    21:19 22:13,18
    22:22 23:6,17
    24:10,13,15,22
    25:1,24 26:21
    27:1,4,7,22
    28:2,24 30:5
    30:16 31:5,8
    32:12 33:15
    35:21 37:6
    39:1 40:2
    41:17,22 43:9
    44:6 45:5 46:3
    46:17 48:6,8
    50:22 51:7
happen 45:1
happened 37:19
happens 24:3
    35:9,10
happy 7:1
hard 8:3 34:22
harder 17:7

42:9
**harm** 35:17
**Haven** 1:20
**head** 26:2
**health** 15:2,5,7
**hear** 4:22 7:1
　36:14
**heard** 4:7,8 7:10
　34:24
**hearing** 3:16 7:6
　21:8,24 34:21
**Held** 1:8
**help** 8:13 16:1
　35:2,19
**helpful** 37:2
　38:20
**high** 30:12,17
**highlights** 15:14
**history** 35:15
**Hobbs** 2:7
**Hollis** 37:13
**home** 18:2
**homework** 5:15
　44:8
**Hon** 1:12,14,15
　1:16
**hope** 4:18 50:12
**Hornick** 1:25
　25:15
**horse** 47:19
**hours** 42:22

**I**

**i.e** 12:11
**idea** 28:14 34:9
　42:12 45:15
　49:21
**ideas** 47:13
**identify** 4:14,20
　17:11,14,15,17
　20:14,22 24:9
　25:13 26:8
　28:6 41:8
　46:13
**identifying** 6:14
　6:22 7:17 8:23
　11:2 17:13
　18:2,4 24:2,18
　28:18 40:8,11

41:1
**identities** 18:20
　36:15
**identity** 25:6
**immediate**
　49:14
**immigration**
　28:21
**impact** 13:24
　14:18
**important** 18:17
**improvement**
　16:3
**inadvertent** 41:3
**including** 31:6
**increase** 44:2
**indicate** 3:14
**indicated** 9:25
**indiscernible**
　34:20
**individuals** 41:1
**Industrial** 39:8
**inevitably** 45:20
　46:12
**influence** 11:13
**influential** 11:9
**inform** 3:23
　43:17
**information**
　3:17,23 6:14
　6:22 7:18 8:23
　11:2 12:9
　13:14 14:3,9
　16:25 17:13
　18:9,11 20:4,6
　20:14 21:6,9
　22:9,16 23:25
　24:3,4 28:10
　28:11,18 33:3
　34:8,11 36:13
　36:22 37:5
　38:1,9,18
　39:12,18 40:8
　40:23,24 41:6
　43:2,21 44:17
　44:20 45:3,13
　45:13 49:2,3
**informed** 34:11
**initial** 21:12

**initials** 8:19 17:2
　18:9 28:5
**initiative** 15:3
**injury** 35:9
**input** 5:13 31:3
**instance** 48:15
**instructed** 40:10
　40:10
**interacting** 15:6
**interaction**
　39:12
**interested** 3:16
　26:3
**interesting**
　10:23 14:24
　25:2 40:3
　44:11 45:5
**interestingly**
　16:6
**interference**
　3:22 4:25
　39:16 49:10
**internal** 5:21
　36:7
**internet** 6:25
　7:19 10:16
　12:1 16:10
　22:11,14 23:4
　25:4 26:12
　30:10 37:10
　38:7 39:10,19
　43:22
**interpret** 16:19
**interpretation**
　12:17,23 32:7
**interview** 15:12
**interviews** 34:8
**intimate** 39:11
**intranet** 22:19
**INV** 52:2
**invested** 47:12
**Investigator**
　1:21
**involve** 43:21
**involved** 7:25
　42:13 50:25
　51:5,11
**involvement** 5:8
**IPV** 32:16

**issuance** 32:20
**issue** 3:4 5:20
　7:2 10:5 13:1
　13:17 16:22
　17:21 20:16
　24:7 27:19
　30:23 31:21
　47:22 49:25
**issued** 8:5,9
　11:15 21:16,22
　21:23 22:5
　28:25
**issues** 3:18 4:6
　5:4,7 15:6,7
　35:4 46:11
**it'll** 14:17

