1

2

3

4

5

6    DOMESTIC VIOLENCE TASK FORCE VIRTUAL MEETING

7              January 19, 2022

8               Held via Webex

9

10

11   PRESENT:

12       Hon. Anna Barbara Hantz Marconi,

13   Associate Justice, New Hampshire Supreme Court

14       Hon. Diane Nicolosi, Superior Court Judge

15       Hon. John Yazinski, Circuit Court Judge

16       Mary Barton, Clerk, Circuit Court

17       Merrill Beauchamp, Director, Victim &

18   Witness Program

19       Kathy Beebe, Executive Director, Haven NH

20       Kristyn Bernier, Investigator, Belknap

21   County Attorney's Office

22       Steven Endres, Assistant County Attorney,

23   Merrimack County

24       Martha Ann Hornick, Grafton County

25   Attorney



1        Mary Krueger, Attorney, NHLA

2        Lynda Ruel, Director, Office of

3    Victim/Witness Assistance, NH DOJ

4        Scott Hampton, Director, Ending the

5    Violence

6        David Hobbs, Hampton, NH Association of

7    Chiefs of Police

8        Lyn Schollett, Executive Director, New

9    Hampshire Coalition

10        Amanda Grady Sexton, Director of Public

11    Affairs, New Hampshire Coalition

12        Jon Strasburger, New Hampshire

13    Association of Criminal Defense Attorneys

14        David Vicinanzo, Attorney, DOVE Program

15        Patricia LaFrance, Attorney, The Black

16    Law Group

17        Betsy Paine, Attorney, CASA NH

18        Pam Dodge, NHBA DOVE Program & 603 Legal

19        Sarah Freeman, NHJB Circuit Court

20    Administrator

21        Erin Jasina, Director, NHLA, DV Program

22        Anne Zinkin, NHSC Supervisory Law Clerk,

23    NHSC

24

25



Domestic Violence Task Force - 1/19/22

1           JUDGE HANTZ MARCONI:  Everyone is
2       here again with smiling faces.  Yay.
3       What our technically fifth meeting on our
4       fourth charge, which is a review of court
5       forms.  So again, we aren't going to end
6       up with new forms from this session.  I
7       think that would be a bit of a challenge.
8       But we are going to identify areas where
9       the forms could be improved.  And I bet
10      there are some ideas out there for where
11      the forms would be improved.  I know I
12      have some.  But I would like to hear from
13      those who use the forms.
14          MS. PAINE:  Your Honor, if I might
15      just step in as a partial historian.  So
16      the current forms were configured as part
17      of a national effort to make sure that
18      protective orders would be recognizable
19      and enforceable by law enforcement.  And
20      it was an effort by the National Center
21      for State Courts a number of years ago.
22      So on the order side of things, we need
23      to sort of keep the format similar, but I
24      think there's lots of detail that can
25      change in there.

Domestic Violence Task Force - 1/19/22

1          But law enforcement needs to know

2      where to look on those forms to know what

3      to enforce, and there's been a

4      significant amount of training done

5      around that.

6          JUDGE HANTZ MARCONI:  Okay.  And

7      that's a good point.  There are different

8      forms at issue.  So we have the petition

9      form, which I think is where some

10     improvement could be made rather than

11     just, in my experience, allowing sort of

12     the narrative run on.  Perhaps some more

13     focused, sort of sections, if you will.

14     And then there's the order side which I

15     do understand has some technical

16     requirements.

17         So do keep us on track with that.

18     That would be helpful.

19         MS. JASINA:  I also want to say it

20     was probably three years ago, there were

21     some edits made to the DV petition form.

22     At least they were given to NHLA to

23     review and make comments and edits to,

24     which we did.  But I don't know if that

25     process moved forward or if there were

Domestic Violence Task Force - 1/19/22

1      some slight changes made to the form at

2      that time.  But I do remember there was

3      what looked like, what I recall, being a

4      pretty significant overhaul of the forms,

5      so I'm just not sure what happened to

6      that work or if needed that might be a

7      good starting point for us.

8          JUDGE HANTZ MARCONI:  Does anyone

9      know what happened to that work?

10         MS. FREEMAN:  That predates me.

11         JUDGE HANTZ MARCONI:  Okay.  So --

12         MS. PAINE:  And it postdates me,

13     Your Honor, so there's a gap.

14         MS. KRUEGER:  Is Judge Carbon on

15     because I believe Judge Carbon was.

16         JUDGE HANTZ MARCONI:  She is missing

17     today, unfortunately.  So we will --

18     we'll check on that.

19         MS. ZINKIN:  She's in training.

20         JUDGE HANTZ MARCONI:  Yes.

21         MS. FREEMAN:  What I can say is in

22     addition to the Project Passport

23     principles that Betsy referenced, the

24     other challenge that we need to look at

25     is that some of the information collected

Domestic Violence Task Force - 1/19/22

1       is also needed to ensure that the orders

2       can be entered into a variety of

3       databases.  And that includes both the

4       Federal NCIC database and potentially the

5       state database for orders that don't

6       qualify for NCIC.  So some of the

7       information collected and required is not

8       by statute or court rule but in order to

9       ensure that those orders are going into

10      law enforcement databases.

11              JUDGE HANTZ MARCONI:  And then that

12      is, again, reference the orders.  That

13      doesn't impact the petition, or does it?

14              MS. FREEMAN:  It impacts it insofar

15      as some of the information that we need

16      to gather that can make the petition a

17      little bit longer is needed for purposes

18      of filling out the order form.

19              JUDGE HANTZ MARCONI:  Okay.  Those

20      who assist with petitioners filling out

21      the form, anything that comes to mind in

22      terms of hurdles, either with the DV

23      petitions or the civil stalking

24      petitions?

25              MS. ZINKIN:  Erin, do you still have



Domestic Violence Task Force - 1/19/22

1          the revisions that you suggested?

2                 MS. JASINA:  I probably do.  Whether

3          they're in hard copy in my office or

4          somewhere on my computer, I'll kind of

5          poke around while we're on this call.

6                 To answer the question, the previous

7          question, I would say a hurdle that they

8          are faced with initially is which form to

9          choose between the DV petition and the

10         stalking petition.  So that's hurdle

11         number one.  And then just a general

12         theme is that they don't really know,

13         victims and survivors don't know what is

14         required in the narrative section.  We

15         will oftentimes see petitions with two

16         sentences, and then we'll see others with

17         five pages.

18                So you have victims and survivors

19         feeling like they need to do the kitchen

20         sink approach, which is outline every

21         single date of abuse.  And then you find

22         others that will just more generally

23         state what has happened.  There will be a

24         general statement that I've been harassed

25         or I've been abused for the past two

Domestic Violence Task Force - 1/19/22

1        years.  And we've seen varying orders,

2        temporary orders, issued off of those

3        different types of statements.

4              JUDGE HANTZ MARCONI:  And you are

5        receiving these, this goes back to my

6        DOVE days, but you are getting those

7        petitions after they've been filled out.

8        You aren't necessarily helping that

9        process before it happens?

10             MS. JASINA:  So we were running

11       somewhat of a pilot program through

12       funding, through VOCA funding when we

13       initially got VOCA funding.  We were in

14       the crisis centers, onsite at the crisis

15       centers assisting victims and survivors

16       with filling out the DV petition.  Once

17       COVID hit, that sort of changed our

18       process a bit.  We weren't able to be

19       onsite.  And then with the merger of LARC

20       and Pro Bono a lot of that assistance

21       went to 603 Legal Aid to provide that

22       assistance.  So now, for the most part, I

23       will say we are getting the referrals

24       after the cases have already been filed,

25       the petitions have already been filed.

Domestic Violence Task Force - 1/19/22

1           JUDGE HANTZ MARCONI:  And with the

2       advocate community, if you will, same

3       thing, or you're there at the

4       beginning -- actually COVID, but what's

5       the norm?

6           MS. BEEBE:  So I can speak a little

7       to that.  I think Anne summed up what

8       we're seeing in that it is still a

9       challenge whether we're helping people

10      fill out the forms or not, assistance

11      with just breaking it down.  I liked what

12      you said earlier about needing more focus

13      sections because people just don't know

14      what to include.

15          I really like the ones that New York

16      sample that was in the (indiscernible)

17      materials, where it listed the different

18      types of things, and then there was the

19      opportunity to expand on each incident.

20      And I think something like that would be

21      extremely helpful because it is really

22      hard.  It's hard to know what to include,

23      and it's also hard to know how to present

24      that in a way that's impactful and

25      concise.  And it is either all run on or

Domestic Violence Task Force - 1/19/22

1    listing everything, or it's just not

2    enough information to provide the

3    information.

4         JUDGE YAZINSKI:  As protocols, as I

5    was reviewing those, and I spoke with

6    Sarah and my clerk.  When we revamped the

7    protocols in 2008 the comment sections

8    were enhanced to include directions for

9    staff.  And in asking both my clerk and

10    Sarah both about how much training staff

11    is receiving and how much help they are

12    actually providing, it's become clear to

13    me that staff, either because we don't

14    have enough staff or they don't have

15    enough time, is not meeting what we were

16    hoping they would meet in protocols, and

17    that is to help decide between the two

18    choices DV and stalking, to also provide

19    information about the statute.  It's the

20    protocols anticipated if far more

21    involved staff than we have seen, and I

22    think it's an area that would be helpful

23    because that's the first court person

24    that the victim sees.

25         JUDGE HANTZ MARCONI:  And I know





Domestic Violence Task Force - 1/19/22

1       there are, for example, the law library

2       has part of their public outreach

3       program, the LibGuides that are available

4       to the public in a variety of areas.  And

5       these are general, and certainly they

6       explain the difference between the

7       stalking and the DV petitions.  I'm sure,

8       and I'm aware, there are other resources

9       posted, but it still doesn't seem to

10      substitute for someone getting specific

11      guidance, you know?

12           You can go out and look at stuff on

13      the internet and read all kinds of

14      medical diagnoses to try to figure out

15      what you've come down with, but it's not

16      the same as having a trained person

17      available to help.  So I think that's a

18      valid point.

19           And as the Access to Justice

20      Commission has discovered, trying to fill

21      that gap with volunteer attorneys,

22      advocates, you name it, it may be a

23      function that the court really has to

24      take on through staffing.  And if we

25      don't have sufficient staff, that will be



Domestic Violence Task Force - 1/19/22

1    something we're going to have to bulk up

2    on, if our legislative friends will give

3    us the money.  So good points all.

4        And the New York process, I think we

5    can borrow from other successful states

6    in at least making the forms a little bit

7    more directive without going over the

8    line of giving legal advice, which of

9    course the court can't do.

10       MS. SCHOLLETT:  Maybe in addition to

11   the staffing issue that a lot of folks

12   are raising, having a recommendation

13   about creating some kind of a decision

14   making tool.  And I'm looking at Sarah,

15   I'm trying to remember if you were in the

16   meetings.  A couple of years ago, okay,

17   we had some conversations with Judges

18   King and Ashley.  And the courts had

19   looked at possibly creating kind of a

20   decision making tree for lack of a better

21   word that might help walk victims

22   through, walk petitioners through

23   choosing the correct form.  I agree with

24   you completely, that's not a substitute

25   for a human being who can ask questions

Domestic Violence Task Force - 1/19/22

1         and provide guidance, but maybe a

2         companion piece.  And that didn't end up

3         moving forward but it might be worth

4         revisiting as well.

5              MS. FREEMAN:  We just got --

6              JUDGE HANTZ MARCONI:  I'm going to

7         sound like a broken record but -- oh, go

8         ahead.

9              MS. FREEMAN:  I was going to say, we

10        just got as part of a piece of

11        legislation, the Vulnerable Adult

12        Protective Order legislation that

13        ultimately didn't go forward.  We did

14        discuss a decision tree.  But I would

15        echo, there is something invaluable about

16        having someone, an advocate, whether it's

17        a lawyer advocate or a crisis-center

18        advocate, with the person filling out the

19        petition because as wonderful and as

20        trained as our court staff are, they're

21        not trained to provide the advanced level

22        of safety planning that crisis center

23        advocates are.  And so I do think there

24        is a distinction in the quality of

25        petitions that come in when someone has

Domestic Violence Task Force - 1/19/22

1        the support of an advocate or an attorney

2        trained in domestic violence and safety

3        planning.

4            MS. BEEBE:  I don't know if folks

5        can hear me because I understand I'm

6        still having technical challenges, but I

7        would reiterate though, one of the

8        challenges that we have is that we're

9        also just about support and not there to

10       give any sort of legal advice.  So it was

11       really beneficial when we had the

12       (indiscernible) had NHLA located at the

13       crisis centers to help survivors.  Well,

14       we could do that important piece about

15       safety planning, and yes, we can help

16       break down the forms, and help people to

17       understand them, but if it's just a

18       crisis center advocate, they're not

19       necessarily getting all of the

20       information they might need to adequately

21       fill out the forms.

22           JUDGE HANTZ MARCONI:  And I think

23       that's an interesting point.

24       Anecdotally, there are some petitions

25       with the assistance of an advocate that



Domestic Violence Task Force - 1/19/22

1      are no better, if you will, than just a

2      self-represented person.  There is a

3      legal distinction between what's required

4      in the petition and what the advocates

5      are really trained to do, which is not --

6      they aren't the same.  Legal counsel and

7      the advocates training isn't the same.

8          So I think that is a recognition

9      I've come to just in sort of doing my

10     background work on this that it's not

11     enough just to call in an advocate,

12     there's still that missing link.  And

13     unless New Hampshire Legal Assistance has

14     a staff of thousands, we have to find a

15     way to fill that gap.

16         It is my understanding, and you

17     folks can correct me, but advocates are

18     really more about safety training and

19     support for the victim, survivor or sort

20     of what they're going through, not

21     looking at the sort of processing the

22     case or prosecuting the case.

