```
 1

 2

 3

 4

 5

 6      DOMESTIC VIOLENCE TASK FORCE VIRTUAL MEETING

 7                    January 31, 2022

 8                   Held via Webex

 9

10    PRESENT:

11         Hon. Anna Barbara Hantz Marconi,

12    Associate Justice, New Hampshire Supreme Court

13         Hon. Susan Carbon, Circuit Court Judge

14         Hon. John Yazinski, Circuit Court Judge

15         Merrill Beauchamp, Director, Victim &

16    Witness Program

17         Kathy Beebe, Executive Director, Haven NH

18         Kristyn Bernier, Investigator, Belknap

19    County Attorney's Office

20         Steven Endres, Assistant County Attorney,

21    Merrimack County

22         Martha Ann Hornick, Grafton County

23    Attorney

24         Mary Krueger, Attorney, NHLA

25         Lynda Ruel, Director, Office of
```



1    Victim/Witness Assistance, NH DOJ

2         Amanda Grady Sexton, Director of Public

3    Affairs, New Hampshire Coalition

4         Jon Strasburger, New Hampshire

5    Association of Criminal Defense Attorneys

6         David Vicinanzo, Attorney, DOVE Program

7         Patricia LaFrance, Partner, The Black Law

8    Group

9         Pam Dodge, NHBA DOVE Program & 603 Legal

10         Sarah Freeman, NHJB, Circuit Court

11    Administrator

12         Jean Kilham, NHJB Domestic Violence

13    Program Manager

14         Erin Jasina, Director, NHLA DV Program

15         Anne Zinkin, NHSC Supervisory Law Clerk

16

17

18

19

20

21

22

23

24

25



Domestic Violence Task Force - 01/31/2022

1         JUDGE HANTZ MARCONI:  It is the

2     January 31st -- eighth -- meeting of the

3     task force on review of domestic violence

4     cases in the judicial system.  This is

5     the grab bag meeting for, quote, all

6     other relevant areas.  And we have

7     identified several, which is on the

8     agenda that was sent around.

9         So we have, in no particular order,

10     offenders using the judicial system to

11     further harass, coerce, control victims,

12     and RSA 173-B:I-(a)(3); (audio

13     interference) for law enforcement on best

14     practices for handling weapons seizures;

15     co-occurrence of child abuse and domestic

16     violence cases; whether there should be

17     an exception under the wiretapping

18     statute for domestic violence survivors

19     so that that they may obtain evidence of

20     the abuse without committing a crime and

21     so that the evidence is admissible;

22     judicial accountability, which may rise

23     to the top.

24         And I've added but not on the agenda

25     crisis center feedback.  We've been



Domestic Violence Task Force - 01/31/2022

1        monitoring the comments as they've come

2        in, and there is some anecdotal

3        information about individuals either

4        being unable to be helped or not being

5        helped, and also some anecdotal

6        information from within the branch that

7        some advocates are not as helpful as they

8        might be.  So this kind of goes with one

9        of the topics we discussed before, which

10       is how do you provide feedback outside of

11       this task force, if you will.

12            So in no particular order, I'd like

13       to have people talk about what's top of

14       mind.

15            MS. LAFRANCE:  So I -- I guess I'll

16       start just on the topic of the amendment

17       to the wiretap statute.  This is -- I

18       mean, in -- this comes up so often in my

19       cases.  And I -- I have often said that

20       it should be amended to some kind of

21       safety exception, I guess akin to, I

22       don't know, the rationale behind, like,

23       hot pursuit or exigent circumstances.  So

24       you know, I've always said that.

25            I run into it a lot in my practice.



Domestic Violence Task Force - 01/31/2022

1        I'm very familiar with the wiretap

2        statute.  I used to authorize them for

3        undercover police officers, so I know the

4        ins and outs of it.  I think there's

5        multiple interpretations of when somebody

6        can record.  I don't know if any of the

7        other attorneys feel the same way.

8            Because I always tell my client,

9        obviously, you know, if you're out in

10       public -- if, you know, that's fine.

11       If -- the issue comes with -- when

12       somebody has a phone and it's out and

13       it's clear they're recording.  And they

14       say, I'm recording, right.  And to me,

15       you know, if -- if that other person

16       continues talking -- and this might be a

17       wrong interpretation of it -- but you

18       know -- if -- if that person knows

19       they're being recorded, then they have

20       ultimately consented to being recorded,

21       even though, you know, they may say I

22       don't -- I don't give you permission to

23       record me.  Well, if you're phone's out

24       and it's clear you're recording, then --

25       I don't know.



Domestic Violence Task Force - 01/31/2022

1          I don't know if anybody else has a

2     different interpretation, but I think the

3     statute --

4          JUDGE HANTZ MARCONI:  Who would

5     be --

6          MS. LAFRANCE:  -- it's open for

7     interpretation.

8          JUDGE HANTZ MARCONI:  Who would be

9     the so-called involved persons, parties,

10    to, sort of, take this concept to the

11    legislature?  And anyone else can weight

12    in, too.

13         MS. LAFRANCE:  Yeah --

14         MS. SEXTON:  I'll just say that the

15    Coalition has had this on our, sort of,

16    wish list for many years and have worked

17    with parties.  And there are interested

18    legislators in bringing this forward.

19    It's just a matter of doing that when the

20    timing is right and when it's, sort of,

21    the correct time to do that.

22         INV. BERNIER:  I think also it needs

23    to be fleshed out really specifically.

24    I've done -- I've had, you know,

25    authorization for undercover drug work.




Domestic Violence Task Force - 01/31/2022

1        I've also gotten plenty of -- which

2        goes -- is different than when we go for

3        that -- the pretext call on a sexual

4        assault or a domestic violence case when

5        we want to do the phone call through the

6        AG's office.  Different set of standards

7        in terms of what we can and can't do.

8             And really defining what is a safety

9        exception because these recordings can

10       simply be to -- can be used to rile

11       someone up.  They can be, you know,

12       recorded, and then they never come

13       forward; that's not an exigence.

14       Holding, you know -- to play devil's

15       advocate because I've seen these cases

16       too many times.  It's a safety exception

17       and they're in fear for their safety and

18       they record, I'm all for it.

19            But the -- the other thing is -- is

20       how do you define something that can be

21       legislated that doesn't end up being

22       someone just recording things and

23       sticking them in a file somewhere --

24       where -- for when they decide they want

25       to pull it all forward.



Domestic Violence Task Force - 01/31/2022

1           And I think that's what makes this

2      issue so difficult, is setting what those

3      parameters are.  And I think the

4      parameters are going to be the key to

5      getting the legislation passed.  Because

6      if there are too many open doors and too

7      many ways that someone can, you know,

8      exploit it for -- for not the purpose

9      it's supposed to be used for, you're

10     going to be less likely to get it passed.

11          So it -- it -- the -- it's not so

12     much of who's going to take it, it's

13     who -- who's going to craft it and make

14     sure that it's rock-solid so that it --

15     and it's been vetted out -- so that it

16     does pass for the purpose for which it's

17     being passed.

18          JUDGE HANTZ MARCONI:  The law

19     enforcement that works with this statute

20     should be involved, is what I'm hearing.

21          INV. BERNIER:  Well, you know,

22     that -- which is -- it, you know, if --

23     if something's exigent -- I mean, for the

24     purposes of crafting it, absolutely.

25          Is it going to be something that

Domestic Violence Task Force - 01/31/2022

```
 1          somebody can, you know, take it to the PD
 2          because they're worried about something?
 3          Or there's a -- there's a DV order in the
 4          process or whatever.  Or -- I mean, I
 5          think we -- there's a lot of different
 6          scenarios where this could come into play
 7          and be useful for the right reasons
 8          and -- but I think it's going to take a
 9          team of people to -- to hammer this out.
10              MS. JASINA:  So NHLA has also within
11          the last year been approached by another
12          stakeholder who is interested in making
13          some amendments to the wiretapping
14          statute, which would allow for an
15          exception from prosecution if somebody
16          were recording while abuse is occurring
17          and that -- and then that would be
18          admissible evidence.
19              So we would certainly be interested
20          in partnering with them and any other
21          interested stakeholders that would like
22          to see something like this pass, which
23          would hopefully address some of the
24          concerns that were just raised.
25              So I'm happy to reach out to that
```



Domestic Violence Task Force - 01/31/2022

1      stakeholder as a -- actually, I've

2      already done it.  I talked to Jean about

3      that, and they're interested in convening

4      a group.  And I think between NHLA and

5      that group -- I think, you know, we could

6      get something organized maybe over the

7      summer to, kind of, flesh this out a

8      little bit more.

9           MS. RUEL:  And I took -- I took a

10     poll of the systems-based advocates --

11     and you know, Merrill jump in if you --

12     if I forget something.  They, too, think

13     it would be a great idea.  They do have

14     some concerns around victim safety and

15     victims feeling like it's their

16     responsibility to gather their evidence

17     in their case.  So I just -- as we move

18     forward just thinking about some of those

19     things would be helpful for the -- the

20     process of getting a resolution.

21          As Kristyn pointed out, you know,

22     it -- it would need to be crafted for

23     the -- for the intent it is intended

24     for -- if I'm saying that right -- and

25     not be used as another tool.



Domestic Violence Task Force - 01/31/2022

1          INV. BERNIER:  Here's the other

2     thought, I'm a big fan of reverse

3     engineering things.  And I don't know if

4     this is what, you know, those who have

5     been tossing it around -- Amanda and

6     others -- who have been toying with.

7          But I just had a case recently,

8     marital rape case, and she recorded

9     interactions in between -- in the middle

10     of this, like there was a six-month old

11     baby in the room, there was a one-and-a-

12     half-year old -- the -- the tape is

13     chilling.  It wasn't covered, obviously,

14     under the law.  It became an issue

15     because she had recorded it -- I don't

16     think she realized she couldn't -- the

17     defense tried to stick some Richards

18     issues on with her.

19          But what's to say that we couldn't

20     start by doing something that -- you

21     know, if somebody goes to -- something's

22     happening, and they -- their reaction is

23     record it, allowing that to come into

24     evidence if the -- so for instance,

25     someday makes a report of DV or that rape

Domestic Violence Task Force - 01/31/2022

1        case and -- I can't think of how many

2        times somebody has come in and said,

3        well, I have recordings, or I have

4        this -- because they don't realize.  But

5        being able because they reported, because

6        you have corroboration, there's a report

7        going on, there's a case investigation.

8        The allowance of those recordings to be

9        utilized in conjunction with -- with the

10       nature of the case.  I don't know if you

11       understand what I'm getting at.

12            It's almost like it -- it's not

13       supposed to happen, but if there -- if

14       they show that exigence, if they show

15       that -- their evidence of those crimes --

16       could something be crafted to allow them

17       on a case-by-case basis.

18            JUDGE HANTZ MARCONI:  As opposed

19       to --

20            MS. LAFRANCE:  And also --

21            MR. VICINANZO:  I wonder --

22            JUDGE HANTZ MARCONI:  --

23       (indiscernible) statute.

24            MS. LAFRANCE:  I'm sorry; go ahead.

25            JUDGE HANTZ MARCONI:  Oh, I was



Domestic Violence Task Force - 01/31/2022

1          going to say as opposed to an amendment

2          to the statute, but a case-by-case

3          evidentiary-type -- well, you'd still

4          need a statute, but on a case-by-case

5          basis, rather than (indiscernible) --

6                  INV. BERNIER:   Right.   Which

7          might --

8                  JUDGE HANTZ MARCONI:   -- broad

9          exemption.

10                  INV. BERNIER:   -- which might give

11         us something so that that, kind of, shuts

12         down people just taping things willy-

13         nilly.   But it gives -- it gives us

14         something to start with, and then

15         something more encompassing could be

16         assessed and crafted from there.

17                  MS. LAFRANCE:   So it -- yeah, it

18         would be almost --

19                  MR. VICINANZO:   Yeah --

20                  MS. LAFRANCE:   -- the language would

21         be if it were, you know, in the process

22         or near the time of the commission of a

23         crime.   Something like that, Kristyn?   Is

24         that what you're saying?

25                  INV. BERNIER:   Yeah, essentially --



Domestic Violence Task Force - 01/31/2022

1         like, and I'm thinking of this case --

2         this example.  Where her only thought

3         process -- she didn't know what to do and

4         I think, you know, the first thing,

5         especially in the days of technology,

6         she -- there was, you know, there was a

7         little bit of time gap in between this.

8         He wasn't letting her out, but she was

9         able to hit record, and there's no

10        question that these things were going on.

11             Had we been able to -- had we had

12        something that could have allowed us to

13        assess that and utilize that, it would

14        absolutely have been helpful for the

15        case.  And she was doing it for the right

16        reasons.  She didn't know what to do,

17        there was a huge safety issue.  But as it

18        stands now, you know, we're not.

19             So it would have to be commensurate,

20        I guess, with, you know, obviously -- it

21        would have to have -- be while it's going

22        on, at least to start.

23             MR. VICINANZO:  Well, can --

24             MS. SEXTON:  I would recommend that

25        we continue to have conversations about



Domestic Violence Task Force - 01/31/2022

1       this.  The process for bringing forward

2       legislation includes, you know, bringing

3       all stakeholders together and having

4       really lengthy discussions over a period

5       of time.

6            But I think it's appropriate for

7       this task force to make a recommendation

8       that there should be future discussions

9       and explorations about this issue in

10      addition to other statutory changes.

11           MR. VICINANZO:  Well, to that end --

12      I -- I'm -- this is Dave Vicinanzo, and I

13      apologize, I don't have video access

14      today.

15           But I don't know this for sure, but

16      it seems to me that these laws -- the

17      two-party laws -- they tend to be a

18      feature of New England.  I don't know how

19      broadly across the country they're

20      prohibited.

21           The feds have a one-party law.  I

22      know in New York and New Jersey there's a

23      one-party law, you don't -- you don't

24      have this -- you're not criminalizing

25      tape recording somebody.  I think most



Domestic Violence Task Force - 01/31/2022

1       states allow it.  What is it about New

2       England states and, you know, what --

3       what's the genesis of these laws to begin

4       with?

5           I wonder, you know, when tape

6       recording first became, you know, was

7       invented, you know, I can imagine they --

8       a group of the legislatures at the

9       type -- of the -- of the -- of the time

10      in the 1920s, you know, worried about not

11      having private conversations put on tape.

12          I mean, it seems to me it's

13      problematic that you can allow testimony

14      about what happened or what a person

15      heard, but you can't actually introduce

16      the best evidence, which is a tape.  I

17      don't like the law; I think the law is

18      wrong.

19          But I wonder if -- if we could

20      explore what other states have

21      experienced.  And especially in the area

22      of DV.  I mean, is it common that one-

23      parties are admitted in, say, California

24      or Virginia?  I don't know.  I wonder.

25      And I wonder what the experience is there



Domestic Violence Task Force - 01/31/2022

1        and whether or not there are any

2        negatives in addition to the possible

3        positives.  It seems to me be it'd be

4        worth looking at that.

5            And also, I kind of feel like this

6        law is probably an anachronism.  That's

7        my feeling.  And it probably reflected

8        some of the prejudices and some of the

9        worries of the legislators in the 1920s

10       or '30s and maybe needs to be looked at

11       on that basis as well.

12           JUDGE HANTZ MARCONI:  So it looks --

13           MS. LAFRANCE:  And I just want to --

14           JUDGE HANTZ MARCONI:

15       (Indiscernible) --

16           MS. LAFRANCE:  I want to point

17       out --

18           JUDGE HANTZ MARCONI:  Go ahead.

19       Yeah.

20           MS. LAFRANCE:  Sorry, Judge Hantz

21       Marconi.  I just wanted to point out

22       too -- I mean, I'm assuming most people

23       are thinking of cell phone recordings,

24       but you have to remember too with

25       technology, there are -- you know, I



Domestic Violence Task Force - 01/31/2022

1        have -- I know of a case where there were

2        recordings from the home security camera.

3        So -- you know, that trigger

4        automatically.

5             MR. VICINANZO:  Yeah.

6             MS. LAFRANCE:  That only start when

7        somebody -- when, you know, it's a motion

8        detector.  So you know, obviously, the

9        parties both know the recording -- the

10       recorder is there.  They've consented to

11       it, presumably, right?

12            So I think in looking into this --

13       and Amanda, you're right -- I mean, we

14       make a recommendation.  This is much more

15       than can be done in an hour's Zoom

16       conversation.

