

# Task Force on Domestic Violence Cases in the New Hampshire Judicial Branch

Report to the New Hampshire Supreme Court

March 1, 2022



# Task Force Takes Shape

Formed by the NH Supreme Court in response to recommendations by the Internal Review Committee reviewing the denial of a final Domestic Violence Order of Protection in October 2021.

Chaired and convened by Associate Justice Anna Barbara Hantz Marconi.

Multidisciplinary team of 20 members from the bench, bar, and community, all of whom have extensive experience in working on domestic violence matters.

A five-member working group aided the Task Force in its work.

# Domestic Violence Task Force Members

**Chair**
Associate Justice Anna Barbara Hantz Marconi

**Members**
Hon. Susan B. Carbon, Circuit Court
Hon. Diane Nicolosi, Superior Court
Hon. John Yazinski, Circuit Court
Mary Barton, Clerk, Circuit Court - Manchester District and Family Division
Merrill Beauchamp, Director, Victim &Witness Program, Hillsborough County Attorney's Office
Kathy Beebe, Executive Director, HAVEN NH
Kristyn Bernier, Investigator, Belknap County Attorney's Office
Steven Endres, Assistant County Attorney, Merrimack County Attorney's Office
Dr. Scott Hampton, Director, Ending the Violence
Chief David Hobbs, Hampton, NH Association of Chiefs of Police
Martha Ann Hornick, Grafton County Attorney
Mary Krueger, Staff Attorney, NH Legal Assistance
Patricia LaFrance, Partner, The Black Law Group

Betsy Paine, Senior Staff Attorney, CASA NH
Lynda Ruel, Director, Office of Victim/Witness Assistance, NH Department of Justice
Lyn M. Schollett, Executive Director, New Hampshire Coalition Against Domestic and Sexual Violence
Amanda Grady Sexton, Director of Public Affairs, NH Coalition Against Domestic and Sexual Violence
Jon Strasburger, o/b/o NH Association of Criminal Defense Attorneys
David Vicinanzo, Attorney, DOVE Program volunteer

**Task Force Working Group**
Pam Dodge, NHBA DOVE Program Coordinator, 603 Legal  Aid
Sarah Freeman, NHJB, Circuit Court Administrator
Erin Jasina, Director, NHLA DV Advocacy Project
Jean Kilham, NHJB, Domestic Violence Program Manager
Anne F. Zinkin, NHSC, Supervisory Law Clerk



3

# The Charge

The Task Force's purpose was to identify potential issues in the handling of domestic violence cases in the judicial system. It focused on seven areas of inquiry, including:

| 1 Review existing court practices and procedures | 2 Analyze current status of New Hampshire domestic violence law | 3 Recommend criteria for making appellate domestic violence decisions publicly available on Judicial Branch website |
| --- | --- | --- |
| 4 Review court forms as they relate to protection from domestic violence | 5 Explore opportunities to provide survivors increased access to legal assistance and victim advocates | 6 Analyze current state of relationships among institutions and agencies and how they could be improved |
| | 7 Examine other relevant subject matters | |

# The Process

Nine remote meetings, all live streamed
One public hearing, also live streamed

Members of the public had the opportunity to give the Task Force feedback by:
- Emailing a dedicated email address
- Calling the Court Information Center's toll-free number to speak with a Task Force member
- Mailing or delivering written comments to the Task Force at the Supreme Court building



5

# The Report

- Represents a starting point for further investigation and analysis

- Is the product of a collaborative process

- Will spark conversations and future work, inside and outside of Judicial Branch

- Includes forward-thinking and solution-oriented recommendations

- Presented to the Supreme Court on March 1



TASK FORCE ON DOMESTIC VIOLENCE CASES IN THE NEW HAMPSHIRE JUDICIAL BRANCH

REPORT TO THE NEW HAMPSHIRE SUPREME COURT

March 1, 2022



# Task Force Recommendations

After a series of thoughtful discussions and public input the Task Force identified several areas for recommended improvement and further consideration.

