In the Matter of the Honorable Charles L. Greenhalgh

JC-23-081-C

CAUTION



## I. INTRODUCTION AND ALLEGATIONS

This complaint was generated as the result of a report of alleged judicial misconduct concerning Judge Greenhalgh filed by Anthony Kinney on or about October 10, 2023.

The reporter indicated on the face of the report Cover Sheet that the alleged misconduct occurred in the context of a marital matter then pending before Judge Greenhalgh in the 3rd Circuit Court – Carroll County – Family Division – Conway as well as in the context of a domestic violence petition and three criminal matters.

The reporter further alleged, *inter alia*, that:

- Judge Greenhalgh should have recused himself from presiding over the various underlying actions involving the reporter on the basis that Judge Greenhalgh and opposing counsel worked together at the law firm of Cooper, Cargill, and Chant, PA for six years prior to Judge Greenhalgh's appointment as a judge;

- Judge Greenhalgh and opposing counsel served as president and vice president respectively of the Rotary Club of Conway, New Hampshire;

- Judge Greenhalgh has a conflict of interest in presiding over any case in which opposing counsel may be a party or acting as an attorney for another party;

- Judge Greenhalgh maintains an ownership interest in a real estate holding company owned by Attorneys Cooper, Chant and Judge Greenhalgh and their respective spouses which holds a mortgage interest on a parcel of land in the State of Maine;

- An ongoing financial relationship exists between Attorney Paul Chant and Judge Greenhalgh; and,

- Attorney Chant filed a *Motion to Quash Subpoena* served on him by the reporter which was granted by Judge Greenhalgh before allowing the reporter an opportunity to file an objection to the *Motion to Quash Subpoena*.

## II. RESPONSE TO ALLEGATIONS

Following the Committee's review of the case record, Judge Greenhalgh's response, and information he provided when he met with the Committee, the Committee hereby dismisses all of the allegations contained within this report. The Committee determined that where alleged, the reporter's challenges to the Court's findings, rulings or decisions fell outside of the Committee's jurisdiction. The Committee dismissed the remaining allegations pertaining to Judge Greenhalgh's purported conflicts of interest and mandatory disqualification because they were repetitive of prior reports which had been previously considered and dismissed by the Committee. In accordance with New Hampshire Supreme Court Rule 40 (5) (c) (1) (b), which provides that, "a report of alleged misconduct which is repetitive of a prior report or complaint, whether from the same or a different source, shall not be docketed as a complaint" the duplicative allegations must be dismissed. Finally, the Committee concluded that all of the allegations in the report should be dismissed for the lack of any showing of judicial misconduct. Nonetheless, the Committee issues a caution with respect to one of the allegations as explained in detail below.

On or about December 8, 2023, a portion of this report was elevated to the level of a complaint pursuant to New Hampshire Supreme Court Rule 40 (7) (a) so as to obtain a more specific response from Judge Greenhalgh. Specifically, the Committee requested Judge Greenhalgh respond to the allegation that Judge Greenhalgh had personally ruled on the *Motion to Quash Subpoena* filed by Attorney Chant. The reporter was seeking to inquire as to any potential ongoing financial relationship between Judge Greenhalgh and Attorney Chant and their respective ownership interests in certain real property.

Judge Greenhalgh filed an answer to this complaint on or about January 26, 2024, wherein he indicated that:

> I did grant a *Motion to Quash Subpoena* of Paul Chant to appear at a hearing on September 11, 2023. The hearing on September 11, 2023, was scheduled for 30 minutes to hear the reporter's *ex parte* motion related solely to parenting issues involving his son. Apparently, Attorney Chant was served with a *Subpoena Duces Tecum* to compel him to appear at the September 11, 2023 hearing and bring "all documents related to 'a mortgage interest' on a parcel of real estate in the state of Maine held by CC and GE Enterprises, LLC." On September 6, 2023, Attorney Chant filed a *Motion to Quash Subpoena*, asserting that "proceedings are scheduled for a 30-minute hearing on an *Ex Parte Motion for a New Temporary Parenting Plan*." The information sought in the *Subpoena* had no relation to any evidence that was remotely relevant to the issues to be heard in the scheduled hearing. It appears that the reporter was seeking to continue his quest to develop some evidence sufficient to show that I was violating the Judicial Conduct Code by refusing to recuse myself from his case. Attorney Chant also cited the fact that he was scheduled for a previously noticed deposition at the same time as the underlying hearing as well as the fact that the records sought by the reporter were public records in the State of Maine, which the reporter could obtain without use of a subpoena.
>
> My order granting the *Motion to Quash* was issued on September 7, 2023, only two business days before the scheduled hearing on September 11, 2023. Resolving this issue

