

Nina Gardner, Chair
Sen. Daryl Abbas
Hon. James P. Bassett
James T. Boffetti, Esq.
Stephanie Bray, Esq.
Kimberly Casey
Paul W. Chant, Esq.
John E. Durkin, Esq.
Karen A. Gorham, Esq.
Hon. David D. King

**THE STATE OF NEW HAMPSHIRE**
**JUDICIAL COUNCIL**    0 JUN08'23 PM 3:34
**www.nh.gov/judicialcouncil**



Heather Kulp, Esq.
Steven D. Lubrano
Rep. Bob Lynn
Dianne Martin, Esq.
Brian J. X. Murphy, Esq.
Hon. Tina Nadeau
Dino Scala
Alan Seidman, Ed.D
Phillip Utter, Esq.

Richard E. Samdperil, Acting Executive Director
State House Annex – Room 120
25 Capitol Street
Concord, New Hampshire 03301-6312

June 9, 2023

His Excellency, Governor Christopher T. Sununu
    and the Honorable Council
State House
Concord, New Hampshire 03301

## REQUESTED ACTION

Authorize the Judicial Council to enter into a contract with the New Hampshire Public Defender (hereinafter the Public Defender Program, Vendor Code 155941) in the amount of $55,589,108 to provide indigent-defense representation pursuant to the provisions of RSA 604-B:4, effective July 1, 2023 upon Governor and Council approval through June 30, 2025. 100% General Funds.

Funds are anticipated to be available in Fiscal Years 2024 and 2025, upon the availability and continued appropriation of funds in the future operating budget, as follows:

|                                                       | **FY 2024**  | **FY 2025**  |
| ----------------------------------------------------- | ------------ | ------------ |
| 02-07-07-070010-1094-102 Public Defender Program      | $27,794,554  | $27,794,554  |

## EXPLANATION

The Judicial Council requests authorization to enter into a contract for the biennium with the New Hampshire Public Defender, the only statewide public defender program. The Public Defender Program has the current capacity to meet the obligations of the contract.

Under the terms of this contract, the Public Defender Program would continue to operate in all ten counties through June 30, 2025 and would maintain its administrative offices at 10 Ferry Street, Suite 425, in Concord, New Hampshire. The New Hampshire Public Defender meets the requirements of RSA 604-B:4, has received the formal approval of the New Hampshire Bar Association, and is the State's most cost-effective method of delivering indigent-defense representation, which is mandated by the State and Federal Constitutions and authorized by the statutory provisions of RSA 604-A:2. This contract will enable the Public Defender Program to provide continued representation for clients in the roughly 11,000 cases carried forward from pre-existing court appointments, and to accept approximately 85% of new indigent criminal

delinquency cases over the next biennium. The Public Defender Program is the nucleus of the indigent defense system. It reduces reliance on the more expensive and less predictable assigned counsel system, and it provides reliable representation in the broad range of homicide, felony, misdemeanor, appellate, and sexual-violent-predator cases brought in New Hampshire courts against persons for whom the state is constitutionally and statutorily obligated to provide legal representation.

The Attorney General's Office has approved this contract as to form, substance and execution.

## REQUEST FOR PROPOSALS AND REVIEW PROCESS

The Judicial Council developed a detailed Request for Proposals (RFP) for public defender services and made the RFP available on the Judicial Council website. The availability of the RFP and the opportunity to submit proposals were also publicized in a statewide newspaper (Union Leader) on March 26, 2023. In addition, the RFP was listed on the Department of Administrative Services, Procurement and Support Services' website for Statewide Bids and Proposals. Notice regarding the availability of the RFP also appeared on the New Hampshire Bar Association's classifieds website.

Other than the New Hampshire Public Defender, no group or individual submitted a proposal for consideration. The proposal submitted by the New Hampshire Public Defender was reviewed thoroughly by the Judicial Council's Indigent Defense Subcommittee and was found to be compliant with the Judicial Council's Request for Proposals.

Thank you for your consideration. I would be happy to answer any questions you may have regarding this proposed contract.

Respectfully submitted,

Richard E. Samdperil
Acting Executive Director

Attachments

2

Subject: Statewide Indigent Defense Representation                    **FORM NUMBER P-37 (version 12/11/2019)**

Notice: This agreement and all of its attachments shall become public upon submission to Governor and
Executive Council for approval. Any information that is private, confidential or proprietary must
be clearly identified to the agency and agreed to in writing prior to signing the contract.

**AGREEMENT**
The State of New Hampshire and the Contractor hereby mutually agree as follows:

**GENERAL PROVISIONS**

**1.  IDENTIFICATION.**

| 1.1  State Agency Name | | 1.2  State Agency Address | |
|---|---|---|---|
| New Hampshire Judicial Council | | 25 Capitol Street, Room 120￼Concord, NH 03301-6312 | |
| 1.3  Contractor Name | | 1.4  Contractor Address | |
| New Hampshire Public Defender | | 10 Ferry Street, Suite 425￼Concord, NH 03301 | |
| 1.5  Contractor Phone Number | 1.6  Account Number | 1.7 Completion Date | 1.8  Price Limitation |
| 603-224-1236 | 010-0070-1094-102 | June 30, 2025 | $55,589,108 |
| 1.9  Contracting Officer for State Agency | | 1.10 State Agency Telephone Number | |
| Richard E. Samdperil, Acting Executive Director | | 603-271-3592 | |
| 1.11  Contractor Signature￼Date: 5/25/23 | | 1.12  Name and Title of Contractor Signatory￼Michael J. Iacopino, President￼NHPD Board of Directors | |
| 1.13  State Agency Signature￼Date: 5.25.23 | | 1.14  Name and Title of State Agency Signatory￼Nina Gardner, Chair￼New Hampshire Judicial Council | |
| 1.15  Approval by the N.H. Department of Administration, Division of Personnel *(if applicable)* | | | |
| By: | | Director, On: | [not applicable] |
| 1.16  Approval by the Attorney General (Form, Substance and Execution) *(if applicable)* | | | |
| By:￼CHRISTOPHER BOLD | | On:  5/31/23 | |
| 1.17  Approval by the Governor and Executive Council *(if applicable)* | | | |
| G&C Item number: | | G&C Meeting Date: | |

Contractor Initials _____
Date 5/25/23



**2. SERVICES TO BE PERFORMED.** The State of New Hampshire, acting through the agency identified in block 1.1 ("State"), engages contractor identified in block 1.3 ("Contractor") to perform, and the Contractor shall perform, the work or sale of goods, or both, identified and more particularly described in the attached EXHIBIT B which is incorporated herein by reference ("Services").

**3. EFFECTIVE DATE/COMPLETION OF SERVICES.**
3.1 Notwithstanding any provision of this Agreement to the contrary, and subject to the approval of the Governor and Executive Council of the State of New Hampshire, if applicable, this Agreement, and all obligations of the parties hereunder, shall become effective on the date the Governor and Executive Council approve this Agreement as indicated in block 1.17, unless no such approval is required, in which case the Agreement shall become effective on the date the Agreement is signed by the State Agency as shown in block 1.13 ("Effective Date").
3.2 If the Contractor commences the Services prior to the Effective Date, all Services performed by the Contractor prior to the Effective Date shall be performed at the sole risk of the Contractor, and in the event that this Agreement does not become effective, the State shall have no liability to the Contractor, including without limitation, any obligation to pay the Contractor for any costs incurred or Services performed. Contractor must complete all Services by the Completion Date specified in block 1.7.

**4. CONDITIONAL NATURE OF AGREEMENT.**
Notwithstanding any provision of this Agreement to the contrary, all obligations of the State hereunder, including, without limitation, the continuance of payments hereunder, are contingent upon the availability and continued appropriation of funds affected by any state or federal legislative or executive action that reduces, eliminates or otherwise modifies the appropriation or availability of funding for this Agreement and the Scope for Services provided in EXHIBIT B, in whole or in part. In no event shall the State be liable for any payments hereunder in excess of such available appropriated funds. In the event of a reduction or termination of appropriated funds, the State shall have the right to withhold payment until such funds become available, if ever, and shall have the right to reduce or terminate the Services under this Agreement immediately upon giving the Contractor notice of such reduction or termination. The State shall not be required to transfer funds from any other account or source to the Account identified in block 1.6 in the event funds in that Account are reduced or unavailable.

**5. CONTRACT PRICE/PRICE LIMITATION/ PAYMENT.**
5.1 The contract price, method of payment, and terms of payment are identified and more particularly described in EXHIBIT C which is incorporated herein by reference.
5.2 The payment by the State of the contract price shall be the only and the complete reimbursement to the Contractor for all expenses, of whatever nature incurred by the Contractor in the performance hereof, and shall be the only and the complete

compensation to the Contractor for the Services. The State shall have no liability to the Contractor other than the contract price.
5.3 The State reserves the right to offset from any amounts otherwise payable to the Contractor under this Agreement those liquidated amounts required or permitted by N.H. RSA 80:7 through RSA 80:7-c or any other provision of law.
5.4 Notwithstanding any provision in this Agreement to the contrary, and notwithstanding unexpected circumstances, in no event shall the total of all payments authorized, or actually made hereunder, exceed the Price Limitation set forth in block 1.8.

**6. COMPLIANCE BY CONTRACTOR WITH LAWS AND REGULATIONS/ EQUAL EMPLOYMENT OPPORTUNITY.**
6.1 In connection with the performance of the Services, the Contractor shall comply with all applicable statutes, laws, regulations, and orders of federal, state, county or municipal authorities which impose any obligation or duty upon the Contractor, including, but not limited to, civil rights and equal employment opportunity laws. In addition, if this Agreement is funded in any part by monies of the United States, the Contractor shall comply with all federal executive orders, rules, regulations and statutes, and with any rules, regulations and guidelines as the State or the United States issue to implement these regulations. The Contractor shall also comply with all applicable intellectual property laws.
6.2 During the term of this Agreement, the Contractor shall not discriminate against employees or applicants for employment because of race, color, religion, creed, age, sex, handicap, sexual orientation, or national origin and will take affirmative action to prevent such discrimination.
6.3. The Contractor agrees to permit the State or United States access to any of the Contractor's books, records and accounts for the purpose of ascertaining compliance with all rules, regulations and orders, and the covenants, terms and conditions of this Agreement.

**7. PERSONNEL.**
7.1 The Contractor shall at its own expense provide all personnel necessary to perform the Services. The Contractor warrants that all personnel engaged in the Services shall be qualified to perform the Services, and shall be properly licensed and otherwise authorized to do so under all applicable laws.
7.2 Unless otherwise authorized in writing, during the term of this Agreement, and for a period of six (6) months after the Completion Date in block 1.7, the Contractor shall not hire, and shall not permit any subcontractor or other person, firm or corporation with whom it is engaged in a combined effort to perform the Services to hire, any person who is a State employee or official, who is materially involved in the procurement, administration or performance of this Agreement.    This provision shall survive termination of this Agreement.
7.3 The Contracting Officer specified in block 1.9, or his or her successor, shall be the State's representative. In the event of any dispute concerning the interpretation of this Agreement, the Contracting Officer's decision shall be final for the State.

Page 2 of 4

Contractor Initials _MJL_
Date _5/25/23_

## 8. EVENT OF DEFAULT/REMEDIES.

8.1 Any one or more of the following acts or omissions of the Contractor shall constitute an event of default hereunder ("Event of Default"):

8.1.1 failure to perform the Services satisfactorily or on schedule;

8.1.2 failure to submit any report required hereunder; and/or

8.1.3 failure to perform any other covenant, term or condition of this Agreement.

8.2 Upon the occurrence of any Event of Default, the State may take any one, or more, or all, of the following actions:

8.2.1 give the Contractor a written notice specifying the Event of Default and requiring it to be remedied within, in the absence of a greater or lesser specification of time, thirty (30) days from the date of the notice; and if the Event of Default is not timely cured, terminate this Agreement, effective two (2) days after giving the Contractor notice of termination;

8.2.2 give the Contractor a written notice specifying the Event of Default and suspending all payments to be made under this Agreement and ordering that the portion of the contract price which would otherwise accrue to the Contractor during the period from the date of such notice until such time as the State determines that the Contractor has cured the Event of Default shall never be paid to the Contractor;

8.2.3 give the Contractor a written notice specifying the Event of Default and set off against any other obligations the State may owe to the Contractor any damages the State suffers by reason of any Event of Default; and/or

8.2.4 give the Contractor a written notice specifying the Event of Default, treat the Agreement as breached, terminate the Agreement and pursue any of its remedies at law or in equity, or both.

8.3. No failure by the State to enforce any provisions hereof after any Event of Default shall be deemed a waiver of its rights with regard to that Event of Default, or any subsequent Event of Default. No express failure to enforce any Event of Default shall be deemed a waiver of the right of the State to enforce each and all of the provisions hereof upon any further or other Event of Default on the part of the Contractor.

## 9. TERMINATION.

9.1 Notwithstanding paragraph 8, the State may, at its sole discretion, terminate the Agreement for any reason, in whole or in part, by thirty (30) days written notice to the Contractor that the State is exercising its option to terminate the Agreement.

9.2 In the event of an early termination of this Agreement for any reason other than the completion of the Services, the Contractor shall, at the State's discretion, deliver to the Contracting Officer, not later than fifteen (15) days after the date of termination, a report ("Termination Report") describing in detail all Services performed, and the contract price earned, to and including the date of termination. The form, subject matter, content, and number of copies of the Termination Report shall be identical to those of any Final Report described in the attached EXHIBIT B. In addition, at the State's discretion, the Contractor shall, within 15 days of notice of early termination, develop and submit to the State a Transition Plan for services under the Agreement.

## 10. DATA/ACCESS/CONFIDENTIALITY/PRESERVATION.

10.1 As used in this Agreement, the word "data" shall mean all information and things developed or obtained during the performance of, or acquired or developed by reason of, this Agreement, including, but not limited to, all studies, reports, files, formulae, surveys, maps, charts, sound recordings, video recordings, pictorial reproductions, drawings, analyses, graphic representations, computer programs, computer printouts, notes, letters, memoranda, papers, and documents, all whether finished or unfinished.

10.2 All data and any property which has been received from the State or purchased with funds provided for that purpose under this Agreement, shall be the property of the State, and shall be returned to the State upon demand or upon termination of this Agreement for any reason.

10.3 Confidentiality of data shall be governed by N.H. RSA chapter 91-A or other existing law. Disclosure of data requires prior written approval of the State.

## 11. CONTRACTOR'S RELATION TO THE STATE. In the performance of this Agreement the Contractor is in all respects an independent contractor, and is neither an agent nor an employee of the State. Neither the Contractor nor any of its officers, employees, agents or members shall have authority to bind the State or receive any benefits, workers' compensation or other emoluments provided by the State to its employees.

## 12. ASSIGNMENT/DELEGATION/SUBCONTRACTS.

12.1 The Contractor shall not assign, or otherwise transfer any interest in this Agreement without the prior written notice, which shall be provided to the State at least fifteen (15) days prior to the assignment, and a written consent of the State. For purposes of this paragraph, a Change of Control shall constitute assignment. "Change of Control" means (a) merger, consolidation, or a transaction or series of related transactions in which a third party, together with its affiliates, becomes the direct or indirect owner of fifty percent (50%) or more of the voting shares or similar equity interests, or combined voting power of the Contractor, or (b) the sale of all or substantially all of the assets of the Contractor.

12.2 None of the Services shall be subcontracted by the Contractor without prior written notice and consent of the State. The State is entitled to copies of all subcontracts and assignment agreements and shall not be bound by any provisions contained in a subcontract or an assignment agreement to which it is not a party.

## 13. INDEMNIFICATION. Unless otherwise exempted by law, the Contractor shall indemnify and hold harmless the State, its officers and employees, from and against any and all claims, liabilities and costs for any personal injury or property damages, patent or copyright infringement, or other claims asserted against the State, its officers or employees, which arise out of (or which may be claimed to arise out of) the acts or omission of the

Contractor Initials _MJI_
Date _5/25/23_

Contractor, or subcontractors, including but not limited to the negligence, reckless or intentional conduct. The State shall not be liable for any costs incurred by the Contractor arising under this paragraph 13. Notwithstanding the foregoing, nothing herein contained shall be deemed to constitute a waiver of the sovereign immunity of the State, which immunity is hereby reserved to the State. This covenant in paragraph 13 shall survive the termination of this Agreement.

## 14. INSURANCE.

14.1 The Contractor shall, at its sole expense, obtain and continuously maintain in force, and shall require any subcontractor or assignee to obtain and maintain in force, the following insurance:

14.1.1 commercial general liability insurance against all claims of bodily injury, death or property damage, in amounts of not less than $1,000,000 per occurrence and $2,000,000 aggregate or excess; and

14.1.2 special cause of loss coverage form covering all property subject to subparagraph 10.2 herein, in an amount not less than 80% of the whole replacement value of the property.

14.2 The policies described in subparagraph 14.1 herein shall be on policy forms and endorsements approved for use in the State of New Hampshire by the N.H. Department of Insurance, and issued by insurers licensed in the State of New Hampshire.

14.3 The Contractor shall furnish to the Contracting Officer identified in block 1.9, or his or her successor, a certificate(s) of insurance for all insurance required under this Agreement. Contractor shall also furnish to the Contracting Officer identified in block 1.9, or his or her successor, certificate(s) of insurance for all renewal(s) of insurance required under this Agreement no later than ten (10) days prior to the expiration date of each insurance policy. The certificate(s) of insurance and any renewals thereof shall be attached and are incorporated herein by reference.

## 15. WORKERS' COMPENSATION.

15.1 By signing this agreement, the Contractor agrees, certifies and warrants that the Contractor is in compliance with or exempt from, the requirements of N.H. RSA chapter 281-A *("Workers' Compensation")*.

15.2 To the extent the Contractor is subject to the requirements of N.H. RSA chapter 281-A, Contractor shall maintain, and require any subcontractor or assignee to secure and maintain, payment of Workers' Compensation in connection with activities which the person proposes to undertake pursuant to this Agreement. The Contractor shall furnish the Contracting Officer identified in block 1.9, or his or her successor, proof of Workers' Compensation in the manner described in N.H. RSA chapter 281-A and any applicable renewal(s) thereof, which shall be attached and are incorporated herein by reference. The State shall not be responsible for payment of any Workers' Compensation premiums or for any other claim or benefit for Contractor, or any subcontractor or employee of Contractor, which might arise under applicable State of New Hampshire Workers' Compensation laws in connection with the performance of the Services under this Agreement.

**16. NOTICE.** Any notice by a party hereto to the other party shall be deemed to have been duly delivered or given at the time of mailing by certified mail, postage prepaid, in a United States Post Office addressed to the parties at the addresses given in blocks 1.2 and 1.4, herein.

**17. AMENDMENT.** This Agreement may be amended, waived or discharged only by an instrument in writing signed by the parties hereto and only after approval of such amendment, waiver or discharge by the Governor and Executive Council of the State of New Hampshire unless no such approval is required under the circumstances pursuant to State law, rule or policy.

**18. CHOICE OF LAW AND FORUM.** This Agreement shall be governed, interpreted and construed in accordance with the laws of the State of New Hampshire, and is binding upon and inures to the benefit of the parties and their respective successors and assigns. The wording used in this Agreement is the wording chosen by the parties to express their mutual intent, and no rule of construction shall be applied against or in favor of any party. Any actions arising out of this Agreement shall be brought and maintained in New Hampshire Superior Court which shall have exclusive jurisdiction thereof.

**19. CONFLICTING TERMS.** In the event of a conflict between the terms of this P-37 form (as modified in EXHIBIT A) and/or attachments and amendment thereof, the terms of the P-37 (as modified in EXHIBIT A) shall control.

**20. THIRD PARTIES.** The parties hereto do not intend to benefit any third parties and this Agreement shall not be construed to confer any such benefit.

**21. HEADINGS.** The headings throughout the Agreement are for reference purposes only, and the words contained therein shall in no way be held to explain, modify, amplify or aid in the interpretation, construction or meaning of the provisions of this Agreement.

**22. SPECIAL PROVISIONS.** Additional or modifying provisions set forth in the attached EXHIBIT A are incorporated herein by reference.

**23. SEVERABILITY.** In the event any of the provisions of this Agreement are held by a court of competent jurisdiction to be contrary to any state or federal law, the remaining provisions of this Agreement will remain in full force and effect.

**24. ENTIRE AGREEMENT.** This Agreement, which may be executed in a number of counterparts, each of which shall be deemed an original, constitutes the entire agreement and understanding between the parties, and supersedes all prior agreements and understandings with respect to the subject matter hereof.

Contractor Initials *MJ*
Date *5/25/25*

Statewide Indigent Defense Contract

State Fiscal Years 2024 and 2025

## EXHIBIT A
## SPECIAL PROVISIONS

**1.    Conditional Nature of this Agreement**

Paragraph 4 of Form P-37 is inapplicable and deleted.

Notwithstanding anything in this Agreement to the contrary, all obligations of the State hereunder, including, without limitation, the continuance of payments hereunder, are contingent upon the continued appropriation of funds for the services provided herein, and in no event shall money promised to the New Hampshire Public Defender (NHPD) in this contract be transferred administratively or otherwise to the Contract Counsel or Assigned Counsel programs without the express written consent of the President of Public Defender Program's Board of Directors. If, however, it shall become necessary to reduce the monies paid to NHPD pursuant to this paragraph, there shall be a concomitant and pro rata reduction of the services which NHPD is obligated to perform hereunder.

**2.    Data/Access/Confidentiality**

Paragraph 9 of Form P-37 is inapplicable and deleted.

The parties acknowledge that the Public Defender Program has obligations of confidentiality and loyalty to clients which cannot be abridged.  NHPD must strictly prevent access by the State to information regarding all matters related to the representation of individual clients.

NHPD has reporting and access obligations to the State of New Hampshire as follows:

A.  The Public Defender Program Executive Director shall personally report to the Judicial Council on the operation of the Public Defender Program as requested.

B.  All records of NHPD regarding expenses of operation of NHPD shall be available for examination at any reasonable time to fiscal agents of the State or General Court, including the Judicial Council.

C.  NHPD will keep time records for statistical purposes and for assessment of any repayment ordered in accordance with RSA 604-A:9.

D.  NHPD shall furnish the Judicial Council such listing of personnel, job descriptions and salary levels as the Judicial Council shall from time-to-time request.

E.  Within thirty (30) days following the conclusion of each quarterly period during the term of this Agreement, written progress reports shall be prepared by NHPD.  The reports shall briefly describe the cases accepted during the quarterly period, the progress of such cases, and the final disposition of all cases, in sufficient detail to disclose type and degree of offenses, whether or not contested, and the approximate time spent on such cases.  The reports shall include a statement of administration costs detailing the expenses incurred during the quarterly period in connection with the operation of NHPD.  One copy of each such report shall be submitted by NHPD to:

Contractor's Initials: _____  Date: 5/25/23

1. The New Hampshire Judicial Council,

2. The Governor,

3. Each member of the Executive Council,

4. The Attorney General, and,

5. Further copies shall be made available to such other offices, courts or agencies as the Judicial Council may specify.

F.   Within sixty (60) days following the conclusion of State Fiscal Year 2024, NHPD shall provide the Judicial Council with a final statement of all expenses associated with operation of NHPD for that Fiscal Year.

G.   Within sixty (60) days following the conclusion of State Fiscal Year 2025, NHPD shall provide the Judicial Council with a final statement of all expenses associated with operation of the NHPD for that Fiscal Year.

H.   Within ninety (90) days of the end of State Fiscal Year 2024, NHPD shall also provide the Judicial Council with a copy of its annual audit by a certified public accountant.

I.   Within ninety (90) days of the end of State Fiscal Year 2025, NHPD shall provide the Judicial Council with a copy of its annual audit by a certified public accountant.

J.   Within ninety (90) days of the end of the 2024-2025 biennium, NHPD will provide an accounting of those item of equipment in which the State retains a reversionary interest. This accounting shall include a complete inventory list as well as a statement of the value of the assets listed.

## 3.    Equipment

The State shall retain a reversionary interest in all equipment with a useful life of greater than two years, such as books, office equipment, telephones, desks and chairs, purchased by NHPD during the period of the Agreement with funds provided pursuant to this Agreement. The State shall not retain a reversionary interest in consumable supplies. In the event that NHPD ceases to operate, NHPD will return all items of said equipment within thirty (30) days of a request by the State.

## 4.    Professional Liability Insurance

NHPD shall carry professional liability insurance covering all services to be performed pursuant to this Agreement, shall provide to the Judicial Council proof of such insurance upon the commencement of the term of this Agreement, and shall notify the Judicial Council immediately if such coverage is cancelled or expires for any reason.

## 5.    Assignment/Delegation/Subcontracts

Paragraph 12 of Form P-37 is inapplicable and deleted.

NHPD shall have the option to sub-contract for attorney services as may be deemed necessary or appropriate to provide the representation specified under this Agreement. NHPD shall obtain pre-approval from the Judicial Council when the Program sub-contracts for attorney services.

Contractor's Initials: 5/25/25   Date: MR

6.    **Capital Case Representation**

If the Addison Petition for Post-Conviction Relief should result in a remedy that requires the Public Defender Program to provide any additional representation, the parties agree to amend the Price Limitation set forth in Block 1.8 of this Agreement, notwithstanding the provisions of Section 5.4.

In the event that the Public Defender Program is called upon to provide representation to any defendant charged with capital murder, the parties agree to amend the Price Limitation set forth in Block 1.8 of this Agreement, notwithstanding the provisions of Section 5.4.

7.    **General Liability Insurance**

NHPD may substitute comprehensive general liability insurance in the amount of $1,000,000 per occurrence and excess/umbrella liability insurance in the amount of $3,000,000 per occurrence for the $2,000,000 per occurrence identified in Paragraph 14.1.1 of the P-37.

Contractor's Initials: _____ Date: 5/25/23

**EXHIBIT B**
**SCOPE OF SERVICES**

1. The New Hampshire Public Defender Program (NHPD) shall provide statewide legal representation at all stages of criminal proceedings for all criminal defendants, juveniles in delinquency cases, and respondents in involuntary commitment proceedings under RSA 135-E, qualifying as indigents. Consistent with the statutory scheme of appointment described in RSA 604-A:2 II, the Public Defender shall accept all indigent case appointments in the Circuit Court's District, Family and Probate Divisions, Superior Court, and Supreme Courts, except in those cases in which the Rules of Professional Conduct would bar the representation, and except in those cases in which caseload limits as defined herein have been reached.

2. NHPD shall provide such other representation as is necessary and consistent with professional norms and standards for criminal defense, including but not limited to representation in specialty courts, as required by the provisions of the United States and New Hampshire Constitutions, as well as related activities. For purposes of this provision, "related activities" includes but is not limited to the following:

 A) Representation in matters arising under RSA 169-D which are factually and procedurally related to juvenile delinquency matters such that effective representation in the matter to which NHPD has been appointed requires participation;

 B) Representation in non-criminal matters such as motor vehicle and other violations, Class B misdemeanors, proceedings brought under RSA Chapter 173-B, Grand Jury proceedings, proceedings related to RSA 265-A:30, and similar matters, when such representation is required to provide effective representation in a matter to which NHPD has been appointed;

 C) Representation in proceedings under RSA Chapters 135 and 135-C related to a finding of a lack of competency to stand trial in a case to which NHPD has been appointed. In such matters, NHPD may seek compensation from other agencies if such compensation is normally made for such representation when provided by non-NHPD counsel.

