# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
NH CIRCUIT COURT

## DOMESTIC VIOLENCE FINAL ORDER OF DISMISSAL

Case Number: 641-2021-DV-00070    PNO Number: 6412110070
Court: 10th Circuit - Family Division - Hampton
Court ORI: NH008021D
County: Rockingham
Address: 3 Timber Swamp Road  Hampton NH  03842

| PLAINTIFF | PLAINTIFF IDENTIFIERS |
|---|---|
| First  Middle  Last | Date of Birth of Plaintiff |
| Lindsay Smith | ▮1988 |

V.

| DEFENDANT | | | DEFENDANT IDENTIFIERS | | | |
|---|---|---|---|---|---|---|
| First | Middle | Last | DOB | ▮1965 | HEIGHT | 6 Ft. 0 In. |
| Richard Lorman | | | SEX | Male | WEIGHT | 275 Lbs. |
| **DEFENDANT'S ADDRESS:** | | | RACE | White | EYES | Blue |
| ▮▮▮ Wilton NH  03086 | | | State/Birth | | HAIR | |

The Court having jurisdiction over the parties and subject matter under New Hampshire RSA 173-B (Protection of Persons' from Domestic Violence), having considered the plaintiff's Domestic Violence Petition and having conducted a hearing on 10/20/21 of which the defendant received actual notice, and was ☐ / was not ☒ present, hereby finds that:

☒ The Plaintiff has NOT been abused as defined in RSA 173-B: CASE DISMISSED

☐ The plaintiff failed to appear: CASE DISMISSED

☐ Both parties appeared: CASE DISMISSED by agreement.

☐ CASE DISMISSED for reason (s) other than listed above: (please specify)

To grant a Final Order of Protection the court must find both that Defendant has abused the Plaintiff and that his conduct constitutes a credible present threat to Plaintiff's safety. On the evidence presented, the court cannot find that Defendant's conduct constitutes a credible present threat to Plaintiff's safety. As such, the Petition is dismissed.

**So Ordered:**

Date: 10/20/21

1-855-212-1234
Telephone Number of Court

Signature of Judge: *Polly L. Hall*
Polly L. Hall, Judge
Printed Name of Judge

NHJB-2580-DF (07/01/2011)

7

```
                                                                    1

 1                       STATE OF NEW HAMPSHIRE

 2          10TH CIRCUIT COURT - FAMILY DIVISION - HAMPTON

 3
     LINDSAY SMITH,                  )
 4                                   ) Family Division Case No.
                     Plaintiff,      ) 641-2021-DV-00070
 5                                   )
            vs.                      ) Hampton, New Hampshire
 6                                   ) October 20, 2021
     RICHARD LORMAN,                 ) 11:04 a.m.
 7                                   )
                     Defendant.      )
 8   _____ )

 9                 FINAL DOMESTIC VIOLENCE HEARING
                   BEFORE THE HONORABLE POLLY HALL
10           JUDGE OF THE CIRCUIT COURT - FAMILY DIVISION

11   APPEARANCES:

12   Pro Se Plaintiff:           Lindsay Smith
                                 (Address Unknown)
13
     Pro Se Defendant:           (No Appearance)
14
     Audio Operator:             Electronically Recorded
15                               **Not Monitored**

16   TRANSCRIPTION COMPANY:      eScribers, LLC
                                 7227 N. 16th Street, Suite 207
17                               Phoenix, AZ 85020
                                 (800) 257-0885
18                               www.escribers.net

19

20   Proceedings recorded by electronic sound recording; transcript
     produced by court-approved transcription service.
21

22

23

24

25
```



```
 1                         I N D E X
 2   WITNESS(ES)        DIRECT    CROSS    REDIRECT    RECROSS
 3   FOR THE PLAINTIFF:
 4   Lindsay Smith        5
 5
 6   WITNESS(ES)        DIRECT    CROSS    REDIRECT    RECROSS
 7   FOR THE DEFENDANT:
 8   NONE
 9
10   MISCELLANEOUS                                       PAGE
11   NONE
12
13   EXHIBITS                                       ID    EVD
14   NONE
15
16
17
18
19
20
21
22
23
24
25
```

