UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| DANA ALBRECHT, )<br>[DESTINIE L. BERARD][1] )<br> )<br>    Plaintiff(s) )<br>  v. )<br> )<br>HON. JOHN PENDLETON, *et al.*, )<br> )<br>    Defendants. ) | Civil No. 1:25-cv-00093-SM-AJ |

---

**PLAINTIFF(S)' MEMORANDUM OF LAW IN OPPOSITION TO
NEW HAMPSHIRE PUBLIC DEFENDER'S
MOTION TO DISMISS (ECF No. 41)**

---

---

1  Ms. Berard has filed a *Motion for Joinder* (ECF No. 24) that is presently pending.

- 1 -

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................2
INTRODUCTION.......................................................................................3
STANDARD OF REVIEW..............................................................................3
ARGUMENT..............................................................................................4
   I. PLAINTIFF(S) HAVE STANDING...........................................................4
      A. Dana Albrecht Has Alleged Direct, Personal Injury................................4
      B. Destinie Berard Has Standing as a Proposed Plaintiff............................4
   II. THE CONTROVERSY IS NOT MOOT.......................................................5
      A. Voluntary Cessation......................................................................5
      B. The Claims Are Capable of Repetition, Yet Evading Review....................5
      C. The Amended Complaint Supersedes the Magistrate's Earlier Report........5
      D. Denial of Counsel on Appeal Confirms Live Controversy.......................5
   III. NHPD IS A STATE ACTOR UNDER 42 U.S.C. § 1983............................6
      A. Legal Standard............................................................................6
      B. Public Function: NHPD Performs a Core Government Duty....................6
      C. Nexus/Joint Action: Deep Interdependence Between NHPD and the State..8
      D. State Compulsion: NHPD Lacks Meaningful Autonomy........................9
      E. Distinguishing NHPD From Inapplicable Case Law..............................9
   IV. THE CPA CLAIM STATES A VIABLE CAUSE OF ACTION.....................10
      A. The NHPD Website is an Advertisement..........................................10
      B. A Sale is Not Required Under RSA 358-A........................................10
      C. Factual Misrepresentation: NHPD's Denial Contradicted by Its Own Website..................................................................................10
      D. Rascality Is Pled........................................................................11
      E. Not Barred as Malpractice............................................................11
      F. No Statutory Exemption Applies....................................................12
      G. Concrete Injury and Reliance........................................................12
   V. YOUNGER ABSTENTION IS MISPLACED.............................................13
   VI. THE REQUESTED RELIEF IS NARROW AND EQUITABLE...................14
CONCLUSION.........................................................................................14

## INTRODUCTION

1. The New Hampshire Public Defender ("NHPD") asks the Court to dismiss Counts VII and VIII of the Amended Complaint ([ECF No. 39](#)) on the grounds that **(1)** Plaintiff(s) lack standing; **(2)** the case is moot because Ms. Berard has since obtained counsel; **(3)** NHPD is not a state actor; **(4)** the Consumer Protection Act ("CPA") claim fails as a matter of law; and **(5)** the Court should abstain under [*Younger v. Harris*, 401 U.S. 37 (1971)](#).

2. These arguments disregard well-pleaded allegations of concrete injury, misapply mootness doctrine, underestimate the extent to which NHPD is entwined with the State for purposes of [42 U.S.C. §1983](#), and ignore the 2002 legislative expansion of the CPA. At this stage, Plaintiff(s) need only plead facts that make their claims plausible. They have done so. NHPD's motion should be denied in its entirety or, in the alternative, denied without prejudice to allow limited discovery on the state-action and standing issues.

## STANDARD OF REVIEW

3. On a Rule 12(b)(6) motion, the Court must "accept as true all well-pleaded facts and draw all reasonable inferences in the plaintiff's favor," dismissing only if the complaint fails to state a claim that is plausible on its face. [*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)](#) (quoting [*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)](#)). The Court may also consider documents incorporated by reference or central to the claim. [*Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 74 (1st Cir. 2014)](#).