**J**

**J.M** 7:8
**January** 1:7
**Jasina** 2:24
**Jean** 2:22
**job** 13:15
**John** 1:16
**Jon** 2:13 35:22
**judge** 1:14,15,16
　17:16 18:12,17
　18:23,25 19:3
　19:7,10,14,15
　19:21,23 20:7
　21:4,21,22
　22:17,21 23:5
　23:16 31:16,19
　31:23 32:1,6
　32:11 34:6
　35:14 37:8
　38:3,6 40:1
　49:9 50:6,10
　50:17,20 51:6
**judges** 5:23
　19:12,23 22:16
　27:2 29:25
　33:8 35:20
　38:8
**July** 8:12
**jurisdiction**
　50:16
**justice** 1:13 3:1
　9:3 10:24,25

11:4,20 13:8
　14:23 15:1
　17:9 19:18
　21:19 22:13,18
　22:22 23:6,17
　24:10,13,15,22
　25:1,24 26:21
　27:1,4,7,22
　28:2,24 30:5
　30:16 31:5,8
　32:12 33:15
　35:21 37:6
　39:1 40:2
　41:17,22 43:9
　44:6 45:5 46:3
　46:17 48:6,8
　50:22 51:7
　52:1

**K**

**Kathy** 1:20
**keep** 13:13
　21:11 32:25
　33:2,7 49:7
　50:21
**keeping** 18:13
　18:20 33:18
　38:21
**kept** 48:19
**key** 24:6
**Kilham** 2:22
**kind** 13:22 24:2
　34:19 49:2
**kinds** 20:13
**kiosk** 22:24 23:1
　23:14 29:5
　36:21
**kiosks** 22:24
**knew** 49:18
**know** 4:3 5:5 8:4
　8:8,10,11,14
　8:16 11:10
　14:14,17 15:24
　19:4,14 26:24
　27:17,17 30:7
　31:14 32:2
　35:6 37:7,9,21
　38:3 41:24

43:19 44:11
45:22 46:15
48:24
**knowing** 18:23
29:21
**knowingly** 41:5
**knowledgeable**
14:7
**knows** 42:4
**Kristyn** 1:21
3:25
**Krueger** 2:2 7:3
7:3 10:24 11:4
19:9,20 22:10
22:14 26:18,22
27:2,5 45:15
46:4 48:5,7

———————
**L**
**L.C** 8:20
**L.S** 7:9
**LaFrance** 2:16
18:7,8 23:23
24:12,14,17,24
40:21 41:19
43:24
**language** 16:15
32:19 35:12
**larger** 46:23
**law** 2:17,25 9:12
9:23 12:11,21
24:11 49:15,17
**lawyer** 30:13,18
**lawyers** 12:4
15:20 20:10
38:9 40:9
43:14,15,21
**lay** 5:19
**leads** 45:20
**learn** 9:21 14:11
14:21
**learned** 7:14
**legal** 2:19 7:4
9:7 20:11 24:7
31:21 35:4
53:11
**legislature** 46:21
**let's** 5:16
**lethal** 22:4

**letter** 37:14
**level** 37:25
**life** 50:15
**limit** 40:18
**limited** 36:20
**limits** 4:11
**link** 18:4 46:18
**Lisa** 13:14
**list** 31:11 32:10
50:21
**listening** 35:7
**listservs** 38:8
**litigant** 12:18
**litigants** 8:15
9:21 12:25
30:4 36:15
**litigates** 35:25
**little** 6:1 10:17
20:8 31:17
32:8 34:12,18
46:7 49:20
**live** 37:24
**livestream** 40:19
**livestreamed**
39:23 40:16
**livestreams**
39:19
**local** 25:9,12
44:23 45:11
**location** 17:14
17:21,23 18:4
18:12 20:22
25:6 27:24
28:3
**locations** 25:22
**logical** 11:3
**logistics** 43:19
**long** 11:23,24
24:17 32:10
37:9
**longer** 42:8
**look** 4:17 5:10
11:23 12:14
13:3 15:11
16:2 25:18
26:12 27:11
29:4 30:25
39:2,4 42:25
45:25