23         Am I correction on that?

24         MS. BEEBE:  Absolutely.  And because

25     that is the time that is of greatest risk

Domestic Violence Task Force - 1/19/22

 1     for someone who their partner, ex-

 2     partner, who has been served with

 3     restraining order, then it's really

 4     critical that you have that crisis center

 5     advocate piece but also access to the

 6     legal assistance as well.

 7          JUDGE HANTZ MARCONI:  Right.  And

 8     the idea of maybe -- I don't know,

 9     nationally what other models there are,

10     but is there a model that combines legal

11     counsel with the advocacy center, or is

12     there some prohibition?

13          MS. FREEMAN:  I can speak to New

14     York City's model.  I was a staff

15     attorney for a victim services

16     organization in New York City, and in

17     that model there was we had advocates

18     that were part of our organization.  The

19     advocates provided that safety planning

20     guidance and information about filling

21     out the protective order because not

22     everybody who is filling out a protective

23     order petition needed legal counsel, and

24     those advocates were trained to provide

25     legal information, not advice.  But we

Domestic Violence Task Force - 1/19/22

1   certainly, we were the attorneys taking

2   on clients who were also receiving

3   services from our crisis center

4   advocates.

5        JUDGE HANTZ MARCONI:  And were you

6   working within the crisis center, or it

7   was a program that incorporated the

8   crisis centers?

9        MS. FREEMAN:  So it was a program

10  that the crisis center employees and the

11  staff attorneys worked for the same

12  organization.

13       JUDGE HANTZ MARCONI:  Okay.  And

14  that organization was?

15       MS. FREEMAN:  There's a couple of

16  them in New York City.  One is Safe

17  Horizon and one is Sanctuary for

18  Families.

19       JUDGE HANTZ MARCONI:  And they are

20  not functions of the court system?  They

21  are separately funded?  So with grants or

22  whatever fundraising tools?

23       MS. FREEMAN:  Correct.

24       JUDGE HANTZ MARCONI:  So in New

25  Hampshire we have a piece of that, we



Domestic Violence Task Force - 1/19/22

1        don't have that model, correct?

2            MS. FREEMAN:  Correct.  Yes.

3            JUDGE HANTZ MARCONI:  Okay.

4            MS. KRUEGER:  Yeah.  We've done

5        variations on those themes over the

6        years, and Pam Dodge can certainly talk

7        about it as well, utilizing NHLA staff

8        attorneys and paralegals, and utilizing

9        volunteer attorneys to be onsite at

10        crisis centers doing unbundled legal

11        services, and in addition to helping with

12        divorce and parenting cases.  Also

13        assisting with 173-B and stalking cases.

14            And it really is a resource issue.

15        As the legal services community has

16        really worked collaboratively over, for

17        me the last fifteen years, on trying to

18        figure out the models with our crisis

19        center partners that are most effective.

20        And I think we all know having an

21        attorney onsite is the ideal.

22            JUDGE HANTZ MARCONI:  Right.

23            MS. KRUEGER:  But it's just not

24        something we can pull off with the

25        resources that we have.



Domestic Violence Task Force - 1/19/22

```
 1          JUDGE HANTZ MARCONI:  So it's
 2     something that in New Hampshire we have
 3     NHLA, we have DOVE, we have now 603
 4     legal, and that is volunteer lawyers, but
 5     what we don't have, which that New York
 6     City model did, in a geographic area, is
 7     a separate nonprofit, if you will,
 8     umbrella agency that has staff attorneys
 9     that are not relying on the volunteer
10     attorney but has actual people on staff
11     to do that piece of work.  That
12     they're --
13          MS. KRUEGER:  Yeah.  And I would
14     just say that there's limited pools of
15     money and pots of money.  So we'd, I
16     think, and with the coalition too, we've
17     also agreed that, like the VOCA money,
18     which is a huge amount of monies that
19     come in over the last few years; there's
20     Violence against Women Act legal
21     assistance for victims, money that's
22     harder to come by; there's STOP grant
23     funds that flow through the state, all of
24     those different pots of money, there's a
25     limit to them.  And hiring lawyers at
```

Domestic Violence Task Force - 1/19/22

1        crisis centers isn't necessarily the best

2        use of that resource, right?

3            Having a legal service and a legal

4        aid program that can together recruit

5        volunteer attorneys and be coordinated

6        and who's doing what cases and

7        prioritizing the use of those resources

8        has been a really effective model in New

9        Hampshire.  But there are those limits,

10       right?  So I just don't think there would

11       be -- you'd be taking resources from one

12       place and putting it into another place

13       at the detriment of the system that we

14       currently have, that we've worked really

15       hard to change.  And with the merger that

16       just happened last year --

17           And Pam, feel free to chime in with

18       this because you've been around longer

19       than I have.

20           MS. DODGE:  Yeah.  I mean I can echo

21       everything that you're saying, and the

22       State is also trying to really establish

23       family justice centers as well, which is

24       kind of the one-stop shop for victims and

25       survivors of domestic violence, but

Domestic Violence Task Force - 1/19/22

1         they're very, very costly.  And that, to

2         sustain that kind of funding, to support

3         a multifaceted response to victims of

4         domestic violence, it's just not

5         sustainable, and they don't survive.

6         It's really problematic.  And my

7         experience has been between NHLA and the

8         services of the Pro Bono Program, whether

9         at the Bar at 603 Legal Aid, we still, we

10        are very limited to respond to this big

11        needs that is out there.

12              JUDGE HANTZ MARCONI:  So ramping

13        that up is another -- I mean, ramping up

14        our volunteer network is another ongoing

15        challenge, if you will, too, and bringing

16        this back to the forms, whatever

17        improvements we can advise to make to the

18        forms, to make it easier for people to

19        operate without legal counsel, that is

20        really addressing the fact that we don't

21        have someone at each courthouse or at

22        each crisis center to help at that stage.

23              Like the, I'll repeat myself, the

24        guided interviews in eFiling, which is

25        another substitute for that lack of

Domestic Violence Task Force - 1/19/22

1      advice at that critical stage.

2          MS. DODGE:  I would like to add

3      though that putting that kind of format

4      together would, I think, bring a much

5      stronger petition to the table, and then

6      the attorneys, when they do take the case

7      at a later time, at least have the

8      framework because these referrals,

9      whether they're to New Hampshire Legal

10     Assistance or to a volunteer, the

11     turnaround, it's urgent.  And there is

12     very little time to respond.

13         MR. STRASBURGER:  So as we're having

14     this discussion about forms, it's

15     occurred to me that our process has

16     involved this notion of the allegations

17     being sworn to, and the respondent having

18     notice of those allegations, and the

19     allegations being sufficient for the

20     court to make a finding.  And while I

21     think that revising the forms to include

22     certain check the box areas might be

23     easier for the court to identify what the

24     173-B allegations are, I just want to

25     make sure that we don't lose focus of the

Domestic Violence Task Force - 1/19/22

1       due process notion that everyone should

2       be on notice as to what the allegations

3       are so that there can be a fair hearing.

4           When I represent the petitioner, I'm

5       very mindful of that, and I know that the

6       general public may not be, but I always

7       make sure that when I'm representing a

8       petitioner, we're very specific because

9       if we are not, we run the risk of the

10      court saying, well, that's not in the

11      four corners of the petition, so I'm not

12      going to consider it.  And the

13      respondents entitled to notice.

14          And when I'm defending a petition,

15      I'm quick to raise an objection when

16      there is some testimony that has -- that

17      relates to an issue that hasn't been pled

18      and hasn't been included in the petition.

19          So I think whatever way we can get

20      the message out there to petitioners that

21      they're not going to be allowed,

22      necessarily, to testify to allegations

23      that have not been properly noticed, that

24      might be helpful.  I don't know whether

25      that would be some bold paragraph on the

Domestic Violence Task Force - 1/19/22

1         form.

2              But I think that's important for us

3         to keep in mind.  Because if we get to a

4         point where we're literally just checking

5         a box, okay, I've suffered false

6         imprisonment, check; I've been the victim

7         of simple assault, check, those types of

8         things as far as being properly prepared

9         to litigate at a hearing, I don't think

10        are sufficient.  I think there would need

11        to be some detail there.

12             JUDGE HANTZ MARCONI:  Right.  You'd

13        have to have; I've been the victim of X

14        because and some detail.

15             MR. STRASBURGER:  Right.  So I just

16        wanted to throw out there --

17             JUDGE HANTZ MARCONI:  Yes.

18             MR. STRASBURGER:  -- the notion

19        that, I think for both sides, I think the

20        petitioner wants to make sure that the

21        court has sufficient information to make

22        the findings that it needs to make in

23        order to grant their requested relief.

24        But also equally as important for the

25        respondent, who is entitled to understand

Domestic Violence Task Force - 1/19/22

1        exactly what the allegations are, so

2        that -- or fulfilling that due process

3        requirement, and making sure that the

4        allegations are properly sworn to,

5        there's been proper notice, and both

6        sides have an equal opportunity to

7        litigate those issues.

8            JUDGE HANTZ MARCONI:  Just part of

9        the issue that I'm wanted to talk about

10       as well is looking at the forms, people

11       have any specific ideas for improvement

12       today.  And we're talking about the DV

13       forms I've listed for civil stalking.

14       There are the email pilot project forms,

15       which are a takeoff on the regular forms.

16       The motion for weapons return form,

17       criminal forms, all things we've uploaded

18       that, and Superior Court Civil

19       Restraining Order forms, so they're all

20       part of what's up for discussion.

21           But also going forward, what's the

22       process if some group stakeholder,

23       someone in the business in this space

24       comes across a glitch in a form.  So what

25       do you do?  Is there a feedback process



Domestic Violence Task Force - 1/19/22

```
 1        that we should be looking at?  I've put

 2        down, obviously, with the Bar we have a

 3        committee on cooperation with the courts

 4        meets monthly, eight, nine months of the

 5        year, which for lawyers is a way to give

 6        feedback to all three courts, you know,

 7        Supreme, Superior, and Circuit.  Do we

 8        need to have periodic stakeholder

 9        meetings?  Do we have a line right to

10        Jean, the program manager at the AOC?

11        What is the process that makes sense if

12        people have form related or even process

13        related questions?  So I throw that out

14        also in connection with this particular

15        topic.

16            MS. ZINKIN:  I just wanted to point

17        out, just going back to what Jon was

18        saying.  Just looking at the New York

19        form that's up on the Dropbox and not

20        that that's the be all and end all of all

21        court forms, but in addition to having a

22        survivor check off the conduct, you know

23        disorderly conduct or harassment or

24        whatever, the next thing says describe

25        each incident starting with the most
```



Domestic Violence Task Force - 1/19/22

1        recent incident; state date, time and

2        location of each incident, specify all

3        injuries; and if any weapons were used,

4        use additional sheets when necessary.  So

5        I think it's possible to have both checks

6        and some required narrative.

7              MS. LAFRANCE:  Can I just ask a

8        quick question point of information --

9              JUDGE HANTZ MARCONI:  Yes.

10             MS. LAFRANCE:  -- if you will.  You

11       keep referencing a New York form.  I

12       don't see it in my Dropbox; where is it?

13             JUDGE HANTZ MARCONI:  Good question.

14             MS. LAFRANCE:  Okay.

15             JUDGE HANTZ MARCONI:  Are you

16       (indiscernible)?

17             MS. LAFRANCE:  I didn't see anything

18       from yesterday to that Anne had sent

19       around.  I think it was the stalking.  I

20       don't know if I --

21             MS. BEEBE:  I found the New York

22       form in today's box in Dropbox.  It was

23       just one of the pieces.

24             JUDGE HANTZ MARCONI:  So under

25       Charge 4 is that where it is?



Domestic Violence Task Force - 1/19/22

 1          MS. ZINKIN:  I muted myself.  Yes,

 2      under Charge 4, let me just get into

 3      Dropbox for a second.

 4          JUDGE HANTZ MARCONI:  I don't dare

 5      try to go into my Dropbox on this

 6      computer, I'll end up.

 7          MS. ZINKIN:  There are all the forms

 8      that New Hampshire has, and then there's

 9      this New York Petition for Family Offense

10      that was uploaded on the 12th.  You

11      should -- after the call we can sort of

12      troubleshoot if you want to do that.

13          MS. LAFRANCE:  Yes.  Thank you.  I

14      didn't want to take up too much time.

15          JUDGE HANTZ MARCONI:  No, no, no.

16      It's okay.

17          MS. LAFRANCE:  I just wanted to know

18      if it was me or not.

19          JUDGE HANTZ MARCONI:  I'm not a

20      Dropbox expert.  I excluded you from

21      Dropbox just randomly.

22          MS. LAFRANCE:  Like I do.  I did

23      have another point to make too about the

24      forms.  How many of these are subject to

25      the, you know, what was talked about

Domestic Violence Task Force - 1/19/22

 1       earlier that they're kind of uniform so

 2       that police can recognize, you know, know

 3       where to go for certain information.  Is

 4       it just the DV petition or is it all of

 5       these?

 6            MS. FREEMAN:  It's any order of

 7       protection that is entered into law

 8       enforcement databases that is entitled to

 9       full faith and credit.  So right now for

10       us that means the criminal bail

11       protective order, the DV order, the

12       stalking order, and two juvenile abuse

13       orders are all subject to Project

14       Passport.  It's the actual order.  The

15       petition isn't subject to Project

16       Passport, but it needs to collect enough

17       information to fill out that Project

18       Passport from and to also be entered into

19       NCIC or STOP.

20            JUDGE HANTZ MARCONI:  And the forms

21       are reviewed on a periodic basis

22       internally, and obviously that's one of

23       the reasons.  But getting feedback from

24       the users of the form or proxies for the

25       users of the form, is something we should

Domestic Violence Task Force - 1/19/22

1         think about going forward.