17            But we have to make sure that we're

18       forward-looking with respect to the

19       technology.  I mean, who knows what's

20       going -- you know, what the technology is

21       going to be in two years, five years, ten

22       years.  So I think it would behoove us to

23       be looking forward with that, too.

24            JUDGE HANTZ MARCONI:  All right.

25       Anything else on that?



Domestic Violence Task Force - 01/31/2022

1        MR. VICINANZO:  Yeah.

2        JUDGE HANTZ MARCONI:  Yes?  No?  All

3    right, what next?  Judicial

4    accountability?

5        I can, sort of, set the table.

6    Current system, we've got the rolling --

7    every judge is reviewed with a survey

8    that was developed within the past decade

9    and half, two decades.  Rolling basis,

10   once every three years, those surveys get

11   processed and reported.  Judicial branch

12   does an annual report of collated

13   information, not the exact surveys

14   themselves.  So there's that.

15       Of course there are reports to the

16   JCC.  And there have been various

17   informal feedback loops, not so much so

18   recently.  But further than that, what

19   ideas do people have?

20       INV. BERNIER:  I think one of the

21   things that would be helpful is -- and I

22   can think of a number of glaring issues

23   we've had over the years.  And some of it

24   usually is it's one or two judges that

25   have a propensity for some of these



Domestic Violence Task Force - 01/31/2022

1        things.  There's -- there's no place to

2        take that issue.  When there's a ruling

3        that may not go along with the law, or

4        there's a question about the case law,

5        there's -- there's no annual review type

6        situation.  There's no place to get --

7                JUDGE HANTZ MARCONI:  You're talking

8        about --

9                INV. BERNIER:  -- higher --

10               JUDGE HANTZ MARCONI:  -you're

11       talking about --

12               INV. BERNIER:  -- authority --

13               JUDGE HANTZ MARCONI:  Yep.  But

14       you're talking about beyond, for example,

15       a motion to reconsider and/or an appeal.

16               INV. BERNIER:  Right.  You know, or

17       some of those issues that come up about,

18       you know, a victim advocate being tossed

19       out of the court or a decision that comes

20       down -- and I've had it on non-DV cases

21       in terms of not getting a search warrant

22       signed because, you know, the particular

23       judge thought he saw somewhere that you

24       can't do X, Y, and Z but couldn't come up

25       with a cite for it.  And as it turned



Domestic Violence Task Force - 01/31/2022

1        out, it was inaccurate.

2              And you know, just being able to,

3        you know, double-check those things or --

4        or when an order is kind of blatant, that

5        there's a place to go and say, look, can

6        this be reviewed?

7              And the AG's office is extremely

8        limited.  There -- there's not -- for the

9        longest time, we haven't gotten any --

10       any respite from going through the AG's

11       office when there have been issues with

12       bad orders.

13             JUDGE HANTZ MARCONI:  How does that

14       work?

15             INV. BERNIER:  And it's impacted a

16       lot of cases.  Hmm?

17             JUDGE HANTZ MARCONI:  How does that

18       work?

19             INV. BERNIER:  I thought there was

20       a --

21             JUDGE HANTZ MARCONI:  The AG

22       procedure.  Because I'm not familiar with

23       it.

24             INV. BERNIER:  I just remember one

25       of the -- we had a recent case where the



Domestic Violence Task Force - 01/31/2022

 1            prosecutor ended up calling the AG's

 2            office.  Because that was her -- and

 3            she'd been a prosecutor forever.  And

 4            don't know -- even know who she called.

 5            I don't know whether it was a -- that was

 6            the understanding --

 7                MR. ENDRES:  I might be able to help

 8            out with that.  The attorney general's

 9            office has a solicitor general now.  So

10            there is an appeals process where if you

11            are interested in bringing a state's

12            appeal, there's a form you fill out.  You

13            send it to the solicitor general.  They

14            review the case and essentially issue you

15            a decision of whether or not that's an

16            appeal they're willing to take.

17                JUDGE HANTZ MARCONI:  Okay.

18                MS. ZINKIN:  So that would be a case

19            where --

20                JUDGE HANTZ MARCONI:  The AG's

21            office isn't calling the court, it's a --

22            it's a process for appeal.

23                INV. BERNIER:  Right.

24                MS. ZINKIN:  It's a process for the

25            state to bring an appeal where the



Domestic Violence Task Force - 01/31/2022

1        (indiscernible) --

2              MR. ENDRES:  Correct.

3              INV. BERNIER:  -- has prevailed.

4              MR. ENDRES:  The difficulty, though,

5        is -- I mean, obviously, judges are

6        people, and a lot of them have certain

7        personalities.

8              And I think that you'll find there

9        are -- you know, you might find a judge

10       who doesn't like guns, or a judge who

11       doesn't like domestic violence, or a

12       judge who doesn't necessarily see a lot

13       of, sort of, power in victims of domestic

14       violence.  And you'll get rulings that

15       maybe in your opinion are bad, but they

16       don't violate the law.

17             When a judge makes a finding that

18       somebody's not guilty, there's -- there's

19       nothing you can do about that.  And I've

20       certainly had the experience in domestic

21       violence cases where the judge has found

22       the defendant not guilty and then

23       proceeded to lecture the victim on why

24       they shouldn't have, sort of, brought

25       this to the court to begin with.



Domestic Violence Task Force - 01/31/2022

1          And there is nothing that I can

2     necessarily do as a prosecutor in that

3     position because the law hasn't been

4     violated, it doesn't necessarily violate

5     the judicial conduct rules.  It's simply,

6     sort of, a bad decision.  And I think

7     that's --

8          JUDGE HANTZ MARCONI:  Well, the

9     decision -- I guess I'm hearing two

10    things.  If it's a bad decision, I don't

11    know that there can or should be anything

12    other than our system sets forth the

13    opportunity for reconsideration and

14    appeal.

15         What raises my red flag is lecturing

16    a litigant in a failed case.  For

17    example, when I was litigating, you win

18    some, you lose some -- fifty-one percent,

19    forty-nine percent, you're not there.

20    But lecturing a victim, I'm not sure

21    there's justification for that.  But

22    that's a -- that's a different question

23    than a bad decision that is within the

24    bounds of the law.

25         INV. BERNIER:  Um-hum.



Domestic Violence Task Force - 01/31/2022

1          JUDGE HANTZ MARCONI:  Does that make

2      sense?

3          MR. ENDRES:  It does make sense.

4      But I think that they're somewhat

5      interrelated in the sense of --

6          INV. BERNIER:  Um-hum.

7          MR. ENDRES:  -- I understand I win

8      some and I lose some.  But if I'm losing

9      a lot in front of a particular judge,

10     that may be concerning to me.

11          If -- for example, I had a domestic

12     violence case where the victim had

13     testified that this was her boyfriend.

14     She had testified that she was moving her

15     clothing out of the apartment.  The

16     police had testified when they made

17     contact with him, he referred to the

18     victim as his girlfriend.  And the court

19     found that I didn't prove there was an

20     intimate relationship.  And when I read

21     the definition of intimate partners to

22     the court, the response I got was dating

23     can mean different things to different

24     people.

25          And that was something that occurred



Domestic Violence Task Force - 01/31/2022

1    not just in a single case, but I found

2    happening in other cases as well, this

3    sort of -- I guess I didn't explicitly

4    ask if they were in a sexual

5    relationship.  But I would think getting

6    in evidence that people are dating, are

7    boyfriend and girlfriend, share an

8    apartment, would certainly get over that

9    hump.  And when you're getting those same

10    decisions from one or two particular

11    judges, I think that's troubling.

12         MS. ZINKIN:  But is that something,

13    though, that you could have appealed if

14    wanted to?  Because, you know, perhaps

15    the judge was misapplying the law of what

16    an intimate partner is.

17         MR. ENDRES:  But the problem is that

18    as soon as the judge says not guilty,

19    it's not something the state can appeal

20    because jeopardy is attached --

21         MS. ZINKIN:  Right.

22         MR. ENDRES:  -- as soon as we

23    started the trial.

24         MS. ZINKIN:  Right.

25         MR. ENDRES:  So the AG's office



Domestic Violence Task Force - 01/31/2022

1          won't even look at that, and there's no

2          aspect to appeal that.

3              MS. ZINKIN:  Got it.

4              MR. ENDRES:  So you're essentially

5          left shrugging your shoulders and saying,

6          well, that's a bad decision.  And then --

7              JUDGE HANTZ MARCONI:  So actually

8          you're drilling down to a set of cases

9          where there is no appeal.

10             MR. ENDRES:  Right.

11             JUDGE HANTZ MARCONI:  And so really

12         what you're looking at is perhaps -- I

13         don't know how I say this -- a -- where

14         there's an interpretation by a judge, no

15         avenue of appeal, but you have sort of a

16         consistent misinterpretation, what do you

17         do with that?  In your view, if you have

18         a consistent misinterpretation, where do

19         you go?

20             INV. BERNIER:  And --

21             MR. ENDRES:  And I don't know if

22         there is anywhere you can go, is the

23         problem.  And I've certainly -- and I

24         mean, it's not -- that's not something

25         that's limited to domestic violence

Domestic Violence Task Force - 01/31/2022

1    cases.

2        I mean, there are -- there are

3    judges who find no one's ever driving

4    drunk.  And there are judges that find

5    everyone's -- are driving drunk.  And

6    that's just those judge's personalities.

7    So you -- you hope you're not in front of

8    one of those judges if you have a DWI

9    case, depending on what side you're on.

10        But is seems like if -- if there is

11    some level of consistency in terms you

12    win some, you lose some, I shouldn't be

13    consistently winning or consistently

14    losing.

15        INV. BERNIER:  I liken it to the

16    concept for us in law enforcement because

17    we have rules and regulations for

18    everything.  You can look at someone the

19    wrong way, and that can be a violation of

20    some rule or reg.

21        Implicit bias was a really big deal,

22    and I think that's part of it.  And I --

23    it's not -- when Steve talks about you

24    get these one or two judges, you don't

25    have a judge that, you know, it -- that

Domestic Violence Task Force - 01/31/2022

1      will, you know -- occasionally everybody

2      makes an error in judgment.  But you'll

3      have consistently that particular judge

4      will have a certain bias or perception on

5      particular cases.

6           Child sexual assault images were a

7      really big problem because a number of

8      judges -- old-school judges -- when we

9      started ICAC cases, didn't see it as --

10     they saw it as a victimless crime because

11     there was no understanding.  So it was

12     like a -- it's not bad.  It's not like a

13     hands-on offense.  You see it with

14     judges.  I've had, you know, old judges

15     in the past who would be, like, you know,

16     what goes behind closed doors stays

17     behind closed doors.

18          But when you have these types of

19     decisions -- like Steve's talking

20     about -- you can pin it down to the

21     specific judges because it kind of

22     filters through a lot of the stuff that

23     they do.  And there is no recourse for

24     that.  When you have a judge put in an

25     order you know what, I'm going to buy the



Domestic Violence Task Force - 01/31/2022

1          fact that this was self-defense.  Next

2          time, don't put your hands around their

3          neck kind of thing.  And it was a

4          strangulation case.  Well -- or you know

5          what, you know, it's almost sexual

6          assault.  Next time, don't do this.

7          Because it -- you're really walking the

8          fine line.  That's -- that's problematic.

9          And it's not just a decision here or

10         there, it's consistent in that particular

11         courtroom --

12              JUDGE HANTZ MARCONI:  It's

13         interesting --

14              INV. BERNIER:  -- for these cases.

15              JUDGE HANTZ MARCONI:  -- because I'm

16         hearing that in the domestic violence on

17         the civil side, you would have a remedy

18         or at least some recourse.  You would

19         have a motion to reconsider, you would

20         have an appeal issue.  But you don't have

21         that on the criminal side.

22              MS. KRUEGER:  I would just say on

23         the civil side that is -- that is true,

24         right?  You have the opportunity to

25         appeal.  It's certainly a more difficult



Domestic Violence Task Force - 01/31/2022

1        appeal if it's an unsustainable exercise

2        of discretion, right?  And -- which it

3        may be when you're talking about, like, a

4        continuum of how a judge may interpret

5        certain facts.  So I would --

6             JUDGE HANTZ MARCONI:  Right.  You

7        might have -- I mean, the fact of the

8        relationship stands on different footing

9        than other, I'll say, more discretionary

10       decisions about timing, duration, those

11       sorts of things.

12            MS. KRUEGER:  Right.  And then

13       there's credibility.  And that, you

14       know -- you know -- and if there's a --

15       if there's a particular judge who seems

16       to have more skepticism towards people

17       who are coming forward as victims, and

18       you see that on a regular basis, that's a

19       harder thing because it will appear in an

20       order.  Even if an order's, you know, may

21       just be a check box thing.  But if

22       there's a merit that accompanies it and

23       there's any mention of credibility, you

24       know -- you really -- that's not worth

25       appealing, right?



Domestic Violence Task Force - 01/31/2022

```
 1            So -- but the other point of that is
 2       if a protection order's denied -- and I
 3       found that this was in the report -- why
 4       don't more plaintiffs appeal their cases.
 5       Well, if there's no protection order in
 6       place, you know, ninety percent of the
 7       time the victim is not going to appeal
 8       that for a variety of reasons, safety
 9       being one.  And so that is a real barrier
10       for victims in particular in deciding --
11       even it if it's an obvious legal error --
12       to move forward with an appeal.  So I
13       just want to point that out.
14            JUDGE HANTZ MARCONI:  Right.  And so
15       it's interesting because those are the
16       cases that could affect the law, if you
17       will.  And so maybe the challenge is -- I
18       mean, again, thinking big -- but how do
19       you provide that additional resource to
20       allow for appeals?
21            JUDGE YAZINSKI:  The thoughts I had
22       in that regard --
23            JUDGE HANTZ MARCONI:
24       (Indiscernible) throughout.  So yeah.  Go
25       ahead.
```



Domestic Violence Task Force - 01/31/2022

1              JUDGE YAZINSKI:  One of the things

2       that I thought about in this regard over

3       the last few weeks is amending the

4       statute -- when we get around to the

5       statue -- to provide for an appeal that

6       stays the existing temporary order and

7       also is expeditated much the way we

8       expedite abuse and neglect appeals.

9       Because I agree with Mary that it is

10      extraordinarily intimidating both to lose

11      and then to have to turn around and file

12      an appeal that might not get heard for a

13      year while you have no protection.

14              But if we recognize that these

15      appeals are extraordinarily important and

16      hearing them timely is important, now

17      going the line of the abuse and neglect

18      system where appeals get heard quickly

19      might be something to look at.

20              JUDGE HANTZ MARCONI:  And

21      particularly if it stays the temporary

22      order or keeps the temporary order in

23      place.

24              INV. BERNIER:  In addition to that,

25      even in -- I mean, like -- again, a lot



Domestic Violence Task Force - 01/31/2022

1       of us, we all have oversight.  We all

2       have an immediate supervisors.  We all

3       have that layer of -- I call it the food

4       chain.  Even if there was, you know, a

5       denial that there some type of an

6       automatic -- kind of like NFL does with

7       touchdowns and everything under the two-

8       minute warning, you know.  And call New

9       York and have them take a look at the

10      video type of thing.

11          If there's a denial, having

12      something set up so that there is a quick

13      ability to review -- with exactly what

14      the judge just said now -- and having

15      that time frame, you know -- keeping the

16      order as-is until that little review

17      process happened might be something to

18      consider.

19          JUDGE HANTZ MARCONI:

20      (Indiscernible) -- general kind of

21      thing --

22          MS. LAFRANCE:  Yeah.  Here's --

23      here's my thought on that.  Kristyn,

24      that's a great idea.  Why couldn't it be

25      akin to something like sentence review



Domestic Violence Task Force - 01/31/2022

1       for felony sentences?

2           You have a panel of three judges

3       that hears -- right?  I mean, Merrill,

4       you're very familiar with this.

5           You know, it would be reviewable

6       by -- it could either be three district

7       court, family court, judges or even

8       superior court judges like sentence

9       review is now.  And if, you know, two out

10      of three of those judges feel that the

11      denial was incorrect, then the

12      restraining order gets reinstated.

13          JUDGE HANTZ MARCONI:  Interesting.

14          INV. BERNIER:  And not even -- but

15      not even necessarily to that extent where

16      you're tying up three other people but

17      just that one level of -- even if there

18      was, you know, each area, county, or

19      however it works is someone's earmarked

20      to just review those.  It wouldn't

21      necessarily need to be a two out of a

22      three.