# Charge 1: Review of Current Court Practices

**Circuit Court**
- Domestic Violence Protocols, 1992 to present
- Domestic violence represents less than 6% of total new Circuit Court cases
- Domestic Violence Program Manager, Attorney Jean Kilham
- Emailed petition pilot

**Judicial Branch Website**
- Self-help, including videos
- Forms

**Training**
- Enhancing Judicial Skills on Domestic Violence Cases
- State and federal funding is limited
- Staff shortages make it difficult



**Discussions**
- Protocols are inconsistently applied
- Some courthouses lack private areas for litigants
- Unhappy litigants versus bias?
- The need for trauma-informed customer service

# Charge 1: Primary Recommendations on Court Practices

**Form a standing Judicial Branch Domestic Violence Committee to explore:**



**Public Experience**

- Domestic Violence Protocols adherence
- Enhancing physical and emotional safety in the courthouse
- Scheduling of domestic violence cases
- Form enhancements: petitions, return of service, and orders



**Effective Orders of Protection**

- Domestic violence screening tools for judges
- Defendant compliance with orders
- Compliance review hearings
- Identifying, relinquishing, & returning firearms



**Court Administration**

- Paperwork needed by DOVE program
- Data collection
- Judicial and non-judicial staff training

# Charge 1: Other Recommendations on Court Practices

- Continue work to revise protocols
- Continue to provide information about crisis centers and safety planning
- Secure additional funding for training
- Explore finding possible locations for litigants who lack home computers



# Charge 2: Review Current Status of the Law

- Domestic Violence Orders of Protection

- Stalking Orders of Protection

- Restraining orders in parenting and marital cases

- Superior Court restraining orders

- Criminal Bail Protection Orders or no-contact bail orders

**Discussions**
- Difference between "abuse" under RSA chapter 173-B and "intimate partner violence"
    - "Abuse" requires "credible present threat" to a plaintiff's "safety"
    - New Hampshire Supreme Court has interpreted the word "safety" to refer to a plaintiff's physical safety
- Changing existing law requires legislative action or requires an appeal to the New Hampshire Supreme Court that would provide the court with an opportunity to overrule or clarify existing case law

**Concerns**
- Potential for litigation abuse, financial exploitation
- Challenges with coordinating family law and domestic violence cases, and coordinating criminal cases and domestic violence cases

# Charge 2: Primary Recommendation on the Law

**Stakeholder group should review existing New Hampshire statutes and determine whether any of topics, set forth below, should be the subject of recommendations to the legislature**



### General

- Revising current statutory definition of "abuse"
- Reviewing "coercive control" statutes in other states
- Adding remedies for financial exploitation and litigation abuse
- Creating protective orders for sexual assault victims
- Addressing barriers to survivors filing appeals



### Defendants

- Making participation in a Batterer's Intervention Program mandatory
- Amending bail statutes

# Charge 2: Further Recommendations about the Law

**Stakeholders** 

- Judicial Branch should establish working group including attorneys to discuss how to streamline criminal and civil domestic violence cases involving same parties

**Additional Judicial Branch Funding** 

- To reduce caseloads so that judges and staff have time for professional development

- To continue work of Office of Mediation and Arbitration, the Circuit Court, and the Battered Women's Justice Project

# Charge 3: Explore Current Publication of Non-Precedential Final Orders in Domestic Violence and Stalking Cases

- Opinions are published on website and in books

- Procedural orders are not published either on website or in books

- Non-precedential, final orders are published only on website unless:
  - Case is "confidential" according to a statute or
  - Case involves domestic violence or stalking

- Although domestic violence and stalking cases are not "confidential" by statute, the court has not published them on its website so as to comply with the Violence Against Women Act (VAWA) of 1994



Timeline of publication on NHJB website

| 2000 | 2004 | 2014 | 2018 |

All "3JX" orders in non-confidential cases are published — 2004

All non-precedential final orders in non-confidential cases are published — 2014

Non-precedential final orders in domestic violence and civil stalking cases no longer published — 2018

# Charge 3: Recommendation on Publication



# Charge 4:  Review of Current Court Forms

- Different forms for different kinds of protective orders

- Domestic violence and stalking both ask for narratives

**Discussions**
- There is a lack of understanding of the differences between different kinds of protective orders
- Protective order petitions are not directive
- Court forms are hard to find on Judicial Branch website
- Survivors do not know when to file motion to extend
- There is a need for forms for litigants with limited English proficiency