quickly was beneficial to the reporter as he was the movant seeking emergency relief and it cleared the way for the court to hear his motion. In retrospect, I may have been in error in granting Attorney Chant's motion given our past relationship. At the same time, I believe the Committee should consider several intervening factors including Conway Circuit Court is a one-judge court. The file is extensive (at that time +125 docket entries). Finding another judge with the time to review enough of the file to understand the nature of the subpoena/issues would have been a challenge with so little time, therefore, recusing myself from making this ruling would have likely resulted in a continuance which would have delayed any emergency relief sought by the reporter, as well as the opposing party's opportunity to argue her objection. Finally, the issue of recusal from proceedings involving Attorney Chant had never come before me. I know that his practice is primarily in the area of personal injury law and he does not regularly appear in Circuit Court and had never filed an appearance or appeared at a hearing in any court proceeding in which I was presiding.

Following his answer and review of a proposed reprimand, Judge Greenhalgh requested to meet with the Committee pursuant to N.H. Supreme Court Rule 40(8)(f)(4). The Committee accepted Judge Greenhalgh's request and meet with him by Zoom on June 14, 2024. Judge Greenhalgh explained in more detail the background and decision-making process when he ruled on the motion to quash the subpoena. In summary, Judge Greenhalgh acknowledged that he had a conflict of interest in ruling on the motion to quash but concluded that the rule of necessity required him to decide the motion rather than refer the matter to another judge for ruling.

Judge Greenhalgh informed the Committee that Mr. Kinney filed an ex parte motion on August 14, 2023, alleging that his four year old son was being abused by other siblings. Judge Greenhalgh did not review the ex parte motion. Judge Joseph ruled on the motion and ordered that a hearing be scheduled. The court scheduled that hearing for September 11, 2023. Judge Greenhalgh was on personal leave from August 19 to September 5. Judge Greenhalgh first saw the Kinney file when it was delivered to him in Berlin Circuit Court on Thursday, September 7, 2023. The clerk asked him to review the pending pleadings because of the upcoming hearing on Monday, September 11. There were 11 pleadings filed in the matter that required his attention. Two pending motions in particular required prompt action: a subpoena for Nicholas Rinaldi and the motion to quash records filed by Attorney Paul Chant. The outcome of these motions would dictate whether the hearing would go forward as scheduled on September 11. The clerk requested a ruling so that she could notify the parties and witnesses about the status of the case.

Judge Greenhalgh felt that there was urgency to deciding whether the case would proceed as scheduled because there was a pending DCYF investigation and his ruling on Mr. Kinney's *ex parte* motion would likely impact the placement of the child. Ultimately, at the hearing Mr. Kinney admitted there was no emergency, but at the time Judge Greenhalgh reviewed the file on September 7, he believed there was urgency in resolving the ex parte motion.

Judge Greenhalgh informed the Committee that he recognized the conflict in ruling on the motion filed by Attorney Chant. Ultimately, Judge Greenhalgh concluded that the rule of necessity required that he resolve the motion rather than referring it to another judge. Normally,