3. NHPD shall employ an Executive Director to supervise the Program. NHPD shall hire such other staff as is necessary to provide the services under this contract. It is understood and agreed that the staffing levels will be supported by the expenditure of funds under this Agreement to purchase and install necessary equipment such as books, office equipment, computer hardware and software, telephones, desks, and chairs.

4. The present NHPD offices located in Manchester, Concord, Nashua, Laconia, Stratham, Dover, Keene, Littleton, Newport, and Orford will continue to be staffed with full-time attorneys and part time attorneys. Office locations will not be modified without prior written approval from the Judicial Council (Council). NHPD attorneys shall not be otherwise engaged in the practice of law. Contract attorneys, other than appellate attorneys, will be compensated on a caseload basis rather than on an hourly or per diem basis.

5. Subject to the normal turnover of staff and the availability of qualified replacements, NHPD

shall employ not fewer than 132 full-time attorneys or the equivalent for the period of this agreement. Attorney staff not specifically designated for areas of representation by this Agreement shall be assigned responsibilities by NHPD based upon caseload growth. NHPD shall maintain specific minimum attorney staffing by employing no fewer than:

A) 26 full-time attorneys serving Northern Hillsborough County.
B) 18 full-time attorneys serving Southern Hillsborough County.
C) 20 full-time attorneys serving Rockingham County.
D) 20 full-time attorneys serving Merrimack County.
E) 7 full-time attorneys serving in Cheshire County.
F) 4 full-time attorneys serving in Sullivan County.
G) 13 full-time attorneys serving Strafford County.
H) 11 full-time attorneys serving Belknap and Carroll Counties.
I) 4 full-time attorneys serving Coos County.
J) 6 full-time attorneys serving Grafton County.
K) 3 full-time attorneys providing appellate representation.

6. NHPD and the Council acknowledge that staffing levels contemplated under this agreement do not make provision for the capacity of NHPD to provide representation in trial level, capital-case litigation.

7. NHPD shall have the option to sub-contract for attorney services as may be deemed necessary or appropriate to provide the representation specified under this Agreement. The use of all subcontractors must be pre-approved by the Council or the Indigent Defense Subcommittee (IDS). NHPD shall provide the Council with copies of all proposed subcontracting agreements and information on the role the subcontractor will play, how they will be used, assigned cases, supervised and paid.

8. For purposes of determining the minimum staffing requirements set forth above, "full-time attorneys or equivalent" shall be computed as follows: Full-time attorney staff shall be those attorneys who are salaried and devote 100% of their time to NHPD representation; part-time attorney staff shall be given equivalent value based upon the ratio of their caseload responsibilities compared to the workload of full-time salaried attorney staff; contract attorneys shall be given equivalent value based upon the ratio of their contract workload responsibilities compared to the workload of full-time salaried attorney staff.

9. The caseloads of NHPD attorneys shall be consistent with the Rules of Professional Conduct and shall conform to the requirements of the plan adopted by NHPD and approved and monitored on a continuing basis by the Council (See Exhibit A-1). Said plan shall allocate cases between NHPD and other counsel, shall establish caseload limits for defender attorneys in accordance with professional standards under the Rules of Professional Conduct, and shall provide for appointment of other counsel only when maximum caseloads have been reached, when conflicts exist or when NHPD attorneys are otherwise unavailable.

10. In all accepted cases, the assigned NHPD attorney will provide the client with a closing letter after the case has resolved. The closing letter will summarize the resolution of the case, including any action that the client is required to take. It will also provide basic information about the annulment process, if appropriate. The closing letter can be provided to the client electronically.

11. NHPD shall operate and administer the Conflict Case Administrator Office (CCA). The CCA

shall distribute conflict cases to contract attorneys and assigned counsel. In the event that NHPD reduces or closes case intake from a particular court or courts, the CCA shall assign all of the cases refused by NHPD. In the event that NHPD reduces or closes case intake from a particular court or courts and the CCA is called upon to assign all of the cases refused by NHPD, NHPD shall sufficiently augment the resources made available to the CCA in order to accommodate the workload increase.

12. NHPD shall continue to implement recommendations made in Berry Dunn's October 9, 2020 Operational Assessment (Assessment) and April 5, 2023 Review of Implementation of Assessment Recommendations, including but not limited to maintaining a Financial Expert, as defined in the Assessment, as a member of its Board of Directors. NHPD shall conduct such further assessments or implementation reviews as requested by the Council and shall provide the results to the Council within ten (10) days of receiving such assessments or reviews.

Contractor's Initials: _____ Date: 5/25/23

## EXHIBIT B-1
## CASELOAD MANAGEMENT PLAN

Because persistently excessive caseloads threaten a lawyer's ability to provide competent representation to the accused, the New Hampshire legislature enacted RSA Chapter 604-B:6, requiring that a plan for caseload management be adopted by the New Hampshire Public Defender (NHPD) and approved by the Judicial Council. Accordingly, the parties hereto adopt the following Caseload Management Plan:

### 1.  Representation
NHPD shall represent any eligible, indigent person in the Circuit Court's District, Family and Probate Divisions, Superior Court, and Supreme Courts at all stages of criminal prosecutions, delinquency matters, and proceedings concerning the involuntary commitment of dangerous persons. NHPD is authorized to provide such other representation as is necessary and consistent with normal criminal, delinquency, and civil-commitment defense as required by the provisions of the United States and New Hampshire Constitutions. Representation shall be provided in accordance with this Plan.

### 2.  Rules of Professional Conduct
NHPD shall not represent an individual when doing so would constitute a violation of the Rules of Professional Conduct.

### 3.  "Case" Definition
A "case" for the purposes of this agreement is defined as a single charge; or, multiple related charges that occurred at the same time and place which are to be tried as one case regardless of the number of complaints; or, multiple charges that involve the same type of offense committed over a proximate period of time which are to be tried as one case regardless of the number of complaints.

### 4.  Caseload Management
In order to ensure adequate representation for the accused, NHPD's Executive Director shall monitor the caseloads of attorneys. If caseloads become excessive and the Executive Director determines that closing off or reducing case intake is necessary, NHPD"s Executive Director will consult with the Judicial Council's Executive Director prior to taking either of these steps. If and when a decision is made to close or reduce the intake of new cases temporarily, the Conflict Case Administrator shall assign alternate counsel pursuant to RSA 604-A:2 II.

### 5.  Staff Attorney Caseloads
Full-time attorneys providing general felony, misdemeanor, and juvenile delinquency representation shall maintain a caseload of not more than 70 open and active cases. Lawyers may be assigned caseloads of specific case types for efficiency purposes, but when attorney caseloads are a mixture of felony, misdemeanor, juvenile, and other cases, there will be acknowledged maximums in each of these categories fixed as follows:

(a) Felony Maximum - 35 cases            (c) Juvenile Delinquency Maximum - 20 cases
(b) Misdemeanor Maximum - 35 cases       (d) Other Cases - 15 cases

The mix of cases totaling 70 for each attorney shall be determined by NHPD's Executive Director based upon the experience level of the staff attorney and the concentration of case types in the geographic area served by the office in which the attorney works.

**6. Homicide Representation**

The Public Defender Program shall assign two attorneys to represent individuals charged with homicide offenses (first-degree murder, second-degree murder, and manslaughter cases). At least one lawyer shall be assigned from among the senior NHPD lawyers who possess homicide case experience. NHPD attorneys carrying a mixed caseload will carry no more than two homicides at a time, and their caseloads shall be adjusted in accordance with the complexities and demands of the homicide case.

**7. Capital Case Representation**

In the event that NHPD is called upon to provide trial-level representation in a new capital case, the parties agree to amend the Price Limitation set forth in Block 1.8 of this Agreement, notwithstanding the provisions of Section 5.4. When NHPD assigns lawyers to provide representation in a capital case, NHPD will do so in a manner consistent with the American Bar Association's <u>Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases</u>.

**8. Juvenile Representation**

NHPD shall assign attorneys to provide representation in juvenile delinquency proceedings who through selection and training meet the eligibility requirements established by the Judicial Council under the provisions of RSA 604-A:2-e.

**9. Appellate Representation**

The Appellate Defender Office shall be staffed by no fewer than three (3) attorneys. Appellate Defender attorneys shall maintain a caseload that requires them to research, write, and argue not more than 24 appeals in any year.

**10. Civil Commitment of Sexually Violent Predator Representation**

NHPD shall assign two (2) attorneys to represent any individual sought to be committed as a sexually violent predator pursuant to RSA 135-E. Attorneys carrying a mixed caseload will carry no more than two open and active civil commitment cases at a time. The caseload of any attorney handling a civil commitment case shall be adjusted in accordance with the complexities and demands of the civil commitment case.

**11. Amendment and Review**

No change shall be made in this Plan except upon approval of both parties. Either party may propose amendments to this Plan whenever said amendments appear to be appropriate and necessary. In addition, the Judicial Council shall review the operations of NHPD and shall also review NHPD's quarterly statistics to ensure that representation of indigents by NHPD is consistent with this Plan and legislative mandates.

Statewide Indigent Defense Contract

State Fiscal Years 2024 and 2025

**EXHIBIT C**
**METHOD OF PAYMENT**

1. It is agreed that the sums advanced above shall be expended by the New Hampshire Public Defender (NHPD) for the sole purpose of paying the expenses of administration of NHPD, including payment of salaries of personnel assigned to it, social security and payroll taxes or benefits computed on payroll, travel, insurance, rent, telephone, office supplies and equipment. All expenses incurred shall be reasonably related to and necessary for the operation of NHPD.

2. Notwithstanding Paragraph 1 of this Exhibit, NHPD is authorized to make training presentations and materials available to attorneys not employed by NHPD who provide indigent defense services funded by the State of New Hampshire.

3. In consideration of the satisfactory operation of NHPD from the effective date of this contract until the end of Fiscal Year 2024, the State of New Hampshire shall advance to NHPD in State Fiscal Year 2024:

    $13,897,277 for the period July 1, 2023 through December 31, 2023,
    and
    $13,897,277 for the period January 1, 2024 through June 30, 2024.

In consideration of the satisfactory operation of NHPD from the effective date of this contract until the end of Fiscal Year 2025, the State of New Hampshire shall advance to NHPD in State Fiscal Year 2025:

    $13,897,277 for the period July 1, 2024 through December 31, 2024,
    and
    $13,897,277 for the period January 1, 2025 through June 30, 2025.

5. The amount, if any, by which the total semi-annual payments specified above for State Fiscal Year 2024 exceed the amount of total expenses associated with operation of the NHPD for that year shall be utilized by NHPD to help to defray expenses associated with operation of NHPD incurred during State Fiscal Year 2025.

6. Within 80 days following conclusion of State Fiscal Year 2025, NHPD shall return to the State the amount, if any, by which the total of the payments specified above for both fiscal years exceeds the total expenses incurred for operation of NHPD for the two fiscal years.

Contractor's Initials: _____ Date: 5/25/23

# State of New Hampshire
# Department of State

### CERTIFICATE

I, David M. Scanlan, Secretary of State of the State of New Hampshire, do hereby certify that NEW HAMPSHIRE PUBLIC DEFENDER is a New Hampshire Nonprofit Corporation registered to transact business in New Hampshire on May 06, 1985. I further certify that all fees and documents required by the Secretary of State's office have been received and is in good standing as far as this office is concerned.

Business ID: 83694
Certificate Number: 0006149392



IN TESTIMONY WHEREOF,
I hereto set my hand and cause to be affixed
the Seal of the State of New Hampshire,
this 14th day of March A.D. 2023.

David M. Scanlan
Secretary of State

# NEW HAMPSHIRE PUBLIC DEFENDER
# BOARD OF DIRECTORS

## CERTIFICATE OF AUTHORITY

WHEREAS, the New Hampshire Constitution provides a right to counsel to those facing a loss of their liberty; and,

WHEREAS, New Hampshire RSA Chapter 604-B establishes the plan for appointment of counsel in indigent criminal cases and other circumstances; and,

WHEREAS, the Judicial Council has awarded the indigent defense contract to the New Hampshire Public Defender;

NOW THEREFORE, the Board of Directors of the New Hampshire Public Defender authorizes Board President Michael Iacopino, Esq. to enter into a contract with the Judicial Council for the New Hampshire Public Defender to provide defense representation to indigent defendants in criminal cases, to indigent respondents against sexually violent predator petitions, to indigent defendants in capital-murder cases, and to indigent juveniles in delinquency proceedings, in the State of New Hampshire, for the period July 1, 2023 through June 30, 2025.


5/12/2023                        /s/ John Newman_____
Date                             John Newman, Esq.


5/17/2023                        /s/ Dorothy Graham_____
Date                             Dorothy Graham, Esq.


5/23/2023                        /s/ Anthony Sculimbrene_____
Date                             Anthony Sculimbrene, Esq.


5/23/2023                        /s/ Richard Guerriero_____
Date                             Richard Guerriero, Esq.


5/12/2023                        /s/ Richard Maloney_____
Date                             Richard Maloney, Esq.

5/23/2023                          /s/ Margaret O'Brien
Date                               Margaret O'Brien, Esq.


5/15/2023                          /s/ Ashley Sheehan
Date                               Ashley Sheehan, Esq.


5/14/2023                          /s/ Christine List
Date                               Christine List, Esq.

## NEW HAMPSHIRE BAR ASSOCIATION
## BOARD OF GOVERNORS

### RESOLUTION

WHEREAS, the New Hampshire Constitution provides a right to counsel to those facing a loss of their liberty; and,

WHEREAS, New Hampshire RSA Chapter 604-B establishes the plan for appointment of counsel in indigent criminal cases and other circumstances; and,

WHEREAS, the above statute in subsection 604-B:4 authorizes the State, by and through the Judicial Council, (and with the approval of the Governor and Executive Council), to contract with an organization or group of attorneys to provide a Public Defender Program for the State of New Hampshire, so long as the organization or group meets with the approval of the New Hampshire Bar Association as a provider of indigent defense services; and,

WHEREAS, the New Hampshire Public Defender has requested such approval from the New Hampshire Bar Association; and,

WHEREAS, the Board of Governors of the New Hampshire Bar Association has considered this request of the New Hampshire Public Defender;

NOW THEREFORE, it is hereby resolved that the Board of Governors of the New Hampshire Bar Association gives its formal approval of the New Hampshire Public Defender as an organization created and operated to provide defense representation to indigent defendants in criminal cases, to indigent respondents against sexually violent predator petitions, to indigent defendants in capital-murder cases, and to indigent juveniles in delinquency proceedings, in the State of New Hampshire, for the period July 1, 2023 through June 30, 2025.

_May 18, 2023_
Date

_Jonathan Eck_, President
New Hampshire Bar Association

Client#: 1739328    NEWHAM16

**ACORD.**  **CERTIFICATE OF LIABILITY INSURANCE**

| | DATE (MM/DD/YYYY) |
|---|---|
| | 3/27/2023 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer any rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Michelle Arsenault | | |
|---|---|---|---|
| USI Insurance Services LLC | PHONE (A/C, No, Ext): 877 396-3800 | | FAX (A/C, No): 877-775-0110 |
| 12 Gill Street, #5500 | E-MAIL ADDRESS: michelle.arsenault@usi.com | | |
| Woburn, MA 01801 | | | |
| 855 874-0123 | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| | INSURER A : Selective Insurance Co of the Southeast | | 39926 |
| INSURED | INSURER B : CNA Insurance Companies ( Surety) | | A18313 |
| New Hampshire Public Defender Inc | INSURER C : | | |
| 10 Ferry Street, Suite 434 | INSURER D : | | |
| Concord, NH 03301 | INSURER E : | | |
| | INSURER F : | | |

| COVERAGES | CERTIFICATE NUMBER: | REVISION NUMBER: |
|---|---|---|

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | X COMMERCIAL GENERAL LIABILITY | | | S2444686 | 07/01/2022 | 07/01/2023 | EACH OCCURRENCE | $1,000,000 |
| | CLAIMS-MADE X OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $600,000 |
| | | | | | | | MED EXP (Any one person) | $5,000 |
| | | | | | | | PERSONAL & ADV INJURY | $ included |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $2,000,000 |
| | X POLICY PRO-JECT LOC | | | | | | PRODUCTS - COMP/OP AGG | $2,000,000 |
| | OTHER: | | | | | | | $ |
| A | AUTOMOBILE LIABILITY | | | S2444686 | 07/01/2022 | 07/01/2023 | COMBINED SINGLE LIMIT (Ea accident) | $1,000,000 |
| | ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | OWNED AUTOS ONLY SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | X HIRED AUTOS ONLY X NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| A | X UMBRELLA LIAB X OCCUR | | | S2444686 | 07/01/2022 | 07/01/2023 | EACH OCCURRENCE | $3,000,000 |
| | EXCESS LIAB CLAIMS-MADE | | | | | | AGGREGATE | $3,000,000 |
| | DED RETENTION $ | | | | | | | $ |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY Y/N ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | | | | | PER STATUTE OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |
| B | Lawyers Prof | | | LAS696604369 | 08/01/2022 | 08/01/2023 | 2,000,000 each claim 2,000,000 aggregate | |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| NH Judicial Council 25 Capital Street, Room 120 Concord, NH 03301 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | AUTHORIZED REPRESENTATIVE |
| | *[signature]* |

© 1988-2015 ACORD CORPORATION. All rights reserved.

ACORD 25 (2016/03)    1 of 1    The ACORD name and logo are registered marks of ACORD
#S39532416/M39532400    MZACV

81

Client#: 1739328    NEWHAM16

| _ACORD_™ | CERTIFICATE OF LIABILITY INSURANCE | DATE (MM/DD/YYYY)<br>6/13/2023 |
|---|---|---|

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer any rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Michelle Arsenault | | |
|---|---|---|---|
| USI Insurance Services LLC<br>12 Gill Street, #5500<br>Woburn, MA 01801<br>855 874-0123 | PHONE (A/C, No, Ext): 413-750-4407 | | FAX (A/C, No): 484-652-5167 |
| | E-MAIL ADDRESS: michelle.arsenault@usi.com | | |
| | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| | INSURER A : Technology Assigned Risk | | 42376 |
| INSURED | INSURER B : | | |
| New Hampshire Public Defender Inc<br>10 Ferry Street, Suite 434<br>Concord, NH 03301 | INSURER C : | | |
| | INSURER D : | | |
| | INSURER E : | | |
| | INSURER F : | | |

COVERAGES        CERTIFICATE NUMBER:        REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | COMMERCIAL GENERAL LIABILITY | | | | | | EACH OCCURRENCE | $ |
| | ☐ CLAIMS-MADE ☐ OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ |
| | ☐ POLICY ☐ PRO-JECT ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | OTHER: | | | | | | | $ |
| | AUTOMOBILE LIABILITY | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ OWNED AUTOS ONLY ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS ONLY ☐ NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ UMBRELLA LIAB ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ EXCESS LIAB ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED ☐ RETENTION $ | | | | | | | $ |
| A | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY Y / N<br>ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? [Y]<br>(Mandatory in NH)<br>If yes, describe under DESCRIPTION OF OPERATIONS below | | N / A | TARNH104357200 | 07/01/2022 | 07/01/2023 | ☒ PER STATUTE ☐ OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $500,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $500,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $500,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)
Randy Hawkes is excluded from Workers Comp Benefits

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| NH Judicial Council<br>25 Capital Street, Room 120<br>Concord, NH 03301 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.<br><br>AUTHORIZED REPRESENTATIVE<br>_Roger Duffy_ |

© 1988-2015 ACORD CORPORATION. All rights reserved.

ACORD 25 (2016/03)    1 of 1    The ACORD name and logo are registered marks of ACORD
#S40371542/M40371478                                    MZACV

This page has been left blank intentionally.

# New Hampshire Public Defender

10 FERRY STREET, SUITE 434 CONCORD, NH 033301                    TEL: (603) 224-1236

May 15, 2023



The New Hampshire Judicial Council
25 Capitol Street, Room 424
Concord, NH 03301-6312

Dear Executive Director Samdperil,

The Judicial Council has awarded the New Hampshire Public Defender the indigent defense contract for fiscal years 2024 and 2025. I am writing to confirm that NHPD will maintain general and professional liability insurance coverage through the duration of the FY24 and FY25 contract and will provide copies of certificates of liability insurance for each year of the biennium to the Judicial Council.

Please contact me with any questions.

Sincerely,

Sarah Rothman

Sarah Rothman, Esq.
Executive Director
NH Public Defender

New Hampshire Public Defender's Proposal
For Public Defender Services Pursuant to RSA 604-B

In response to the New Hampshire Judicial Council's
Request for Proposals Issued March 16, 2023

# New Hampshire Public Defender

10 FERRY STREET, SUITE 434 CONCORD, N.H. 03301          TELEPHONE: (603) 224-1236   FAX: (603) 227-9367

April 7, 2023

The New Hampshire Judicial Council
25 Capitol Street, Room 424
Concord, NH 03301-6312

Dear Council Members and Executive Director Samdperil:

For fifty years, New Hampshire Public Defender has dedicated itself to providing capable, reliable, and cost-effective indigent defense representation in our courts. New Hampshire Public Defender has worked continuously to earn the confidence placed in it by the Judicial Council to carry out its responsibilities with proficiency and efficiency. We respectfully submit this proposal with the hope and intention of securing the opportunity to continue this important work during the next two State Fiscal Years.

The enclosed proposal is submitted in formal response to the Request for Proposals released by the Judicial Council on March 16, 2023. Should NHPD be awarded the contract, you have my promise that our employees will work to preserve and enhance the program's reputation for hard-work, dedication to our clients, and cost-effectiveness.

As the authorized contract signatory for the New Hampshire Public Defender and the person responsible for binding the organization to the provisions of the proposal, I accept the following stipulations of the RFP:

**The bidder acknowledges that the bidder has read the N.H. Standard Form Contract, (Form P-37 1/2009), and all applicable exhibits and forms for a contract resulting from this RFP, understands them, agrees to all terms and conditions, (unless otherwise-mutually-agreed-upon terms supersede them), and if selected will provide all applicable exhibits and forms required to execute a contract with original signatures.**

Thank you for your consideration of this proposal. Please do not hesitate to contact me if you require additional information.

Sincerely,

Sarah Rothman, Esq.
Executive Director
NH Public Defender

Enclosure

2

Table of Contents

Cover Sheet                                                Page 1

Transmittal Letter                                         Page 2

Table of Contents                                          Page 3

Executive Summary of the Proposal                          Page 4

Bidder's Profile                                           Page 5

Subcontractor Profile                                      Page 6

Bidder Background and Experience                           Page 6

Detailed Response and Scope of Work                        Page 14

Cost Proposal                                              Page 27

List of Attachments                                        Page 28

Appendix A - Roster of Current NHPD Staff                  Page 30

Appendix B - Organizational Chart                          Page 33

Appendix C - Director Job Descriptions                     Page 35

Appendix D - Audited Financial Statements                  Page 51

Appendix E - Subcontractor Agreement                       Page 64

Appendix F - Resumes of Key Personnel                      Page 69

Appendix G - Certificate of Insurance                      Page 81

Appendix H - Letters of Reference                          Page 84

Appendix I - Certificate of Good Standing                  Page 90

## Executive Summary

Since 1985, the New Hampshire Public Defender has provided high-quality, cost-effective representation to members of our community accused of crimes. With ten trial offices throughout the state and an appellate defender office, NHPD attorneys represent indigent defendants and juveniles in every superior, circuit, and family court in the state, and at the Supreme Court. As a taxpayer-funded entity, NHPD has decades of experience in ensuring efficient and cost-effective operations, while providing zealous advocacy to every individual we represent.

The New Hampshire Public Defender is committed to providing the courts and people of New Hampshire with dependable and reliable appointed-counsel services in every eligible case arising in our criminal and juvenile justice systems. NHPD strives to accept every possible court assignment and declines representation only when our participation is precluded by the Rules of Professional Responsibility. The program undertakes a conscientious review of those rules and scrupulously analyzes their applicability to individual cases to maximize the number of court-appointed cases accepted.

Upon the effective date of July 1, 2023 (or upon final approval from the Governor and Executive Council), the New Hampshire Public Defender will continue to remain obligated and able to provide ongoing representation in approximately 11,000 open and active cases. NHPD is prepared to assume responsibility for the anticipated 23,000 new cases opened each fiscal year thereafter.

The New Hampshire Public Defender prioritizes our relationships with fellow stakeholders in New Hampshire's criminal justice system. Program attorneys and staff take care to cultivate strong working relationships with judges, court staff, prosecutors, police departments, and other community partners. NHPD meets or exceeds all professional standards promulgated by national institutions, including the American Bar Association and the National Legal Aid and Defender Association. Our staff undergoes substantial and ongoing training to ensure efficiency both for our clients and for our criminal justice partners.

The New Hampshire Public Defender will remain an active and responsive partner with the Judicial Council and the courts. Regular auditing of financial operations, vigorous monitoring of case intake and processing, and regular reporting to its Board of Directors and government officials will remain essential components of the New Hampshire Public Defender's systematic approach to oversight and supervision.

The Public Defender Program was founded to provide New Hampshire with a dependable, cost-effective means of meeting the constitutional and statutory mandate of providing counsel for the indigent accused. Throughout its 50-year history, NHPD has proudly fulfilled that role. In the coming biennium, NHPD will continue to maintain its tradition of quality advocacy and will continue to work with other stakeholders in the criminal and juvenile justice systems to assure that all citizens receive equal treatment before the bar of justice.

## Bidder Profile

New Hampshire Public Defender is a private, non-profit corporation whose sole purpose is to provide legal representation to indigent criminal defendants, to civil commitment respondents, and to children in delinquency proceedings throughout New Hampshire. The corporation is exempt from federal income tax under section 501(c)(3) of the Internal Revenue Code. NHPD carries professional liability insurance through Columbia Casualty Co., a member company of CAN Financial Group. Property and casualty insurance is provided through Selective Insurance Co of the Southeast.

The Public Defender Program's Articles of Incorporation state that the Board of Directors shall manage the business and affairs of the corporation. Up to six Board members are selected by the membership of the corporation. The three remaining positions on the Board are filled by action of the New Hampshire Bar Association's Board of Governors. The current membership of the Board of Directors is as follows:

| Name | Position | Address |
|---|---|---|
| Michael J. Iacopino | President | Brennan Lenehan Iacopino & Hickey 85 Brook Street Manchester. NH. 03104 |
| John Newman, Esq. | Secretary | Newman Law Office, PLLC 15 High Street Manchester, NH 03101 |
| Richard Guerriero, Esq. | Member | Lothstein Guerriero, PLLC Chamberlain Block Building 39 Central Square, Suite 202 Keene, NH 03431 |
| Margaret "Peg" O'Brien, Esq. | Member | McLane Middleton 900 Elm Street Manchester, NH 03101 |
| Ashley Sheehan, Esq. | Member | Tarbell & Brodich, PA 45 Centre Street Concord, NH 03301 |
| Dorothy Graham, Esq. | Member | Federal Defender 22 Bridge St. Concord, NH 03301 |
| Anthony Sculimbrene, Esq. | Member | Gill and Sculimbrene 142 Main Street, Suite 16 Nashua, NH 03060 |
| Christine List, Esq | Member | Reis & O'Keefe, PLLC 500 Market Street, Suite 16B Portsmouth, NH 03801 |
| Richard Maloney, Esq. | Member | Maloney & Kennedy, PLLC 15 Dartmouth Dr # 203 Auburn, NH 03032 |

The Board of Directors appoints an Executive Director who serves as the principal executive officer of the Corporation and subject to the direction of the Board of Directors, supervises and

controls the business and affairs of the Corporation.