1            (Proceedings commence at 11:04 a.m.)
2                 THE BAILIFF:  The honorable Judge Hall presiding.
3                 THE COURT:  All right.  Good morning.
4                 MS. SMITH:  Good morning.
5                 MR. SMITH:  Good morning.
6                 THE COURT:  Thank you.  Please be seated.  All
7    right.  This is in the matter of Lindsay Smith and Richard
8    Lorman, docket number 641-2021-DV-70.  Are you Lindsay Smith?
9                 MS. SMITH:  Yes.
10                THE COURT:  All right.  And you are, sir?
11                MR. SMITH:  I'm her father.
12                THE COURT:  Okay.  I don't usually allow anyone to
13   sit up here --
14                MR. SMITH:  Okay.
15                THE COURT:  -- unless they're a domestic violence
16   advocate or an attorney.
17                MR. SMITH:  Right.
18                THE COURT:  So I'm going to ask you just to sit back
19   there if you don't mind.
20                MR. SMITH:  That's fine, yeah.
21                MS. SMITH:  Yeah, I tried to get a HAVEN advocate
22   but they didn't -- it didn't work out, I guess.
23                THE COURT:  Okay.  Sorry about that.  But in any
24   event, we are scheduled this morning for a final hearing on
25   your request for an order of protection in this matter.

4

1  Temporary orders were issued, and I have a couple questions, I
2  guess, before we get started.
3           MS. SMITH:  Yep.
4           THE COURT:  You're here, are you ready to proceed,
5  and are you asking that the Court issue a final order of
6  protection that would remain in place for a period of one
7  year?
8           MS. SMITH:  Yes, I am.  Thank you.
9           THE COURT:  Okay.  All right.  So you've got to keep
10 your voice up too as we talk, all right?
11          So the file will reflect that Mr. Lorman was served
12 in hand with notice of this hearing on September 21, 2021.  He
13 does not appear.  It is now after the scheduled start of the
14 hearing, so I am going to proceed.
15          I'm going to explain the questions that I'm going to
16 ask you.  In order to grant this on a final basis, the
17 findings I have to make are different than even on a temporary
18 basis.  So I'm going to swear you in, you can remain seated
19 during your testimony, and you can tell me why it is that
20 you're asking the Court to issue it on a final basis, what
21 brought you here, okay?
22          In order for the Court to grant this on a final
23 basis I have to be able to make three specific findings:  one,
24 that there's a qualifying relationship between you and
25 Mr. Lorman.  You indicated previously that I think you're in a



1   romantic or were in a romantic relationship with him, you're
2   nodding your head yes.
3            Secondly, that he committed an act of abuse against
4   you as defined by New Hampshire 173-B, which is the statute.
5   And the third and final one I have to be able to find is that
6   he presents an ongoing credible threat to your safety.  If I
7   can't make all three of those findings I can't grant it on a
8   final basis, even though it might have been granted on a
9   temporary basis, okay?
10           MS. SMITH:  Understood.
11           THE COURT:  So with that, I'll have you raise your
12  right hand, please.
13                 LINDSAY SMITH, PLAINTIFF, SWORN
14           THE COURT:  Okay.  So with that, why don't you --
15  you nodded your head before.  Is it accurate that you and
16  Mr. Lorman have been involved in a romantic relationship?
17           THE WITNESS:  We have, yes.
18           THE COURT:  Okay.  And beyond that, why don't you
19  tell me why it is -- you can refer to your pleading that you
20  have that you've already filed, your petition, and tell me why
21  it is -- what acts of abuse you allege under the statute, and
22  why you're asking for this to be final.
23                          DIRECT TESTIMONY
24           THE WITNESS:  Sure.  Well, so the reasons that I
25  filed for a domestic violence petition are because I believe