# ARGUMENT

## I. PLAINTIFF(S) HAVE STANDING

### A. Dana Albrecht Has Alleged Direct, Personal Injury

4. Mr. Albrecht alleges concrete harm resulting from NHPD's failure to respond to multiple written inquiries made in reliance on NHPD's own public representation that it would provide legal advice "even before a charge is filed." *See* Am. Compl. ¶¶ 146–152, 167–168, 222–240 ([ECF No. 39](#)). He further alleges that this dereliction forced him to assume a legal role at personal expense, emotional frustration, and loss of time. These are particularized injuries sufficient under Article III.

### B. Destinie Berard Has Standing as a Proposed Plaintiff

5. Ms. Berard's injuries are direct and personal—her arrest, prosecution, and incarceration. She is not a "represented client" for standing purposes. Her Motion for Joinder ([ECF No. 24](#)) remains pending, and she alleges constitutional violations of her own rights. Docket summaries dated March 18, 2024 ([Exhibit 2](#)), and November 12, 2024 ([Exhibit 3](#)), list NHPD as her counsel of record. On November 13, 2024, with trial imminent and no action from NHPD, Mr. Albrecht entered an emergency appearance.

## II. THE CONTROVERSY IS NOT MOOT

### A. Voluntary Cessation

6. NHPD points to the April 15 order appointing counsel and the May 27 appearance of retained counsel to argue mootness. But that relief merely constitutes voluntary cessation. A defendant's cessation of challenged conduct moots a case only if it is "absolutely clear" the conduct will not recur.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 189 (2000). NHPD remains free to resume its challenged policy the moment this litigation ends.

### B. The Claims Are Capable of Repetition, Yet Evading Review

7. Moreover, systemic delay in appointing counsel is capable of repetition yet evading review because the window between arrest and eventual appointment closes before a federal court can rule. *So. Pac. Terminal Co. v. Int. Comm. Comm.*, 219 US 498, 515 (1911).

### C. The Amended Complaint Supersedes the Magistrate's Earlier Report

8. The magistrate's report on the initial complaint is now obsolete. The amended complaint adds substantial facts concerning ongoing and post-appointment failures, new harms to Mr. Albrecht, and continued misconduct as late as July 2025.

### D. Denial of Counsel on Appeal Confirms Live Controversy

9. On July 1, 2025, the New Hampshire Supreme Court denied Ms. Berard's request for appointed counsel (Exhibit 4). A motion for reconsideration remains pending (Exhibit 5). The risk of continued deprivation of counsel is active and unresolved.

## III. NHPD IS A STATE ACTOR UNDER 42 U.S.C. § 1983

### A. Legal Standard

10. There are three tests for determining whether a nominally private actor is a state actor:

- **Public Function Test:** Whether the private entity exercises a power traditionally exclusively reserved to the State. *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352-53 (1974).

- **State Compulsion Test:** Whether the State has "exercised coercive power or has provided such significant encouragement, either overt or covert," that the actor's decision "must in law be deemed to be that of the State." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982).

- **Nexus or Joint Action Test:** Whether the State has "so far insinuated itself into a position of interdependence" with the actor that it was a "joint participant in the challenged activity." *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725 (1961); *Estades-Negroni v. CPC Hosp. San Juan Capestrano*, 412 F.3d 1, 5 (1st Cir. 2005).

## B. Public Function: NHPD Performs a Core Government Duty

11. It is beyond dispute that the provision of legal defense for indigent criminal defendants is a core function traditionally performed by the government. *See Gideon v. Wainwright*, 372 U.S. 335 (1963); *Strickland v. Washington*, 466 U.S. 668 (1984). Under New Hampshire law, this responsibility flows from Part I, Article 15 of the State Constitution and RSA 604-A and 604-B. "[A]rticle 15 … covers a broader range of criminal defendants than are granted a right to counsel by the Sixth and Fourteenth amendments." *State v. Scarborough*, 124 N.H. 363, 368 (1983).