**looked** 10:9
**looking** 10:7,19
13:4 18:16
23:22 25:16
27:3 35:14
36:20 48:3
**looks** 36:8
**lot** 5:8 9:24 12:5
13:13 28:21
30:15 31:1,2
34:2,14 39:20
**lots** 15:25 49:1
51:10
**love** 4:22 14:1
16:23
**low-hanging**
6:15
**Lyn** 2:9 13:9
29:13,17 36:18
**Lynda** 2:3

———————
**M**
**mail** 37:15
**making** 11:14
12:22 34:22
36:15
**Manager** 2:22
**March** 53:17
**Marconi** 1:12
3:1 9:3 10:25
11:4,20 13:9
14:23 17:9
21:19 22:13,18
22:22 23:6,17
24:10,13,15,22
25:1,24 26:21
27:1,4,7,22
28:2,24 30:5
30:16 31:5,8
32:12 33:15
35:21 37:6
39:1 40:2
41:17,22 43:9
44:6 45:5 46:3
46:17 48:6,8
50:22 51:7
**Martha** 1:25
**Mary** 1:17 2:2
7:3

**material** 43:16
**materials** 32:25
33:16 34:1,5
**matter** 31:20
**mean** 9:8 10:14
18:14 22:19
23:17 25:24
36:6 42:2 44:1
45:7,25
**meaningfully**
28:18
**means** 38:21
**meet** 51:23
**meeting** 1:6 3:2
3:12 25:17
26:2 49:11
**member** 27:23
**members** 15:21
33:23 36:18
37:3
**memos** 36:8
**mens** 41:3
**mental** 15:2,5,7
**mention** 3:12
**mentioned** 26:6
30:17
**Merrick** 41:23
**Merrill** 1:18
**Merrimack** 1:24
**mind** 15:1
**mirror** 36:17
**misses** 41:12
42:4
**missing** 46:18
**moment** 48:25
**month** 23:19
28:5
**Morgan** 37:12
**motion** 21:15
**move** 4:23 19:23
43:6 47:2

———————
**N**
**N** 53:1
**name** 19:13
**names** 17:2 20:8
**narrative** 48:16
**national** 16:13
**nationally** 50:4

**naturally** 7:23
**nature** 16:13
**necessarily** 24:8
43:12
**necessary** 21:6
**need** 12:13 31:1
31:2 32:23
33:6 43:2
46:10 51:4
**needs** 4:20 14:11
15:23 41:12
48:19
**net** 51:10
**never** 51:14
**new** 1:13 2:9,12
2:13 7:4 9:6
12:11,21,23
20:11 28:23
43:25 44:24
53:15
**News** 43:11 44:3
**NH** 1:20 2:4,7
2:18
**NHBA** 2:19
**NHJB** 2:22
**NHLA** 2:2,24
45:19 47:14,23
**NHSC** 2:25
**nice** 10:4
**Nicolosi** 1:15
19:7,10 21:4
21:21 22:17,21
23:5,16 31:16
31:19,23 32:1
32:6,11 34:6
40:1 49:9 50:6
50:10,17,20
51:6
**night** 52:2
**no-contact** 50:1
**nodding** 15:24
**non-not-new**
12:16
**nonprecedential**
6:12,17 7:21
9:7,10,17,22
10:1 11:6,8,13
12:12,15,20
13:4,25 19:2

29:5 30:1 35:24
**nonpublished** 16:8,9
**north** 18:3 26:7
**notes** 10:1 13:11 49:12
**notice** 21:23
**noting** 9:4 28:25
**number** 27:8 32:2
**numbers** 25:18 31:11 44:8 45:9
**NY** 53:15