2              MR. ENDRES:  One thing that's not

3         directly related to the form but the

4         hallmarks that we had to review the

5         forms.  I went on the Supreme Court

6         websites trying to find the forms and

7         actually found I had -- not the Supreme

8         Court but the judicial branch website and

9         had a little bit of difficulty locating

10        the forms.  There is a forms tab, and I

11        know that everything is there, but I sort

12        of poked around a little bit because

13        there's a box that comes up that says,

14        what do you want to do today?  How can we

15        help you today?  And it says, I want to,

16        and I was looking for I want to file a

17        domestic violence restraining order, and

18        there's nothing there.  And the self-

19        help, there's a number of boxes, but I

20        knew they were there, but I couldn't get

21        to the forms from there.  So that might

22        be something that--

23             JUDGE HANTZ MARCONI:  That's our new

24        website.  I could probably find it on the

25        old one though.  That's very good input

Domestic Violence Task Force - 1/19/22

1      because we just rolled that out, and it

2      does have its glitches.

3           MS. LAFRANCE:  Lynn, doesn't the

4      coalition link on your website somewhere

5      too?  Is Lynn here?  Yeah, there she is.

6           MS. SCHOLLETT:  I am.  Hi.  Do we --

7      I think that we would link to the -- I

8      haven't looked lately, I'm sorry.  I

9      didn't think to do that for today.  I

10     assume we would link to the judicial

11     branch just to make sure we have the most

12     current ones.  I can double check.

13          MS. FREEMAN:  To provide some

14     historical background, there was a debate

15     about whether or not DV and stalking

16     petitions should be available on the

17     internet because some stakeholders had

18     raised the concern about someone starting

19     to fill them out on their computer and an

20     abusive partner finding the petition and

21     it being a safety concern.  When we had

22     the COVID shut down it became apparent we

23     needed to increase access to forms

24     remotely.  And to that end, we put the

25     forms on the website, but that is fairly

Domestic Violence Task Force - 1/19/22

1       new.  And at the same time started the

2       email petition pilot so that people

3       working with crisis centers could submit

4       them electronically.  But actually having

5       the petitions available electronically is

6       a fairly new decision, and there are a

7       host of safety concerns with it that

8       we've been working through.

9               JUDGE HANTZ MARCONI:  Are you

10      talking about interactive, like fillable

11      forms versus just having the form

12      available for someone to print out?  Or

13      is it the same concern with both types?

14              MS. FREEMAN:  Historically, we

15      didn't have the DV petitions on the

16      internet at all because their advocates

17      had raised the safety concern that they

18      just wanted people to be able to access

19      them at the court.  But when COVID hit,

20      we had discussions with stakeholders, and

21      it became apparent that we needed to

22      increase the access and that the risk of

23      not providing it outweighed the risk of

24      something happening.

25              And so that -- so we did two things.



Domestic Violence Task Force - 1/19/22

1        We posted the forms that someone could

2        print out and bring to the court and fill

3        out, and then we also started the email

4        petition pilot program that we're still

5        monitoring and testing, and that is a

6        fillable petition that someone can access

7        if they're working with a crisis center.

8            JUDGE HANTZ MARCONI:  Okay.  So at

9        this point, are there any thoughts about

10       not having these forms available on the

11       web from the group here?  Or is that

12       something that if we can sort out the how

13       to find them problem, we should continue

14       to do?

15           MS. BEEBE:  Can I (indiscernible)?

16           FEMALE SPEAKER:  Go ahead, Kathy.

17           MS. BEEBE:  I understand that safety

18       concern.  However, it is extremely

19       beneficial to have access to the forms

20       electronically.  I mean one of the

21       challenges that we saw was sometimes

22       they're not, they're bringing only a

23       phone for someone to use to fill out the

24       forms, and if it couldn't be done in that

25       manner, then that made it challenging to



Domestic Violence Task Force - 1/19/22

1    the staff to get it to the courthouse or

2    one of the crisis centers to be able to

3    access to do that piece.

4         JUDGE HANTZ MARCONI:  So crisis

5    centers accessing fillable forms doesn't

6    present the same risk that someone doing

7    it at home would, directly from the

8    website?  Although, do you get calls from

9    people at home filling out their own

10   form, and you're guiding them by

11   telephone?

12        DR. HAMPTON:  One of the things

13   that -- go ahead.

14        MS. BEEBE:  I was going to say, it's

15   not ideal, but that did happen during

16   COVID.

17        JUDGE HANTZ MARCONI:  Okay.

18        DR. HAMPTON:  One of the things that

19   I've heard at the visitation center where

20   we'll get some survivors in, and some of

21   the comments we've gotten is that they

22   said, I really like the idea of being

23   able to access the form, but maybe not at

24   my house if I don't feel safe, maybe it's

25   at the library, maybe it's on my phone.

Domestic Violence Task Force - 1/19/22

1        But I really like being able to access it

2        at a time when I'm not standing at a

3        window with someone expecting me to know

4        what I'm supposed to be doing.  It feels

5        a lot less stressful; I can do it on my

6        own time.  So I know people have liked

7        having the option of doing it either way.

8            JUDGE HANTZ MARCONI:  Okay.  And

9        maybe it, again, is a little bit of

10       guidance as to here's this form, make

11       sure you're in a safe place when

12       you're --

13           DR. HAMPSON:  Um-hum.

14           JUDGE HANTZ MARCONI:  -- filling it

15       out.

16           MS. LAFRANCE:  Yeah.  That's what I

17       was going to say.  Have, maybe when

18       they're done or if they go to exit, you

19       get the little popup saying, not only,

20       make sure you close this window, but also

21       delete your history, right?  Because

22       anybody can look on the history and see

23       exactly what page they went to.

24           JUDGE HANTZ MARCONI:  Yes.

25           MALE SPEAKER:  Right.  And one of



Domestic Violence Task Force - 1/19/22

1       the things that people, you know, see the

2       escape button.  And I would encourage any

3       agency that has one to go ahead and have

4       the escape button, and then once you hit

5       escape, go ahead and hit the back button,

6       and on a lot of sites you're going to go

7       right back to the previous page.  And so

8       it's real important to check to make sure

9       that if there's a second layer.  Some of

10      them will have it with the scrolling

11      through five or six pages of the weather

12      report and the food channel and stuff

13      like that, and it's harder to identify.

14      But so many of them immediately go right

15      back, and offenders figure this out in

16      two seconds.

17          MS. FREEMAN:  And that's something

18      we actually considered on our when we

19      were developing some of these forms on

20      our website.  We discuss whether or not

21      we could put an escape button.  But that

22      exact concern was raised to us whether or

23      not it was creating a false sense of

24      safety for survivors when you have a

25      popup and it makes it seem safe, but a



Domestic Violence Task Force - 1/19/22

1        slightly tech savvy perpetrator might be

2        able to find where that person's been.

3              DR. HAMPTON:  Right.  Yes.

4              MS. ZINKIN:  I'm just going to say

5        real quickly in terms of the website, and

6        this is something, Judge, that maybe we

7        can bring up with Brian (ph.).  The way

8        you find the forms you first have to know

9        what court --

10             JUDGE HANTZ MARCONI:  Yes.

11             MS. ZINKIN:  -- these petitions are

12       going to be filed in.  So if you know

13       the -- if you happen to know that that's

14       a district division thing --

15             JUDGE HANTZ MARCONI:  Right.

16             FEMALE SPEAKER:  -- as opposed to

17       family divisions, then you can go form,

18       district division, and there all of the

19       forms are, and you can find the domestic

20       violence petition pretty easily.  But if

21       you are a survivor and you have no

22       idea --

23             JUDGE HANTZ MARCONI:  Right.

24             FEMALE SPEAKER:  -- which division

25       of the circuit court handles DV



Domestic Violence Task Force - 1/19/22

1          petitions, then I can imagine that's

2          pretty difficult.

3                JUDGE HANTZ MARCONI:  Yes.

4                MS. JASINA:  I'd also just like to

5          add in terms of having electronic access

6          to the forms.  Prior to them being

7          available on the court's website you

8          would either go to the court or you would

9          get them from the crisis center.  But

10          then you would probably, typically, if

11          you weren't filling it out at the crisis

12          center, you are filling it out at the

13          courthouse.  And that took considerable

14          amount of time for some people, so they'd

15          spend maybe three hours just writing the

16          petition at the courthouse.  Also, I know

17          that when people were kind of getting

18          to -- not all people but some reports

19          that we received, the victims who went to

20          the courthouse close to 4 o'clock were

21          feeling a lot of pressure.

22                JUDGE HANTZ MARCONI:  Right.

23                FEMALE SPEAKER:  Who went to a

24          conference room, and then there would be

25          repeated check-ins from court staff, like



Domestic Violence Task Force - 1/19/22

1          are you done, are you done, are you done?

2          The judge needs this, the judge needs

3          this.  And that was stressful for a lot

4          of people that we were speaking with and

5          working with.

6               So having the ability to do it at

7          home or do it at a friend's house or do

8          it at a crisis center and taking the time

9          so that you don't feel; one, any pressure

10         to complete it in a particular amount of

11         time; and two, you're not doing it in an

12         environment where you may not feel safe

13         or comfortable; and three, it's just as

14         people for the court really to have to be

15         concerned with in terms of conference

16         rooms and where's everybody at and what's

17         the safety of the person at the

18         courthouse who's filling out this

19         petition who may have been stalked to the

20         courthouse.  So it's just like a lot of

21         really good reasons, I think, that make

22         it seem worth it to have them accessible

23         electronically on the court's website.

24              DR. HAMPTON:  The other reason I

25         would toss out that I've heard from some

Domestic Violence Task Force - 1/19/22

1       people, they say, if they're accessing it

2       on the computer and English is not their

3       primary language, and they're having

4       trouble understanding it, you can do a

5       translate, and then they read the

6       questions, okay, I understand this better

7       than I would have had I just tried had I

8       just tried to get through it in English.

9       They still have to fill it out in the

10      same way, but there's an accessibility

11      feature for being able to access it on

12      the web.

13          JUDGE HANTZ MARCONI:  And if the

14      person is at someone, a friend's house,

15      they don't -- they still have the 4

16      o'clock deadline, but they can work

17      through that and bring it in the next day

18      kind of thing.

19          DR. HAMPTON:  Um-hum.

20          JUDGE HANTZ MARCONI:  Assuming

21      they've got --

22          MS. FREEMAN:  One point of

23      clarification?

24          JUDGE HANTZ MARCONI:  Yes.

25          MS. FREEMAN:  The emailed file



Domestic Violence Task Force - 1/19/22

1    petitions can only be submitted

2    electronically between 8 a.m. and 3 p.m.

3    And the reason for the earlier cutoff is

4    because (indiscernible) at least two

5    phone calls contacts between the filer

6    and court staff.  The first one to

7    confirm that the petition has been

8    received, and then the second one to let

9    the person know the outcome of the

10   decision.  And we needed to make sure

11   that those callers could get in touch

12   with court staff.

13        So as part of the discussions with

14   our multidisciplinary stakeholders group,

15   we decided that the filing period will be

16   8 a.m. to 3 p.m., which is another reason

17   why those email petitions are only

18   available through crisis centers, we're

19   able to safety plan around that concern.

20        JUDGE HANTZ MARCONI:  Okay.  So it

21   would be difficult to or inadvisable to

22   provide interactive forms without that

23   link to the crisis center?

24        MS. FREEMAN:  Yeah.  And we are

25   particularly concerned about someone



Domestic Violence Task Force - 1/19/22

1        potentially submitting a petition after

2        hours and court staff not seeing it until

3        the morning.  And there were concerns

4        about whether or not that person thought

5        they were getting protection overnight or

6        if it was still safe for them to go

7        forward in the morning.  So this was kind

8        of the middle ground that we came up

9        with, with consultation with the crisis

10       center through the Coalition and NHLA and

11       others thinking about safety.

12            JUDGE HANTZ MARCONI:  But if someone

13       who wanted to download, print out, have a

14       copy, walk around with it, nonfillable,

15       but just the form, rather than going to

16       the court, they could do that from the

17       website?  Work on it, fill it out by

18       hand, and bring it in during court hours?

19            FEMALE SPEAKER:  Absolutely.

20            MALE SPEAKER:  Yes.

21            MS. JASINA:  I just want to clarify

22       too that the electronic filing, it was

23       intentional that that link would only be

24       accessible through the crisis centers,

25       but it's also accessible through NHLA.



Domestic Violence Task Force - 1/19/22

1        We have submitted those on behalf of our

2        clients on occasion which has worked

3        really well.  I don't know if we would

4        want to expand that perhaps to the DOVE

5        panel.  But I think just keeping that

6        narrow because we're well connected with

7        the crisis centers so that was part of

8        the reasoning behind expanding that link

9        to include NHLA.

10               MS. FREEMAN:  That's right.  And the

11        Family Justice Center, that's the other

12        group that was be able to access it.  And

13        it really is to ensure that there's that

14        safety planning component because there's

15        a different safety analysis given that

16        this is being done on a computer and

17        there's these phone calls with court

18        staff, and the person filling it isn't in

19        the lobby where there's court security.

20        So given these new safety concerns, we

21        really felt that it was better to have

22        people working directly with an entity

23        that was familiar and comfortable with

24        safety planning.

25               JUDGE HANTZ MARCONI:  Which may not



Domestic Violence Task Force - 1/19/22

1          extend to all the lawyers on the DOVE

2          panel.

3               MS. HORNICK:   I wonder, and this --

4          I don't think this is too far in the

5          weeds but having had to do a lot of these

6          syllable forms online myself, when I've

7          made a mistake and tried to go back or

8          something and then everything disappears

9          because whatever, either the program I'm

10         using or the computer I'm using doesn't

11         have the ability to save the information.