23          Just getting that, kind of, second

24      opinion kind of thing.  You know, just

25      like we all do when -- you know, if I do



Domestic Violence Task Force - 01/31/2022

1      an arrest warrant or search warrant,

2      somebody's putting eyes on it.  Did I

3      miss anything?  And I think that would

4      really, potentially, cut down on a -- on

5      a lot of problems or prevent something

6      from happening.  By just that other set

7      of eyes.

8          MS. ZINKIN:  I just wanted to let

9      people know that appeals of DV orders and

10     appeals of civil stalking orders are

11     expedited already.

12         JUDGE HANTZ MARCONI:  There's

13     expedited and then there's expedited,

14     right?

15         MS. ZINKIN:  Tim just came to my

16     office.  So according to -- Tim Gudas,

17     our clerk of court, they're expedited.

18         JUDGE HANTZ MARCONI:  And I will

19     just tell everyone here that even though

20     we expedite, that has a meaning in our

21     process that may not be what y'all are

22     thinking of.  So yes.  But Tim is right;

23     they are expedited.  But we may need to

24     put our running shoes on.

25         MS. LAFRANCE:  But the issue with --



Domestic Violence Task Force - 01/31/2022

1          JUDGE HANTZ MARCONI:  --

2     (indiscernible) --

3          MS. LAFRANCE:  The issue with

4     appeals, though, is they are so

5     expensive, and they are so time

6     consuming.  That's the reason why they

7     don't appeal, because they don't have the

8     money.

9          JUDGE HANTZ MARCONI:  Right.  And

10    then you're getting in to appointed

11    counsel for that or the appellate DOVE

12    program.

13         INV. BERNIER:  But I think you're

14    also -- people that probably don't even

15    realize they can appeal it.

16         JUDGE HANTZ MARCONI:  Right.

17         INV. BERNIER:  You know, we're in

18    the system all the time, and there's

19    stuff that I'm learning thirty years in,

20    and I'm still learning things.  And for

21    somebody to walk into the system -- you

22    know, I grew up if a judges say X, the

23    judge means X, and that's -- that's the

24    truth.  And that's, you know, that's I

25    think a lot of the perception.  So --



Domestic Violence Task Force - 01/31/2022

 1          MS. ZINKIN:  Although the notice of

 2     order should tell them specifically that

 3     they have the right to appeal, so --

 4          JUDGE HANTZ MARCONI:  Yeah but --

 5          INV. BERNIER:  People don't read

 6     things --

 7          JUDGE HANTZ MARCONI:  -- again,

 8     there's paperwork.  Yeah, there's

 9     paperwork, and then there's paperwork.

10     And how many people here read their

11     mortgage document or their lease.  I

12     mean, their car, you know -- purchase a

13     car, who reads those papers?  Nobody.  So

14     yeah.  It is true people know they can

15     appeal, but I think the reality is the

16     system is not conducive to people really

17     knowing how to do that.

18          MS. ZINKIN:  Other than sentence

19     review, is there any other, kind of,

20     system that we have where there's some

21     kind of, short of an appeal, review of a

22     trial court's decision?

23          MR. ENDRES:  Absolutely.  In bail,

24     if a bailiff commissioner makes a

25     decision, there's a statutory right to



Domestic Violence Task Force - 01/31/2022

1      appeal it to a circuit court judge.  And

2      if you don't like the circuit court

3      judge's ruling, there's a statutory

4      appeal to superior court.  And usually, I

5      think it's within thirty-six hours by

6      statute.  So --

7          MS. ZINKIN:  So would this require

8      statutory amendment, you think?

9          MR. ENDRES:  It absolutely it would

10     require a statutory amendment to do

11     either an appeal to superior court or

12     even, I think, a sentence-review-type

13     thing with a three-judge panel.  I think

14     all that would require a legislative

15     amendments that -- and I mean, obviously,

16     we're a judicial task force.

17         I think that the -- the judicial

18     branch could come up with some type of

19     oversight over sitting judges that are

20     currently sitting without any legislative

21     input, but that would require, I think, a

22     lot of thought by the part of the

23     judiciary.

24         JUDGE HANTZ MARCONI:  Well, the

25     judicial branch can review -- there's



Domestic Violence Task Force - 01/31/2022

1        some things we can review and some things

2        we can't review.  And -- or let me put it

3        this way, there's a process for reviewing

4        individual decisions that we can't undo

5        without modifying that process though the

6        legislature because they give us -- they

7        grant us our jurisdiction, except for

8        certain inherent jurisdiction, which we

9        have.

10        There are also -- and I think the

11        protocols are an attempt to deal with

12        that process issue, which is very much

13        within the wheelhouse of the judicial

14        branch.  But the judges being

15        constitutional officers appointed by the

16        governor, approved by the council,

17        they're all their own authority, if you

18        will, within the confines of the branch

19        review process.  So some yes, and I think

20        I'm anticipating -- but we're going to

21        look into it -- some yes, and some no.

22        INV. BERNIER:  With regard to some

23        of the -- with reviews -- and now I think

24        a lot of it is because judges are wearing

25        multiple hats because they're doing

Domestic Violence Task Force - 01/31/2022

1        civil, they're doing juvie, they're doing

2        DV, they're doing criminal.  You have a

3        huge caseload, people filing paperwork

4        for X, Y, and Z.

5              Some of the stuff that we might be

6        looking for -- which again, might be just

7        another set of eyes built into the

8        system -- we're seeing also more and more

9        taking things under advisement.  So I've

10       seen, you know, final DV orders being

11       taken under advisement.  And I don't know

12       the, you know, the legal ins and outs of

13       how long that -- but obviously the order

14       stays in place until the order comes down

15       for a petition.  But that could all --

16             I've seen that also in criminal

17       cases.  So you have a judge who'll go,

18       okay, you know, I need to go back and

19       review.  I've seen it on PC hearings,

20       I've seen it on anything.  I want to go

21       back, and I want to double check and look

22       things up.  That maybe the point for that

23       second set of eyes on some of those

24       things so that you don't end up with

25       legislative changes.  You don't end up

Domestic Violence Task Force - 01/31/2022

1       with appeals.

2             A lot of judges are taking things

3       under advisement now anyway.  Something

4       that might be instituted that isn't going

5       to mess around with Constitutional rights

6       and due process and all that other legal

7       stuff that I don't have a law degree to

8       discuss.

9             JUDGE HANTZ MARCONI:  Well, and it

10      may be you're right.  There may be a

11      point of collaboration that could be

12      built into the system.  I don't know.

13            MS. SEXTON:  But if there are

14      consistent complaints against specific

15      judges relative to their conduct in

16      domestic violence-related cases, the

17      courts can remove them from domestic

18      violence -- sitting on domestic violence

19      cases.  Is that correct?

20            MS. ZINKIN:  I don't think so.

21            JUDGE HANTZ MARCONI:  I don't know.

22            MS. ZINKIN:  They're circuit court

23      judges.

24            JUDGE HANTZ MARCONI:  I don't think

25      so.



Domestic Violence Task Force - 01/31/2022

1          MS. ZINKIN:  I think by statute I

2     have to hear all the cases that come up

3     at the circuit court.

4          MS. SEXTON:  I think we should look

5     into that.

6          MS. ZINKIN:  And the circuit court

7     is a statutory court, it only has

8     jurisdiction as granted to it by the

9     legislature.

10          MS. SEXTON:  But there are other

11     matters within the circuit court that

12     the -- that judge could be sitting on.

13          JUDGE HANTZ MARCONI:  Sure.

14          MS. SEXTON:  I think it's something

15     with should look into.

16          MS. ZINKIN:  Um-hum.

17          JUDGE HANTZ MARCONI:  And also the

18     process for vetting and collecting those

19     reported incidents, you know.  You've got

20     to be able to understand the context.  It

21     gets unwieldy -- and I'm just

22     speculating -- but you have to understand

23     the context to understand the impact to

24     the parties and the behavior you're

25     talking about.



Domestic Violence Task Force - 01/31/2022

1           So that is a -- I don't know about

2       removal, I think that could be invading

3       some level of authority, but it's worth

4       looking at.

5           INV. BERNIER:  But if some of those

6       issues -- and again, in my personal

7       experience, and others are different -- I

8       can narrow it down to, you know, a couple

9       judges here and there that have specific

10      things that they do and don't do or

11      specific beliefs.

12          If those -- if there is an avenue to

13      address that stuff, to either head it

14      off -- either with training or review or

15      whatever it is -- it doesn't end up

16      rising to the level of removing a judge

17      from something.  It's about nipping it in

18      the bud, so to speak, and having the

19      avenue to address those things.  And --

20          JUDGE HANTZ MARCONI:  So what do we

21      think about --

22          INV. BERNIER:  -- no -- again, no

23      different than you do in my position --

24      my profession.

25          JUDGE HANTZ MARCONI:  What do we



Domestic Violence Task Force - 01/31/2022

1          think about the avenue to address it?  A

2          type of -- not a survey once every couple

3          of years, but a type of feedback, comment

4          line, complaint form, what are we

5          thinking about?

6              MS. BEAUCHAMP:  Is there maybe an

7          opportunity here to create some sort of

8          maybe short evaluation form for victims,

9          advocates, attorneys who are assisting

10         victims, to just evaluate their

11         experience with obtaining or applying for

12         a temporary order?  And then perhaps

13         another form for the final order hearing.

14             Something that maybe just addresses,

15         like, walking into the court and, you

16         know, having a helpful clerk assist you

17         with deciding which is the right

18         petition.  Did you -- were you given a

19         private space to complete your petition?

20         What was the experience like in the

21         courtroom?  Just something, and then, you

22         know, some sort of procedure to collect

23         this information and document it.

24             I think early on someone had

25         discussed the importance of data, and it



Domestic Violence Task Force - 01/31/2022

1      really is important.  I think that kind

2      of goes along the lines of having a

3      petition that has some fillable formats

4      that we can actually pull the information

5      out of and it's meaningful information.

6      And it's not just whether the order was

7      granted or not, but you know, was there a

8      firearm issue?  Were children -- was

9      there a request for, you know, something

10     related to the children in it?  I just

11     think this information would help us to

12     track going forward.

13          I mean, we've heard anecdotally what

14     the issues are and the concerns, but if

15     there were a mechanism to actually

16     collect the data and then support the

17     fact that, yes, we need more training for

18     judges.  We need more training for the

19     staff in the court.

20          JUDGE HANTZ MARCONI:  That would

21     work, I think.  I like the idea.  Sort of

22     an exit interview on leaving the

23     courthouse.

24          If there's an advocate, I suspect

25     you would get a response.  I don't know



Domestic Violence Task Force - 01/31/2022

1      if we would capture all the self-

2      represented parties who are going to

3      leave and either give up or not or go

4      about their business, but it's a start.

5      And I think it's a -- sounds like an

6      interesting way to collect more

7      information.

8          INV. BERNIER:  On a different note

9      with regard to, say, that specific

10     potentially hair-raising order -- and

11     I -- I have a greatest -- I call it my

12     greatest hits compilation of a number of

13     these.  But say a judge orders, you know,

14     a felony bail hearing for the defendant,

15     puts in the order something to the effect

16     of and I recommend that the -- I don't

17     want to break up this couple -- and I

18     recommend that the victim, you know,

19     might want counselling.  I -- that -- I

20     lose my mind when I see stuff like that.

21         Or an order that -- just the

22     verbiage or the decision -- where would

23     one go to have that looked at?  That's

24     the other avenue, you know.  Something

25     comes down, is there a, you know -- I

Domestic Violence Task Force - 01/31/2022

1      know I can pick up a phone and

2      commiserate with someone else about it.

3      But if there's something that, you know,

4      that doesn't belong in a bail order, so

5      where does one go with that?  That's

6      another avenue that isn't accessible.

7            JUDGE HANTZ MARCONI:  So the state

8      wouldn't -- and again, you're in -- I'm

9      sort of trying to test this out -- the

10     state wouldn't then say, wait a minute,

11     Your Honor, that's not appropriate for

12     the bail order.  Would you reconsider and

13     drop that?  And here are all the reasons

14     why it's not appropriate.

15           INV. BERNIER:  But for instance,

16     where -- is there a place to do that now?

17     And is that something that we can --

18     because for all these years that I've

19     been doing it, I couldn't tell you where

20     I would pick up the phone and go, hey, I

21     have a problem with an order here.  Other

22     than calling other colleagues or

23     prosecutors or, you know, advocates and

24     going, what do we do as a group and who

25     do we take this to.



Domestic Violence Task Force - 01/31/2022

1           JUDGE HANTZ MARCONI:  Steve --

2      Steve --

3           INV. BERNIER:  That's been a real

4      frustration.

5           JUDGE HANTZ MARCONI:  Steve, tell

6      me, if you get a bail order is there a

7      reconsideration opportunity?

8           MR. ENDRES:  Yeah, you could

9      certainly file a motion to reconsider a

10      bail order like that.

11           JUDGE HANTZ MARCONI:  Right.

12           MR. ENDRES:  And depending which

13      court issued the order, if it was issued

14      out of a circuit court, you could appeal

15      that to the superior court, again, for

16      that hearing within thirty-six hours.

17           JUDGE HANTZ MARCONI:  Right.

18           MR. ENDRES:  The state and the

19      defense have that right to appeal.  And

20      you can appeal bail orders to the Supreme

21      Court, and the statute says they shall be

22      determined promptly.  Which, again, I

23      think promptly in Supreme Court terms

24      means within, like, three months, as

25      opposed to within thirty-six hours.



Domestic Violence Task Force - 01/31/2022

1        JUDGE HANTZ MARCONI:

2        (Indiscernible).

3        MR. ENDRES:  There is certainly a

4        right to appeal bail orders.

5        JUDGE HANTZ MARCONI:  Right.  And so

6        if there was a bail order that was

7        inappropriate with respect to the

8        complaining witness, you would be able to

9        deal with that through that process?

10       MR. ENDRES:  There is an avenue of

11       appeal for bail orders.

12       JUDGE HANTZ MARCONI:  Right.  It

13       would just be a priority in terms of

14       resources whether you're going to

15       basically bother with that, right?

16       INV. BERNIER:  Exactly.  There's

17       no --

18       MR. ENDRES:  Well, again, the county

19       attorneys can't bring appeals, they all

20       have to go through the attorney general's

21       office.  So --

22       JUDGE HANTZ MARCONI:  Right.

23       MR. ENDRES:  -- you'd have to get

24       the attorney general's office to be on

25       board with that.



Domestic Violence Task Force - 01/31/2022

1           JUDGE HANTZ MARCONI:  Yep.

2           MS. KRUEGER:  But the question is --

3           MS. HORNICK:  But the point is,

4       though -- go ahead.

5           MS. FREEMAN:  Those type of concerns

6       do get brought to the domestic violence

7       program manager, and that can help inform

8       what types of training is done for staff

9       and judges.  So that's another avenue if

10      the end goal in that particular case is

11      to try to get information to be geared

12      towards training, that is the avenue to

13      get that information to the judicial

14      branch.

15          JUDGE HANTZ MARCONI:  And that's

16      currently --

17          MR. ENDRES:  Well --

18          JUDGE HANTZ MARCONI:  -- that

19      currently goes to Jean through the -- her

20      phone, her email, through her contact

21      information, so anybody -- maybe we have

22      to publicize this more -- can route that

23      information through the DV program

24      manager for it to be addressed by the

25      circuit court, if you will.



Domestic Violence Task Force - 01/31/2022

1          MS. FREEMAN:  That's accurate.

2          MR. ENDRES:  Well --

3          MS. HORNICK:  Kristyn was talking

4     about felony bail, though; weren't you,

5     Kristyn?  So the limited number of

6     superior court judges?  Wasn't that --

7          INV. BERNIER:  That was -- that

8     particular case was felony.  And again,

9     same type -- same judge that we had a

10    number of those issues with.  But that

11    was just one.  I have a bunch of

12    examples.  But that's an example of one

13    of those, like, A, it shouldn't be there;

14    it's not the appropriate place for it.

15    The attitude of I don't want to break up

16    the marriage type of thing with a

17    strangulation case, and a defendant

18    that's, you know, fifteen years older

19    than his nineteen-year-old victim.

20    What's the avenue?

21         The kid who's the victim isn't

22    certainly going to push for it.

23    Everybody's judges are tied up and

24    prosecutors are tied up.  And there's

25    just no place to take that but to stick



Domestic Violence Task Force - 01/31/2022

1      in a file of here we go again.  And have

2      it addressed in some way.

3          MS. HORNICK:  I would just -- if

4      it's a -- I mean, superior court's a

5      whole different story.  It feels like

6      there's a, you know, a -- I mean, with

7      all due respect to all of these people,

8      all these stakeholders that we're talking

9      about -- yeah, shoot.