# Charge 4: Recommendations on Court Forms

## Form a standing Judicial Branch Domestic Violence Committee to explore:

- Creating a petition that would allow someone to apply for both a domestic violence protective order and a civil stalking protective order simultaneously
- Developing more user-friendly petitions for domestic violence and stalking protection orders
- Developing a safe way to notify a survivor of the upcoming expiration of the protective order and highlight the deadline to apply for an extension
- Adding a QR code through which assistance, including translation, is immediately available
- Considering e-filing as an option for petitions for domestic violence or stalking orders of protection, given the confidentiality and safety concerns attendant to those cases and the limitations of the current e-filing software



# Charge 4: Other Recommendations on Forms

- Stakeholders should develop a flowchart to help plaintiffs decide between domestic violence and stalking petitions

- Forms should be more easily accessible on the Judicial Branch website

- The deadline for filing motion to extend should be clearly indicated on Final Order of Protection

- Superior Court should notify the defendant of the consequences of a domestic violence criminal conviction on possessing and owning firearms



# Charge 5: Explore Available Legal & Advocate Assistance for Survivors

## Legal Assistance

- New Hampshire Legal Assistance's Domestic Violence Advocacy Project

- 603 Legal Aid's DOVE project

- The New Hampshire Bar Association Lawyer Referral Service Modest Means Program

- The New Hampshire Bar Association Lawyer Referral Service Full Fee Program

## Advocate Assistance

- New Hampshire Coalition Against Domestic and Sexual Violence

- 12 community-based crisis centers

- Police department victim advocates

- AmeriCorps Victim Assistance Program – 26 advocates in the past, now only 9

### Discussions
- Survivor access to legal services and victim advocates needs to be enhanced
- New Hampshire Legal Assistance attorneys need to be embedded in crisis centers
- Crisis centers lack staff to maintain daily presence in all courthouses

# Charge 5: Gaps in Legal Assistance for Survivors

Although New Hampshire has significant legal assistance available, gaps do exist.



**GAPS IN SERVICE**

Eligible in need and served: 8,403

Eligible but not in need: 100,899

Eligible in need but not served: 140,698

# Charge 5: Gaps in Legal Assistance for Survivors



**2021: Plaintiffs Seeking Domestic Violence Protection Orders**

13 percent with counsel

87 percent self-represented

**2021: Plaintiffs Seeking Stalking Protection Orders**

5 percent with counsel

95 percent self-represented

# Charge 5: Recommendations for Enhanced Access to Legal Assistance



## Education

- Publicize "NH Law About'" guides
- Disseminate "What You Need to Know" fact sheet
- Work with law schools to create clinic



## Volunteers

- Victim witness advocates should direct survivors to 603 Legal Aid
- Create project to enable volunteer attorneys to help plaintiffs complete petitions and to represent them on appeal
- Explore whether it's feasible to regularly allow volunteer attorneys to appear remotely in domestic violence cases
- Expand Access to Justice Commission's efforts to increase pro bono participation



## Funding

Increased state funding to allow New Hampshire Legal Assistance attorneys to be embedded in crisis centers

# Charge 5: Recommendations for Enhanced Access to Advocate Assistance

- Recruit additional staff and volunteers so that an advocate, trained to provide court-accompaniment, is available at each Circuit Court location

- Encourage local police departments to hire victim witness advocates

- Provide crisis center brochures at courthouses



# Charge 6: Review of Current State of Relationships

New Hampshire has a long history of multidisciplinary work in the area of domestic violence protection



Judicial Branch Starts Developing Protocols

Governor's Commission on Domestic Violence created

First Statewide Conference on Family Violence

Domestic Violence Coordinating Councils established

Domestic Violence Fatality Review Committee created

Batterer's Intervention Standards published

**1992**    **1993**    **1994**    **1999**    **2002**

## Timeline

# Charge 6: Review of Current State of Relationships

Additional progress has occurred in the past decade.