3

then-Circuit Judge Melissa Countway ruled on matters where Judge Greenhalgh had a conflict, but she had recused herself from Mr. Kinney's cases. As a result she was not available to consider the motion. Further, the physical file was located in Berlin on September 7. There were no other judges sitting in that courthouse at that time. Another judge would need to familiarize himself or herself with the background of the case to make an informed decision about Attorney Chant's motion. Normally, Judge Greenhalgh would refer a matter to another judge through the clerk of court, but he felt he did not have time to do that without forcing a continuance of ex parte hearing, which, at that time, he considered to be pressing. Judge Greenhalgh further reasoned he did not need to disclose the potential conflict with Attorney Chant or CC&G Enterprises because all parties were fully aware of the issues. Finally, he weighted the potential conflict against his duty to decide cases whenever he can. He felt based on his history with Mr. Kinney's case that Mr. Kinney was engineering a conflict to force Judge Greenhalgh off the case. He reasoned that there was no reason for Mr. Kinney to have subpoenaed Mr. Rinaldi to the September 11 hearing except that Judge Greenhalgh was conflicted off of matters involving Mr. Rinaldi. Mr. Rinaldi had no connection with the Kinney case. He concluded that if he recused himself or forced a continuance in the matter that action itself would have undermined confidence in the judiciary. Thus, he made a judgment call that the rule of necessity required him to decide the motion to quash filed by Attorney Chant.

### III. FINDINGS OF FACT

The Committee makes the following findings of fact based on the record before it:

1. Judge Greenhalgh had been a member of the law firm of Cooper, Cargill and Chant, PA prior to his appointment to the bench in 2016.

2. C, C & G Enterprises, LLC is a real estate holding company in which Judge Greenhalgh is an owner together with his former law partners, Randall Cooper and Paul Chant, and their respective spouses, and is limited to holding a mortgage interest on a parcel of real estate in the State of Maine. This company was formed in 2004, when three members, Judge Greenhalgh, Randall Cooper and Paul Chant were partners together at the law firm of Cooper, Cargill and Chant, PA.

3. Judge Greenhalgh resigned his position as a partner at Cooper, Cargill and Chant, PA on or about May 27, 2016, following his appointment to the bench.

4. Judge Greenhalgh's ownership interest in C, C & G, LLC, has been disclosed annually by Judge Greenhalgh to the New Hampshire Supreme Court pursuant to Rule 3.15 of the Code of Judicial Conduct.

5. The Kinney matter was scheduled for an ex parte hearing to be held on Monday, September 11, 2023.

6. Judge Greenhalgh received the Kinney file at Berlin Circuit Court on Thursday, September 7, 2023. With approximately 125 filings in the case, the case was quite large.

There were 11 pleadings pending in the case on September 7, some of which required attention because a ruling would determine whether the hearing went forward as scheduled.

7. Judge Greenhalgh had a good faith belief on September 7 that there was urgency in resolving the ex parte motion filed by Mr. Kinney that was scheduled to be heard at that hearing.

8. Attorney Chant filed a *Motion to Quash Subpoena* for records of C, C & G Enterprises, LLC.

9. On September 7, 2023, Judge Greenhalgh was a member of C, C & G Enterprises, LLC.

10. Prior to September 7, 2023, Judge Greenhalgh had never sat on any case or matter involving Attorney Chant.

11. Judge Greenhalgh had an ongoing personal and financial relationship with Attorney Chant (through C, C & G Enterprises) as of September 7, 2023.

12. Judge Greenhalgh made a judgment call that the rule of necessity required him to rule on the motion to quash filed by Attorney Chant even though Judge Greenhalgh recognized the conflict of interest.

## IV. ANALYSIS

With respect to all allegations in the report, the Committee's investigation has not disclosed probable cause to warrant formal proceedings. The Committee terminates its inquiry and dismisses the remaining portions of the report. Judge Greenhalgh's conduct on the bench as otherwise alleged by the reporter, given the totality of the circumstances, does not rise to the level of a violation of the Code of Judicial Conduct. Furthermore, the report alleges misconduct which relates to the Court's findings, rulings or decisions and which, in effect, is a substitute for an appeal rendering the allegations outside the Committee's jurisdiction or is time barred pursuant to New Hampshire Supreme Court Rule 40 (4) (c).