The Program employs a total of 245 employees, 133 of whom are attorneys who provide direct representation in appointed cases. The balance of the staff consists of investigators, social workers, treatment coordinators, legal assistants, office assistants, receptionists, and information technology specialists. A small administrative team, located in Concord, provides managerial oversight to all program operations.

A complete roster of all current staff members of NHPD is attached as Appendix A.

An organization chart is attached as Appendix B. Job descriptions for the Program's director-level positions are attached as Appendix C.

### Bidder's Financial Reports

New Hampshire Public Defender's Audited Financial Reports for the past two fiscal years are attached as Appendix D.

### Subcontractor Profile

NHPD reserves its right pursuant to RSA 604-8:4 to subcontract work if subcontracting becomes necessary. NHPD will notify the Judicial Council in advance when the Program plans to subcontract services. NHPD will subcontract only with attorneys whose professionalism, competence and level of expertise are commensurate with the level of cases for which the subcontractor's services are engaged. Subcontractors will be utilized primarily when an NHPD office is understaffed and geography prohibits another NHPD office from providing relief. When NHPD attorneys are temporarily unavailable to take cases (e.g. family/medical leave) or have left the Program through resignation or termination, subcontractors may be engaged to cover a specific case level or to take a mixed caseload. Cases will be assigned by the Managing Attorney of the affected office; and all subcontractors' performance will be monitored by the Executive Director. Subcontractors will be paid at the Contract Attorney rate established by the Judicial Council. A copy of the agreement used to retain subcontractors is attached as Appendix E.

### Bidder Background and Experience

*Overview*

From its inception as a pilot project of New Hampshire Legal Assistance in 1972, through incorporation as a stand-alone institution in 1985, and more than three subsequent decades of growth, the New Hampshire Public Defender Program has worked diligently to earn its reputation for reliably providing effective representation to the indigent accused in a cost-effective manner. Each succeeding generation of Public Defenders inherits an inspiring and challenging legacy. We are always mindful that, as a taxpayer-funded institution, our performance is measured by efficiency as well as quality.

Over the years NHPD has extended its geographical coverage and steadily increased its share of the state's indigent defense caseload. Since 1997, the Public Defender Program has provided

every New Hampshire court with access to capable attorneys for the indigent accused. NHPD now maintains ten trial offices to cover each of the ten counties of New Hampshire. NHPD accepts every possible court assignment and declines representation only when our participation is precluded by the Rules of Professional Responsibility.

NHPD provides representation in juvenile, misdemeanor, felony, and homicide-level cases. NHPD attorneys provide representation at incarcerated felony arraignments in every county of the state. In addition, we represent clients in court-appointed post-conviction matters, including parole violations, violations of probation, sentence-related hearings, and appeals to the New Hampshire Supreme Court. NHPD also provides representation in civil commitment proceedings.

The Public Defender Program has a history of working with the courts and with other government agencies in efforts aimed at improving the delivery of indigent defense services and containing costs. NHPD's administration has collaborated with the Administrative Judges of the New Hampshire Circuit and Superior Courts to bring greater efficiency to the appointment process for all assigned cases. In collaboration with the Judicial Council, NHPD maintains the Conflict Case Administrator Office to assure the prompt assignment of private counsel for clients whose cases present a conflict of interest for NHPD.

The Program is centrally administered by an Executive Director, a Director of Finance, a Director of Legal Services, a Director of Litigation, a Director of Client Services, a Director of Professional Development, and a Director of Administrative Services. The directors provide oversight of all aspects of the Program's operations. Additionally, with the exception of the Director of Finance, all Program directors maintain reduced caseloads to offer assistance to NHPD offices with high caseloads and to aid in professional development of staff attorneys through co-counseling. Branch offices are managed by experienced attorneys who also carry caseloads. This combination of a central administration and local office management enables the Program to maximize the efficiency of its operations by deploying resources where they are needed and ensures close supervision of attorney performance.

*What knowledge and experience does the Bidder have specifically regarding providing indigent defense representation in all levels of case type and complexity?*

NHPD possesses a vast reservoir of institutional knowledge regarding all aspects of indigent defense representation. Because the Program provides counsel in matters ranging from juvenile delinquencies and simple misdemeanors to felony sexual assaults and homicides, we employ attorneys with a range of experience levels to handle cases of varying levels of complexity. As staff attorneys gain experience, they are called upon to handle increasingly more difficult and challenging cases. NHPD is fortunate to employ many attorneys who have attained a degree of proficiency that allows them to handle even the most complex criminal cases.

No group of attorneys tries more cases in New Hampshire than the Public Defender Program. In an average year, NHPD attorneys handle 100 or more jury trials. More than half of trials result in acquittals, dismissals, or convictions on less serious charges. No organization does more to

influence and improve the quality of trial practice in New Hampshire's Superior Courts than NHPD through its training, mentoring, and supervision.

NHPD attorneys have been a consistent and active participant in many criminal justice committees and initiatives. NHPD attorneys have served on The Interbranch Criminal and Juvenile Justice Council, the Judicial Performance Evaluation Advisory Committee, the NH Supreme Court Professional Conduct Committee, the NH Supreme Court Access to Justice Commission, the NH Supreme Court Board of Bar Examiners, the NH Supreme Court Rules Committee, the NH Bar Association's Board of Governors, the NH Bar Association's Professionalism Committee, the NH Bar Association's Committee on Cooperation with the Courts, and the NH Bar Association's Continuing Legal Education Committee.

Homicide and capital murder representation

NHPD represents all indigent criminal defendants facing homicide charges in New Hampshire courts other than those in which representation is precluded by the Rules of Profession Conduct. The Program provides court clerks with ready access to qualified attorneys who appear on short notice at the arraignment of someone arrested on a murder charge. In addition to identifying, recruiting, and preparing attorneys to serve as lead and co-counsel in homicide cases, the Program also conducts training and case conferencing for the attorneys with homicides on their caseloads, and provides ongoing support for the lawyers doing this difficult work. A large number of NHPD attorneys have provided representation in a homicide case as lead counsel or as co-counsel.

The Public Defender Program employs attorneys with experience and expertise in providing capital murder defense representation. Though the death penalty was repealed in 2019, RSA 630:1, New Hampshire's Capital Murder statute, imposes a sentence of life without the possibility of parole in homicides involving seven enumerated qualifying conditions. The magnitude of time and effort required to provide an adequate defense in a capital murder case is of an entirely different order when compared to other criminal cases, including other homicides. Should the death penalty be reinstated during the biennium, and if NHPD were to be called upon to provide representation in such a capital case in State Fiscal Years 2024 or 2025, the price limitations of the Program's contract with the State will be amended by agreement.

Juvenile representation

NHPD provides representation to all juveniles facing delinquency proceedings in New Hampshire other than those in which representation is precluded by the Rules of Profession Conduct. In addition to representing youth at adjudicatory hearings, NHPD attorneys appear at juvenile arraignments if appointed by the court prior to arraignment and at pretrial detention hearings initiated by the state under RSA 169-B:14. NHPD also provides representation to every youth committed to the Sununu Youth Services Center (SYSC) for the duration of their commitment. This includes representation before the Juvenile Parole Board. NHPD maintains an SYSC Specialist attorney to represent youth committed to SYSC and to assist colleagues with issues related to commitment.

Additionally, NHPD attorneys represent youth facing certification as adults pursuant to RSA 169-B:24. Litigation surrounding certification proceedings is complex. NHPD is fortunate to employ several attorneys with expertise in this challenging and specialized area of law.

### Specialty court representation

NHPD administration and attorneys have been instrumental in the collaborative efforts to establish and maintain innovative alternative criminal justice programs such as drug courts, mental health courts, diversion programs, early case resolution systems, community corrections programs, and therapeutic communities in corrections facilities. These specialty courts have proven successful in numerous jurisdictions around the state. Continued success and expansion of these programs require the participation of defense counsel who understand the objectives of the programs and who possess the specialized knowledge necessary to help achieve those objectives. Having been instrumental in the planning and design of many of these initiatives, NHPD has the requisite institutional knowledge to assure their success.

As specialty court programs have expanded statewide, more NHPD lawyers are participating as members of the courts' teams. The Indigent Defense Subcommittee of the Judicial Council has expressed support for these initiatives and has urged the Public Defender Program to accommodate the expansion of these programs. Accordingly, NHPD attorneys will continue to be involved in the creation and operation of these specialty courts across the state.

### Civil commitment representation

From the inception in 2006 of the law permitting the State to seek the involuntary civil commitment of people found to be dangerous sexual predators, the New Hampshire Public Defender has spearheaded the efforts to provide knowledgeable and competent defense representation to respondents in these cases. During the existence of this law, Public Defender attorneys have represented nearly every respondent in these proceedings. NHPD employs a designated attorney who maintains a concentration in the civil commitment process. Her specialized knowledge enables her to mentor and supervise attorneys who are assigned as co-counsel in civil commitment cases.

### Appellate representation

NHPD appellate attorneys provide high-quality representation to nearly all of the indigent criminal appellants in the New Hampshire Supreme Court. The Appellate Defender Office employs two full-time attorneys. Two additional experienced attorneys split their caseload between appellate and trial work. Over several decades, NHPD appellate attorneys have formed a strong working relationship with the New Hampshire Supreme Court. Through their zealous advocacy for their clients, NHPD appellate attorneys have played a crucial role in shaping case law in the State of New Hampshire.

### Investigators, social service advocates, and treatment coordinators

To provide effective representation and to comply with criminal justice standards, attorneys are

9

required to investigate allegations made against their clients. NHPD employs investigators to locate and interview witnesses, photograph and diagram crime scenes, prepare exhibits for trial, subpoena necessary witnesses, gather records, coordinate with expert witnesses, conduct social media research, and collect surveillance footage, among other tasks.

Increasingly, judges and prosecutors look to NHPD to help clients access treatment. NHPD therefore employs social service advocates and treatment coordinators to help clients access treatment for substance use disorders and mental health issues. Treatment coordinators focus on helping incarcerated clients access treatment. This assistance is provided as it relates to the client's pending criminal case, such as to comply with a bail condition, at the request of a prosecutor to facilitate a plea agreement, or to prepare for a contested sentencing hearing. NHPD employs two social service advocates who hold a master's degree in social work. These social service advocates are able to supervise student interns working to obtain either a bachelor's or master's degree in social work, thus providing an additional resource for NHPD clients. Social service advocates also prepare social histories of clients to assist judges in determining appropriate sentences.

*What knowledge and experience does the bidder have specifically regarding the training, on-going supervision and development of quality control for staff required to provide services within the scope of the RFP?*

For fifty years, the Public Defender Program has recruited, cultivated, and retained attorneys dedicated to providing quality representation for indigent juvenile respondents and criminal defendants. NHPD hires intelligent, motivated law school graduates and fosters their development through formal training, mentoring, and supervised practical experience.

NHPD employs experienced attorneys who have the expertise and training to handle the most complex and difficult cases in the criminal justice system. NHPD's Managing Attorneys take care to match an attorney's skill and experience with the appropriate level of case assignments.

The Program utilizes regular performance evaluations to gauge attorney work product, evaluate professional development, and to prepare attorneys for more difficult cases. The Director of Professional Development works closely with Managing Attorneys and Assistant Managing Attorneys to ensure performance evaluations of all attorneys occur regularly, with increased frequency for attorneys in their first year of practice. The Director of Professional Development supports Managing Attorneys and Assistant Managing Attorneys in improving performance of attorneys outside of annual evaluations as needed.

The Director of Client Services works with Managing Attorneys to conduct regular performance evaluations of investigators, social service advocates, and treatment coordinators. The Director of Administrative Services conducts regular performance evaluations of Office Administrators and works with Office Administrators to ensure they conduct regular performance evaluations of support staff members.

When lawyers begin working at NHPD, they undergo five weeks of intensive, in-house training. New Lawyer Training includes lectures, exercises, observation, and critiques. Areas of

10

instruction encompass an overview of the NH criminal justice system, juvenile law and practice, common misdemeanors, DWI and other motor vehicle offenses, client relations, negotiations, bail, motions practice, competency and other mental health issues, substance use disorder issues and treatment options, evidence, and ethics.

New Lawyer Training also incorporates trial skills training led by the Program's Trial Skills Team. The Trial Skills Team consists of a select group of experienced attorneys with significant trail experience who develop extensive training materials and practical exercises for New Lawyer Training. The Team works with the new lawyers throughout the five-week New Lawyer Training program, culminating in an intensive three-day workshop of practical exercises to conclude New Lawyer Training. The Trial Skills Team then conducts periodic trainings for new lawyers throughout their first year of practice.

In addition to working with new lawyers, the Trial Skills Team also conducts training for mid-range and experienced attorneys on an ongoing basis on various topics related to trial practice. NHPD added the Director of Professional Development position in September of 2022. Since his appointment, the Director of Professional Development has created a training calendar to ensure that NHPD is offering training to attorneys at least once per month.

Every fall, NHPD holds a full-day training for all staff. Separate trainings are prepared for support staff, investigators and social service advocates, and attorneys on a range of topics, including ethics. Each spring, NHPD holds a day-long training for attorneys on a range of topics, including ethics. These semi-annual trainings include presentations from NHPD staff and from attorneys and other experts outside of NHPD.

The Program works to ensure attorneys are trained in juvenile law practice, as representation of youth varies greatly from representation of adults. NHPD provides in-house training on youth law topics and also frequently sends attorneys to trainings offered by The Gault Center (formerly the National Juvenile Defender Center).

NHPD attorneys are also supported by the newly formed Youth Law Practice Group. Overseen by the Director of Litigation, the Youth Law Practice Group consists of attorneys with passion and experience in juvenile practice who make themselves available to answer questions, help draft pleadings, help prepare for adjudicatory and other significant hearings, hold regular conferences among staff attorneys to pose and answer questions related to cases, and co-counsel complex juvenile cases.

Over the next year, the Director of Litigation and the Director of Client Services plan to create and supervise additional practice groups to offer support to attorneys and investigators in additional areas of specialty and complexity. Practice group members devote significant time to assisting their colleagues, in addition to carrying a full caseload of various case types.

NHPD supports the participation of the private bar in New Hampshire's indigent defense delivery system. NHPD provides training and legal resource materials to members of the private defense bar who accept court-appointed cases and is committed to continuing to do so. Contract attorneys are invited annually to attend NHPD's spring full-day training.

11

In addition to in-house trainings, NHPD frequently provides staff with opportunities to attend trainings outside of NHPD. NHPD has sent attorneys, investigators, and other staff to trainings put on by the National Association of Public Defenders, the National Criminal Defense College, the National Association of Criminal Defense Lawyers, the New Hampshire Association of Criminal Defense Lawyers, and National Defense Investigator Association, among many other organizations.

NHPD expects experienced attorneys to share resources and skills that they have developed in particular practice areas. Program attorneys are encouraged to attend national CLE programs that feature respected authorities addressing relevant practice areas. Those attorneys are then expected to consult with other program attorneys working on the same issues, to conduct trainings (either for small groups or for the entire program), and to respond to questions relating to the particular practice area. Materials and resources generated through these efforts are preserved on the Program's internal website and in the Program's Practice Guide.

Individual mentors are assigned to new public defenders for a minimum of one year. The Program goes to great lengths to match trained mentors with less-experienced attorneys in effective pairings. The mentors are expected to closely supervise the new lawyers during their first year. The Program sets high expectations for the performance and accessibility of the mentors. Though a particular attorney may be assigned as a mentor, the mentor will not be the exclusive resource for a new lawyer. NHPD has a strong tradition of cooperation and collaboration among its attorneys; therefore, many colleagues will play some role in a new lawyer's professional development.

Managing Attorneys closely monitor caseloads to ensure that the complexity and size of each staff attorney's caseload is commensurate with the attorney's training and experience. The Managing Attorney, or Assistant Managing Attorney in larger offices, observes court appearances of all attorneys in the office, arranges for experienced attorneys to co-counsel cases with less experienced practitioners, conducts weekly conferences among staff attorneys to pose and answer questions related to cases, and regularly consults with mentors regarding attorneys' professional development.

*What knowledge and experience does the Bidder have related to identifying and calculating the cost effectiveness of indigent defense representation costs?*

NHPD has decades of experience in preparing budgets and forecasting expenses related to the cost of providing indigent defense representation. Financial operations of the program are overseen by the Executive Director and the Director of Finance. The Executive Director and Director of Finance meet quarterly to review financial reports with the Finance Committee of the NHPD Board of Directors. Quarterly reports concerning the program's revenues and expenditures are delivered to the Judicial Council, the Attorney General, the Governor, and the Executive Council.

The Director of Finance works closely with the Executive Director to project funding required to

meet future staffing and legal services estimates. The Director of Finance works closely with the Executive Director to establish strategic planning goals and prepare NHPD's biennial operating budget. The Director of Finance develops the statistical and financial information necessary for NHPD to effectively project and analyze the Program's budget. She reviews and analyzes program expenditures against budgeted expenses at least monthly and implements cost-saving measures or controls where needed. She regularly reviews NHPD salary scales against benchmark agencies and make recommendations for adjustments to the Executive Director and Board of Directors.

The Director of Finance has implemented rigorous internal controls and financial reporting procedures to safeguard the integrity of NHPD's financial operations and the security of its assets.

NHPD Directors routinely search for and obtain grant funding to offset Program costs. In the last biennium, NHPD obtained two grants of significant value. We applied for and received a grant from the U.S. Department of the Treasury from the Coronavirus State and Local Fiscal Recovery Fund to recruit and hire lateral attorneys. We applied for and received a grant from the US Department of Justice, Office of Justice called the Edward Byrne Memorial Justice Assistance Grant to hire social workers. NHPD recently reapplied for this grant and we were approved for another sum. NHPD will continue to diligently seek out grant funding to supplement our funding.

NHPD is keenly aware and continually mindful of its role in maintaining the efficiency and cost-effectiveness of the overall indigent defense system in New Hampshire. To that end, the Program does everything in its power to assure that we accept every possible appointment and remain in every case through disposition.

NHPD never stops thinking about ways that we might achieve greater efficiencies from our operations while remaining true to our mission of providing quality representation to the indigent accused. The Program is continuously engaged in reviewing the systemic means by which it delivers client services. The Program implements its own ideas for improvement and is always open to initiatives proposed by others that may enhance the delivery of quality indigent defense services.

NHPD never stops thinking about ways to contain costs. By readjusting the configuration of office/court coverage, the Program utilizes attorneys more efficiently and saves on travel expenses. The Program contracts with the lowest-cost/best service internet and telephone providers, lowers its requisite number of servers through virtualization and consolidation, and updates its technology to gain efficiencies and save money. By investing in technology in the current biennium, the program assures itself of savings in the coming biennium and for years to come.

## Resumes of Key Personnel

The resumes of the following Directors are attached as Appendix F:

Sarah Rothman, Executive Director
Amy Mailhot, Director of Finance
Catherine Flinchbaugh, Director of Legal Services
Meredith Lugo, Director of Litigation
Mary Hawkes, Director of Client Services
Kyle Robidas, Director of Professional Development
Jennifer Uhouse, Director of Administrative Services

## Detailed Response and Scope of Work

### Supervision and management plan

The Public Defender Program is overseen by a Board of Directors. The Program's Articles of Incorporation empower the Board to manage the business and affairs of the corporation. The Board appoints an Executive Director to carry out the obligations associated with operating a large public interest law firm. The Executive Director is responsible of all aspects of the Program's legal and administrative operations.

The day-to-day operations of the Public Defender Program are overseen by the Executive Team, comprised of the Executive Director, the Director of Finance, the Director of Legal Services, the Director of Litigation, the Director of Professional Development, the Director of Administrative Services, and the Human Resources Manager. Job descriptions for the Program's director-level positions are attached as Appendix C and are summarized here:

### *Executive Director, Sarah Rothman*
The Executive Director provides leadership to ensure outstanding quality of representation for our clients, to ensure the needs of staff are met, and to ensure that NHPD operates efficiently, innovatively, and inclusively. She works closely with the NHPD Board of Directors and other members of the executive team to establish strategic planning and goals for the program. She ensures that caseload and other statistical reports are provided to the Judicial Council as required and requested. She provides direct supervision of all program directors and of the IT and HR managers. The Executive Director maintains open communication with the Judicial Council and Indigent Defense Subcommittee, members of the NH Judicial Branch, prosecutor offices, and with other criminal justice stakeholders.

### *Director of Finance, Amy Mailhot*
The Director of Finance works closely with the Executive Director to project funding required to meet future staffing and legal services estimates. With the Executive Director, she establishes strategic planning goals and prepares NHPD's biennial operating budget. The Director of Finance develops the statistical and financial information necessary for NHPD to effectively project and analyze the Program's budget. She reviews and analyzes program expenditures against budgeted expenses at least monthly and implements cost-saving measures and controls. The Director of Finance maintains rigorous internal controls and financial reporting procedures to safeguard the integrity of NHPD's financial operations and the security of its assets. She prepares and submits various census and compliance forms to state and federal agencies.

*Director of Legal Services, Catherine Flinchbaugh*
The Director of Legal Services focuses on ethical issues, caseload management, and relationships both between attorneys and clients, and among NHPD staff members. She works closely with members of the executive team to resolve employee relation issues. She serves as final arbiter for all conflict of interest resolutions involving potential withdrawal or refusal of cases. The Director of Legal Services provides training to Managing Attorneys, Assistant Managing Attorneys, and neutral attorneys regarding conflict policies and practices and trains neutral attorneys. She works closely with Office Administrators, Managing Attorneys, Assistant Managing Attorneys, and neutral attorneys to ensure consistent implementation of NHPD's conflict policies. She handles all ineffective assistance of counsel claims, coordinates handling of all status of counsel claims in major felony cases, and handles complaints involving the Attorney Discipline Office. She facilitates trainings related to ethical issues. With other members of the executive team, the Director of Legal Services monitors attorney caseloads statewide. She provides support and supervision to Managing Attorneys and Assistant Managing Attorneys.

*Director of Litigation, Meredith Lugo*
The Director of Litigation is broadly tasked with ensuring that the Program's attorneys are well-positioned to protect the rights of indigent defendants. She works collaboratively with staff to ensure that litigation resources are maintained and kept up to date, including a motion bank, practice guide, expert directory, and sentence comparison compilations. She directly supports program attorneys by providing case-specific advice and hands-on litigation assistance when called upon. She is utilized by staff attorneys as a resource for legal questions, motion writing, and trial preparation. She is directly involved in complex litigation, litigation involving novel issues, and litigation having policy implications for the Program. The Director of Litigation is responsible for overseeing all homicide cases. This includes assigning homicide cases to staff attorneys, holding regular case conferences for homicides, and communicating regularly with attorneys assigned to homicide cases to provide support as needed. She develops and supervises attorney practice groups, which provide support to staff attorneys on various specific areas of law. She maintains case conferences in specialized areas of law.

*Director of Client Services, Mary Hawkes*
The Director of Client Services ensures indigent defendants and their attorneys have access to necessary investigation and social service resources to ensure high quality representation. She ensures all NHPD investigators, social service advocates, and treatment coordinators have access to comprehensive support, training, and professional development opportunities. She monitors investigator, social service advocate, and treatment coordinator caseloads statewide to ensure proper staffing in the NHPD offices. The Director of Client Services is responsible for recruiting and hiring new and lateral investigators, social service advocates, and treatment coordinators. She maintains the investigator and social service advocate internship programs. She supervises and evaluates investigators, social service advocates, and treatment coordinators and facilitates trainings. She develops and supervises investigator practice groups, which provide support to attorneys and investigators on various specific areas of investigation practice.

*Director of Professional Development, Kyle Robidas*
The Director of Professional Development works to ensure NHPD is hiring, training, and retaining exceptional attorneys to represent our clients. He coordinates attorney and intern

recruitment efforts, including developing and implementing strategies to increase diversity recruitment. The Director of Professional Development creates and maintains training programs for staff attorneys, including: semi-annual trainings for all staff; new lawyer training, including the fall program and periodic follow-up trainings during attorneys' first year; the trial skills team; training for practice group attorneys and other trainings on advanced and/or specialized topics; and training for attorneys who serve as mentors to interns and new lawyers. He facilitates opportunities for staff attorneys to attend out-of-program trainings. The Director of Professional Development ensures regular performance evaluations of staff attorneys and provides professional development support to staff attorneys. The Director of Professional Development also supports Managing Attorneys and Assistant Managing Attorneys in improving performance of attorneys outside of annual evaluations as needed.

### Director of Administrative Services, Jennifer Uhouse

The Director of Administrative Services is responsible for ensuring efficient and effective support for the program's attorneys. She provides oversight of the day-to-day operations of the support staff, including direct supervision of Office Administrators. She conducts performance evaluations of Office Administrators and ensures performance evaluations of support staff are routinely conducted by Office Administrators. She monitors and evaluates staffing levels for support staff and is responsible for recruiting and hiring of support staff. She works closely with NHPD's IT department to identify and implement technological efficiencies to reduce NHPD's administrative costs. She facilitates training for support staff, including neutral training and training to Office Administrators on screening cases received from the court for conflicts. The Director of Administrative Services provides supervision and support to the Conflict Case Administrator office to assure the prompt assignment of private counsel for clients whose cases present a conflict of interest for NHPD.

### Human Resources Manager, Jillian Mulrooney

The HR Manager oversees NHPD's benefits programs, including medical/dental/vision, short-term and long-term disability, life insurance, workers' compensation, flexible spending, and employee- assistance programs. She executes policy and recordkeeping requirements related to NHPD's sick leave, worker compensation, disability insurance, and other employee benefits as appropriate. She ensures compliance with all state and federal labor and employment regulations, including ERISA, COBRA, and FMLA. She prepares government reports related to EEO compliance, safety programming, creditable health insurance coverage and other HR functions. The HR Manager monitors adherence to all internal policies and legal standards.

With the exception of the Director of Finance and the Human Resources Manager, all members of the executive team maintain a limited caseload and provide direct client representation. We believe it is vital for members of the executive team to remain connected to our clients and our mission through client representation.

Each of NHPD's ten trial offices has a Managing Attorney who directly supervise the staff attorneys, investigators, and legal secretaries working in their respective offices. Trial offices with ten or more attorneys have an Assistant Managing Attorney for New Lawyers, who focus on supervising and supporting lawyers in their first three years of practice with NHPD. Trial offices with twenty or more attorneys have an Assistant Managing Attorney for Litigation, who

16

focus on providing litigation support on county-specific issues.