6

1   Richard to be an abuser, and so I think that he has, like,
2   coercive control.  He's made numerous threats of sexual
3   violence to me as forms of punishment.
4           He often makes deals, sometimes in writing, for
5   defined punishments that are -- have included but are not
6   limited to tying me up, holding my breath, rough sex, sex with
7   other men in front of him, sometimes very old and disgusting,
8   anal sex, and hitting my private parts.  I did bring an
9   example that I found of a deal, if that is important.
10          THE COURT:  Okay, it's not, so that's what I --
11          THE WITNESS:  Okay.  It's in writing --
12          THE COURT:  -- I want you to focus on --
13          THE WITNESS:  Yeah.
14          THE COURT:  Yeah, what -- because that's not under
15  the statute.
16          THE WITNESS:  Okay.
17          THE COURT:  You have to tell me what act of abuse --
18          THE WITNESS:  Sure.
19          THE COURT:  -- you say that -- I mean, try to give
20  me some dates --
21          THE WITNESS:  And --
22          THE COURT:  -- beyond the sexual piece that I
23  understand there was -- you had, like, an agreement as to what
24  that may have been.
25          THE WITNESS:  Right.



1                THE COURT:  I need to find that he's a credible
2     threat to your safety now --
3                THE WITNESS:  Sure.
4                THE COURT:  -- and that he's abused you.
5                THE WITNESS:  Sure.  So I did bring some photographs
6     of bruises that -- is that important?  I don't know.  So I
7     think -- I mean, definitely --
8                THE COURT:  Do you allege that the bruises were part
9     of this rough sex that was part of an agreement?
10               THE WITNESS:  Well, no, I don't think that it was
11    part -- I mean, it was not -- the bruises are not consensual,
12    so.
13               THE COURT:  Okay.  All right.  So why don't you show
14    me those if you have those --
15               THE WITNESS:  So I have -- I just have sort of a --
16    one version that is not X-rated and one that is.  I don't know
17    which is appropriate.
18               THE COURT:  I can't -- I don't know.  If you want to
19    show me the non-X-rated version, if you think that that's what
20    I need to see, I don't know that I can make that -- you can
21    show me both and, you know, I can --
22               THE WITNESS:  Okay.  So -- well, I brought three --
23    sorry, three versions of everything.  That's what somebody
24    told me to do, but --
25               THE COURT:  That was smart.



8

1  THE WITNESS: -- this is two versions.
2  THE COURT: One for me usually, one for the other
3  side assuming they're here. Okay. Okay. So why don't --
4  you're showing me documents of what I can see look to be
5  bruises on your upper chest area, and arms or legs?
6  THE WITNESS: Legs.
7  THE COURT: Okay. But this is from 2016?
8  THE WITNESS: It is.
9  THE COURT: Okay, so --
10  THE WITNESS: It's just documented, I wanted to be
11  honest about when they were from.
12  THE COURT: Okay. So why don't you talk to me about
13  most recent things that bring you here. I understand, you
14  know, that that was quite a while ago --
15  THE WITNESS: It is.
16  THE COURT: -- I'm not sure that I would consider
17  that.
18  THE WITNESS: Okay. Sure. So I guess most -- most
19  recently, so I guess referring to my temporary order, he -- he
20  has, like, a few firearms that he kept in the home that we
21  were sharing, and he would be purposely, like, rearranging
22  them in front of me whenever he was angry. And then he, you
23  know, if he was angry, then he would make threats of, you
24  know, using, like, very rough language, like that he was going
25  to rape me and that he was going to make me pay.