12. NHPD is the exclusive statewide provider of this function. There is no competition, no market, and no consumer choice. The indigent defendant is compelled to accept NHPD as counsel, and NHPD, in turn, receives nearly all of its funding and authority through a statutory structure. The lack of functional alternatives underscores that this is a non-delegable, essential

government service—placing it squarely within the public function doctrine. *See West v. Atkins, 487 U.S. 42, 55–56 (1988)* (private contract physician for prisoners held to be state actor).

13. NHPD attempts to evade *West* by emphasizing that public defenders have historically not been held liable as state actors. But *West* clearly rejected the argument that the "private" nature of a contractor immunizes its constitutional obligations when fulfilling a state's duty. *See also Polk County v. Dodson, 454 U.S. 312, 325 (1981)* (holding that while individual defense decisions may not be under color of law, institutional and administrative misconduct may be).

14. Indeed, this instant case is easily distinguishable from *Polk*. There, the Supreme Court held that an individual public defender's professional judgments made during representation are typically not "under color of state law" because the defender owes primary loyalty to the client, not the state. This holding, however, presupposes that the defender has been appointed and is actively representing a client. Here, Plaintiff(s) challenge a fundamentally different scenario: NHPD's institutional failure to provide timely counsel before any attorney-client relationship existed. Moreover, NHPD's litigation strategy—actively invoking *Younger* abstention and supporting state prosecutorial interests—demonstrates precisely the state alignment and entwinement *Polk* assumes would not occur. Thus, *Polk* actually underscores why NHPD's current position and actions must be viewed as state action under the controlling standard of *West* and *Estades-Negroni*.

**C. Nexus/Joint Action: Deep Interdependence Between NHPD and the State**

15. NHPD operates solely under RSA 604-B, receives all funding via state contract, and reports to the Governor, Executive Council, and Judicial

Council. The 2023 contract award was for $55.5 million, with no competitive bidding. Even equipment purchased by NHPD may revert to the State upon expiration.

16. NHPD is not a vendor—it is an arm of the state criminal justice system.

17. Under [*Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001)](), entwinement and institutional dependence may create state action. Here:

    - NHPD is created and operates solely under [RSA 604-B](), which provides its governing framework;

    - The Judicial Council reviews and awards the sole contract worth $55.5 million—no other entity bid in 2023;

    - The contract mandates quarterly reporting to the Governor, Executive Council, Attorney General, and Judicial Council;

    - NHPD is subject to termination or payment suspension at the government's discretion;

    - Even physical property purchased by NHPD may revert to the State upon contract expiration.

18. NHPD is not merely a vendor in a marketplace. This is complete state dependence and entwinement in funding, purpose, and oversight. Cf. [*Union Leader Corp. v. NH Hous. Fin. Auth.*, 142 N.H. 540 (1997)]() (Right-to-Know law applied to non-agency corporation performing essential public function with public money).

19. NHPD also acts in concert with the courts. The judiciary assigns NHPD to represent clients, and NHPD routinely makes filings, arguments, and

decisions under court authority. This interdependence qualifies as joint action. *See* [Burton, 365 U.S. at 725](#).

**D. State Compulsion: NHPD Lacks Meaningful Autonomy**

20. Under the state compulsion test, even if the private actor claims to be acting independently, state coercion or control is sufficient to establish state action. [*Blum*, 457 U.S. at 1004](#).

21. NHPD cannot decline assignments without good cause and must comply with state rules of professional conduct, judicial orders, and statutory mandates. These legal obligations remove any meaningful claim of independence. NHPD functions as an arm of the state court system, subject to the coercive authority of the New Hampshire Judicial Council and judiciary.

**E. Distinguishing NHPD From Inapplicable Case Law**

22. NHPD cites [*Harvey v. Harvey*, 949 F.2d 1127 (11th Cir. 1992)](#), involving a guardian ad litem—not a contractually obligated, statewide defender system. Similarly, [*Estades-Negroni*](#) concerned a hospital. Neither involved a monopolistic, statutorily defined actor performing a constitutional duty.