**O**

**O** 53:1
**observation** 10:13
**obtain** 30:9
**obvious** 6:23
**obviously** 16:22
**occupation** 20:17 24:19 28:20
**occupations** 24:1
**occurred** 15:8
**Odom** 53:3,10
**offend** 19:19
**Office** 1:22 2:3
**officer** 24:11
**official** 26:14
**oh** 7:12 29:15 51:14
**Okay** 24:20 48:21 51:6
**old** 12:10,15 23:15 37:13
**olden** 37:21
**once** 21:7 23:18 39:7 45:22
**one-off** 4:24
**open** 4:9
**opened** 33:10
**openness** 19:11
**opinion** 8:21 11:14 17:22

19:1 28:7,19
**opinions** 6:13 11:16 12:3 16:8,9 28:15 30:1 33:13 35:25 36:3,20 36:25 41:9 44:4
**opportunity** 5:11 21:17,24 33:21
**option** 23:10
**oral** 39:20,22
**order** 8:9,21 9:1 9:17,22 11:8 12:15 21:21 24:7 26:20,24 27:17 28:1,13 32:17,20 45:23 50:14
**order's** 27:8
**orders** 6:7,12,17 6:19,24 7:7,21 7:23 8:5 9:5,7 9:10 10:2,8,11 11:1,6 12:6,11 12:12,20 13:4 13:25 14:3,21 21:1,14,20 22:3,5 23:2,15 26:15 28:4 29:6,10 37:22 48:14,15 50:1 50:4
**ought** 11:18
**outcome** 51:19
**outline** 6:2
**outlined** 6:1
**outside** 51:3
**overruling** 12:22
**overwhelm** 48:24

**P**

**pace** 37:20
**Paine** 2:18 32:13 50:6,11,18
**Pam** 2:19 15:24

29:16 34:3
**pan** 31:4
**paper** 15:13
**part** 19:25 35:13 43:22
**participants** 3:15
**participate** 37:4
**particular** 12:5 18:17 20:16 28:4,5 40:25 47:22 48:10
**particularly** 12:19 21:13
**parties** 8:16 9:19 18:10
**parties'** 18:20
**partner** 37:12
**party** 25:6
**patience** 51:20
**Patricia** 2:16 18:7
**patterns** 15:17
**pending** 22:6
**people** 14:4 15:6 17:5,20 23:7 25:14 27:17 30:6,12,18 31:13 34:10,12 34:21,23,24 35:2,5 39:9,10 43:1 45:24 46:6 47:17 49:18
**percolating** 14:25
**period** 9:25 10:7 22:6 27:10
**person** 19:2 20:15 24:1,9 40:8,9
**personally** 43:8
**perspective** 5:20 51:2
**petition** 14:12 21:7,13 22:3
**petitioner** 17:6
**petitioners** 33:3
**philosophical**

13:23
**Philosophy** 39:15
**picked** 37:18
**piece** 19:25
**pieces** 32:14 38:17
**place** 19:24 28:16 51:15
**point** 4:22 21:25 34:16 39:13 46:18 49:6,25
**pointed** 11:5
**points** 15:4
**Police** 2:8
**policy** 7:19
**possibility** 50:13
**possible** 14:4
**possibly** 20:18 30:1
**post** 6:21
**posted** 6:5,18,25 26:12 27:9
**posting** 6:7 10:15 23:8 27:18 28:14 42:6,7,9 48:13
**potentially** 17:3 26:19,25
**practical** 30:15
**practically** 29:23 31:4
**practice** 37:10
**practicing** 12:1
**practitioners** 33:1
**precedent** 9:11
**precedential** 6:13 9:5 12:10 13:24 31:12 41:10
**preliminarily** 21:5
**preparing** 34:1 34:5
**presence** 6:6
**present** 1:11 10:6
**presumably**