12         I mean, again, I throw that out there

13         whether or not that is true with some of

14         these forms, I don't know.  Although I do

15         know that some of the court forms that I

16         have to tried to fill you can't save and

17         then try to fill out another one.  So I

18         just hope that that's an issue that a

19         victim wouldn't have to sort of endure

20         what with everything else and all the

21         other stress that they are having.

22               So again, I don't know if that's way

23         too far in the weeds, it's probably

24         something, Sarah, that you've figured out

25         and addressed.



Domestic Violence Task Force - 1/19/22

1          But the other comment I just want to

2     make because DOVE has come up a couple of

3     times.  I've worked all over in Coos

4     County, Northern Grafton County, there is

5     such a need for DOVE attorneys up there.

6     And there have been male victims and

7     female victims who have just called my

8     office just begging for whatever I can

9     do, which obviously isn't much, but I

10    just want to make that last comment.

11    Thank you.

12          MS. DODGE:  Thank you.

13          JUDGE HANTZ MARCONI:  It's

14    interesting, and again, this a tough

15    space, and I'll let Pam talk, but the

16    pandemic created some deficiencies in

17    some other areas.  I think of landlord-

18    tenant where you can have counsel from

19    further away assisting folks, and in this

20    space that's a bigger challenge.

21          Go ahead, Pam.

22          MS. DODGE:  Thanks.  Yes, so the

23    North Country has been traditionally a

24    real, real issue for legal services.

25    NHLA has an office up there and they do a

Domestic Violence Task Force - 1/19/22

1       great job, but it's small.  It's a long

2       ways away, and there aren't a lot of

3       attorneys up there.

4           I do want to say that COVID did help

5       support the North Country where it comes

6       to DOVE cases because we had attorneys,

7       private attorneys, who were just taking

8       those cases on a routine basis, and I

9       think that it helped open up some

10      availability through NHLA as well.

11          And just to backtrack real quickly

12      with Erin's thought that perhaps we

13      should open up the online filing for DOVE

14      attorneys.  But that's not the scope of

15      service that we have traditionally asked

16      from the private bar, and it was limited

17      to the final hearing.  However, it

18      doesn't, you know, we couldn't reconsider

19      or look at some kind of pilot with

20      private practitioners as well.

21          And one last thing, kind of going

22      back to an earlier meeting that we had.

23      If we get into a clinic model that online

24      petition would be really important to

25      have so.



Domestic Violence Task Force - 1/19/22

1              JUDGE YAZINSKI:  Sarah, can I ask --

2              MS. DODGE:  I wanted to just tell

3         you that.

4              JUDGE YAZINSKI:  Can I ask you, if

5         we, on a routine basis, allowed lawyers

6         to represent petitioners through Webex

7         because we have the same problem in

8         Sullivan County that the North Country

9         does, we don't have a lot of attorneys,

10        and I rarely see a DOVE attorney.  If we

11        allowed representation routinely through

12        Webex, do you think that would increase

13        our ability to have DOVE attorneys?

14             MS. DODGE:  Absolutely.

15             MS. JASINA:  Yeah, I agree with Pam.

16        One, if there's a benefit to COVID, the

17        one benefit was that we were able to

18        increase access for victims and survivors

19        because we had people in our Concord

20        office handling North Country cases,

21        people in our North Country handling

22        cases in Nashua.  I will say the

23        telephonic hearings were challenging, we

24        didn't have the option of Webex hearings,

25        and that made it difficult in terms of

Domestic Violence Task Force - 1/19/22

1    presenting evidence, and submitting

2    evidence, and cross-examination, and when

3    there were interpreters, that was

4    incredibly challenging.  But maybe

5    exploring Webex hearings, which I know

6    have safety concerns attached, you know,

7    if people are in their homes and abusers

8    being able to see inside the safe space

9    that the victim is at.  So lots of things

10    to consider, but in terms of an access

11    perspective, it definitely increased, so

12    I would agree with Pam on that.

13        JUDGE YAZINSKI:  I would view it or

14    anticipate that you would allow the

15    attorney to appear by Webex, but still

16    expect the parties in court.  We do that

17    in probate all the time and

18    guardianships.  And if it would increase

19    the access to DOVE attorneys, I don't see

20    any reason why we couldn't just have the

21    attorney or the attorney for both clients

22    appearing by Webex.

23        JUDGE HANTZ MARCONI:  And meanwhile,

24    the survivor victim and the advocate

25    would be in court.



Domestic Violence Task Force - 1/19/22

1           JUDGE YAZINSKI:  Along with

2       security.  Correct.

3           JUDGE HANTZ MARCONI:  Along with

4       security.  There is also, and this is,

5       again, future stuff, but we are looking

6       at a pilot and hopefully it will go

7       broader, but putting a remote access

8       setup in the law library here in the

9       Supreme Court building, if you go, where

10      there's security.  And in one of our

11      conference rooms to provide a station for

12      people who don't have compatible

13      technology to do remote hearings.

14          If this is something that works out,

15      we might be able to do that in various

16      locations around the state.  So that's

17      another kind of expansion that might

18      provide some relief.

19          MS. LAFRANCE:  Can I just go back a

20      couple of minutes --

21          JUDGE HANTZ MARCONI:  Yes.

22          FEMALE SPEAKER:  -- to what Marcy

23      was saying about the forms being filled

24      out?

25          JUDGE HANTZ MARCONI:  Yes.



Domestic Violence Task Force - 1/19/22

1           FEMALE SPEAKER:  Maybe the technical

2      person who does the forms can answer

3      this.  Before I bought the advanced Adobe

4      program, I pay for it monthly because I

5      just use Adobe extensively, I'm always

6      scanning things in.  I could not save any

7      forms either from the website, from the

8      judicial website.  I don't know if any

9      other attorneys or anybody else has

10      discovered that, but since I have the

11      advanced one, I can save it.  But I mean,

12      we can only assume unless the person

13      seeking the restraining order uses Adobe

14      regularly and does pay for the advanced

15      program, we can assume that they only

16      have the free one that anybody can get if

17      you download it off of internet.  I don't

18      know if anybody else has discovered that

19      so --

20           JUDGE HANTZ MARCONI:  All right.  I

21      think the forms being available is really

22      just the paper form to be printed out and

23      handwritten at this point.  I think the

24      only fillable aspect, savable or not, is

25      through the crisis centers.

Domestic Violence Task Force - 1/19/22

1           Am I right about that?

2           MS. FREEMAN:  I can speak to the

3      email petition pilot one is savable.

4      There are some technical challenges that

5      we've worked closely with the crisis

6      centers to help people fill out, but on

7      our end, we have to actually make each of

8      those fields specifically fillable, so

9      every form would have to be touched to do

10     that.  It's not -- it was pretty

11     technically challenging and time

12     consuming to do those fill-out petitions

13     that we have right now.

14          And there are technical challenges,

15     which is another reason why it's been so

16     critical at the crisis center connection

17     and having that person be able to work

18     with a survivor if something comes up.

19     And they may have to abandon filling it

20     out by email and getting them to the

21     court in person.  And so we really had

22     that close partnership with the crisis

23     centers in part because of the technical

24     challenges.

25          MR. ENDRES:  When I open the



Domestic Violence Task Force - 1/19/22

1        domestic violence petition from the

2        judicial website, mine is fillable.

3              JUDGE HANTZ MARCONI:  Really?

4              MR. ENDRES:  So.  Yeah.

5              JUDGE HANTZ MARCONI:  Great.

6              MR. ENDRES:  And it's got a little

7        clear form button up at the top, and I

8        can fill that out.

9              MS. ZINKIN:  It is fillable.

10             JUDGE HANTZ MARCONI:  All right.

11             MS. ZINKIN:  And I think I only have

12       the free Adobe.

13             JUDGE HANTZ MARCONI:  But then the

14       question is, can you save it and print

15       it?

16             MS. ZINKIN:  I've been able to save

17       court forms on my computer.

18             MR. ENDRES:  Yeah.

19             MS. ZINKIN:  And printing.

20             JUDGE HANTZ MARCONI:  So then it's a

21       question of the self-represented person

22       fills it out would have to print it and

23       take it to the courthouse?

24             MS. ZINKIN:  Right.

25             MR. ENDRES:  Yeah.  I can print it



Domestic Violence Task Force - 1/19/22

1    and save it as well.

2         JUDGE HANTZ MARCONI:  Okay.  Well,

3    we're advancing --

4         MS. HORNICK:  So  --

5         JUDGE HANTZ MARCONI:  -- as we sit

6    here.

7         MS. HORNICK:  Yeah.  Just check on

8    that because I was able to save before I

9    bought the advanced Adobe, and then I'd

10   go back to edit it and it's empty so.

11        MS. KRUEGER:  You have to save it

12   first and then fill it out.

13        MALE SPEAKER:  Yeah.

14        MS. HORNICK:  You can save it after.

15   I think that's the problem but not -- you

16   have to download it on your computer and

17   open it back up and then fill it out.  So

18   it's like, it's multiple steps that you

19   know --

20        MALE SPEAKER:  Yeah.

21        MS. KRUEGER:  Well, thank you for

22   the lessons on that here, but I'm not

23   sure that -- anyway, thanks.

24        JUDGE HANTZ MARCONI:  At least we've

25   identified hurdles to filling out these

Domestic Violence Task Force - 1/19/22

1      petitions whatever form they take.  All

2      right.  Anything else on court forms?

3           MS. BEAUCHAMP:  (Indiscernible). I'm

4      sorry.

5           JUDGE HANTZ MARCONI:  Go ahead.  I

6      was going say any suggestions for: a,

7      improving forms, b, improving feedback on

8      forms, or anything else?

9           MS. BEAUCHAMP:  I'm wondering if it

10     might be helpful for the forms to

11     actually prompt for a criminal case

12     pending and maybe for a little bit of

13     information about that criminal case.

14          I noticed in the protocols that it

15     suggests that court staff, I don't know

16     peruse Odyssey and to see if there are

17     any pending criminal matters or existing

18     protective orders.  And the form, I

19     think, has checkboxes for is there

20     anything currently that you're involved

21     in; divorce, custody, protective order,

22     other.  And I'm just wondering if

23     something there that specifically says

24     criminal.  And I really don't know how

25     many people seek a civil restraining

Domestic Violence Task Force - 1/19/22

1    order and already have maybe a bail order

2    in place as well that would be helpful

3    for the court to have in front of them

4    with the petition, as well as maybe the

5    charges that might be pending against the

6    defendant.  Just a suggestion.

7         JUDGE HANTZ MARCONI:  Yes.

8         MS. FREEMAN:  (Indiscernible)

9    helpful at times because the court may

10   not be aware of the charges because those

11   charges haven't come into the court yet.

12   So when an incident has happened, we

13   may -- the public often thinks the court

14   knows what the criminal case is, but we

15   may not yet know that there's going to be

16   a prosecution.

17        MS. JASINA:  I had a question about

18   petitions creating a referral to DCYF.

19   If there is something in the petition

20   that indicates abuse or neglect has

21   occurred towards a child, is that an

22   automatic referral from the court to

23   DCYF?  How is that considered, and is

24   there something on the court form, a box

25   that could be checked by the plaintiff



Domestic Violence Task Force - 1/19/22

1        saying that there's concerns about the

2        kids?  I don't know.  I know that's not

3        the really the purpose of 173-B, but I'm

4        just curious if it's an automatic

5        referral in all cases if there is

6        potential abuse or neglect alleged in the

7        petition or how that gets flagged?

8            JUDGE YAZINSKI:  We're mandatory

9        reporters, so if there's an indication

10       that there's abuse or neglect, we fill

11       out a form and send it to DCYF intake.

12           MS. JASINA:  So is that by the judge

13       reviewing the petition and then at the

14       point of deciding whether or not to issue

15       temporary orders?

16           JUDGE YAZINSKI:  Yes.  It occurs at

17       that time.  And generally, I will be

18       specific when I'm making a referral.

19       That referral involves allegations

20       against the party who is committing the

21       abuse or neglect as opposed to asking

22       that the entire family go under

23       investigation.  I limit what I send on to

24       DCYF to the facts that give me cause for

25       concern.  There's never a guarantee that



Domestic Violence Task Force - 1/19/22

1      that's not going to lead to an

2      investigation that leads to petition

3      against a parent or both parents.

4           MS. JASINA:  Okay.  Thank you.

5           JUDGE HANTZ MARCONI:  Interesting

6      intersection of case types.

7           Anything else for today, random or

8      not?  All right.

9           Well, no one listened to Judge

10     Yazinski and brought an edited form, so I

11     don't know that anyone did their homework

12     but --

13          JUDGE YAZINSKI:  That's okay.

14          FEMALE SPEAKER:  We will take all

15     the comments, and Anne is taking notes as

16     we all speak, and put together some

17     recommendations.

18          As I mentioned yesterday, I'm going

19     to be looking for volunteers in various

20     areas to work with, you know, be a

21     sounding board with our team of

22     scriveners in producing some summary and

23     recommendations for the group.  So think

24     about which of these topics, one or more,

25     really grabs your attention.



Domestic Violence Task Force - 1/19/22

 1            And we will reconvene next week on a

 2       topic we touched on today, which is

 3       increasing access to legal counsel and

 4       advocates.  And after that, we are going

 5       to be talking about communication among

 6       the various entities.  I will say I'm

 7       frankly happily amazed at how many people

 8       spend an awful lot of time in this space.

 9       And I think perhaps there's a good

10       opportunity going forward for a little

11       more sharing and a coordinated effort.

12       So I'm looking forward to that one as

13       well.

14            So you may proceed away.  I thank

15       you again for your active involvement and

16       until the next time.

17            MS. ZINKIN:  See you all Monday.  I

18       mean Friday.