10         I think when you get into superior

11     courts since it's such a limited -- I

12     mean, there's -- there's motions to

13     reconsiders, there's records to be

14     created, there's more witnesses to be

15     called.

16         So I don't -- I mean, again, you

17     might be talking about the lack of the

18     oversight or accountability, that I don't

19     know -- I don't know -- that is -- seems

20     to be an issue, kind of, across the

21     board.

22         But gosh, I also -- this is going to

23     sound weird, but I don't -- I've had

24     many -- not many -- several calls and

25     complaints from law enforcement and



Domestic Violence Task Force - 01/31/2022

1          others about judge's orders.  Not just in

2          the county where I am -- Grafton

3          County -- but, you know, across the

4          state.  And I've wondered about, sort of,

5          oversight and accountability.  Because it

6          seems like a real necessity across the

7          board.

8              But I also don't want to paint this

9          broad brush that all judges are bad.

10         It's just that there isn't any -- it

11         doesn't seem like there's any way to hold

12         any judges --

13             INV. BERNIER:  Exactly.

14             MS. HORNICK:  And I mean -- so I

15         don't know what the answer is, Justice

16         Marconi, but at -- but it does seem like

17         there's -- there's that piece somehow

18         that's, kind of, calling

19         (indiscernible) --

20             JUDGE HANTZ MARCONI:  Do people not

21         credit or not pay attention to or not

22         participate in the every-three-year

23         review?  I mean, is that just something

24         MS. SEXTON:  No, it's --

25             JUDGE HANTZ MARCONI:  -- that nobody



Domestic Violence Task Force - 01/31/2022

1          pays attention to except the judges who

2          are --

3                  MS. SEXTON:  Yeah, it's not highly

4          publicized.  I don't think there's an

5          effort to really seek input.

6                  But I also think there's a lack of

7          understanding about what that entails.

8          You know, are there -- is there -- are

9          there -- is there data collected on each

10         judge in order to be able to compare --

11         like for instance, temporary orders,

12         relinquishment of a firearm is optional.

13         Most judges will order relinquishment.

14         Is there some sort of data that's

15         collected to determine how often judges

16         are or are not doing that.

17                 Is there some sort of basic

18         performance measures in order to, you

19         know, have, sort of, an objective look at

20         performance in addition to trying solicit

21         input from, you know, parties and other

22         people who are working within the system.

23         So I'm not even sure what that looks

24         like.  Is there --

25                 JUDGE HANTZ MARCONI:  Well, it's



Domestic Violence Task Force - 01/31/2022

1        interesting because I think the survey

2        that was -- I mean, certainly the survey

3        that was developed way back when was

4        dealing with performance of judging in

5        general.

6            I don't think at this point there's

7        been any data collection in terms of

8        outcomes, which could be -- I'm only,

9        again, kind of, thinking ahead -- but

10       drawing -- there's correlation and then

11       there's causation.  And drawing

12       conclusions from outcomes with all --

13       it'd be an interesting process because

14       you look at what types of cases happen

15       before a certain judge, who the parties

16       are, what the evidence is, before you

17       start drawing -- drawing conclusions from

18       sheer data.

19           So that, to me, would be -- it's

20       like any survey.  You'd have to control

21       for many variables.  But I don't think at

22       that point this -- that sort of data

23       tying outcomes to specific judges or

24       geographic locations or anything else has

25       been done.



Domestic Violence Task Force - 01/31/2022

    1            JUDGE CARBON:  So Justice Marconi, I

    2        don't think that we -- with the judicial

    3        surveys that go out, you know, maybe an

    4        idea is to disseminate it more broadly.

    5        It does go in Bar News, and I don't know

    6        where else it's publicized --

    7            JUDGE HANTZ MARCONI:  Right.

    8            JUDGE CARBON:  -- but the intent is

    9        to capture perceptions.

   10            JUDGE HANTZ MARCONI:  Yes.

   11            JUDGE CARBON:  And they do break it

   12        down by category.

   13            JUDGE HANTZ MARCONI:  Yes.

   14            JUDGE CARBON:  What it does not

   15        do -- and what I'm not sure would be

   16        appropriate to do -- is to say, did this

   17        judge exercise his or her discretion to

   18        take firearms or not, when it's within

   19        the purview of the law to do it or not do

   20        it, depending on the facts of a case.

   21            JUDGE HANTZ MARCONI:  Right.

   22            JUDGE CARBON:  And there's no survey

   23        that you're going to get into that's

   24        going to try to disaggregate that kind of

   25        information.  But what I do think --



Domestic Violence Task Force - 01/31/2022

1            JUDGE HANTZ MARCONI:  Right.

2            MS. SEXTON:  Well, if you want to

3       fight bias --

4            JUDGE CARBON:  Oh, excuse me.  Let

5       me finish, if I may.

6            JUDGE HANTZ MARCONI:  Yes.

7            JUDGE CARBON:  Couple of things that

8       we could do here.  We did do surveys way

9       back at the family division, and so

10      there's a model and a template for doing

11      public surveys there.

12           Another suggestion might be that we

13      look at a court watcher program that lots

14      of jurisdictions around the country have.

15      They monitor not only judicial conduct

16      but clerks, law enforcement, advocates,

17      everybody within the context of the

18      courtroom.  So it's an observation

19      process on how the collective entire

20      system is working.  So that's something

21      to look at.

22           This also gets to an issue that

23      Kristyn raised in her email that I don't

24      want us to lose before we close today,

25      which is firearms.  And that's a whole

Domestic Violence Task Force - 01/31/2022

 1          big range of different issues about the

 2          statute, about how orders are served,

 3          what the forms contain in terms of

 4          information that we gather from victims,

 5          when they apply.  Do they necessarily all

 6          want their firearms to be surrendered.

 7          Lots of states don't have an automatic,

 8          kind of, provision in their form.  We

 9          happen to.  And so they, you know -- we

10          can check it or not check it.  We have

11          the ability to take them depending on the

12          facts of a case.

13              We don't have provisions built in

14          for a return of service to track what

15          firearms were identified.  We don't ask

16          that specific detail in any kind of a

17          form.  You know, when asking victims if

18          they want firearms surrendered and if

19          they can identify them, great, but we

20          don't give them a tool that -- there are

21          organizations that have tools that would

22          help them identify what they are.

23              We don't track which ones were

24          surrendered, which ones weren't

25          surrendered.  There's a whole bunch of



Domestic Violence Task Force - 01/31/2022

1        information around that and a safer

2        service of process (indiscernible)

3        process and return back to the court that

4        we could be doing.

5            There's lots of -- you know, we

6        don't have time to get into the whole

7        myriad issues that surround firearms.

8        But there's a lot that could be done

9        through the courts, through law

10       enforcement, through advocates, and I

11       would suggest that that get put in our

12       bucket, too -- the addressing.

13           INV. BERNIER:  And dovetailing on

14       what Judge Carbon said, this is another

15       one of those issues.  That it's not just

16       about -- yes, our focus is judicial

17       system, but at every level there is an

18       opportunity for things to fall through

19       the cracks.

20           So a judge orders weapons to be

21       seized, you've got a plaintiff who may

22       put the information about exactly

23       where -- Missy Charbonneau's a perfect

24       example -- where those weapons are.  And

25       the judge is doing their thing, the

Domestic Violence Task Force - 01/31/2022

1          victim gave the information, and then it

2          falls apart at another level.  So when

3          we're looking at some of these issues, we

4          really need to be looking at how they all

5          interplay because the work has to be

6          done, kind of, across the board.

7                And this is one of those things

8          where no matter -- you know, you go to

9          different counties, you could look at

10         different agencies, different levels of

11         training.  You know, certain agencies

12         that may serve something that isn't the

13         agency that actually has the case.  It's

14         kind of terrifying when you see what

15         actually goes on and what doesn't -- what

16         should be going on and -- in regard to

17         those weapons issues.

18               JUDGE CARBON:  Just even to add to

19         that, if I could, we have situations

20         where a victim may identify a particular

21         firearm because that may be the only one

22         she knows about.  So law enforcement may

23         take that gun, how do we know that the

24         defendant doesn't have a bunch of other

25         ones if we don't have a system for

Domestic Violence Task Force - 01/31/2022

1     inquiring and then following up.

2          And what happens if they don't

3     surrender them?  What's our follow-up?

4     What if they give them to third parties?

5     I mean, there's so many different issues

6     that we really could peel down on and I

7     think as a whole do a more responsible

8     job to make communities safer.

9          MS. SEXTON:  But I think in terms of

10    the judiciary, if a particular judge

11    sixty percent of the time is not checking

12    the box to relinquish a firearm in

13    temporary orders -- and I'm not saying

14    that's the case -- but we should know

15    that.  Especially when it comes to the

16    point of the three-year review.  And I

17    think there just needs to be objective

18    data in order to determine that we're on

19    the right track.

20          JUDGE HANTZ MARCONI:  But how do you

21    draw a conclusion from that sixty

22    percent?

23          MS. SEXTON:  You review it.  You

24    have to spend time reviewing it.  So if

25    it's an actual three-year review, you use

Domestic Violence Task Force - 01/31/2022

1        objective measures and you take the time

2        to look at if one judge is sixty percent

3        and the rest are ten percent, then that's

4        going to give you an indication that

5        that's something you need to delve deeper

6        into.  And maybe it's a fluke.  But it's

7        absolutely worth looking into.

8              JUDGE HANTZ MARCONI:  Anything else?

9        On any topic?

10             INV. BERNIER:  I think it'd be

11       really -- you know, again, coming from

12       the law enforcement side of things.  Some

13       of these things -- for instance, the

14       firearms, the -- you know, service --

15       there's some really good opportunities

16       for -- I don't know if training's the

17       right word, yeah, training comes into

18       play -- but some interactive things where

19       you have prosecutors and judges and cops

20       and advocates kind of learning at the

21       same table.  Not just judges being

22       trained in, you know, in their thing and

23       cops being trained in their little world,

24       but the perspective is something that we

25       all need to be cognizant of.



Domestic Violence Task Force - 01/31/2022

1          Is -- I know what my perspective is

2      and I have to keep, you know, that To

3      Kill a Mockingbird thing where I have to

4      keep in mind where the prosecutor's

5      coming from, or where a judge is coming

6      from.  And I think some of the

7      understanding of the limitations involved

8      in those trainings -- if a judge knows,

9      okay, I'm ordering you to seize the

10      weapons, from our angle, what are the

11      hurdles for the cop that's serving it if

12      the guy says, I don't have any weapons.

13      The victim put that on the form.  What

14      are the avenues for us to take that?  And

15      training people together in that topic --

16      and maybe other topics -- would be

17      helpful.

18          But you know, meaningful,

19      substantive training, not, you know,

20      frou-frou, kind of, kumbaya stuff where,

21      you know, people aren't paying attention.

22      But stuff where it could be -- I'm not

23      saying scenario-based -- but something

24      where you have people having to interact

25      and kind of spitball in terms of what

Domestic Violence Task Force - 01/31/2022

1      they'll do and how they'll handle things

2      as things come up.  But I think it's key

3      that we interact.

4          JUDGE HANTZ MARCONI:  Makes sense.

5      Anyone have -- before we run out of

6      time -- anyone have any thoughts on

7      offenders using the judicial system to

8      further harass and control victims?

9          MR. ENDRES:  I know that that's

10     something that I certainly think a lot

11     about.

12          Unfortunately, when you get a no-

13     contact order, there's a lot of people

14     who immediately think, I need an

15     exception to that no-contact order so

16     that we can discuss the kids or the

17     finances, or we can discuss this or we

18     can discuss that.

19          And if you're the victim of domestic

20     violence and you've gone to the court to

21     get a protective order to keep this

22     person away from you, and then there's an

23     immediate exception to discuss the kids,

24     I think that's very intimidating.

25     Because it shows that this isn't really a

Domestic Violence Task Force - 01/31/2022

1       no-contact order, that you -- the court

2       can't keep us apart type thing.

3               And certainly a lot of those

4       exceptions -- for example, one of the

5       common ones is they're allowed to have

6       contact to talk about the children.  And

7       certainly we've had cases where when

8       someone says, you're a horrible mother,

9       they might be talking about the children

10      there, but that -- that's -- begins to

11      cross a line in becoming abusive again.

12              The other thing that we see a lot --

13      and we were talking earlier about the --

14      essentially recording people -- is we

15      periodically get motions -- Richards

16      motions -- essentially not to bring

17      evidence from the defense in on a

18      criminal trial, not to say, I want to

19      call this witness who has a Fifth

20      Amendment issue, but we see Richards

21      motions more to keep evidence out of our

22      trials.

23              INV. BERNIER:  Yes.

24              MR. ENDRES:  Where defense is filing

25      a motion saying, you can can't call the



Domestic Violence Task Force - 01/31/2022

1    victim because the victim has a Fifth

2    Amendment right.

3         INV. BERNIER:  Yes.

4         MR. ENDRES:  And what's difficult is

5    that the courts tend to respond to these

6    motions by immediately appointing counsel

7    for the victim.

8         So you have this scenario where the

9    defendant is saying to the victim, if you

10   talk to the police, you're going to get

11   charged with a felony for recording me.

12   And the court almost gives credence to

13   that threat by immediately appointing

14   counsel for the victim without speaking

15   to the victim first.

16        So we have a lot of, you know, sort

17   of, intimidation that's built in within

18   in the acceptable range of doing things

19   as a defense attorney or as a litigant.

20   And I'm not sure what you can do to

21   prevent that, but I think it's certainly

22   something to be cognizant of that all of

23   these exceptions to protective orders,

24   all of these, you know, Richards hearings

25   where people are immediately getting



Domestic Violence Task Force - 01/31/2022

1     appointed counsel, it's an extremely

2     intimidating process to begin with.  And

3     being told, oh, you're going to go to

4     jail now.  And then next thing you know,

5     you have an attorney appointed to

6     represent you, you got to be terrified.

7          INV. BERNIER:  That's one example --

8          MS. HORNICK:  The tension -- the

9     tension between the Constitutional

10    rights -- right -- of the defendant and

11    the victim' rights.  And we -- just as

12    you so clearly elaborated, Steve -- we

13    see that so regularly becoming a constant

14    tool to try to get out of accountability.

15         MS. KRUEGER:  It's coming up more in

16    civil cases now.  The defense bar is

17    really pushing the Richards issues, and

18    it's just all about the intimidation

19    factor.

20         INV. BERNIER:  Um-hum.

21         MS. KRUEGER:  And you know, I mean,

22    I can't fault defense attorneys claiming

23    a defense, right?  But I don't know when

24    you start -- if the judge is there seeing

25    this -- it's just interesting.  I don't



Domestic Violence Task Force - 01/31/2022

1       know what the right answer is to that,

2       but it certainly -- it just does seem

3       obvious that that's what's going on.

4            JUDGE HANTZ MARCONI:

5       (Indiscernible) --

6            MR. ENDRES:  Especially when --

7            JUDGE HANTZ MARCONI:  Go ahead.

8            MR. ENDRES:  I'm sorry.  Especially

9       when you're seeing motions that are

10      grounded on the victim has a Fifth

11      Amendment right because I read this in

12      the police report, meaning the state's

13      been fully aware of this information for

14      maybe a whole year and we haven't brought

15      any charges against the victim, and now

16      defense counsel is saying, oh, but they

17      can be charge with.  And some of the

18      charges they come up with in the Richards

19      motions are, you know -- to use the term

20      frivolous and fanciful certainly hits the

21      nail on the head.

22           I agree with Patricia with -- under

23      the wiretap statute, if you have your

24      phone out and you say, I'm recording you,

25      there is no crime there.  But we'll have

Domestic Violence Task Force - 01/31/2022

1          defense attorneys filing motions saying,

2          no, not only is there a crime there,

3          that's a felony.  Which, to the extent

4          there is a crime, it's certainly not a

5          felony.  But we're seeing that more and

6          more.

7                    JUDGE HANTZ MARCONI:  Well, and I

8          would guess even exceptions -- well,

9          exceptions or suspension, if you will --

10         of a restraining order to allow someone

11         to go into the house can be seen by -- to

12         allow the offender to go into the house

13         to get stuff or whatever -- can be seen

14         as an accommodation and pretty

15         intimidating to the victim.  That they're

16         losing control of, again, their space.

17                    INV. BERNIER:  Couple things that --

18                    MS. LAFRANCE:  Can I --

19                    INV. BERNIER:  -- are my new

20         favorites --

21                    MS. LAFRANCE:  Yeah, can I just --

22         I'm sorry.  Can I just step -- can I just

23         comment on what Steve just said because I

24         want to get to the Richards issue.