**Timeline**

# Charge 6: Review of Current State of Relationships

- Domestic Violence Program Manager
  - Position has existed, in one form or another, for more than 20 years
  - Attorney Jean Kilham is current Domestic Violence Program Manager
  - Liaison between external stakeholders and Judicial Branch
  - Coordinates revisions to protocols
  - Manages the Protection Order Registry Unit, which enables active orders of protection to be visible in NCIC
- New Hampshire Bar Association Committee on Cooperation with the Courts

**Discussions**
- Quarterly meetings between Coalition and Branch have now resumed
- Community connectedness varies
- Family Justice Center in Strafford
- Need for better coordination and communication

# Charge 6: Recommendations on Relationships

## Primary

- The Governor's Commission on Domestic and Sexual Violence should be reconvened, a chairperson should be appointed, and funding should be identified to support a coordinator



## Other

- Expand Domestic Violence Fatality Committee focus to include near-death cases

- Statewide Domestic Violence Advisory Council and crisis center advocates should continue to share concerns with Domestic Violence Program Manager

- Secure additional funding for administrative support for Domestic Violence Program Manager

- Conduct regular meetings among court staff, judges, attorneys, advocates, and other stakeholders coordinated by Domestic Violence Program Manager

- Continue discussions and outreach among agencies

- Regional centers on domestic violence should be created



# Other Issues Reviewed

For Charge 7, the Task Force reviewed four additional relevant matters.

# Charge 7A: Review of Current Transparency and Accountability

- Judicial Performance Evaluation Program – governed by statute and court rule
  - More than 30 years
  - Performance standards
  - Self-evaluation
  - Evaluation by those who interacted with Judge
  - Electronic survey tool on website
  - Names of judges being evaluated posted in courthouse, published in Bar News
- Data and reports on website
- Internal data and reports
- Statewide Advisory Council on Domestic Violence

*Discussions*
- Current system of accountability includes
  - Judicial Code of Ethics
  - Judicial Conduct Committee
  - Public access to court proceedings
  - Public access to court decisions
  - Judicial Performance Evaluation Program
  - Appeal process
- Some say current system adequate; others say that it is not

# Charge 7A: Recommendations on Transparency and Accountability

**Judicial Branch should enhance transparency and accountability by:**

- Identifying and implementing means of soliciting more immediate feedback from "consumers"
- Charging Judicial Performance Committee with reviewing current judicial performance program
- Seeking additional appropriations to enhance ability to collect and analyze data
- Providing meaningful responses to complaints about judges and staff, if possible
- Creating a decision tree so that advocates and others know whom to contact when an issue arises at court
- Asking Diversity and Inclusion Committee to explore issues of implicit bias against gender and against survivors of, or defendants in, domestic violence cases



# Charge 7B: Review of Current Firearm Relinquishment

- When a final domestic violence order of protection is granted, the law requires the trial court to direct the defendant to relinquish his or her firearms and ammunition to the police.

- New Hampshire law permits a court to issue a search warrant authorizing a police officer to seize firearms specified in a protective order, provided that: (1) the officer has probable cause; (2) the specified weapons are kept in or around the defendant's premises; and (3) the specified weapons have not been relinquished.

*Discussions*
- Judges have discretion not to order defendant to relinquish firearms in a temporary order of protection
- Law enforcement does not consistently obtain the defendant's firearms upon service of a domestic violence protection order
- Law enforcement does not often seek search warrants
- There is a need for standardized training and guidance for law enforcement
- Complex matter

# Charge 7B: Recommendations on Firearm Relinquishment

- There should be standardized training for law enforcement regarding a defendant's relinquishment of weapons and regarding completing the return of service form in domestic violence cases

- Regional task forces should be created to ensure effective enforcement of domestic violence firearm prohibitions

- The Office of Attorney General should explore the barrier to, and develop best practices for, obtaining a search warrant in a domestic violence case



# Charge 7C:  Review of Current Wiretapping and Eavesdropping Statute

- New Hampshire is one of only 11 states that require all parties to consent to the recording of a conversation

- In New Hampshire, it is a crime to knowingly intercept a telecommunication or oral communication without the consent of all parties to the communication

- Evidence of the intercepted communication is inadmissible at a hearing

**Discussion**

- There is no exception to the statute that would allow a domestic violence survivor to record the abuser without his or her consent

**Recommendation**

- Stakeholders should approach the legislature about amending the statute to allow domestic violence survivors to record the abuser without his or her consent

# Charge 7D: Review of Court-Approved Batterer's Intervention Programs

- Batterer's Intervention Standards are out-of-date

- No court-approved list of Batterer's Intervention Program exists

- No mechanism exists to certify or monitor such programs

*Recommendation*

The Batterer's Accountability Committee of the Governor's Commission on Domestic and Sexual Violence should reconvene to discuss how best to move forward with regard to securing funding to update the 2002 standards and identifying an agency to certify and monitor programs