Nonetheless, the Committee issues a caution with respect to Judge Greenhalgh's ruling on the *Motion to Quash Subpoena* filed by Attorney Chant. In summary, the Committee concludes that application of the rule of necessity in this context is a close call. The rule of necessity is narrow and Judge Greenhalgh may have had other options than ruling on the motion. That said, even if his application of the rule of necessity was in error, such a discretionary decision in the context of this case warrants caution and not judicial discipline. The Committee did not believe there was clear and convincing evidence of a violation of the Rules of Judicial Conduct. See N.H. S.Ct. R. 40(11)(d).

Analysis of this report requires examination of the intersection of three rules of judicial conduct. First, Rule 1.2. *Promoting Confidence in the Judiciary*, provides: "A judge shall act at all times in a manner that promotes public confidence in the independence, integrity and

impartiality of the judiciary ... and shall avoid impropriety and the appearance of impropriety." The comments to this Rule set forth the following additional guidance:

> [1] Public confidence in the judiciary is eroded by improper conduct and conduct that creates the appearance of impropriety. This principle applies to both the professional and personal conduct of a judge.
>
> [3] Conduct that compromises or appears to compromise the independence, integrity, and impartiality of a judge undermines public confidence in the judiciary. Because it is not practicable to list all such conduct, the Rule is necessarily cast in general terms....
>
> [5] Actual improprieties include violations of law, court rules or provisions of this Code. The test for appearance of impropriety is whether the conduct would create in the mind of a reasonable, disinterested person fully informed of the facts a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality and competence is impaired.
>
> ...

One of the leading treatises of judicial ethics explains:

> The principle the public officials should not only behave properly, but appeared to behave properly has come to occupy a prominent place in contemporary American political culture. The prevailing view declares that if public officials appear to act improperly, people will lose faith in those officials and the institutions of government that they serve; and in a representative democracy, preserving the trust and confidence of the governed in the leaders and institutions that govern them is regarded as critically important...
>
> Appearances matter because the public's perception of how the courts are performing affects the extent of its confidence in the judicial system. And public confidence in the judicial system matters a great deal ... The public will not support institutions in which they have no confidence. The need for public support and confidence is all the more critical for the judicial branch, which by virtue of its independence is less directly accountable to the electorate and, thus, perhaps more vulnerable to public suspicion.

Charles Gardner Geyh, *et al.* Judicial Conduct and Ethics, *Appearance of Impropriety* § 1.04 at 1-9 (5th ed. 2013) (citing the American Bar Association, Justice in Jeopardy: Report of the Commission on the 21st Century Judiciary 10 (2003)).

Second, Rule 2.11. *Disqualification*. Paragraph (A) states, "A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned ... ." Paragraph (A)(3) further provides that the judge is required to disqualify himself when "[t]he judge knows that he or she, individually or as a fiduciary... has an economic interest in the subject matter in controversy or in a party to the proceeding." The official comments to this Rule set forth the following additional guidance:

6

> [1] Under this Rule, a judge is disqualified whenever the judge's impartiality might reasonably be questioned, regardless of whether any of the specific provisions of paragraphs (A)(1) through (6) apply. In many jurisdictions, the term "recusal" is used interchangeably with the term "disqualification."
>
> [2] A judge's obligation not to hear or decide matters in which disqualification is required applies regardless of whether a motion to disqualify is filed.
>
> [3] The rule of necessity may override the rule of disqualification. For example, a judge might be required to participate in judicial review of a judicial salary statute, or might be the only judge available in a matter requiring immediate judicial action, such as a hearing on probable cause or a temporary restraining order. In matters that require immediate action, the judge must disclose on the record the basis for possible disqualification and make reasonable efforts to transfer the matter to another judge as soon as practicable.
>
> ...
>
> [5] A judge should disclose on the record information that the judge believes the parties or their lawyers might reasonably consider relevant to a possible motion for disqualification, even if the judge believes there is no basis for disqualification.
>
> ...