Managing Attorneys and Assistant Managing Attorneys handle significant caseloads and appear in court daily on behalf of clients. Managing Attorneys conduct regular evaluations of attorney performance. They monitor staff attorney workloads and assign new cases on intake. Managing Attorneys have the primary responsibility for ensuring that the attorney assigned to represent a client has the requisite knowledge and skill to provide competent representation, as well as the time and resources necessary to render effective assistance to their clients. Accordingly, the Managing Attorneys play a critical role in ensuring the quality of the work performed by the Public Defender Program.

The individual branch offices are overseen by the following attorneys:

| Office | Managing Attorney | Joined NHPD | Law School |
|---|---|---|---|
| Appellate Defender | Chris Johnson | 2001 | Harvard Law School |
| Concord | Alexander Vitale | 2016 | UNH School of Law |
| Dover | David Betancourt | 2002 | University of Maine School of Law |
| Keene | Alexander Parsons | 2005 | Yale Law School |
| Laconia | Justin Littlefield | 2013 | UNH School of Law |
| Littleton | Jay Duguay | 2011 | UNH School of Law |
| Manchester | Andrea Bonito | 2007 | Boston University School of Law |
| Nashua | Pamela Jones | 2008 | New England School of Law |
| Newport | Benjamin St. Pierre | 2017 | University of Michigan School of Law |
| Orford | Margaret Kettles | 2018 | Harvard Law School |
| Stratham | Deanna Campbell | 1999 | New England School of Law |

New Hampshire Public Defender solicits applications each year from third-year law school students seeking positions as staff attorneys. All applicants must be J.D. degree candidates attending an ABA approved law school. The Program conducts first-round interviews at several job fairs.; telephonic interviews with viable candidates who file applications through the Program's website; and panel interviews at our administrative office for the most promising applicants. Members of the Program's hiring committee evaluate the finalists and make offers to the best candidates.

Newly hired Public Defenders must either be members of the New Hampshire Bar or pass the next available Bar examination. Prior to being admitted to the NH Bar, new hires qualify to practice under the provisions of N.H. Supreme Court Rule 36. They are at-will employees who will be expected to work full-time in one of the Program's regional offices.

Performance evaluations of all attorneys occur on the following schedule: four months after joining NHPD; seven months after joining NHPD; one year after joining NHPD; annually for attorneys in their second through eighth years of practice at NHPD; ten years after joining NHPD; and once every three years for attorneys with more than ten years of experience at

17

NHPD. The Director of Professional Development also provides support to Managing Attorneys and Assistant Managing Attorneys in addressing performance issues relating to attorneys outside of annual evaluations as needed.

## Caseload plan

The New Hampshire Public Defender Program shall provide defense representation to any eligible indigent defendant in the Family Court, District Court, Superior Court or Supreme Court at all stages of criminal proceedings, delinquency proceedings, and respondents in involuntary commitment of dangerous persons pursuant to RSA 135-E. The Public Defender Program will provide such other representation as is necessary and consistent with normal criminal defense as required by the provisions of the United States and New Hampshire Constitutions. Representation will be provided in accordance with the following:

NHPD shall not represent any individual when doing so would violate the New Hampshire Rules of Professional Responsibility.

In determining caseload limitations for its attorneys, NHPD looks for guidance to standards promulgated by nationally recognized professional bar organizations. In 1973 the National Advisory Commission on Criminal Justice Standards and Goals recommended that public defender caseloads be set at no more than 150 felonies, or 400 misdemeanors, or 200 delinquencies, or 25 appeals per attorney per year. Limitations would be applied proportionally to attorneys carrying a mixed caseload. Those limitations have been endorsed by the National Legal Aid and Defender Association and the National Association of Criminal Defense Attorneys.

NHPD subscribes to The American Bar Association's position that, while those "national guidelines" should not be exceeded, defense counsel's workload should be controlled in such a way as to permit the rendering of quality defense. (See ABA commentary to Principle 5 of the ABA's Ten Principles of a Public Defense Delivery System). The ABA suggests that the caseload standards are simply guides to what may be a reasonable caseload, on average, for public defender programs. (See generally, The American Bar Association's Standing Committee on Legal Aid and Indigent Defendants publication "Securing Reasonable Caseloads, Ethics and Law in Public Defense").

The ultimate measure of what constitutes the appropriate composition of an attorney's caseload is whether the attorney has sufficient time to meet with all clients, review all discovery (including audio and video evidence), conduct all necessary investigation, consult with experts when necessary, file appropriate motions and conduct pretrial litigation, attend pretrial conferences and other hearings, explore diversion or treatment options, negotiate with prosecutors, and prepare adequately for trial.

The following numeric caseload limitations shall be considered but will not be the sole factor in determining whether an individual attorney's workload is excessive. The Program's Managing Attorneys and Directors shall consider additional factors such as attorney experience level, pace at which cases resolve in the jurisdiction, the impact of any backlog resulting from a slowing of

case processing in the courts, the mix of case-types in an attorney's caseload, complexity of litigation in an attorney's cases, and any other factors affecting the ability to provide quality representation.

Full-time attorneys providing general felony, misdemeanor, and juvenile delinquency representation shall maintain a caseload of not more than 70 open and active cases. This caseload shall be a mixture of felony, misdemeanor, juvenile, and other cases with maximums in each of these categories fixed as follows:

(a)     Felony Maximum - 35 cases
(b)     Misdemeanor Maximum - 35 cases
(c)     Juvenile Delinquency Maximum - 20 cases
(d)     Other Cases - 15 cases

In addition to considerations previously mentioned, the mix of cases for each attorney shall be determined by the Program's Directors in conjunction with the Managing Attorneys based upon the concentration of the case types in the geographic area served by each office of the Program.

Homicide Representation: The Public Defender Program shall assign two attorneys to represent individuals charged with homicide offenses (first- and second-degree murder and manslaughter). At least one of the lawyers shall possess previous homicide-case experience.

Sexually Violent Predator Representation: The Public Defender Program shall assign two attorneys to represent individuals facing civil commitment as sexually violent predators pursuant to RSA 135-E.

Caseloads of staff attorneys who carry more than one open and active homicide or civil commitment case at any one time shall be adjusted in accordance with the complexity and demands of the homicides or civil commitment cases.

Attorneys in the Appellate Defender Office shall carry a caseload that permits the production of not more than two full appellate briefs every month.

In the previous biennium, the COVID-19 pandemic created a backlog of cases. Additionally, NHPD faced unprecedented attrition of staff attorneys, due in part to the pandemic. These factors combined to create unsustainable caseload levels for NHPD attorneys. Because we must ensure that every defendant receives high-quality, effective assistance of counsel, we were forced to work with the Judicial Council to develop a caseload reduction plan. With the approval of the Judicial Council, NHPD continued to accept appointments from the courts, but placed certain categories of cases on hold to be assigned to an attorney when caseloads allowed. This caseload reduction plan was instituted in December of 2021 and is ongoing.

Previously, eight of NHPD's ten trial offices maintained a hold list of varying lengths. Currently, only three NHPD trial offices maintain a hold list. In two of the three offices, the hold list consists of 50 or less misdemeanor cases. From April of 2022 through July of 2022, approximately 1,000 cases were on hold awaiting assignment to an attorney. The administration

of the Program changed in August of 2022. The new administration prioritized reducing the hold list and worked closely with Managing Attorneys to develop strategies to do so. Since appointment of the new administration, the hold list has been reduced from over 1,000 cases to approximately 450 cases, due to the dedication of all NHPD staff. The bulk of the remaining hold list arises from Merrimack County, where attorney attrition has been significant and, unfortunately, ongoing. Currently, only one Superior Court in the state is impacted by the hold list, and only four Circuit Courts are impacted by the hold list. NHPD is acutely aware that even one court, or one defendant, impacted by the hold list is too many. NHPD is committed to continuing its efforts to reduce and eliminate the hold list.

After the current caseload reduction plan is dissolved, if NHPD contemplates temporarily reducing or closing intake of new cases because of excessive caseloads, the Program's Executive Director shall consult with the Executive Director of the Judicial Council prior to taking any action.

Staffing level plan

In carrying out this caseload plan, the Public Defender Program will employ no fewer than the following number of attorneys in each jurisdiction:

| Office | Counties Serving | Minimum Number of Attorneys |
|--------|------------------|------------------------------|
| Appellate | Statewide | 3 |
| Concord | Merrimack | 20 |
| Dover | Strafford | 13 |
| Keene | Cheshire | 7 |
| Laconia | Belknap & Carroll | 11 |
| Littleton | Coos & Grafton | 4 |
| Manchester | Hillsborough | 26 |
| Nashua | Hillsborough | 18 |
| Newport | Sullivan | 4 |
| Orford | Grafton | 6 |
| Stratham | Rockingham | 20 |

NHPD will continue to employ adequate numbers of support staff and information technology specialists to ensure the efficient operation of all NHPD offices throughout the state. The Program will employ a minimum of one legal assistant for every four attorneys. The Program will employ office assistants and receptionists as necessary to assure the efficient and smooth operation of each office. The Program will employ one IT manager and a minimum of three assistants.

NHPD will continue to employ adequate numbers of investigators to assist in case preparation, witness interviews, subpoena delivery, records recovery, evidence handling, treatment placement, and other tasks to ensure the delivery of the effective assistance of counsel. See generally, American Bar Association Standards for Criminal Justice, Defense Function, Standard 4-4.1 Duty to Investigate. The Program will employ a minimum of one investigator for every five attorneys.

NHPD will continue to employ social service advocates and treatment coordinators to cope with increasing requests from judges and prosecutors for NHPD to assist clients access mental health and substance use disorder treatment. NHPD will continue to provide this assistance as it relates to the client's pending criminal case, such as to comply with a bail condition, at the request of a prosecutor to facilitate a plea agreement, or to prepare for a contested sentencing hearing.

NHPD will maintain the Conflict Case Administrator office to seamlessly reassign cases that present a conflict of interest for NHPD. The program will employ a minimum of two conflict case administrators.

New Hampshire Public Defender will maintain operations sufficient to provide representation to clients in all 10 counties and will continue to provide office space to accommodate accessible and private meeting space in locations as convenient to the regions served as possible.

Plan for continued representation

On the effective date of the contract for services (July 1, 2023), the Public Defender Program will be perfectly able to provide continued representation for clients in the roughly 11,000 cases carried forward from pre-existing court appointments. They are projected to be distributed as follows:

Approximately 4000 open cases in Hillsborough County Courts
Approximately 1700 open cases in Rockingham County Courts
Approximately 1700 open cases in Merrimack County Courts
Approximately 1000 open cases in Strafford County Courts
Approximately 700 open cases in Belknap County Courts
Approximately 600 open cases in Grafton County Courts
Approximately 600 open cases in Cheshire County Courts
Approximately 400 open cases in Sullivan County Courts
Approximately 400 open cases in Carroll County Courts
Approximately 200 open cases in Coos County Courts
Approximately 90 open appeals in The New Hampshire Supreme Court

NHPD attorneys who are currently appointed to those cases will continue to represent their clients.

After July 1, 2023, the New Hampshire Public Defender will configure and maintain its staffing in a manner that will allow the program to accept the anticipated volume of cases under the statutory scheme of appointment. This scheme provides that the Public Defender shall be appointed in the first instance and, if the Public Defender is not available to accept the case, then the case shall go to the contract or assigned-counsel systems.

NHPD will also continue to ensure that case intake is handled efficiently and effectively by the individual program offices.

Executive Director information

Executive Director Sarah Rothman received B.A. degrees in journalism, philosophy, and political science from Penn State University in 2004. While obtaining her J.D. from Northeastern University School of Law, she completed four internships related to criminal defense. She graduated law school in 2007 and joined NHPD as a staff attorney the same year. Over the course of the next fifteen years, she represented thousands of clients in matters ranging from driving offenses to aggravated felonious sexual assault. She began mentoring interns and new lawyers early in her career and was appointed as the Managing Attorney of NHPD's office in Hillsborough County North in 2016. She spent the next six years overseeing the day-to-day operations of NHPD busiest trial office, supervising 25 attorneys, six investigators, and numerous support staff members. She was selected as Executive Director in August of 2022.

Office location and training plan

NHPD currently maintains trial offices in Littleton, Orford, Laconia, Concord, Manchester, Nashua, Newport, Keene, Stratham, and Dover. These offices provide coverage for every county in New Hampshire. NHPD also currently maintains and Appellate Defender Office. The Program will continue to operate those offices in the next biennium.

NHPD considers on-going training essential to the professional development of its lawyers. As criminal practice and procedure become increasingly complicated, the Program assures that its attorneys keep abreast of developments in the law by providing trainings throughout the year. In the coming biennium, the Program anticipates an annual training budget of approximately $85,000, the largest portion of which will go toward assuring compliance with the New Hampshire Supreme Court's Minimum Continuing Legal Education requirements. To that end, all staff attorneys attend the program's mandatory bi-annual, day-long trainings held each fall and spring. The spring training is also made available at no cost to attorneys who contract with the Judicial Council pursuant to RSA 604-A:2-b.

In addition to the two statewide trainings, the Program provides numerous smaller group sessions. Lawyers of all experience levels regularly attend and participate in trainings designed, developed, and presented by senior staff attorneys, alumni, and other respected authorities. New lawyers undergo five weeks of intensive, in-house training prior to appearing in court on behalf of clients. That training includes an in-house, three-day trial-skills program presented by experienced trial attorneys. New lawyers practice all phases of trial from case theory and themes, opening statement, direct and cross examination, and closing argument. Several times per year, the program presents special trainings on relevant subjects and invites contract counsel to attend. NHPD attorneys are also encouraged to attend national criminal defense CLE programs that focus on relevant topics and cover areas of special interest. In addition to in-house trainings, NHPD frequently provides attorneys with opportunities to attend trainings outside of NHPD and will continue to do so.

The Program works to ensure attorneys are trained in juvenile law practice, as representation of youth varies greatly from representation of adults. NHPD provides in-house training on youth law topics and frequently sends attorneys to trainings offered by The Gault Center (formerly the

22

National Juvenile Defender Center).

NHPD attorneys are also supported by the newly formed Youth Law Practice Group. Overseen by the Director of Litigation, the Youth Law Practice Group consists of attorneys with passion and experience in juvenile practice who make themselves available to answer questions, help draft pleadings, help prepare for adjudicatory and other significant hearings, hold regular conferences among staff attorneys to pose and answer questions related to cases, and co-counsel complex juvenile cases. Over the next year, the Director of Litigation and the Director of Client Services plan to create and supervise additional practice groups in additional areas of specialty and complexity.

These practice groups are a new addition to the extensive litigation support offered to NHPD attorneys. The complexity of modern criminal practice and procedure obliges the conscientious practitioner to consult regularly with peers and to stay abreast of new developments in the law. Because no one could reasonably be expected to have a mastery of all aspects of the work, the administration of the Public Defender Program works to find ways to help attorneys support one another effectively and efficiently.

New investigators, social service advocates, and treatment coordinators receive onboarding training, including: training on NHPD's policies and procedures related to their respective roles; training on internal and external resources available to them; and training on ethics topics related to their respective roles. All investigators, social service advocates, and treatment coordinators receive a full day of training at NHPD's annual fall training on new, complex, or persistent issues related to their practice. Training topics are presented both by NHPD staff and respected outside experts. Additionally, NHPD frequently provides investigators and social service advocates with opportunities to attend trainings outside of NHPD, including trainings offered by the National Association of Public Defenders and the National Defense Investigator Association, and will continue to do so.

NHPD provides training for each support staff member who joins the Program. NHPD's Case Resolution and Database Administrator conducts at minimum a one-day training for receptionists and a three-day training for legal assistants. The training is a guided interactive training that allows for real-time access to NHPD's Case Management System. New support staff members also receiving training regarding confidentiality and other ethical considerations impacting administrative work. The support staff has access to an internal website containing reference materials, including answers to FAQs and documents outlining how to process their workflow. The Director of Administrative Services provides ongoing training to members of the support staff to ensure that they have a strong command of how to utilize internal and external resources to maximize efficiency. The support staff also attends the annual program-wide training in the fall, during which individualized training occurs focusing on various topics related to their work.

NHPD commits substantial resources to supporting the work of attorneys, investigators, social service advocates, and support staff. These resources include and will continue to include a program-wide case management system by which client information and case activity are tracked and conflicts of interest are assessed and managed; an integrated document management system;

a subscription for electronically enabled legal research; an intranet site providing access to other legal resources such as brief and motions banks, supreme court decision alerts and summaries and legal discussion forum; and a Practice Guide available electronically to NHPD staff attorneys and to contract attorneys.

Additionally, NHPD will continue to invest in securing its telecommunications and IT infrastructure to minimize business interruption whether due to accident or malfeasance and to assure quick disaster recovery whenever necessary. NHPD also will ensure that basic office systems (e.g., computers, copier/printers, telephones, Word processing and other essential business software) are available and kept up to date.

Each office has a library with sets of commonly used reference texts on such areas as search and seizure, New Hampshire criminal practice, evidence, and driving offenses. The central administrative office in Concord has a lending library consisting of approximately fifty texts that are not typically available in the local office libraries. These books are generally more detailed treatises or reference books on forensic science, mental illness, homicide defense, or special topics in criminal law and procedure.

Several years ago, the program created a Practice Guide. Now over 600 pages long, the Guide has over 50 chapters devoted to the various aspects of criminal practice in New Hampshire, from bail hearings to sentencing and everything in-between. The Guide is provided electronically, free of charge, to attorneys approved by the Judicial Council to provide indigent defense services on a contractual basis.

NHPD created, maintains and continuously improves an intranet with numerous electronic resources for its lawyers and staff. Our internal website provides access to computerized legal research and includes a forum that allows attorneys to post information of interest or ask and respond to questions. Attorneys are able to access this site remotely on program-provided laptops through a secure link that also allows them to access email correspondence and documents in client files. The program also provides attorneys and investigators with access to phones and voicemail from remote locations, as well the ability to securely send and share documents.

NHPD continues to explore IT-based solutions to the ever-growing volume of electronic discovery received from the state. The proliferation police body-worn camera footage, home security systems, cell phone data, and social media content has changed the practice of criminal defense. To review discovery in a typical felony or misdemeanor case, attorneys and investigators previously needed to read a few dozen pages of written materials. Now, attorneys and investigators must wade through body-worn camera footage from multiple officers who respond to the scene, thousands of pages of data from cell phone extractions, and several hours of surveillance footage. NHPD is in the process of creating paralegal positions to digest and organize these materials for attorneys. Additionally, NHPD's IT Manager has been diligently evaluating several e-discovery platforms to assist attorneys in reviewing the rapidly increasing amounts of discovery received from the state. A key factor in evaluating these programs is cost. We carefully evaluate whether the cost of technology solutions is justified by increased efficiency of staff time. NHPD will continue to utilize its in- house expertise to improve our IT solutions in a cost-effective manner.

The Program supports investigators' increased efficiency by providing access to a specialized web-based search engine as a way to find cell numbers and addresses of potential witnesses and other case-related individuals online. We provide investigators with other tools necessary to preparing an adequate defense.

NHPD also will continue to provide the Conflict Case Administrator with access to NHPD's case management system, computers, telephones, internet access, and any other services necessary to assure the efficient reassignment of cases that constitute a conflict of interest for the Public Defender. In the coming biennium, NHPD will upgrade the CCA from the outdated case management system they currently employ to defenderData. All necessary safeguards and permissions will be put in place to assure that no violations of the Rules of Professional Responsibility can occur and to avoid even the appearance of any potential conflict of interest.

### Conflict resolution plan

NHPD follows the New Hampshire Rules of Professional Conduct. The Rules that pertain to conflicts are Rules 1.7, 1.8, 1.9 and 1.10. The goal of our conflict policy is to accept court appointments and to continue representing the defendant in every eligible case, while at the same time preserving the confidentiality of both current and former clients. The policy effectuates these goals by avoiding actual and potential conflicts of interest.

It is the responsibility of every NHPD attorney to be familiar with the New Hampshire Rules of Professional Conduct. Each attorney must properly identify and address conflicts of interest among clients. Each attorney must protect the confidential information of NHPD clients.

An actual conflict of interest is a situation where NHPD's loyalty is divided between two clients. In our practice, this situation most often occurs when we are appointed to represent codefendants in the same matter, or when we are appointed to represent individuals in the same or a substantially related matter. In these situations, and whenever we identify any other situation where our representation of one client would limit our responsibility to another, we will either decline an appointment or withdraw from a current case.

A potential conflict of interest is a situation where an attorney's loyalty to a former client might impact his representation to a current client. In our practice, this situation usually occurs when a witness in a current case was previously represented by NHPD. When this situation occurs, a "Neutral Attorney" advises the attorney in the current case to continue his representation and to have no contact with the lawyer who represented the witness in the closed case. This procedure was developed by NHPD to comply with Rule 1.9 of the New Hampshire Rules of Professional Conduct. The New Hampshire Superior Court has twice referenced NHPD's Rule 1.9 compliance policy with apparent approval. See State v. Gordon Perry, Nos. 97-S-777-780 (Merrimack County Superior Court (Nadeau, J.) April 10, 1998); State v. Eric Smalley, No. 01-S-1280 (Merrimack County Superior Court (McGuire, J.) January 29, 2002).

For conflict resolution purposes, NHPD maintains a database which contains every NHPD case since 2000. Within each case, defenderData (NHPD's case management system) identifies all

witnesses, the attorney assigned to the case, all court dates, and the final disposition. This is a statewide database. Therefore, when the database is queried regarding a conflict, NHPD can be confident that the result will take into account all clients throughout the state.

In practice, the policy operates as follows: When a trial attorney receives a case, she compiles a list of allege victims, witnesses, codefendants and cooperating individuals in that case. This list is delivered to the Office Administrator who checks the names listed on the form against the defenderData database. If any of the witnesses in the current case are identified in defenderData as current or former clients, the Office Administrator will forward the results to a "Neutral Attorney" who will resolve the conflict. The Neutral Attorney's decision may involve withdrawing from a case or directing one or more attorneys not to communicate with each other regarding their respective current and former clients. The Neutral Attorney will often direct the Office Administrator to "seal" a client until the conclusion of the case in which that client is involved. This process ensures that NHPD does not take a case that would lead to an actual conflict. Also, when a case is sealed, that file cannot be reviewed or opened by any staff attorney during the pendency of the case with which it has a conflict, thereby preserving the confidentiality of that client. The record of the conflict resolution is kept in a separate file by the Office Administrator and can be reviewed if necessary.

NHPD strives in a number of ways to minimize the number of cases in which withdrawal is necessary. The Neutral Attorneys are trained by the Director of Legal Services in significant detail regarding the legal framework of the conflict policy and the details of its implementation at the office level. Before they take the serious step of withdrawing from a case, the Neutral Attorneys are advised to confirm with the trial attorney that the witness that is causing the withdrawal is a true witness in the current case. Neutral Attorneys are also encouraged to have their decisions reviewed and confirmed by a Managing Attorney or by the Director of Legal Services. This occurs regularly throughout all ten offices in the state. Finally, NHPD Administration regularly conducts refresher trainings for all Neutral Attorneys and Office Administrators. An additional review of the conflict resolution may be conducted by the Conflict Case Administrator. If, based upon information available to them, the CCA believes that a case sent to them as a conflict should be looked at again, a neutral or MA may reverse the decision in light of specific information brought to their attention by the CCA.

NHPD will maintain the CCA office in the coming biennium to ensure the efficient and appropriate transfer of conflict cases to contract attorneys, ensuring rapid contact with the conflict client.

## Plan for response to Attorney Disciple Office complaints

Given the nature of indigent criminal defense practice, and the volume of cases handled by NHPD lawyers, client complaints are a not uncommon event. When a client files a grievance with the Attorney Discipline Office alleging a violation of the Rules of Professional Responsibility, the ADO sends a letter to the lawyer, inviting the lawyer to respond to the client's complaint. Upon receipt of an ADO letter, NHPO's lawyers follow an established protocol: The lawyer forwards a copy of the ADO letter to the Director of Legal Services, along with a copy of the client's grievance. The Director opens a file which will contain all materials related to the

matter going forward. The attorney is told to calendar the date the response is due. The Director provides specific instructions regarding the tone, style and content of the response and provides the attorney with a "sample response" letter that is to be used as a template. The attorney reviews the complaint, identifies specific allegations of misconduct, and responds to each, conforming to the sample. When the attorney has prepared a draft response, a copy is provided to the Director of Legal Services who reviews it with the attorney prior to its being filed. Upon receipt of the decision from the ADO, a copy is sent to the Director who keeps the decision in the case file.

Certificate of Insurance

Certificates of Insurance for general and professional liability are attached as Appendix G.

## Letters of Reference

Letters of reference prepared by the following people on behalf of the Public Defender Program appear as Appendix H:

The Honorable David King
Chief Administrative Judge, NH Circuit Court Administrative Office of the Court
The Honorable Tina Nadeau
Chief Justice, NH Supreme Courts
1 Granite Place, N400 Concord, NH 03301
603-271-2521

County Attorney Paul Halvorsen
Office of the Merrimack County Attorney
4 Court Street, Concord, NH 03301
603-228-0529

Michael Scanlon
Clerk of Court Hillsborough Superior Court North
300 Chestnut Street, Manchester, NH 03101
(855) 212-1234

## Cost Proposal

NHPD proposes to provide the services as outline above for fiscal years 2024 and 2024 for $55,589,108, to be billed in four increments of $13,897,277 occurring on July 1, 2023, January 1, 2024, July 1, 2024, and January 1, 2025.