1       And then -- I mean, even when I had sort of kicked
2  him out of my home, he tried to say that he wouldn't -- he
3  tried to blackmail me that he would not -- that he would not
4  tell sordid details of my personal life to my family and
5  employment if I was his sex slave for five days.  He -- I
6  didn't get much more than that because a police officer then
7  showed up.  And -- but I -- I --
8       THE COURT:  Okay.  So let me ask you this.  What
9  brought you to court in September of 2021?  What that day made
10 you say --
11      THE WITNESS:  Yeah.
12      THE COURT:  -- I feel like --
13      THE WITNESS:  So mostly because he was screaming
14 threats at -- so he tracked my location to Marblehead,
15 Massachusetts, where I had been sailing, and I stayed over at
16 some friends' house.  And then he -- I met him at a public
17 park and he called me the C word and he was screaming at me
18 that he was going to eff me up and he was going to eff up my
19 whole life, and everything that I hold dear he's going to eff
20 it up, and I can't trust anything to be okay anymore.  And
21 he's going to turn my world upside down, you'll pay.
22 You'll -- you chose this.
23      So that -- he -- his just extreme anger and the
24 knowledge of his previous abuse frighten me, and I did not go
25 back to my house for a month.  This is after Labor Day.  And



10

1  part of that time he stayed at my home while I was not there.
2           So that is why I did come in, and then he proceeded
3  to text me, making threats of blackmail, and also that he was
4  mentioning things, and mind you that this person in a past
5  life had been a police officer so he was somewhat careful, but
6  he had mentioned his friend from Rhode Island as a threat to
7  me, which was a person that had physically assaulted and broke
8  the jaw and leg of a man that Rick had also claimed was
9  blackmailing me with videos.
10          He's -- Rick has repeated to me that he also used to
11 be involved in a criminal enterprise and has seriously hurt
12 people.  So he's definitely trying to -- recently trying to
13 intimidate me, because I think that he's been feeling like
14 he's losing some control of me.  So I felt that I was unsafe
15 and that I should not go home because he was definitely
16 extremely angry and he has a very bad temper, and I -- I felt
17 that things were escalating where "I will make you pay" was a
18 threat to my physical safety.
19          THE COURT:  Okay.  You can keep going if you have
20 more.
21          THE WITNESS:  So I mean, he had also -- I don't know
22 if blackmail is important, but he -- he has also previously
23 called my place of employment and, like, told them horrible
24 things about me, and then he had done the same thing to my
25 family members.  And now since -- another reason that I came

1  to court to get a temporary restraining order is that he
2  was -- he was -- since I -- you know, since the police officer
3  showed up at my house and we, you know, broke it off, and --
4  I -- my family and employer are getting -- were getting pretty
5  nonstop text messages from him just saying horrible things
6  about me.
7       And I felt that because he wasn't getting a -- any
8  response from any of them that his anger was just escalating.
9  And I know that he is capable of not caring at all about --
10 just having a mindset that nothing matters because he has also
11 previously attempted suicide.  So even though he might think
12 he doesn't want to screw up his life and do anything
13 completely reckless, I -- I think he's had control over me for
14 so many years that loss of control is -- is going to -- I do
15 not feel safe if he is allowed to be around me.
16       So I think that -- I think that the reason that some
17 of the physical -- more physical stuff that involved bruises
18 hasn't happened in a while is because he's just been happily
19 enjoying the control.  But -- but he has definitely kept me
20 stuck, isolated, emotionally abused, and financially abused
21 for years, and now that he has lost control of me I'm just
22 fearful for my safety.
23       THE COURT:  Okay.  All right.  Thank you.  All
24 right.  So with that I will take the matter under advisement.
25       The temporary orders that I issued are going to



| | |
|---|---|
| 1 | remain in place until you get my next order, which will come |
| 2 | in the mail to you, all right?  And thank you for coming |
| 3 | today. |
| 4 |         MS. SMITH:  Okay. |
| 5 | (Proceedings concluded at 11:17 a.m.) |

13

<u>CERTIFICATE</u>

I, Karen Raile, a court-approved transcriptionist/proofreader, do hereby certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, to the best of my professional skills and abilities.

*Karen Raile* — Digitally signed by Karen Raile. Date: 2021.11.23 13:16:43 -05'00'

KAREN RAILE, CDLT-105                                November 23, 2021