23. At minimum, the state-action and jurisdiction questions are fact-intensive and unsuitable for resolution on the pleadings via any Motion to Dismiss. [*US v. Swiss American Bank Ltd.*, 274 F. 3d 610, 625-26 (1st Cir. 2001)](#); [*MOTUS, LLC v. CarData Consultants, Inc.*, 23 F. 4th 115, 127-28 (1st Cir. 2022)](#).

**IV. THE CPA CLAIM STATES A VIABLE CAUSE OF ACTION**

**A. The NHPD Website is an Advertisement**

24. NHPD's public website promises:

> **"If you have a question about any criminal matter, you can contact the New Hampshire Public Defender and request to speak to an attorney for legal advice, even before the court determines if you qualify for an attorney and before a charge is filed."** ([Exhibit 1](Exhibit 1))

25. This constitutes an "advertisement" under [RSA 358-A:2, IX](RSA 358-A:2, IX).

### B. A Sale is Not Required Under RSA 358-A

26. [RSA 358-A:1, II](RSA 358-A:1, II) includes "offering for sale" of services in its definition of trade or commerce. There is no requirement of a for-profit motive. *[Fat Bullies Farm, LLC v. Devenport, 170 N.H. 17 (2017)](Fat Bullies Farm)*; *[Rousseau v. Eshleman, 129 N.H. 306 (1987)](Rousseau)*. When NHPD solicits inquiries and then fails to respond, it violates the statute.

### C. Factual Misrepresentation: NHPD's Denial Contradicted by Its Own Website

27. Despite its denials, NHPD's website (as of July 2025) still contained the quoted language. **This alone defeats dismissal at the pleading stage.**

28. [RSA 358-A:2, IX](RSA 358-A:2, IX) prohibits "advertising goods or services with intent not to sell them as advertised." The amended complaint alleges that both Mr. Albrecht and Ms. Berard relied on NHPD's invitation, made repeated written requests for assistance, and received no response. From those facts, a fact-finder may reasonably infer that NHPD never intended to deliver pre-appointment advice as promised. That inference is enough to state a plausible claim under Rule 12(b)(6).

29. NHPD's assertion that it "did not advertise to 'sell' anything" misses the point. The CPA does not require a price tag; it requires a misrepresentation in the offer of services. Indeed, the statute expressly contemplates "soliciting sales of services." The legislative choice of the verb "sell" reflects the transfer of a service, not necessarily a cash transaction.

### D. Rascality Is Pled

30. *Barrows v. Boles*, 141 N.H. 382 (1996), confirms that "bait-and-switch" behavior suffices. Here, NHPD offers legally significant services and then ignores people relying on that promise. That conduct meets both the statutory and judicially recognized standard of 'rascality.'

31. NHPD argues that the alleged conduct cannot meet the "rascality" threshold. But New Hampshire courts regularly find rascality where a business affirmatively lures consumers with a promise it does not intend to keep. *See Barrows v. Boles*, 141 N.H. 382, 390 (1996) ("bait-and-switch" tactics satisfy rascality). Offering a legally-significant service—pre-indictment legal advice to suspects—and then ignoring the very people the offer was designed to protect is precisely the sort of conduct that would "raise an eyebrow" of even a hardened commercial actor.

### E. Not Barred as Malpractice

32. NHPD's argument that this is "professional malpractice" fails. The claim concerns advertising and intake—an entrepreneurial activity. *Rousseau*, *Stewart v. Ang*, and *Fat Bullies* distinguish business practices from malpractice.

33. NHPD relies on *Stewart v. Ang* (Exhibit D) to argue that failures in providing professional services are outside the CPA. The reliance is misplaced. Stewart distinguished between entrepreneurial misconduct (actionable) and negligent medical treatment (not actionable). Here, Plaintiffs do not allege malpractice; they allege that NHPD's marketing misrepresented the availability of its services. That is an entrepreneurial practice squarely within Rousseau's commercial category and the post-2002 CPA.

**F. No Statutory Exemption Applies**

34. RSA 358-A:3 lists exemptions, and NHPD is not among them. Its nonprofit status and public funding do not shield it from liability.