16:20
**pretty** 5:1 25:20 36:22 45:24
**prevented** 7:20
**prevents** 16:17
**printed** 43:13
**prior** 5:7 6:4,5 7:5
**private** 10:20
**pro** 8:15
**probability** 50:12
**probably** 3:14 30:17 39:3 44:23
**problem** 22:12 32:22
**proceedings** 53:5
**process** 15:12,23 19:11 37:4 43:18
**produce** 51:15
**Program** 1:19 2:15,19,23,24
**prohibition** 7:17 10:15,20,21
**prohibitions** 6:10
**projects** 51:11
**prompted** 5:22
**proof** 35:13
**proposed** 13:16
**protected** 25:7
**protection** 32:21
**protective** 28:16 32:17 50:14
**protocols** 19:15
**provide** 8:22 9:11 12:17 13:6 23:21 32:18
**provides** 12:24
**providing** 39:11
**provision** 27:16 42:17 46:8
**proximity** 39:9
**public** 2:11 5:25 6:19 8:25

15:21 19:16
22:15 23:12,14
23:21 27:24
32:15 33:2,23
36:11,19 37:3
38:24 40:3
46:14
**public's** 19:17
**publication** 3:5
5:15 16:17
25:5 43:10
**publicly** 25:4
26:13 41:1
**publish** 6:11
35:24 45:8
**published** 5:25
10:2 12:3
16:24 43:12
**pull** 13:15 23:15
**purpose** 18:12
18:19
**purposes** 18:15
**purview** 48:12
**put** 8:19 18:9
27:12,13 31:11
37:8 40:23,24
41:6,9 50:5,23
**putting** 7:20
17:2 18:5,18
43:3 44:4
51:21

---

### Q

**qualitative** 20:6
**question** 17:10
24:16 25:2,8
26:9 29:20
40:1 41:18,25
42:10 45:21
**question/com...**
40:22
**questioned** 19:6
**questionnaire**
35:1
**questions** 35:4
35:19 40:12
**quick** 40:21 45:9
**quickly** 38:14
45:24

**quiet** 48:25

---

### R

**R** 53:1
**R.L** 7:9
**racking** 24:4
**radar** 48:20
50:24
**raise** 26:17
**ran** 50:16
**rare** 28:22
**rea** 41:3
**read** 16:15
20:18 30:10
38:15 40:24
42:16
**readily** 38:18
**ready** 48:22
**real** 25:22 35:17
**reality** 13:6
**realize** 16:7
**realized** 42:7
**really** 11:7,15,17
12:2 16:19
18:16 23:10,13
23:21 25:8
26:23 28:16
34:18 35:14
39:7 49:23,25
50:3 51:12,13
51:13
**reason** 8:4 20:1
21:10
**reasons** 28:17
**recommendati...**
13:2 30:24
42:24 43:6
45:16 49:6
50:24
**recommendati...**
13:16 47:6,10
**record** 46:14
51:9 53:5
**red** 15:5
**redact** 8:23
**redacting** 17:1
41:11
**reference** 40:7
**referring** 17:5

**regimented** 5:1
**regular** 8:7 36:1
**regularly** 36:9
**related** 4:6
**relationship**
35:15
**relative** 31:12
**relax** 37:16
**relied** 8:12
**relief** 33:20
**relying** 5:23
30:2
**remedy** 41:2,13
41:21
**remember** 37:13
**remiss** 46:25
**remove** 19:24
41:14
**report** 36:7
47:18
**reports** 3:17
**repository** 49:4
**represented**
14:5
**request** 27:25
28:10,11
**requesting** 47:1
**require** 21:2
49:19 50:19
**research** 10:17
**resource** 44:18
**respond** 35:3
**response** 11:3
37:17 49:15
50:3
**retitling** 17:3
**reveal** 25:5
**review** 5:21 7:9
36:6,7
**Revolution** 39:8
**right** 5:14 17:9
19:17 20:1
22:13,15,18
24:12,13,22
26:21 27:1,4
27:22 28:2
29:6 30:18
32:5,12 33:18
39:14 41:20,22