19            FEMALE SPEAKER:  And  don't forget

20       the public hearing.

21            MS. ZINKIN:  Oh, that's right.

22            JUDGE HANTZ MARCONI:  Don't forget

23       the public hearing.  So if you can attend

24       in person, yay, I want a critical mass of

25       people in person.  If you can't, it will

Domestic Violence Task Force - 1/19/22

1      be live streamed and recorded so that

2      those of you who can't attend can hear

3      what we hear.  If anyone is watching in

4      real time and has a comment for -- I

5      don't think we're going to be asking a

6      lot of questions, but if there is an

7      inquiry that needs to be followed up on

8      with any particular speaker, you can

9      email Lisa (ph.) or me or Anne, and we

10     will follow up as needed.

11         But again, this is really our

12     opportunity to hear from members of the

13     public, so I don't expect any kind of

14     inquisition.  And like I said, those who

15     can be here in person, we will do our

16     best to represent the task force.

17         All right.  Any other questions on

18     Friday?  No?  See you Friday.  Thanks.

19

20

21

22

23

24

25



1          C E R T I F I C A T I O N

2

3          I, Amy Alessi, certify that the foregoing

4          transcript is a true and accurate record

5          of the proceedings.

6

7

8

9    _____

10         Amy Alessi (CDLT-209)

11         TTA-Certified Digital Legal Transcriber

12

13         eScribers

14         352 Seventh Avenue, Suite #604

15         New York, NY 10001

16

17         Date:  March 4, 2022

18

19

20

21

22

23

24

25



**A**

**a.m** 41:2,16
**abandon** 51:19
**ability** 39:6
  44:11 47:13
**able** 8:18 32:18
  34:2,23 35:1
  37:2 40:11
  41:19 43:12
  47:17 48:8
  49:15 51:17
  52:16 53:8
**Absolutely**
  15:24 42:19
  47:14
**abuse** 7:21
  29:12 55:20
  56:6,10,21
**abused** 7:25
**abusers** 48:7
**abusive** 31:20
**access** 11:19
  16:5 31:23
  32:18,22 33:6
  33:19 34:3,23
  35:1 38:5
  40:11 43:12
  47:18 48:10,19
  49:7 58:3
**accessibility**
  40:10
**accessible** 39:22
  42:24,25
**accessing** 34:5
  40:1
**accurate** 60:4
**Act** 19:20
**active** 58:15
**actual** 19:10
  29:14
**add** 22:2 38:5
**addition** 5:22
  12:10 18:11
  26:21
**additional** 27:4
**addressed** 44:25
**addressing**
  21:20
**adequately**

14:20
**Administrator**
  2:20
**Adobe** 50:3,5,13
  52:12 53:9
**Adult** 13:11
**advanced** 13:21
  50:3,11,14
  53:9
**advancing** 53:3
**advice** 12:8
  14:10 16:25
  22:1
**advise** 21:17
**advocacy** 16:11
**advocate** 9:2
  13:16,17,18
  14:1,18,25
  15:11 16:5
  48:24
**advocates** 11:22
  13:23 15:4,7
  15:17 16:17,19
  16:24 17:4
  32:16 58:4
**Affairs** 2:11
**agency** 19:8
  36:3
**ago** 3:21 4:20
  12:16
**agree** 12:23
  47:15 48:12
**agreed** 19:17
**ahead** 13:8
  33:16 34:13
  36:3,5 45:21
  54:5
**aid** 8:21 20:4
  21:9
**Alessi** 60:3,10
**allegations**
  22:16,18,19,24
  23:2,22 25:1,4
  56:19
**alleged** 56:6
**allow** 48:14
**allowed** 23:21
  47:5,11
**allowing** 4:11

**Amanda** 2:10
**amazed** 58:7
**amount** 4:4
  19:18 38:14
  39:10
**Amy** 60:3,10
**analysis** 43:15
**Anecdotally**
  14:24
**Ann** 1:24
**Anna** 1:12
**Anne** 2:22 9:7
  27:18 57:15
  59:9
**answer** 7:6 50:2
**anticipate** 48:14
**anticipated**
  10:20
**anybody** 35:22
  50:9,16,18
**anyway** 53:23
**AOC** 26:10
**apparent** 31:22
  32:21
**appear** 48:15
**appearing** 48:22
**approach** 7:20
**area** 10:22 19:6
**areas** 3:8 11:4
  22:22 45:17
  57:20
**Ashley** 12:18
**asked** 46:15
**asking** 10:9
  56:21 59:5
**aspect** 50:24
**assault** 24:7
**assist** 6:20
**assistance** 2:3
  8:20,22 9:10
  14:25 15:13
  16:6 19:21
  22:10
**Assistant** 1:22
**assisting** 8:15
  18:13 45:19
**Associate** 1:13
**Association** 2:6
  2:13

**assume** 31:10
  50:12,15
**Assuming** 40:20
**attached** 48:6
**attend** 58:23
  59:2
**attention** 57:25
**attorney** 1:22,25
  2:1,14,15,17
  14:1 16:15
  18:21 19:10
  47:10 48:15,21
  48:21
**Attorney's** 1:21
**attorneys** 2:13
  11:21 17:1,11
  18:8,9 19:8
  20:5 22:6 45:5
  46:3,6,7,14
  47:9,13 48:19
  50:9
**automatic** 55:22
  56:4
**availability**
  46:10
**available** 11:3
  11:17 31:16
  32:5,12 33:10
  38:7 41:18
  50:21
**Avenue** 60:14
**aware** 11:8
  55:10
**awful** 58:8

**B**

**b** 54:7
**back** 8:5 21:16
  26:17 36:5,7
  36:15 44:7
  46:22 49:19
  53:10,17
**background**
  15:10 31:14
**backtrack** 46:11
**bail** 29:10 55:1
**bar** 21:9 26:2
  46:16
**Barbara** 1:12

**Barton** 1:16
**basis** 29:21 46:8
  47:5
**Beauchamp**
  1:17 54:3,9
**Beebe** 1:19 9:6
  14:4 15:24
  27:21 33:15,17
  34:14
**begging** 45:8
**beginning** 9:4
**behalf** 43:1
**believe** 5:15
**Belknap** 1:20
**beneficial** 14:11
  33:19
**benefit** 47:16,17
**Bernier** 1:20
**best** 20:1 59:16
**bet** 3:9
**Betsy** 2:17 5:23
**better** 12:20
  15:1 40:6
  43:21
**big** 21:10
**bigger** 45:20
**bit** 3:7 6:17 8:18
  12:6 30:9,12
  35:9 54:12
**Black** 2:15
**board** 57:21
**bold** 23:25
**Bono** 8:20 21:8
**borrow** 12:5
**bought** 50:3
  53:9
**box** 22:22 24:5
  27:22 30:13
  55:24
**boxes** 30:19
**branch** 30:8
  31:11
**break** 14:16
**breaking** 9:11
**Brian** 37:7
**bring** 22:4 33:2
  37:7 40:17
  42:18
**bringing** 21:15

33:22
**broader** 49:7
**broken** 13:7
**brought** 57:10
**building** 49:9
**bulk** 12:1
**business** 25:23
**button** 36:2,4,5
36:21 52:7

**C**
**C** 60:1,1
**call** 7:5 15:11
28:11
**called** 45:7
**callers** 41:11
**calls** 34:8 41:5
43:17
**Carbon** 5:14,15
**CASA** 2:17
**case** 15:22,22
22:6 54:11,13
55:14 57:6
**cases** 8:24 18:12
18:13 20:6
46:6,8 47:20
47:22 56:5
**cause** 56:24
**CDLT-209**
60:10
**center** 3:20
13:22 14:18
16:4,11 17:3,6
17:10 18:19
21:22 33:7
34:19 38:9,12
39:8 41:23
42:10 43:11
51:16
**centers** 8:14,15
14:13 17:8
18:10 20:1,23
32:3 34:2,5
41:18 42:24
43:7 50:25
51:6,23
**certain** 22:22
29:3
**certainly** 11:5

17:1 18:6
**certify** 60:3
**challenge** 3:7
5:24 9:9 21:15
45:20
**challenges** 14:6
14:8 33:21
51:4,14,24
**challenging**
33:25 47:23
48:4 51:11
**change** 3:25
20:15
**changed** 8:17
**changes** 5:1
**channel** 36:12
**charge** 3:4 27:25
28:2
**charges** 55:5,10
55:11
**check** 5:18
22:22 24:6,7
26:22 31:12
36:8 53:7
**check-ins** 38:25
**checkboxes**
54:19
**checked** 55:25
**checking** 24:4
**checks** 27:5
**Chiefs** 2:7
**child** 55:21
**chime** 20:17
**choices** 10:18
**choose** 7:9
**choosing** 12:23
**circuit** 1:15,16
2:19 26:7
37:25
**City** 16:16 17:16
19:6
**City's** 16:14
**civil** 6:23 25:13
25:18 54:25
**clarification**
40:23
**clarify** 42:21
**clear** 10:12 52:7
**clerk** 1:16 2:22

10:6,9
**clients** 17:2 43:2
48:21
**clinic** 46:23
**close** 35:20
38:20 51:22
**closely** 51:5
**coalition** 2:9,11
19:16 31:4
42:10
**collaboratively**
18:16
**collect** 29:16
**collected** 5:25
6:7
**combines** 16:10
**come** 11:15
13:25 15:9
19:19,22 45:2
55:11
**comes** 6:21
25:24 30:13
46:5 51:18
**comfortable**
39:13 43:23
**comment** 10:7
45:1,10 59:4
**comments** 4:23
34:21 57:15
**Commission**
11:20
**committee** 26:3
**committing**
56:20
**communication**
58:5
**community** 9:2
18:15
**companion** 13:2
**compatible**
49:12
**complete** 39:10
**completely**
12:24
**component**
43:14
**computer** 7:4
28:6 31:19
40:2 43:16

44:10 52:17
53:16
**concern** 31:18
31:21 32:13,17
33:18 36:22
41:19 56:25
**concerned** 39:15
41:25
**concerns** 32:7
42:3 43:20
48:6 56:1
**concise** 9:25
**Concord** 47:19
**conduct** 26:22
26:23
**conference**
38:24 39:15
49:11
**configured** 3:16
**confirm** 41:7
**connected** 43:6
**connection**
26:14 51:16
**consider** 23:12
48:10
**considerable**
38:13
**considered**
36:18 55:23
**consultation**
42:9
**consuming**
51:12
**contacts** 41:5
**continue** 33:13
**conversations**
12:17
**cooperation**
26:3
**coordinated**
20:5 58:11
**Coos** 45:3
**copy** 7:3 42:14
**corners** 23:11
**correct** 12:23
15:17 17:23
18:1,2 49:2
**correction** 15:23
**costly** 21:1

**counsel** 15:6
16:11,23 21:19
45:18 58:3
**Country** 45:23
46:5 47:8,20
47:21
**County** 1:21,22
1:23,24 45:4,4
47:8
**couple** 12:16
17:15 45:2
49:20
**course** 12:9
**court** 1:13,14,15
1:16 2:19 3:4
6:8 10:23
11:23 12:9
13:20 17:20
22:20,23 23:10
24:21 25:18
26:21 30:5,8
32:19 33:2
37:9,25 38:8
38:25 39:14
41:6,12 42:2
42:16,18 43:17
43:19 44:15
48:16,25 49:9
51:21 52:17
54:2,15 55:3,9
55:11,13,22,24
**court's** 38:7
39:23
**courthouse**
21:21 34:1
38:13,16,20
39:18,20 52:23
**courts** 3:21
12:18 26:3,6
**COVID** 8:17 9:4
31:22 32:19
34:16 46:4
47:16
**created** 45:16
**creating** 12:13
12:19 36:23
55:18
**credit** 29:9
**criminal** 2:13

25:17 29:10
54:11,13,17,24
55:14
**crisis** 8:14,14
13:22 14:13,18
16:4 17:3,6,8
17:10 18:10,18
20:1 21:22
32:3 33:7 34:2
34:4 38:9,11
39:8 41:18,23
42:9,24 43:7
50:25 51:5,16
51:22
**crisis-center**
13:17
**critical** 16:4
22:1 51:16
58:24
**cross-examina...**
48:2
**curious** 56:4
**current** 3:16
31:12
**currently** 20:14
54:20
**custody** 54:21
**cutoff** 41:3

**D**

**dare** 28:4
**database** 6:4,5
**databases** 6:3,10
29:8
**date** 7:21 27:1
60:17
**David** 2:6,14
**day** 40:17
**days** 8:6
**DCYF** 55:18,23
56:11,24
**deadline** 40:16
**debate** 31:14
**decide** 10:17
**decided** 41:15
**deciding** 56:14
**decision** 12:13
12:20 13:14
32:6 41:10

**defendant** 55:6
**defending** 23:14
**Defense** 2:13
**deficiencies**
45:16
**definitely** 48:11
**delete** 35:21
**describe** 26:24
**detail** 3:24 24:11
24:14
**detriment** 20:13
**developing**
36:19
**diagnoses** 11:14
**Diane** 1:14
**difference** 11:6
**different** 4:7 8:3
9:17 19:24
43:15
**difficult** 38:2
41:21 47:25
**difficulty** 30:9
**Digital** 60:11
**directions** 10:8
**directive** 12:7
**directly** 30:3
34:7 43:22
**Director** 1:17,19
2:2,4,8,10,21
**disappears** 44:8
**discovered**
11:20 50:10,18
**discuss** 13:14
36:20
**discussion** 22:14
25:20
**discussions**
32:20 41:13
**disorderly** 26:23
**distinction**
13:24 15:3
**district** 37:14,18
**division** 37:14
37:18,24
**divisions** 37:17
**divorce** 18:12
54:21
**Dodge** 2:18 18:6
20:20 22:2