25         There's differences.  Because as a



Domestic Violence Task Force - 01/31/2022

1    prosecutor I saw it, and now as someone

2    who also, you know, helps people get

3    restraining orders and defends against

4    them.

5         I bring Richards issues because I'm

6    an officer of the court.  And if I feel

7    that the other side can potentially

8    incriminate themselves, I feel it is my

9    duty to bring it to the court's

10   attention.  I don't do it as some kind of

11   ploy to intimidate the witness.  I did it

12   last week -- or two weeks ago, because

13   mutual restraining orders, the person --

14   the other side -- was literally charged

15   with a crime, not my client.

16        So I informed the court she had

17   potential Richards issues because if she

18   testified in the restraining order

19   hearing, she could potentially

20   incriminate herself.  Again, as an

21   officer of the court, I felt it was my

22   duty to raise that issue.  I did it as a

23   prosecutor as well.

24        But the -- where it it's abused is

25   that -- and as a prosecutor I got this --



Domestic Violence Task Force - 01/31/2022

1      these Richards issues from defendants

2      because they felt their client was right,

3      and their client was saying, well, the

4      victim did this, this, this, and this, so

5      they have a Richards issues.  I'm like,

6      no, no, no.  That's not a Richards issue.

7      Just because your client is saying that

8      the victim did this doesn't mean she has

9      a Richards issues.

10         If there was something in the police

11     report where the victim said, I came at

12     him first or I did that, well, yes, they

13     would have a Richards issues.  But if

14     the -- if -- what's in the police report,

15     there are no Richards issues in that

16     police report, you don't raise it.

17         So there's a difference with

18     something that the victim is admitting to

19     doing that potentially might raise Fifth

20     Amendment concerns and what I used to

21     call what a defense wish they would

22     testify to, which they're not.

23         JUDGE HANTZ MARCONI:  Right.  But of

24     course I'm --

25         MS. LAFRANCE:  So I think it's -- we



Domestic Violence Task Force - 01/31/2022

1       need to be clear with that.

2              JUDGE HANTZ MARCONI:  For our --

3       yeah.  I get that little piece of this.

4       For our purposes, though, we're looking

5       at whether -- and again, this came from

6       some comments that had come in through

7       the public comment line -- whether there

8       is, sort of, this effort, if you will, to

9       have offenders sort of use the system

10      beyond even a Richards issue, but in

11      other ways.  Filing other parenting

12      petitions or other things to harass or

13      control victims.  And I'm just trying to

14      get to is this a -- is there more than

15      this one issue, and is it something that

16      we should be making recommendations on.

17      Or even this one.  But not just this one.

18             INV. BERNIER:  Ex partes seem to be

19      the new topic.  Are the new -- you know,

20      the new way to go about things.  If a DV

21      petition is served -- and I've lost count

22      of how many defendants will go and file

23      that ex parte for sole custody claiming

24      that the victim is crazy.  And then you

25      end up with a defense attorney involved,

Domestic Violence Task Force - 01/31/2022

1          and then you have a victim fearing that

2          they're going to lose their children, so

3          they drop the restraining order.  That's

4          one of them.

5               The other course of tactic is

6          utilizing -- because they can do civil

7          standbys, because they can contact the

8          police, is having well-being checks done

9          on the kids every single day.  Or

10         deciding that they need something from

11         the house every single day because the

12         order kind of allows that to happen.

13         Those are two biggies.

14              I -- with the ex parte, I've even

15         charged -- I've charged witness tampering

16         with it under certain circumstances.  And

17         sometimes you can get around that.  But

18         I've found that using other civil

19         processes has absolutely become more of a

20         thing.

21              JUDGE HANTZ MARCONI:  Good to know.

22              All right.  We're ten minutes past.

23         I was going to make you all volunteer in

24         real time today, but I'm not going to do

25         that.  But I am going to be looking for

Domestic Violence Task Force - 01/31/2022

1    volunteers to assist with the synthesis

2    and coordination, and sort of, shaking

3    out a first draft of some

4    recommendations.  I would like a couple

5    people per charge.  Something that, you

6    know, catches your interest to dig a

7    little deeper and make some concrete

8    recommendations.

9        So in collaboration with the staff

10   types, our little writing committee,

11   that's going to be working and digging

12   down.  So I will be looking for that by

13   email.  I'm going to be looking for a

14   raised hand from everybody.  And we will

15   put together a working draft with working

16   parts.  We will be circulating it in

17   probably bits and pieces.

18       We will be anticipating a few more

19   meetings.  I know you will miss my

20   smiling face, so don't worry, we'll be

21   back together.  But we're going to take a

22   little bit of time and try to synthesize

23   and organize the work that we've to date.

24       Continue with your, again, comments

25   and suggestions in writing.  To bring



Domestic Violence Task Force - 01/31/2022

1      them in, something you forgot about, or

2      something that came up while we were

3      chatting today.  And make your own lists

4      because I don't want to leave anything

5      out of our final collaborative process.

6          Anything else today?  All right.

7      Again, thank you.  Till next time.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



1                C E R T I F I C A T I O N

2

3          I, Grace Markarian, certify that the

4          foregoing transcript is a true and

5          accurate record of the proceedings.

6

7

8

9          _____
                  _Grace Markarian_

10         Grace Markarian (CDLT-258)

11         TTA-Certified Digital Legal Transcriber

12

13         eScribers

14         352 Seventh Avenue, Suite #604

15         New York, NY 10001

16

17         Date:  March 3, 2022

18

19

20

21

22

23

24

25



| A | | | | |
|---|---|---|---|---|

**ability** 34:13
59:11
**able** 12:5 14:9
14:11 21:2
22:7 43:20
50:8 55:10
**absolutely** 8:24
14:14 38:23
39:9 63:7
74:19
**abuse** 3:15,20
9:16 33:8,17
**abused** 71:24
**abusive** 66:11
**acceptable**
67:18
**access** 15:13
**accessible** 48:6
**accommodation**
70:14
**accompanies**
31:22
**accountability**
3:22 19:4
53:18 54:5
68:14
**accurate** 52:1
77:5
**actual** 62:25
**add** 61:18
**added** 3:24
**addition** 15:10
17:2 33:24
55:20
**additional** 32:19
**address** 9:23
44:13,19 45:1
**addressed** 51:24
53:2
**addresses** 45:14
**addressing**
60:12
**Administrator**
2:11
**admissible** 3:21
9:18
**admitted** 16:23
**admitting** 72:18

**advisement** 41:9
41:11 42:3
**advocate** 7:15
20:18 46:24
**advocates** 4:7
10:10 45:9
48:23 58:16
60:10 63:20
**Affairs** 2:3
**affect** 32:16
**AG** 21:21
**AG's** 7:6 21:7,10
22:1,20 26:25
**agencies** 61:10
61:11
**agency** 61:13
**agenda** 3:8,24
**ago** 71:12
**agree** 33:9 69:22
**ahead** 12:24
17:18 32:25
51:4 56:9 69:7
**akin** 4:21 34:25
**allow** 9:14 12:16
16:1,13 32:20
70:10,12
**allowance** 12:8
**allowed** 14:12
66:5
**allowing** 11:23
**allows** 74:12
**Amanda** 2:2
11:5 18:13
**amended** 4:20
**amending** 33:3
**amendment**
4:16 13:1 39:8
39:10 66:20
67:2 69:11
72:20
**amendments**
9:13 39:15
**anachronism**
17:6
**and/or** 20:15
**anecdotal** 4:2,5
**anecdotally**
46:13
**angle** 64:10

**Ann** 1:22
**Anna** 1:11
**Anne** 2:15
**annual** 19:12
20:5
**answer** 54:15
69:1
**anticipating**
40:20 75:18
**anybody** 6:1
51:21
**anyway** 42:3
**apart** 61:2 66:2
**apartment**
25:15 26:8
**apologize** 15:13
**appeal** 20:15
22:12,16,22,25
24:14 26:19
27:2,9,15
30:20,25 31:1
32:4,7,12 33:5
33:12 37:7,15
38:3,15,21
39:1,4,11
49:14,19,20
50:4,11
**appealed** 26:13
**appealing** 31:25
**appeals** 22:10
32:20 33:8,15
33:18 36:9,10
37:4 42:1
50:19
**appear** 31:19
**appellate** 37:11
**apply** 59:5
**applying** 45:11
**appointed** 37:10
40:15 68:1,5
**appointing** 67:6
67:13
**approached**
9:11
**appropriate**
15:6 48:11,14
52:14 57:16
**approved** 40:16
**area** 16:21 35:18

**areas** 3:6
**arrest** 36:1
**as-is** 34:16
**asking** 59:17
**aspect** 27:2
**assault** 7:4 29:6
30:6
**assess** 14:13
**assessed** 13:16
**assist** 45:16 75:1
**Assistance** 2:1
**Assistant** 1:20
**assisting** 45:9
**Associate** 1:12
**Association** 2:5
**assuming** 17:22
**attached** 26:20
**attempt** 40:11
**attention** 54:21
55:1 64:21
71:10
**attitude** 52:15
**attorney** 1:20,23
1:24 2:6 22:8
50:20,24 67:19
68:5 73:25
**Attorney's** 1:19
**attorneys** 2:5
5:7 45:9 50:19
68:22 70:1
**audio** 3:12
**authority** 20:12
40:17 44:3
**authorization**
6:25
**authorize** 5:2
**automatic** 34:6
59:7
**automatically**
18:4
**avenue** 27:15
44:12,19 45:1
47:24 48:6
50:10 51:9,12
52:20 77:14
**avenues** 64:14
**aware** 69:13

| B | |
|---|---|

**baby** 11:11
**back** 41:18,21
56:3 58:9 60:3
75:21
**bad** 21:12 23:15
24:6,10,23
27:6 29:12
54:9
**bag** 3:5
**bail** 38:23 47:14
48:4,12 49:6
49:10,20 50:4
50:6,11 52:4
**bailiff** 38:24
**bar** 57:5 68:16
**Barbara** 1:11
**barrier** 32:9
**basic** 55:17
**basically** 50:15
**basis** 12:17 13:5
17:11 19:9
31:18
**Beauchamp**
1:15 45:6
**becoming** 66:11
68:13
**Beebe** 1:17
**begins** 66:10
**behavior** 33:24
**behoove** 18:22
**beliefs** 44:11
**Belknap** 1:18
**belong** 48:4
**Bernier** 1:18
6:22 8:21 11:1
13:6,10,25
19:20 20:9,12
20:16 21:15,19
21:24 22:23
23:3 24:25
25:6 27:20
28:15 30:14
33:24 35:14
37:13,17 38:5
40:22 44:5,22
47:8 48:15
49:3 50:16
52:7 54:13
60:13 63:10

66:23 67:3
68:7,20 70:17
70:19 73:18
**best** 3:13 16:16
**beyond** 20:14
73:10
**bias** 28:21 29:4
58:3
**big** 11:2 28:21
29:7 32:18
59:1
**biggies** 74:13
**bit** 10:8 14:7
75:22
**bits** 75:17
**Black** 2:7
**blatant** 21:4
**board** 50:25
53:21 54:7
61:6
**bother** 50:15
**bounds** 24:24
**box** 31:21 62:12
**boyfriend** 25:13
26:7
**branch** 4:6
19:11 39:18,25
40:14,18 51:14
**break** 47:11
52:15 57:11
**bring** 22:25
50:19 66:16
71:5,9 75:25
**bringing** 6:18
15:1,2 22:11
**broad** 13:8 54:9
**broadly** 15:19
57:4
**brought** 23:24
51:6 69:14
**brush** 54:9
**bucket** 60:12
**bud** 44:18
**built** 41:7 42:12
59:13 67:17
**bunch** 52:11
59:25 61:24
**business** 47:4
**buy** 29:25

**C**

**C** 77:1,1
**California** 16:23
**call** 7:3,5 34:3,8
47:11 66:19,25
72:21
**called** 22:4
53:15
**calling** 22:1,21
48:22 54:18
**calls** 53:24
**camera** 18:2
**capture** 47:1
57:9
**car** 38:12,13
**Carbon** 1:13
57:1,8,11,14
57:22 58:4,7
60:14 61:18
**case** 7:4 10:17
11:7,8 12:1,7
12:10 14:1,15
18:1 20:4
21:25 22:14,18
24:16 25:12
26:1 28:9 30:4
51:10 52:8,17
57:20 59:12
61:13 62:14
**case-by-case**
12:17 13:2,4
**caseload** 41:3
**cases** 3:4,16 4:19
7:15 20:20
21:16 23:21
26:2 27:8 28:1
29:5,9 30:14
32:4,16 41:17
42:16,19 43:2
56:14 66:7
68:16
**catches** 75:6
**category** 57:12
**causation** 56:11
**CDLT-258**
77:10
**cell** 17:23
**center** 3:25
**certain** 23:6

29:4 31:5 40:8
56:15 61:11
74:16
**certainly** 9:19
23:20 26:8
27:23 30:25
49:9 50:3
52:22 56:2
65:10 66:3,7
67:21 69:2,20
70:4
**certify** 77:3
**chain** 34:4
**challenge** 32:17
**changes** 15:10
41:25
**Charbonneau's**
60:23
**charge** 69:17
75:5
**charged** 67:11
71:14 74:15,15
**charges** 69:15
69:18
**chatting** 76:3
**check** 31:21
41:21 59:10,10
**checking** 62:11
**checks** 74:8
**child** 3:15 29:6
**children** 46:8,10
66:6,9 74:2
**chilling** 11:13
**circuit** 1:13,14
2:10 39:1,2
42:22 43:3,6
43:11 49:14
51:25
**circulating**
75:16
**circumstances**
4:23 74:16
**cite** 20:25
**civil** 30:17,23
36:10 41:1
68:16 74:6,18
**claiming** 68:22
73:23
**clear** 5:13,24

73:1
**clearly** 68:12
**clerk** 2:15 36:17
45:16
**clerks** 58:16
**client** 5:8 71:15
72:2,3,7
**close** 58:24
**closed** 29:16,17
**clothing** 25:15
**co-occurrence**
3:15
**Coalition** 2:3
6:15
**coerce** 3:11
**cognizant** 63:25
67:22
**collaboration**
42:11 75:9
**collaborative**
76:5
**collated** 19:12
**colleagues** 48:22
**collect** 45:22
46:16 47:6
**collected** 55:9
55:15
**collecting** 43:18
**collection** 56:7
**collective** 58:19
**come** 4:1 7:12
9:6 11:23 12:2
20:17,24 39:18
43:2 65:2
69:18 73:6
**comes** 4:18 5:11
20:19 41:14
47:25 62:15
63:17
**coming** 31:17
63:11 64:5,5
68:15
**commensurate**
14:19
**comment** 45:3
70:23 73:7
**comments** 4:1
73:6 75:24
**commiserate**

48:2
**commission**
13:22
**commissioner**
38:24
**committee** 75:10
**committing** 3:20
**common** 16:22
66:5
**communities**
62:8
**compare** 55:10
**compilation**
47:12
**complaining**
50:8
**complaint** 45:4
**complaints**
42:14 53:25
**complete** 45:19
**concept** 6:10
28:16
**concerning**
25:10
**concerns** 9:24
10:14 46:14
51:5 72:20
**conclusion**
62:21
**conclusions**
56:12,17
**concrete** 75:7
**conducive** 38:16
**conduct** 24:5
42:15 58:15
**confines** 40:18
**conjunction**
12:9
**consented** 5:20
18:10
**consider** 34:18
**consistency**
28:11
**consistent** 27:16
27:18 30:10
42:14
**consistently**
28:13,13 29:3
**constant** 68:13

**constitutional**
40:15 42:5
68:9
**consuming** 37:6
**contact** 25:17
51:20 65:13
66:6 74:7
**contain** 59:3
**context** 43:20,23
58:17
**continue** 14:25
75:24
**continues** 5:16
**continuum** 31:4
**control** 3:11
56:20 65:8
70:16 73:13
**convening** 10:3
**conversation**
18:16
**conversations**
14:25 16:11
**coordination**
75:2
**cop** 64:11
**cops** 63:19,23
**correct** 6:21
23:2 42:19
**correlation**
56:10
**corroboration**
12:6
**council** 40:16
**counsel** 37:11
67:6,14 68:1
69:16
**counselling**
47:19
**count** 73:21
**counties** 61:9
**country** 15:19
58:14
**county** 1:19,20
1:21,22 35:18
50:18 54:2,3
**couple** 44:8 45:2
47:17 58:7
70:17 75:4
**course** 19:15