In the treatise, Judicial Conduct and Ethics, the authors state, "the starting point in the disqualification rule is with the appearance of partiality: 'A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned'." Geyh, supra, *Disqualification when a Judge's Impartiality Might Reasonably be Questioned* § 4.05 at 4-13. The authors go on to observe:

> The test for an appearance of partiality is meant to be an objective standard, that is, whether an objective, disinterested observer fully informed of the relevant facts would entertain a significant doubt that the judge in question was impartial. This is objective in the sense that the standard is filtered through the eyes of a reasonable observer, rather than through the subjective view of the judge in question or a party or lawyer appearing before the judge. This standard calls for disqualification when objective appearance casts reasonable doubt upon impartiality even though the judge in question subjectively feels that he or she can act fairly and evenhandedly.

Id. (citing Appeal of Seacoast Anti-Pollution League, 125 N.H. 465, 482 A.2d 509 (1984); Home Placement Serv., Inc. v. Providence Journal Co., 739 F.2d 671 (1st Cir. 1984)).

Third, Rule 2.7. *Responsibility to Decide,* provides: "A judge shall hear and decide matters assigned to the judge, except when disqualification is required by Rule 2.11 or other law." Again, the official commentary, enlighten the interpretation of the rule:

> Although there are times when disqualification is necessary to protect the rights of litigants and preserve public confidence in the independence, integrity, and impartiality

7

of the judiciary, judges must be available to decide matters that come before the courts. Unwarranted disqualification may bring public disfavor to the court and to the judge personally. The dignity of the court, the judge's respect for fulfillment of judicial duties, and a proper concern for the burdens that may be imposed upon the judge's colleagues require that a judge not use disqualification to avoid cases that present difficult, controversial, or unpopular issues.

The Committee finds that Judge Greenhalgh had a conflict under Rule 2.11 that ordinarily would require his recusal from ruling on a motion to quash a subpoena duces tecum filed by his former law partner Paul Chant. That subpoena sought the production of records for an entity that Judge Greenhalgh and Attorney Chant had a financial interest in together. Regardless of the merit of the motion to quash, the fact that Judge Greenhalgh quashed a subpoena for the production of records of a company in which he is a part owner ordinarily creates a requirement for mandatory disqualification. His ruling on the motion to quash plainly runs afoul of Rule 2.11(A)(3). That provision requires the judge to disqualify himself if "[t]he judge knows that he or she, individually or as a fiduciary . . . has an economic interest in the subject matter in controversy or in a party to the proceeding." As the leading commentator has noted, "It is inherently problematic for a judge to preside over cases involving parties or lawyers with whom the judge has an ongoing business relationship." Geyh, supra, § 4.07[5] at 4-32. Disqualification in this context is typically mandatory, absent application of the rule of necessity. Again, the commentator notes, "For example, a judge should disqualify himself if he and an attorney appearing before him are equal owners of all the shares in a corporation." Id. at 4-32 to 4-33 (footnote omitted); see also id. § 4.15[1] to [5] at 4-62 to 4-70. Thus, the fact that the motion to quash was filed by Attorney Chant, who is also a member of that same company as Judge Greenhalgh, added to the conflict of interest.

As noted, the rule of necessity and the duty to decide cases in Rule 2.7 may require a judge to rule on a case even though the judge ordinarily would be required to step aside from the issue under Rules 1.2 and 2.11. The rule of necessity can be divided into two different categories: (1) when all available judges have the same conflict of interest, such as litigation impacting judicial salaries; and (2) when "the judge in question might be the only judge available in a matter that requires immediate action." Geyh, supra, § 4.04 at 4-11. This case falls into the second scenario.

The rule of necessity is of ancient origin and provides that "a non-impartial judge may hear and decide a case if his or her failure to do so would result in an injustice." Id. at 4-12.

In this case, Judge Greenhalgh considered his options and concluded that transfer of the motion filed by Attorney Chant was not feasible. But see In re Howes, 880 N.W.2d 184, 203 (Iowa 2016) ("Unless necessity is evident from the circumstances, a judge may not invoke the rule of necessity to circumvent his or her duty of disqualification without first attempting to determine whether transfer was practicable under the circumstances.").