## List of Attachments

| | |
|---|---|
| Appendix A | Roster of Current NHPD Staff |
| Appendix B | Organizational Chart |
| Appendix C | Director Job Descriptions |
| Appendix D | Audited Financial Statements |
| Appendix E | Subcontractor Agreement |
| Appendix F | Senior Staff Resumes |
| Appendix G | Certificate of Insurance |
| Appendix H | Letters of Reference |
| Appendix I | Certificate of Good Standing |

# Appendix A

## Roster of Current NHPD Staff

## Roster of Current NHPD Staff

Administrative Attorneys: Rothman, Hawkes, Flinchbaugh, Lugo, Robidas, Uhouse

| | | |
|---|---|---|
| 1 Abramson, Ilana | 50 Courville, Katharine | 98 Griswold, Ashley | 147 Mattioda, Chelsea | 196 Robinson, Cynthia |
| 2 Accornero, Pamela | 51 Cox, Jamie | 99 Halford, Jeff | 148 Mayo, Simon | 197 Rodriguez, Bonnie |
| 3 Ackerman, Hannah | 52 Cristello, Raygan | 100 Hancock, Paula | 149 McAnney, Carolyn | 198 Rose, Erin |
| 4 Acree, Sarah | 53 Crouser, Leah | 101 Haslam, Cindy | 150 McCann, Lauren | 199 Rothman, Sarah |
| 5 Akalonu, Rosalyn | 54 Currier, Kristen | 102 Hassler, Alan | 151 McCarthy, Della | 200 Russell, Scott |
| 6 Albright, Samantha | 55 Cushing, Elizabeth | 103 Hathcock, David | 152 McCarthy, Laurie | 201 Sanders, Devon |
| 7 Andujar, Katherine | 56 Cruz, Nicole | 104 Hawkes, Mary | 153 McCorkle, Julianna | 202 Savarese, Maria |
| 8 Arani, Stephanie | 57 Dahl, Ashley | 105 Host, Zachary | 154 McNicoll, Matthew | 203 Saxon, Erin |
| 9 Armillay, Amanda | 58 Davidow, Michael | 106 Hout, Amanda | 155 Medina, Joyce | 204 Scandalis, Laura |
| 10 Austin, Daniel | 59 Davis, Robin | 107 Huot, Kimberly | 156 Melby, Rachael | 205 Schmidt, Monique |
| 11 Ayer, Devon | 60 DeBoe, Trina | 108 Hutchins, Constantine | 157 Michaud, Rebecca | 206 Schultz, William |
| 12 Ball, Shannon | 61 DeMars, Vaness | 109 Hyde, Maria | 158 Miller, Kathryn | 207 Schwartz, Allison |
| 13 Barnard, Thomas | 62 DenUyl, Sophia | 110 James, Zachary | 159 Minahan-Stys, Nanette | 208 Sennett, Shea |
| 14 Bartz, Lisa | 63 DePaulo, Ava | 111 Jarvis, Kyle | 160 Morrell, Alexandria | 209 Shore, Tara |
| 15 Beaton, Amy | 64 DeRoche, Patricia | 112 Jessep, Emily | 161 Morrison, Olivia | 210 Skiba, Natica |
| 16 Beckwith, Devon | 65 Deveney, Lee-Anne | 113 Johnson, Christopher | 162 Moscardini, Helen | 211 Smith, Caroline |
| 17 Beckwith, Tia | 66 DeVorsey, Megan | 114 Johnson, Doreene | 163 Mullaney, Mark | 212 Soares, Debra |
| 18 Bednowitz, Sarah | 67 Dominguez, Mariana | 115 Jones, Pamela | 164 Mulligan, Toni | 213 Speidel, Allison |
| 19 Beer, Alex | 68 Dreher, Philip | 116 Kandianis, Laurel | 165 Mulrooney, Jillian | 214 Spencer, Thayne |
| 20 Berger, Christopher | 69 Duguay, Jay | 117 Kapes, Chelsea | 166 Murdick, Bryce | 215 Stafford, Miles |
| 21 Bernier, James | LQA Dunlop, Main | 118 Keans, Eleftheria | 167 Natoli, Amanda | 216 St. Pierre, Benjamin |
| 22 Betancourt, David | 70 Edwards, Katelyn | 119 Keeley, Chelsea | 168 Newkirk, Brett | 217 Staiger, Katherine |
| 23 Bissonnette, Amanda | 71 Egeland-Johanne | 120 Kelleher, Sherry | 169 Novak, Jason | 218 Starr, Natasha |
| 24 Blackman, Wendy | 72 Erskine, Heather | 121 Kenyon, Emily | 170 Nye, Julia | 219 Stayton, Natalia |
| 25 Boghossian, Charlotte | 73 Fasching, Douglas | 122 Kettles, Margaret | 171 O'Connell, Aileen | 220 Stein, D'Artagnan |
| 26 Bok, Oliver | 74 Fernandez, Alexandra | 123 Kiers, Larissa | 172 O'Donnell, Shelagh | 221 Stonitsch, Thomas |
| 27 Bonito, Andrea | 75 Ferry, Erin | 124 Kinne, Hanna | 173 O'Neill, Edward | 222 Strand, Jordan |
| 28 Borchardt, Paul | 76 Ficarra, Thomas | 125 Klipsch, Hannah | 174 Parsons, Alexander | 223 Strube, Lorraine |
| 29 Bou-Rhodes, Alexandre | 77 Finnerty, Jacqueline | 126 Kossick, Kimberly | 175 Peppas, Maria | 224 Swales, Robert |
| 30 Boutin, Arthur | 78 Fitzgerald, Matilda | 127 Kunitake, Kim | 176 Phelan, Pam | 225 Swenson, Carl |
| 31 Bower, Laura | 79 Flinchbaugh, Catherine | 128 Labbe, Sheryl | 177 Piascik, Samantha | 226 Taggart-Hampton, Morgan |
| 32 Bradshaw, Adrienne | 80 Foote, Ann | 129 Lacer, Samantha | 178 Pike, Michelle | 227 Tracewell, Erica |
| 33 Britton, Allison | 81 Fourakis, Eva | 130 Lafond, Laureen | 179 Pirkey, Andrea | 228 Trilling, Alayna |
| 34 Brooks, James | 82 Forciniti, Eliana | 131 LaMonica (Sibley), Amy | 180 Pitta, Benjamin | 229 Tufts, Kayleigh |
| 35 Buckley, Paige | 83 Frankel, Joseph | 132 Lawrence, Susan | 181 Plaisted, Amy | 230 Uhouse, Jennifer |
| 36 Burrington, Stella | 84 Freeman, Dianne | 133 Ledoux, Bethellen | 182 Poirier, Grace | 231 Venezia, Alexis |
| 37 Cahalin, Brendan | 85 Friedman, Elliot | 134 Lempke, Elaine | 183 Prouty, Tracy | 232 Vessels, Lauren |
| 38 Cahn, Ezra | 86 Gagnon, Dea | 135 Lesniak, Melissa | 184 Prusiner, Lauren | 233 Vitale, Alexander |
| 39 Campbell, Deanna | 87 Gailliot, Taylor | 136 LeTarte, Janet | 185 Purvin-Dunn, Caitlin | 234 Walker, Debra |
| 40 Canny, Katherine | 88 Gambale, Jordan | 137 Littlefield, Justin | 186 Ramovic, Senad | 235 Walker, Eliza |
| 41 Carter, Sarah | 89 Gann, Meagan | 138 Lucius, Allison | 187 Raymond, Eric | 236 Webber, Clay |
| 42 Cherry, Sarah | 90 Garland, Katelin | 139 Lugo, Meredith | 188 Rheaume, Katelyn | 237 Weinstein, Alexnader |
| 43 Cirulli, Peyton | 91 Gasey, Monica | 140 Lussier, Anna | 189 Rhodes, Alexander | 238 West, Irelynne |
| 44 Civale, Brian | 92 Gelinas, Vanessa | 141 Magar, Tulay | 190 Rice, Jenna | 239 Whitcomb, Denise |
| 45 Clark, Kathleen | 93 Gephart, Ryan | 142 Mailhot, Amy | 191 Riegert, Brynn | 240 Wile-Marble, Stephanie |
| 46 Clark, Ken | 94 Gerber, Andrew | 143 Mainey, Laura | 192 Riley, Denise | 241 Wynes, Emily |
| 47 Clayman, Howard | 95 Giammasi, Morgan | 144 Maistrosky, Laura | 193 Robarge, Denise | 242 Zaker, Alyson |
| 48 Clemans, Jeremy | 96 Gove, Dawn | 145 Maniak, Molly | 194 Robidas, Kyle | 243 Zalegowski, Christopher |
| 49 Conover, Jessica | 97 Grinavic, Amy | 146 Marston, Lisa | 195 Robillard, Anthony | 244 Zalegowski, Emily |
| | | | | 245 Zlotrg, Alma |

**Boston of Current NHPD Staff By Office**

MA    AMA    Investigator/Social Worker    OA    AOA    Support Staff

| # | Administaration | # | Dover | # | Littleton | # | Nashua | # | Stratham |
|---|---|---|---|---|---|---|---|---|---|
| 1 | Rothman, Sarah | 1 | Betancourt, David | 1 | Duguay, Jay | 1 | Jones, Pamela | 1 | Campbell, Deanna |
| 2 | Hawkes, Mary | 2 | Robinson, Cynthia | 2 | Kinne, Hanna | 2 | Keans, Eleftheria | 2 | McNicoll, Michelle |
| 3 | Flinchbaugh, Catherine | 3 | Albright, Samantha | 3 | Mayo, Simon | 3 | Abramson, Ilana | 3 | Prusiner, Lauren |
| 4 | Mailhot, Amy | 4 | Canny, Katherine | 4 | Wynes, Emily | 4 | Armillay, Amanda | 4 | Acree, Sarah |
| 5 | Lugo, Meredith | 5 | Crouser, Leah | 5 | Boutin, Arthur | 5 | Borchardt, Paul | 5 | Akalonu, Rosalyn |
| 6 | Robidas, Kyle | 6 | DeMars, Vanessa | 6 | Whitcomb, Denise | 6 | Cahalin, Brendan | 6 | Arani, Stephanie |
| 7 | Uhouse, Jennifer | 7 | DePaulo, Ava | 7 | Burrington, Stella | 7 | Davidow, Michael | 7 | Beaton, Amy |
| 8 | Mulrooney, Jillian | 8 | Gann, Meagan | 8 | Griswold, Ashley | 8 | Fourakis, Eva | 8 | Bok, Oliver |
| 9 | Grinavic, Amy | 9 | Hathcock, David | | **Manchester** | 9 | Friedman, Elliot | 9 | Clayman, Howard |
| 10 | Bartz, Lisa | 10 | Kapes, Chelsea | 1 | Bonito, Andrea | 10 | Host, Zachary | 10 | Conover, Jessica |
| 11 | Giammasi, Morgan | 11 | Morrell, Alexandra | 2 | Civale, Brian | 11 | Malstrosky, Laura | 11 | Dreher, Philip |
| 12 | Kunitake, Kim | 12 | Swenson, Carl | 3 | McCarthy, Della | 12 | McCorkle, Julianna | 12 | Forciniti, Eliana |
| | **IT** | 13 | Tracewell, Erica | 4 | Ayer, Devon | 13 | Melby, Rachael | 13 | James, Zachary |
| 1 | Zalegowski, Christopher | 14 | Cushing, Elizabeth | 5 | Bou-Rhodes, Alexandre | 14 | Pike, Michelle | 14 | Jessep, Emily |
| 2 | Berger, Christopher | 15 | Speidel, Allison | 6 | Buckley, Paige | 15 | Sennett, Shea | 15 | Kiers, Larissa |
| 3 | Magar, Tulay | 16 | Lempke, Elaine | 7 | Egeland, Johanne | 16 | Walker, Eliza | 16 | Mullaney, Mark |
| 4 | Robillard, Anthony | 17 | Beckwith, Tia | 8 | Erskine, Heather | 17 | Bradshaw, Adirenne | 17 | Newkirk, Brett |
| | **Appellate** | 18 | Ball, Shannon | 9 | Fernandez, Alexandra | 18 | Clark, Ken | 18 | Peppas, Maria |
| 1 | Johnson, Christopher | 19 | Dahl, Ashley | 10 | Kossick, Kimberly | 19 | Lacer, Samantha | 19 | Purvin-Dunn, Caitlin |
| 2 | Barnard, Thomas | 20 | Starr, Natasha | 11 | Lussier, Anna | 20 | Piascik, Samantha | 20 | Cherry, Sarah |
| 3 | Ledoux, Katherine | 21 | Stein, D'Artagnan | 12 | Mattioda, Chelsea | 21 | Scandalis, Laura | 21 | Lucius, Allison |
| | **Concord** | | **Keene** | 13 | McCann, Lauren | 22 | Bower, Laura | 22 | Miller, Kathryn |
| 1 | Vitale, Alexander | 1 | Parsons, Alexander | 14 | Moscardini, Helen | 23 | Rice, Jenna | 23 | Rodriguez, Bonnie |
| 2 | Dominguez, Mariana | 2 | Carter, Sarah | 15 | O'Donnell, Shelagh | 24 | Gagnon, Dea | 24 | Plaisted, Amy |
| 3 | O'Neill, Edward | 3 | DenUyl, Sophia | 16 | Pitta, Benjamin | 25 | Kelleher, Sherry | 25 | LeTarte, Janet |
| 4 | Ackerman, Hannah | 4 | Frankel, Joseph | 17 | Raymond, Eric | 26 | Malney, Laura | 26 | Marston, Lisa |
| 5 | Austin, Daniel | 5 | Schmidt, Monique | 18 | Roberts, Hannah | 27 | Strube, Lorraine | 27 | Clark, Kathleen |
| 6 | Boghossian, Charlotte | 6 | Taggart-Hampton, Morgan | 19 | Sanders, Devon | 28 | Venezia, Alexis | 28 | Edwards, Katelyn |
| 7 | Cirulli, Peyton | 7 | Weinstein, Alexander | 20 | Schultz, William | 29 | West, Irelynn | 29 | Huot, Kimberly |
| 8 | Clemans, Jeremy | 8 | Halford, Jeff | 21 | Stonitsch, Thomas | 30 | Zaker, Alsyon | 30 | Rheaume, Katelyn |
| 9 | Courville, Katharine | 9 | Jarvis, Kyle | 22 | Strand, Jordan | | **Newport** | 31 | Skiba, Natica |
| 10 | Ficarra, Tom | 10 | LaMonica, Amy | 23 | Swales, Robert | 1 | St. Pierre, Benjamin | 32 | Wile-Marble, Stephanie |
| 11 | Gephart, Ryan | 11 | Cox, Jamie | 24 | Trilling, Alayna | 2 | Brooks, Jamie | | **Case Resolution Team** |
| 12 | Gelinas, Vanessa | 12 | Lafond, Laureen | 25 | Bednowitz, Sarah | 3 | Hutchins, Constantine | 1 | Beckwith, Devon |
| 13 | Hyde, Marla | 13 | McAnney, Carolyn | 26 | Cristello, Raygan | 4 | Natoli, Amanda | 2 | Britton, Allison |
| 14 | Keeley, Cynthia | | **Laconia** | 27 | DeRoche, Patricia | 5 | Lawrence, Susan | 3 | Fitzgerald, Matilda |
| 15 | Morrison, Olivia | 1 | Littlefield, Justin | 28 | Fasching, Douglas | 6 | Prouty, Tracy | 4 | Lesniak, Melissa |
| 16 | O'Connell, Aileen | 2 | Hassler, Alan | 29 | Garland, Katelin | 7 | Lee-Anne Deveny | 5 | Webber, Clay |
| 17 | Phelan, Pam | 3 | Andujar, Katherine | 30 | Rhodes, Alex | | **Orford** | | **CCA** |
| 18 | Ramovic, Senad | 4 | Cahn, Ezra | 31 | Russell, Scott | 1 | Kettles, Margaret | 1 | Michaud, Rebecca |
| 19 | Savarese, Maria | 5 | Davis, Robin | 32 | Saxon, Erin | 2 | Gasey, Monica | 2 | Pirkey, Andrea |
| 20 | Bissonnette, Amanda | 6 | DeVorsey, Megan | 33 | Tufts, Kayleigh | 3 | Kenyon, Emily | 3 | Finnerty, Jacqueline |
| 21 | Bernier, James | LOA | Dunlop, Mala | 34 | Minahan-Stys, Nanette | 4 | Novak, Jason | | |
| 22 | Moniakt, Molly | 7 | Ferry, Erin | 35 | Medina, Joyce | 5 | Schwartz, Allison | | |
| 23 | Vessels, Lauren | 8 | Galliiot, Taylor | 36 | Blackman, Wendy | 6 | Stafford, Miles | | |
| 24 | Zalegowski, Emily | 9 | Kandianis, Laurel | 37 | Cruz, Nicole | 7 | Labbe, Sheryl | | |
| 25 | Currier, Kristen | 10 | Nye, Julia | 38 | DeBoe, Trina | 8 | Spencer, Thayne | | |
| 26 | Soares, Debra | 11 | Smith, Caroline | 39 | Foote, Ann | 9 | Gove, Dawn | | |
| 27 | Beer, Alex | 12 | Accornero, Pamela | 40 | Gerber, Andrew | 10 | Staiger, Katherine | | |
| 28 | Freeman, Dianne | 13 | Riley, Denise | 41 | Huot, Amanda | | | | |
| 29 | Johnson, Doreene | 14 | Haslam, Cindy | 42 | Mulligan, Toni | | | | |
| 30 | Murdick, Bryce | 15 | Robarge, Denise | 43 | Riegert, Brynn | | | | |
| 31 | Poirier, Grace | 16 | Gambale, Jordan | 44 | Rose, Erin | | | | |
| 32 | Stayton, Natalia | 17 | Hancock, Paula | 45 | Zlotrg, Alma | | | | |
| 33 | Walker, Debra | 18 | McCarthy, Laurie | | | | | | |
| | | 19 | Shore, Tara | | | | | | |

Page 2

# Appendix B

## NHPD Organizational Chart

# New Hampshire Public Defender Organization Chart



# Appendix C

## Director Job Descriptions

**NHPD Directors**

**Expectation of All Directors:** All director positions provide leadership to ensure that the New Hampshire Public Defender achieves its overall mission. Directors, along with the Managers of Human Resources and IT Departments, make up the executive team of the New Hampshire Public Defender, under the direct supervision of the Executive Director. Members of the executive team shall work collaboratively to make major organizational decisions. Directors, with the exception of the Director of Finance, shall provide supervision and support to Managing and Assistant Managing Attorneys in the areas related to their respective roles. Directors, with the exception of the Director of Finance, shall also take cases and provide direct representation to clients as needed and as directed by the Executive Director.

**Executive Director**

**Position Summary:** The Executive Director provides leadership to ensure outstanding quality of representation for our clients, to ensure the needs of staff are met, and to ensure that NHPD operates efficiently, innovatively, and inclusively.

The Executive Director shall work closely with the Board of Directors and other members of the executive team to establish strategic planning and goals for the program. The Executive Director shall seek input from the Board of Directors regarding program goals on a regular basis, including at quarterly meetings. The Executive Director shall ensure the Board of Directors is kept apprised of major events and decisions regarding the operation of the program, and shall provide information to the Board of Directors as required and requested.

The Executive Director shall work with the Executive Director of the Judicial Council and the Director of Finance to prepare the program's biennial budget. The Executive Director shall work closely with the Director of Finance to create financial projections necessary to determine the biennial budget request and to make financial decisions throughout the year. The Executive Director shall provide materials as needed to the Judicial Council to facilitate NHPD's budget requests. The Executive Director shall work with the Executive Director of the Judicial Council to advocate to the executive and legislative branches of government for NHPD's budget as needed, including speaking for the program at legislative hearings when necessary.

With the Board of Directors and input from members of the executive team, the Executive Director shall make final decisions on the allocation of program resources.

The Executive Director shall provide direct supervision of all program directors and of the IT and HR managers. With fellow directors, the Executive Director shall provide supervision and support to Managing Attorneys and Assistant Managing Attorneys.

With the Director of Client Services and the Director of Professional Development, the Executive Director shall monitor attorney caseloads. With the Director of Client Services, the Executive Director shall monitor investigator, social service advocate, and treatment coordinator

35

caseloads. With the Director of Administrative Services, the Executive Director shall monitor the workload of support staff and paralegals.

With the Executive Office Administrator, the Executive Director shall ensure that caseload and other statistical reports are provided to the Judicial Council as required and requested. The Executive Director shall respond to inquiries from the Judicial Council and the Indigent Defense Subcommittee and meet with the Judicial Council and Indigent Defense Subcommittee as needed.

With other members of the executive team and the Board of Directors, the Executive Director shall evaluate and create program policies and procedures. The Executive Director shall approve or deny staff requests as outlined the Employee Handbook. With other members of the executive team, the Executive Director shall assist in the resolution of employee relation issues and make decisions as needed. With other members of the executive team, the Executive Director shall make decisions regarding discipline as needed.

The Executive Director shall be a member of the Hiring Committee. With input from the Hiring Committee, the Director of Professional Development, and other members of the executive team, the Executive Director shall make final decisions regarding hiring of attorneys. With the Director of Professional Development and other members of the executive team, the Executive Director shall develop and implement strategies to increase diversity among NHPD staff. With input from members of the executive team, the Executive Director shall determine appropriate staffing levels to meet the needs of clients.

With other members of the executive team, the Executive Director shall maintain open communication with members of the NH Judicial Branch, with prosecutor offices, and with other criminal justice stakeholders. With other members of the executive team, the Executive Director shall advocate on behalf of clients and staff to criminal justice stakeholders.

The Executive Director shall respond to staff questions and concerns and shall respond to client complaints as needed.

The Executive Director shall attend case conferences in individual NHPD offices on a rotating schedule. The Executive Director shall maintain a limited caseload, to offer support to NHPD offices with high caseloads and to co-counsel cases with staff attorneys to aid in professional development.

### Director of Finance

**Position Summary**: The Director of Finance ensures efficient and effective support to NHPD through the management of the business and financial operations of the program. The Director of Finance works collaboratively with the executive team in setting program goals and policies and making other major organizational decisions.

The Director of Finance shall work closely with the Executive Director to project funding required to meet future staffing and legal services estimates. The Director of Finance shall work closely with the Executive Director to establish strategic planning goals and prepare NHPD's biennial operating budgets. The Director of Finance shall help develop the statistical and financial information necessary for NHPD to effectively advocate and defend its position to the Judicial Council and to the State Legislature when seeking program funding.

The Director of Finance shall review and analyze program expenditures against budgeted expenses at least monthly and implement cost-saving measures or controls where needed. The Director of Finance shall ensure that monthly financial statements are provided to the Finance Committee and the Board of Directors, along with any other requested information.

The Director of Finance shall implement rigorous internal controls and financial reporting procedures to safeguard the integrity of NHPD's financial operations and the security of its assets. Such controls and procedures include addressing banking operations (including electronic transactions) and the security of program funds and investments; credit card access and use; accounting and payroll data systems and related backup storage; and asset inventory. The Director of Finance shall monitor and approve all capital and consumable supply requests and all travel and miscellaneous expenses for reimbursement.

The Director of Finance shall prepare for annual financial audits and cooperate with independent auditors in their review of financial statements and accounts. The Director of Finance shall ensure timely filing of tax returns as well as annual Form 990 return, Charitable Trust filing with the NH Department of Justice, and other required State and Federal filings.

The Director of Finance shall oversee risk management efforts, including negotiation and annual renewal of: property and casualty insurance for all offices; stop-loss insurance for NHPD's medical insurance plan; and fidelity bond relative to administration of the retirement plan. The Director of Finance shall evaluate coverage and processes annual applications for professional malpractice and D&O insurance, oversee the maintenance of necessary permits and license bonds for in-house, private investigator operations, and review and evaluate program benefit and investment options. The Director of Finance shall secure adequate workers' compensation coverage and unemployment insurance funding, and shall monitor and process all related claims. The Director of Finance shall oversee the completion and timely submission of Form 5500 returns for 403(b) accounts, and other employment-related reports required by State or Federal compliance agencies.

The Director of Finance shall be responsible for the day-to-day business and financial management of the organization, including: conduct general ledger and financial reporting;

prepare and post all general ledger entries; maintain amortization schedules; and ensure compliance with applicable Generally Accepted Accounting Principles and regulatory requirements.

The Director of Finance shall regularly review NHPD salary scales against benchmark agencies and make recommendations for adjustments to the Executive Director and Board of Directors. The Director of Finance shall manage all financial operations, including A/P, A/R, process bi-weekly payroll, and monthly closing. The Director of Finance shall select and purchase office supplies and furniture, shall negotiate corporate leases for office equipment, and serve as a liaison to all vendors.

The Director of Finance shall work collaboratively with the Office Administrators to: design and implement renovations to existing office space as required to accommodate office staff and program needs; plan and direct office moves; and evaluate and approve all capital expenditures related to moves. The Director of Finance shall oversee relations with landlords, cleaning and maintenance services, and other support necessary for the upkeep of the physical space. The Director of Finance shall continuously evaluate the purchase, lease, and maintenance contracts for major office equipment, including printers, multi-function units, and telephone systems, and renegotiate as warranted. The Director of Finance shall cultivate and maintain ongoing relations with vendors of major capital equipment. The Director of Finance shall review and periodically renegotiate all real property leases.

**Director of Litigation**

**Position Summary:** The Director of Litigation provides leadership to ensure all attorneys have access to comprehensive litigation support. Primary responsibilities include: maintain up-to-date resources to assist in litigation; provide supervision and leadership to practice groups; provide litigation support to staff attorneys statewide; coordinate with fellow directors to provide training; and provide supervision and support for homicide cases.

The Director of Litigation shall work collaboratively with staff to ensure that litigation resources are maintained and kept up to date. These resources shall include the motion bank, practice guide, expert directory, sentence comparisons, and other resources that support litigation. The Director of Litigation shall also facilitate access to immigration services for clients.

The Director of Litigation shall be responsible for leading attorney practice groups. The practice groups shall be made up of attorneys with a demonstrated interest in specialized areas of law. The practice groups will allow attorneys to grow expertise in specific areas of practice, while also maintaining a general caseload. The Director of Litigation shall work with the Director of Professional Development to create practice groups on an on-going basis, and to facilitate training for practice group members. Once created, the Director of Litigation shall work closely with the Director of Client Services to facilitate interaction between attorney and investigator practice groups.

The Director of Litigation and attorney practice group members shall provide litigation support to staff attorneys statewide. The Director of Litigation shall be utilized by staff attorneys as a resource for legal questions, motion writing, and trial preparation. The Director of Litigation shall field questions from staff regarding jail and prison facilities. The Director of Litigation shall maintain and expand specialty case conferences in specialized areas of law. The Director of Litigation and practice group members shall work with staff attorneys, Managing Attorneys, and Assistant Managing Attorneys to identify areas of litigation impacting individual clients in specific counties.

The Director of Litigation shall design and implement a practice group or other system to support attorneys working in specialty courts. The Director of Litigation shall design and implement a practice group or other system to support attorneys on issues relating to representation of clients with mental health disorders and disabilities.

The Director of Litigation shall be responsible for overseeing all homicide cases. This includes assigning homicide cases to staff attorneys, holding regular case conference for homicides, and communicating regularly with attorneys assigned to homicide cases to provide support as needed.

The Director of Litigation shall assist Managing Attorneys and Assistant Managing Attorneys with assigning major felony cases as needed. The Director of Litigation shall provide support to Assistant Managing Attorneys for Litigation.

In consultation with the Executive Director and the Director of Finance, The Director of Litigation shall approve expenses related to litigation.

With the Director of Administrative Services, the Director of Litigation is responsible for recruiting and hiring new and lateral paralegals. With the Director of Administrative Services, the Director of Litigation supervise paralegals, monitor paralegal caseloads statewide, and shall conduct performance evaluations of paralegals regularly. The Director of Litigation and the Director of Administrative Services shall work together to facilitate the following training initiatives: semi-annual trainings for paralegals; training for new and lateral hires; and trainings on advanced and/or specialized topics. The Director of Litigation and the Director of Administrative Services shall also facilitate opportunities for paralegals to attend out-of-program trainings. The Director of Litigation shall ensure paralegals are involved with attorney and investigator practice groups and attend homicide and other specialty case conferences as appropriate.

The Director of Litigation shall attend case conferences in individual NHPD offices on a rotating schedule. The Director of Litigation shall maintain a limited caseload, focusing on co-counseling cases statewide involving major and/or creative litigation.