35. **Statutory text.** RSA 358-A:1, II defines "trade and commerce" to include "the advertising, offering for sale, sale or distribution of any services." Nothing in the definition limits coverage to for-profit enterprises or to transactions in which money changes hands.

36. **Case law.** The New Hampshire Supreme Court has long held that professional firms engage in "trade or commerce" when they advertise or bill for their services. *See Rousseau v. Eshleman*, 129 N.H. 306, 311 (1987) (Thayer, J., concurring) (CPA "applies to the commercial activities of attorneys," including the way a firm "obtains, retains, and dismisses clients"). The Court reaffirmed this entrepreneurial/professional distinction after the Legislature deleted the old regulatory-board exemption in 2002. *See Fat Bullies Farm, LLC v. Devenport*, 170 N.H. 17, 24 (2017) (CPA "broadly worded").

37. **Application.** NHPD's status as a State-funded RSA 604-B contractor does not remove it from "trade or commerce." By using its public-facing website to solicit inquiries from potential defendants, NHPD engages in the entrepreneurial side of the practice of law.

**G. Concrete Injury and Reliance**

38. Plaintiff(s) incurred costs and were harmed by reliance on NHPD's promises. Ms. Berard was forced to appear in court unrepresented. Mr. Albrecht stepped in as an RSA 311:1 representative. These injuries satisfy RSA 358-A:10.

## V. YOUNGER ABSTENTION IS MISPLACED

39. NHPD urges this Court to abstain from exercising jurisdiction over Ms. Berard's claims under *Younger v. Harris*, 401 U.S. 37 (1971). But that argument cuts against its own interest. If Plaintiff prevails on the constitutional claim—that RSA 173-B:9 is unconstitutional as applied to religious worship—then the state prosecution necessarily collapses. A federal ruling would terminate, not interfere with, the prosecution.

40. Moreover, *Younger* abstention applies only where the plaintiff seeks to derail an ongoing state proceeding. Here, Ms. Berard seeks only prospective equitable relief—precisely the type of exception recognized under *Younger*'s "bad faith," "extraordinary circumstances," and "irreparable harm" doctrines. *See also Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982).

41. NHPD's argument amounts to this: it wants to force a Massachusetts resident into ongoing criminal proceedings in New Hampshire while simultaneously disclaiming all responsibility for ensuring that person's constitutional rights are protected. That is not abstention; it is abdication.

42. Finally, NHPD's current litigation posture—openly aligned with the interests of the prosecution—undermines *Polk County v. Dodson*, 454 U.S. 312 (1981), and highlights the need for federal review. *Polk* assumes the public defender's role is adversarial to the state. Here, NHPD's actions call that assumption into question.

## VI. THE REQUESTED RELIEF IS NARROW AND EQUITABLE

43. Plaintiffs ask the Court to:

    - Declare that NHPD acts under color of state law and is subject to §1983.

- Declare that NHPD's website representations violate RSA 358-A.

- Enjoin NHPD from publishing misleading advertising or refusing to respond to inquiries absent a formal appointment.

- Award nominal damages and costs.

44. Each form of relief sought falls squarely within the Court's equitable powers.

## CONCLUSION

45. For the foregoing reasons, the Court should deny NHPD's motion to dismiss. The amended complaint alleges concrete injury, plausible statutory and constitutional violations, and a live controversy involving a state-embedded actor. Mootness, abstention, and corporate form do not insulate NHPD from judicial review.

46. In the alternative, should the Court find any uncertainty as to standing or state action, Plaintiffs respectfully request narrowly tailored jurisdictional discovery.

Respectfully submitted,

_____
DANA ALBRECHT
*Pro Se*
131 Daniel Webster Hwy #235
Nashua, NH 03060
dana.albrecht@hushmail.com

July 17, 2025

## CERTIFICATE OF SERVICE

I, Dana Albrecht, certify that a copy of this Memorandum has been served on all parties of record via the CM/ECF system.

_____
DANA ALBRECHT

July 17, 2025.