**42:3 44:3 46:1**
46:3,22 48:23
50:22 51:7
**rights** 19:10
**risk** 18:5 35:17
36:16
**road** 45:3
**role** 3:20
**roll** 26:10
**routinely** 33:17
38:11
**rub** 38:24
**Ruel** 2:3
**rural** 28:23

---

### S

**S.K** 7:8 8:10
**Sarah** 2:20
45:21
**satisfy** 35:13
**saying** 13:10
18:25 27:14
36:18
**says** 25:3 41:21
42:2
**scheduled** 21:8
**Schollet** 29:14
**Schollett** 2:9
13:8,9 29:13
29:16,19 30:11
30:22 31:6
**Scott** 2:5
**screen** 48:20
**scrub** 6:13,23
18:8,11 19:13
19:22 23:25
28:17 36:2
41:8 46:2
**scrubbed** 17:22
27:15
**scrubbing** 6:16
11:1 23:9,20
**se** 8:15
**seal** 21:16
**sealed** 21:6
**search** 23:2
**second** 3:12
45:16
**secret** 18:21

21:11
**section** 40:25
**see** 13:2 15:24
16:23 17:20
21:4 23:19
31:13 33:23,24
39:13 41:19
51:17
**seek** 33:4 45:10
**self-represented**
8:16
**senator** 24:20
**sending** 8:6
**sense** 9:4,24
36:5,11 42:23
**sensitive** 22:8
**sent** 3:19 10:1
**sentence** 50:2
**sentencing**
50:14
**serve** 18:13
**served** 20:15
21:8 28:12
**set** 9:13
**Seventh** 53:14
**Sexton** 2:11
42:16
**share** 20:12 38:9
**shared** 4:19
22:11
**sharing** 38:1
**shortly** 51:23
**shuts** 41:24
**sick** 39:3
**side** 16:23 28:8
33:12 37:15
**sides** 36:1
**significant**
36:17 38:12
**significantly**
44:3
**silently** 26:1
**situation** 7:9
**slap** 41:15
**slower** 37:20
**small** 18:3 25:12
26:7 28:1,23
**smaller** 25:19
**so-** 40:17

**so-called** 5:6
  12:14
**solution** 6:23
  8:18
**somebody** 8:6
  21:17 35:25
  44:19
**somebody's**
  49:13
**something's**
  22:6
**sorry** 29:15
**sort** 4:1 5:19 6:6
  15:4,13 16:1
  21:23 32:15
  33:2,24 34:7
  34:25 35:16
  37:25 39:4
  47:14 49:17
  50:16 51:1
**sound** 51:9
**space** 12:19 13:3
  13:5,5 15:20
  15:21
**speak** 38:4
**specific** 9:12
**specifically** 4:13
  24:8
**speech** 39:7
**spend** 25:11
  47:24
**spot** 37:8
**spreading** 39:10
**staff** 15:22 38:10
**stages** 22:1
**stakeholders**
  31:2 42:25
**standard** 27:13
**start** 6:16
**started** 3:10
  6:11 11:25
  25:17 27:11
  33:10 37:10
**starting** 13:15
**state** 41:5
**statement** 12:23
**statements**
  12:11,21
**states** 10:21

16:14,21 24:19
  27:11,12
**statistical** 3:23
  18:15
**statistics** 25:17
**status** 28:21
**statute** 11:18
  12:24 17:12
  25:2 29:9 32:7
  35:12 41:4
  49:18 50:8
**statute's** 50:15
**statutorily** 40:19
**statutory** 49:19
  50:9,19
**Steve** 30:17 39:6
  42:18
**Steven** 1:23 16:5
**sticking** 11:15
**stories** 20:12
**Strasburger**
  2:13 35:22,23
**strictly** 5:1
**structure** 34:10
  51:21
**stuff** 49:7
**subject** 31:20
**submit** 40:14
**sues** 18:1
**sufficiency** 32:4
**suggestion** 50:25
**Suite** 53:14
**summaries**
  38:11
**summary** 31:19
**summons** 43:23
**Superior** 1:15
  34:16
**Supervisory**
  2:25
**support** 35:23
  45:10
**Supreme** 1:13
  6:8 8:7 10:10
  16:18 23:3
  26:15 28:7,15
  28:19 29:3
  34:12 39:19,23
  43:23 45:14