45:12,22 47:2
47:14
**doing** 15:9 18:10
20:6 34:6 35:4
35:7 39:11
**DOJ** 2:3
**domestic** 1:6
14:2 20:25
21:4 30:17
37:19 52:1
**double** 31:12
**DOVE** 2:14,18
8:6 19:3 43:4
44:1 45:2,5
46:6,13 47:10
47:13 48:19
**download** 42:13
50:17 53:16
**DR** 34:12,18
35:13 37:3
39:24 40:19
**Dropbox** 26:19
27:12,22 28:3
28:5,20,21
**due** 23:1 25:2
**DV** 2:21 4:21
6:22 7:9 8:16
10:18 11:7
25:12 29:4,11
31:15 32:15
37:25

**E**

**E** 60:1
**earlier** 9:12 29:1
41:3 46:22
**easier** 21:18
22:23
**easily** 37:20
**echo** 13:15
20:20
**edit** 53:10
**edited** 57:10
**edits** 4:21,23
**effective** 18:19
20:8
**effort** 3:17,20
58:11
**eFiling** 21:24

**eight** 26:4
**either** 6:22 9:25
10:13 35:7
38:8 44:9 50:7
**electronic** 38:5
42:22
**electronically**
32:4,5 33:20
39:23 41:2
**email** 25:14 32:2
33:3 41:17
51:3,20 59:9
**emailed** 40:25
**employees** 17:10
**empty** 53:10
**encourage** 36:2
**Endres** 1:22
30:2 51:25
52:4,6,18,25
**endure** 44:19
**enforce** 4:3
**enforceable** 3:19
**enforcement**
3:19 4:1 6:10
29:8
**English** 40:2,8
**enhanced** 10:8
**ensure** 6:1,9
43:13
**entered** 6:2 29:7
29:18
**entire** 56:22
**entities** 58:6
**entitled** 23:13
24:25 29:8
**entity** 43:22
**environment**
39:12
**equal** 25:6
**equally** 24:24
**Erin** 2:21 6:25
**Erin's** 46:12
**escape** 36:2,4,5
36:21
**eScribers** 60:13
**establish** 20:22
**everybody** 16:22
39:16
**evidence** 48:1,2

**ex-** 16:1
**exact** 36:22
**exactly** 25:1
35:23
**example** 11:1
**excluded** 28:20
**Executive** 1:19
2:8
**existing** 54:17
**exit** 35:18
**expand** 9:19
43:4
**expanding** 43:8
**expansion** 49:17
**expect** 48:16
59:13
**expecting** 35:3
**experience** 4:11
21:7
**expert** 28:20
**explain** 11:6
**exploring** 48:5
**extend** 44:1
**extensively** 50:5
**extremely** 9:21
33:18

**F**

**F** 60:1
**faced** 7:8
**faces** 3:2
**fact** 21:20
**facts** 56:24
**fair** 23:3
**fairly** 31:25 32:6
**faith** 29:9
**false** 24:5 36:23
**familiar** 43:23
**Families** 17:18
**family** 20:23
28:9 37:17
43:11 56:22
**far** 10:20 24:8
44:4,23
**feature** 40:11
**Federal** 6:4
**feedback** 25:25
26:6 29:23
54:7

**feel** 20:17 34:24
  39:9,12
**feeling** 7:19
  38:21
**feels** 35:4
**felt** 43:21
**female** 33:16
  37:16,24 38:23
  42:19 45:7
  49:22 50:1
  57:14 58:19
**fields** 51:8
**fifteen** 18:17
**fifth** 3:3
**figure** 11:14
  18:18 36:1:9
**figured** 44:24
**file** 30:16 40:25
**filed** 8:24,25
  37:12
**filer** 41:5
**filing** 41:15
  42:22 46:13
**fill** 9:10 11:20
  14:21 15:15
  29:17 31:19
  33:2,23 40:9
  42:17 44:16,17
  51:6 52:8
  53:12,17 56:10
**fill-out** 51:12
**fillable** 32:10
  33:6 34:5
  50:24 51:8
  52:2,9
**filled** 8:7 49:23
**filling** 6:18,20
  8:16 13:18
  16:20,22 34:9
  35:14 38:11,12
  39:18 43:18
  51:19 53:25
**fills** 52:22
**final** 46:17
**find** 7:21 15:14
  30:6,24 33:13
  37:2,8,19
**finding** 22:20
  31:20

**findings** 24:22
**first** 10:23 37:8
  41:6 53:12
**five** 7:17 36:11
**flagged** 56:7
**flow** 19:23
**focus** 9:12 22:25
**focused** 4:13
**folks** 12:11 14:4
  15:17 45:19
**follow** 59:10
**followed** 59:7
**food** 36:12
**force** 1:6 59:16
**foregoing** 60:3
**forget** 58:19,22
**form** 4:9,21 5:1
  6:18,21 7:8
  12:23 24:1
  25:16,24 26:12
  26:19 27:11,22
  29:24,25 30:3
  32:11 34:10,23
  35:10 37:17
  42:15 50:22
  51:9 52:7 54:1
  54:18 55:24
  56:11 57:10
**format** 3:23
  22:3
**forms** 3:5,6,9,11
  3:13,16 4:2,8
  5:4 9:10 12:6
  14:16,21 21:16
  21:18 22:14,21
  25:10,13,14,15
  25:17,19 26:21
  28:7,24 29:20
  30:5,6,10,10
  30:21 31:23,25
  32:11 33:1,10
  33:19,24 34:5
  36:19 37:8,19
  38:6 41:22
  44:6,14,15
  49:23 50:2,7
  50:21 52:17
  54:2,7,8,10
**forward** 4:25

13:3,13 25:21
  30:1 42:7
  58:10,12
**found** 27:21
  30:7
**four** 23:11
**fourth** 3:4
**framework** 22:8
**frankly** 58:7
**free** 20:17 50:16
  52:12
**Freeman** 2:19
  5:10,21 6:14
  13:5,9 16:13
  17:9,15,23
  18:2 29:6
  31:13 32:14
  36:17 40:22,25
  41:24 43:10
  51:2 55:8
**Friday** 58:18
  59:18,18
**friend's** 39:7
  40:14
**friends** 12:2
**front** 55:3
**fulfilling** 25:2
**full** 29:9
**function** 11:23
**functions** 17:20
**funded** 17:21
**funding** 8:12,12
  8:13 21:2
**fundraising**
  17:22
**funds** 19:23
**further** 45:19
**future** 49:5

———————
**G**
**gap** 5:13 11:21
  15:15
**gather** 6:16
**general** 7:11,24
  11:5 23:6
**generally** 7:22
  56:17
**geographic** 19:6
**getting** 8:6,23

11:10 14:19
  29:23 38:17
  42:5 51:20
**give** 12:2 14:10
  26:5 56:24
**given** 4:22 43:15
  43:20
**giving** 12:8
**glitch** 25:24
**glitches** 31:2
**go** 11:12 13:7,13
  28:5 29:3
  33:16 34:13
  35:18 36:3,5,6
  36:14 37:17
  38:8 42:6 44:7
  45:21 49:6,9
  49:19 53:10
  54:5 56:22
**goes** 8:5
**going** 3:5,8 6:9
  12:1,7 13:6,9
  15:20 23:12,21
  25:21 26:17
  30:1 34:14
  35:17 36:6
  37:4,12 42:15
  46:21 54:6
  55:15 57:1,18
  58:4,10 59:5
**good** 4:7 5:7
  12:3 27:13
  30:25 39:21
  58:9
**gotten** 34:21
**grabs** 57:25
**Grady** 2:10
**Grafton** 1:24
  45:4
**grant** 19:22
  24:23
**grants** 17:21
**great** 46:1 52:5
**greatest** 15:25
**ground** 42:8
**group** 2:16
  25:22 33:11
  41:14 43:12
  57:23

**guarantee** 56:25
**guardianships**
  48:18
**guidance** 11:11
  13:1 16:20
  35:10
**guided** 21:24
**guiding** 34:10

———————
**H**
**hallmarks** 30:4
**Hampshire** 1:13
  2:9,11,12
  15:13 17:25
  19:2 20:9 22:9
  28:8
**HAMPSON**
  35:13
**Hampton** 2:4,6
  34:12,18 37:3
  39:24 40:19
**hand** 42:18
**handles** 37:25
**handling** 47:20
  47:21
**handwritten**
  50:23
**Hantz** 1:12 3:1
  4:6 5:8,11,16
  5:20 6:11,19
  8:4 9:1 10:25
  13:6 14:22
  16:7 17:5,13
  17:19,24 18:3
  18:22 19:1
  21:12 24:12,17
  25:8 27:9,13
  27:15,24 28:4
  28:15,19 29:20
  30:23 32:9
  33:8 34:4,17
  35:8,14,24
  37:10,15,23
  38:3,22 40:13
  40:20,24 41:20
  42:12 43:25
  45:13 48:23
  49:3,21,25
  50:20 52:3,5

52:10,13,20
53:2,5,24 54:5
55:7 57:5
58:22
**happen** 34:15
37:13
**happened** 5:5,9
7:23 20:16
55:12
**happening**
32:24
**happens** 8:9
**happily** 58:7
**harassed** 7:24
**harassment**
26:23
**hard** 7:3 9:22,22
9:23 20:15
**harder** 19:22
36:13
**Haven** 1:19
**hear** 3:12 14:5
59:2,3,12
**heard** 34:19
39:25
**hearing** 23:3
24:9 46:17
58:20,23
**hearings** 47:23
47:24 48:5
49:13
**Held** 1:8
**help** 10:11,17
11:17 12:21
14:13,15,16
21:22 30:15,19
46:4 51:6
**helped** 46:9
**helpful** 4:18
9:21 10:22
23:24 54:10
55:2,9
**helping** 8:8 9:9
18:11
**Hi** 31:6
**hiring** 19:25
**historian** 3:15
**historical** 31:14
**Historically**

32:14
**history** 35:21,22
**hit** 8:17 32:19
36:4,5
**Hobbs** 2:6
**home** 34:7,9
39:7
**homes** 48:7
**homework**
57:11
**Hon** 1:12,14,15
**Honor** 3:14 5:13
55:12
**hope** 44:18
**hopefully** 49:6
**hoping** 10:16
**Horizon** 17:17
**Hornick** 1:24
44:3 53:4,7,14
**host** 32:7
**hours** 38:15
42:2,18
**house** 34:24
39:7 40:14
**huge** 19:18
**human** 12:25
**hurdle** 7:7,10
**hurdles** 6:22
53:25

---
**I**

**idea** 16:8 34:22
37:22
**ideal** 18:21
34:15
**ideas** 3:10 25:11
**identified** 53:25
**identify** 3:8
22:23 36:13
**imagine** 38:1
**immediately**
36:14
**impact** 6:13
**impactful** 9:24
**impacts** 6:14
**important** 14:14
24:2,24 36:8
46:24
**imprisonment**
24:6

**improved** 3:9,11
**improvement**
4:10 25:11
**improvements**
21:17
**improving** 54:7
54:7
**inadvisable**
41:21
**incident** 9:19
26:25 27:1,2
55:12
**include** 9:14,22
10:8 22:21
43:9
**included** 23:18
**includes** 6:3
**incorporated**
17:7
**increase** 31:23
32:22 47:12,18
48:18
**increased** 48:11
**increasing** 58:3
**incredibly** 48:4
**indicates** 55:20
**indication** 56:9
**indiscernible**
9:16 14:12
27:16 33:15
41:4 54:3 55:8
**information**
5:25 6:7,15
10:2,3,19
14:20 16:20,25
24:21 27:8
29:3,17 44:11
54:13
**initially** 7:8 8:13
**injuries** 27:3
**input** 30:25
**inquiry** 59:7
**inquisition**
59:14
**inside** 48:8
**insofar** 6:14
**intake** 56:11
**intentional**
42:23

**interactive**
32:10 41:22
**interesting**
14:23 45:14
57:5
**internally** 29:22
**internet** 11:13
31:17 32:16
50:17
**interpreters**
48:3
**intersection**
57:6
**interviews** 21:24
**invaluable**
13:15
**investigation**
56:23 57:2
**Investigator**
1:20
**involved** 10:21
22:16 54:20
**involvement**
58:15
**involves** 56:19
**issue** 4:8 12:11
18:14 23:17
25:9 44:18
45:24 56:14
**issued** 8:2
**issues** 25:7

---
**J**

**January** 1:7
**Jasina** 2:21 4:19
7:2 8:10 38:4
42:21 47:15
55:17 56:12
57:4
**Jean** 26:10
**job** 46:1
**John** 1:15
**Jon** 2:12 26:17
**judge** 1:14,15
3:1 4:6 5:8,11
5:14,15,16,20
6:11,19 8:4 9:1
10:4,25 13:6
14:22 16:7

17:5,13,19,24
18:3,22 19:1
21:12 24:12,17
25:8 27:9,13
27:15,24 28:4
28:15,19 29:20
30:23 32:9
33:8 34:4,17
35:8,14,24
37:6,10,15,23
38:3,22 39:2,2
40:13,20,24
41:20 42:12
43:25 45:13
47:1,4 48:13
48:23 49:1,3
49:21,25 50:20
52:3,5,10,13
52:20 53:2,5
53:24 54:5
55:7 56:8,12
56:16 57:5,9
57:13 58:22
**Judges** 12:17
**judicial** 30:8
31:10 50:8
52:2
**justice** 1:13
11:19 20:23
43:11
**juvenile** 29:12

---
**K**

**Kathy** 1:19
33:16
**keep** 3:23 4:17
24:3 27:11
**keeping** 43:5
**kids** 56:2
**kind** 7:4 12:13
12:19 20:24
21:2 22:3 29:1
38:17 40:18
42:7 46:19,21
49:17 59:13
**kinds** 11:13
**King** 12:18
**kitchen** 7:19
**knew** 30:20