72:24 74:5
**court** 1:12,13,14
2:10 20:19
22:21 23:25
25:18,22 35:7
35:7,8 36:17
39:1,2,4,11
42:22 43:3,6,7
43:11 45:15
46:19 49:13,14
49:15,21,23
51:25 52:6
58:13 60:3
65:20 66:1
67:12 71:6,16
71:21
**court's** 38:22
53:4 71:9
**courthouse**
46:23
**courtroom**
30:11 45:21
58:18
**courts** 42:17
53:11 60:9
67:5
**covered** 11:13
**cracks** 60:19
**craft** 8:13
**created** 10:22
12:16 13:16
**crafting** 8:24
**crazy** 73:24
**create** 45:7
**created** 53:14
**credence** 67:12
**credibility** 31:13
31:23
**credit** 54:21
**crime** 3:20 13:23
29:10 69:25
70:2,4 71:15
**crimes** 12:15
**criminal** 2:5
30:21 41:2,16
66:18
**criminalizing**
15:24
**crisis** 3:25

**cross** 66:11
**Current** 19:6
**currently** 39:20
51:16,19
**custody** 73:23
**cut** 36:4

_____
        **D**
**data** 45:25 46:16
55:9,14 56:7
56:18,22 62:18
**date** 75:23 77:17
**dating** 25:22
26:6
**Dave** 15:12
**David** 2:6
**day** 74:9,11
**days** 14:5
**deal** 28:21 40:11
50:9
**dealing** 56:4
**decade** 19:8
**decades** 19:9
**decide** 7:24
**deciding** 32:10
45:17 74:10
**decision** 20:19
22:15 24:6,9
24:10,23 27:6
30:9 38:22,25
47:22
**decisions** 26:10
29:19 31:10
40:4
**deeper** 63:5 75:7
**defendant** 23:22
47:14 52:17
61:24 67:9
68:10
**defendants** 72:1
73:22
**defends** 71:3
**defense** 2:5
11:17 49:19
66:17,24 67:19
68:16,22,23
69:16 70:1
72:21 73:25
**define** 7:20

**defining** 7:8
**definition** 25:21
**degree** 42:7
**delve** 63:5
**denial** 34:5,11
35:11
**denied** 32:2
**depending** 28:9
49:12 57:20
59:11
**detail** 59:16
**detector** 18:8
**determine** 55:15
62:18
**determined**
49:22
**developed** 19:8
56:3
**devil's** 7:14
**difference** 72:17
**differences**
70:25
**different** 6:2 7:2
7:6 9:5 24:22
25:23,23 31:8
44:7,23 47:8
53:5 59:1 61:9
61:10,10 62:5
**difficult** 8:2
30:25 67:4
**difficulty** 23:4
**dig** 75:6
**digging** 75:11
**Digital** 77:11
**Director** 1:15,17
1:25 2:2,14
**disaggregate**
57:24
**discretion** 31:2
57:17
**discretionary**
31:9
**discuss** 42:8
65:16,17,18,23
**discussed** 4:9
45:25
**discussions** 15:4
15:8
**disseminate**

57:4
**district** 35:6
**division** 58:9
**document** 38:11
45:23
**Dodge** 2:9
**doing** 6:19 11:20
14:15 40:25
41:1,1,2 48:19
55:16 58:10
60:4,25 67:18
72:19
**DOJ** 2:1
**domestic** 1:6
2:12 3:3,15,18
7:4 23:11,13
23:20 25:11
27:25 30:16
42:16,17,18
51:6 65:19
**doors** 8:6 29:16
29:17
**double** 41:21
**double-check**
21:3
**DOVE** 2:6,9
37:11
**dovetailing**
60:13
**draft** 75:3,15
**draw** 62:21
**drawing** 56:10
56:11,17,17
**drilling** 27:8
**driving** 28:3,5
**drop** 48:13 74:3
**drug** 6:25
**drunk** 28:4,5
**due** 42:6 53:7
**duration** 31:10
**duty** 71:9,22
**DV** 2:14 9:3
11:25 16:22
36:9 41:2,10
51:23 73:20
**DWI** 28:8

_____
        **E**
**E** 77:1

earlier 66:13
early 45:24
earmarked
35:19
effect 47:15
effort 55:5 73:8
eighth 3:2
either 4:3 35:6
39:11 44:13,14
47:3
elaborated
68:12
email 51:20
58:23 75:13
encompassing
13:15
ended 22:1
Endres 1:20
22:7 23:2,4
25:3,7 26:17
26:22,25 27:4
27:10,21 38:23
39:9 49:8,12
49:18 50:3,10
50:18,23 51:17
52:2 65:9
66:24 67:4
69:6,8
enforcement
3:13 8:19
28:16 53:25
58:16 60:10
61:22 63:12
engineering
11:3
England 15:18
16:2
entails 55:7
entire 58:19
Erin 2:14
error 29:2 32:11
eScribers 77:13
especially 14:5
16:21 62:15
69:6,8
essentially 13:25
22:14 27:4
66:14,16
evaluate 45:10

evaluation 45:8
every-three-ye...
54:22
everybody 29:1
58:17 75:14
Everybody's
52:23
everyone's 28:5
evidence 3:19,21
9:18 10:16
11:24 12:15
16:16 26:6
56:16 66:17,21
evidentiary-ty...
13:3
ex 73:18,23
74:14
exact 19:13
exactly 34:13
50:16 54:13
60:22
example 14:2
20:14 24:17
25:11 52:12
60:24 66:4
68:7
examples 52:12
exception 3:17
4:21 7:9,16
9:15 65:15,23
exceptions 66:4
67:23 70:8,9
excuse 58:4
Executive 1:17
exemption 13:9
exercise 31:1
57:17
exigence 7:13
12:14
exigent 4:23
8:23
existing 33:6
exit 46:22
expeditated 33:7
expedite 33:8
36:20
expedited 36:11
36:13,13,17,23
expensive 37:5

experience
16:25 23:20
44:7 45:11,20
experienced
16:21
explicitly 26:3
exploit 8:8
explorations
15:9
explore 16:20
extent 35:15
70:3
extraordinarily
33:10,15
extremely 21:7
68:1
eyes 36:2,7 41:7
41:23

_____
F
F 77:1
face 75:20
fact 30:1 31:7
46:17
factor 68:19
facts 31:5 57:20
59:12
failed 24:16
fall 60:18
falls 61:2
familiar 5:1
21:22 35:4
family 35:7 58:9
fan 11:2
fanciful 69:20
fault 68:22
favorites 70:20
fear 7:17
fearing 74:1
feature 15:18
feds 15:21
feedback 3:25
4:10 19:17
45:3
feel 5:7 17:5
35:10 71:6,8
feeling 10:15
17:7
feels 53:5

felony 35:1
47:14 52:4,8
67:11 70:3,5
felt 71:21 72:2
fifteen 52:18
Fifth 66:19 67:1
69:10 72:19
fifty-one 24:18
fight 58:3
file 7:23 33:11
49:9 53:1
73:22
filing 41:3 66:24
70:1 73:11
fill 22:12
fillable 46:3
filters 29:22
final 41:10
45:13 76:5
finances 65:17
find 23:8,9 28:3
28:4
finding 23:17
fine 5:10 30:8
finish 58:5
firearm 46:8
55:12 61:21
62:12
firearms 57:18
58:25 59:6,15
59:18 60:7
63:14
first 14:4 16:6
67:15 72:12
75:3
five 18:21
flag 24:15
flesh 10:7
fleshed 6:23
fluke 63:6
focus 60:16
follow-up 62:3
following 62:1
food 34:3
footing 31:8
force 1:6 3:3
4:11 15:7
39:16
foregoing 77:4

forever 22:3
forget 10:12
forgot 76:1
form 22:12 45:4
45:8,13 59:8
59:17 64:13
formats 46:3
forms 59:3
forth 24:12
forty-nine 24:19
forward 6:18
7:13,25 10:18
15:1 18:23
31:17 32:12
46:12
forward-looki...
18:18
found 23:21
25:19 26:1
32:3 74:18
frame 34:15
Freeman 2:10
51:5 52:1
frivolous 69:20
front 25:9 28:7
frou-frou 64:20
frustration 49:4
fully 69:13
further 3:11
19:18 65:8
future 15:8

_____
G
gap 14:7
gather 10:16
59:4
geared 51:11
general 22:9,13
34:20 56:5
general's 22:8
50:20,24
genesis 16:3
geographic
56:24
getting 8:5
10:20 12:11
20:21 26:5,9
35:23 37:10
67:25

**girlfriend** 25:18
  26:7
**give** 5:22 13:10
  40:6 47:3
  59:20 62:4
  63:4
**given** 45:18
**gives** 13:13,13
  67:12
**glaring** 19:22
**go** 7:2 12:24
  17:18 20:3
  21:5 27:19,22
  32:24 41:17,18
  41:20 47:3,23
  48:5,20 50:20
  51:4 53:1 57:3
  57:5 61:8 68:3
  69:7 70:11,12
  73:20,22
**goal** 51:10
**goes** 4:8 7:2
  11:21 29:16
  46:2 51:19
  61:15
**going** 8:4,10,12
  8:13,25 9:8
  12:7 13:1
  14:10,21 18:20
  18:21 21:10
  29:25 32:7
  33:17 40:20
  42:4 46:12
  47:2 48:24
  50:14 52:22
  53:22 57:23,24
  61:16 63:4
  67:10 68:3
  69:3 74:2,23
  74:24,25 75:11
  75:13,21
**good** 63:15
  74:21
**gosh** 53:22
**gotten** 7:1 21:9
**governor** 40:16
**grab** 3:5
**Grace** 77:3,10
**Grady** 2:2

**Grafton** 1:22
  54:2
**grant** 40:7
**granted** 43:8
  46:7
**great** 10:13
  34:24 59:19
**greatest** 47:11
  47:12
**grew** 37:22
**grounded** 69:10
**group** 2:8 10:4,5
  16:8 48:24
**Gudas** 36:16
**guess** 4:15,21
  14:20 24:9
  26:3 70:8
**guilty** 23:18,22
  26:18
**gun** 61:23
**guns** 23:10
**guy** 64:12

———————
**H**
**hair-raising**
  47:10
**half** 19:9
**half-year** 11:12
**hammer** 9:9
**Hampshire** 1:12
  2:3,4
**hand** 75:14
**handle** 65:1
**handling** 3:14
**hands** 30:2
**hands-on** 29:13
**Hantz** 1:11 3:1
  6:4,8 8:18
  12:18,22,25
  13:8 17:12,14
  17:18,20 18:24
  19:2 20:7,10
  20:13 21:13,17
  21:21 22:17,20
  24:8 25:1 27:7
  27:11 30:12,15
  31:6 32:14,23
  33:20 34:19
  35:13 36:12,18

37:1,9,16 38:4
38:7 39:24
42:9,21,24
43:13,17 44:20
44:25 46:20
48:7 49:1,5,11
49:17 50:1,5
50:12,22 51:1
51:15,18 54:20
54:25 55:25
57:7,10,13,21
58:1,6 62:20
63:8 65:4 69:4
69:7 70:7
72:23 73:2
74:21
**happen** 12:13
  56:14 59:9
  74:12
**happened** 16:14
  34:17
**happening**
  11:22 26:2
  36:6
**happens** 62:2
**happy** 9:25
**harass** 3:11 65:8
  73:12
**harder** 31:19
**hats** 40:25
**Haven** 1:17
**head** 44:13
  69:21
**hear** 43:2
**heard** 16:15
  33:12,18 46:13
**hearing** 3:7
  24:9 30:16
  33:16 45:13
  47:14 49:16
  71:19
**hearings** 41:19
  67:24
**hears** 35:3
**Held** 1:8
**help** 22:7 46:11
  51:7 59:22
**helped** 4:4,5
**helpful** 4:7

10:19 14:14
19:21 45:16
64:17
**helps** 71:2
**hey** 48:20
**higher** 20:9
**highly** 55:3
**hit** 14:9
**hits** 47:12 69:20
**Hmm** 21:16
**hold** 54:11
**Holding** 7:14
**home** 18:2
**Hon** 1:11,13,14
**Honor** 48:11
**hope** 28:7
**hopefully** 9:23
**Hornick** 1:22
  51:3 52:3 53:3
  54:14 68:8
**horrible** 66:8
**hot** 4:23
**hour's** 18:15
**hours** 39:5
  49:16,25
**house** 70:11,12
  74:11
**huge** 14:17 41:3
**hump** 26:9
**hurdles** 64:11

———————
**I**
**ICAC** 29:9
**idea** 10:13 34:24
  46:21 57:4
**ideas** 19:19
**identified** 3:7
  59:15
**identify** 59:19
  59:22 61:20
**images** 29:6
**imagine** 16:7
**immediate** 34:2
  65:23
**immediately**
  65:14 67:6,13
  67:25
**impact** 43:23
**impacted** 21:15

**Implicit** 28:21
**importance**
  45:25
**important** 33:15
  33:16 46:1
**inaccurate** 21:1
**inappropriate**
  50:7
**incidents** 43:19
**includes** 15:2
**incorrect** 35:11
**incriminate** 71:8
  71:20
**indication** 63:4
**indiscernible**
  12:23 13:5
  17:15 23:1
  32:24 34:20
  37:2 50:2
  54:19 60:2
  69:5
**individual** 40:4
**individuals** 4:3
**inform** 51:7
**informal** 19:17
**information** 4:3
  4:6 19:13
  45:23 46:4,5
  46:11 47:7
  51:11,13,21,23
  57:25 59:4
  60:1,22 61:1
  69:13
**informed** 71:16
**inherent** 40:8
**input** 39:21 55:5
  55:21
**inquiring** 62:1
**ins** 5:4 41:12
**instance** 11:24
  48:15 55:11
  63:13
**instituted** 42:4
**intended** 10:23
**intent** 10:23
  57:8
**interact** 64:24
  65:3
**interactions**

11:9
**interactive**
63:18
**interest** 75:6
**interested** 6:17
9:12,19,21
10:3 22:11
**interesting**
30:13 32:15
35:13 47:6
56:1,13 68:25
**interference**
3:13
**interplay** 61:5
**interpret** 31:4
**interpretation**
5:17 6:2,7
27:14
**interpretations**
5:5
**interrelated**
25:5
**interview** 46:22
**intimate** 25:20
25:21 26:16
**intimidate** 71:11
**intimidating**
33:10 65:24
68:2 70:15
**intimidation**
67:17 68:18
**introduce** 16:15
**INV** 6:22 8:21
11:1 13:6,10
13:25 19:20
20:9,12,16
21:15,19,24
22:23 23:3
24:25 25:6
27:20 28:15
30:14 33:24
35:14 37:13,17
38:5 40:22
44:5,22 47:8
48:15 49:3
50:16 52:7
54:13 60:13
63:10 66:23
67:3 68:7,20

70:17,19 73:18
**invading** 44:2
**invented** 16:7
**investigation**
12:7
**Investigator**
1:18
**involved** 6:9
8:20 64:7
73:25
**issue** 5:11 8:2
11:14 14:17
15:9 20:2
22:14 30:20
36:25 37:3
40:12 46:8
53:20 58:22
66:20 70:24
71:22 72:6
73:10,15
**issued** 49:13,13
**issues** 11:18
19:22 20:17
21:11 44:6
46:14 52:10
59:1 60:7,15
61:3,17 62:5
68:17 71:5,17
72:1,5,9,13,15
**it'd** 17:3 56:13
63:10

_____
**J**
**jail** 68:4
**January** 1:7 3:2
**Jasina** 2:14 9:10
**JCC** 19:16
**Jean** 2:12 10:2
51:19
**jeopardy** 26:20
**Jersey** 15:22
**job** 62:8
**John** 1:14
**Jon** 2:4
**judge** 1:13,14
3:1 6:4,8 8:18
12:18,22,25
13:8 17:12,14
17:18,20 18:24