8

Ordinarily when the rule of necessity permits the judge to rule despite a conflict under Rule 2.11, the judge is required to notify the parties of the conflict and make immediate efforts to transfer the case to another judge. Rule 2.11 cmt. [3]. In this case that was unnecessary. As Judge Greenhalgh explained to the committee both parties in the Berlind v. Kinney matter were aware of the potential conflict issues relating to Attorney Chant and C, C & G Enterprises. Moreover, once Judge Greenhalgh ruled on Attorney Chant's motion to quash the subpoena there was no further conflict that required the case be transferred to another judge. In other words, Rule 2.11(A)(3) did not require Judge Greenhalgh to recuse himself from the entire case of Berlind v. Kinney. Rule 2.11(A)(3) requires recusal from a "controversy" in which the judge has an economic interest. Here, the controversy in question was the motion to quash a subpoena for records of C, C & G, LLC, an entity in which Judge Greenhalgh admitted had an economic interest. Once he ruled on that motion, then Judge Greenhalgh could continue to preside in the Berlind v. Kinney matter because he no longer would have had any economic interest at issue. Indeed, Judge Greenhalgh had a duty to continue to decide the case under Rule 2.7 and not allow a litigant like Mr. Kinney to artificially inject a conflict to force Judge Greenhalgh's recusal from the entire case.

The Committee feels that a caution in this case is appropriate because the rule of necessity should be applied only in narrow cases when there are not reasonable options for an impartial judge to preside over the matter. In this case reasonable minds can differ about whether Judge Greenhalgh should have contacted one of the administrative circuit court judges to discuss whether there were other options available to him. Another judge may have been available to rule on the motion on an expedited basis. On the other hand, that consultation may have confirmed Judge Greenhalgh's considered judgment that there was no feasible way to transfer the case to another judge in an expedited manner.

To the extent another judge was unavailable or could not issue a ruling in time for the September 11 hearing that may have resulted in continuance of that hearing. Again, reasonable minds could dispute how pressing a decision on the ex parte motion was given that the motion was filed on August 14, but the hearing was not scheduled until September 11. Consultation with the Circuit Court administrative judge may have clarified whether there was a true necessity for Judge Greenhalgh to decide the motion where he otherwise had a clear conflict of interest.

Nonetheless, even if Judge Greenhalgh's application of the rule of necessity to this case was an error, it does not rise to the level of a violation of the Code of Judicial Conduct. "So long as the judge makes rulings in good faith, and in an effort to follow the law as the judge understands it, the usual safeguard against error or overreaching lies in the adversary system and appellate review." Geyh, supra, § 2.02 at 2-5. In this case, to the extent Judge Greenhalgh's application of the rule of necessity was not a reasonable exercise of discretion the appropriate remedy is to appeal that ruling. There is no indication that Judge Greenhalgh's ruling was so egregiously wrong, motivated by bad faith, or part of a pattern of legal error to warrant judicial discipline. See id. at 2-7.

Although Judge Greenhalgh had an economic interest in the entity from which the documents were subpoenaed and he was a business associate with Attorney Chant, neither Judge

Greenhalgh nor Attorney Chant stood to gain or lose any financial interest as a result Judge Greenhalgh's ruling on the motion to quash. In other words, Mr. Kinney subpoenaed the records from C, C & G, LLC for the purpose to trying to establish a basis to disqualify Judge Greenhalgh from the underlying case. Granting or denying the motion to quash would not have financially harmed or benefited either Judge Greenhalgh or Attorney Chant.

Moreover, these events occurred in the context of one case and no party was harmed by any error in judgment. It is likely that a disinterested judge would have also granted the motion to quash the subpoena. The records had nothing to do with the hearing on September 11, Attorney Chant had a preexisting scheduling conflict, which would have precluded him from appearing at the September 11 hearing, and there is no basis to believe those records would have provided a basis for Judge Greenhalgh to recuse himself from the underlying case. Given the surrounding circumstances and nature of the conduct, there is no substantial basis to conclude that there has been actual or potential harm to the court system as a result of these actions.

## V. CONCLUSION

For the foregoing reasons, the Committee dismisses all of the allegations in the report but cautions Judge Greenhalgh in the future to consider whether other options are available, including consultation with an administrative judge, before applying the rule of necessity to a motion which would otherwise require recusal.

_____        7/14/24
John Mullen, Committee Chair            Date

10