## Director of Client Services

**Position Summary:** The Director of Client Services provides leadership to ensure all investigators, social service advocates, and treatment coordinators have access to comprehensive support, training, and professional development opportunities. Primary responsibilities include: recruit and hire new and lateral investigators, social service advocates, and treatment coordinators; maintain the investigator and social service advocate internship programs; supervise and evaluate investigators, social service advocates, and treatment coordinators; coordinate with fellow directors to provide training; and create and supervise investigator practice groups.

The Director of Client Services is responsible for recruiting new and lateral investigators, social service advocates, and treatment coordinators. The Director of Client Services shall create and maintain relationships with universities and other relevant agencies to expand recruitment opportunities generally, and recruitment of investigators, social service advocates, treatment coordinators, and interns from diverse backgrounds specifically, to best meet the needs of our clients.

The Director of Client Services shall work closely with members of the executive team, Managing Attorneys, and Assistant Managing Attorneys to make staffing decisions regarding investigators, social service advocates, and treatment coordinators. The Director of Client Services shall monitor investigator, social service advocate, and treatment coordinator caseloads statewide to ensure proper staffing in the NHPD offices.

The Director of Client Services is responsible for NHPD's investigator and social service advocate internship program, including recruitment and training. The Director of Client Services shall work closely with Managing Attorneys, Assistant Managing Attorneys, and mentors to monitor interns' performance and experience.

The Director of Client Services shall facilitate the following training initiatives: semi-annual trainings for investigators, social service advocates, and treatment coordinators; training for new and lateral hires; trainings on advanced and/or specialized topics; and training for investigators, social service advocates, and treatment coordinators who serve as mentors to interns and new staff members. The Director of Client Services shall also facilitate opportunities for investigators, social service advocates, and treatment coordinators to attend out-of-program trainings.

The Director of Client Services shall work with Managing Attorneys and Assistant Managing Attorneys to conduct evaluations of all investigators, social service advocates, and treatment coordinators regularly, with increased frequency for staff during their first three years of practice. The Director of Client Services shall design and implement a system for the creation of professional develop plans for investigators, social service advocates, and treatment coordinators to identify strengths and interests among staff to be utilized for the benefit of both clients and the staff members' professional growth.

41

The Director of Client Services shall be responsible for leading investigator practice groups. The investigator practice groups shall be made up of investigators with a demonstrated interest in specialized areas of investigation. These positions will allow investigators to grow expertise in specific areas of practice, while also maintaining a general caseload. The Director of Client Services shall supervise the investigator practice groups, facilitate training for practice group members, and work with the Director of Litigation Support to combine the efforts of attorney and investigator practice groups.

The Director of Client Services and investigator practice group members shall provide support to investigators statewide. The Director of Client Services shall be utilized by investigators and staff attorneys as a resource for questions regarding investigation and trial preparation. The Director of Client Services shall create investigator/social service advocate case conferences and shall work with the Director of Litigation Support to involve investigators in homicide and other specialty case conferences.

The Director of Client Services shall form a working group to explore the creation of a statistical tracking and analysis system for race-based data, for utilization in litigation on behalf of individual clients. Such data will aid attorneys in litigating issues related to racial factors in charging decisions, motor vehicle stops, case outcomes, and access to specialty courts, among others. The Director of Client Services and the working group shall study other public defender programs that gather and utilize race-based data. The Director of Client Services shall present findings of the working group to the executive team and coordinate with the IT Manager as needed for implementation of potential new systems. The Director of Client Services shall explore how investigators may be utilized for the maintenance of a race-based data analytical system.

The Director of Client Services shall form a working group to review policies and procedures for investigators and social workers and shall implement changes to the polices as needed. The Director of Client Services shall work with other members of the executive team to respond to employee relation issues involving investigators, social service advocates, and treatment coordinators.

The Director of Client Services is responsible for assigning investigators and social service advocates to all homicide and other major felony cases.

The Director of Client Services shall explore ways to expand NHPD's social service advocate program to offer additional assistance and support to clients, to the direct benefit of the potential resolution of their criminal cases.

The Director of Client Services shall explore the creation of affinity groups within NHPD and facilitate cultural competency trainings for staff. The Director of Client Services shall work with the Director of Legal Services, the Director of Administrative Services, and the Human Resources Manager to create and supervise problem solving teams comprised of staff attorneys, investigators, and support staff to develop strategies for internal issues such as office safety and technological efficiencies.

The Director of Client Services shall attend case conferences in individual NHPD offices on a rotating schedule. The Director of Client Services shall maintain a limited caseload when needed to offer support to NHPD offices with high caseloads.

**Director of Professional Development**

Position Summary: The Director of Professional Development shall provide leadership to ensure NHPD is hiring, training, and retaining exceptional attorneys to represent our clients. Primary responsibilities include: coordinate attorney and intern recruitment efforts; develop and implement strategies to increase diversity recruitment; develop and maintain training programs for staff attorneys; ensure regular evaluations of staff attorneys; and provide professional development support to staff attorneys.

The Director of Professional Development is responsible for recruiting new and lateral attorneys. The Director of Professional Development shall create and maintain relationships with law schools and other relevant agencies to expand recruitment opportunities generally, and recruitment of attorneys from diverse backgrounds specifically, to best meet the needs of our clients.

The Director of Professional Development shall work closely with other members of the executive team and the Hiring Committee to make staffing decisions regarding attorneys. With other members of the executive team, the Director of Professional development shall monitor attorney caseloads statewide.

The Director of Professional Development is responsible for NHPD's attorney internship program, including recruitment and training. The Director of Professional Development shall work closely with Managing Attorneys, Assistant Managing Attorneys, and mentor attorneys to monitor attorney interns' performance and experience. The Director of Professional Development shall explore the expansion of the attorney internship program, including the possibility of year-round internship and clinical opportunities.

The Director of Professional Development shall work with other directors to supervise and facilitate the following training initiatives: semi-annual trainings for all staff; new lawyer training, including the fall program and periodic follow-up trainings during attorneys' first year; the trial skills team; training for practice group attorneys and other trainings on advanced and/or specialized topics; and training for attorneys who serve as mentors to interns and new lawyers. With other directors, the Director of Professional Development shall facilitate opportunities for staff attorneys to attend out-of-program trainings. The Director of Professional Development shall explore the possibility of expanding NHPD's training program to conduct trainings for law schools, other public defender programs, and other relevant agencies, to both provide professional development opportunities for staff, and to aid in attorney and intern recruitment efforts.

In consultation with the Executive Director and the Director of Finance, The Director of Professional Development shall approve expenses related to training.

The Director of Professional Development shall work with Managing Attorneys and Assistant Managing Attorneys to ensure performance evaluations of all attorneys occur on the following schedule: four months after joining NHPD; seven months after joining NHPD; one year after joining NHPD; annually for attorneys in their second through eighth years of practice at NHPD;

ten years after joining NHPD; and once every three years for attorneys with more than ten years of experience at NHPD. The Director of Professional Development shall provide support to Managing Attorneys and Assistant Managing Attorneys in addressing performance issues relating to attorneys and legal interns outside of annual evaluations as needed.

The Director of Professional Development shall design and implement a system for the creation of professional develop plans for attorneys, to identify strengths and interests among staff attorneys to be utilized for the benefit of both clients and the staff members' professional growth.

The Director of Professional Development shall attend case conferences in individual NHPD offices on a rotating schedule. The Director of Professional Development shall maintain a limited caseload from offices around the state, working closely with Managing Attorneys and Assistant Managing Attorneys to identify areas of need within the offices.

**Director of Legal Services**

**Position Summary**: The Director of Legal Services provides leadership to ensure the efficient administration of services to staff and clients, and to ensure compliance with ethical rules and best practices. Primary responsibilities include: work closely with members of the executive team to resolve employee relation issues; serve as final arbiter for all conflict of interest resolutions involving potential withdrawal or refusal of cases; handle all ineffective assistance of counsel claims and coordinate handling of all status of counsel claims in major felony cases; and facilitate trainings related to ethical issues.

The Director of Legal Services shall work closely with the Executive Director, the Human Resources Manager, and the Director of Administrative Services to resolve employee relation issues internally when appropriate, and to involve outside agents when necessary. Issues regarding employee relations among attorneys shall be directed to the Director of Legal Services in the first instance, to be triaged as determined by the Director of Legal Services after consultation with the appropriate members of the executive team.

The Director of Legal Services shall handle all ineffective assistance of counsel claims and claims involving the Attorney Discipline Office. Together with Managing Attorneys and Assistant Managing Attorneys, the Director of Legal Services shall handle all status of counsel issues in major felony cases. Managing Attorneys, Assistant Managing Attorneys, and staff attorneys shall bring all status of counsel issues in major felony cases to the attention of the Director of Legal Services. The Director of Legal Services shall work with the attorneys and their manager(s) to develop a plan and shall interact directly with the client as needed. The Director of Legal Services shall work with the Executive Director to develop and deliver training to Managing Attorneys and Assistant Managing Attorneys regarding handling status of counsel issues.

With the Executive Director, the Director of Client Services shall respond as needed to complaints from clients regarding their representation.

The Director of Legal Services shall serve as final arbiter for all conflict of interest resolutions involving potential withdrawal or refusal of cases. In the first instance, conflict resolutions involving potential withdrawal from, or refusal of, a case shall be handled by Managing Attorneys, Assistant Managing Attorneys, and senior neutral attorneys. Questions regarding the neutral attorney's decision from the Conflict Case Administrator or other party shall be directed to the Director of Legal Services. The Director of Legal Services shall make the final decision regarding conflict resolutions. The Director of Legal Services shall also serve as the neutral attorney for all homicide cases and all cases handled by the Attorney General's Office.

The Director of Legal Services shall provide training to Managing Attorneys, Assistant Managing Attorneys, and neutral attorneys regarding conflict policies and practices and shall train new neutral attorneys. The Director of Legal Services shall work closely with Office Administrators, Managing Attorneys, Assistant Managing Attorneys, and neutral attorneys to ensure consistent implementation of NHPD's conflict policies.

The Director of Legal Services shall respond to questions from attorneys and other staff regarding ethics, including questions related to the Rules of Professional Conduct. The Director of Legal Services shall work closely with fellow directors to facilitate ethics trainings for all staff.

With the Director of Client Services, the Director of Legal Services shall create and supervise problem solving teams comprised of staff attorneys, investigators, and support staff to develop strategies for internal issues such as office safety and technological efficiencies.

With other members of the executive team, the Director of Legal Services shall monitor attorney caseloads statewide. The Director of Legal Services shall provide support and supervision to Managing Attorneys and Assistant Managing Attorneys. The Director of Legal Services shall work with the Executive Director and other members of the executive team to facilitate leadership training for Managing Attorneys and Assistant Managing Attorneys.

The Director of Legal Services shall attend case conferences in individual NHPD offices on a rotating schedule. The Director of Legal Services shall maintain a limited caseload when needed to offer support to NHPD offices with high caseloads.

**Director of Administrative Services**

**Position Summary**: The Director of Administrative Services ensures efficient and effective support for New Hampshire Public Defender's direct client services by providing oversight of the day-to-day operations of the support staff. Primary responsibilities include: supervise and support Office Administrators; evaluate Office Administrators and ensure evaluations of support staff; determine staffing levels for support staff; recruit and hire new support staff; facilitate training for support staff, including neutral training; with the Director of Litigation, recruit, hire, support, and supervise paralegals; supervise and support the Conflict Case Administrator office; and supervise and support the Case Resolution Team with the Case Resolution and Database Administrator.

The Director of Administrative Services shall provide direct supervision to Office Administrators, with assistance from Managing Attorneys, and shall provide secondary supervision to support staff statewide. The Director of Administrative Services shall master the skills needed to work effectively as an Office Administrator and legal assistant and shall keep up to date with changes and developments in office administration. The Director of Administrative Services shall research and implement strategies to improve the efficiency of administrative operations.

The Director of Administrative Services shall work with Office Administrators and other members of the executive team to resolve employee relation issues regarding support staff.

The Director of Administrative Services shall conduct regular performance evaluations of Office Administrators, with input from Managing Attorneys and other office staff. The Director of Administrative Services shall ensure regular performance evaluations of support staff are completed by Office Administrators. The Director of Administrative Services shall create professional development plans for Office Administrators and facilitate leadership training for Office Administrators.

The Director of Administrative Services shall work closely with the Executive Director, Managing Attorneys, and Office Administrators to determine staffing levels for support staff. The Director of Administrative Services shall work closely with the Director of Finance and the IT Manager to ensure support staff have the necessary equipment and technology to conduct their work.

The Director of Administrative Services shall be responsible for recruiting and hiring of new support staff, with assistance from the Human Resources Department and the Executive Assistant. The Director of Administrative Services shall work closely with the IT Department, the Case Resolution and Database Administrator, and the Executive Assistant to train new support staff members.

The Director of Administrative Services shall work with other members of the executive team to develop training programs for support staff, including training at NHPD's annual retreat.

With the Director of Litigation, the Director of Administrative Services is responsible for recruiting and hiring of new and lateral paralegals. With the Director of Litigation, the Director

of Administrative Services shall supervise paralegals, monitor paralegal caseloads statewide, and shall conduct performance evaluations of paralegals regularly. The Director of Litigation and the Director of Administrative Services shall work together to facilitate the following training initiatives: semi-annual trainings for paralegals; training for new and lateral hires; and trainings on advanced and/or specialized topics. The Director of Litigation and the Director of Administrative Services shall also facilitate opportunities for paralegals to attend out-of-program trainings. The Director of Litigation shall ensure paralegals are involved with attorney and investigator practice groups and attend homicide and other specialty case conferences as appropriate.

The Director of Administrative Services shall supervise the Conflict Case Administrator office, with assistance from the Executive Director, and shall consult regularly with the Executive Director of the Judicial Council.

With the Case Resolution and Database Administrator, the Director of Administrative Services shall supervise the Case Resolution Team, to include regular consultation with the Director of Legal Services to ensure cases are closed promptly in the case management system.

The Director of Administrative Services shall work closely with the IT Department and Office Administrators to prepare yearly inventory. The Director of Administrative Services shall oversee the yearly culling project with the Executive Office Administrator to ensure that NHPD files are culled in accordance with the current file retention policy.

The Director of Administrative Services shall provide conflict training to Office Administrators and other members of the support staff team as required and shall act as Neutral as necessary.

The Director of Administrative Services shall maintain regular contact with the Judicial Council to ensure that the necessary documents are filed for payment to registered vendors.

The Director of Administrative Services shall hold quarterly meetings for Office Administrators and shall travel to the offices on a rotating schedule to check in with Office Administrators and support staff team members. The Director of Administrative Services shall maintain a limited caseload when needed to offer support to NHPD offices with high caseloads.

# Appendix D

## Audited Financial Statements

## NEW HAMPSHIRE PUBLIC DEFENDER

FINANCIAL STATEMENTS
FOR THE YEARS ENDED JUNE 30, 2022 and 2021
TOGETHER WITH
INDEPENDENT AUDITOR'S REPORT

# Dugdale, Livolsi & Wood, P.C.

## CERTIFIED • PUBLIC • ACCOUNTANTS

September 22, 2022

## INDEPENDENT AUDITOR'S REPORT

To the Board of Directors,
New Hampshire Public Defender:

### Opinion

We have audited the accompanying financial statements of New Hampshire Public Defender (a non-profit organization) which comprise the statements of financial position as of June 30, 2022 and 2021, and the related statements of activities, functional expenses, and cash flows for the years then ended, and the related notes to the financial statements.

In our opinion, the accompanying financial statements present fairly, in all material respects, the financial position of New Hampshire Public Defender as of June 30, 2022 and 2021, and the changes in its net assets and its cash flows for the years then ended in accordance with accounting principles generally accepted in the United States of America.

### Basis for Opinion

We conducted our audit in accordance with auditing standards generally accepted in the United States of America. Our responsibilities under those standards are further described in the Auditor's Responsibilities for the Audit of the Financial Statements section of our report. We are required to be independent of New Hampshire Public Defender and to meet our other ethical responsibilities in accordance with the relevant ethical requirements relating to our audit. We believe that the audit evidence we have obtained is sufficient and appropriate to provide a basis for our audit opinion.

### Responsibilities of Management for the Financial Statements

Management is responsible for the preparation and fair presentation of these financial statements in accordance with accounting principles generally accepted in the United States of America, and for the design, implementation, and maintenance of internal control relevant to the preparation and fair presentation of financial statements that are free from material misstatement, whether due to fraud or error.

In preparing the financial statements, management is required to evaluate whether there are conditions or events, considered in the aggregate, that raise substantial doubt about New Hampshire Public Defender's ability to continue as going concern within one year after the date that the financial statements are available to be issued.

### Auditor's Responsibilities for the Audit of the Financial Statements

Our objectives are to obtain reasonable assurance about whether the financial statements as a whole are free from material misstatement, whether due to fraud or error, and to issue an auditor's report that includes our opinion. Reasonable assurance is a high level of assurance but is not absolute assurance and therefore is not a guarantee that an audit conducted in accordance with generally accepted auditing standards will always detect a material misstatement when it exists. The risk of not detecting a material misstatement resulting from fraud is higher than for one resulting from error, as fraud may involve collusion, forgery, intentional omissions, misrepresentations, or the override of internal control. Misstatements are considered material if there is a substantial likelihood that, individually or in the aggregate, they would influence the judgement made by a reasonable user based on the financial statements.

In performing an audit in accordance with generally accepted auditing standards, we:

- Exercise professional judgment and maintain professional skepticism throughout the audit.
- Identify and assess the risks of material misstatement of the financial statements, whether due to fraud or error, and design and perform audit procedures responsive to those risks. Such procedures include examining, on a test basis, evidence regarding the amounts and disclosures in the financial statements.
- Obtain an understanding of internal control relevant to the audit in order to design audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of New Hampshire Defender's internal control. Accordingly, no such opinion is expressed.
- Evaluate the appropriateness of accounting policies used and the reasonableness of significant accounting estimates made by management, as well as evaluate the overall presentation of the financial statements.
- Conclude whether, in our judgment, there are conditions or events, considered in the aggregate, that raise substantial doubt about New Hampshire Public Defender's ability to continue as going concern for a reasonable period of time.

We are required to communicate with those charged with governance regarding, amoun other matters, the planned scope and timing of the audit, significant audit findings, and certain internal control related matters that we identified during the audit.

Dugdal, Livolsi & Wood, P.C

53

### NEW HAMPSHIRE PUBLIC DEFENDER
### STATEMENTS OF FINANCIAL POSITION
### JUNE 30, 2022 AND 2021

#### ASSETS

| | | 2022 | | 2021 |
|---|---|---|---|---|
| **Assets** | | | | |
| Cash | $ | 4,940,171 | $ | 4,826,156 |
| Government Contract Receivable | | 25,593,545 | | - |
| Deposits and Other Receivables | | 42,880 | | 43,505 |
| Prepaid Expenses | | 250,316 | | 544,135 |
| Equipment, Leasehold Improvements and Property Held Under Capital Leases, Net of Accumulated Depreciation | | 521,134 | | 726,162 |
| Law Library | | 34,523 | | 34,523 |
| **TOTAL ASSETS** | $ | 31,382,569 | $ | 6,174,481 |

#### LIABILITIES AND NET ASSETS

| | | 2022 | | 2021 |
|---|---|---|---|---|
| **Liabilities** | | | | |
| Accounts Payable – State of New Hampshire | $ | - | $ | 728,771 |
| Accounts Payable | | 52,411 | | 130,637 |
| Salaries Payable | | 567,300 | | 438,100 |
| Payroll Taxes Payable | | 41,970 | | 32,230 |
| Other Accrued Expenses | | 113,671 | | 108,332 |
| Accrued Annual Leave | | 642,227 | | 679,710 |
| Deferred Revenue | | 25,899,032 | | - |
| **Total Liabilities** | $ | 27,316,611 | $ | 2,117,780 |
| | | | | |
| **Net Assets** | | | | |
| Without Donor Restrictions | $ | 3,815,788 | $ | 3,296,016 |
| With Donor Restrictions | | 250,170 | | 760,685 |
| **Total Net Assets** | $ | 4,065,958 | $ | 4,056,701 |
| | | | | |
| **TOTAL LIABILITIES AND NET ASSETS** | $ | 31,382,569 | $ | 6,174,481 |

SEE NOTES TO FINANCIAL STATEMENTS

NEW HAMPSHIRE PUBLIC DEFENDER
STATEMENT OF ACTIVITIES
FOR THE YEARS ENDED JUNE 30, 2022 AND 2021

|  | 2022 | 2021 |
|---|---|---|
| **CHANGES IN NET ASSETS WITHOUT DONOR RESTRICTIONS** | | |
| Revenues and gains | | |
| State Contract | $ 23,906,773 | $ 24,119,530 |
| Other Income | 184,725 | 3,328,098 |
| Interest Income | 9,257 | 17,535 |
| Total Revenues and Gains Without Donor Restrictions | 24,100,755 | 27,465,163 |
| | | |
| Net Assets Released from restrictions | | |
| Expiration of program restricitons | - | - |
| Total Net Assets Released from Restrictions | - | - |
| | | |
| Total Revenues, Gains and Other Support | | |
| Without Donor Restrictions | 24,100,755 | 27,465,163 |
| | | |
| **Expenses** | | |
| Program services | 22,491,765 | 21,938,952 |
| Administrative | 1,599,733 | 1,575,297 |
| | 24,091,498 | 23,514,249 |
| | | |
| INCREASE (DECREASE) IN NET ASSETS WITHOUT DONOR RESTRICTIONS | 9,257 | 3,950,914 |
| | | |
| **CHANGES IN NET ASSETS WITH DONOR RESTRICTIONS** | | |
| Return to State of New Hampshire - Unused Grant | - | (728,771) |
| Reduction in law library | - | (30,000) |
| | | |
| INCREASE (DECREASE) IN NET ASSETS WITH DONOR RESTRICTIONS | - | (758,771) |
| | | |
| INCREASE (DECREASE) IN NET ASSETS | 9,257 | 3,192,143 |
| | | |
| NET ASSETS AT THE BEGINNING OF THE YEAR | 4,056,701 | |
| As Previously Stated: | | 24,984,088 |
| Corrected for Deferred Revenue | | (24,119,530) |
| As Restated | | 864,558 |
| | | |
| NET ASSETS AT THE END OF THE YEAR | $ 4,065,958 | $ 4,056,701 |

NEW HAMPSHIRE PUBLIC DEFENDER
STATEMENTS OF FUNCTIONAL EXPENSES
FOR ITS YEARS ENDED JUNE 30,2022 AND 2021

| | Program Services | Administrative | 2022 Total | Program Services | Administrative | 2021 Total |
|---|---|---|---|---|---|---|
| **Expenses** | | | | | | |
| Personal Services | $ 14,315,195 | $ 1,081,907 | $ 15,397,102 | $ 13,915,127 | $ 1,074,816 | $ 14,989,943 |
| Payroll Taxes | 1,086,811 | 82,225 | 1,169,036 | 1,059,638 | 79,536 | 1,139,174 |
| Fringe Benefits | 4,037,557 | 302,934 | 4,340,491 | 3,756,081 | 290,200 | 4,046,281 |
| Insurance –Workers Compensation | 56,562 | 4,275 | 60,837 | 44,878 | 2,843 | 47,721 |
| Rent and Storage | 1,322,137 | 59,332 | 1,381,469 | 1,323,063 | 59,212 | 1,382,275 |
| Telephone | 181,018 | 11,554 | 192,572 | 185,195 | 11,731 | 196,926 |
| Travel | 152,211 | 9,715 | 161,926 | 38,301 | 13,423 | 51,724 |
| Repairs & Maintenance | 230,037 | 1,389 | 231,426 | 285,705 | 5,831 | 291,536 |
| Insurance -Malpractice/General | 43,752 | 2,793 | 46,545 | 53,958 | 2,193 | 56,151 |
| Training | 41,706 | 2,662 | 44,368 | 12,546 | 510 | 13,056 |
| Office Supplies | 52,479 | 3,350 | 55,829 | 60,893 | 3,857 | 64,750 |
| Other office Expense | 256,852 | 19,074 | 275,926 | 426,797 | 15,633 | 442,430 |
| Library | 34,475 | 2,200 | 36,675 | 22,300 | 906 | 23,206 |
| Utilities | 123,318 | 7,871 | 131,189 | 104,271 | 6,597 | 110,868 |
| Dues and Licenses | 73,494 | 3,523 | 77,017 | 76,526 | 3,111 | 79,637 |
| Contract Services | 85,590 | - | 85,590 | 195,715 | - | 195,715 |
| Professional Services | 119,201 | 4,929 | 124,130 | 113,458 | 4,898 | 118,356 |
| Interest | - | - | - | 3,260 | - | 3,260 |
| Depreciation | 279,370 | - | 279,370 | 261,240 | - | 261,240 |
| **Total Expenses** | $ 22,491,765 | $ 1,599,733 | $ 24,091,498 | $ 21,938,952 | $ 1,575,297 | $ 23,514,249 |

SEE NOTES TO FINANCIAL STATEMENTS

56

NEW HAMPSHIRE PUBLIC DEFENDER
STATEMENTS OF CASH FLOWS
FOR THE YEARS ENDED JUNE 30, 2022 AND 2021

|  |  | 2022 | 2021 |
|---|---|---:|---:|
| **Cash Flows from Operating Activities** |  |  |  |
| Increase (Decrease) in Net Assets |  | $ 9,257 | $ 3,192,143 |
|  |  |  |  |
| **Adjustments to Reconcile Increase (Decrease) in Net Assets to Net** |  |  |  |
| **Cash Flows Provided By (Used In) Operating Activities** |  |  |  |
| Non-cash items: | Depreciation | 279,370 | 261,240 |
|  | Debt Forgiveness | - | (3,056,242) |
|  | Law Library | - | 30,000 |
| **Changes in Assets and Liabilities** |  |  |  |
| (Increase) Decrease in: | Government Contract Receivable | (25,593,545) | 23,751,832 |
|  | Deposits and Other Receivables | 625 | 8,169 |
|  | Prepaid Expenses | 293,819 | (916) |
| Increase (Decrease) in: | Accounts Payable | (806,996) | 803,386 |
|  | Accrued Expenses | 106,796 | 119,749 |
|  | Deferred revenue | 25,899,032 | (24,119,530) |
| **Net Cash Provided By (Used In) Operating Activities** |  | 188,358 | 989,831 |
|  |  |  |  |
| **Cash Flows from Investing Activities** |  |  |  |
| Cash (Used) to Purchase Equipment and Leasehold Improvements |  | (74,343) | (507,154) |
| **Cash Flows from Financing Activities** |  |  |  |
| Borrowing on Note Payable |  | - | - |
| Repayment of Capital Lease Obligation |  | - | (39,120) |
| **Net Cash Provided By (Used In ) Financing Activities** |  | - | (39,120) |
|  |  |  |  |
| Increase (Decrease) in Cash |  | 114,015 | 443,557 |
| Cash at Beginning of Year |  | 4,826,156 | 4,382,599 |
| **Cash at End of Year** |  | $ 4,940,171 | $ 4,826,156 |
|  |  |  |  |
| **Supplemental Disclosures** |  |  |  |
| Interest Paid |  | $ - | $ 3,260 |

**SEE NOTES TO FINANCIAL STATEMENTS**

NEW HAMPSHIRE PUBLIC DEFENDER
NOTES TO FINANCIAL STATEMENTS
FOR ITS YEARS ENDED JUNE 30, 2022 and 2021

1. **Nature of Operations**
New Hampshire Public Defender (NHPD) is a non-profit corporation organized for the purpose of providing constitutionally required legal representation for indigent individuals in the criminal justice system in the State of New Hampshire. NHPD receives its funding from a two-year contract from the New Hampshire Judicial Council which is an executive branch agency of the State of New Hampshire.