46:5
**sure** 4:16 36:15
  42:16 43:1,25
  49:16
**surmise** 38:4
**survivors** 43:3
  43:17 44:22
**Susan** 1:14
**suspended** 50:2
**system** 4:15 7:24
  14:8 29:21

————————
**T**
**T** 53:1,1
**table** 5:6,9
**take** 4:16 6:13
  20:25 25:13
  26:8 42:25
  43:4
**takes** 32:16
**talk** 20:2 34:16
**talked** 22:2 23:9
  34:6 35:7
**talking** 15:19
  18:19 21:20
  23:24,25 35:8
  40:22
**task** 1:6 3:3 4:5
  4:13,19,25
  5:22 7:5 13:3
  15:10 51:4
**tasked** 5:2 34:4
**tech** 23:7
**technically** 3:2
**temporary**
  21:13 22:3
  28:13
**ten** 28:4
**terms** 9:12 18:18
  44:8
**thank** 3:1,25
  51:8,25
**thanks** 48:23
  51:20,20
**thereto** 42:15
**they'd** 30:5,6,8
**thin** 47:5
**thing** 14:24
  18:22 26:5,18

26:23 31:9
  37:7 39:17
  50:21,23
**things** 6:3 9:16
  12:7 15:11
  20:3,17 37:19
  39:4 44:14
  51:12
**think** 3:7,7,8,20
  4:8,18 6:15 9:3
  9:14,24 10:12
  11:6,7,11,21
  12:8,20 13:1
  14:1,14,19
  16:2,24 17:21
  17:25 19:9,21
  20:10,20,24
  21:9 22:7,10
  22:12 23:11,22
  24:5 25:10,20
  26:9 28:14
  29:12 30:13,14
  30:16 32:13,24
  33:9 34:9 35:2
  35:19 36:2,10
  36:16,18 37:2
  37:9 38:24
  39:6 42:2,17
  42:19,20,23
  43:4,5 44:9,21
  45:2 50:18,23
  51:9,18
**thinking** 9:9
  11:12 24:18
  25:11 31:9
  39:18 47:23
**third** 3:2
**thirty-minute**
  34:20
**thought** 15:17
  18:6 23:23
  42:8,13 47:13
**thoughts** 5:17
  7:1 26:5 47:4
  48:10
**three** 48:3
**three-year** 10:7
**throw** 48:11
**Tim** 26:2,10

**time** 7:22 9:25
  14:22 15:25
  20:25 21:15
  22:5,7,8 25:11
  34:7 39:5 43:5
  44:10,11 47:24
**today** 3:20 47:7
**told** 46:2
**tomorrow** 51:23
**tool** 15:18
**tools** 14:1 15:25
  33:6
**topic** 4:23 6:16
  11:22 14:24
  48:10
**topics** 47:2,9,14
  48:1
**tort** 12:15
**touchstone**
  47:15
**town** 18:2 20:16
**track** 20:3,7
**trained** 14:10
**training** 14:1,15
  15:18 16:1
  32:25
**Transcriber**
  53:11
**transcript** 53:4
**transparent**
  30:20
**tremendous**
  14:9
**trends** 39:2
**trial** 3:7 5:16,23
  12:6 17:16
  21:20 48:13
**trigger** 15:14
**true** 53:4
**truth** 34:18
**try** 16:1 30:19
  32:18 34:24
**trying** 4:7 15:22
  20:2 24:5
  34:23 45:1,2
  47:18,19
**TTA-Certified**
  53:11
**twenty** 47:17

**two** 15:11 24:24 26:14 48:3
**type** 12:6 24:6 41:15
**typed** 37:15
**types** 9:16 23:2 27:21 29:4,7
**typically** 44:22