**know** 3:11 4:1,2
4:24 5:9 7:12
7:13 9:13,22
9:23 10:25
11:11 14:4
16:8 18:20
23:5,24 26:6
26:22 27:20
28:17,25 29:2
29:2 30:11
35:3,6 36:1
37:8,12,13
38:16 41:9
43:3 44:14,15
44:22 46:18
48:5,6 50:8,18
53:19 54:15,24
55:15 56:2,2
57:11,20
**knows** 55:14
**Kristyn** 1:20
**Krueger** 2:1
5:14 18:4,23
19:13 53:11,21

**L**

**lack** 12:20 21:25
**LaFrance** 2:15
27:7,10,14,17
28:13,17,22
31:3 35:16
49:19
**landlord-** 45:17
**language** 40:3
**LARC** 8:19
**lately** 31:8
**law** 2:16,22 3:19
4:1 6:10 11:1
29:7 49:8
**lawyer** 13:17
**lawyers** 19:4,25
26:5 44:1 47:5
**layer** 36:9
**lead** 57:1
**leads** 57:2
**legal** 2:18 8:21
12:8 14:10
15:3,6,13 16:6
16:10,23,25

18:10,15 19:4
19:20 20:3,3
21:9,19 22:9
45:24 58:3
60:11
**legislation** 13:11
13:12
**legislative** 12:2
**lessons** 53:22
**level** 13:21
**LibGuides** 11:3
**library** 11:1
34:25 49:8
**liked** 9:11 35:6
**limit** 19:25
56:23
**limited** 19:14
21:10 46:16
**limits** 20:9
**line** 12:8 26:9
**link** 15:12 31:4
31:7,10 41:23
42:23 43:8
**Lisa** 59:9
**listed** 9:17 25:13
**listened** 57:9
**listing** 10:1
**literally** 24:4
**litigate** 24:9
25:7
**little** 6:17 9:6
12:6 22:12
30:9,12 35:9
35:19 52:6
54:12 58:10
**live** 59:1
**lobby** 43:19
**located** 14:12
**locating** 30:9
**location** 27:2
**locations** 49:16
**long** 46:1
**longer** 6:17
20:18
**look** 4:2 5:24
11:12 35:22
46:19
**looked** 5:3 12:19
31:8

**looking** 12:14
15:21 25:10
26:1,18 30:16
49:5 57:19
58:12
**lose** 22:25
**lot** 8:20 12:11
35:5 36:6
38:21 39:3,20
44:5 46:2 47:9
58:8 59:6
**lots** 3:24 48:9
**Lyn** 2:8
**Lynda** 2:2
**Lynn** 31:3,5

**M**

**making** 12:6,14
12:20 25:3
56:18
**male** 35:25
42:20 45:6
53:13,20
**manager** 26:10
**mandatory** 56:8
**manner** 33:25
**March** 60:17
**Marconi** 1:12
3:1 4:6 5:8,11
5:16,20 6:11
6:19 8:4 9:1
10:25 13:6
14:22 16:7
17:5,13,19,24
18:3,22 19:1
21:12 24:12,17
25:8 27:9,13
27:15,24 28:4
28:15,19 29:20
30:23 32:9
33:8 34:4,17
35:8,14,24
37:10,15,23
38:3,22 40:13
40:20,24 41:20
42:12 43:25
45:13 48:23
49:3,21,25
50:20 52:3,5

52:10,13,20
53:2,5,24 54:5
55:7 57:5
58:22
**Marcy** 49:22
**Martha** 1:24
**Mary** 1:16 2:1
**mass** 58:24
**materials** 9:17
**matters** 54:17
**mean** 20:20
21:13 33:20
44:12 50:11
58:18
**means** 29:10
**medical** 11:14
**meet** 10:16
**meeting** 1:6 3:3
10:15 46:22
**meetings** 12:16
26:9
**meets** 26:4
**members** 59:12
**mentioned**
57:18
**merger** 8:19
20:15
**Merrill** 1:17
**Merrimack** 1:23
**message** 23:20
**middle** 42:8
**mind** 6:21 24:3
**mindful** 23:5
**mine** 52:2
**minutes** 49:20
**missing** 5:16
15:12
**mistake** 44:7
**model** 16:10,14
16:17 18:1
19:6 20:8
46:23
**models** 16:9
18:18
**Monday** 58:17
**money** 12:3
19:15,15,17,21
19:24
**monies** 19:18

**monitoring** 33:5
**monthly** 26:4
50:4
**months** 26:4
**morning** 42:3,7
**motion** 25:16
**moved** 4:25
**moving** 13:3
**multidisciplin...**
41:14
**multifaceted**
21:3
**multiple** 53:18
**muted** 28:1

**N**

**N** 60:1
**name** 11:22
**narrative** 4:12
7:14 27:6
**narrow** 43:6
**Nashua** 47:22
**national** 3:17,20
**nationally** 16:9
**NCIC** 6:4,6
29:19
**necessarily** 8:8
14:19 20:1
23:22
**necessary** 27:4
**need** 3:22 5:24
6:15 7:19
14:20 24:10
26:8 45:5
**needed** 5:6 6:1
6:17 16:23
31:23 32:21
41:10 59:10
**needing** 9:12
**needs** 4:1 21:11
24:22 29:16
39:2,2 59:7
**neglect** 55:20
56:6,10,21
**network** 21:14
**never** 56:25
**new** 1:13 2:8,11
2:12 3:6 9:15
12:4 15:13

16:13,16 17:16
17:24 19:2,5
20:8 22:9
26:18 27:11,21
28:8,9 30:23
32:1,6 43:20
60:15
**NH** 1:19 2:3,6
2:17
**NHBA** 2:18
**NHJB** 2:19
**NHLA** 2:1,21
4:22 14:12
18:7 19:3 21:7
42:10,25 43:9
45:25 46:10
**NHSC** 2:22,23
**Nicolosi** 1:14
**nine** 26:4
**nonfillable**
42:14
**nonprofit** 19:7
**norm** 9:5
**North** 45:23
46:5 47:8,20
47:21
**Northern** 45:4
**notes** 57:15
**notice** 22:18
23:2,13 25:5
**noticed** 23:23
54:14
**notion** 22:16
23:1 24:18
**number** 3:21
7:11 30:19
**NY** 60:15

**O**

**O** 60:1
**o'clock** 38:20
40:16
**objection** 23:15
**obviously** 26:2
29:22 45:9
**occasion** 43:2
**occurred** 22:15
55:21
**occurs** 56:16

**Odyssey** 54:16
**offenders** 36:15
**Offense** 28:9
**office** 1:21 2:2
7:3 45:8,25
47:20
**oftentimes** 7:15
**oh** 13:7 58:21
**okay** 4:6 5:11
6:19 12:16
17:13 18:3
24:5 27:14
28:16 33:8
34:17 35:8
40:6 41:20
53:2 57:4,13
**old** 30:25
**once** 8:16 36:4
**one-stop** 20:24
**ones** 9:15 31:12
**ongoing** 21:14
**online** 44:6
46:13,23
**onsite** 8:14,19
18:9,21
**open** 46:9,13
51:25 53:17
**operate** 21:19
**opportunity**
9:19 25:6
58:10 59:12
**opposed** 37:16
56:21
**option** 35:7
47:24
**order** 3:22 4:14
6:8,18 13:12
16:3,21,23
24:23 25:19
29:6,11,11,12
29:14 30:17
50:13 54:21
55:1,1
**orders** 3:18 6:1
6:5,9,12 8:1,2
29:13 54:18
56:15
**organization**
16:16,18 17:12

17:14
**outcome** 41:9
**outline** 7:20
**outreach** 11:2
**outweighed**
32:23
**overhaul** 5:4
**overnight** 42:5

**P**

**p.m** 41:2,16
**page** 35:23 36:7
**pages** 7:17 36:11
**Paine** 2:17 3:14
5:12
**Pam** 2:18 18:6
20:17 45:15,21
47:15 48:12
**pandemic** 45:16
**panel** 43:5 44:2
**paper** 50:22
**paragraph**
23:25
**paralegals** 18:8
**parent** 57:3
**parenting** 18:12
**parents** 57:3
**part** 3:16 8:22
11:2 13:10
16:18 25:8,20
41:13 43:7
51:23
**partial** 3:15
**particular** 26:14
39:10 59:8
**particularly**
41:25
**parties** 48:16
**partner** 16:1,2
31:20
**partners** 18:19
**partnership**
51:22
**party** 56:20
**Passport** 5:22
29:14,16,18
**Patricia** 2:15
**pay** 50:4,14
**pending** 54:12

54:17 55:5
**people** 9:9,13
14:16 19:10
21:18 25:10
26:12 32:2,18
34:9 35:6 36:1
38:14,17,18
39:4,14 40:1
43:22 47:19,21
48:7 49:12
51:6 54:25
58:7,25
**period** 41:15
**periodic** 26:8
29:21
**perpetrator**
37:1
**person** 10:23
11:16 13:18
15:2 39:17
40:14 41:9
42:4 43:18
50:2,12 51:17
51:21 52:21
58:24,25 59:15
**person's** 37:2
**perspective**
48:11
**peruse** 54:16
**petition** 4:8,21
6:13,16 7:9,10
8:16 13:19
15:4 16:23
22:5 23:11,14
23:18 28:9
29:4,15 31:20
32:2 33:4,6
37:20 38:16
39:19 41:7
42:1 46:24
51:3 52:1 55:4
55:19 56:7,13
57:2
**petitioner** 23:4,8
24:20
**petitioners** 6:20
12:22 23:20
47:6
**petitions** 6:23,24

7:15 8:7,25
11:7 13:25
14:24 31:16
32:5,15 37:11
38:1 41:1,17
51:12 54:1
55:18
**ph** 37:7 59:9
**phone** 33:23
34:25 41:5
43:17
**piece** 13:2,10
14:14 16:5
17:25 19:11
34:3
**pieces** 27:23
**pilot** 8:11 25:14
32:2 33:4
46:19 49:6
51:3
**place** 20:12,12
35:11 55:2
**plaintiff** 55:25
**plan** 41:19
**planning** 13:22
14:3,15 16:19
43:14,24
**pled** 23:17
**point** 4:7 5:7
11:18 14:23
24:4 26:16
27:8 28:23
33:9 40:22
50:23 56:14
**points** 12:3
**poke** 7:5
**poked** 30:12
**police** 2:7 29:2
**pools** 19:14
**popup** 35:19
36:25
**possible** 27:5
**possibly** 12:19
**postdates** 5:12
**posted** 11:9 33:1
**potential** 56:6
**potentially** 6:4
42:1
**pots** 19:15,24

practitioners
  46:20
predates 5:10
prepared 24:8
present 1:11
  9:23 34:6
presenting 48:1
pressure 38:21
  39:9
pretty 5:4 37:20
  38:2 51:10
previous 7:6
  36:7
primary 40:3
principles 5:23
print 32:12 33:2
  42:13 52:14,22
  52:25
printed 50:22
printing 52:19
Prior 38:6
prioritizing 20:7
private 46:7,16
  46:20
Pro 8:20 21:8
probably 4:20
  7:2 30:24
  38:10 44:23
probate 48:17
problem 33:13
  47:7 53:15
problematic
  21:6
proceed 58:14
proceedings
  60:5
process 4:25 8:9
  8:18 12:4
  22:15 23:1
  25:2,22,25
  26:11,12
processing
  15:21
producing 57:22
program 1:18
  2:14,18,21
  8:11 11:3 17:7
  17:9 20:4 21:8
  26:10 33:4

44:9 50:4,15
prohibition
  16:12
project 5:22
  25:14 29:13,15
  29:17
prompt 54:11
proper 25:5
properly 23:23
  24:8 25:4
prosecuting
  15:22
prosecution
  55:16
protection 29:7
  42:5
protective 3:18
  13:12 16:21,22
  29:11 54:18,21
protocols 10:4,7
  10:16,20 54:14
provide 8:21
  10:2,18 13:1
  13:21 16:24
  31:13 41:22
  49:11,18
provided 16:19
providing 10:12
  32:23
proxies 29:24
public 2:10 11:2
  11:4 23:6
  55:13 58:20,23
  59:13
pull 18:24
purpose 56:3
purposes 6:17
put 26:1 31:24
  36:21 57:16
putting 20:12
  22:3 49:7

                Q
qualify 6:6
quality 13:24
question 7:6,7
  27:8,13 52:14
  52:21 55:17
questions 12:25

26:13 40:6
  59:6,17
quick 23:15 27:8
quickly 37:5
  46:11

                R
R 60:1
raise 23:15
raised 31:18
  32:17 36:22
raising 12:12
ramping 21:12
  21:13
random 57:7
randomly 28:21
rarely 47:10
read 11:13 40:5
real 36:8 37:5
  45:24,24 46:11
  59:4
really 7:12 9:15
  9:21 11:23
  14:11 15:5,18
  16:3 18:14,16
  20:8,14,22
  21:6,20 34:22
  35:1 39:14,21
  43:3,13,21
  46:24 50:21
  51:21 52:3
  54:24 56:3
  57:25 59:11
reason 39:24
  41:3,16 48:20
  51:15
reasoning 43:8
reasons 29:23
  39:21
recall 5:3
received 38:19
  41:8
receiving 8:5
  10:11 17:2
recognition 15:8
recognizable
  3:18
recognize 29:2
recommendati...