19:2,7 20:7,10
20:13,23 21:13
21:17,21 22:17
22:20 23:9,10
23:12,17,21
24:8 25:1,9
26:15,18 27:7
27:11,14 28:25
29:3,24 30:12
30:15 31:4,6
31:15 32:14,21
32:23 33:1,20
34:14,19 35:13
36:12,18 37:1
37:9,16,23
38:4,7 39:1,24
41:17 42:9,21
42:24 43:12,13
43:17 44:16,20
44:25 46:20
47:13 48:7
49:1,5,11,17
50:1,5,12,22
51:1,15,18
52:9 54:20,25
55:10,25 56:15
57:1,7,8,10,11
57:13,14,17,21
57:22 58:1,4,6
58:7 60:14,20
60:25 61:18
62:10,20 63:2
63:8 64:5,8
65:4 68:24
69:4,7 70:7
72:23 73:2
74:21
**judge's** 28:6
39:3 54:1
**judges** 19:24
23:5 26:11
28:3,4,8,24
29:8,8,14,14
29:21 35:2,7,8
35:10 37:22
39:19 40:14,24
42:2,15,23
44:9 46:18
51:9 52:6,23

54:9,12 55:1
55:13,15 56:23
63:19,21
**judging** 56:4
**judgment** 29:2
**judicial** 3:4,10
3:22 19:3,11
24:5 39:16,17
39:25 40:13
51:13 57:2
58:15 60:16
65:7
**judiciary** 39:23
62:10
**jump** 10:11
**jurisdiction** 40:7
40:8 43:8
**jurisdictions**
58:14
**Justice** 1:12
54:15 57:1
**justification**
24:21
**juvie** 41:1

_____
**K**
**Kathy** 1:17
**keep** 64:2,4
65:21 66:2,21
**keeping** 34:15
**keeps** 33:22
**key** 8:4 65:2
**kid** 52:21
**kids** 65:16,23
74:9
**Kilham** 2:12
**Kill** 64:3
**kind** 4:8,20 10:7
13:11 17:5
21:4 29:21
30:3 34:6,20
35:23,24 38:19
38:21 46:1
53:20 54:18
56:9 57:24
59:8,16 61:6
61:14 63:20
64:20,25 71:10
74:12

**know** 4:22,24
5:3,6,9,10,15
5:18,21,25 6:1
6:24 7:11,14
8:7,21,22 9:1
10:5,11,21
11:3,4,21
12:10 13:21
14:3,4,6,16,18
14:20 15:2,15
15:18,22 16:2
16:5,6,7,10,24
17:25 18:1,3,7
18:8,9,20
20:16,18,22
21:2,3 22:4,4,5
23:9 24:11
26:14 27:13,21
28:25 29:1,14
29:15,25 30:4
30:5 31:14,14
31:20,24 32:6
34:4,8,15 35:5
35:9,18,24,25
36:9 37:17,22
37:24 38:12,14
41:10,11,12,18
42:12,21 43:19
44:1,8 45:16
45:22 46:7,9
46:25 47:13,18
47:24,25 48:1
48:3,23 52:18
53:6,19,19
54:3,15 55:8
55:19,21 57:3
57:5 59:9,17
60:5 61:8,11
61:23 62:14
63:11,14,16,22
64:1,2,18,19
64:21 65:9
67:16,24 68:4
68:21,23 69:1
69:19 71:2
73:19 74:21
75:6,19
**knowing** 38:17
**knows** 5:18

64:8
**Kristyn** 1:18
　10:21 13:23
　34:23 52:3,5
　58:23
**Krueger** 1:24
　30:22 31:12
　51:2 68:15,21
**kumbaya** 64:20

———————
**L**
**lack** 53:17 55:6
**LaFrance** 2:7
　4:15 6:6,13
　12:20,24 13:17
　13:20 17:13,16
　17:20 18:6
　34:22 36:25
　37:3 70:18,21
　72:25
**language** 13:20
**law** 2:7,15 3:13
　8:18 11:14
　15:21,23 16:17
　16:17 17:6
　20:3,4 23:16
　24:3,24 26:15
　28:16 32:16
　42:7 53:25
　57:19 58:16
　60:9 61:22
　63:12
**laws** 15:16,17
　16:3
**layer** 34:3
**learning** 37:19
　37:20 63:20
**lease** 38:11
**leave** 47:3 76:4
**leaving** 46:22
**lecture** 23:23
**lecturing** 24:15
　24:20
**left** 27:5
**legal** 2:9 32:11
　41:12 42:6
　77:11
**legislated** 7:21
**legislation** 8:5

15:2
**legislative** 39:14
　39:20 41:25
**legislators** 6:18
　17:9
**legislature** 6:11
　40:6 43:9
**legislatures** 16:8
**lengthy** 15:4
**letting** 14:8
**level** 28:11
　35:17 44:3,16
　60:17 61:2
**levels** 61:10
**liken** 28:15
**limitations** 64:7
**limited** 21:8
　27:25 52:5
　53:11
**line** 30:8 33:17
　45:4 66:11
　73:7
**lines** 46:2
**list** 6:16
**lists** 76:3
**literally** 71:14
**litigant** 24:16
　67:19
**litigating** 24:17
**little** 10:8 14:7
　34:16 63:23
　73:3 75:7,10
　75:22
**locations** 56:24
**long** 41:13
**longest** 21:9
**look** 21:5 27:1
　28:18 33:19
　34:9 40:21
　41:21 43:4,15
　55:19 56:14
　58:13,21 61:9
　63:2
**looked** 17:10
　47:23
**looking** 17:4
　18:12,23 27:12
　41:6 44:4 61:3
　61:4 63:7 73:4

74:25 75:12,13
**looks** 17:12
　55:23
**loops** 19:17
**lose** 24:18 25:8
　28:12 33:10
　47:20 58:24
　74:2
**losing** 25:8
　28:14 70:16
**lost** 73:21
**lot** 4:25 9:5
　21:16 23:6,12
　25:9 29:22
　33:25 36:5
　37:25 39:22
　40:24 42:2
　60:8 65:10,13
　66:3,12 67:16
**lots** 58:13 59:7
　60:5
**Lynda** 1:25

———————
**M**
**making** 9:12
　73:16
**manager** 2:13
　51:7,24
**March** 77:17
**Marconi** 1:11
　3:1 6:4,8 8:18
　12:18,22,25
　13:8 17:12,14
　17:18,21 18:24
　19:2 20:7,10
　20:13 21:13,17
　21:21 22:17,20
　24:8 25:1 27:7
　27:11 30:12,15
　31:6 32:14,23
　33:20 34:19
　35:13 36:12,18
　37:1,9,16 38:4
　38:7 39:24
　42:9,21,24
　43:13,17 44:20
　44:25 46:20
　48:7 49:1,5,11
　49:17 50:1,5

50:12,22 51:1
　51:15,18 54:16
　54:20,25 55:25
　57:1,7,10,13
　57:21 58:1,6
　62:20 63:8
　65:4 69:4,7
　70:7 72:23
　73:2 74:21
**marital** 11:8
**Markarian** 77:3
　77:10
**marriage** 52:16
**Martha** 1:22
**Mary** 1:24 33:9
**matter** 6:19 61:8
**matters** 43:11
**mean** 4:18 8:23
　9:4 16:12,22
　17:22 18:13,19
　23:5 25:23
　27:24 28:2
　31:7 32:18
　33:25 35:3
　38:12 39:15
　46:13 53:4,6
　53:12,16 54:14
　54:23 56:2
　62:5 68:21
　72:8
**meaning** 36:20
　69:12
**meaningful** 46:5
　64:18
**means** 37:23
　49:24
**measures** 55:18
　63:1
**mechanism**
　46:15
**meeting** 1:6 3:2
　3:5
**meetings** 75:19
**mention** 31:23
**merit** 31:22
**Merrill** 1:15
　10:11 35:3
**Merrimack** 1:21
**mess** 42:5

**middle** 11:9
**mind** 4:14 47:20
　64:4
**minute** 34:8
　48:10
**minutes** 74:22
**misapplying**
　26:15
**misinterpretat...**
　27:16,18
**Missy** 60:23
**Mockingbird**
　64:3
**model** 58:10
**modifying** 40:5
**money** 37:8
**monitor** 58:15
**monitoring** 4:1
**months** 49:24
**mortgage** 38:11
**mother** 66:8
**motion** 18:7
　20:15 30:19
　49:9 66:25
**motions** 53:12
　66:15,16,21
　67:6 69:9,19
　70:1
**move** 10:17
　32:12
**moving** 25:14
**multiple** 5:5
　40:25
**mutual** 71:13
**myriad** 60:7

———————
**N**
**N** 77:1
**nail** 69:21
**narrow** 44:8
**nature** 12:10
**near** 13:22
**necessarily**
　23:12 24:2,4
　35:15,21 59:5
**necessity** 54:6
**neck** 30:3
**need** 10:22 13:4
　35:21 36:23

41:18 46:17,18
61:4 63:5,25
65:14 73:1
74:10
**needs** 6:22 17:10
62:17
**negatives** 17:2
**neglect** 33:8,17
**never** 7:12
**new** 1:12 2:3,4
15:18,22,22
16:1 34:8
70:19 73:19,19
73:20 77:15
**News** 57:5
**NFL** 34:6
**NH** 1:17 2:1
**NHBA** 2:9
**NHJB** 2:10,12
**NHLA** 1:24 2:14
9:10 10:4
**NHSC** 2:15
**nilly** 13:13
**nineteen-year-...**
52:19
**ninety** 32:6
**nipping** 44:17
**no-** 65:12
**no-contact**
65:15 66:1
**non-DV** 20:20
**note** 47:8
**notice** 38:1
**number** 19:22
29:7 47:12
52:5,10
**NY** 77:15

**O**

**O** 77:1
**objective** 55:19
62:17 63:1
**observation**
58:18
**obtain** 3:19
**obtaining** 45:11
**obvious** 32:11
69:3
**obviously** 5:9

11:13 14:20
18:8 23:5
39:15 41:13
**occasionally**
29:1
**occurred** 25:25
**occurring** 9:16
**offender** 70:12
**offenders** 3:10
65:7 73:9
**offense** 29:13
**office** 1:19,25
7:6 21:7,11
22:2,9,21
26:25 36:16
50:21,24
**officer** 71:6,21
**officers** 5:3
40:15
**oh** 12:25 58:4
68:3 69:16
**okay** 22:17
41:18 64:9
**old** 11:10,12
29:14
**old-school** 29:8
**older** 52:18
**once** 19:10 45:2
**one's** 28:3
**one-** 16:22
**one-and-a-**
11:11
**one-party** 15:21
15:23
**ones** 59:23,24
61:25 66:5
**open** 6:6 8:6
**opinion** 23:15
35:24
**opportunities**
63:15
**opportunity**
24:13 30:24
45:7 49:7
60:18
**opposed** 12:18
13:1 49:25
**optional** 55:12
**order** 3:9 4:12

9:3 21:4 29:25
31:20 32:5
33:6,22,22
34:16 35:12
38:2 41:13,14
45:12,13 46:6
47:10,15,21
48:4,12,21
49:6,10,13
50:6 55:10,13
55:18 62:18
65:13,15,21
66:1 70:10
71:18 74:3,12
**order's** 31:20
32:2
**ordering** 64:9
**orders** 21:12
36:9,10 41:10
47:13 49:20
50:4,11 54:1
55:11 59:2
60:20 62:13
67:23 71:3,13
**organizations**
59:21
**organize** 75:23
**organized** 10:6
**outcomes** 56:8
56:12,23
**outs** 5:4 41:12
**outside** 4:10
**oversight** 34:1
39:19 53:18
54:5

**P**

**paint** 54:8
**Pam** 2:9
**panel** 35:2 39:13
**papers** 38:13
**paperwork** 38:8
38:9,9 41:3
**parameters** 8:3
8:4
**parenting** 73:11
**part** 28:22 39:22
**parte** 73:23
74:14

**partes** 73:18
**participate**
54:22
**particular** 3:9
4:12 20:22
25:9 26:10
29:3,5 30:10
31:15 32:10
51:10 52:8
61:20 62:10
**particularly**
33:21
**parties** 6:9,17
16:23 18:9
43:24 47:2
55:21 56:15
62:4
**partner** 2:7
26:16
**partnering** 9:20
**partners** 25:21
**parts** 75:16
**pass** 8:16 9:22
**passed** 8:5,10,17
**Patricia** 2:7
69:22
**pay** 54:21
**paying** 64:21
**pays** 55:1
**PC** 41:19
**PD** 9:1
**peel** 62:6
**people** 4:13 9:9
13:12 17:22
19:19 23:6
25:24 26:6
31:16 35:16
36:9 37:14
38:5,10,14,16
41:3 53:7
54:20 55:22
64:15,21,24
65:13 66:14
67:25 71:2
75:5
**percent** 24:18
24:19 32:6
62:11,22 63:2
63:3

**perception** 29:4
37:25
**perceptions** 57:9
**perfect** 60:23
**performance**
55:18,20 56:4
**period** 15:4
**periodically**
66:15
**permission** 5:22
**person** 5:15,18
16:14 65:22
71:13
**personal** 44:6
**personalities**
23:7 28:6
**persons** 6:9
**perspective**
63:24 64:1
**petition** 41:15
45:18,19 46:3
73:21
**petitions** 73:12
**phone** 5:12 7:5
17:23 48:1,20
51:20 69:24
**phone's** 5:23
**pick** 48:1,20
**piece** 54:17 73:3
**pieces** 75:17
**pin** 29:20
**place** 20:1,6
21:5 32:6
33:23 41:14
48:16 52:14,25
**plaintiff** 60:21
**plaintiffs** 32:4
**play** 7:14 9:6
63:18
**plenty** 7:1
**ploy** 71:11
**point** 17:16,21
32:1,13 41:22
42:11 51:3
56:6,22 62:16
**pointed** 10:21
**police** 5:3 25:16
67:10 69:12
72:10,14,16

74:8
poll 10:10
position 24:3
    44:23
positives 17:3
possible 17:2
potential 71:17
potentially 36:4
    47:10 71:7,19
    72:19
power 23:13
practice 4:25
practices 3:14
prejudices 17:8
PRESENT 1:10
presumably
    18:11
pretext 7:3
pretty 70:14
prevailed 23:3
prevent 36:5
    67:21
priority 50:13
private 16:11
    45:19
probably 17:6,7
    37:14 75:17
problem 26:17
    27:23 29:7
    48:21
problematic
    16:13 30:8
problems 36:5
procedure 21:22
    45:22
proceeded 23:23
proceedings
    77:5
process 9:4
    10:20 13:21
    14:3 15:1
    22:10,22,24
    34:17 36:21
    40:3,5,12,19
    42:6 43:18
    50:9 56:13
    58:19 60:2,3
    68:2 76:5
processed 19:11

processes 74:19
profession 44:24
program 1:16
    2:6,9,13,14
    37:12 51:7,23
    58:13
prohibited
    15:20
promptly 49:22
    49:23
propensity
    19:25
prosecution
    9:15
prosecutor 22:1
    22:3 24:2 71:1
    71:23,25
prosecutor's
    64:4
prosecutors
    48:23 52:24
    63:19
protection 32:2
    32:5 33:13
protective 65:21
    67:23
protocols 40:11
prove 25:19
provide 4:10
    32:19 33:5
provision 59:8
provisions 59:13
public 2:2 5:10
    58:11 73:7
publicize 51:22
publicized 55:4
    57:6
pull 7:25 46:4
purchase 38:12
purpose 8:8,16
purposes 8:24
    73:4
pursuit 4:23
purview 57:19
push 52:22
pushing 68:17
put 16:11 29:24
    30:2 36:24
    40:2 60:11,22

64:13 75:15
puts 47:15
putting 36:2

**Q**
question 14:10
    20:4 24:22
    51:2
quick 34:12
quickly 33:18
quote 3:5

**R**
R 77:1
raise 71:22
    72:16,19
raised 9:24
    58:23 75:14
raises 24:15
range 59:1
    67:18
rape 11:8,25
rationale 4:22
reach 9:25
reaction 11:22
read 25:20 38:5
    38:10 69:11
reads 38:13
real 32:9 49:3
    54:6 74:24
reality 38:15
realize 12:4
    37:15
realized 11:16
really 6:23 7:8
    15:4 27:11
    28:21 29:7
    30:7 31:24
    36:4 38:16
    46:1 55:5 61:4
    62:6 63:11,15
    65:25 68:17
reason 37:6
reasons 9:7
    14:16 32:8
    48:13
recognize 33:14
recommend
    14:24 47:16,18
recommendati...