2. **Summary of Significant Accounting Policies**

**General**
This summary of significant accounting policies of NHPD is presented to assist in understanding the financial statements. The financial statements and notes are representations of the organization's management, who is responsible for their integrity and objectivity. These accounting policies conform to generally accepted accounting principles and have been consistently applied in the presentation of the financial statements.

**Basis of Presentation**
The financial statements of the NHPD have been prepared on the accrual basis of accounting in accordance with accounting principles generally accepted in the United States of America.

NHPD reports information regarding its financial position and activities according to two classes of net assets: net assets without donor restriction and net assets with donor restriction. Accordingly, the net assets of NHPD and changes therein are classified and reported as follows:
   a) Net Assets Without Donor Restriction – Net assets that are not subject to donor-imposed stipulations.
   b) Net Assets With Donor Restriction – Net assets whose use is limited by donor-imposed time and/or purpose restrictions.

**Revenues**
Governmental and private grant arrangements are evaluated and determined if they are nonreciprocal, meaning the granting entity has not received a direct benefit of commensurate value in exchange for the resources provided. Instead, revenue is recognized as a conditional contribution, when the barrier to entitlement is overcome. The barrier to entitlement is considered overcome when expenditures associated with each grant are determined to be allowable and all other significant conditions of the grant are met.

NHPD's State contract covers a two-year period.

Interest, investment gains (losses), and other assets and liabilities are reported as increases or decreases in net assets without restrictions unless their use is restricted.

Other revenues are reported as increases or decreases in net assets without restrictions unless their use is restricted.

**Expenses**
Expenses are reported as a decrease in net assets without donor restrictions. Gains and losses are reported as increases or decreases in net assets without donor restrictions unless their use is restricted by explicit donor stipulation or by law. Expiration of net assets with donor restrictions (i.e., the donor-stipulated purpose has been fulfilled and/or the stipulated time period has elapsed) are reported as net assets released from restrictions.

**Use of Estimates**
The preparation of financial statements in conformity with accounting principles generally accepted in the United States of America (GAAP) requires management to make estimates and assumptions that affect the reported amounts of assets and liabilities and disclosures. Actual results could differ from these estimates.

58

**NEW HAMPSHIRE PUBLIC DEFENDER**
**NOTES TO FINANCIAL STATEMENTS (CONTINUED)**
**FOR ITS YEARS ENDED JUNE 30, 2022 and 2021**

## 2.  Summary of Significant Accounting Policies (Continued)

### Allocation of Functional Expenses
The costs of providing the various programs and other activities have been summarized in the Statement of Activities. Certain costs, including salaries and benefits, rent and utilities, have been allocated among the programs and supporting services benefited based on management's estimates.

### Statement of Cash Flows
Statement of Cash Flows shows cash and cash equivalents provided for and used by operating, investing, and financing activities. The Organization considers all highly liquid debt instruments purchased with a maturity of three months or less to be cash equivalents.

### Equipment and Leasehold Improvements
Equipment and leasehold improvements are recorded at cost. Assets acquired through capital lease agreements are recorded in accordance with accounting principles generally accepted in the United States of America, which require capitalization at their fair market value as of the date of the lease inception.

Property acquired in excess of $1000 is capitalized and depreciated using the straight-line method over the assets estimated useful life as follows:

| | |
|---|---|
| Computer and Office Equipment | 3-5 Years |
| Property Held Under Capital Leases | 5 Years |
| Leasehold Improvements | 5-10 Years |

All property has been acquired with funds from the State of New Hampshire which holds a reversionary interest in these assets.

Expenditures for repairs and maintenance are expensed when incurred. Assets sold or otherwise disposed of are removed from the accounts, along with the related depreciation allowance, and any gain or loss is recognized.

A summary of equipment and leasehold improvements is as follows:

| Equipment, Leasehold Improvements and Capital Lease | 2022 | 2021 |
|---|---|---|
| **Equipment and Leasehold Improvements** | | |
| Computer and Office Equipment | $  908,551 | $  990,634 |
| Leasehold Improvements | 1,204,248 | 1,204,248 |
| Less Accumulated Depreciation | (1,612,705) | (1,531,839) |
| Net Equipment and Leasehold Improvements | 500,094 | 663,043 |
| **Capital Lease** | | |
| Property Held Under Capital Lease | 332,054 | 332,054 |
| Less Accumulated Depreciation | (311,014) | (268,935) |
| Net Property Held Under Capital Lease | 21,040 | 63,119 |
| Total | $  521,134 | $  726,162 |

Depreciation expense includes the depreciation of assets held under capital leases. Depreciation expense was $279,370 and $261,240 for its years ended June 30, 2022 and 2021.

NEW HAMPSHIRE PUBLIC DEFENDER
NOTES TO FINANCIAL STATEMENTS (CONTINUED)
FOR ITS YEARS ENDED JUNE 30, 2022 and 2021

2.  **Summary of Significant Accounting Policies (Continued)**

**Law Library**
NHPD capitalizes the cost of books and multiple volume sets of law books and estimates the salvage value to be approximately the same as the original cost, therefore, depreciation expense is not recorded. Supplemental costs to update loose leaf and other continuously updated volumes are expensed.

The law library has been acquired with funds from the State of New Hampshire which holds a reversionary interest in these assets.  In 2021 management estimated $30,000 of its law library is obsolete and accordingly the law library has been reduced by $30,000.

3.  **Restatement of June 30, 2021 Financial Statements**

**State Contract**
The June 30, 2020 Financial Statements reported its contract revenue as an unconditional contribution rather than a conditional contribution pursuant to ASU 2018-08.  The effect is that 2020 revenue was reported as restricted revenue in the Statement of Activities instead of deferred revenue in the Statement of Financial Position.  The effect is a reduction of net assets with donor restrictions as of June 30, 2020.

The Organization has restated its beginning net assets with donor restrictions in its 2021 Financial Statements to reflect modifications to correct the 2020 error.

4.  **Liquidity And Availability of Financial Assets**
The following reflects the NHPD's financial assets as of the balance sheet date, reduced by amounts not available for general use because of contractual restrictions within one year of the balance sheet date.

|  | 2022 | 2021 |
|---|---|---|
| Financial assets at year-end: | | |
| Cash | $   4,490,171 | $   4,826,156 |
| State Contract Receivable | 25,593,545 | - |
| Financial Assets at End of Year | 30,533,716 | 4,826,156 |
| Less those unavailable for general expenditures within one year, due to: | | |
| Surplus for unexpended State Contract | - | 728,771 |
| Financial assets available to meet cash needs for general expenditure within one year | $   30,533,716 | $   4,097,385 |

NHPD is substantially supported by a restricted contract.  Because the restriction requires resources to be used in a particular manner or in a future period, NHPD must maintain sufficient resources to meet those responsibilities pursuant to the contract.  Thus, financial assets may not be available for general expenditures within one year.  As part of the Organization's liquidity management, it has a policy to structure its financial assets to be available as its general expenditures, liabilities and other obligations become due.  NHPD maintains cash in excess of daily requirements in its general operating bank account and earns interest.

5.  **Note Payable**
On June 30, 2020, the organization had a $3,056,242 unsecured loan due to the Small Business Administration (SBA) as part of the Coronavirus Aid, Relief and Economic Security Act's Paycheck Protection Plan (PPP).

Under the terms of the loan, all loan payments were deferred for six months through October 19, 2020, with monthly interest payments thereafter, at one percent per annum, and the entire loan balance due April 19, 2022.

The loan terms provide that a portion or all of the loan is forgivable to the extent that the organization uses loan proceeds to fund qualifying payroll, rent and utilities during a designated eight-week period.  As of May 21, 2021, the SBA has forgiven the entire $3,056,242 loan balance.  The forgiveness is reflected in other revenue in the financial statements.

NEW HAMPSHIRE PUBLIC DEFENDER
NOTES TO FINANCIAL STATEMENTS (CONTINUED)
FOR ITS YEARS ENDED JUNE 30, 2022 and 2021

6. **Lease Commitments**
NHPD has entered into various operating lease agreements for its facilities and office equipment.

**Facilities** - All lease commitments for office and storage space, except the Laconia location, are subject to termination by NHPD if funding contingencies set forth in the leases are not met. The estimated future minimum lease payments are as follows:

| Year Ending June 30, 2022 | Total Estimated Annual Lease Commitments |
|---|---|
| 2023 | $ 1,163,314 |
| 2024 | $ 1,018,258 |
| 2025 | $ 761,261 |
| 2026 | $ 670,292 |
| 2027 | $ 635,077 |

Rent expense, excluding storage, was $1,379,489 and $1,382,275 for its years ended 2022 and 2021, respectively.

**Equipment Leases** - The Organization has several equipment lease agreements for its office equipment.

Equipment lease expense was $69,721 and $93,334 for its year ended 2022 and 2021, respectively.

7. **Annual Leave**
All unused vacation time, in accordance with a formula, will be paid upon the termination of an employee. NHPD estimates this unused and accrued vacation pay to be $642,227 and $679,710 for its years ended June 30, 2022 and 2021, respectively.

8. **Income Taxes**
NHPD is exempt from Federal income taxes under Section 501(c)(3) of the Internal Revenue Code. NHPD is also exempt from New Hampshire income taxes and, therefore, has made no provision for Federal or State income taxes.

NHPD evaluates all significant tax positions. As of June 30, 2022, NHPD does not believe that it has taken any positions that would require the recording of any additional tax liability nor does it believe that there are any unrealized tax benefits that would either increase or decrease within the next year.

Penalties and interest assessed by income taxing authorities would be included in operating expenses.

Federal and State tax returns are generally available for examination by the taxing authorities for three years from the date of filing. As of June 30, 2022, those years are 2019 through 2022.

9. **Retirement Plan**
NHPD sponsors a defined contribution retirement plan pursuant to Internal Revenue Code Section 403(b) for all qualifying employees.

The Plan requires NHPD to match 50% of each participating employee's contribution, not to exceed 5% of their wages. NHPD contributed $268,162 and $287,274 for its years ended June 30, 2022 and 2021, respectively.

**NEW HAMPSHIRE PUBLIC DEFENDER**
**NOTES TO FINANCIAL STATEMENTS (CONTINUED)**
**FOR ITS YEARS ENDED JUNE 30, 2022 and 2021**

### 10. Concentrations

**Economic Dependency** - NHPD receives all its funding under a two-year contract with the State of New Hampshire which expires on June 30, 2023. The future existence of NHPD is solely dependent upon the State renewing the contract. The State of NH has a constitutional requirement to provide a "public defender program" for individuals who cannot afford legal representation. Management is unaware of any other organization that can provide these constitutionally mandated services. Accordingly, management believes its contract will be renewed.

**Cash** - NHPD maintains its bank accounts at one financial institution. The accounts regularly exceed the Federal Deposit Insurance Corporation insured amount of $250,000. The excess funds are secured by Letters of Credit.

**Grant Receivable** - Represents the second year of a two-year state contract. As of June 30, 2022, and 2021, the receivable is $25,593,545 and $0 respectively.

### 11. Other Revenue

|  | 2022 | 2021 |
|---|---|---|
| Debt forgiveness – note payable due to the Small Business Administration (see note 4) | $      - | $ 3,056,242 |
| Grants received during the year: | | |
| American Rescue Plan provided funding to hire attorneys who are currently in private practice. This grant is limited to $900,000 and expires June 30, 2023 | 175,591 | |
| Edward Byrne Memorial Justice Assistant Grant provided funding to hire social workers. This grant is limited to $75,000 and expires June 30, 2023. | 9,134 | |
| The Governor's Office for Emergency Relief and Recovery funding which reimburses NHPD for technology expenditures incurred for operational changes necessitated by the covid-19 pandemic. |   -   | 271,856 |
| Total | $   184,725 | $ 3,328,098 |

### 12. Accounts Payable – State of New Hampshire (Unused Grant)

The State contract, provided by the Judicial Council, requires NHPD to return its unused grant funds which, as of June 30, 2021, is $728,711. In 2020 NHPD borrowed $3,056,242 from the Small Business Administration (SBA) as part of the Coronavirus Aid Relief and Economic Security Act's Paycheck Protection Plan (PPP). These funds were used to pay NHPD's payroll, rent and utilities. Accordingly, NHPD did not use its grant funds for those expenses. Management has consulted with an attorney to determine if the $3,056,242 should be considered as part of the unused grant. The attorney could not reach a conclusion nor provide an opinion because of a lack of available legal precedent. NHPD informed the NH Judicial Council regarding the $3,056,242 and as of November 8, 2021 the Council has not determined if they will seek reimbursement. As of September 22, 2022 management has not been made aware of any changes in the Council's position. Accordingly, the financial statements do not reflect the additional $3,056,242 as a liability.

### 13. Subsequent Events

Management has evaluated subsequent events through September 22, 2022, the date on which the financial statements were available to be issued. There were no subsequent events that require recognition or additional disclosure in these financial statements.

# Appendix E

## Subcontractor Agreement

## AGREEMENT

This agreement is made and entered into by the New Hampshire Public Defender, (hereinafter "NHPD"), and _____, (hereinafter "Contractor").

WHEREAS, the New Hampshire General Court, has enacted RSA Chapter 604-8 to provide for a statewide Public Defender Program; and,

WHEREAS, NHPD has contracted with the Judicial Council of the State of New Hampshire to operate the Public Defender Program; and,

WHEREAS, the contract between the New Hampshire Judicial Council and NHPD permits NHPD to subcontract for attorney services to provide representation in Public Defender cases;

NOW THEREFORE, the parties agree as follows:

1. NHPD and Contractor agree that Contractor will provide representation to clients of the Public Defender program on a contract basis for the period _____through _____.

2. The parties understand and agree that in all respects Contractor performs the obligations under this agreement as an independent contractor; not as an employee or agent of NHPD.

3. None of the services called for in this agreement may be sub-contracted outside of contractor's firm. All cases assigned to contractor will be handled directly by contractor, or will be supervised by contractor.

4.    When Contractor represents a client under this agreement, the Contractor may not accept any fee or expense for the representation except as provided under this agreement.

5.    Contractor will communicate with NHPD Deputy Director _____ regarding case assignments.

6.    Contractor may utilize certain NHPD resources in representing clients pursuant to this agreement for discrete tasks, such as the preparation of the initial case file. All routine case preparation and client representation work shall be the responsibility of the Contractor. Access to expert professional services shall be through the process provided for by RSA 604- A:6.

7.    Contractor will provide representation consistent with the Rules of Professional Conduct, paying particular regard to the obligations under Rule 1.6 regarding confidentiality and under Rules 1.7 and 1.9 regarding conflicts of interest. In cases handled under this agreement, Contractor will not represent clients who could not be represented by NHPD, either because of the requirements of Rules l. 7 and 1.9 or by the imputed disqualifications requirements of Rule 1.10.

8.    In consideration of the services provided by the contractor, NHPD agrees to pay Contractor on a per-unit basis and shall be compensated according to the Contract Attorney Fee Schedule as established by the New Hampshire Judicial Council. The current rate is $300 per unit; and the current dollar value of a Felony case is $825.

9.    The parties agree that contractor shall receive____ units per month. This total may be adjusted by agreement of the parties during the course of the agreement, subject to the requirements of paragraph 12.

65

10.     The parties agree that the contractor shall be assigned (numbers and case type) cases

originating in the District and Superior Courts of Rockingham County. At

11.     At $300 per unit ____units per month, for ___ months; this agreement envisions

payments to the Contractor, if performance under the contract meets expectations of ____units

per month and is not terminated sooner than agreed, of approximately $_____. NHPD shall

make equal monthly payments of $ _____ beginning _____ and thereafter on the 30th

day of every month through _____. If necessary, any monthly payment will be reduced

or increased by the amount necessary to account for actual unit intake, extraordinary case

credit awarded, and other factors affecting unit value calculation.

12.     Contractor shall provide representation to each client through final disposition of the

client's case or cases. Contractor will not withdraw from the representation of a client unless

prior notification is given to Director _____. Contractor will receive full credit for all

representation undertaken on behalf of clients, even when the representation cannot be

conducted through final disposition, except in those instances in which withdrawal from a case

occurs without the performance of substantive work on behalf of the client. Any determination

regarding this provision shall be made by NHPD Director _____.

13.     Following final disposition in each case, Contractor shall submit to the office

administrator a closed cased card. Contractor shall send each client a closing letter explaining

the outcome of his or her case. Contractor shall maintain all case files until the conclusion of

this agreement or until final disposition of any case handled under this agreement, whichever is

later, at which time the files shall be turned over to NHPD for storage.

14.    When Contractor determines that the demands of a particular case required

exceptional time and energy, Contractor may apply to NHPD Director _____ for the

award of extraordinary case credit. The criteria and procedures shall be the same as those

described in the Judicial Councils Extraordinary Case Credit Guidelines.

15.    Contractor shall carry ·professional liability insurance in -the amount of $100,000/

300,000 at his own expense.

16.    This agreement may be terminated for cause immediately by NHPD through oral or

written notice to the contractor. This agreement may be terminated without cause by either

party upon thirty days' prior notice in writing.

17.    This agreement may be extended on the same terms on a month-to-month basis if

NHPD and the Contractor agree to do so.

IN WITNESS HEREOF, we have subscribed our hands, as representatives of the parties hereto, on

this ___ day of _____,2023.

FOR CONTRACTOR:

_____

FOR NH PUBLIC DEFENDER:

_____

Sarah Rothman
Executive Director

# Appendix F

## Senior Staff Resumes

**SARAH ROTHMAN**
10 Ferry Street, Suite 434, Concord, NH 03310
(603)-224-1236

**EDUCATION**

**Northeastern University School of Law**, Boston, MA
J.D., May 2007

**Pennsylvania State University**, University Park, PA
B.A. *magna cum laude* in Journalism, Philosophy, and Political Science, May 2004

**EXPERIENCE**

**New Hampshire Public Defender**, Concord, NH                    Aug 2007 – present

- Executive Director (Aug 2022 – present): Establish strategic planning and goals for the program. Prepare the program's biennial budget. Compile statistical and other data as required and requested by the NHPD Board of Directors and the Judicial Council. Provide direct supervision of all program Directors and of the IT and HR managers. Monitor staff workloads and decide on staffing levels for branch offices. Evaluate and create program policies and procedures. Represent clients.

- Managing Attorney, Manchester office (April 2016 – Aug 2022): Responsible for the day-to-day operation of this office of over 50 people. Determined attorney and investigator caseloads. Acted as a liaison to courts and other criminal justice stakeholders to represent the interests of clients and staff. Represented clients.

- Member Hillsborough Superior Court North Drug Court Team (April 2016 – Aug 2022)

- Member Hillsborough Superior Court North New Hope Probation Team (Feb 2016 – Oct 2017)

- Mentoring Attorney (2010 – 2016)

- Neutral Attorney (2009 – present)

- Staff Attorney (Aug 2007 – April 2016)

**Advisory Board Member, NH Bail Fund,** Manchester, NH                    2020 – 2022
Provide advice and support to the members of this non-profit organization that posts bail for indigent defendants and advocates to abolish bail in NH.

**Rankin & Sultan**, Boston, MA                    Feb – May 2007
Legal Intern: Conducted legal research and drafted memoranda on a variety of criminal law issues for this criminal defense law firm.

**Elliot Weinstein, Esq.,** Boston, MA                    Sept – Nov 2006
Legal Intern: Conducted legal research and drafted memoranda on a variety of criminal law issues for this solo practitioner criminal defense attorney.

69

**Massachusetts Correctional Legal Services**, Boston, MA                    March – May 2006
<u>Legal Intern</u>: Assisted prisoners with constitutional claims against correctional institutions. Advocated for clients to prison officials and healthcare providers.

**Crime and Justice Institute**, Boston, MA                    Sept – Nov 2005
<u>Legal Intern</u>: Assisted with research project examining recidivism in the U.S. Conducted interviews with prison officials nationwide regarding re-entry resources.

**The Daily Collegian**, University Park, PA                    Jan 2001 – May 2004
<u>Editor</u>: Managed staff reporters, edited content, and wrote news stories at this daily student newspaper with 20,000 circulation.

**Massachusetts State Representative Geoffrey Hall**, Boston, MA                    May – August 2001
<u>Legislative Intern</u>: Conducted research to compose analytical reports on various political issues, including property taxes and elder housing. Reviewed and summarized proposed legislation.

## Catherine J. Flinchbaugh

10 Ferry Street, Suite 434 • Concord, New Hampshire • cflinchbaugh@nhpd.org • (603) 224-1236 (w)

**EXPERIENCE**

**New Hampshire Public Defender**, Concord, New Hampshire
*Director of Legal Services*, November 2022–present
- Provide leadership to ensure the efficient delivery of services to staff and clients. Primarily responsible for: conflict-of-interest policies and resolutions, ineffective assistance of counsel claims, issues involving the Attorney Discipline Office, status-of-counsel claims in major felony cases and training around those claims, caseload management across the state, and handling of ethics questions and trainings.
- In conjunction with NHPD's executive team, resolve employee relation issues and supervise the managing and assistant managing attorneys.
- Maintain active caseload.

**University of New Hampshire, Franklin Pierce School of Law**, Concord, New Hampshire
*Adjunct Professor*, Spring semesters 2020, 2023
- Criminal Procedure II: The Law of Criminal Adjudication

**New Hampshire Public Defender**, Concord, New Hampshire
*Managing Attorney of the Concord Office*, February 2018–November 2022
- Supervised a large trial office comprised of staff attorneys, investigators, a social worker, and support staff in our joint effort to represent indigent clients.
- Litigated substantial caseload.

**New Hampshire Public Defender**, Concord, New Hampshire
*Staff Attorney*, August 2010–January 2018
- Represented indigent clients accused of criminal and juvenile offenses in the NH Circuit Courts, Family Courts, and Superior Courts; argued before NH Supreme Court; appeared before the NH Adult Parole Board on behalf of parolees; mentored legal interns and newly admitted attorneys; reviewed the representation of clients for conflicts-of-interest; regularly updated sections of the NH Public Defender Practice Guide; and presented on various issues at internal trainings.

**New Hampshire Superior Court**, Nashua, New Hampshire
*Law Clerk*, August 2008–August 2010
- Researched and drafted legal orders in criminal, civil, and equity matters; provided in-court assistance to judges; participated daily in discussions with judges regarding legal issues; and assisted court staff with administrative needs.

**EDUCATION**

**Vermont Law School**, South Royalton, Vermont
Juris Doctor, *magna cum laude*, May 2008

**Kansas State University**, Manhattan, Kansas
Bachelor of Science, *cum laude*, History, May 2005

**SERVICE ON BOARDS**

Member, New Hampshire Legal Assistance Board of Directors, June 2021–present

Member, Citizens' Advisory Board of the NH State Prison for Men, December 2018–present

Member, Manchester, New Hampshire Planning Board, 2015–June 2018

**Mary B. Hawkes**
10 Ferry St., Suite 434 Concord, NH 03301

Bar Memberships:
New Hampshire Bar and Maine Bar, both September, 1992

Education:
**University of Maine School of Law, Portland, Maine**- JD May 1992
Student Attorney, Cumberland Legal Aid Clinic, Portland, Maine: clinic work in criminal defense, family law, civil matters, and mediation. Hired for three semesters: work-study for summer 1990, full-time employment for summer 1991, and course credit for fall 1991

**University of Vermont, Burlington, Vermont**- BA Modern European History, May 1989
Editor, University of Vermont History Review
Phi Alpha Theta, National History Honors Society
University of Vermont Teaching Assistant, United States Race Relations
Keynote Speaker on panel for entire incoming class & Workshop Leader, University of Vermont's "Presidential Colloquium on Cultural Diversity and Race Relations"

Legal Experience:
**Director of Client Services, New Hampshire Public Defender, Concord, NH,** 1998-present
Recruit, interview, hire, train, support, supervise, and evaluate staff investigators, staff social service advocates, and treatment coordinators state-wide. Craft policies and procedures for investigations, treatment coordination, and social service advocates programs. Monitor caseloads, hours, performance and make homicide and other special case assignments. Create, lead, train, and supervise investigator practice area groups.
Handle all other investigator, treatment coordinator, and social service advocate related issues, in the past this included testifying at the NH legislature regarding pending legislation, grant writing and grant maintenance for social service employees, appearing in court when investigators are testifying, representing NHPD in investigator union contract negotiations, and representing NHPD at the National Labor Board in response to a federal audit of the program.
Interview, hire, train, supervise and evaluate investigator interns and social service advocate interns statewide. Work with universities regarding placement and evaluation of interns.
Other current responsibilities include role as a hiring committee member for attorneys and acting as a conflict neutral.
Responsible for new initiatives (2022-present) to facilitate cultural competency trainings for all staff, explore creating affinity groups within NHPD, and explore the creation of a statistical tracking and analysis system for race-based data collected by NHPD.
Past responsibilities (from 1998-2022, under title of Director of Investigators, Social Workers, and Interns) also included oversight of the law internship program and acting as conflict neutral on all NHPD's homicides.