**U**

**ultimately** 21:22
**Um-hum** 23:5 50:10 51:6
**underlying** 27:25 32:14
**understand** 8:25
**understanding** 7:15 11:18 32:15
**understood** 33:11
**unfolds** 48:18
**uniquely** 24:18
**United** 24:19
**unrepresented** 13:20 30:3
**updated** 32:25 38:16
**upholds** 32:20
**uploading** 49:7
**user-friendly** 30:21
**utilizing** 27:5

**V**

**v** 7:8,9
**valid** 10:12
**various** 47:14
**VAWA** 40:25 41:20 46:8
**versus** 11:14
**Vicinanzo** 2:15 51:25
**victim** 1:18 18:5 20:23,23 41:9 46:13,13
**Victim/Witness** 2:4
**victims** 7:18 13:19

**viewpoint** 11:24
**violates** 39:24
**violation** 17:24
**violence** 1:6 2:6 2:23 3:5 5:16 6:10 7:16 16:12,16 17:4 17:4,25 20:20 27:9 36:4 39:21,24 40:6
**VIRTUAL** 1:6
**visit** 45:11
**volunteer** 47:24 48:4
**volunteers** 47:8

**W**

**wait** 29:18
**waking** 6:9
**walk** 27:24 28:9
**want** 3:11 4:5,8 26:11 47:8,12
**wanted** 46:5
**warning** 15:4
**warnings** 15:15
**wasn't** 3:15 14:12 48:12 49:16
**watching** 26:1
**way** 8:8,22 9:6 17:7,12 31:25 35:24 36:2 38:12 41:7 42:17,19 43:11 48:15 49:12,24
**ways** 43:20
**we're** 3:21 4:6,9 10:6 18:8,19 20:1,2 23:22 23:24,25 27:18 40:22 46:1 48:7 51:18
**we've** 7:6 10:5 22:2,25 23:9 23:19 27:11 49:1,20
**web** 6:6
**Webex** 1:8
**website** 7:13

10:3 23:8 30:7 30:20 43:12 44:16,25 45:4 45:8,12
**week** 3:11
**weekly** 21:2
**went** 30:6 38:1
**weren't** 16:9 42:13
**whiz** 25:20,23
**whoever's** 41:11
**wide** 51:10,13 51:17
**withdraw** 21:17
**Witness** 1:19
**woke** 10:4
**Women** 6:11 7:16 16:12,16 17:25 20:21 27:10 36:4 39:25
**wonder** 29:22
**wonderful** 39:7
**wondering** 16:14 39:21 44:14
**wording** 10:18
**work** 4:20 21:3 23:12,13 24:2 42:20 45:18 47:9
**workaround** 45:6
**worker** 47:15
**working** 14:5 30:25 32:23 47:3,5,9,25
**works** 23:11 40:5
**world** 37:23
**worry** 19:18
**worth** 11:12
**wouldn't** 17:24 18:10 19:14,16 21:9 26:8 29:1 29:24,24
**wrist** 41:15
**write** 47:18
**writing** 47:16

**written** 8:22 17:13

**X**

**Y**

**Yazinski** 1:16
**yeah** 10:25 18:7 19:9,20 21:21 22:17,21 23:16 24:14,23 25:3 25:22 26:18 30:9 31:5,8,16 31:16 32:9,11 35:21 39:1 45:7 50:17,20 51:25
**year** 7:6 23:1 28:5
**years** 5:7 9:9 42:6
**Yep** 25:1
**York** 53:15

**Z**

**Zinkin** 2:25

**0**

**1**

**1** 17:4
**10001** 53:15
**101** 39:15
**173-B** 33:20
**18** 1:7

**2**

**2** 17:4 53:17
**2011** 6:4
**2014** 10:3
**2017** 10:3
**2018** 10:6
**2022** 1:7 53:17

**3**

**3** 11:11
**352** 53:14
**3JX** 9:16 16:8 19:1

**4**

**5**

**6**

**603** 2:19
**604** 53:14

**7**

**8**

**9**