12:12
recommendati...
  57:17,23
reconsider
  46:18
reconvene 58:1
record 13:7 60:4
recorded 59:1
recruit 20:4
reference 6:12
referenced 5:23
referencing
  27:11
referral 55:18
  55:22 56:5,18
  56:19
referrals 8:23
  22:8
regular 25:15
regularly 50:14
reiterate 14:7
related 26:12,13
  30:3
relates 23:17
relief 24:23
  49:18
relying 19:9
remember 5:2
  12:15
remote 49:7,13
remotely 31:24
repeat 21:23
repeated 38:25
report 36:12
reporters 56:9
reports 38:18
represent 23:4
  47:6 59:16
representation
  47:11
representing
  23:7
requested 24:23
required 6:7
  7:14 15:3 27:6
requirement
  25:3
requirements
  4:16

resource 18:14
  20:2
resources 11:8
  18:25 20:7,11
respond 21:10
  22:12
respondent
  22:17 24:25
respondents
  23:13
response 21:3
restraining 16:3
  25:19 30:17
  50:13 54:25
return 25:16
revamped 10:6
review 3:4 4:23
  30:4
reviewed 29:21
reviewing 10:5
  56:13
revising 22:21
revisions 7:1
revisiting 13:4
right 16:7 18:22
  20:2,10 24:12
  24:15 26:9
  29:9 35:21,25
  36:7,14 37:3
  37:15,23 38:22
  43:10 50:20
  51:1,13 52:10
  52:24 54:2
  57:8 58:21
  59:17
risk 15:25 23:9
  32:22,23 34:6
rolled 31:1
room 38:24
rooms 39:16
  49:11
routine 46:8
  47:5
routinely 47:11
Ruel 2:2
rule 6:8
run 4:12 9:25
  23:9
running 8:10

**S**

**safe** 17:16 34:24
35:11 36:25
39:12 42:6
48:8
**safety** 13:22
14:2,15 15:18
16:19 31:21
32:7,17 33:17
36:24 39:17
41:19 42:11
43:14,15,20,24
48:6
**sample** 9:16
**Sanctuary** 17:17
**Sarah** 2:19 10:6
10:10 12:14
44:24 47:1
**savable** 50:24
51:3
**save** 44:11,16
50:6,11 52:14
52:16 53:1,8
53:11,14
**savvy** 37:1
**saw** 33:21
**saying** 20:21
23:10 26:18
35:19 49:23
56:1
**says** 26:24 30:13
30:15 54:23
**scanning** 50:6
**Schollett** 2:8
12:10 31:6
**scope** 46:14
**Scott** 2:4
**scriveners** 57:22
**scrolling** 36:10
**second** 28:3 36:9
41:8
**seconds** 36:16
**section** 7:14
**sections** 4:13
9:13 10:7
**security** 43:19
49:2,4,10
**see** 7:15,16
27:12,17 35:22

36:1 47:10
48:8,19 54:16
58:17 59:18
**seeing** 9:8 42:2
**seek** 54:25
**seeking** 50:13
**seen** 8:1 10:21
**sees** 10:24
**self-** 30:18
**self-represented**
15:2 52:21
**send** 56:11,23
**sense** 26:11
36:23
**sent** 27:18
**sentences** 7:16
**separate** 19:7
**separately** 17:21
**served** 16:2
**service** 20:3
46:15
**services** 16:15
17:3 18:11,15
21:8 45:24
**session** 3:6
**setup** 49:8
**Seventh** 60:14
**Sexton** 2:10
**sharing** 58:11
**sheets** 27:4
**shop** 20:24
**shut** 31:22
**side** 3:22 4:14
**sides** 24:19 25:6
**significant** 4:4
5:4
**similar** 3:23
**simple** 24:7
**single** 7:21
**sink** 7:20
**sit** 53:5
**sites** 36:6
**six** 36:11
**slight** 5:1
**slightly** 37:1
**small** 46:1
**smiling** 3:2
**somewhat** 8:11
**sorry** 31:8 54:4

**sort** 3:23 4:11,13
8:17 14:10
15:9,19,21
28:11 30:11
33:12 44:19
**sound** 13:7
**sounding** 57:21
**space** 25:23
45:15,20 48:8
58:8
**speak** 9:6 16:13
51:2 57:16
**speaker** 33:16
35:25 37:16,24
38:23 42:19,20
49:22 50:1
53:13,20 57:14
58:19 59:8
**speaking** 39:4
**specific** 11:10
23:8 25:11
56:18
**specifically** 51:8
54:23
**specify** 27:2
**spend** 38:15
58:8
**spoke** 10:5
**staff** 10:9,10,13
10:14,21 11:25
13:20 15:14
16:14 17:11
18:7 19:8,10
34:1 38:25
41:6,12 42:2
43:18 54:15
**staffing** 11:24
12:11
**stage** 21:22 22:1
**stakeholder**
25:22 26:8
**stakeholders**
31:17 32:20
41:14
**stalked** 39:19
**stalking** 6:23
7:10 10:18
11:7 18:13
25:13 27:19

29:12 31:15
**standing** 35:2
**started** 32:1
33:3
**starting** 5:7
26:25 31:18
**state** 3:21 6:5
7:23 19:23
20:22 27:1
49:16
**statement** 7:24
**statements** 8:3
**states** 12:5
**station** 49:11
**statute** 6:8 10:19
**step** 3:15
**steps** 53:18
**Steven** 1:22
**STOP** 19:22
29:19
**Strasburger**
2:12 22:13
24:15,18
**streamed** 59:1
**stress** 44:21
**stressful** 35:5
39:3
**stronger** 22:5
**stuff** 11:12
36:12 49:5
**subject** 28:24
29:13,15
**submit** 32:3
**submitted** 41:1
43:1
**submitting** 42:1
48:1
**substitute** 11:10
12:24 21:25
**successful** 12:5
**suffered** 24:5
**sufficient** 11:25
22:19 24:10,21
**suggested** 7:1
**suggestion** 55:6
**suggestions** 54:6
**suggests** 54:15
**Suite** 60:14
**Sullivan** 47:8

**summary** 57:22
**summed** 9:7
**Superior** 1:14
25:18 26:7
**Supervisory**
2:22
**support** 14:1,9
15:19 21:2
46:5
**supposed** 35:4
**Supreme** 1:13
26:7 30:5,7
49:9
**sure** 3:17 5:5
11:7 22:25
23:7 24:20
25:3 31:11
35:11,20 36:8
41:10 53:23
**survive** 21:5
**survivor** 15:19
26:22 37:21
48:24 51:18
**survivors** 7:13
7:18 8:15
14:13 20:25
34:20 36:24
47:18
**sustain** 21:2
**sustainable** 21:5
**sworn** 22:17
25:4
**syllable** 44:6
**system** 17:20
20:13

**T**

**T** 60:1,1
**tab** 30:10
**table** 22:5
**take** 11:24 22:6
28:14 52:23
54:1 57:14
**takeoff** 25:15
**talk** 18:6 25:9
45:15
**talked** 28:25
**talking** 25:12
32:10 58:5

**task** 1:6 59:16
**team** 57:21
**tech** 37:1
**technical** 4:15
  14:6 50:1 51:4
  51:14,23
**technically** 3:3
  51:11
**technology**
  49:13
**telephone** 34:11
**telephonic** 47:23
**tell** 47:2
**temporary** 8:2
  56:15
**tenant** 45:18
**terms** 6:22 37:5
  38:5 39:15
  47:25 48:10
**testify** 23:22
**testimony** 23:16
**testing** 33:5
**thank** 28:13
  45:11,12 53:21
  57:4 58:14
**thanks** 45:22
  53:23 59:18
**that--** 30:22
**theme** 7:12
**themes** 18:5
**they'd** 38:14
**thing** 9:3 26:24
  30:2 37:14
  40:18 46:21
**things** 3:22 9:18
  24:8 25:17
  32:25 34:12,18
  36:1 48:9 50:6
**think** 3:7,24 4:9
  9:7,20 10:22
  11:17 12:4
  13:23 14:22
  15:8 18:20
  19:16 20:10
  22:4,21 23:19
  24:2,9,10,19
  24:19 27:5,19
  30:1 31:7,9
  39:21 43:5

44:4 45:17
46:9 47:12
50:21,23 52:11
53:15 54:19
57:23 58:9
59:5
**thinking** 42:11
**thinks** 55:13
**thought** 42:4
  46:12
**thoughts** 33:9
**thousands** 15:14
**three** 4:20 26:6
  38:15 39:13
**throw** 24:16
  26:13 44:12
**time** 5:2 10:15
  15:25 22:7,12
  27:1 28:14
  32:1 35:2,6
  38:14 39:8,11
  48:17 51:11
  56:17 58:8,16
  59:4
**times** 45:3 55:9
**today** 5:17 25:12
  30:14,15 31:9
  57:7 58:2
**today's** 27:22
**tool** 12:14
**tools** 17:22
**top** 52:7
**topic** 26:15 58:2
**topics** 57:24
**toss** 39:25
**touch** 41:11
**touched** 51:9
  58:2
**tough** 45:14
**track** 4:17
**traditionally**
  45:23 46:15
**trained** 11:16
  13:20,21 14:2
  15:5 16:24
**training** 4:4
  5:19 10:10
  15:7,18
**Transcriber**

60:11
**transcript** 60:4
**translate** 40:5
**tree** 12:20 13:14
**tried** 40:7,8 44:7
  44:16
**trouble** 40:4
**troubleshoot**
  28:12
**true** 44:13 60:4
**try** 11:14 28:5
  44:17
**trying** 11:20
  12:15 18:17
  20:22 30:6
**TTA-Certified**
  60:11
**turnaround**
  22:11
**two** 7:15,25
  10:17 29:12
  32:25 36:16
  39:11 41:4
**types** 8:3 9:18
  24:7 32:13
  57:6
**typically** 38:10

_____ U _____

**ultimately** 13:13
**Um-hum** 35:13
  40:19
**umbrella** 19:8
**unbundled**
  18:10
**understand** 4:15
  14:5,17 24:25
  33:17 40:6
**understanding**
  15:16 40:4
**unfortunately**
  5:17
**uniform** 29:1
**uploaded** 25:17
  28:10
**urgent** 22:11
**use** 3:13 20:2,7
  27:4 33:23
  50:5

**users** 29:24,25
**uses** 50:13
**utilizing** 18:7,8

_____ V _____

**valid** 11:18
**variations** 18:5
**variety** 6:2 11:4
**various** 49:15
  57:19 58:6
**varying** 8:1
**versus** 32:11
**Vicinanzo** 2:14
**victim** 1:17
  10:24 15:19
  16:15 24:6,13
  44:19 48:9,24
**Victim/Witness**
  2:3
**victims** 7:13,18
  8:15 12:21
  19:21 20:24
  21:3 38:19
  45:6,7 47:18
**view** 48:13
**violence** 1:6 2:5
  14:2 19:20
  20:25 21:4
  30:17 37:20
  52:1
**VIRTUAL** 1:6
**visitation** 34:19
**VOCA** 8:12,13
  19:17
**volunteer** 11:21
  18:9 19:4,9
  20:5 21:14
  22:10
**volunteers** 57:19
**Vulnerable**
  13:11

_____ W _____

**walk** 12:21,22
  42:14
**want** 4:19 22:24
  28:12,14 30:14
  30:15,16 42:21
  43:4 45:1,10
  46:4 58:24

**wanted** 24:16
  25:9 26:16
  28:17 32:18
  42:13 47:2
**wants** 24:20
**watching** 59:3
**way** 9:24 15:15
  23:19 26:5
  35:7 37:7
  40:10 44:22
**ways** 46:2
**we'll** 5:18 7:16
  34:20
**we're** 7:5 9:8,9
  12:1 14:8
  22:13 23:8
  24:4 25:12
  33:4 41:18
  43:6 53:3 56:8
  59:5
**we've** 8:1 18:4
  19:16 20:14
  25:17 32:8
  34:21 51:5
  53:24
**weapons** 25:16
  27:3
**weather** 36:11
**web** 33:11 40:12
**Webex** 1:8 47:6
  47:12,24 48:5
  48:15,22
**website** 30:8,24
  31:4,25 34:8
  36:20 37:5
  38:7 39:23
  42:17 50:7,8
  52:2
**websites** 30:6
**weeds** 44:5,23
**week** 58:1
**went** 8:21 30:5
  35:23 38:19,23
**weren't** 8:18
  38:11
**window** 35:3,20
**Witness** 1:18
**Women** 19:20
**wonder** 44:3

**wonderful** 13:19
**wondering** 54:9
  54:22
**word** 12:21
**work** 5:6,9
  15:10 19:11
  40:16 42:17
  51:17 57:20
**worked** 17:11
  18:16 20:14
  43:2 45:3 51:5
**working** 17:6
  32:3,8 33:7
  39:5 43:22
**works** 49:14
**worth** 13:3
  39:22
**wouldn't** 44:19
**writing** 38:15

**X**

**X** 24:13

**Y**

**yay** 3:2 58:24
**Yazinski** 1:15
  10:4 47:1,4
  48:13 49:1
  56:8,16 57:10
  57:13
**Yeah** 18:4 19:13
  20:20 31:5
  35:16 41:24
  47:15 52:4,18
  52:25 53:7,13
  53:20
**year** 20:16 26:5
**years** 3:21 4:20
  8:1 12:16 18:6
  18:17 19:19
**yesterday** 27:18
  57:18
**York** 9:15 12:4
  16:14,16 17:16
  19:5 26:18
  27:11,21 28:9
  60:15

**Z**

**Zinkin** 2:22 5:19

  6:25 26:16
  28:1,7 37:4,11
  52:9,11,16,19
  52:24 58:17,21

**0**

**1**

**10001** 60:15
**12th** 28:10
**173-B** 18:13
  22:24 56:3
**19** 1:7

**2**

**2008** 10:7
**2022** 1:7 60:17

**3**

**3** 41:2,16
**352** 60:14

**4**

**4** 27:25 28:2
  38:20 40:15
  60:17

**5**

**6**

**603** 2:18 8:21
  19:3 21:9
**604** 60:14

**7**

**8**

**8** 41:2,16

**9**