15:7 18:14
recommendati...
    73:16 75:4,8
reconsider
    20:15 30:19
    48:12 49:9
reconsideration
    24:13 49:7
reconsiders
    53:13
record 5:6,23
    7:18 11:23
    14:9 77:5
recorded 5:19
    5:20 7:12 11:8
    11:15
recorder 18:10
recording 5:13
    5:14,24 7:22
    9:16 15:25
    16:6 18:9
    66:14 67:11
    69:24
recordings 7:9
    12:3,8 17:23
    18:2
records 53:13
recourse 29:23
    30:18
red 24:15
referred 25:17
reflected 17:7
reg 28:20
regard 32:22
    33:2 40:22
    47:9 61:16
regular 31:18
regularly 68:13
regulations
    28:17
reinstated 35:12
related 46:10
relationship
    25:20 26:5
    31:8
relative 42:15
relevant 3:6
relinquish 62:12
relinquishment

55:12,13
remedy 30:17
remember 17:24
    21:24
removal 44:2
remove 42:17
removing 44:16
report 11:25
    12:6 19:12
    32:3 69:12
    72:11,14,16
reported 12:5
    19:11 43:19
reports 19:15
represent 68:6
represented
    47:2
request 46:9
require 39:7,10
    39:14,21
resolution 10:20
resource 32:19
resources 50:14
respect 18:18
    50:7 53:7
respite 21:10
respond 67:5
response 25:22
    46:25
responsibility
    10:16
responsible 62:7
rest 63:3
restraining
    35:12 70:10
    71:3,13,18
    74:3
return 59:14
    60:3
reverse 11:2
review 3:3 20:5
    22:14 34:13,16
    34:25 35:9,20
    38:19,21 39:25
    40:1,2,19
    41:19 44:14
    54:23 62:16,23
    62:25
reviewable 35:5

reviewed 19:7
21:6
reviewing 40:3
62:24
reviews 40:23
Richards 11:17
66:15,20 67:24
68:17 69:18
70:24 71:5,17
72:1,5,6,9,13
72:15 73:10
right 5:14 6:20
9:7 10:24 13:6
14:15 18:11,13
18:24 19:3
20:16 22:23
26:21,24 27:10
30:24 31:2,6
31:12,25 32:14
35:3 36:14,22
37:9,16 38:3
38:25 42:10
45:17 49:11,17
49:19 50:4,5
50:12,15,22
57:7,21 58:1
62:19 63:17
67:2 68:10,23
69:1,11 72:2
72:23 74:22
76:6
rights 42:5
68:10,11
rile 7:10
rise 3:22
rising 44:16
rock-solid 8:14
rolling 19:6,9
room 11:11
route 51:22
RSA 3:12
Ruel 1:25 10:9
rule 28:20
rules 24:5 28:17
ruling 20:2 39:3
rulings 23:14
run 4:25 65:5
running 36:24

**S**

safer 60:1 62:8
safety 4:21 7:8
7:16,17 10:14
14:17 32:8
Sarah 2:10
saw 20:23 29:10
71:1
saying 10:24
13:24 27:5
62:13 64:23
66:25 67:9
69:16 70:1
72:3,7
says 26:18 49:21
64:12 66:8
scenario 67:8
scenario-based
64:23
scenarios 9:6
search 20:21
36:1
second 35:23
41:23
security 18:2
see 9:22 23:12
29:9,13 31:18
47:20 61:14
66:12,20 68:13
seeing 41:8
68:24 69:9
70:5
seek 55:5
seen 7:15 41:10
41:16,19,20
70:11,13
seize 64:9
seized 60:21
seizures 3:14
self- 47:1
self-defense 30:1
send 22:13
sense 25:2,3,5
65:4
sent 3:8
sentence 34:25
35:8 38:18
sentence-revie...
39:12

sentences 35:1
serve 61:12
served 59:2
73:21
service 59:14
60:2 63:14
serving 64:11
set 7:6 19:5 27:8
34:12 36:6
41:7,23
sets 24:12
setting 8:2
Seventh 77:14
Sexton 2:2 6:14
14:24 42:13
43:4,10,14
54:24 55:3
58:2 62:9,23
sexual 7:3 26:4
29:6 30:5
shaking 75:2
share 26:7
she'd 22:3
sheer 56:18
shoes 36:24
shoot 53:9
short 38:21 45:8
shoulders 27:5
show 12:14,14
shows 65:25
shrugging 27:5
shuts 13:11
side 28:9 30:17
30:21,23 63:12
71:7,14
signed 20:22
simply 7:10 24:5
single 26:1 74:9
74:11
sitting 39:19,20
42:18 43:12
situation 20:6
situations 61:19
six-month 11:10
sixty 62:11,21
63:2
skepticism
31:16
smiling 75:20

so-called 6:9
sole 73:23
solicit 55:20
solicitor 22:9,13
somebody 5:5
5:12 9:1,15
11:21 12:2
15:25 18:7
37:21
somebody's
23:18 36:2
someday 11:25
someone's 35:19
something's
8:23 11:21
somewhat 25:4
soon 26:18,22
sorry 12:24
17:20 69:8
70:22
sort 6:10,15,20
19:5 23:13,24
24:6 26:3
27:15 45:7,22
46:21 48:9
54:4 55:14,17
55:19 56:22
67:16 73:8,9
75:2
sorts 31:11
sound 53:23
sounds 47:5
space 45:19
70:16
speak 44:18
speaking 67:14
specific 29:21
42:14 44:9,11
47:9 56:23
59:16
specifically 6:23
38:2
speculating
43:22
spend 62:24
spitball 64:25
staff 46:19 51:8
75:9
stakeholder

9:12 10:1
stakeholders
9:21 15:3 53:8
stalking 36:10
standards 7:6
standbys 74:7
stands 14:18
31:8
start 4:16 11:20
13:14 14:22
18:6 47:4
56:17 68:24
started 26:23
29:9
state 22:25
26:19 48:7,10
49:18 54:4
state's 22:11
69:12
states 16:1,2,20
59:7
statue 33:5
statute 3:18 4:17
5:2 6:3 8:19
9:14 12:23
13:2,4 33:4
39:6 43:1
49:21 59:2
69:23
statutory 15:10
38:25 39:3,8
39:10 43:7
stays 29:16 33:6
33:21 41:14
step 70:22
Steve 28:23 49:1
49:2,5 68:12
70:23
Steve's 29:19
Steven 1:20
stick 11:17
52:25
sticking 7:23
story 53:5
strangulation
30:4 52:17
Strasburger 2:4
stuff 29:22
37:19 41:5

42:7 44:13
47:20 64:20,22
70:13
**substantive**
64:19
**suggest** 60:11
**suggestion** 58:12
**suggestions**
75:25
**Suite** 77:14
**summer** 10:7
**superior** 35:8
39:4,11 49:15
52:6 53:4,10
**supervisors** 34:2
**Supervisory**
2:15
**support** 46:16
**supposed** 8:9
12:13
**Supreme** 1:12
49:20,23
**sure** 8:14 15:15
18:17 24:20
43:13 55:23
57:15 67:20
**surrender** 62:3
**surrendered**
59:6,18,24,25
**surround** 60:7
**survey** 19:7 45:2
56:1,2,20
57:22
**surveys** 19:10
19:13 57:3
58:8,11
**survivors** 3:18
**Susan** 1:13
**suspect** 46:24
**suspension** 70:9
**synthesis** 75:1
**synthesize** 75:22
**system** 3:4,10
19:6 24:12
33:18 37:18,21
38:16,20 41:8
42:12 55:22
58:20 60:17
61:25 65:7

73:9
**systems-based**
10:10

— — — — —
**T**
**T** 77:1,1
**table** 19:5 63:21
**tactic** 74:5
**take** 6:10 8:12
9:1,8 20:2
22:16 34:9
48:25 52:25
57:18 59:11
61:23 63:1
64:14 75:21
**taken** 41:11
**talk** 4:13 66:6
67:10
**talked** 10:2
**talking** 5:16
20:7,11,14
29:19 31:3
43:25 52:3
53:8,17 66:9
66:13
**talks** 28:23
**tampering** 74:15
**tape** 11:12 15:25
16:5,11,16
**taping** 13:12
**task** 1:6 3:3 4:11
15:7 39:16
**team** 9:9
**technology** 14:5
17:25 18:19,20
**tell** 5:8 36:19
38:2 48:19
49:5
**template** 58:10
**temporary** 33:6
33:21,22 45:12
55:11 62:13
**ten** 18:21 63:3
74:22
**tend** 15:17 67:5
**tension** 68:8,9
**term** 69:19
**terms** 7:7 20:21
28:11 49:23

50:13 56:7
59:3 62:9
64:25
**terrified** 68:6
**terrifying** 61:14
**test** 48:9
**testified** 25:13
25:14,16 71:18
**testify** 72:22
**testimony** 16:13
**thank** 76:7
**thing** 7:19 14:4
30:3 31:19,21
34:10,21 35:24
39:13 52:16
60:25 63:22
64:3 66:2,12
68:4 74:20
**things** 7:22
10:19 11:3
13:12 14:10
19:21 20:1
21:3 24:10
25:23 31:11
33:1 37:20
38:6 40:1,1
41:9,22,24
42:2 44:10,19
58:7 60:18
61:7 63:12,13
63:18 65:1,2
67:18 70:17
73:12,20
**think** 5:4 6:2,22
8:1,3 9:5,8
10:4,5,12
11:16 12:1
14:4 15:6,25
16:17 18:12,22
19:20,22 23:8
24:6 25:4 26:5
26:11 28:22
36:3 37:13,25
38:15 39:5,8
39:12,13,17,21
40:10,19,23
42:20,24 43:1
43:4,14 44:2
44:21 45:1,24

46:1,11,21
47:5 49:23
53:10 55:4,6
56:1,6,21 57:2
57:25 62:7,9
62:17 63:10
64:6 65:2,10
65:14,24 67:21
72:25
**thinking** 10:18
14:1 17:23
32:18 36:22
45:5 56:9
**third** 62:4
**thirty** 37:19
**thirty-six** 39:5
49:16,25
**thought** 11:2
14:2 20:23
21:19 33:2
34:23 39:22
**thoughts** 32:21
65:6
**threat** 67:13
**three** 19:10 35:2
35:6,10,16,22
49:24
**three-judge**
39:13
**three-year** 62:16
62:25
**tied** 52:23,24
**Till** 76:7
**Tim** 36:15,16,22
**time** 6:21 13:22
14:7 15:5 16:9
21:9 30:2,6
32:7 34:15
37:5,18 60:6
62:11,24 63:1
65:6 74:24
75:22 76:7
**timely** 33:16
**times** 7:16 12:2
**timing** 6:20
31:10
**today** 15:14
58:24 74:24
76:3,6

**told** 68:3
**tool** 10:25 59:20
68:14
**tools** 59:21
**top** 3:23 4:13
**topic** 4:16 63:9
64:15 73:19
**topics** 4:9 64:16
**tossed** 20:18
**tossing** 11:5
**touchdowns**
34:7
**toying** 11:6
**track** 46:12
59:14,23 62:19
**trained** 63:22,23
**training** 44:14
46:17,18 51:8
51:12 61:11
63:17 64:15,19
**training's** 63:16
**trainings** 64:8
**Transcriber**
77:11
**transcript** 77:4
**trial** 26:23 38:22
66:18
**trials** 66:22
**tried** 11:17
**trigger** 18:3
**troubling** 26:11
**true** 30:23 38:14
77:4
**truth** 37:24
**try** 51:11 57:24
68:14 75:22
**trying** 48:9
55:20 73:13
**TTA-Certified**
77:11
**turn** 33:11
**turned** 20:25
**two** 18:21 19:9
19:24 24:9
26:10 28:24
35:9,21 71:12
74:13
**two-** 34:7
**two-party** 15:17

**tying** 35:16
  56:23
**type** 16:9 20:5
  34:5,10 39:18
  45:2,3 51:5
  52:9,16 66:2
**types** 29:18 51:8
  56:14 75:10

**U**

**ultimately** 5:20
**Um-hum** 24:25
  25:6 43:16
  68:20
**unable** 4:4
**undercover** 5:3
  6:25
**understand**
  12:11 25:7
  43:20,22,23
**understanding**
  22:6 29:11
  55:7 64:7
**undo** 40:4
**Unfortunately**
  65:12
**unsustainable**
  31:1
**unwieldy** 43:21
**use** 62:25 69:19
  73:9
**useful** 9:7
**usually** 19:24
  39:4
**utilize** 14:13
**utilized** 12:9
**utilizing** 74:6

**V**

**variables** 56:21
**variety** 32:8
**various** 19:16
**verbiage** 47:22
**vetted** 8:15
**vetting** 43:18
**Vicinanzo** 2:6
  12:21 13:19
  14:23 15:11,12
  18:5 19:1
**victim** 1:15

10:14 20:18
23:23 24:20
25:12,18 32:7
47:18 52:19,21
61:1,20 64:13
65:19 67:1,1,7
67:9,14,15
69:10,15 70:15
72:4,8,11,18
73:24 74:1
**victim'** 68:11
**Victim/Witness**
  2:1
**victimless** 29:10
**victims** 3:11
  10:15 23:13
  31:17 32:10
  45:8,10 59:4
  59:17 65:8
  73:13
**video** 15:13
  34:10
**view** 27:17
**violate** 23:16
  24:4
**violated** 24:4
**violation** 28:19
**violence** 1:6
  2:12 3:3,16,18
  7:4 23:11,14
  23:21 25:12
  27:25 30:16
  42:18,18 51:6
  65:20
**violence-related**
  42:16
**Virginia** 16:24
**VIRTUAL** 1:6
**volunteer** 74:23
**volunteers** 75:1

**W**

**wait** 48:10
**walk** 37:21
**walking** 30:7
  45:15
**want** 7:5,24
  17:13,16 32:13
  41:20,21 47:17

47:19 52:15
54:8 58:2,24
59:6,18 66:18
70:24 76:4
**wanted** 17:21
  26:14 36:8
**warning** 34:8
**warrant** 20:21
  36:1,1
**wasn't** 11:13
  14:8 52:6
**watcher** 58:13
**way** 5:7 28:19
  33:7 40:3 47:6
  53:2 54:11
  56:3 58:8
  73:20
**ways** 8:7 73:11
**we'll** 69:25
  75:20
**we're** 14:18
  18:17 37:17
  39:16 40:20
  41:8 53:8 61:3
  62:18 70:5
  73:4 74:22
  75:21
**we've** 3:25 19:6
  19:23 46:13
  66:7 75:23
**weapons** 3:14
  60:20,24 61:17
  64:10,12
**wearing** 40:24
**Webex** 1:8
**week** 71:12
**weeks** 33:3
  71:12
**weight** 6:11
**weird** 53:23
**well-being** 74:8
**weren't** 52:4
  59:24
**wheelhouse**
  40:13
**willing** 22:16
**willy-** 13:12
**win** 24:17 25:7
  28:12

**winning** 28:13
**wiretap** 4:17 5:1
  69:23
**wiretapping**
  3:17 9:13
**wish** 6:16 72:21
**witness** 1:16
  50:8 66:19
  71:11 74:15
**witnesses** 53:14
**wonder** 12:21
  16:5,19,24,25
**wondered** 54:4
**word** 63:17
**work** 6:25 21:14
  21:18 46:21
  61:5 75:23
**worked** 6:16
**working** 55:22
  58:20 75:11,15
  75:15
**works** 8:19
  35:19
**world** 63:23
**worried** 9:2
  16:10
**worries** 17:9
**worry** 75:20
**worth** 17:4
  31:24 44:3
  63:7
**wouldn't** 35:20
  48:8,10
**writing** 75:10,25
**wrong** 5:17
  16:18 28:19

**X**

**X** 20:24 37:22
  37:23 41:4

**Y**

**Y** 20:24 41:4
**y'all** 36:21
**Yazinski** 1:14
  32:21 33:1
**yeah** 6:13 13:17
  13:19,25 17:19
  18:5 19:1
  32:24 34:22

38:4,8,14 49:8
53:9 55:3
63:17 70:21
73:3
**year** 9:11 33:13
  69:14
**years** 6:16 18:21
  18:21,22 19:10
  19:23 37:19
  45:3 48:18
  52:18
**Yep** 20:13 51:1
**York** 15:22 34:9
  77:15

**Z**

**Z** 20:24 41:4
**Zinkin** 2:15
  22:18,24 26:12
  26:21,24 27:3
  36:8,15 38:1
  38:18 39:7
  42:20,22 43:1
  43:6,16
**Zoom** 18:15

**0**

**1**

**10001** 77:15
**173-B:I-(a)(3)**
  3:12
**1920s** 16:10 17:9

**2**

**2022** 1:7 77:17

**3**

**3** 77:17
**30s** 17:10
**31** 1:7
**31st** 3:2
**352** 77:14

**4**

**5**

**6**

**603** 2:9
**604** 77:14

7

8

9