**Staff Attorney, Department for Children, Youth and Families, Portsmouth, NH,** 1995-1998
Represented DCYF in child abuse and neglect cases and parental rights termination cases

**Certified Guardian Ad Litem** 1995-1998
Assigned by Rockingham, NH Probate Court to adoption cases as a Guardian Ad Litem

**Staff Attorney, New Hampshire Public Defender, Manchester and Stratham, NH offices**
1992-1995
Represented indigent clients facing juvenile, misdemeanor, and felony charges

MEREDITH LUGO
10 Ferry Street, Suite 434
Concord, NH 03301
Cell ▮▮▮▮▮▮▮▮▮
mlugo@nhpd.org; ▮▮▮▮▮▮▮▮▮▮▮

## Experience

**New Hampshire Public Defender**, Director of Litigation, November 2022 – present
- Assign, oversee and assist on homicide cases
- Provide supervision and support to practice groups
- Maintain and update litigation resources, including motion bank, practice guide, sentencing comparisons
- Assist attorneys with novel or specialized litigation issues
- Assist in assignment of major felony cases statewide, development of training, and hiring and supervision of paralegals
- Maintain a limited caseload focused on complex litigation issues

**New Hampshire Public Defender**, Staff Attorney, August 2002 – November 2022
- Conduct bench and jury trials representing juveniles and adults charged in state court with misdemeanors and felonies, including Aggravated Felonious Sexual Assault, Manslaughter, and First and Second Degree Murder
- Briefed and argued appeal to the New Hampshire Supreme Court – *State v. Andrew Farrington*, 161 N.H. 440 (2011)
- Mentor and supervise interns and junior attorneys
- Conduct trainings for fellow attorneys, with topics including Competency, Superior Court Practice, Search and Seizure, and Defending Sex Cases, as well as participating in mock trials for new attorneys
- Member of the Trial Skills Team since 2017
- Small group leader at yearly trainings since 2018

**Keene State College**, Adjunct Faculty Member, 2012 – present
- Introduction to Criminal Justice Studies, one semester
- Constitutional Law, multiple semesters

## Associations and Awards

New Hampshire Association of Criminal Defense Lawyers
Board member 2008-2011; Treasurer, 2011-2022
Champion of Justice recipient, 2021

## Presentations

Co-Chair, Sentencing Realities in a New Era, New Hampshire Association of Criminal Defense Lawyers, October 2009, Concord, NH

Co-Presenter, *Making and Responding to Objections*, Anatomy of a Criminal Jury Trial, New Hampshire Bar Association, November 2010, Concord, NH

Co-Presenter, *Countering Trickery in Openings and Closings,* Kids, Computers, and Confabulation, New Hampshire Association of Criminal Defense Lawyers, October 2011, Concord, NH

Presenter, *Eyewitness Identification,* Spring Training, New Hampshire Public Defender, May 2017, Concord, NH

Presenter, *Defense-Initiated Victim Outreach*, Sentencing Assistance, New Hampshire Association of Criminal Defense Lawyers, May 2020

Co-Presenter, *Violations of the Right to Discovery*, The Right to Discovery, New Hampshire Public Defender, December 2020

Co-Presenter, *Ethics and Difficult People,* Back to the Courtroom, New Hampshire Association of Criminal Defense Lawyers, November 2021, Manchester NH

## Education

**William and Mary School of Law**, Williamsburg, Virginia
*Juris Doctor*, 2002
*Summa cum laude*, Valedictorian

**Boston College,** Chestnut Hill, Massachusetts
B.A. in History, 1999
*Summa cum laude*

# AMY B. MAILHOT, CPA
10 Ferry St., Suite 434 Concord, NH 03301



## PROFILE:
♦ Demonstrated ability to coordinate, manage and prioritize multiple complex projects
♦ Goal oriented, self-motivated, team player with the ability to work well in a collaborative environment
♦ Strong problem solving and analytical skills
♦ Excellent communications, leadership, interpersonal and organizational skills
♦ Skilled in the planning and implementation of policies and procedures with respect to process management, strategic and organizational planning, business operations and administration
♦ Proven ability to interface with all levels of an organization, to lead, to motivate and to ensure completion of assignments within the time allotted.
♦ Experience with Microsoft Office, QuickBooks, AccuFund, Paylocity, Prosystem*fx* suite, MTS, Peachtree/Sage, CCH Intelliconnect Research Products, CS Professional Suite

## PROFESSIONAL EXPERIENCE:
**Director of Finance**, July, 2022 to Present
**New Hampshire Public Defender**, Concord, NH

♦ Responsible for the business and financial operations of the program
♦ Assist in development of and subsequent adherence to the 25 million dollar annual budget
♦ Preparation, analysis and presentation of quarterly reports to the Finance Committee, Board of Directors and State of NH Judicial Council
♦ Projections and development of other statistical information as requested the executive team, Board of Directors and Judicial Council
♦ Work collaboratively with the executive team in setting program goals and policies
♦ Administer payroll processing and ensure compliance for 250 employees
♦ Responsible for facilities management and improvements, landlord relations and lease negotiations for 10 sites
♦ Coordinate annual independent audits of financial statements and retirement plan

**Finance Director**, July, 2020 to July, 2022
**Boys and Girls Club of Souhegan Valley**, Milford, NH

♦ Responsible for maintaining, analyzing, and interpreting the general ledger
♦ Development of and subsequent adherence to the 2 million dollar annual budget
♦ Preparation, analysis and presentation of monthly reports to the Finance Committee
♦ Ensure compliance with financial policies and procedures as well as ensuring appropriate controls are in place
♦ Collaborate with management team to develop strategic plans and policies
♦ Oversee human resources functions
♦ Provide technical assistance to directors and managers in matters of financial operations
♦ Manage the annual independent audit
♦ Maintain federal grant awards records and prepare related reporting and drawdowns
♦ Manage accounts receivable, accounts payable and cash management functions

75

**Audit and Tax Manager,** December, 1997 to July. 2020
**F.G. Briggs, Jr., CPA, Professional Association,** Manchester, NH

- ♦ Performed nonprofit audit engagements in accordance with Generally Accepted Auditing Standards and OMB Circular A-133/Uniform Guidance, including Governmental and HUD entities
- ♦ Audited, reviewed and compiled financial statements for nonprofit and commercial entities in accordance with Generally Accepted Accounting Principles
- ♦ Prepared financial statements from client's original books and records
- ♦ Assisted clients in complex analysis, reconciliations and recording procedures, relating to investment and endowment funds
- ♦ Performed a full range of compliance work for entities including individual, corporate, partnership, estate, fiduciary, gift and nonprofit/UBIT as well as year end and long-term planning
- ♦ Trained and mentored several junior staff accountants and interns in all aspects of office procedures, efficient use of software and accounting and tax procedures
- ♦ Advised various clients in development, implementation and monitoring of internal control policies and procedures
- ♦ Assisted clients in the budgeting process, forecasting and cash flow analysis
- ♦ Assisted 10 clients in conversion to automated general ledger systems and provided continuing technical assistance

**Custody Accountant,** June, 1997–October, 1997
**Investors Bank & Trust Company,** Boston, MA

- ♦ Calculated the Net Asset Value and price for five funds on a daily basis
- ♦ Reconciled cash and securities holding discrepancies
- ♦ Prepared daily and monthly financial statements for each fund

**EDUCATION/ PROFESSIONAL AFFILIATIONS:**

**Southern NH University** (formerly NH College), Manchester, NH
Master of Business Administration, September, 2002
Master of Science in Accounting, May, 2003

**Bryant College,** Smithfield, RI
Bachelor of Science in Business Administration, May, 1997
Concentration: Financial Accounting

**Granite State Dog Recovery,** Treasurer, 2011- Present
**Manchester Community Resource Center, Inc.,** Board Member, 2004-2006

76

# Kyle David Robidas

10 Ferry St., Suite 434 Concord, NH 03301

## EDUCATION / LICENSING

**New Hampshire Bar Association**                                    Admitted May 17, 2013
**University of New Hampshire School of Law,** Concord, N.H.          May 18, 2013
  - Daniel Webster Scholar - One of twenty-two students accepted into a two-year bar practicum.
**Norwich University,** Northfield, V.T.                              May 16, 2010
  - Graduated Summa Cum Laude
  - Bachelor of Arts in Criminal Justice with a Minor in Forensic Psychology

## WORK EXPERIENCE

**New Hampshire Public Defender,** Manchester N.H.                    (September 2013 to Present)
  - Director of Professional Development                              (August 2022 to Present)
    - o  Provide leadership to managing attorneys while still maintaining a limited case load. Responsibilities in
         this position fall into three main categories: First recruiting and hiring of attorneys and interns; Second
         training of staff attorneys and interns; and third assisting managers with performance issues and
         evaluations.
  - Staff Attorney                                                    (September 2013 to August 2022)
    - o  Providing representation in juvenile cases, misdemeanor cases, felony cases, and homicide cases.
  - Trial Skills Training Attorney                                    (February 2019 to Present)
    - o  Part of a group of attorneys assigned to teach trial skills to new attorneys at the New Hampshire Public
         Defender and conduct advanced trial skills trainings to more experienced attorneys
  - Member of the Hillsborough County Superior Court North Drug Court Team     (October 2016 to August 2022)
    - o  One of two Defense Attorneys on an interdisciplinary team for Hillsborough County North
  - Mentoring Attorney                                                (August 2016 to August 2022)
    - o  Assigned to mentor and supervise new attorneys at the New Hampshire Public Defender
  - Neutral Attorney                                                  (June 2016 to Present)
    - o  Assigned to make conflict resolutions under the New Hampshire Rules of Professional Conduct
  - Defense Liaison for the Manchester District Veterans Court        (May 2016 to Present)
  - Member of the Hillsborough County Superior Court North New Hope Team   (October 2014 to October 2017)
**Raimo, Murphy PC,** Manchester, NH                                  (May 2011 to September 2013)
  - The firm practices criminal defense, family law, and civil litigation. I was responsible for conducting legal
    research, drafting substantive motions, and acting as the firm's private investigator.
**Externship with The New Hampshire Public Defender's Office,** Concord N.H.   (January 2013 to May 2013)
**Ducret's Sporting Goods,** Colebrook, N.H.                          (April 2004 to January 2014)
**Balsams Grand Resort,** Dixville Notch, N.H.                        (May 2009 to January 2011)

## TRAINING / EXPERIENCES

**New Hampshire Public Defender**                                    (September 2013 to Present)
  - The N.H. Public Defender's Office requires all attorneys to go through a rigorous 5 week in house training
    program prior to starting, it then sponsors yearly in house CLE programs, and sends attorneys to more specialized
    training throughout the year.
  - Some of the more specialized training I have attended included: National Drug Court Institute Certification
    Training, Accident Reconstruction Training, Overdose Caused Death Resulting Training, New Hampshire
    Forensic Science Training, Advanced Cross Examination Training, Insanity Defense Training, the New England

77

District Juvenile Immersion Training, Drug Court Team Tune Up Training, New Hampshire State Peer Review Training, and the New Hampshire Treatment Court Conference Training in 2017, 2018, 2019, 2020, and 2021.
- In June of 2017 I attended Georgetown Law's Juvenile Emersion Training Academy in Washington D.C.
- In July 2017 I attended the National Association of Drug Courts Annual Conference in Washington D.C.

**UNH School of Law Clinical Programs,** Concord, N.H.                                    (January 2012 to December 2012)
- Consumer and Commercial Practice Clinic; Criminal Practice Clinic; Advanced Criminal Practice Clinic. In each of the clinics, as a Rule 36 Attorney, I represented clients in every aspect of their legal proceedings.

**Corps of Cadets**                                                                       (August 2006 – May 2010)
- Norwich is the oldest private Military Academy in the United States. The Cadet lifestyle is an army-based model of leadership training. I ultimately rose to the rank of a Cadet Major on the Regimental Headquarters Staff.

**Air Force ROTC**                                                                        (August 2006 – May 2009)
- Honorably Discharged from the United States Air Force Reserve in order to attend law school
- Attended Professional Development Training at Holloman Air Force Base, New Mexico. (June 2007 – July 2007)
- Graduated from Officer Field Training at Maxwell Air Force Base, Alabama.        (June 2008 – July 2008)

## VOLUNTEER SERVICE

**N.H. Bar Board of Governors**                                                          (July 2022 to Present)
- Hillsborough County North Governor

**N.H. Attorney Discipline Hearings Committee** - Appointed by N.H. Supreme Court    (July 2021 to Present)

**Teen Court,** Concord, N.H.                                                            (September 2010 to May 2013)
- Teen Court is a diversion program in Merrimack County where juvenile offenders participate in a judicial review and a trial administered by their peers in front of a District Court judge..

**AmeriCorps,** Northfield, V.T.                                                         (April 2007 – September 2010)
- I was the AmeriCorps Team Leader from 2009-2010, managing 21 Volunteer leaders in the Central Vermont.
- Fulfilled a one-year-contract serving 300 community service hours and a two-year-contract completing 900 hours.
- I worked on a variety of service projects throughout the U.S., focusing primarily on youth-based service.
- While I was the team leader when the Norwich University AmeriCorps team received the Outstanding Community Service Award from the Vermont State Governor.

**Guys Only,** Northfield, V.T.                                                          (October 2006 – May 2010)
- Served as Program Director
- Guys Only worked with middle school and high school teens in the greater Northfield area. It empowered teenagers to live better lives through fun recreational and educational activities. The program focused on the concepts of empowerment through respect, teamwork, integrity, service, and leadership.

## AWARDS AND ACHIEVMENTS

**University of New Hampshire School of Law**
- The National Trial Competition

**Norwich University**
- Alpha Phi Sigma (National Criminal Justice Honor Society)
  - Attended National Convention in San Diego to receive the National Member of the Year Award (2010)
- Norwich University Leader of the Year (2008 to 2009)
- The David L. Anderson Memorial Award for Criminal Justice (February 2010)
- Commandant's Award for Excellence (October 2009)
- Corps of Cadets Meritorious Service Award – The highest award that can be given to a cadet for exemplary service to the Corps of Cadets (April 2009)

**Volunteer Awards**
- The Greater Northfield Coalition Council Asset Builder Award (June 2010)
- The President of the United States Gold Volunteer Service Award (2006)
- Prudential Spirit of Community Award of Excellence, as the top 10% of the finalists for the state of VT (2006)
- Eagle Scout (May 2001)

**Kyle Robidas**

# JENNIFER LILLIAN UHOUSE

## EDUCATION

**UNIVERSITY OF NEW HAMPSHIRE FRANKLIN PIERCE SCHOOL OF LAW**, Concord, NH
Juris Doctor, 2012
> *Webster Scholar*, Daniel Webster Scholar Honors Program – Admitted to NH Bar on May 18, 2012

**UNIVERSITY OF NEW HAMPSHIRE**, Durham, NH
Bachelor of Arts in Psychology, with a concentration in Justice Studies, 2008

## RELEVANT EXPERIENCE

**NEW HAMPSHIRE PUBLIC DEFENDER**, Concord, NH

| | |
|---|---|
| May 2020 to Present | *Director of Administrative Services (formerly titled Manager of Administrative Services)* Ensure efficient and effective support for NHPD's direct client services by providing oversight of the day-to-day operations of the support staff. Primary responsibilities include supervising, supporting, training, and recruiting Office Administrators, Conflict Case Administrators, Paralegals, and the Case Resolution & Database Administrator; oversee the yearly culling project; communicate with the Judicial Council to ensure payment to registered vendors; act as a conflict neutral; and maintain a limited caseload as required. |
| August 2012 April 2020 | *Staff Attorney, Intern & New Lawyer Mentor, & Member of Hiring Committee* Represent indigent defendants at all stages of criminal proceedings; supervise and mentor new lawyers and interns practicing under Rule 36; attend recruiting events and interview prospective candidates for staff attorney positions at NHPD. |

**HILLSBOROUGH SUPERIOR COURT SOUTH**, Nashua, NH

| | |
|---|---|
| Spring 2012 | *Extern Law Clerk for the Honorable Jacalyn Colburn* Observe court proceedings and draft orders for the Court's review. |

**NEW HAMPSHIRE PUBLIC DEFENDER**, Manchester, NH

| | |
|---|---|
| Summer 2011 | *Rule 36 Legal Intern* Co-counsel in bench trials; research and draft motions to suppress and motions to dismiss; argue bail hearings and probable cause hearings; interview clients. |

**THE OFFICE OF THE COLORADO STATE PUBLIC DEFENDER**, Golden, CO

| | |
|---|---|
| Summer 2010 | *Legal Intern* Research and draft appellate briefs; assisted attorneys with *voir dire*; review discovery with clients in custody; organize incoming discovery and trial notebooks. |

**MORRISON MAHONEY**, Manchester, NH

| | |
|---|---|
| August 2008 to February 2009 | *Legal Assistant* Manage incoming and outgoing discovery correspondences relating to medical records; assist partners with trial preparation; draft deposition summaries and bill time. |

**COAKLEY & HYDE**, Portsmouth, NH

| | |
|---|---|
| January 2008 to May 2008 | *Legal Intern* Draft and file correspondences; contact and develop relationships with clerks, clients, and attorneys, including review of documents directly with clients. |

79

# Appendix G

## Certificates of Insurance

Client#: 1739328    NEWHAM16

**ACORD**™    **CERTIFICATE OF LIABILITY INSURANCE**    DATE (MM/DD/YYYY)
3/27/2023

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer any rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Michelle Arsenault | | | |
|---|---|---|---|---|
| USI Insurance Services LLC<br>12 Gill Street, #5500<br>Woburn, MA 01801<br>855 874-0123 | PHONE (A/C, No, Ext): 877 396-3800 | | FAX (A/C, No): 877-775-0110 | |
| | E-MAIL ADDRESS: michelle.arsenault@usi.com | | | |
| | INSURER(S) AFFORDING COVERAGE | | | NAIC # |
| | INSURER A : Selective Insurance Co of the Southeast | | | 39926 |
| INSURED<br>New Hampshire Public Defender Inc<br>10 Ferry Street, Suite 434<br>Concord, NH 03301 | INSURER B : CNA Insurance Companies ( Surety) | | | A18313 |
| | INSURER C : | | | |
| | INSURER D : | | | |
| | INSURER E : | | | |
| | INSURER F : | | | |

**COVERAGES**    CERTIFICATE NUMBER:    REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | X COMMERCIAL GENERAL LIABILITY<br>CLAIMS-MADE X OCCUR | | | S2444686 | 07/01/2022 | 07/01/2023 | EACH OCCURRENCE | $1,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $500,000 |
| | | | | | | | MED EXP (Any one person) | $5,000 |
| | | | | | | | PERSONAL & ADV INJURY | $Included |
| | GEN'L AGGREGATE LIMIT APPLIES PER:<br>X POLICY PRO-JECT LOC<br>OTHER: | | | | | | GENERAL AGGREGATE | $2,000,000 |
| | | | | | | | PRODUCTS - COMP/OP AGG | $2,000,000 |
| | | | | | | | | $ |
| A | AUTOMOBILE LIABILITY<br>ANY AUTO<br>OWNED AUTOS ONLY SCHEDULED AUTOS<br>X HIRED AUTOS ONLY X NON-OWNED AUTOS ONLY | | | S2444686 | 07/01/2022 | 07/01/2023 | COMBINED SINGLE LIMIT (Ea accident) | $1,000,000 |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| A | X UMBRELLA LIAB X OCCUR<br>EXCESS LIAB CLAIMS-MADE<br>DED RETENTION $ | | | S2444686 | 07/01/2022 | 07/01/2023 | EACH OCCURRENCE | $3,000,000 |
| | | | | | | | AGGREGATE | $3,000,000 |
| | | | | | | | | $ |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY Y/N<br>ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? N/A<br>(Mandatory in NH)<br>If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | PER STATUTE / OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |
| B | Lawyers Prof | | | LAS596604369 | 08/01/2022 | 08/01/2023 | 2,000,000 each claim<br>2,000,000 aggregate | |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| NH Judicial Council<br>25 Capital Street, Room 120<br>Concord, NH 03301 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.<br><br>AUTHORIZED REPRESENTATIVE<br><br>*Rose Duffy* |

© 1988-2015 ACORD CORPORATION. All rights reserved.

ACORD 25 (2016/03)    1 of 1    The ACORD name and logo are registered marks of ACORD
#S39532416/M39532400    MZACV

81

This page has been left blank intentionally.

# Appendix H

## Letters of Recommendation

# OFFICE OF THE MERRIMACK COUNTY ATTORNEY

ASSISTANT COUNTY ATTORNEYS
Susan M. Venus
Marianne P. Ouellet
Cristina E. Brooks
Carley McWhirk
Casey M. Callahan
Melinda M. Simnian
Jonathan L. Schulman
Matthew J. Flynn
Molly V. Lovell
Melissa A. Kowalewski
Steven R. Endres
Terri M. Harrington
Sarah E. Rogers
J. Brad Bolton
Shaylen E. Roberts



**Paul A. Halvorsen**
**County Attorney**

Four Court Street
Concord, New Hampshire 03301-4336
Telephone: (603) 228-0529 Fax: (603) 226-4447

George B. Waldron
DEPUTY COUNTY ATTORNEY

Wayne P. Coull
DEPUTY COUNTY ATTORNEY

OFFICE ADMINISTRATOR
Donna Barnett

VICTIM/WITNESS PROGRAM
Sarah L. Heath
Jessica L. Clarke
Jacqueline L. Lawrie
Kelsey Heinemann

INVESTIGATORS
Stacey F. Edmunds
Michael A. Russell

April 6, 2023

Attorney Richard Samdperil
Acting Executive Director, New Hampshire Judicial Council
25 Capitol Street
Room 120
Concord, NH 03301

Attorney Samdperil:

As the process proceeds toward reviewing proposals for statewide defense services, I wanted to write to support the New Hampshire Public Defender in their application. While many in New Hampshire can comment on the services and skills of those in the Public Defender's office I believe I am one of a small group of attorneys who is able to comment from multiple perspectives. As a prior Public Defender employee as well as a 20-year prosecutor I've worked with multiple Public Defender staff attorneys in many courts. I've also had the opportunity to work with several managing attorneys prior to and now in my role as Merrimack County Attorney. Accordingly, I believe I have a good perspective of the overall skills and dedication throughout the Public Defender Program.

The hiring, training and placement process within the Public Defender is well developed and, I understand, has been a model for other states – certainly high praise. The Public Defender certainly works hard to function as a cogent team to advocate for their clients. This is not as easy to accomplish as it sounds. Their senior management staff work hard to "get it done" – the "it" being solid training and staff organization. In the end they serve their clients well.

Page 1 of 2

The Public Defender managing attorneys and senior leadership I dealt with for over two decades have all been suited for the role and all came into their management positions having prior experience as Public Defender staff attorneys. The process of promoting from within has added value that supports the Public Defender mission. The professional relationships in the legal community that are developed as a staff attorney carry over to the role of managing attorney and, ultimately, carry forward with managing attorneys who later move to senior management positions. These relationships allow for frank and productive discussions with the State's prosecutors and the courts.

It is also worth mentioning the relationships I've seen between Public Defender staff attorneys and staff prosecutors for the State. It's been my personal experience and observation that there is a great degree of professionalism within the Public Defender program. The ability of staff to balance aggressive advocacy with a professional approach to the practice of law is well done within the Public Defender program and certainly develops mutual respect with prosecutors. The advocacy and professionalism within the Public Defender program allows our adversarial system to work well.

In the long run, the established Public Defender team is well positioned to continue service to their clients now and into the future. I am confident that the proposal to be put forward by the Public Defender will allow them to continue their service and I urge the Judicial Council to look upon the proposal favorably.

Paul Halvorsen
Merrimack County Attorney

Page 2 of 2

85

# Clerk of Superior Court
## Northern District of Hillsborough County

300 CHESTNUT STREET
MANCHESTER, NH 03101

W. MICHAEL SCANLON, ESQ., CLERK                          TELEPHONE: 1-855-212-1234
NANCY L. WICKWIRE, ESQ., DEPUTY CLERK
SUSAN M. CORCORAN, ADMINISTRATIVE ASSISTANT
JULIE L. KELLER, ADMINISTRATIVE ASSISTANT

April 4, 2023

Richard Samdperil, Executive Director
New Hampshire Judicial Council
25 Capitol St. Room 424
Concord, NH 03301-6312

RE:  Public Defender Proposal to Provide Indigent Defense Services

Dear Director Samdperil:

I am pleased to submit this letter of recommendation in support of the New Hampshire Public Defender proposal to provide indigent defense services to the people of the State of New Hampshire. The observations I make are based on over 30 years of positive interaction with the Public Defender Program in Hillsborough County. I have been deputy clerk in both Hillsborough County Superior Court North and South, and for the past eight years, I have been clerk of the Superior Court in the Northern District.

As you may know, Hillsborough County Superior Court, North, is the busiest trial court in the state of New Hampshire. Last year, our criminal docket exceeded three thousand new entries. Attorneys from the New Hampshire Public Defender were assigned to the vast majority of these cases, in addition to most re-entries. I, along with my staff, have regular daily contact with public defender staff attorneys. Consistent with my observations over the many years I have served as a court clerk, I have found that all staff attorneys are well trained and always prepared. The attorneys are extremely dedicated, ethical and work hard for their respective clients. They present with a high level of professionalism and interact well with court staff and members of the County Attorney's office. I am confident my staff would concur with this assessment. The caliber of the attorneys we interact with each day clearly reflects a superior hiring policy, which undoubtedly emphasizes excellence and a commitment to exceptional client representation. I consistently advise criminal defendants to consider the public defender for representation, and I always do so without hesitation.

I have also had many occasions to interact with the leadership of the Public Defender. The degree of professionalism and dedication is unmatched. I am always impressed with the profound concern that is displayed regarding client representation and the willingness to work with the court to resolve issues or implement new programs. I have had nothing but positive experiences over the years. Public Defender leadership is genuinely and quickly responsive to any issues that may need to be addressed, and this responsiveness has remained consistent over time. In relation to this, we have established a practice of meeting monthly with local Public Defender leadership. This allows us to quickly address issues and to maintain open and regular communication. In my opinion, this illustrates the commitment of the program to provide superior indigent defense services.

Overall, the New Hampshire Public Defender Program has proven itself to be a great service provider to the people of the State of New Hampshire. I express this opinion without reservation, and strongly support the

86

organization's proposal for contract renewal.    If you should have any questions or concerns, please do not hesitate to contact me.

Respectfully,

W. Michael Scanlon

W. Michael Scanlon
Clerk of the Superior Court
Northern District of Hillsborough County

87

# The State of New Hampshire
# Trial Court Center



| David D. King | Susan W. Ashley | Tina L. Nadeau |
|---|---|---|
| *Administrative Judge* | *Deputy Administrative Judge* | *Chief Justice* |
| *Circuit Court* | *Circuit Court* | *Superior Court* |

April 6, 2023

Richard Samdperil, Esq., Acting Executive Director
New Hampshire Judicial Council
25 Capitol Street, Room 424
Concord, NH 03301

> Re: New Hampshire Public Defender Program
> <u>Proposal to Provide Indigent Defense Services</u>

Dear Richard:

We understand that the Public Defender Program is submitting a proposal to provide statewide indigent defense services in the next biennium. We write in support of the organization's proposal. For many years this program has had a history of providing quality representation to indigent defendants and juveniles in delinquency cases. The Courts benefit from having a public defender program that can provide representation to the vast majority of those charged with a crime, who cannot afford their own attorney.

While the program has struggled in some courts to remain current in taking appointments over the past many months, it is under new management who is working with the courts to address the backlogs. We remain committed to work with the public defender program as a credible partner in the justice system in New Hampshire to get back to a place where they are providing more uniform and reliable service in those courts that are currently running behind. We are optimistic that we will get beyond this and back to a place where timely appointments can be made state-wide.

Very truly yours,

David D. King
Administrative Judge

Tina L. Nadeau
Chief Justice

1 Granite Place, Suite N400, Concord, New Hampshire 03301-8541

88

# Appendix I

## Certificate of Good Standing

# State of New Hampshire
# Department of State

## CERTIFICATE

I, David M. Scanlan, Secretary of State of the State of New Hampshire, do hereby certify that NEW HAMPSHIRE PUBLIC DEFENDER is a New Hampshire Nonprofit Corporation registered to transact business in New Hampshire on May 06, 1985. I further certify that all fees and documents required by the Secretary of State's office have been received and is in good standing as far as this office is concerned.

Business ID: 83694
Certificate Number: 0006149392



IN TESTIMONY WHEREOF,
I hereto set my hand and cause to be affixed
the Seal of the State of New Hampshire,
this 14th day of March A.D. 2023.

David M. Scanlan
Secretary of State